**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) <br> ) |
| v. | ) Case No. 1:21-cr-175 <br> ) |
| ETHAN NORDEAN, | ) **District Judge Timothy J. Kelly** <br> ) |
| Defendant. | ) <br> ) <br> ) |

**DEFENDANT NORDEAN'S MOTION FOR A BILL OF PARTICULARS**

David B. Smith (D.C. Bar No. 403068)
David B Smith PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
Suite 4R
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

## **TABLE OF CONTENTS**

I.  FACTUAL AND PROCEDURAL BACKGROUND……………………..………….2

    A.  Nordean's criminal complaint and indictment…………………….....……….2

    B.  The government's inaccurate claims about encrypted communications……..….5

    C.  The government's vague § 1361 theory……………………………………...….6

II.  ARGUMENT…………………………………………...…………………..…....… 7

    A.  Standard for a bill of particulars under Fed. R. Crim. P. 7(f)….………....…….7

    B.  The government should provide a bill of particulars on its § 1361 charge..……11

CONCLUSION………………………………………………….……………....………12

Defendant Ethan Nordean, through his counsel, files this motion for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).

The criminal complaint on which he was arrested February 3 alleged that Nordean aided and abetted the depredation of federal property (18 U.S.C. § 1361) as follows. On January 6, Nordean was present at the protests at the Capitol Building. Standing outside Congress, Nordean "engaged in a brief exchange" with a man. The content of the exchange was unalleged, as was the relationship, if any, between Nordean and the man. Later, at some unspecified point in time, that man climbed through a broken window of Congress. The complaint alleged that the window had been broken previously by a second man. It did not allege that Nordean took any action to facilitate the breaking of the window or the first man's decision to climb through it. Although a § 1361 offense becomes a felony only when damage to federal property exceeds $1,000, the complaint did not allege that the damage exceeded that threshold. Compl., ECF No. 1, pp. 6-8. Besides the broken window, the complaint did not allege what the property damage attributable to Nordean consisted of. These facts did not constitute probable cause of an aiding and abetting offense under § 1361.

The government later indicted Nordean on the same § 1361 offense. However, after the indictment had been returned and during a March 3 detention hearing before Chief Judge Beryl A. Howell, the government described a theory of aiding and abetting liability significantly broader in scope than the window-breaking-through-brief-verbal-exchange theory. The government now said Nordean aided and abetted all depredation of federal property committed by all protestors "led" by the defendant toward the Capitol on January 6, without regard to whether these people had an intent to commit a § 1361 offense before they arrived at the Capitol grounds, whether Nordean knew of such an intent, or whether Nordean took any action to

1

facilitate specific instances of property depredation. Chief Howell found this aiding and abetting theory "weak." No precedent supports it. Nevertheless, the government appeared to indicate during the hearing that it would be pursued at trial.

However, Count Two of the Indictment gives no indication as to what its theory of § 1361 liability may be. Indictment, Count Two, ECF No. 24. It does not allege how, or in what sense, Nordean depredated federal property or aided and abetted such an offense. It does not allege what Nordean damaged or what anyone else he "led" damaged. This is potentially the difference between a trial involving a broken window, on the one hand, and on the other, a trial involving all property damage at the Capitol writ large, somehow attributed to the defendant.

This is precisely the scenario where the government should be required to indicate its basic theory of liability in a bill of particulars, by identifying (i) what property was damaged and to what extent, (ii) by whom, and (iii) how such damage was facilitated by Nordean: an essential element of any aiding and abetting offense. Fed. R. Crim. P. 7(f).

**I.      Factual and Procedural Background**

**A.      Nordean's criminal complaint and indictment**

The criminal complaint alleged that Nordean, a thirty-year-old resident of the State of Washington, was a member of the Proud Boys group.[1] It alleged that, on January 6, 2021, a large crowd gathered near the pedestrian entrance to the Capitol grounds on First Street, secured by police standing behind a waist-height metal barrier. Compl., p. 7. "[T]wo men advanced

---

[1] The complaint dwelled at length on the defendant's controversial political stances before January 6, though their function in establishing a depredation of property offense is not clear.

For example, a section examining the philosophical underpinnings of the political group to which Nordean belonged—and displaying color photographs of the group's paraphernalia—occupied more charging space than the complaint's description of factual evidence supporting its (possible) felony counts. *Compare* Compl., pp. 2-6, *with id.*, p. 8.

2

toward [the] metal gate. The crowd followed, and within minutes, the crowd overwhelmed the U.S. Capitol Police officers [there.]" *Id.*

Nordean "was not one of the two men who initially advanced toward officers, but was present in the crowd[.]" Compl., p. 7. The complaint alleged that thousands of people then gathered in front of the Capitol on its west side. "Among the first to reach the police line in the west plaza of the Capitol was [Nordean.]" *Id.*, p. 8. Nordean "then appeared to engage in a brief exchange with . . . Robert Gieswein. . ." *Id.* In turn, Geiswein "was among the first to enter the Capitol through a window that was broken. . ." *Id.* But it is not Geiswein, the man with whom Nordean "appeared to engage in a brief exchange," who is alleged to have broken the window. That was accomplished by another individual named Dominic Pezzola. Compl., p. 8. In a footnote, the complaint added that it,

> Does not herein assert or intend to otherwise suggest that NORDEAN was present in the immediate vicinity when the [window-breaking] took place.

Compl., p. 9 n. 3.

The complaint alleged that Nordean ultimately entered the Capitol Building, displaying photographic evidence of the same. Compl., pp. 4-5. Besides the broken window, the complaint did not cite any specific federal property damage attributable to Nordean.

It then alleged that Nordean's "[social media] posts prior to January 6, 2021, indicate that he and other Proud Boys were planning in advance to organize a group that would attempt to overwhelm police barricades and enter the United States Capitol Building." Compl., p. 5. However, the complaint does not cite examples of posts showing such an intent or plan. Instead, it cites public social media posts in which the defendant appears to seek out "protective gear" and "communications," not to "overwhelm police barricades," but because "things have gotten

more dangerous for us this past year." *Id.*[2] Other evidence cited by the complaint included vague, nonviolent statements such as "People don't understand the price that comes with being a Patriot these days." Compl., p. 7.

Citing the foregoing, the complaint charged Nordean with:

(i) "corruptly obstructing, influencing, or impeding . . . the proceeding to certify the vote results of the Electoral college," 18 U.S.C. § 1512(c)(2)[3];

(ii) aiding or abetting the willful depredation against any property of the United States, "here, the barricades surrounding the U.S. Capitol and the windows and doors on the west side of the Capitol where Nordean and other rioters broke into the Capitol," 18 U.S.C. § 1361; and

---

[2] Examples of Nordean lawfully using "protective gear" long before January 6 abound. ECF No. 19, p. 10.

[3] The obstruction-of-justice charge under § 1512's residual clause, although not pleaded clearly, appears to be legally deficient for a number of reasons, ranging from the statute's plain text to its legislative history. As a previous U.S. attorney general himself observed, the "question here is whether the phrase—'or corruptly otherwise obstructs'—in clause (c)(2) is divorced from the litany of specific prohibitions in § 1512, and is thus a free-standing, all-encompassing prohibition reaching *any* act that influences a proceeding, or whether the clause's prohibition against 'otherwise' obstructing is somehow tied to, and limited by, the character of all the other forms of obstruction listed in the statute." Mem. of William P. Barr, dated June 8, 2018, p. 4, available at: https://bit.ly/30LdPIw (emphasis original). Citing § 1512(c)(2)'s legislative history origins in the Sarbanes-Oxley Act, which "was expressly designed to clarify and close loopholes in the existing criminal laws related to the destruction or fabrication of evidence and the preservation of financial and audit records," the former attorney general of the Department of Justice found it was "clear that use of the word 'otherwise' in the residual clause expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision," Barr Mem., p. 4—i.e., "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document or other object, or attempt[ing] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." § 1512(c)(1).

Defying that textual limitation, the complaint and indictment have charged Nordean with violating § 1512(c) by virtue of inserting his presence into the Capitol Building during a joint session of Congress to count the Electoral College votes from the 2020 presidential election. Indictment, Count One. Section 1505, by contrast, criminalizes obstruction of proceedings in Congress "by threats or force." 18 U.S.C. § 1505. The government did not charge that here because that section only covers "inquir[ies] or investigation[s] . . being had by either House," § 1505, and the ceremonial counting of Electoral College votes was neither. The government's § 1512 theory also conflicts with this Circuit's rule that the obstruction-of-justice adverb "corruptly" is transitive, e.g., "A corrupts B, i.e., A causes B to act corruptly," not intransitive, e.g., A unilaterally influenced an official proceeding with "evil purposes." *See United States v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991).

4

(iii) knowingly entering or remaining in any restricted building or grounds without lawful authority to do so, and knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engaging in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so, 18 U.S.C. § 1752(a). Compl., pp. 11-12.

The Indictment charges Nordean with the same offenses. Indictment, pp. 1-3. It does not allege any specific damage to federal property attributable to Nordean or to anyone else.

### B. The government's inaccurate claims about encrypted communications

In addition to those charges, the government made the following factual claim to Chief Howell in seeking to detain Nordean pretrial:

> Defendant—dressed all in black, wearing a tactical vest—*led the Proud Boys through the use of encrypted communications* and military-style equipment, and *he led them with the specific plans to: split up into groups, attempt to break into the Capitol building from as many different points as possible*, and prevent the Joint Session of Congress from Certifying the Electoral College results.

ECF No. 17, pp. 10-11 (emphasis added).

This factual claim was shown to be false. Nordean advised Chief Howell that he could not have "led the Proud Boys through the use of encrypted communications" on January 6 because, among other reasons, his mobile phone was without power throughout the events of the day. ECF No. 19, p. 9. The government separately contended that Nordean used a Daofeng radio—seized from his home on February 3—to lead a group of people into the Capitol. ECF No. 17, p. 15. However, Nordean then supplied the Court with an Amazon receipt showing that he did not receive the ham radio until January 7. ECF No. 19, p.11.

The government countered by representing that "The Baofeng radio that defendant purchased on Amazon is not the Baofeng radio seized by law enforcement." ECF No. 21, p. 2. It reasoned that the radio depicted in the Amazon screenshot filed by Nordean "has a short antenna

5

and a battery that is the same size as the radio unit itself. By contrast, the Baofeng radio seized from Defendant's residence has a larger antenna and a larger battery, as well as a second, longer blade-style antenna." ECF No. 21, p. 2.  This was also false.  Nordean supplied the Court with another Amazon receipt showing that, although he ordered the items online as a package, Nordean received the "larger antenna" and "larger battery," identified during the government's search of Nordean's home, before the radio itself, which, again, was received on January 7. There was only one Baofeng radio.  ECF No. 22, p. 2.  When the Court asked about these factual reversals, the government advised the Court to disregard its grave claim that Nordean himself used "encrypted communications" to lead an invasion of the Capitol Building.  3/3/21 Hr'g Trans., pp. 38-39.

    C.    **The government's vague § 1361 theory**

Although the criminal complaint appears to allege that Nordean aided and abetted the depredation of federal property by "appear[ing] to engage in a brief exchange" with the aforementioned Mr. Geiswein before the latter climbed through a broken congressional window, the government extended its theory in the March 3 detention hearing.  The Court and government had the following colloquy:

    THE COURT: Well is it - - is it the Government's theory that under aiding and abetting liability that this defendant is responsible for all the damage done at the Capitol or just the damage done by Proud Boys members, or what?

    MR. McCULLOUGH: Your Honor –

    THE COURT: He personally didn't – you don't have evidence that he personally engaged in any property damage.

    MR. McCULLOUGH: That is correct, Your Honor.  The Government – the Government is – for purposes of this hearing, the Government is asserting that Ethan Nordean is responsible for the property damage that was caused by those men who he led to the 1st Street gate and onto the Capitol grounds on January 6th.  This was an intended act in Ethan Nordean's statements in advance of the January 6th activities.  Ethan Nordean was clear that people thought – that people

6

may have thought that this was simply going to be individuals making Facebook posts; but, no, we are going to bring back the spirit of 1776.  Your Honor, that is not simply a – kind of an affection for three-cornered hats and salt water taffy. . .

3/3/21 Hr'g Trans., pp. 42:13-43:9.

Assessing the weight of the government's evidence on this theory of aiding and abetting liability, the Court found the following:

THE COURT: What the Government said in its original papers is that he directed the Proud Boys with specific plans, telling them to split up into groups and to attempt to break into the Capitol building; that's a far cry from what I heard at the hearing today.  And the Government has backtracked on saying that they actually did see – directly told them to split into different groups and had this kind of strategic plan.

In addition, what I've heard at the hearing today is that the defendant, with this group, positioned himself at one of the entrances – pedestrian entrances to the Capitol and, you know, strutted right in front of the police barriers.  That's also a far cry from threatening or assaulting the police officers who were barricading the entrance to the Capitol.

He then – what I've heard at the hearing today is that the defendant's followers and other people in the crowd – not necessarily even Proud Boys – broke through the barriers, breached the police line and got into the Capitol, and the defendant went along with this mob.

There is no allegation that the defendant caused injury to any person or that he even personally caused damage to any particular property. . . He was a leader of a march down to the Capitol.  Once they got there it's not clear what leadership role this defendant took at all to the people inside the Capitol or – even the evidence about the defendant directing people to break windows to get into the Capitol is weak, to say the least. . .

[T]he weight of the evidence against the defendant for aiding and abetting the injury and depredation of Government property, under 18 U.S.C. section 1361, in an amount exceeding $1,000 when he personally didn't do anything – and there is no evidence of specific directions by this defendant to tell his fellow Proud Boys carve some vulgar thing on a door or to – any other specific information about him giving those kinds of precise orders is not as strong and overwhelming to say that the weight of the evidence favors pretrial detention . . .  3/3/21 Hr'g Trans., pp. 79-80.

## II.     Argument

### A.     Standard for a bill of particulars under Fed. R. Crim. P. 7(f)

The court may direct the government to file a bill of particulars.  Fed. R. Crim. P. 7(f).

"A bill of particulars can be used to ensure that the charges brought against a defendant are

stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 73 (D.D.C. 2019) (internal quotation marks omitted).

**Identities of co-conspirators.**  In this District, the "disclosure of the names of alleged co-conspirators [in a bill of particulars] is not uncommon in conspiracy cases . . ." *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007); *see also United States v. Michel*, 2019 U.S. Dist. LEXIS 193167, *54 (D.D.C. Nov. 6, 2019) (same); *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004) (same); *United States v. Ramirez*, 54 F Supp. 2d 25, 30 (D.D.C. 1999) (requiring disclosure of "the names of all persons the government would claim at trial were co-conspirators"); *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (government ordered to identify in bill of particulars "the names of the individuals who performed each act" of one object of conspiracy); *United States v. Baker*, 262 F. Supp. 657, 674 (D.D.C. 1966) (same regarding aiding and abetting); *Cefalu v. United States*, 234 F.2d 522, 524 (10th Cir. 1956) (reversing conspiracy convictions after district court denied defendants a bill of particulars identifying the individuals defendants conspired to corruptly obstruct).  A recent example is *Concord Mgmt. & Consulting LLC*.  The indictment charged three foreign corporate defendants and others with conspiring to sow discord among U.S. voters in the 2016 presidential election through divisive social media posts and political rallies.  38 5 F. Supp. 3d at 75.  One of the foreign entities employed hundreds of people in support of the conspiratorial objective, which targeted several U.S. agencies.  *Id.*  Given the "unprecedented theory of criminal liability" in the case, and the large number of actors, this Court granted the defendant's motion for a bill of

8

particulars identifying all persons the government would claim at trial were co-conspirators. *Id.* at 76.

**Specific acts of alleged wrongdoing.** A bill of particulars is also appropriate for identifying the specific acts a defendant allegedly took to aid and abet an offense, where the indictment fails to allege them or does so vaguely. *See*, *e.g.*, *Ramirez*, 54 F Supp. 2d at 30 (government required to provide particulars as to all overt acts in which any defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy); *United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (government ordered to identify specific overt acts of defendants); *Palfrey*, 499 F. Supp. 2d at 52 (requiring government to identify proceeds allegedly used in support of criminal enterprise so defendant does not "waste precious pre-trial preparation guessing what data . . . will be relevant to [the] defense"); *United States v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979) (same). In *Baker*, for example, this Court granted the tax defendant's motion for a bill of particulars "specify[ing] the statements and/or acts by which defendant is claimed to have aided, assisted in, counseled, procured, or advised the preparation and presentation" of the false tax return. 262 F. Supp. at 674. In doing so, the *Baker* Court relied on *United States v. Lieberman*, 15 F.R.D. 278, 280-81 (S.D.N.Y. 1953). In that case, three defendants were charged with smuggling diamonds into the United States. The indictment charged that Mr. A obtained the diamonds outside the U.S.; that he conveyed them to Mr. B, an airline captain, who clandestinely flew them into the country; and that Mr. B in turn conveyed the diamonds to Lieberman in New York. *Id.* at 279. The indictment charged both that Lieberman smuggled the diamonds and aided and abetting the smuggling of those gemstones. Noting that the defendant could have smuggled the diamonds as a principal in his role as their New York purchaser or else could have merely aided and abetted

the smuggling in some other capacity, the court ordered the government to file a bill of particulars identifying,

> whether defendant Lieberman introduced the diamonds into the United States personally or aided, abetted, counseled, commanded, induced, procured or caused such introduction and, if defendant Lieberman performed any of the latter acts, which one or ones he performed and the means by which it or they were performed.

15 F.R.D. at 281.

**What the damage or harm consisted of**. Courts order the government to produce a bill of particulars to identify what the alleged damage or harm caused by a defendant consists of, particularly where the criminal statute contains particular damage requirements. *See*, *e.g.*, *United States v. Brown*, 2007 U.S. Dist. LEXIS 49169, *45 (D.D.C. July 9, 2007) (ordering government to identify in bill of particulars "specific alleged actions and specifically worded false statements on which the government shall rely in proving its case"); *United States v. Siddiqi*, 2007 U.S. Dist. LEXIS 15410, *8 (S.D.N.Y. Feb. 21, 2007) (bill of particulars must specify the dates and amounts of bribes defendant allegedly paid); *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006) ("[T]he indictment fails to state which specific documents were fraudulent, and what was allegedly fraudulent about the documents at issue. Defendant must also be put on notice as to the specific dates of the allegations, the documents, and what the false statements were within the documents."); *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) (ordering government in health care fraud case to identify in a bill of particulars the specific false entries in physician's records and specific fraudulent bills to insurers); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) ("A defendant faced with false statement charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against . . . when the government knows precisely the statements on which it intends to rely and can easily provide the information); *United States v.*

*Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (granting in part a motion for a bill of particulars "as it relates to the defendant's request for the basis of the government's allegations that the defendant solicited and received things of value for and because of official acts performed and to be performed by defendant"); *United States v. Royal Caribbean Cruises, Ltd.*, 24 F. Supp. 2d 155 (D.P.R. 1997) (mandating that the government notify the defendants of the specific proceeding that was obstructed); *United States v. McGuinness*, 764 F. Supp. 888, 892-94 (S.D.N.Y. 1991) (holding that government must provide defendant bill of particulars listing approximate date and amount of payments allegedly made in violation of Taft-Hartley Act); *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (reversing conviction for failure to require a bill of particulars setting forth specific staged burglaries and specific insurance claims alleged to be false).

In *Trie*, for example, the government alleged the defendant fraudulently obtained benefits from the Democratic National Committee, but the indictment only vaguely alleged the ill-gotten property at issue. 21 F. Supp. 2d at 22. This Court ordered the government to specifically identify in a bill of particulars "the property allegedly obtained [by the defendant] . . .so that he can demonstrate either that he never obtained it or that he obtained it legitimately and not as a result of fraudulent contributions." *Id.*

### B. The government should file a bill of particulars for its § 1361 charge

As noted above, the indictment does not allege (i) the federal property that was allegedly damaged by Nordean on January 6th and the extent of the damage, (ii) by whom the property was damaged, and (iii) how such damage was facilitated by Nordean, as essential element of an aiding and abetting offense. *Rosemond v. United States*, 572 U.S. 65, 76 (2014) (aiding and abetting offense requires proof that defendant took some action to facilitate the offense).

To make matters more ambiguous, the government appears to have expanded its theory of aiding and abetting liability to include all damage caused by any protestor "led" toward the Capitol by Nordean on January 6, whether or not the defendant encouraged or facilitated their depredation of federal property.  3/3/21 Hr'g Trans., pp. 42:13-43:9.  Yet the indictment itself does not resolve the ambiguity.  Indictment, Count Two, ECF No. 24.

As it now stands, Nordean could be defending himself against liability conceivably for tens of thousands of dollars of damage caused by dozens or hundreds of undisclosed protesters, or against liability for the cost of a window broken by a single protestor.  This is not sufficient information to adequately prepare for a trial and to avoid being tried twice for the same offense.

Accordingly, the government should provide a bill of particulars identifying the following:

(i) *what federal property* was damaged in connection with Count Two of the Indictment, charging a violation of 18 U.S.C. § 1361;

(ii) *in what amount* was the property damaged;

(iii) *by whom* was the property damaged; and

(iv) *what action* did Nordean take to facilitate the damage.

## CONCLUSION

For all of the foregoing reasons, Mr. Nordean respectfully requests that the Court order the government to file a bill of particulars.

Dated: March 15, 2021              Respectfully submitted.

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314

Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869

### Certificate of Service

I hereby certify that on the 15th day of March, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-7846

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Appointed by the Court*

13