UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-CR-175-1 |
| | : |
| ETHAN NORDEAN, | : |
| also known as "Rufio Panman," | : |
| | : |
| **Defendant.** | : |

## GOVERNMENT'S MOTION TO REVOKE PRETRIAL RELEASE

At a hearing on March 3, 2021, Chief Judge Howell released the Defendant—Ethan Nordean, who goes by the nickname "Rufio"—who was then charged in a standalone indictment, and ordered him to home confinement. The Chief Judge stated that, based on the facts presented at the time, the issue of pretrial detention was a "close call," and that the assigned judge "may want to take another look at this if the Government persists in seeking pretrial detention here." March 2, 2021 Hr'g Tr. 80, 83.

Now before the Court is a superseding indictment, which charges the Defendant and three others with conspiracy as well as several serious felonies stemming from the January 6 attack. In addition, new evidence highlights the grave danger that the Defendant poses to others and the community. That new evidence includes:

- Encrypted Telegram messages among members of the Proud Boys related to the events of January 6 make clear that Defendant was leading the group that had traveled to Washington, D.C. For example:

    - On January 5, at 9:32am, a member of a Proud Boys Telegram group stated "It seems like our plan has totally broken down and rufio has taken control as a singke [sic] point of contact."

- On January 5, at 5:22pm, co-conspirator Biggs stated "Woth [sic] rufio trying to get numbers so we can make a plan." A few moments later, Biggs stated "Just trying to get our numbers. So we can plan accordingly for tonight and go over tomorrow's plan."

- On January 5, at 5:52pm, co-conspirator Joseph Biggs posted "We are trying to avoid getting into any shit tonight. Tomorrow's the day" and "I'm here with rufio and a good group[.]"

- On January 5, at 9:07pm, co-conspirator Charles Donohoe asked "Hey who's boots on ground with a plan RN [ … ] Guys are asking." A participant in the encrypted chat stated "Supposed to be Rufio."

- Within minutes, an unindicted co-conspirator broadcast a message to those in the group chat, "Rufio is in charge, cops are the primary threat, don't get caught by them or BLM, don't get drunk until off the street."

- Shortly thereafter, at 9:20pm, Biggs stated "We just had a meeting woth [sic] a lot of guys. Info should be coming out" and then "I was able to rally everyone here together who came where I said" and then, "We have a plan. I'm with [co-conspirator Nordean]."

- On the morning of January 6, Donohoe stated that he was on his way to the Washington Monument, and "I have the keys until Rufio and [co-conspirator Zachary Rehl] show up."

• After the initial breach, Defendant personally engaged in the destruction of government property by shaking and then knocking down a metal barrier on the Capitol grounds.

>   Defendant and Biggs then defiantly led the crowd, including those men under Defendant's control, into the West plaza outside the U.S. Capitol.
> 
> - As these events unfolded, messages were posted to the encrypted messaging group that encouraged participants in the messaging group to storm the Capitol. One post directed the participants in the group to "get there."

As a leader of the Proud Boys members who stormed the Capitol on January 6, the Defendant presents a danger not only based on his own potential violence, but violence by others who undoubtedly still support him. In light of the Conspiracy charge, which details Defendant's leadership role in the offense as well as additional evidence of the Defendant's dangerousness, he should be held pending trial.

## ARGUMENT

As it did before, the United States moves for detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including Destruction of Property in violation of 18 U.S.C. § 1361. The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property, in violation of 18 U.S.C. § 1361, is a crime of violence. Moreover, when Destruction of Property is "calculated to influence or affect the conduct of government by intimidation or coercion," it also qualifies as a federal crime of terrorism. See 18 U.S.C. § 2332b(g)(5)(B).

As the Court is aware, there are four factors under Section 3142(g) that the Court must analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. As noted below, each of these factors weighs in

favor of pretrial detention in this case.

  **A.** **The Nature and Circumstances of the Offense**

The nature and circumstances of the offense are extremely serious. Defendant began laying the groundwork for Proud Boys and their supporters to fight the 2020 election results shortly after the election.  Defendant's posts on the Parler social media website in November and December, 2020, and into January, 2021, show a discernable trend: declaring the election results to be fraudulent; encouraging others to "fight" to overcome the alleged fraud; and asking his followers to assist him in "fighting" the alleged fraud by joining the Proud Boys in Washington, D.C. on January 6, and by donating funds and equipment to their effort

For example, on November 16, 2020, the Defendant posted "What's more disturbing to me than the Dems trying to steal this election, is how many people . . . just accepted Biden won, despite the obvious corruption... Luke warm Patriots are dangerous." On November 27, 2020, he posted "We tried playing nice and by the rules, now you will deal with the monster you created. The spirit of 1776 has resurfaced and has created groups like the Proudboys and we will not be extinguished. We will grow like the flame that fuels us and spread like love that guides us. We are unstoppable, unrelenting and now....unforgiving."

On December 4, 2020, the Defendant posted "You can take a hard stand now, or watch as everything we've all built crumble before your eyes and have nothing to leave to your children. Enough is enough."  On December 28, 2020, the Defendant posted "Fight now, or lose everything." And, on January 4, 2021, he posted "It is apparent now more than ever, that if you are a patriot, you will be targeted and they will come after you, funny thing is that they don't realize is, is we are coming for them."

On January 6, 2021, the Defendant acted on the violent undertones of his social media

messages. Contrary to his assertions, Defendant did not lead a large group of Proud Boys members to the Ellipse to attend a rally; rather, they marched; rather, Defendant and co-conspirators Joseph Biggs and Zach Rehl were at the head of the pack, as they led the group from the Washington Monument to the U.S. Capitol with the purpose of interfering with the Electoral College certification. Defendant's leadership role in the surge forward and the group's coordinated actions to dismantle metal barriers reflects the results of the plan that he and the co-conspirators drew up. The photos and videos clearly show a series of intentional actions made without hesitation or regret – including video footage of Defendant personally dismantling a metal barrier that separated the crowd from Capitol Police officers and the Capitol itself.





After marching around the building to the east side and then back to the west, the Defendant and the men he led attacked the Capitol with full force, breaching the restricted Capitol grounds, ignoring commands by law enforcement, dismantling barriers, and forcing the outnumbered officers back to the outer walls of the Capitol building. Eventually, the group pushed their way through the final police line and broke into the building.

The Defendant was not merely a leader of the violent attack but also a participant, as demonstrated by video of the Defendant joining others in dismantling the final metal barrier that separated the large mob from Capitol Police in the west plaza. But the Defendant's dangerousness stems primarily from his role as a leader, and his leadership of those Proud Boys members who stormed the Capitol on January 6 is undeniable based on the evidence of his and others' statements, particularly in the Telegram messages, as well as the photos and videos that show him controlling the group throughout the day.

Rightly so, the Defendant and his co-conspirators are also criminally responsible for the actions taken by others that were foreseeable and in furtherance of the conspiracy and those that they aided and abetted. Here, that includes the destruction of property committed by Dominic Pezzola, a Proud Boys member who is charged in a related case.

It is difficult to overstate the seriousness of not only the Defendant's offenses but those committed by those under his leadership. And there is no reason to believe the Defendant and those who followed him would not act similarly in the future. Accordingly, this factor weighs heavily in favor of detention.

### B.     The Weight of the Evidence Against the Defendant

As noted above, the weight of the evidence against the Defendants is strong, and it weighs in favor of pretrial detention. This evidence comes in multiple forms, including the photographs

and videos of the Defendant and co-conspirators at the Capitol on January 6, 2021, posts and direct messages on social media, and the messages sent and received through Telegram. Together, this evidence paints a clear picture: the Defendant was instrumental in helping to plan the Proud Boys' attack on the Capitol, and he led the Proud Boys in the execution of that plan.

### C. The Defendant's History and Characteristics

Defendant has no known criminal history and also has strong ties to the area in which he resides. Nevertheless, this factor weighs in favor of pretrial detention. As the court noted with regard to defendant William Chrestman,

> [H]is more recent behavior surrounding the events January 6 gives rise to significant concerns about the danger he may present to the community. As explained above, the extent of his involvement in the mob clearly poses a danger. In addition, in the nearly two months that have passed since January 6, defendant has not exhibited any remorse for what occurred at the Capitol. Nothing in the record suggests that he has any remorse about the events of January 6 or disclaimed the beliefs and gang membership animating his actions on that day, and thus there is no evidentiary basis to assume that defendant will refrain from similar activities, if instructed, in the future.

United States v. Chrestman, 21-mj-218 (Docket Entry 23, at 27-28).

This is all equally true with regard to the Defendant, except that Defendant's position with the Proud Boys is that of giving instructions, not receiving them. Everything about Defendant's actions since November 4, 2020, all of his actions in Washington, D.C., on January 6, 2021, and all of his actions and statements since then show that Defendant is completely unrepentant. This weighs in favor of detention.

### D. Risk of Danger to the Community

The Defendant believes that he and his fellow Proud Boys are "Patriots," who are going to "bring back that original spirit of 1776 of what really established the character of what America is. And it's not complacency, it's not low standards. It's 'this is how it's going to be, and I don't

give a god damn.'" By his own admission, Defendant participated in the attack on the U.S. Capitol because he does not accept the result of the Presidential election. In Defendant's view, "No democracy, no peace," and, as he stated both before and after the attack, the police—and those that support them—are "part of the problem."

Allowing Defendant to stay on pretrial release, even in home confinement, would leave a man who has the wherewithal to help plan and lead a large group of men in a violent attack to take similar actions in the future in furtherance of his goals. And there is every reason to believe he poses the same risk of danger to others and the community that he posed leading up to and on January 6. This risk underscores Defendant's dangerousness and the need to detain him without bond pending trial.

## CONCLUSION

When the government originally moved for detention, the Chief Judge concluded that home confinement could reasonably assure the community's safety, but the Chief Judge properly assessed that it was a close call. Since that time, the government's investigation has uncovered additional facts and the calculation has materially changed—what was a close call now tips in the other direction. The additional facts demonstrate that the defendant participated in and led a violent attack upon this county's democracy and Capitol. It is now clear that there is no condition or combination of conditions, including home confinement, that could reasonably assure the appearance of the Defendant as required and, more importantly, the safety the community. A presumption in favor of detention exists in this case which Defendant cannot rebut. Even if he could, all four of the Bail Reform Act factors weigh heavily in favor of detention.

WHEREFORE the United States respectfully requests that this Court revoke Defendant's pretrial release and order that Defendant be detained without bond pending trial in this matter.

                                CHANNING D. PHILLIPS
                                Acting United States Attorney
                                D.C. Bar No. 415793

By:      */s/ James B. Nelson*
            JAMES B. NELSON
            D.C. Bar No. 1613700
            JASON B.A. MCCULLOUGH
            D.C. Bar No. 998006; NY Bar No. 4544953
            LUKE M. JONES
            VA Bar No. 75053
            Assistant United States Attorneys
            555 4th Street, N.W.
            Washington, D.C. 20530
            (202) 252-6986
            james.nelson@usdoj.gov

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on March 20, 2021.

By:     */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov