# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | : Case No. 21-CR-175-2 |
| | : |
| **JOSEPH BIGGS,** | : |
| | : |
| **Defendant.** | : |

## UNITED STATES' MOTION TO REVOKE PRETRIAL RELEASE

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this Motion to Revoke Defendant's Pretrial Release. The bases for this Motion follow.

## FACTS AND PROCEDURAL POSTURE

On January 19, 2021, Defendant Joseph Biggs was charged by criminal complaint with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), as well as misdemeanor offenses stemming from the January 6, 2021, attack at the U.S. Capitol. United States v. Biggs, 21-MJ-126 (Docket Entry 1). Defendant was arrested in his home state of Florida on January 20, 2021. Id. (Docket Entry 5). The United States did not move the Court to detain Defendant pending trial because the complaint, which was based on information available to the United States less than two weeks after the attack on the Capitol, did not support such a motion at that time.

Now before the Court is a superseding indictment, which charges the Defendant and three others with conspiracy as well as several serious felonies stemming from the January 6 attack. In addition, the new evidence set forth in the indictment highlights the grave danger that the Defendant poses to others and the community. That new evidence includes:

- Encrypted Telegram messages among members of the Proud Boys related to the events of January 6 make clear that Defendant held a leadership position in the planning for January 6. For example:

  - On January 5, between 9:30 – 9:32am Defendant stated "What are the teams. I keep hearing team [sic] are picked already." A few minutes later, Defendant stated "Who are we going to be with. I have guys with me in other chats saying teams are being put together."

  - On January 5, between 5:22 – 5:25pm, Defendant stated "Woth [sic] [co-conspirator Ethan Nordean] trying to get numbers so we can make a plan." Defendant then stated "Just trying to get our numbers. So we can plan accordingly for tonight and go over tomorrow's plan."

  - On January 5, at 5:52pm, Defendant stated "We are trying to avoid getting into any shit tonight. Tomorrow's the day" and "I'm here with [co-conspirator Nordean] and a good group[.]"

  - On January 5, between 9:17 and 9:20pm, Defendant stated "We just had a meeting woth [sic] a lot of guys. Info should be coming out" and then "I was able to rally everyone here together who came where I said" and then, "We have a plan. I'm with [co-conspirator Nordean]."

  - On January 5, at 9:34pm Defendant told co-conspirator Charles Donohoe to communicate to Proud Boys members a message stating that the group in Washington, D.C. would meet at the Washington Monument at 10am on January 6.

- Defendant marched the group to a pedestrian entrance to the Capitol shortly before 12:53pm. Within four minutes of arrival, the crowd, including the Defendant and his co-Defendants, the men under their leadership, and others in the crowd, stormed the Capitol grounds.

- As the Defendant and his co-conspirators led others onto the Capitol grounds, doors and windows and other government property were damaged or destroyed in order to gain entry into the Capitol building.

- After the initial breach, Defendant personally engaged in the destruction of government property by joining forces with Nordean and others to shake and then knock down a metal barrier on the Capitol grounds. Defendant and Nordean then defiantly led the crowd, including those men under Defendant's control, into the West plaza outside the U.S. Capitol.

- As these events unfolded, messages were posted to the encrypted messaging group that encouraged participants in the messaging group to storm the Capitol. One post directed the participants in the group to "get there."

As a leader of the Proud Boys members who stormed the Capitol on January 6, the Defendant presents a danger not only based on his own potential violence, but violence by others who undoubtedly still support him. In light of the new charges and additional evidence of the Defendant's dangerousness, he should be held pending trial.

## ARGUMENT

**1.    The United States' Bases for Detention**

The United States moves for detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including

Destruction of Property in violation of 18 U.S.C. § 1361.  The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property, in violation of 18 U.S.C. § 1361, is a crime of violence.  Moreover, when Destruction of Property is "calculated to influence or affect the conduct of government by intimidation or coercion," it also qualifies as a federal crime of terrorism.  See 18 U.S.C. § 2332b(g)(5)(B).

Defendant is subject to the rebuttable presumption in favor of detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which states that it "shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed… an offense listed in Section 2332b(g)(5)(B) of Title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." Id.  Felony Destruction of Government Property under 18 U.S.C. § 1361, with which the Defendant is charged in Count Four of the Indictment, is among the offenses listed in 18 U.S.C. § 2332b(g)(5)(B).  It is therefore subject to the rebuttable presumption under the Bail Reform Act.  See United States v. Powell, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); see also United States v. Watkins, Case No. 21-cr-28-3 (J. Mehta February 26, 2021); United States v. Bisgnano, Case No. 21-CR-36 (J. Nichols, February 26, 2021).  As Chief Judge Howell explained in Powell:

> Once the presumption is triggered it imposes on the defendant, at a minimum, a burden of production to offer some credible evidence that rebuts it.  Importantly, the burden of persuasion remains with the Government throughout.  In assessing whether a defendant has successfully rebutted the presumption, the Court must take into account the available information concerning the four factors set out in 18 U.S.C. Section 3142(g).

(Tr. at 43, 16-19).[1]

---

[1] Though the Court need not go further than the rebuttable presumption in order to find a statutory basis for detention, it is worth noting that detention is also appropriate pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property is a crime of violence.  See United

4

**2.     The Bail Reform Act Factors Weigh In Favor of Detention**

As the Court is aware, there are four factors under Section 3142(g) that the Court must analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. As noted below, each of these factors weighs in favor of pretrial detention in this case.

**A.     The Nature and Circumstances of the Offense**

The nature and circumstances of the offense are extremely serious. Defendant's posts on social media in November and December, 2020, and into January, 2021, show a discernable trend: declaring the election results to be fraudulent; encouraging others to "fight" to overcome the alleged fraud; and encouraging his followers to assist him in fighting the alleged fraud, including by donating funds and equipment to their effort.

For example, on November 4, 2020, Defendant posted: "The left doesn't realize they are radicalizing people by stealing this election. They are gonna create their own worst enemy from this." On November 5, 2020, Defendant posted: "It's time for fucking War if they steal this shit" On November 10, 2020, Defendant posted a link to an article entitled, "The Second Civil War is More Realistic Than You Think." On November 24, 2020, Defendant posted another person's social media post calling for unity after the election, with the caption "No bitch.  This is war." On December 14, 2020, Defendant posted that the Proud Boys would be coming back to Washington,

---

States v. Nordean, 21-MJ-195, March 2, 2021 Hr'g Tr. 74.

D.C., and they would be "bigger and stronger than ever." On December 16, 2020, Defendant posted "This is a war on Americanism. This is only the beginning."

On December 29, 2020, Defendant posted a video message in which he stated that the Proud Boys would be coming to Washington, D.C. on January 6, and that they would be dressing "incognito." Among other things, Defendant stated, "We will not be attending DC in colors. We will be blending in as one of you. You won't see us. You'll even think we are you . . . We are going to smell like you, move like you, and look like you. The only thing we'll do that's us is think like us! Jan 6th is gonna be epic."

On January 1, 2021, Defendant posted, "2021 is the year we take back America." That same day, he posted: "Trump exposed the swamp. Now we need to cast out every Backstabbing republican. Rip them from their high horse and put in good men and women who are God fearing, conservative, Christian warriors."  That same day, Defendant posted: "Mike pence will betray President Trump. This is my prediction. I will be in DC to witness this historic Judas moment when he turns on the right thing to do for mere coin."

On January 2, 2021, Defendant posted that people who "carry thin blue line flags," which indicate support for law enforcement officers, "are totally unaware of what's really going on[,]" and that "Most law enforcement departments in metropolitan areas are no on the side 'of the people'" and that they exist to "enforce tyranny."  That same day, Defendant posted: "The government should fear the people.  Not the other way around.  You work for us.  You don't have ruling power over me.  We only allow you to have that privilege. FAFO."[2]

On January 3, 2021, an interview with Biggs was posted on YouTube, in which Biggs discussed his role in planning Proud Boys events. During that interview, Defendant stated "When

---

[2] "FAFO" is an acronym for F*** Around and Find Out, a euphemism commonly used by Proud Boys.

we set out to do an event, we go alright, what is or main objective? And that's the first thing we discuss. We take three months to plan an event. And we go, what's our main objective? And then we plan around that, to achieve that main objective, that goal that we want."

On January 6, 2021, the Defendant took action, leading a march along with co-conspirators Nordean and Zach Real from the Washington Monument to the U.S. Capitol. As he had previewed, Defendant was prepared to use force to stop the Electoral College certification. Defendant's leadership role in the surge forward and the group's coordinated actions to dismantle metal barriers reflects the results of the plan that he and the co-conspirators drew up. The photos and videos of these critical moments show a series of intentional actions made without hesitation or regret, including the Defendant's own actions to break down a metal barrier that separated the crowd from Capitol Police officers and the Capitol itself, and his subsequent exclamation that "This is Awesome!" after entering the Capitol through a door that had been broken open by rioters.





The Defendant's own destructive conduct does not adequately capture his danger to the public. The true nature of Defendant's dangerousness stems from his role as a leader, and his ability to encourage and coordinate the actions of others in breaching the Capitol at a precise place and time. Indeed, Defendant and his co-conspirators are criminally responsible for the actions taken by those who joined in the plot. Here, that includes the destruction of property committed by Dominic Pezzola, a Proud Boys member who is charged in a related case.

It is difficult to overstate the seriousness of not only the Defendant's offenses but those committed by those under his leadership.  And there is no reason to believe the Defendant and those who followed him would not act similarly in the future. Accordingly, this factor weighs heavily in favor of detention.

### B.     The Weight of the Evidence Against the Defendant

As noted above, the weight of the evidence against Defendant is strong, and it weighs in favor of pretrial detention.  This evidence comes in multiple forms, including the photographs and videos of the Defendant and co-conspirators at the Capitol on January 6, 2021, posts and direct messages on social media, and the messages sent and received through Telegram. This includes Defendant's admission that the members of the Proud Boys with whom he operated do not randomly arrive at a location and spontaneously march around.  Rather, they take "months to plan an event", and their planning involves them asking "what's our main objective? And then we plan around that, to achieve that main objective[.]"

### C.     The Defendant's History and Characteristics

Defendant has no known criminal history and also has strong ties to the area in which he resides.  Nevertheless, this factor weighs in favor of pretrial detention.  As the court noted with regard to defendant William Chrestman,

> [H]is more recent behavior surrounding the events January 6 gives rise to significant concerns about the danger he may present to the community. As explained above, the extent of his involvement in the mob clearly poses a danger. In addition, in the nearly two months that have passed since January 6, defendant has not exhibited any remorse for what occurred at the Capitol. Nothing in the record suggests that he has any remorse about the events of January 6 or disclaimed the beliefs and gang membership animating his actions on that day, and thus there is no evidentiary basis to assume that defendant will refrain from similar activities, if instructed, in the future.

United States v. Chrestman, 21-mj-218 (Docket Entry 23, at 27-28).

This is all equally true with regard to the Defendant, except that Defendant's position with the Proud Boys is that of <u>giving</u> instructions, not <u>receiving</u> them. Everything about Defendant's actions on behalf of the Proud Boys since November 4, 2020, all of his actions in Washington, D.C., on January 6, 2021, and all of his actions and statements since then show that Defendant is completely unrepentant. This weighs in favor of detention.

### D. Risk of Danger to the Community

Defendant's public statements leading up to January 6, and his actions on January 6, make plain that Defendant traveled from Florida to Washington, D.C. with every intent to march at the front of the Proud Boys and attack the capitol. By his own admission, Defendant "spent months" helping to plan for January 6 because he refused to accept the result of the Presidential election. Moreover, his statements after January 6 show that he has no remorse. For example, on January 6, Defendant posted "What a day" on his Parler page. On January 7, 2021, Defendant posted "R.I.P. America 1776-2021."

Allowing Defendant to stay on pretrial release, even in home confinement, would leave a man who has the wherewithal to help plan and lead a large group of men in a violent attack to take similar actions in the future in furtherance of his goals. And there is every reason to believe he, like his co-defendants, poses the same risk of danger to others and the community that he posed

leading up to and on January 6. This risk underscores Defendant's dangerousness and the need to detain him without bond pending trial.

## CONCLUSION

Since the Defendant's arrest on January 19, 2021, the Government's investigation has uncovered evidence of his leadership role in an organized and violent attack upon this county's democracy and its Capitol. The Grand Jury has since indicted him on substantially more serious charges. This new evidence makes clear that there is no condition or combination of conditions, including home confinement, that could reasonably assure the appearance of the Defendant as required and, more importantly, the safety of the community. A presumption in favor of detention exists in this case which Defendant cannot rebut. Even if he could, all four of the Bail Reform Act factors weigh heavily in favor of detention.

WHEREFORE the United States respectfully requests that this Court revoke Defendant's pretrial release and order that Defendant be detained without bond pending trial in this matter.

          CHANNING D. PHILLIPS
          Acting United States Attorney
          D.C. Bar No. 415793

By:    */s/ James B. Nelson*
        JAMES B. NELSON
        D.C. Bar No. 1613700
        JASON B.A. MCCULLOUGH
        D.C. Bar No. 998006; NY Bar No. 4544953
        LUKE M. JONES
        VA Bar No. 75053
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-6986
        james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on March 20, 2021.

By: */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov