**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Case No. 21-cr-175-3 (TJK) |
| ZACHARY REHL, | : | |
| Defendant | : | |

**GOVERNMENT'S REPY IN SUPPORT OF ITS MOTION FOR**
**REVOCATION OF RELEASE ORDER AND FOR PRETRIAL DETENTION**

As one of the top planners, organizers, and leaders of the Proud Boys members who attacked the U.S. Capitol on January 6, 2021, defendant Zachary Rehl is among the most culpable for the violence unleashed that day.  Like his co-defendants, Rehl poses a significant, ongoing threat to the community that cannot reasonably be mitigated absent pre-trial detention.  The defendant's opposition to the government's motion fails to rebut the presumption in favor of detention that applies here.   Accordingly, consistent with this Court's April 19, 2021 oral rulings as to co-defendant's Ethan Nordean and Joseph Biggs, the Court should order the defendant's continued detention.

*The Defendant's Role on January 6, 2021*

As explained in the government's motion (Doc. 37), the defendant, in addition to serving as the president of the Philadelphia Proud Boys chapter, was a well-known national leader within the Proud Boys organization prior to the January 6 attack.  Like his co-defendants, his public statements before January 6 promoted violence in response to the Presidential election, which he viewed as "stolen."   As he stated in a post on November 27, 2020: "Hopefully the firing squads are for the traitors that are trying to steal the election from the American people."

As January 6 approached, the defendant emerged as a key figure in the organization's plans for that day.   Specifically, on December 29, 2020, the Proud Boys Chairman announced the leadership and structure of a new chapter, which would be called the Ministry of Self-Defense (MOSD). The leadership and structure included an "upper tier leadership" of six people, which included Proud Boys Chairman, the defendant, and co-defendants Joseph Biggs and Ethan Nordean.   Later that evening, co-defendant Charles Donohoe explained the structure of this "special chapter" with reference to the upcoming trip to Washington, D.C.   Telegram messages indicate that this chapter was not to have any interaction with other Proud Boys attending the event, and the other Proud Boys members attending the event were to coordinate with their own chapters and "do whatever you guys want."

A video call with prospective members of MOSD was held on December 30, 2020, during which the leadership of MOSD introduced the chapter and explained the expectations, including the strict chain of command.   As one member of the upper-tier leadership explained:

> [Directions] could come from any single person that you see on your screen right now . . . but the one thing that everyone has to understand, is, yes, you might be getting told things from different people, but it's all information from the same plan. [Joe] Biggs is not going to tell you something different than I'm gonna tell you.   [Proud Boys Chairman] is not going to tell you something different than **Zach [Rehl]** is going to tell you. It's all one operational plan, so don't get hung up on the delivery. The information is all the same.

As noted in the government's motion, the evidence in this case demonstrates that the defendant was also directly involved in the planning for January 6 by, among other things, raising thousands of dollars and leading the efforts to obtain programmable radios for use on that day.   Furthermore, when others discussed efforts to conceal or destroy evidence of their communications following the Proud Boys Chairman's arrest, the defendant provided guidance, stating, among other things:

"you gotta manually delete each message from each chat 'for everyone' deleting all will only clear it for you, only the owner can nuke the chat."   As to the Chairman's arrest and the likely seizure of his phone by law enforcement, the defendant stated simply: "hopefully he logged outta telegram."

When the Proud Boys members gathered near the Washington Monument on the morning of January 6, 2021, defendant Rehl was one of the leaders of the group.   Even defendant Donohoe, who had taken on a more significant leadership role in the wake of the chairman's January 4, 2021 arrest, deferred to Rehl when he stated on the morning of January 6 that Donohoe had "the keys" until Nordean and Rehl showed up.   The defendant and his co-defendants led the group around the Capitol, ultimately reaching the Peace Monument on the west side where, shortly before 1:00 p.m., the group charged over the police barricades and overwhelmed the law enforcement officers attempting to protect the restricted grounds, building, and ongoing Congressional proceedings. Donning goggles and a mask, the defendant was later able to enter the building with ease following the violence and destruction committed by his co-conspirators, who included not only his co-defendants but also other Proud Boys members such as Dominic Pezzola, who robbed a Capitol Police officer of his riot shield and used that shield to break through a Capitol window.   The defendant celebrated the breach of the Capitol, smoking with others inside a U.S. Senator's office. In a subsequent post to social media, the defendant shared a video of the breach near the First Street pedestrian gate, captioning the video, "How it all started."

In a Telegram message following the attack, the defendant expressed some surprise about the group's accomplishments: "That was NOT what I expected to happen today. All from us showing up and starting some chants and getting the normies all riled up."   And the defendant

further celebrated the attack in a public social media post: "THIS is what patriotism looks like. Today was indeed a historical day for sure. I will never forget this for as long as I live, keep the fight up America! When government fears its people, you have freedom, when people fear government, you have tyranny."   The following day, he continued to express pride in what he and others had achieved while referencing unspecified plans for the future: "I find this hard to believe now. I'm proud as fuck what we accomplished yesterday, but we need to start planning and we are starting planning, for a Biden presidency."   At no point since those statements has the defendant indicated any remorse or regret regarding the events of January 6 or his role in it.

*The Necessity of Pre-Trial Detention and Defendant's Failure to Rebut the Presumption*

As this Court has previously noted and the defendant appears to concede, the superseding indictment establishes probable cause that the co-defendants, including Rehl, committed a violation of 18 U.S.C. § 1361, thus triggering a rebuttable presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(C).   Furthermore, on balance, as this Court determined with respect to co-defendant Biggs and Nordean, the four Bail Reform Act factors under 18 U.S.C. § 3142(g)(1)-(4) weigh strongly in favor of defendant Rehl's continued detention.   *See United States v. Munchel*, 991 F.3d 1273, 1279-80 (D.C. Cir. 2021).

First, the defendant is charged with serious offenses, including an offense defined by Congress as a "federal crime of terrorism" under 18 U.S.C. § 2332b(g)(5)), namely the violation of § 1361.   Like his co-defendants, the defendant is also charged with substantive offenses and conspiracy to stop, delay, or hinder Congress's certification of the Electoral College vote, in violation of § 1512(c)(2); and to obstruct and interfere with law enforcement officers protecting the Capitol and its occupants during a civil disorder, in violation of § 231(a)(3).   As this Court

ruled, these are "gravely serious matters," and the nature and circumstances of the offenses weigh "strongly" in favor of detention, even for defendants not charged with carrying weapons or fighting with police officers. *See* 4/19/2021 Tr. 40:11, 41:12-24, 54:14-17. Contrary to the defendant's claim (at 2-3), the severity of the defendant's offenses is not reduced simply because the defendant did not act "as a principal in the destruction of property"—rather, that fact is consistent with the government's allegation that the defendant was a leader, and thus arguably more culpable for the violence and destruction unleashed by his fellow Proud Boys members, including that of co-conspirator Pezzola.

Second, as with Biggs and Nordean, the weight of the evidence against defendant Rehl is "strong enough to weigh in favor of detention," notwithstanding the facts that some of it is circumstantial and that the defendant's liability for substantive offenses rests in part on attempt or aiding-and-abetting theories. 4/19/2021 Tr. 44:25 – 45:1. Addressing the weight of the evidence, the defendant concedes (at 3) that, following the Capitol attack, he stated that "the officers should be tarred and feathered for attempting to keep them out of the Capitol." He claims, however, that because he purportedly "only marched and breached the Capitol with the flow of the group but did nothing more," his statements should be viewed as "merely words" and that they somehow do not reflect "a lack of remorse." Defendant's claim that the he only marched with others and entered the Capitol "with the flow of the group" preposterously understates his role. In addition to his fundraising and other planning in advance, the defendant himself *led* the scores of chanting Proud Boys members through the city and up to the point where they first breached the restricted grounds, at which point he joined the first wave that pushed over and past law enforcement and forward to the building.

As to the defendant's "words," after the violence at the Capitol—including the dozens of Capitol Police and other law enforcement who were badly beaten and otherwise assaulted—after hundreds of congressional members and employees were terrorized, and after millions of dollars of property damage was inflicted upon the Capitol building, the defendant's celebratory comments and calls for further violence against law enforcement, whom he called "turncoats," are far from just words—they are a clear indication of the danger he poses going forward. Indeed, the defendant's comment that his "words" do not "implicate a lack of remorse" is absurd, and it only highlights the utter lack of any indication of remorse.

Third, as to the history and characteristics of the defendant, nothing in the defendant's past or character—including the family ties, military service, and employment touted in his filing—deterred him from embracing a leadership role in the January 6 attack, and the government remains unaware of any remorse or contrition by the defendant or any attempt to distance himself from the role he played. Instead, before the Court is evidence of the defendant's celebration of the January 6 attack, suggesting that he would not refrain from similar activities in the future. The government therefore submits that this factor weighs, if at all, in favor of detention.

Fourth, as to the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, this Court's assessments as to defendants Biggs and Nordean are again instructive. This Court found, among other things, that those defendants had made statements suggesting that force or violence was justified in response to the supposedly "stolen" election; that they were alleged to have planned, aided, or coordinated the January 6 activities and attacks on law enforcement; that, as leaders of the Proud Boys movement, the defendants could "produce events that draw large numbers of people;" and that the defendants

- 6 -

could communicate by using other another person's phone or computer, even if the Court directed them not to.  4/19/2021 Tr. 54:2 – 56:10.   These assessments apply equally to defendant Rehl and likewise weigh in favor of detention.   Furthermore, like his co-defendants, the evidence demonstrates a desire to destroy incriminating evidence or otherwise conceal the group's communications from law enforcement, which cuts heavily against any confidence this Court might otherwise have that the defendant will comply with any conditions of release.

Considered together, the facts in this case establish by clear and convincing evidence that no condition or combination of conditions imposed on the defendant would reasonably assure the safety of other persons and the community, and the defendant should therefore remain detained. This conclusion is consistent with this Court's and the D.C. Circuit's recognition that "[t]hose who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others had cleared the way."   4/19/2021 Tr. 54:15 – 55:1 (referencing *Munchel*).   Moreover, it is in keeping with the Supreme Court's admonition that "conspiracy poses a 'threat to the public' over and above the threat of the commission of the relevant substantive crime – both because the '[c]ombination in crime makes more likely the commission of [other] crimes' and because it 'decreases the probability that the individuals involved will depart from their path of criminality.'"   *United States v. Jimenez Recio*, 537 U.S. 270, 275 (2003) (citing *Callanan v. United States*, 364 U.S. 587, 593-94 (1961)) (brackets in original).

The defendant's opposition fails to rebut the presumption in favor of detention that applies in this case.   Regardless, based on an individualized and forward-looking assessment of the defendant's dangerousness, considered in light of this Court's and the D.C. Circuit's prior rulings,

the defendant should remain held based on the clear and convincing evidence of his dangerousness.

The Court should therefore grant the government's motion, revoke the order of release to home

confinement, which is currently stayed, and order that the defendant be detained pending trial.

<div style="margin-left: 40%">

Respectfully submitted,
CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

*/s/ Luke M. Jones*
LUKE M. JONES, VA Bar No. 75053
JASON B.A. MCCULLOUGH, DC Bar No. 998006
U.S. Attorney's Office for the District of Columbia
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7066

</div>