UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |
| v. | ) Case No. 1:21-cr-175 ) |
| ETHAN NORDEAN, et al., | ) **Judge Timothy J. Kelly** ) |
| Defendants. | ) ) ) |

**DEFENDANT NORDEAN'S RESPONSE TO THE GOVERNMENT'S STATUS REPORT CONCERNING ACCESS TO COUNSEL**

Defendant Nordean, through his counsel, files this response to the government's status report concerning his access to counsel while incarcerated pretrial. ECF No. 126. The government's filing does not comport with the Court's order prompting it. The government inappropriately excluded defense counsel from the relevant discussions on which the report is based. As a result, it provides inaccurate information to the Court. Nordean asks the Court to consider whether the public's faith in the legal system is enhanced when the government is permitted to engage in the following actions.

The Court directed the parties to file a joint status report by July 26 on Nordean's ability to prepare for trial while incarcerated. Yesterday, a day before the deadline, the government sent Nordean's counsel a draft "joint" status report. The government indicated the draft had been composed without any input from the defense and that the government had been holding conversations with the defendant's facility without defense counsel present. On its own, that would have been inconsistent with the Court's order.

But it is worse than that. About five days before, on July 20, Nordean's counsel advised the government in writing that he had learned from an official at the defendant's jail, SeaTac,

1

that the U.S. Attorney's Office was holding conversations about Nordean's attorney-client communications with SeaTac officials without Nordean's counsel present. Nordean's counsel asked the government to produce all of its SeaTac communications about Nordean to the defense. On Thursday, July 22, the government responded that the U.S. Attorney's Office had only "traded voicemails" with a BOP official concerning Nordean, but that it had not "spoken with" the official yet. The government added it would "let [Nordean's counsel] know if [the U.S. Attorney's Office is] able to speak with [the BOP official] and if [the official] provides any additional information."

The government then held additional conversations with SeaTac/BOP officials without including or notifying Nordean's counsel, after counsel had already indicated that the defense should have been included in the earlier communications. On July 27, following the filing of the government's status report, Nordean's counsel held another phone call with SeaTac, having been excluded from the prior conversations. Counsel learned that the government was explicitly advised by SeaTac about significant limitations on the accommodations proposed in the status report. The government omitted them before filing it with the Court. It does not appear to be a coincidence that defense counsel was excluded from such conversations.

The government's actions are inappropriate and suggestive of an effort to create an inaccurate impression of confinement conditions that permit full access to counsel, so as to head off the defendants' reasonable attempts to secure the pretrial release with which they complied for over three months in this case. The inaccurate representations in the government's status report are the result. Here are the reasons why the access-to-counsel claims in the government's status report do not come close to allowing Nordean to adequately prepare for trial in a case

bringing novel legal charges and one in which an enormous amount of discovery material will need to be reviewed with counsel:

**SeaTac representations.**   On page 2, the status report states that, besides the "CJA phone" in a common area,[1] "defendants may also arrange to have hour-long telephone calls with their attorneys that take place in a private room within the facility." That is not accurate.  As Nordean's motion to reopen the bail hearing states, this attorney-client phone line was discontinued at SeaTac in July.  The government accurately reports that SeaTac has "discontinued" the use of video teleconferencing between inmates and their lawyers.  However, it represents that SeaTac is "willing" to consider "options" that would include "permit[t]ing hour-long phone calls in a private room where the defendant could review legal materials and notes from his discovery review with defense counsel, and limited VTC meetings during which defense counsel could confer with the defendant over video."

The Court will notice that this "option" is intended to convey to the Court the impression of multiple hour-long phone calls.  In fact, a SeaTac official advised counsel on July 27 that, in its ex parte communications, the government merely inquired whether Nordean could make *a single hour-long phone call in the private room.*[2] The SeaTac official said that the government's attorneys stressed that they were only seeking a temporary solution before moving Nordean back

---

[1] As Nordean explained previously, (1) he and his counsel cannot plan calls on this line as the defendant may use it only in the snatches of time when it is unused by other inmates, (2) the jail noise in the common area is deafening and not private, and (3) Nordean cannot review electronic evidence when using this phone.

[2] Even as it omits material facts, the government quips that its generous jail accommodations are "apparently unwelcome" to Nordean.  ECF No. 126, p. 1.  Jailing people so they cannot adequately defend themselves would be less amusing, perhaps, if the government had ever visited a federal prison and understood how hollow the status report's assurances are, even before one accounts for its omissions.

3

to D.C. The official added that the government's lawyers did not discuss accommodations that would include intensive trial preparation—but rather a single phone call. SeaTac could not accommodate more than about one call per week at best, in that case, said the official on July 27.

The Court will also notice that the government does not explain the "legal materials" that it says Nordean would be able to review during his hour-long phone call, singular. Before the government held conversations with SeaTac without defense counsel present, Nordean emailed the facility, copying the government's lawyers, about whether the defendant could hold telephone calls with his lawyer on a privileged attorney-client line and review electronic discovery at the same time. SeaTac never responded to that question, nor does the status report answer it. A SeaTac official advised counsel that there is no room in the facility where an inmate can do both things. So, in a case involving thousands of pages of documents, and hundreds of hours of video, the government proposes that the defendant review the material and then discuss it from memory with counsel at some later point, possibly weeks later. The Court will also notice that the status report does not indicate:

- how often Nordean will be permitted "limited" VTC meetings and whether he will be allowed to review electronic discovery during them; and
- how long Nordean must wait before being able to review CDs/DVDs in his unit (in the D.C. jail, as shown below, the wait can last a month or longer).

The Court will notice that the status report says that SeaTac will require "at least" 72 hours advance notice in order to "approve and process" any VTC meeting Nordean and his counsel request. As in the D.C. jail (see below), requirements like this effectively result in wait times of a month or more, given the demands placed on jails' limited VTC capacity.

4

**D.C. jail representations.**  The government advises that, owing to the policy of the U.S. Marshals Service, Nordean will "eventually" be transferred to the D.C. Department of Corrections.  In fact, the government's lawyers advised SeaTac—but not the Court or the defense—that the government is attempting to make this happen as soon as possible.  Nordean also notes that this decision is ultimately in the hands of the Court, not the Marshals.  That is why the Chief Judge, among others, has repeatedly entered orders in January 6 cases to stay the transfer of defendants to the D.C. jail.  See, e.g., *United States v. McHugh*, 21-cr-453, ECF No. 8 (D.D.C. 2021) (Howell, C.J.) (staying Marshals' transfer of defendant to D.C. jail).

The courts have good reasons for staying such transfers.  The government states that the D.C. jail has "robust procedures governing access to defense counsel and the review of discovery materials, including provisions permitting a defendant to have access to voluminous electronic evidence." That is not accurate.

In the first place, the government does not inform the Court that all January 6 defendants are being sent to the Correctional Treatment Facility (CTF) due to threats on their life by inmates and staff.  Even if it were practicable for counsel to continuously visit the jail in person in preparation for trial in a multi-defendant conspiracy case like this, the visiting hours would not even support it.  In the CTF, *visiting hours on weekdays are limited to after 6 p.m.*, i.e., after the close of business.  The "robust procedures" concerning a January 6 defendant's "access to voluminous electronic evidence" consist of the following.  To review evidence on a CD/DVD, inmates must put their name on a waitlist.  Because the laptop on which they review evidence is shared, inmates' wait to see discovery material can take up to *a month or more*, according to the Office of the Federal Public Defender.  The government's status report does not disclose that.

As for video teleconferencing, the FPD advises that an inmate in CTF can expect no more than *one meeting per week, but likely less often than that*. The government notes that the office of one of Nordean's lawyers is in Virginia and the jail is in D.C., so in-person visits will be sufficient. That is wrong. Here are some of the reasons the *D.C.* FPD uses VTC to meet with clients in the *D.C.* jail. Any "contact visit" between a lawyer and an inmate (where the former can review evidence with the latter, in person) automatically results in the inmate being put in quarantine for 14 days. That is two weeks of solitary confinement. In addition, the D.C. jail has advised that if lawyers start visiting frequently in person, that will result in even less VTC meeting availability, as jail staff would be moved from that function to in-person visits. Moreover, Nordean's counsel in Virginia is of advanced age and would be exposed in the jail to the Delta variant of Covid-19.

The "options" the government has presented—possible VTC availability on an unpredictable and scatted basis, maybe once a week at best—would likely not be sufficient to prepare adequately for any felony charge in federal court. But this case does not involve any felony charge. When it comes to the government's multi-count, multi-defendant conspiracy case against Nordean, involving charges the government has never before filed and an enormous amount of electronic discovery from one of the largest investigations ever mounted by the Department of Justice, the conditions of confinement presented by the government are patently inadequate to even modest trial preparation. The straight-faced proposal of these conditions is made even more outlandish when it is recalled that Nordean had been released pretrial, for over a month, had complied with the release conditions, and was able to work with his counsel. He did not have to put his name on a waitlist to review evidence in his case and wait for a month before talking to counsel about it, from memory.

Had the government been willing to sincerely consider the defendants' offers to meet and confer about release conditions before it insisted on revoking their bail without citing a breach of any release condition, it would have been informed that the above limitations of incarceration would inevitably put this issue back in front of the Court again and again.  The government did not want to discuss it.  It did not want to hear that jailing people pretrial is meant to be limited to cases involving the most extreme risks because it deals a severe blow to their constitutional rights to due process and assistance of counsel.

Dated: July 27, 2021                         Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

**Certificate of Service**

I hereby certify that on the 27th day of July, 2021, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Jim Nelson
>Assistant United States Attorney
>555 4th Street, N.W., Room 4408
>Washington, D.C. 20530
>(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>/s/ David B. Smith
>David B. Smith, D.C. Bar No. 403068
>David B. Smith, PLLC
>108 North Alfred Street, 1st FL
>Alexandria, Virginia 22314
>(703) 548-8911 / Fax (703) 548-8935
>dbs@davidbsmithpllc.com
>*Counsel to Ethan Nordean*