```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
        - - - - - - - - - - - - - - - x
        UNITED STATES OF AMERICA           CR Nos. 1:21-cr-00175-TJK-1
                                                   1:21-cr-00175-TJK-2
                 v.                                1:21-cr-00175-TJK-3
                                                   1:21-cr-00175-TJK-4
        1-ETHAN NORDEAN
        2-JOSEPH RANDALL BIGGS             Washington, D.C.
        3-ZACHARY REHL                     Wednesday, November 3, 2021
        4-CHARLES DONOHOE,                 11:00 a.m.

                        Defendants.
        - - - - - - - - - - - - - - - x
```

_____

                    TRANSCRIPT OF STATUS CONFERENCE
            HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                    UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:    Luke M. Jones, Esq.
                          Erik M. Kenerson, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendants:       Nicholas D. Smith, Esq.
                          David B. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869

                          John D. Hull, IV, Esq.
                          HULL MCGUIRE PC
                          1420 N Street, NW
                          Washington, DC 20005
                          (202) 429-6520

                          Ira Knight, Esq.
                          Lisa S. Costner, Esq.
                          FEDERAL PUBLIC DEFENDERS OFFICE
                          301 North Elm Street
                          Suite 410
                          Greensboro, NC 27401
                          (336) 333-5455

APPEARANCES VIA VIDEOCONFERENCE CONTINUED:

For the Defendants:          Jonathon A. Moseley, Esq.
                             JONATHON MOSELEY ATTORNEY AT LAW
                             5765-F Burke Centre Parkway
                             #337
                             Burke, VA 22015
                             (703) 656-1230

Court Reporter:              Timothy R. Miller, RPR, CRR, NJ-CCR
                             Official Court Reporter
                             U.S. Courthouse, Room 6722
                             333 Constitution Avenue, NW
                             Washington, DC 20001
                             (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1       **P R O C E E D I N G S**

2           THE DEPUTY CLERK:  We are on the record in

3    criminal matter 21-175, United States of America v.

4    Defendant 1, Ethan Nordean; Defendant 2, Joseph R. Biggs;

5    Defendant 3, Zachary Rehl; Defendant 4, Charles Donohoe.

6           Present for the Government are Erik Kenerson and

7    Luke Jones; present for Defendant 1 are David Smith and

8    Nicholas Smith; present for Defendant 2 is John Hull;

9    present for Defendant 3 is Jonathon Moseley; present for

10   Defendant 4 are Ira Knight and Lisa Costner; also present

11   are Defendant 1, Mr. Nordean; Defendant 2, Mr. Biggs; and

12   Defendant 4, Mr. Donohoe.  The appearance of Mr. Rehl,

13   Defendant 3, has been waived for this proceeding.

14           THE COURT:  All right.  Well, good morning to

15   everyone.

16           I want to start by apologizing for my voice.  I'm

17   under the weather and, well, fortunately, not with COVID,

18   but this is -- I'm going to do the best I can here this

19   morning.

20           Let me start by laying out a couple matters that I

21   think -- obviously, the parties are interested in getting

22   rulings on the -- relating to -- and have not, and let me

23   explain a little bit about why things -- where they are and

24   what I'd -- how I'd like to, sort of, go from here with --

25   regarding both the various motions regarding detention that

1    are outstanding and the motion to dismiss.

2         You haven't -- you all haven't gotten an answer

3    from me on the detention motions for a couple of reasons.

4    One is, as I've said I think even in my initial ruling, I do

5    think the evidence and arguments of one defendant -- well,

6    because of the nature of the conspiracy charge here, the

7    evidence and arguments that one defendant make do have an

8    impact on my, kind of, decision regarding all the

9    defendants, and it wasn't until yesterday that I had

10   Mr. Rehl's counsel available to -- and Mr. Rehl -- to argue

11   his motion that he made on his client's behalf.  So I now

12   have the evidence and arguments cited by all the defendants

13   and I'm going to get you a ruling on it as soon as I can,

14   but I didn't want to do it until I'd heard from Mr. Rehl.

15        Second, I think one of the -- as you all know, if

16   I were to reopen the detention hearing, one of the things I

17   have to consider is the nature and circumstances of the

18   charges against each defendant, and that, sort of, bleeds

19   into the motion to dismiss because if I were to grant some

20   part -- portion of that motion, then, obviously, that could

21   affect the detention issue.

22        So let me pivot to talk about the motion to

23   dismiss.  I am going to order supplemental briefing on one

24   aspect of the motion to dismiss.  There really -- and I will

25   enter an order later today -- a minute order just laying out

1    this language so you all don't have to scramble to write

2    down exactly the -- what I'm saying.  And they're more --

3    it's more in line with -- or it's -- they're more questions,

4    I think, I'm posing to the Government, but -- so I'm going

5    to give the Government a chance to file something;

6    obviously, the defendants a chance to respond to whatever

7    the Government filed; and then the defense a chance to --

8    the Government a chance to file, sort of, a reply brief, if

9    you will, and we can talk about that -- doing that on a

10   relatively quick turnaround.  But the core of what I'm going

11   to ask the parties to address is really about this issue of

12   the word "corruptly" and how that plays into the argument --

13   the defendants' argument that the 1512(c)(2) charge is

14   unconstitutionally vague.

15          In short, I guess it's two, sort of, points.

16          One is there is a definition of "corruptly" that

17   some courts have batted around and that shows up in the

18   defendants' briefs now and again that incorporates a hope or

19   expectation of either financial gain or other benefit to

20   oneself or a benefit of another person.  As far as I could

21   tell -- and I might be wrong -- I don't see the Government

22   -- I did not see the Government taking any -- the Government

23   hasn't touched that definition; hasn't taken a specific

24   position on whether it's appropriate and why; and then, if I

25   were to adopt that definition, what the implication for this

1   case would be.  So I'm going to ask the Government to

2   address that question.

3          And the second thing is, again, poring over the

4   briefs in this case and in other cases in which this is

5   being litigated before my colleagues, I could not come up --

6   or I could not discern the Government's exact position on

7   the relationship between "corruptly" and the concept of

8   wrongfulness.  In other words, more specifically, I think at

9   points it seems to me the Government suggests that merely by

10  acting unlawfully that that means a person has acted

11  wrongfully, but I think in -- before other judges, I think

12  the party -- the Government has suggested that acting

13  wrongfully requires something more than just unlawfully.

14  And so I -- just so there's no doubt about it, I want to

15  have the Government address that question about whether the

16  relationship between those two concepts -- if there is

17  something more that's required, what is that something more

18  and how does that solve any vagueness issues?

19          So we can talk about a quick -- hopefully, a

20  relatively quick briefing schedule, but I do think I'm going

21  to order that supplemental briefing to try to clarify those

22  two points.  Obviously, when we set a next date here, I'm

23  not going to -- let's put it this way.  With regard to the

24  motion to dismiss, I plan to resolve it through a written

25  opinion, and I will -- that opinion will come -- will be

1    issued as soon as I can issue it and it won't have anything

2    to do with when we set a next date in this case for.  And

3    the same thing goes with the detention issue.  I probably

4    won't write an opinion, but like I did last time, one way or

5    the other, my sense is I'll try to save time and just do it

6    in an oral ruling.  And, again, we don't need each defendant

7    here for that and all the difficulties in terms of getting

8    all of them available through video.  I can just -- I will

9    just let the lawyers know that I'm ready to rule and we'll

10   do that as soon as I am ready.  So that won't have -- that

11   won't be held up by whatever date we choose to come back in

12   either case.  So hopefully, that takes some of -- that

13   resolves some of what, I'm sure -- the questions you're --

14   in your -- in all of the attorneys' minds about where we,

15   kind of, go from here to try to get you all answers on those

16   two separate and very important motions that have been

17   filed.

18          I've read the Government's various reports on

19   discovery.  It seems as though, again, there are -- they --

20   the Government is continuing to produce voluminous discovery

21   in the case.  I know there have been -- I know, from what

22   the Government has filed in this case and in representations

23   that have been made to me in other cases, that there are

24   also ongoing efforts to try to facilitate the detained

25   defendants being able to access some of this information --

1    access some of the different types of electronic discovery

2    that's been produced.  And so obviously, in this particular

3    case, we have defendants who, at the moment, are detained in

4    other parts of the country, and I think it is probably

5    incumbent -- obviously, this could be overtaken by events if

6    I were to grant the detention -- the motions in terms of

7    detention, but I think it's incumbent at this point upon the

8    Government not only to make sure that they're continuing to,

9    obviously, produce the discovery that they've laid out but

10   to make sure that there's a plan one way or the other,

11   assuming the defendants are continued to be detained, that

12   they have a way of accessing it and communicating with their

13   counsel, obviously, particularly as we get closer to trial.

14          And the last thing I'll just mention, my own view

15   is that we should come back, in about 45 days, before the

16   holidays instead of after the holidays, although I'll

17   certainly hear the parties on this.  And the reason for that

18   is I think that, you know, the reason that we have a trial

19   date right now of May 18th is in part because that is the

20   first day that this courthouse -- given the COVID

21   precautions that are in place and given that this is a

22   multi-defendant, six-week trial, that is the first date that

23   was available under the protocols now in place, you know?

24   Hope springs eternal and there are -- the COVID situation

25   may be improving.  I -- it has been improving certainly

1    recently, but it has not -- and whether that change and

2    potential continued improvement allows the court to relax

3    those kinds of -- the precautions that are in place might

4    well mean that we can have an earlier trial date.  I don't

5    know the answer to that, but it seems to me checking in at

6    an earlier time rather than a later time will allow me to

7    assess that or really the court, broadly speaking, and if

8    there is a change, you know, us huddling up to be able to

9    talk about even a sooner trial date, if the parties agree to

10   that, is something I think I don't want to let go all the

11   way until January.  I think it might be helpful at least to

12   check in before the holidays -- (inaudible.)

13         So with the caveat that we can talk about a

14   briefing schedule for that additional briefing that I've

15   asked for, let me turn it over to whoever from the

16   Government wants to respond to anything I've said or

17   anything that they would like to represent on any of these

18   issues and how we go forward.  I don't know whether that's

19   Mr. Jones or Mr. Kenerson.

20         MR. JONES:  Thank you, Your Honor.  Luke Jones for

21   the Government.  And thank you for the introductory remarks.

22         As to the briefing schedule, I think we are

23   flexible.  I would imagine, depending on Your Honor's order,

24   that a couple weeks to reply -- or to file, a couple weeks

25   to oppose, and then a week to reply would be sensible.  And

1    as to coming back, I, you know -- it was our intention to

2    ask to come back in mid-December just to ensure we're on

3    track with discovery.  As I mentioned yesterday, our goal is

4    to, you know, ensure that the May 18th trial date sticks.

5    And so we were -- we're certainly -- we certainly think

6    coming back before the holidays makes sense.  I can provide

7    a further, sort of, update on discovery, but I don't --

8    assuming that's not necessary, I'll turn it back to Your

9    Honor.

10            THE COURT:  All right.  Let's -- let me just,

11    then -- because it -- the main burden here will be on the

12    Government in terms of a briefing schedule, I guess we may

13    as well talk about it at this point.  I'm looking at -- if

14    we had two weeks, that would be -- and, again, I'll enter an

15    order that -- with the precise issues I'd like to have

16    addressed -- but perhaps November 17th as the Government's,

17    sort of, response -- the Government's brief; and then two

18    weeks for the defendants would be December 1, if that's

19    acceptable.  I see some defendants -- well, let me hear from

20    any defendant who thinks December 1 wouldn't work.

21            MR. NICHOLAS SMITH:  (Indicating.)

22            THE COURT:  Mr. Smith?

23            MR. NICHOLAS SMITH:  Yes.  Thank you, Judge.

24            So it appears, based on what the Court has just

25    said, that the bail determination schedule is being linked

1    to this supplemental briefing to some extent.  And so in

2    order to, kind of, address the supplemental briefing

3    schedule, I'd like to just talk about the bail piece of

4    this, because if it's going to be the case that the Court

5    will defer deciding bail until after it's reached a decision

6    on the motion to dismiss, I think we would probably, then,

7    want a much, much shorter briefing schedule on this, sort

8    of, limited issue.  We think that this issue's been briefed

9    in some of the other cases that have -- where we have

10   motions to dismiss.  But, Your Honor, I think on the bail

11   point, it was our impression in the last status conference

12   that the Court had said that it would probably make a

13   decision on the bail reopening motions by this status

14   conference, and the Court said at the beginning of this

15   hearing that clearly dismissal -- the dismissal decision

16   would affect the bail motions for obvious reasons, but we'd

17   just like to make the point that, as the Court knows, the

18   defendant doesn't need to establish that there is no crime

19   in order to be released --

20            THE COURT:  Of course.

21            MR. NICHOLAS SMITH:  -- on detention and -- but

22   we'd just take this a little bit further and say, clearly,

23   there are substantial questions about whether the crimes for

24   which the defendants are detained are legitimate, and that

25   applies to almost every single crime.  And so in a situation

1    where there is a serious question which even the
2    Government's lawyers are calling novel issues and novel
3    interpretations of statutes, I think that would be a very
4    powerful argument for bail even before one reaches the
5    question of whether -- how they're going to be resolved.  If
6    we're at a point where we don't even know in the Court's
7    mind, in the Government's mind, the defense, whether these
8    are crimes, I think that is an extremely potent reason for
9    reopening bail on its own, Your Honor.  But, you know, we
10   would just like to emphasize that since April, we've put
11   together a large body of evidence that the Court had not --
12          THE COURT:  All right.  Mr. Smith, I understand
13   your point.  I'm not -- I don't want to hear argument on
14   this again today.  Here's my -- here's what I think.  I
15   think that the motion -- the issue of the 1512 additional
16   briefing that I've requested potentially could affect the
17   bail hearing.  I think, you know, it gets a little academic,
18   I suppose, but would it -- how it would change it if, for
19   example -- again, I don't want to get ahead of myself or
20   have anyone think -- on our conference here think I've
21   decided this, but if I were to dismiss that one count but
22   not all the other counts, you know, how that would affect
23   the detention decision, it might; it might not.  And so I
24   don't want to say that it would, but I don't want to say it
25   wouldn't, but I certainly don't want to foreclose that.

1          So I'm going to -- I take your point that we need

2     a rapid briefing schedule.  I don't want to foreclose that,

3     in considering -- now that I've heard from Mr. Rehl, if I

4     decide that the outcome of that -- I don't think the outcome

5     of that briefing is going to have any material effect, I'll

6     decide the detention motion, but I don't want to -- I don't

7     want -- I don't know right now the answer to that.  I think

8     it has the potential, but -- so I'm going to give a

9     reasonable -- and this issue about the 1512 is -- it

10    requires supplemental briefing.  So I'm going to give the

11    Government a reasonable opportunity to do that.  Again, if I

12    decide between then and now, now that I've heard all the

13    parties on the issue of the bail, that I don't have to wait,

14    then you'll hear from me sooner.  Believe me.  So I'm not

15    going to -- I'm going to give the Government that two weeks.

16    I think that's reasonable.  And I'm going to give the

17    defense two weeks to respond until December 1.  I take your

18    point, though, Mr. Smith, that I need to move promptly.

19          The Government -- let me ask -- my -- then my

20    thought is for the Government to have -- just to file a

21    reply, if you will, or a response to the defense briefing --

22    to do that by December 8th which is just one week, but given

23    that it's in the nature of a reply, I think that should be

24    sufficient.  Do you agree, Mr. Jones?

25          MR. JONES:  Yes, Your Honor.

```
 1                   MR. NICHOLAS SMITH:  I --

 2                   THE COURT:  All right.  And then -- well, go

 3     ahead.

 4                   MR. NICHOLAS SMITH:  Your Honor, we would just

 5     say, if we're the moving party, I think, in this posture,

 6     that we would be, under the rules, entitled to the final

 7     word, I would think, or --

 8                   THE COURT:  Well, the reason -- Mr. Smith, the

 9     reason I'm doing it this way is only -- and I recognize that

10     you are, obviously, the moving party, but these -- the

11     questions I'm posing, I think, and the questions I'm -- the

12     questions that I'd like the briefing on are -- I feel like

13     you -- the defense position on them is much clearer in the

14     briefing than in the Government's case.  So I mean, I guess,

15     you know, if you all see the need to file something to have

16     the last word, you're free to move for a surreply, but I

17     think they are more in the -- they are questions for which

18     it's the Government's position, it seems to me, is unclear

19     rather than the defense position.  Let's put it that way.

20     So again, if -- you're free to move if you think there's

21     something they have said in their reply that needs further,

22     you know -- that you feel you need to respond to.

23                   MR. MOSELEY:  Your Honor --

24                   THE COURT:  Who --

25                   MR. MOSELEY:  -- Jon Moseley.  I was just going to
```

1    say, technically, perhaps we might get our act together and

2    not need the full two weeks.  So just for scheduling, you

3    know, I would try to endeavor -- maybe, we would be able to

4    move things on after we got the Government's brief.  So the

5    week -- I would just ask that we consider that.

6              THE COURT:  In other words, Mr. Moseley, you're

7    saying if you file something earlier, to have the Government

8    respond earlier?

9              MR. MOSELEY:  Yes.

10             THE COURT:  All right.  Well, I think that's

11   reasonable.  If the defense wants to respond earlier, I can

12   give the Government -- I'll give the Government one week to

13   file something after the defense responds --

14             MR. HULL:  Your Honor, Dan Hull for Joe Biggs.

15   Just to add to that, my notion was that, maybe, we could

16   just set an earlier date -- and Mr. Smith, of course, might

17   want to comment about this -- but an earlier date by a week

18   and shorten everything by a week --

19             THE COURT:  Well, it -- Mr. Hull, if you're -- if

20   the -- if all defense counsel are in agreement that you only

21   want a week, I'll only give you a week.  I don't want to --

22   is that what --

23             MR. HULL:  I'd like to hear from the others, but I

24   think that would be -- given what you're saying, that would

25   make more sense for the --

```
 1              THE COURT:  All right.
 2              MR. HULL:  And I guess that would be up to, you
 3    know, Nicholas and Jon, but I'd like an, you know, earlier
 4    date.  You really want to hear something from the Government
 5    and you -- they need those two weeks, and then after that we
 6    just get a week or, you know -- I know this is a short
 7    period of time, but we'll endeavor to do that, is my idea,
 8    and then the reply comes -- we can set that now -- comes in
 9    due course after that, seven days or whatever.
10              THE COURT:  All right.
11              MR. HULL:  Is that --
12              THE COURT:  So let me just summarize where I think
13    we've landed that, I think, reasonably accommodates all the
14    parties.  It would be the Government's brief by November
15    17th, the defense response by the 24th, and any reply by the
16    Government on December 1.  That's two weeks, one week, and
17    one week.  And, look, this doesn't -- Mr. Hull, if, you know
18    -- if you all decide, My gosh, whatever the Government
19    filed, that's -- it's so much more than we thought; we need
20    some extra time, you can move and I'm going to grant that.
21    So I, you know --
22              MR. HULL:  Where there's -- I understand, and we
23    appreciate that, but I --
24              THE COURT:  All right.
25              MR. HULL:  -- like that schedule better, the
```

1    shortened one, and I think I might have some people agree

2    with me.  Maybe not.

3            THE COURT:  All right.  Is that -- Mr. Jones, is

4    that acceptable, then, to you?

5            MR. JONES:  Yeah, I believe so, Your Honor.  I

6    guess I'm looking at the calendar, and it would be the

7    defense filing on the Wednesday before Thanksgiving.  I'm

8    wondering if we couldn't set the last brief for the 3rd

9    which is two days after the 1st, on Friday.

10           THE COURT:  Yeah.  I don't think that -- that's

11   not unreasonable.  That's not unreasonable.  I think that's

12   -- absolutely.

13           MR. JONES:  Okay.

14           THE COURT:  So it would be the 24th and then the

15   -- sorry --

16           MR. JONES:  The 17th and then the 24th.

17           THE COURT:  17th, the 24th, and the 3rd.  17th,

18   the 24th, and Friday -- I think that's reasonable.  All

19   right.

20           MR. NICHOLAS SMITH:  (Indicating.)

21           THE COURT:  And then let's -- I guess we're --

22   we've got the schedules out here.  So my thought is we can

23   come back -- again, it sounds like we were all in

24   agreement -- or at least I should say the Government and I

25   were in agreement.  I don't know what the defense was

1    thinking.  But I, you know -- if the question was coming

2    back before the holidays or after the holidays, I, you know

3    -- for a variety of reasons, including being able to, sort

4    of, make sure we don't get too far ahead of ourselves in

5    terms of the trial date to make sure that things are

6    progressing, but also for me to be able to check in with

7    whatever our court is allowing and be able to check in with

8    you all and to see if there is a way we can do things

9    quicker consistent with the public health and what -- the

10   protocols the court has in place, we will endeavor to do

11   that.  So my thought is it really -- it -- either week,

12   doesn't really matter.  I think we've found in the past that

13   trying to do this on a Tuesday is better because we have the

14   possibility of having Mr. Rehl with us.  So can I propose

15   either -- well, given that we have -- either December 7th or

16   December 14th.  I'll hear from the Government and then I'll

17   hear from each defense counsel about whether those are open,

18   reasonable days.

19          Mr. Jones?

20          MR. JONES:  Yeah, the Government can be available

21   either day.  I think we'd propose -- I think we'd -- the

22   14th would likely be better.  It would also give the Court

23   the time to look at what the Government files on Friday, the

24   3rd.

25          THE COURT:  Right.

```
 1                    MR. JONES:  Still a week in advance of the
 2       holiday.  So that's what would be our preference.
 3                    THE COURT:  Let me hear from -- any -- Mr. Smith?
 4                    MR. NICHOLAS SMITH:  Yes.  Thank you, Judge.  Can
 5       we just respond to something that was two steps back on the
 6       briefing schedule --
 7                    THE COURT:  Yes.
 8                    MR. NICHOLAS SMITH:  -- for the supplemental
 9       motion -- supplementals on the motion to dismiss?
10                    The Court indicated that it wanted to hear from
11       the Government on the "corruptly" points that the Court
12       raised partly because the Government -- and we agree with
13       this -- seems to be taking somewhat different positions in
14       different January 6th cases on the issue.  There's a similar
15       issue related to this, Your Honor, which the Court may be
16       familiar with which is in the case in front of Judge Mehta.
17       The Government filed a series of long supplemental briefs on
18       the issue of whether Section 1512(c)(2) is the only
19       subsection in Section 12 -- 1512 that need not -- that
20       reaches criminalized acts that need not have any connection
21       to the availability or integrity of evidence at all.  And so
22       their theory -- the Government's theory in this case appears
23       to be that this subsection covers -- criminalizes activities
24       that don't concern evidence and proceedings.  And so there's
25       a lot of briefing on this in the other cases, but not -- the
```

1    issue's been, kind of, briefed in this case but not really

2    focused on, and if -- we're, you know, curious if the Court

3    would like to hear about that issue if we're going to do

4    supplemental briefing.

5          THE COURT:  No, I don't need to hear any more on

6    that issue.

7          MR. NICHOLAS SMITH:  Okay.

8          THE COURT:  What do you think about -- is the 14th

9    acceptable, then, to the defense as -- just as far as

10   scheduling goes?

11         MR. HULL:  Dan Hull, Your Honor.  I --

12         THE COURT:  I'm -- okay.  I'll hear from you --

13   whoever wants to, but I was talking to Mr. Smith --

14         MR. NICHOLAS SMITH:  Yes --

15         MR. HULL:  I apologize.

16         THE COURT:  -- just because he had the floor.

17         MR. NICHOLAS SMITH:  That schedule is fine, Your

18   Honor, but the one concern we have is if we're -- again, if

19   we're linking supplemental briefing on the motion to dismiss

20   to bail, it looks like the resolution on bail will come at

21   the end of the year.  If it's -- if our motion to reopen is

22   denied, we wouldn't be able to seek any kind of further

23   review through the next year, probably through January or

24   February.  And so effectively, we would be, you know, unable

25   to challenge bail for -- through the year if we proceed on

 1    this schedule.  So I -- that's why I think we were -- at

 2    least from our part on the Nordean side, we were concerned

 3    about getting a decision, you know, by today's hearing,

 4    given that it's now November.

 5            THE COURT:  Here's what I'll -- Mr. Smith, here's

 6    what I'll say to you about that.  It's obviously a fair

 7    concern.  I think, you know -- but I have these two dueling

 8    things in front of me that potentially one affects the

 9    other.  I -- let me put it this way.  If I think I can

10    resolve you -- that motion at any point along the line that

11    I get the briefing and even if I come to the conclusion that

12    I can resolve it before I even hear from the Government, I

13    will do that.  I'm not going to wait one extra day that I

14    have to if I feel that I can resolve that in whosever favor

15    it -- I resolve it.  So that's all I can say.  That's all I

16    can say.  It won't have anything to do with, for example,

17    when we come back, and I'm going to get you an answer as

18    soon as I can.

19            MR. NICHOLAS SMITH:  Thank you, Judge.  On -- the

20    Court also mentioned an earlier trial date possibility which

21    might play into the Court's considerations on bail.  Your

22    Honor --

23            THE COURT:  It might, but I'm not -- it might,

24    but, Mr. Smith, to be -- just to -- not to cut you off --

25    I'm not -- I, you know -- that's something that I think I'm

 1    obligated to keep making sure that that isn't a possibility,

 2    but it's not something I can bank on one way or the other.

 3    So I'm not assuming -- in ruling on this -- on the motion

 4    for bail, I'm not going to make any assumptions that the

 5    trial date could be moved sooner at all.

 6              MR. NICHOLAS SMITH:  Okay.  Thank you, Judge.

 7              THE COURT:  I can't do that.  I mean --

 8              MR. NICHOLAS SMITH:  Okay.  That --

 9              THE COURT:  -- you know --

10              MR. NICHOLAS SMITH:  In light of what you said,

11    then, we have no issue with the briefing -- supplemental

12    briefing --

13              THE COURT:  All right.

14              MR. NICHOLAS SMITH:  -- and the next appearance

15    date on the 7th or the 14th.

16              THE COURT:  All right.  The 14th -- what are the

17    -- let me -- before we get to specific times on the 14th,

18    Mr. Hull, what are you -- do you have any objection to the

19    14th?  And do you have -- well, do you have any objection to

20    the 14th?

21              MR. HULL:  I'd like, Your Honor, December 7th.

22              THE COURT:  You'd rather the 7th?

23              MR. HULL:  Yes, sir.

24              THE COURT:  All right.  It's fine -- well, I'll

25    find some time.  My day is packed, but I will find some

```
 1    time.  I -- as I said, I am not going to -- as I said
 2    before, I'm not going to, you know -- my resolution of these
 3    two things is not going to be determined by when we come
 4    back.  So if you want to come back earlier, Mr. Hull, that's
 5    perfectly fine --
 6              MR. HULL:  I --
 7              THE COURT:  -- perfectly --
 8              MR. HULL:  I understand.  And --
 9              THE COURT:  Okay.
10              MR. HULL:  -- in that connection -- I'll just get
11    this out of the way now.  Whether or not people are detained
12    pretrial, getting through discovery and getting prepared is
13    going to be an issue with a trial date like that, which I
14    like, you know?  I'm, kind of, the same mind as Mr. Smith
15    is, you know?  Let's do this, you know, if we can do it
16    earlier.  One of the concerns I have is I'm not quite sure
17    about -- I mean, there's -- this is a new and different
18    world when we're taking on all the discovery from this case
19    and basically, kind of, treating it like, you know, big data
20    and mining it with Relativity or something like that.  And
21    it's different -- I wonder about the security.  I get it.
22    But, you know, this is -- what's important discovery in my
23    world -- although I know there's ways to edit this down and
24    make this go well -- is what Joe Biggs thinks about it.  And
25    me feeding what I think about it to him is something that,
```

1    you know -- it's just something that -- it's something to

2    think about.  We have an unusual set of circumstances here.

3    We're doing novel, difficult things.  We talked about that.

4    But, maybe, that's a good reason not to shortchange, you

5    know, the way we mine discovery.  And I'm just throwing it

6    out there.  I'm not quite sure that's the way to do it, and

7    I'm very comfortable with that technology, but not in this

8    case with this much data.  And I get what we're trying to

9    do, and I understand the Justice Department has, you know,

10   had, you know, fountains of this over and over again.  I'm

11   amazed at what -- how organized Luke has been about it.  But

12   it's -- it may be going a little too far in this, kind of,

13   brave new world of January 6th to get at discovery that way.

14   I'm just throwing it out there.

15           The other thing is -- and this is something, I

16   think, I've argued before -- I am convinced myself that with

17   respect to all four of these jails that these gentlemen are

18   in -- all -- I know for a fact about three of them; I

19   shouldn't say all four -- but they are busy nerve centers,

20   communication centers, and in the case of Mr. Biggs, he's

21   almost, like, their first federal subset detention center

22   trustee, you know?  He's been there.  People come in and

23   out, in and out.  It's -- if the foundation for future

24   dangerousness is being able to plan another January 6th or

25   something like that or an insurrection, I think I would

1    probably think that's more likely to happen from jail, you

2    know -- any of these jails, the three I'm thinking of --

3    than it would from a home detention.  That's another thing

4    to think about.  I mean, there's an enormous amount of flow

5    of people in these places, and I think the Seminole County

6    Jail is one more.  I mean, I -- that would be the place to

7    plan the revolution from, not from Ormond Beach.

8              Having said all that, finally, just to finish

9    this, I know the Bail Reform Act has a temporary -- a

10   release provision -- and I don't mean this as a stickup of

11   going through the back door, but I, kind of, like the idea

12   of, you know, if we can't get to this or somehow we don't

13   get to this in -- on our bail motions and have them

14   released, which we've been spending a great deal of time

15   doing and it's an important issue, why not have an extended

16   temporary release?  Because it still all goes back to, you

17   know, Sixth Amendment issues, preparing for trial, and I

18   think it's something worth thinking about along with the --

19   what technology we use to mine discovery.  And, you know,

20   really, where is future dangerousness most seen under the

21   theories we have right now?  I think it would be more likely

22   to be in jail, frankly, than in anybody's residence.  Maybe

23   that's just me, but these places are teeming and they --

24   it's amazing, the kinds of information that come in and out

25   of them.

 1           And that's it.  I hope you feel better.

 2           THE COURT:  Thank you.

 3           Mr. Hull, to your point, if, you know -- that may

 4    be something you want to take up.  It's not -- as you said,

 5    it's not something that the current motions raised, but if I

 6    deny your motions, that is another avenue that you could

 7    raise in a motion, it seems to me, as we got closer to trial

 8    and, you know -- but we'll -- I would deal with that if you

 9    file it, but fair enough.

10           Mr. Smith, I assume you have no objection to

11    moving the date one day sooner.  I actually have -- I have

12    an all-day -- I realized just now -- conflict with January

13    -- December 7th, but I will figure out a way to work around

14    that and to have a status in this case.  This is more

15    important and I'll figure out something.  But, Mr. Smith,

16    you don't have an objection to moving it to the 7th;

17    correct?

18           MR. NICHOLAS SMITH:  No, Your Honor.

19           THE COURT:  All right.  And neither do any of the

20    other defense counsel, I assume.

21           Mr. Knight, I see you saying no, raising --

22    nodding your head.

23           MR. KNIGHT:  I'm sorry.  I'm working with two

24    different monitors, Your Honor.

25           THE COURT:  All right.

```
 1              MR. KNIGHT:  We -- Ms. Costner and I would prefer

 2     the 14th.  We're fortunate enough to have two attorneys on

 3     the case.  So it may be that both of us wouldn't be able to

 4     be available on the 7th for court obligations or one reason

 5     or another, but one of us can be here, I believe, on the

 6     7th, Your Honor.

 7              THE COURT:  All right.  I'd rather accommodate the

 8     defendants to have it sooner than later.  And so I think the

 9     7th may work somehow.

10              Who -- and who -- I guess it's just Mr. Moseley --

11     (inaudible.)  You don't have any objection to the 7th?

12              MR. MOSELEY:  No, either date is fine for me.  I

13     think your deputy, Katrina Harris, may know better than I do

14     in terms of what hours work for the Philadelphia Detention

15     Center.  When I go in there personally, I've had good

16     results, but the technical connection is not something --

17              THE COURT:  Right.

18              MR. MOSELEY:  -- I'm directly involved in.

19              THE COURT:  The answer is we won't know until, I

20     think, the week before if he can be married up at the same

21     time.  So if it has to be a different time, I'll take you at

22     a different time, but there's -- we can't know -- I know --

23     we've done this enough to now know that we can't know in

24     advance.

25              Mr. Moseley, I also -- just one thing I realized
```

1     as we were talking.  The -- I don't think you have joined

2     the motion to dismiss.  So if you -- we were talking about

3     supplemental -- the -- this supplemental briefing.  I

4     suppose at this point, if you want to file something that

5     says you join it, that's fine, but at this point, I don't

6     think your client is on the motion to dismiss.

7              MR. MOSELEY:  Yes.  I think I'll discuss that with

8     the counsel -- the -- I want to be associated with it.  I

9     don't know if I've -- that would foreclose me from raising

10    any additional items.  So I think we'll -- I will do that

11    quickly --

12             THE COURT:  All right.

13             MR. MOSELEY:  -- and inform notice to the Court.

14             THE COURT:  All right.  So Ms. Harris, what time

15    -- let's assume -- I know we have to move a bunch of other

16    things we have on the calendar.  What do you suggest as far

17    as a time on the 7th?

18             THE DEPUTY CLERK:  In order to have Mr. Rehl, I

19    suggest 10:00 o'clock.

20             THE COURT:  All right.  And that would make it

21    possible for us to have Mr. Rehl with us if we did it --

22             THE DEPUTY CLERK:  Possible, but not guaranteed.

23             THE COURT:  Right.  Right.  Exactly.

24             All right.  So we will set it, then, at 10:00

25    o'clock on the 7th and hope we can have Mr. Rehl with us.

1    If we don't, then, obviously, Mr. Moseley, we'll be in touch

2    with you about what time we have your client with us.

3           Let's see.  My, you know -- given the supplemental

4    briefing that I've ordered, I think, at this point, the

5    reality is that the Speedy Trial Act would continue to be

6    tolled on that basis alone, but I'd be prepared to toll it

7    in the interests of justice on the basis of discovery and

8    because of the pandemic, but let me hear from the Government

9    and from counsel.  I -- but I'll certainly hear if there are

10   any other issues the parties want to discuss before we wrap

11   up today.  But for purposes of the next date, what is the

12   Government's request between now and December 7th?

13           MR. JONES:  The Government would move the Court to

14   exclude time between today's hearing and the hearing on the

15   7th under the Speedy Trial Act based on the interests of

16   justice the Court's previously articulated, including the

17   complex nature of the case, the voluminous discovery

18   involved.  I believe the Chief Judge issued an updated order

19   on the 1st excluding time until December 15 which is beyond

20   the 7th.  And to the extent Your Honor's issuance of

21   supplemental briefing requirements also tolls, that would

22   provide an additional basis.

23           THE COURT:  Does it -- let me hear from you,

24   Mr. Smith, on that.

25           MR. NICHOLAS SMITH:  We agree with the Court's

1    decision that, given the pending motion to dismiss for which

2    we received a hearing, that the Speedy Trial Act would be

3    tolled automatically without defendant consent until the

4    motion's resolved.

5            THE COURT:  All right.  And you have no position

6    on the interests of justice bases?

7            MR. NICHOLAS SMITH:  Well --

8            THE COURT:  Or they're just -- they're irrelevant

9    in your view?

10           MR. NICHOLAS SMITH:  Yes.  Yes, Your Honor.

11   They're irrelevant.  Yeah.

12           THE COURT:  All right.  Mr. Hull, your view on

13   this?

14           MR. HULL:  Mr. Biggs and I think that we agree

15   with the Government's speedy trial request.  We're --

16   consideration -- that's fine with us.

17           THE COURT:  All right.  Mr. Moseley?

18           MR. MOSELEY:  I don't have any argument.  I don't

19   want to volunteer waiving anything, but I understand the

20   Government's position is likely to persuade the Court.

21           THE COURT:  Mr. Knight?

22           MR. KNIGHT:  Mr. Smith has the right,

23   (inaudible) -- of the law, Your Honor.  I believe that the

24   consideration of the motion tolls the statute.

25           THE COURT:  All right.

1            I'm going to go ahead and I will toll the speedy

2     trial clock -- actually, I guess, because we set -- because

3     we were continued briefly -- this status was continued

4     briefly retroactively to -- I guess it would have been

5     October 26th which is when we were scheduled to be here last

6     time -- scheduled to be here -- so I will do that.  I do

7     think that it's -- due to the pending motion and my request

8     for additional briefing on the motion to dismiss, I think by

9     operation of law, it -- that would already toll it, but in

10    addition, I will toll it for the two other reasons the

11    Government has requested in the interests of justice: one,

12    that the case is so unusual and complex that, given the need

13    for discovery -- again, it's been outlined most recently in

14    the submissions the Government submitted to the Court over

15    the last week or so -- that the time be tolled for that

16    reason; and also, for all the reasons laid out in Chief

17    Judge Howell's order of November 1st and the precautions

18    that are in place for COVID-19, and I will adopt as -- the

19    findings that Chief Judge Howell made in that standing

20    order, 20-62, in this case that from now until December 7th

21    is excludable under the Speedy Trial Act in the interests of

22    justice because the Court simply cannot accommodate the

23    trial in this matter -- a multi-defendant trial scheduled to

24    last six weeks -- and, consistent with the limitations that

25    have been put in place in this courthouse, cannot

1    accommodate the trial between now and December 7th.

2             All right.  Are there any other issues that the

3    Government, for the moment, wants to raise with me --

4             MR. JONES:  No, Your Honor.  Thank you.

5             THE COURT:  -- that don't require me to talk very

6    much?  Okay.

7             Any defense counsel -- maybe, the easiest thing to

8    do is raise your hand --

9             MR. NICHOLAS SMITH:  (Indicating.)

10            MR. HULL:  (Indicating.)

11            THE COURT:  -- so I can see.  All right.  I see

12   Mr. Hull and Mr. Smith.

13            Mr. Hull, I'll recognize you.

14            MR. HULL:  Thank you, Your Honor.

15            Just -- I think you may have covered this earlier,

16   but I have two questions.  One is, you are going to have a

17   written order scoping out what you're looking for in the

18   briefing?  I mean, a short, you know --

19            THE COURT:  Yes, sir.  Yes.

20            MR. HULL:  And the other question is, about when

21   would that be issued?

22            THE COURT:  Today.

23            MR. HULL:  Today?  Those are my questions.  Thank

24   you.

25            THE COURT:  All right.  Mr. Smith?

```
1              MR. NICHOLAS SMITH:  Thank you, Judge.
2              So now that the Court raised this issue of
3    supplemental briefing, I think it might be appropriate to
4    mention that somehow a very important D.C. Circuit decision
5    has slipped between the cracks in, I think, virtually all of
6    the motion to dismiss briefing in these cases somehow.  The
7    case is called Jeannette Rankin Brigades.  Jeannette Rankin
8    was a congresswoman --
9              THE COURT:  Yes.
10             MR. NICHOLAS SMITH:  -- from Montana, very
11   long-serving.  The case number's 342 F. Supp. 575.  342 F.
12   Supp. 575.  And this case involved the following:
13   Ms. Rankin led 5,000 protesters from Union Station --
14             THE COURT:  Well, Mr. Smith, I -- let me -- I
15   don't want to cut you off, but if you are simply drawing my
16   attention to the case in the spirit of a, sort of, notice of
17   supplemental authority, I think all you need to do is let me
18   know the case cite and that you think it's relevant and I
19   will go -- I will look at it.
20             MR. NICHOLAS SMITH:  Judge, I --
21             THE COURT:  I don't think --
22             MR. NICHOLAS SMITH:  -- wasn't planning to do
23   that.  I wasn't planning to make any argument, just --
24             THE COURT:  All right.  All right.
25             MR. NICHOLAS SMITH:  -- what the case -- so just
```

1    to let the parties know what the case is for potential

2    briefing, this -- the congresswoman led 5,000 protesters

3    from Union Station in a march to the steps of the east front

4    of the Capitol where they stood.  The Chief of the U.S.

5    Capitol Police had previously told Congresswoman Rankin that

6    this would be a trespass under D.C. law and under Title 40

7    -- a Title 40 offense.  The case was litigated.  Jeannette

8    Rankin sued the U.S. Capitol Police Chief.  And the D.C.

9    Circuit ordered the District Court to convene a three-judge

10   panel convened of three -- two Circuit judges and a District

11   Court judge.  The Court will recall that this is the process

12   that the court used to follow when laws were challenged --

13   when judicial review of a law was undertaken, there used to

14   be three-judge panels.  So the three-judge panel held in the

15   Jeannette Rankin Brigades case that the parading on Capitol

16   grounds offense in Title 40 was void for overbreadth.  And

17   what the panel held was that the Capitol grounds, excluding

18   the inside of the building, are a public forum where

19   non-violent protest cannot be criminalized, consistent with

20   the First Amendment.  So the panel held that here --

21              THE COURT:  All right.  Mr. Smith, I will read the

22   case.  I will read the case.  I will read the case.

23              MR. NICHOLAS SMITH:  Okay.  Thank you.

24              THE COURT:  All right.

25              MR. NICHOLAS SMITH:  Thank you, Your Honor.

1          THE COURT:  Absolutely.  Absolutely.  And if

2     that -- obviously, if that is relevant to any of the

3     questions that are part of my order, then the parties are

4     free to cite it, but consider this to be an oral notice of

5     supplemental authority, and we're all on notice of the case

6     that you cited, Mr. Smith.

7          MR. MOSELEY:  (Indicating.)

8          THE COURT:  Mr. Moseley, I see your hand up.

9          MR. MOSELEY:  Just very briefly, in terms of

10    carrying over from our discussion yesterday, it may or may

11    not be relevant to scheduling all these other motions, but

12    I'm going to try to get blank discs down to the U.S.

13    Attorney's Office today, and on -- in terms of getting the

14    discovery over from previous counsel, I hope that will be

15    resolved very quickly.

16         THE COURT:  Yes.  And, Mr. Moseley, let me know if

17    there's any issue there because, you know, that prior

18    counsel has an obligation to get you --

19         MR. MOSELEY:  Yes.

20         THE COURT:  -- anything that he received in a

21    prompt way.

22         MR. MOSELEY:  Yes, Your Honor.

23         THE COURT:  All right.  If there is nothing

24    further, then, the parties are dismissed until December 7th.

25         MR. JONES:  Thank you, Your Honor.

1          (Proceedings concluded at 12:09 p.m.)

2                    * * * * * * * * * * * *

3          <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

4    I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify

5    that the above and foregoing constitutes a true and accurate

6    transcript of my stenographic notes and is a full, true and

7    complete transcript of the proceedings to the best of my

8    ability, dated this 10th day of November 2021.

9                              <u>/s/Timothy R. Miller, RPR, CRR, NJ-CCR</u>
                              Official Court Reporter
10                             United States Courthouse
                              Room 6722
11                             333 Constitution Avenue, NW
                              Washington, DC 20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25