# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : |  |
|  | : |  |
| v. | : | **Case No. 21-CR-175-1, 2, and 4 (TJK)** |
|  | : |  |
| **ETHAN NORDEAN,** | : |  |
| **JOSEPH BIGGS, and** | : |  |
| **CHARLES DONOHOE,** | : |  |
|  | : |  |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

## UNITED STATES' SUPPLEMENTAL BRIEF ON 18 U.S.C. § 1512(c)(2)

**INTRODUCTION**

On November 3, 2021, this Court ordered supplemental briefing on two issues.  First, it directed the parties to address whether the term "corruptly" as used in 18 U.S.C. § 1512(c)(2) should be interpreted to mean acting "with the intent to secure an unlawful advantage or benefit for one's self or for another."  Minute Order (Nov. 3, 2021).  That interpretation of "corruptly" appears principally in criminal tax cases defining the term as used in 26 U.S.C. § 7212(a) and is not appropriate for Section 1512(c)(2).  Nonetheless, even if that formulation were applied here, it would encompass the allegations in the First Superseding Indictment.

Second, noting the proposed interpretation of "corruptly" in Section 1512(c)(2) as requiring proof that a defendant acted wrongfully and with the intent to obstruct, the Court ordered the parties to address how to define the term "wrongfully," including whether acting wrongfully encompasses "merely acting 'unlawfully.'"  Minute Order.  To act "wrongfully" as contemplated in Section 1512(c)(2) refers to acting with "consciousness of wrongdoing" and in a manner that is "immoral, depraved, or evil."  *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005). Acting wrongfully also includes acting in a manner that is "[c]ontrary to law" or "unlawful." *Black's Law Dictionary*, "Wrongful" (11th ed. 2019).  A defendant whose independently unlawful conduct is linked with the intent to obstruct an official proceeding violates Section 1512(c)(2).

**RELEVANT BACKGROUND**

1.  Congress enacted a prohibition on "Tampering with a record or otherwise impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it within the pre-existing Section 1512 as subsection (c).  That prohibition applies to

(c) [w]hoever corruptly--

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.*

18 U.S.C. § 1512(c) (emphasis added).

2.   At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building.  The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 U.S. Presidential Election.  As described more fully in prior pleadings, Defendants Ethan Nordean, Joseph Biggs, Zachary Rehl, and Charles Donohoe (collectively, "Defendants") communicated before January 6 through social media and over encrypted messaging channels about their intention to come to Washington, D.C. on January 6.  On that date, Defendants approached the U.S. Capitol shortly before 1:00 p.m., where they pushed past barricades and forced their way inside the restricted area, through the west plaza of the Capitol grounds, and up to the Capitol building.  Defendants Nordean, Biggs, and Rehl entered the Capitol building; Defendant Biggs entered twice, advancing to the Senate chamber—which lawmakers had evacuated—on his second entry.  Defendant Donohoe, who did not enter the Capitol, broadcast on the encrypted channel that he was "regrouping with a second force."  First Superseding Indictment, ¶ 68.  In the following days, Defendants celebrated the events of January 6, declaring pride at what "we" had "accomplished yesterday" and proclaiming that "if you feel bad for the police, you are part of the problem," and that "[w]e stormed the capitol unarmed," and "took it over unarmed." *Id.* at ¶ 24.

3.   On March 10, 2021, the grand jury returned a superseding indictment, charging Defendants with six counts, including Count One, conspiracy to obstruct the certification of the

Electoral College vote in violation of 18 U.S.C. § 371,[1] and Count Two, obstruction of the certification of the Electoral College vote in violation of 18 U.S.C. § 1512(c)(2).  Defendants moved to dismiss various counts, including Counts One and Two (ECF 94), and several rounds of briefing followed.  *See* ECF 106 (government opposition to dismissal motion); ECF 113 (Defendant Nordean reply); ECF 133 (government surreply); ECF 135 (Defendant Nordean response to government surreply).  On September 21, 2021, the Court heard argument on the dismissal motion, and on November 3, 2021, the Court directed the parties to file supplemental briefs on Section 1512(c)(2).

## ARGUMENT

I.   **The term "corruptly" in Section 1512(c)(2) does not require alleging and proving that a defendant acted with intent to secure an unlawful advantage for himself or another.**

Section 1512(c)(2) provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding" has committed a crime.  A person violates that statute when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding.  *See* 18 U.S.C. § 1512(c)(2); § 1515(a)(1)(B).  The *mens rea* identified in Section 1512(c)(2), "corruptly," requires proof beyond a reasonable doubt that the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully, *i.e.*, with consciousness of wrongdoing.  It does not require, however, establishing that a defendant acted with intent to obtain an unlawful benefit or advantage for himself or another.  But if that interpretation were applied here, the allegations in the First Superseding Indictment would suffice.

---

[1] The conspiracy alleged in Count One included a second object, conspiracy to obstruct, impede, or interfere with law enforcement officers engaged in the lawful performance of their official duties incident to and during a civil disorder.  The questions posed by the Court do not implicate the charged conspiracy's second object.

1.   Since Section 1512(c)(2)'s enactment in 2002, courts have consistently interpreted "corruptly" in Section 1512(c)(2) to require intent to obstruct and wrongfulness.  *See United States v. Delgado*, 984 F.3d 435, 452 (5th Cir. 2021); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Mann*, 701 F.3d 274, 307 (8th Cir. 2012) (same).  Courts interpreting the neighboring provision, Section 1512(c)(1), have reached similar conclusions.  *See United States v. Bedoy*, 827 F.3d 495, 510 (5th Cir. 2016) (a "proper definition" of "corruptly" for purposes of Section 1512(c)(1) is to act "knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" in Section 1512(c)(1) as acting "with the purpose of wrongfully impeding the due administration of justice"); *cf.* Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").

By contrast, no court interpreting Section 1512(c) appears to have understood "corruptly" to require proof that the defendant acted "with the intent to secure an unlawful advantage or benefit either for one's self or for another."  Minute Order.  Courts instead have adopted that interpretation when interpreting "corruptly" as used in 26 U.S.C. § 7212(a), which prohibits "corruptly . . . imped[ing]" federal tax law.  *See United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014) (noting a "consensus among the courts of appeals that 'corruptly'" in Section 7212(a) "means acting with

an intent to procure an unlawful benefit either for the actor or for some other person," and citing cases); *see also* Nordean reply brief, ECF 113, at 19 (citing *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (adopting that interpretation of "corruptly" in Section 7212(a)); *United States v. Popkin*, 943 F.2d 1535, 1540 (11th Cir. 1991) (same); *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985) (same)).  As used in Section 7212(a), the specific intent to obtain an unlawful benefit or advantage requires that the defendant knows both that his obstructive conduct is "directed at efforts to bring about a particular advantage such as impeding the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records," *Reeves*, 752 F.2d at 998, and that the advantage is contrary to law, *see Floyd*, 740 F.3d at 31 ("unlawful benefit").

The federal courts' uniform adoption of a more specific and rigorous definition of "corruptly" in Section 7212(a) accords with other *mens rea* requirements in the criminal tax context.  For example, in *Cheek v. United States*, 498 U.S. 192 (1991), the Supreme Court held that in context of tax offenses, the term "willfully" requires proof "that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."  *Id.* at 201.  That enhanced mental requirement reflected the fact that "the complexity of the tax laws" may make it "difficult for the average citizen to know and comprehend the extent of the[ir] duties and obligations" under those laws, and thus *mens rea* requirements in criminal tax statutes should be interpreted more stringently than in other contexts.  *Id.* at 199-200. A similar approach informs the interpretation of "corruptly" under Section 7212(a).

The meaning of "corruptly" in Section 7212(a) is more specific and demanding than the meaning of that term as applied in other, more general obstruction statutes—including Section 1512(c)(2).  For example, Congress has defined "corruptly" in 18 U.S.C. § 1505 (prohibiting corrupt endeavors to obstruct agency proceedings and congressional inquiries and investigations)

to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."  18 U.S.C. § 1515(b).  The Supreme Court defined the term "corruptly" in Section 1512(b) (prohibiting the corrupt persuasion of another person to withhold information from an "official proceeding") as "wrongful, immoral, depraved, or evil."  *Andersen*, 544 U.S. at 705.  In the context of the general obstruction-of-justice statute, 18 U.S.C. § 1503, courts have defined the term "corruptly" to mean "knowingly and dishonestly," *United States v. Richardson*, 676 F.3d 491, 508 (5th Cir. 2012) (internal quotation marks omitted); "with an improper or evil motive," *United States v. Frank*, 354 F.3d 910, 922 (8th Cir. 2004) (internal quotation marks omitted); or, simply, "with the purpose of obstructing justice," *United States v. Cueto*, 151 F.3d 620, 630 (7th Cir. 1998) (internal quotation marks omitted).  And as noted above, "corruptly" in Section 1512(c) similarly refers to acting "with the purpose of wrongfully impeding" the proceeding.  Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c).[2]

The D.C. Circuit's decisions in *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir.

---

[2] The term "corruptly" as used in the obstruction-of-justice statutes also differs from the use of that term in bribery statutes such as 18 U.S.C. § 201 and 18 U.S.C. § 666.  "Given the equation of bribery with a *quid pro quo*, 'corruptly' in the context of the bribery statute would appear to mean that the defendant accepts money with the specific intent of performing an official act in return." *United States v. Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) (addressing conspiracy to violate Section 201); *see United States v. Suhl*, 885 F.3d 1106, 1114 n.5 (8th Cir. 2018) (upholding jury instruction in Section 666 case that defined "corruptly" as acting "with the intent that something of value be given or offered to influence an agent of the state in connection with the agent's official duties" (quoting *United States v. Jennings*, 160 F.3d 1006, 1019 (4th Cir. 1998))).  At least some courts have applied the unlawful-benefit interpretation to "corruptly" in bribery cases.  *See, e.g.*, *United States v. Dorri*, 15 F.3d 888, 890 (9th Cir. 1994) (upholding jury instruction in Section 201 prosecution that defined "corruptly" as an act that is "done voluntarily and intentionally to bring about either an unlawful result or a lawful result by some unlawful method with a hope or expectation of either financial gain or other benefit to one's self or to another") (internal quotation marks omitted).

1990) (per curiam), and *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), which both discussed the term "corruptly" in 18 U.S.C. § 1505, do not alter this analysis.  In *North*, the D.C. Circuit rejected the defendant's claim that the jury instructions improperly limited his ability to advance a defense that he was authorized by superiors to engage in the charged conduct of obstructing Congress.  910 F.2d at 881.  In so doing, the court found no error given one instruction that identified the applicable intent—"[s]pecific intent requires that a person not only acted knowingly, voluntarily and deliberately, but that he acted with a bad purpose, having decided in his mind what he would do and that he then did something prohibited"—even though no instruction independently defined "corruptly."  *Id.* at 884 (internal quotation marks omitted).  In canvassing different potential definitions of "corruptly," the court observed that a "'corrupt' intent" could "also" include "'the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others.'"  *Id.* at 881-82 (quoting Ballentine's Law Dictionary 276 (3d ed. 1969)).  But the D.C. Circuit ultimately declined to adopt a definition because "corruptly" as used in Section 1505 was "to be understood according to [its] common meaning[], necessitating no specific definitional instructions."[3]  *Id.* at 884.

In *Poindexter*, the D.C. Circuit suggested that "corruptly" as used in Section 1505 was "vague . . . in the absence of some narrowing gloss."  951 F.2d at 378.  After surveying legislative history (including the "[o]rigins" of Sections 1503 and 1505) and case law interpreting Section 1505, the court reversed the defendant's conviction because Section 1505 failed to provide "constitutionally required notice" that the defendant's conduct—making false and misleading statements to Congress—fell within Section 1505's scope.  *Id.* at 380, 386.  The court disclaimed

---

[3] Defendant Nordean therefore errs in referring to the "corrupt intent" language in *North* as a "holding."  Nordean Reply Br., ECF 113, at 19.

any conclusion that "'corruptly'" in Section 1505 was "unconstitutionally vague as applied to all conduct." *Id.* at 385.  And the court declined to adopt as a standard that "'corruptly' means that in acting, the defendant aimed to obtain an 'improper advantage for [himself] or someone else inconsistent with official duty and rights of others.'" *Id.* at 385-86 (quoting *North*, 910 F.2d at 881-82).

Congress's response to *Poindexter* further confirms that the term "corruptly" when applied to congressional obstruction does not require proof of an intent to secure an improper advantage or benefit.  In 1996, Congress enacted the definitional provision in 18 U.S.C. § 1515(b) for the limited purpose of overruling *Poindexter*.  *See* 142 Cong. Rec. 25,468 (1996) (statement of Sen. Bryan); *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 3-4 (D.D.C. 1999).  Rather than require proof that a defendant intended to obtain an improper advantage or benefit for himself or someone else, Congress defined "corruptly" for purposes of Section 1505 as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information."  18 U.S.C. § 1515(b).  That definition does not apply to Section 1512(c)(2)—which was enacted six years after Congress added the definitional provision in Section 1515(b).  Nevertheless, if Congress declined to define "corruptly" with reference to an "intent to secure an improper advantage or benefit" for purposes of the congressional obstruction provision in Section 1505, there is no reason to presume that Congress intended to apply that interpretation to the term "corruptly" as used in the congressional obstruction prohibition in Section 1512(c)(2).  Instead, Congress's decision to leave

"corruptly" undefined in Section 1512(c)(2) suggests that it intended for the term to take on its common meaning, and not the narrower definition applied in criminal tax prosecutions.[4]

2. Even if the term "corruptly" in Section 1512(c)(2) were interpreted to require proving that a defendant acted with intent to secure an improper advantage or benefit for himself or another,[5] the allegations in the First Superseding Indictment would suffice.  An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (internal quotation marks omitted); *United States v. Haldeman*, 559 F.2d 31, 123 (D.C. Cir. 1976) (en banc) (per curiam) ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established.").  "While detailed allegations might well have been required under common-law pleading rules, . . .  they surely are not contemplated by Rule 7(c)(1), which

---

[4] Justice Scalia's concurring opinion in *United States v. Aguilar*, 515 U.S. 593 (1995), also does not suggest a different view.  *See* Minute Order (citing Justice Scalia's concurring opinion in *Aguilar*).  In discussing the interpretation of "corruptly" in Section 1503, Justice Scalia cited *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979), in which the Tenth Circuit surveyed potential definitions of that term, including one that denoted "an act done with an intent to give some advantage [is] inconsistent with official duty and the rights of others. . . . It includes bribery but is more comprehensive; because an act may be corruptly done though the advantage to be derived from it be not offered by another."  *Aguilar*, 515 U.S. at 616 (Scalia, J., concurring) (quoting *Ogle*, 613 F.2d at 238).  But in *Ogle*, the Tenth Circuit concluded that the term "corruptly" "does not superimpose a special and additional element on the offense such as a desire to undermine the moral character of a juror," but instead that "an endeavor to influence a juror in the performance of his or her duty or to influence, obstruct or impede the due administration of justice is per se unlawful and is tantamount to doing the act corruptly."  613 F.3d at 238-39.  The government's proposed definition of "corruptly" in Section 1512(c)(2), which requires proving the defendant's consciousness of wrongdoing and specific intent to impede an official proceeding, is more stringent than the interpretation of "corruptly" approved in *Ogle*.

[5] If the jury in Defendants' case nonetheless were instructed on the improper-advantage interpretation of "corruptly," that instruction should not describe that interpretation as the sole definition of the term.  An instruction along the following lines may be appropriate: "A person acts 'corruptly' if he or she acts knowingly, with intent to obstruct or impede an official proceeding, and with consciousness of wrongdoing.  Acting 'corruptly' includes acting with the intent to secure an improper advantage for oneself or another."  The government reserves the right to submit proposed jury instructions that may differ from this language.

provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Resendiz-Ponce*, 549 U.S. at 110; *see also United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'"). Tracking the relevant statutory language, the First Superseding Indictment charges Defendants with conspiring "to corruptly obstruct, influence, and impede . . . Congress's certification of the Electoral College vote." First Superseding Indictment, ¶ 26; *see id.* at ¶ 70 (similar language for substantive obstruction charge). Coupled with detailed factual allegations, that charging language in the First Superseding Indictment sufficiently "apprise[s] the defendants of the essential elements of the offense with which they are charged." *Haldeman*, 559 F.2d at 124.

## II. Acting "wrongfully" in the context of Section 1512(c)(2) means acting with consciousness of wrongdoing and in a manner that is immoral, depraved, or evil, and includes acting unlawfully.

Interpreted properly, "corruptly" as used in Section 1512(c)(2) refers to a defendant acting wrongfully and with the intent to obstruct an official proceeding. *See supra*, at 5. Consistent with its ordinary meaning, to act "wrongfully" means to act in a manner that is immoral, depraved, or evil. It also includes acting unlawfully. An individual who acts unlawfully with intent to obstruct a congressional proceeding violates Section 1512(c)(2).

The terms "wrongful" or "wrongfully," which are not defined by statute, are "given their common or popular meanings." *North*, 910 F.2d at 881. Acting wrongfully principally denotes acting "[i]n a manner contrary to the principles of justice," or "unfairly." *Wrongfully*, Oxford English Dictionary, *available at* http://www.oed.com; *see* Black's Law Dictionary, "Wrongful" (11th ed. 2019) ("[c]haracterized by unfairness or injustice"); *Masters v. United States*, 42 App. D.C. 350, 356 (D.C. 1914) (defining wrongfully as "in a manner contrary to the moral law or to justice") (internal quotation marks omitted). In the context of the term "corruptly" as used in

Section 1512, the term "wrongful" is akin to "immoral, depraved, or evil." *Andersen*, 544 U.S. at 705.  Stated otherwise, acting wrongfully for purposes of Section 1512 means acting with "consciousness of wrongdoing."[6]  *Id.* at 706.

The wrongfulness component of "corruptly" ensures that Section 1512(c)(2) "reaches only" those who have committed felony obstruction.  *Id.*  Absent evidence establishing that an individual acted with consciousness of wrongdoing, conduct that is "by itself innocuous"—for example, a friend urging another friend to invoke a Fifth Amendment right against self-incrimination or one spouse persuading another not to disclose marital confidences, *see Trammel v. United States*, 445 U.S. 40, 53 (1980)—is not "corrupt" for purposes of Section 1512.  *See Andersen*, 544 U.S. at 703-04.  The same is true of an attorney who seeks to persuade her client to withhold documents covered by the attorney-client privilege from investigative agents even though the attorney "surely intend[s]" that her client not disclose those documents to investigators.  *See id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).  The consciousness-of-wrongdoing standard excludes from liability under Section 1512(c) conduct that may be obstructive but "not inherently malign."  *Id.*; *cf. Matthews*, 505 F.3d at 706 (noting that jury instructions' inclusion of "the word 'wrongfully' in the definition of 'corruptly'" and the instructions' "criminalizing only the act of 'wrongfully impeding the due administration of justice' . . . directed the jury to convict only those who have no legal right to impede justice").

That limitation is particularly important where, as here, Defendants are alleged to have obstructed a congressional proceeding.  *See North*, 910 F.2d at 882.  For example, it would not

---

[6] The consciousness-of-wrongdoing standard announced in *Andersen* applied to the *mens rea* of "knowingly . . . corruptly" in Section 1512(b).  Although Section 1512(c)(2)'s statutory text does not include the modifier "knowingly," the statute does require that the defendant "engage in conduct knowingly."  *Friske*, 640 F.3d at 1291; *Gordon*, 710 F.3d at 1151.

amount to wrongful—and thus corrupt—conduct for an individual to peacefully urge the chairperson of a congressional committee convened to investigate some alleged wrongdoing to stop that investigation on the ground that the investigation "is really designed to embarrass the President (or a Senator), not to investigate wrongdoing." *Id.* Similarly, a political activist might contact his representative and inform the representative that unless she stops spending her time pursuing a certain investigation rather than some other legislative endeavor, the activist's group will oppose her reelection. The activist is "endeavoring to impede or obstruct the investigation," but is not doing so wrongfully, and thus not acting "corruptly" for purposes of Section 1512(c)(2). *See id*. For the same reasons, individuals engaged in protest or speech opposing a government action may intend to obstruct a particular congressional proceeding, but they would not violate Section 1512(c)(2) unless they acted in a manner that was "wrongful, immoral, depraved, or evil." *Andersen*, 544 U.S. at 705.

Acting "wrongfully" includes acting "[c]ontrary to law" or "unlawful[ly]." Black's Law Dictionary, "Wrongful" (11th ed. 2019); *accord Wrongfully*, Oxford English Dictionary, *available at* http://www.oed.com ("[i]n an illegal or unlawful manner; contrary to the law; unlawfully; illegally"). Within the context of Section 1512(c)(2), acting wrongfully can include conduct that evinces the specific intent to obstruct an official proceeding while also independently violating the law. But the term "unlawfully" "is not the full equivalent of wrongfully" because conduct may be unlawful "without being contrary to good morals or to natural justice." *Masters*, 42 App. D.C. at 356 (emphasis and internal quotation marks omitted). Just as obstructive conduct only violates the obstruction statute when it has "a relationship in time, causation, or logic" to the official proceeding, *see United States v. Aguilar*, 515 U.S. 593, 599 (1995), so too must an individual's unlawful conduct bear a relationship to the proceeding he intends to obstruct. Jaywalking or

speeding on the way to the U.S. Capitol violates the law, but such unlawful conduct would be too attenuated to establish wrongfulness or consciousness of wrongdoing simply because the individual in question intends to obstruct a congressional proceeding upon arrival.  Moreover, "wrongful" carries a "much broader and stronger meaning" than "unlawful."  *Masters*, 42 App. D.C. at 356 (internal quotation marks omitted).  Thus, an individual whose conduct amounts to a "public welfare offense[]"—an offense "not in the nature of positive aggressions or invasions," but "in the nature of neglect where the law requires care," that does not cause "direct or immediate injury to person or property," and for which "penalties commonly are relatively small," *Morissette v. United States*, 342 U.S. 246, 255-56 (1952)—may act unlawfully without acting wrongfully.[7]

Whatever "[c]lose cases can be imagined" under Section 1512(c)(2), *see United States v. Williams*, 553 U.S. 285, 306 (2008), Defendants' is not among them.  Defendants did not, for example, submit to a security screening and enter a government building only to make brief speeches or sing in a "spectacle" that "'lasted approximately two to four minutes.'"  *United States v. Bronstein*, 849 F.3d 1101, 1105 (D.C. Cir. 2017) (defendants prosecuted for "'mak[ing] a harangue or oration'" in the Supreme Court in violation of 40 U.S.C. § 6134).  They instead rushed past law enforcement, trampled barricades, three Defendants entered the restricted Capitol building, and, for at least one Defendant, penetrated to the very Senate Chamber from which lawmakers, who should have been certifying the results of the presidential election, had been evacuated.  Those allegations, and the evidence that supports them, describe an effort to corruptly obstruct a congressional proceeding.

---

[7] To the extent the Court were inclined to instruct the jury on the term wrongfully, an appropriate instruction might read: "To act wrongfully means acting with consciousness of wrongdoing and in a manner that is immoral, depraved, or evil.  Acting wrongfully can include acting unlawfully."

# CONCLUSION

For the reasons given here and in the government's other response briefs, the Court should deny Defendants' dismissal motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:     */s/  Erik M. Kenerson*
        Erik M. Kenerson
        OH Bar No. 82960
        JASON B.A. MCCULLOUGH
        D.C. Bar No. 998006; NY Bar No. 4544953
        LUKE M. JONES
        VA Bar No. 75053
        Assistant United States Attorneys
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7201
        Erik.Kenerson@usdoj.gov

        */s/ James I. Pearce*
        James I. Pearce
        Capitol Breach Appellate Coordinator
        United States Attorney's Office
        NC Bar No. 44691
        555 Fourth Street, N.W.
        Washington, DC 20530
        (202) 532-4991
        James.Pearce@usdoj.gov