APPEAL,CAP,CAT B

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:21–cr–00175–TJK</u> All Defendants

Case title: USA v. NORDEAN et al

Magistrate judge case numbers:  1:21–mj–00126–RMM
                                 1:21–mj–00195–ZMF

Date Filed: 03/03/2021

Assigned to: Judge Timothy J. Kelly

Appeals court case number: 21–3022

**<u>Defendant (1)</u>**

| | |
|---|---|
| **ETHAN NORDEAN**<br>*also known as*<br>RUFIO PANMAN | represented by **David Benjamin Smith**<br>DAVID B. SMITH, PLLC<br>108 North Alfred Street<br>1st Floor<br>Alexandria, VA 22314<br>(703) 548–8911<br>Fax: (703) 548–8935<br>Email: dbs@davidbsmithpllc.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>Designation: CJA Appointment<br><br>**Nicholas D. Smith**<br>DAVID B. SMITH, PLLC<br>7 East 20th Street<br>Suite 4r<br>New York, NY 10003<br>917–902–3869<br>Email: nds@davidbsmithpllc.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>Designation: CJA Appointment |

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| 18 U.S.C. 1512(c)(2) and 2;<br>TAMPERING WITH A<br>WITNESS, VICTIM OR<br>INFORMANT; Obstruction of an | |

Official Proceeding and Aiding
and Abetting
(1)

18:371; CONSPIRACY TO
DEFRAUD THE UNITED
STATES; Conspiracy
(1s)

18 U.S.C. 1361 and 2;
GOVERNMENT PROPERTY OR
CONTRACTS >; Destruction of
Government Property and Aiding
and Abetting
(2)

18:1512(c)(2), 2; TAMPERING
WITH A WITNESS, VICTIM OR
INFORMANT; Obstruction of an
Official Proceeding and Aiding
and Abetting
(2s)

18 U.S.C. 1752(a)(1);
TEMPORARY RESIDENCE OF
THE PRESIDENT; Entering and
Remaining in a Restricted
Building or Grounds
(3)

18:231(A)(3), 2; CIVIL
DISORDER; Obstruction of Law
Enforcement During Civil
Disorder and Aiding and Abetting
(3s)

18 U.S.C. 1752(a)(2);
TEMPORARY RESIDENCE OF
THE PRESIDENT; Disorderly
and Disruptive Conduct in a
Restricted Building or Grounds
(4)

18;1361, 2; GOVERNMENT
PROPERTY OR CONTRACTS >;
Destruction of Government
Property and Aiding and Abetting
(4s)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Entering and
Remaining in a Restricted
Building or Grounds
(5s)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Disorderly Conduct
in a Restricted Building or
Grounds
(6s)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| COMPLAINT in VIOLATION of 18 U.S.C. 1361 and 2; 18 U.S.C. 1512(c)(2); 18 U.S.C. 1752(a); 40 U.S.C. 5104(e)(2)(D) and (G) | |

---

Assigned to: Judge Timothy J.
Kelly

Appeals court case number:
21–3021

**Defendant (2)**

| **JOSEPH R. BIGGS** | represented by | **John Daniel Hull , IV** |
| --- | --- | --- |
| | | HULL MCGUIRE PC |
| | | 1420 N Street, NW |
| | | Washington, DC 20005 |
| | | 202–429–6520 |
| | | Fax: 412–261–2627 |
| | | Email: jdhull@hullmcguire.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:371; CONSPIRACY TO DEFRAUD THE UNITED STATES; Conspiracy (1) | |

18:1512(c)(2), 2; TAMPERING
WITH A WITNESS, VICTIM OR
INFORMANT; Obstruction of an
Official Proceeding and Aiding
and Abetting
(2)

18:231(A)(3), 2; CIVIL
DISORDER; Obstruction of Law
Enforcement During Civil
Disorder and Aiding and Abetting
(3)

18;1361, 2; GOVERNMENT
PROPERTY OR CONTRACTS >;
Destruction of Government
Property and Aiding and Abetting
(4)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Entering and
Remaining in a Restricted
Building or Grounds
(5)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Disorderly Conduct
in a Restricted Building or
Grounds
(6)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                                    **Disposition**

None

**Highest Offense Level
(Terminated)**

None

**Complaints**                                                           **Disposition**

COMPLAINT in Violation of
18:1512(c), 18:1752(a) and
40:5104(e)(2)(D) and (F)

Assigned to: Judge Timothy J.
Kelly

**Defendant (3)**

**ZACHARY REHL**                    represented by   **Carmen D. Hernandez**
7166 Mink Hollow Road
Highland, MD 20777
(240) 472–3391
Fax: (301) 854–0076
Email: chernan7@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Jonathon Alden Moseley**
JONATHAN MOSELEY ATTORNEY AT LAW
5765–F Burke Centre Parkway
#337
Burke, VA 22015
703–656–1230
Fax: 703–997–0937
Email: contact@jonmoseley.com
*TERMINATED: 12/14/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Michelle M. Peterson**
FEDERAL PUBLIC DEFENDER FOR THE
DISTRICT OF COLUMBIA
625 Indiana Avenue, NW
Suite 550
Washington, DC 20004
(202) 208–7500 ext 125
Fax: (202) 208–7515
Email: shelli_peterson@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shaka Johnson**
LAW OFFICE OF SHAKA JOHNSON, LLC
1333 Christian Street
Philadelphia, PA 19147
215–732–7900
Fax: 888–285–2104
Email: shaka@shakajohnsonlaw.com
*TERMINATED: 09/06/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**                                    **Disposition**

18:371; CONSPIRACY TO
DEFRAUD THE UNITED
STATES; Conspiracy
(1)

18:1512(c)(2), 2; TAMPERING
WITH A WITNESS, VICTIM OR
INFORMANT; Obstruction of an
Official Proceeding and Aiding
and Abetting
(2)

18:231(A)(3), 2; CIVIL
DISORDER; Obstruction of Law
Enforcement During Civil
Disorder and Aiding and Abetting
(3)

18;1361, 2; GOVERNMENT
PROPERTY OR CONTRACTS
>; Destruction of Government
Property and Aiding and Abetting
(4)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Entering and
Remaining in a Restricted
Building or Grounds
(5)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Disorderly Conduct
in a Restricted Building or
Grounds
(6)

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

Assigned to: Judge Timothy J. Kelly

Appeals court case number: 21–3046

**Defendant (4)**

**CHARLES DONOHOE**                     represented by   **Ira Knight**
FEDERAL PUBLIC DEFENDERS OFFICE
301 North Elm Street
Suite 410
Greensboro, NC 27401
336–333–5455
Email: ira_knight@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Lisa S. Costner**
FEDERAL PUBLIC DEFENDER FOR THE
MIDDLE DISTRICT OF NORTH CAR
251 North Main Street
Suite 849
Winston–Salem, NC 27101
336–631–5172
Email: lisa_costner@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

**Pending Counts**                                      **Disposition**

18:371; CONSPIRACY TO
DEFRAUD THE UNITED
STATES; Conspiracy
(1)

18:1512(c)(2), 2; TAMPERING
WITH A WITNESS, VICTIM OR
INFORMANT; Obstruction of an
Official Proceeding and Aiding and
Abetting
(2)

18:231(A)(3), 2; CIVIL
DISORDER; Obstruction of Law
Enforcement During Civil Disorder
and Aiding and Abetting
(3)

18;1361, 2; GOVERNMENT
PROPERTY OR CONTRACTS >;
Destruction of Government
Property and Aiding and Abetting
(4)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Entering and
Remaining in a Restricted Building
or Grounds
(5)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE
PRESIDENT; Disorderly Conduct
in a Restricted Building or Grounds
(6)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Movant**

| **CABLE NEWS NETWORK, INC.** | represented by | **Charles D. Tobin** |
|---|---|---|
| | | BALLARD SPAHR LLP |
| | | 1909 K Street, NW |
| | | 12th Floor |
| | | Washington, DC 20006 |
| | | 202−661−2218 |
| | | Fax: 202−661−2299 |
| | | Email: tobinc@ballardspahr.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Lauren Russell** |
| | | BALLARD SPAHR LLP |

1909 K Street, NW
12th Floor
Washington, DC 20006
202–661–2200
Fax: 202–661–2299
Email: russelll@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 508–1140
Fax: (202) 661–2299
Email: mishkinm@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**AMERICAN BROADCASTING COMPANIES, INC.**
*doing business as*
ABC NEWS

represented by **Charles D. Tobin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lauren Russell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**ASSOCIATED PRESS**

represented by **Charles D. Tobin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lauren Russell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**BUZZFEED INC.**                    represented by   **Charles D. Tobin**
*doing business as*                                    (See above for address)
BUZZFEED NEWS                                          *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Retained*

                                                       **Lauren Russell**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Retained*

                                                       **Maxwell S. Mishkin**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Retained*

---

**Movant**

**CBS BROADCASTING INC.**            represented by   **Charles D. Tobin**
*on behalf of*                                         (See above for address)
CBS NEWS                                               *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Retained*

                                                       **Lauren Russell**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Retained*

                                                       **Maxwell S. Mishkin**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

*Designation: Retained*

---

**Movant**

**DOW JONES & COMPANY, INC.**          represented by  **Charles D. Tobin**
*on behalf of*                                           (See above for address)
THE WALL STREET JOURNAL                                  *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Lauren Russell**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Maxwell S. Mishkin**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

---

**Movant**

**E.W. SCRIPPS COMPANY**              represented by  **Charles D. Tobin**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Lauren Russell**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Maxwell S. Mishkin**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

---

**Movant**

**GANNETT CO., INC.**                 represented by  **Charles D. Tobin**
7950 Jones Branch Drive                                  (See above for address)
McLean, VA 22107                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

Lauren Russell
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Maxwell S. Mishkin
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**GRAY MEDIA GROUP, INC.**               represented by  **Charles D. Tobin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Lauren Russell
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Maxwell S. Mishkin
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**LOS ANGELES TIMES**                    represented by  **Charles D. Tobin**
**COMMUNICATIONS LLC**                                   (See above for address)
*on behalf of*                                           *LEAD ATTORNEY*
THE LOS ANGELES TIMES                                    *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

Lauren Russell
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

Maxwell S. Mishkin
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Designation: Retained*

---

**Movant**

**NATIONAL PUBLIC RADIO, INC.**          represented by   **Charles D. Tobin**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Lauren Russell**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Maxwell S. Mishkin**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

---

**Movant**

**NBCUNIVERSAL MEDIA, LLC**              represented by   **Charles D. Tobin**
*doing business as*                                       (See above for address)
NBC NEWS                                                  *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Lauren Russell**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

                                                          **Maxwell S. Mishkin**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

---

**Movant**

**NEW YORK TIMES COMPANY**               represented by   **Charles D. Tobin**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

**Lauren Russell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**PRO PUBLICA, INC.**               represented by   **Charles D. Tobin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lauren Russell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**TEGNA, INC.**               represented by   **Charles D. Tobin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Lauren Russell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Designation: Retained*

**Movant**

| | | |
|---|---|---|
| **WP COMPANY LLC** | represented by | **Charles D. Tobin** |
| *doing business as* | | (See above for address) |
| THE WASHINGTON POST | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |

**Lauren Russell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Maxwell S. Mishkin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Erik Michael Kenerson** |
| | | U.S. ATTORNEY'S OFFICE FOR THE |
| | | DISTRICT OF COLUMBIA |
| | | 555 Fourth Street, NW |
| | | Suite 11–449 |
| | | Washington, DC 20530 |
| | | (202) 252–7201 |
| | | Email: erik.kenerson@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant U.S. Attorney* |

**James B. Nelson**
U.S. ATTORNEY'S OFFICE FOR
DISTRICT OF COLUMBIA
555 4th Street NW
Room 4112
Washington, DC 20001
(202) 252–6986
Email: james.nelson@usdoj.gov
*TERMINATED: 10/15/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Jason Bradley Adam McCullough**

U.S. ATTORNEY'S OFFICE
555 4th Street NW
Washington, DC 20530
(202) 252−7233
Email: jason.mccullough2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Luke Matthew Jones**
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252−7066
Fax: (202) 616−8470
Email: luke.jones@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/19/2021 | 1 | | SEALED COMPLAINT as to JOSEPH RANDALL BIGGS (1). (Attachments: # 1 Affidavit in Support) (zstd) [1:21−mj−00126−RMM] (Entered: 01/20/2021) |
| 01/19/2021 | 3 | | MOTION to Seal Case by USA as to JOSEPH RANDALL BIGGS. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21−mj−00126−RMM] (Entered: 01/20/2021) |
| 01/19/2021 | 4 | | ORDER granting 3 Motion to Seal Case as to JOSEPH RANDALL BIGGS (1). Signed by Magistrate Judge Robin M. Meriweather on 1/19/2021. (zstd) [1:21−mj−00126−RMM] (Entered: 01/20/2021) |
| 01/20/2021 | | | Case unsealed as to JOSEPH RANDALL BIGGS (bb) [1:21−mj−00126−RMM] (Entered: 02/09/2021) |
| 01/20/2021 | 5 | | Rule 5(c)(3) Documents Received as to JOSEPH RANDALL BIGGS from US District Court Middle District of Florida Orlando Division Case Number 6:21−mj−1047−EJK (bb) [1:21−mj−00126−RMM] (Entered: 02/09/2021) |
| 01/20/2021 | | | Arrest of JOSEPH RANDALL BIGGS in US District Court Middle District of Florida Orlando Division. (bb) [1:21−mj−00126−RMM] (Entered: 02/09/2021) |
| 01/20/2021 | 38 | | Arrest Warrant Returned Executed on 1/20/2021 as to JOSEPH RANDALL BIGGS. (ztl) (Entered: 03/28/2021) |
| 02/02/2021 | 6 | | SEALED COMPLAINT as to ETHAN NORDEAN (1). (Attachments: # 1 Affidavit in Support) (zltp)[1:21−mj−00195−ZMF] Modified on 3/22/2021 (zltp). (Entered: 02/03/2021) |
| 02/02/2021 | 8 | | MOTION to Seal Case by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(zltp)[1:21−mj−00195−ZMF] Modified on 3/22/2021 |

| | | | |
|---|---|---|---|
| | | | (zltp). (Entered: 02/03/2021) |
| 02/02/2021 | 9 | | ORDER granting 8 Motion to Seal Case as to ETHAN NORDEAN (1). Signed by Magistrate Judge Zia M. Faruqui on 2/2/2021. (zltp)[1:21−mj−00195−ZMF] Modified on 3/22/2021 (zltp). (Entered: 02/03/2021) |
| 02/03/2021 | | | Arrest of ETHAN NORDEAN in US District Court Western District of Washington. (bb) [1:21−mj−00195−ZMF] (Entered: 02/26/2021) |
| 02/08/2021 | 5 | | NOTICE OF ATTORNEY APPEARANCE James B. Nelson appearing for USA. (zstd) [1:21−mj−00195−ZMF] (Entered: 02/08/2021) |
| 02/08/2021 | 6 | | MOTION for Emergency Stay and MOTION for Review of Release Order by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21−mj−00195−ZMF] (Entered: 02/08/2021) |
| 02/08/2021 | 7 | | ORDER, as to ETHAN NORDEAN, GRANTING the government's 6 Motion for Emergency Stay and Review of Release Order. Signed by Chief Judge Beryl A. Howell on February 8, 2021. (lcbah2) [1:21−mj−00195−ZMF] (Entered: 02/08/2021) |
| 02/08/2021 | 8 | | MOTION for Transport Order by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21−mj−00195−ZMF] (Entered: 02/08/2021) |
| 02/08/2021 | 9 | | ORDER, as to ETHAN NORDEAN, GRANTING the government's 8 Motion for Transport Order. Signed by Chief Judge Beryl A. Howell on February 8, 2021. (lcbah2) [1:21−mj−00195−ZMF] (Entered: 02/08/2021) |
| 02/09/2021 | 6 | | Joint MOTION to Toll Speedy Trial by USA as to JOSEPH RANDALL BIGGS. (Attachments: # 1 Text of Proposed Order)(bb) [1:21−mj−00126−RMM] (Entered: 02/09/2021) |
| 02/18/2021 | 7 | | ORDER Granting 6 Joint MOTION to Toll Speedy Trial by USA as to JOSEPH RANDALL BIGGS (1). Time between 2/9/2021 and 3/9/2021 (28 Days) shall be excluded from calculation under the Speedy Trial Act in the interest of justice X−T. Signed by Magistrate Judge Robin M. Meriweather on 2/19/2021. (zpt) (zpt). [1:21−mj−00126−RMM] (Entered: 02/19/2021) |
| 02/22/2021 | 11 | | NOTICE OF ATTORNEY APPEARANCE: David Benjamin Smith appearing for ETHAN NORDEAN (bb) [1:21−mj−00195−ZMF] (Entered: 02/23/2021) |
| 02/22/2021 | 12 | | NOTICE OF ATTORNEY APPEARANCE: Nicholas D. Smith appearing for ETHAN NORDEAN (bb) [1:21−mj−00195−ZMF] (Entered: 02/23/2021) |
| 02/23/2021 | 13 | | Defendant's Motion to Lift Stay on Release Order re 7 Order on Motion to Stay, Order on Motion for Review by ETHAN NORDEAN. (bb) [1:21−mj−00195−ZMF] (Entered: 02/23/2021) |
| 02/23/2021 | 14 | | MOTION to Unseal Case by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21−mj−00195−ZMF] (Entered: 02/24/2021) |
| 02/25/2021 | | | MINUTE ORDER granting 14 Motion to Unseal Case as to ETHAN NORDEAN, DIRECTING the Clerk's Office to unseal this case. SO ORDERED. Signed by Chief Judge Beryl A. Howell on 2/25/2021. (ztg) |

| | | | |
|---|---|---|---|
| | | | [1:21–mj–00195–ZMF] (Entered: 02/25/2021) |
| 02/25/2021 | | | Case unsealed as to ETHAN NORDEAN (bb) [1:21–mj–00195–ZMF] (Entered: 02/25/2021) |
| 02/26/2021 | 15 | | MOTION for Release from Custody *pursuant to 18 U.S.C. s. 3060* by ETHAN NORDEAN. (Smith, Nicholas) [1:21–mj–00195–ZMF] (Entered: 02/26/2021) |
| 02/26/2021 | 16 | | Rule 5(c)(3) Documents Received as to ETHAN NORDEAN from US District Court Western District of Washington Case Number 21–mj–67 (bb) [1:21–mj–00195–ZMF] (Entered: 02/26/2021) |
| 02/26/2021 | | | NOTICE OF HEARING ON MOTIONS in case as to ETHAN NORDEAN re 13 Motion to Lift Stay on Release Order and 15 Motion to Release from Custody Pursuant to 18 U.S.C. § 3060. The parties shall take notice that, unless this case is assigned to another Judge upon the filing of an indictment or information, a Motions Hearing is scheduled for 3/2/2021, at 11:00 AM via videoconference before Chief Judge Beryl A. Howell. Signed by Chief Judge Beryl A. Howell on February 26, 2021. (lcbah2) [1:21–mj–00195–ZMF] (Entered: 02/26/2021) |
| 02/27/2021 | | | MINUTE ORDER (paperless) as to ETHAN NORDEAN DIRECTING the government to submit, by March 1, 2021 at 4:00 PM, a response to defendant's pending 13 Motion to Lift Stay and 15 Motion to Release from Custody Pursuant to 18 U.S.C. § 3060. Signed by Chief Judge Beryl A. Howell on February 27, 2021. (lcbah2) [1:21–mj–00195–ZMF] (Entered: 02/27/2021) |
| 03/01/2021 | | | Set/Reset Hearings as to ETHAN NORDEAN: Motion Hearing set for 3/2/2021 at 11:00 AM via videoconference before Chief Judge Beryl A. Howell. (ztg) [1:21–mj–00195–ZMF] (Entered: 03/01/2021) |
| 03/01/2021 | 17 | | Memorandum in Opposition by USA as to ETHAN NORDEAN re 13 MOTION Defendant's Motion to Lift Stay on Release Order re 7 Order on Motion to Stay, Order on Motion for Review (Nelson, James) [1:21–mj–00195–ZMF] (Entered: 03/01/2021) |
| 03/01/2021 | 18 | | Memorandum in Opposition by USA as to ETHAN NORDEAN re 15 MOTION for Release from Custody *pursuant to 18 U.S.C. s. 3060* (Attachments: # 1 Defendant's Waiver)(Nelson, James) [1:21–mj–00195–ZMF] (Entered: 03/01/2021) |
| 03/01/2021 | 19 | | REPLY TO OPPOSITION to Motion by ETHAN NORDEAN re 15 MOTION for Release from Custody *pursuant to 18 U.S.C. s. 3060*, 13 MOTION Defendant's Motion to Lift Stay on Release Order re 7 Order on Motion to Stay, Order on Motion for Review (Smith, Nicholas) [1:21–mj–00195–ZMF] (Entered: 03/01/2021) |
| 03/02/2021 | | | NOTICE VACATING HEARING as to ETHAN NORDEAN. The parties shall take notice that the motion hearing scheduled to take place today, March 2, 2021, at 11:00 AM is VACATED. A new hearing date and time will be provided by the deputy clerk by the close of business today.(ztg) [1:21–mj–00195–ZMF] (Entered: 03/02/2021) |
| 03/02/2021 | | | NOTICE OF HEARING as to ETHAN NORDEAN. The parties shall take notice that a Motion Hearing is scheduled for 3/3/2021, at 3:00 PM via videoconference before Chief Judge Beryl A. Howell. Connection details for |

| | | | |
|---|---|---|---|
| | | | the hearing will be provided to the parties by the deputy clerk.(ztg) [1:21–mj–00195–ZMF] (Entered: 03/02/2021) |
| 03/02/2021 | 20 | | SUPPLEMENT by ETHAN NORDEAN re 13 MOTION Defendant's Motion to Lift Stay on Release Order re 7 Order on Motion to Stay, Order on Motion for Review *Declaration of Cory Nordean* (Smith, Nicholas) [1:21–mj–00195–ZMF] (Entered: 03/02/2021) |
| 03/02/2021 | 21 | | SUPPLEMENT by USA as to ETHAN NORDEAN re 19 Reply to opposition to Motion, 20 Supplement to any document, 17 Memorandum in Opposition (Attachments: # 1 Exhibits)(Nelson, James) [1:21–mj–00195–ZMF] (Entered: 03/02/2021) |
| 03/03/2021 | 22 | | RESPONSE by ETHAN NORDEAN re 21 Supplement to any document *re: New Evidence Submitted by the Government* (Smith, Nicholas) [1:21–mj–00195–ZMF] (Entered: 03/03/2021) |
| 03/03/2021 | | | Minute Entry for proceedings held before Chief Judge Beryl A. Howell:Motion Hearing as to ETHAN NORDEAN held via videoconference on 3/3/2021. Defendant not present due to an institutional emergency. Defense counsel's oral motion for a waiver under Rule 43, heard and granted. 15 MOTION for Release from Custody pursuant to 18 U.S.C. s. 3060 filed by ETHAN NORDEAN, denied as moot; 6 MOTION for Review of Release Order filed by USA, denied; 13 Defendant's Motion to Lift Stay on Release Order, denied as moot. Magistrate's Release Order AFFIRMED. Defendant released on personal recognizance bond with a condition of home detention, he will be supervised by Western District of Washington. Bond Status of Defendant: personal recognizance with home detention condition/release issued. Present via videoconference: Defense Attorneys: David B. Smith and Nicholas D. Smith; US Attorney: James B. A. McCullough and James B. Nelson; Pretrial Officer: Masharia Holman. Court Reporter: Elizabeth Saint–Loth. (ztg) [1:21–mj–00195–ZMF] (Entered: 03/03/2021) |
| 03/03/2021 | 23 | | ORDER Setting Conditions of Release with Global Positioning System Monitoring. Signed by Chief Judge Beryl A. Howell on 3/3/2021. (Attachments: # 1 Appearance Bond) (ztg) [1:21–mj–00195–ZMF] (Entered: 03/03/2021) |
| 03/03/2021 | 24 | | INDICTMENT as to ETHAN NORDEAN (1) count(s) 1, 2, 3, 4. (zltp) (Entered: 03/04/2021) |
| 03/04/2021 | | | MINUTE ORDER as to ETHAN NORDEAN: Pursuant to the Due Process Protections Act, the Court hereby ORDERS that all government counsel shall review their disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, as set forth in Local Criminal Rule 5.1, and comply with those provisions. The failure to comply could result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, continuances, Bar discipline, or any other remedy that is just under the circumstances. Signed by Judge Timothy J. Kelly on 3/4/2021. (lctjk1) (Entered: 03/04/2021) |
| 03/05/2021 | 8 | | NOTICE OF ATTORNEY APPEARANCE: John Daniel Hull, IV appearing for JOSEPH RANDALL BIGGS (Hull, John) [1:21–mj–00126–RMM] (Entered: 03/05/2021) |

| 03/08/2021 | | | NOTICE OF HEARING as to ETHAN NORDEAN. VTC Arraignment set for 3/16/2021 at 2:00 PM before Judge Timothy J. Kelly. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day in advance to make arrangements to participate. (zkh) (Entered: 03/08/2021) |
| 03/09/2021 | | | ORAL MOTION for Speedy Trial by USA as to JOSEPH RANDALL BIGGS. (ztl) (Entered: 03/28/2021) |
| 03/09/2021 | | | Minute Entry for proceedings held before Magistrate Judge Zia M. Faruqui: Initial Appearance as to JOSEPH RANDALL BIGGS held on 3/9/2021. Defendant present by video. Due Process Order given to the Government. Defendant placed on Standard Conditions of Release. Oral Motion by the Government for Speedy Trial as to as to JOSEPH RANDALL BIGGS (2); heard and granted. Defense concur. Speedy Trial Excluded from 3/9/2021 to 3/30/2021 in the Interest of Justice (XT). Preliminary Hearing set for 3/31/2021 at 1:00 PM by Telephonic/VTC before Magistrate Judge Zia M. Faruqui. Bond Status of Defendant: Defendant Remain on Personal Recognizance; Court Reporter: FTR–Gold; FTR Time Frame: Ctrm 4: [1:56:36–2:12:20];Defense Attorney: John Hull; US Attorney: Jason McCullough; Pretrial Officer: Da'Shanta Valentine–Lewis. (ztl) (Entered: 03/28/2021) |
| 03/09/2021 | 39 | | ORDER Setting Conditions of Release as to JOSEPH RANDALL BIGGS (2) Personal Recognizance. Signed by Magistrate Judge Zia M. Faruqui on 3/9/2021. # 1 Appearance Bond (ztl). (Entered: 03/28/2021) |
| 03/10/2021 | 26 | | (FIRST SUPERSEDING INDICTMENT) filed by USA as to ETHAN NORDEAN (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, JOSEPH RANDALL BIGGS (2) count(s) 1, 2, 3, 4, 5, 6, ZACHARY REHL (3) count(s) 1, 2, 3, 4, 5, 6, CHARLES DONOHOE (4) count(s) 1, 2, 3, 4, 5, 6 (This document is SEALED and only available to authorized persons.) (zltp) Modified sealing on 3/19/2021 (bb). Modified on 3/19/2021 (zltp). (Entered: 03/12/2021) |
| 03/10/2021 | | | Counts added: ETHAN NORDEAN (1) count(s) 1s, 2s, 3s, 4s, 5s, 6s, JOSEPH RANDALL BIGGS (2) count(s) 1, 2, 3, 4, 5, 6, ZACHARY REHL (3) count(s) 1, 2, 3, 4, 5, 6, CHARLES DONOHOE (4) count(s) 1, 2, 3, 4, 5, 6 (zltp) (Entered: 03/19/2021) |
| 03/12/2021 | 29 | | MOTION TO CONTINUE THE ARRAIGNMENT filed by USA as to ETHAN NORDEAN.(This document is SEALED and only available to authorized persons.) (zltp) Modified sealing on 3/19/2021 (bb). (Entered: 03/19/2021) |
| 03/15/2021 | 27 | | MOTION for Bill of Particulars *as to Count Two of the Indictment* by ETHAN NORDEAN. (Smith, Nicholas) (Entered: 03/15/2021) |
| 03/15/2021 | | | MINUTE ORDER as to ETHAN NORDEAN: It is hereby ORDERED that the arraignment set for March 16, 2021, is hereby CONTINUED to March 23, 2021, at 2:00 p.m. via videoconference. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day in advance to make arrangements to participate. Signed by Judge Timothy J. Kelly on 3/15/2021. (lctjk1) (Entered: 03/15/2021) |
| 03/17/2021 | 28 | | Government's MOTION to Unseal Superseding Indictment and Related Documents by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of |

| | | | |
|---|---|---|---|
| | | | Proposed Order)(bb) (Entered: 03/18/2021) |
| 03/17/2021 | 10 | | Receipt for Surrender of Passport as to JOSEPH RANDALL BIGGS. Passport Number 536415609 (zhsj) [1:21–mj–00126–RMM] (Entered: 03/19/2021) |
| 03/17/2021 | 35 | | Arrest Warrant Returned Executed on 3/17/2021 as to CHARLES DONOHOE in Kernersville, North Carolina. (zltp) (Entered: 03/24/2021) |
| 03/19/2021 | | | MINUTE ORDER as to ETHAN NORDEAN granting the Government's 28 Motion to Unseal. It is hereby ORDERED that 26 First Superseding Indictment and 29 Motion to Continue be UNSEALED. The Clerk of Court is instructed to unseal ECF Nos. 26 and 29. Signed by Judge Timothy J. Kelly on 3/19/2021. (lctjk1) (Entered: 03/19/2021) |
| 03/19/2021 | | | Document unsealed as to ETHAN NORDEAN. 29 SEALED MOTION filed by USA as to ETHAN NORDEAN.(This document is SEALED and only available to authorized persons.), 26 Sealed Document (bb) (Entered: 03/19/2021) |
| 03/20/2021 | 30 | | MOTION to Revoke *Pretrial Release* by USA as to ETHAN NORDEAN. (Nelson, James) (Entered: 03/20/2021) |
| 03/20/2021 | 31 | | MOTION to Revoke *Pretrial Release* by USA as to JOSEPH RANDALL BIGGS. (Nelson, James) (Entered: 03/20/2021) |
| 03/21/2021 | 32 | | Memorandum in Opposition by ETHAN NORDEAN re 30 MOTION to Revoke *Pretrial Release* (Attachments: # 1 Exhibit Statement of Nordean's Probation Officer)(Smith, Nicholas) (Entered: 03/21/2021) |
| 03/22/2021 | | | NOTICE OF HEARING as to JOSEPH RANDALL BIGGS (2). VTC Arraignment set for 3/23/2021 at 2:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 03/22/2021) |
| 03/22/2021 | 43 | | Rule 5(c)(3) Documents Received as to CHARLES DONOHOE from US District Court for the Middle District of North Carolina Case Number 21–mj–103 (bb) (Entered: 03/30/2021) |
| 03/23/2021 | 34 | | SUPPLEMENT by ETHAN NORDEAN re 30 MOTION to Revoke *Pretrial Release Government Statements to Media about this Investigation* (Smith, Nicholas) (Entered: 03/23/2021) |
| 03/23/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Arraignment as to ETHAN NORDEAN (1) as to Counts 1s, 2s, 3s, 4s, 5s, and 6s and JOSEPH RANDALL BIGGS (2) as to Counts 1, 2, 3, 4, 5, and 6 held on 3/23/2021. BOTH defendants appeared by video. Plea of NOT GUILTY entered by ETHAN NORDEAN (1) as to Counts 1s, 2s, 3s, 4s, 5s, and 6s and JOSEPH RANDALL BIGGS (2) as to Counts 1, 2, 3, 4, 5, and 6. Speedy Trial Excludable (XT) started 3/23/2021 through 4/1/2021, in the interest of justice, as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). Response to 31 MOTION to Revoke *Pretrial Release* by Defendant JOSEPH RANDALL BIGGS (2) due by 3/29/2021. VTC Motion Hearing/Status Conference set for 4/1/2021 at 2:00 PM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains on Personal Recognizance/PR, 2–Remains on Personal Recognizance/HISP; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV; US Attorneys: James B. Nelson, Jason Bradley Adam |

|  |  |  | McCullough, and Luke Matthew Jones. (zkh) (Entered: 03/23/2021) |
|---|---|---|---|
| 03/26/2021 | 36 |  | MEMORANDUM in Support of Pretrial Detention by USA as to CHARLES DONOHOE (McCullough, Jason) (Entered: 03/26/2021) |
| 03/27/2021 | 37 |  | MOTION to Revoke *Release Order and for Pretrial Detention* by USA as to ZACHARY REHL. (Jones, Luke) (Entered: 03/27/2021) |
| 03/28/2021 |  |  | Terminate Deadlines and Hearings as to JOSEPH RANDALL BIGGS: Preliminary Hearing set for 3/31/2021 at 1:00 PM by Telephonic/VTC before Magistrate Judge Zia M. Faruqui is VACATED. (ztl) (Entered: 03/28/2021) |
| 03/29/2021 |  |  | NOTICE OF HEARING as to CHARLES DONOHOE (4). VTC Arraignment set for 4/6/2021 at 2:45 PM before Judge Timothy J. Kelly. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day in advance to make arrangements to appear. (zkh) (Entered: 03/29/2021) |
| 03/29/2021 | 41 |  | SUPPLEMENT by ETHAN NORDEAN re 30 MOTION to Revoke *Pretrial Release Regarding New Evidence Relevant to the Government's Motion to Revoke Release Order* (Attachments: # 1 Exhibit Declaration of Michale Graves, # 2 Exhibit Declaration of Arturo Santaella, # 3 Exhibit Statement of Probation Officer)(Smith, Nicholas) (Entered: 03/29/2021) |
| 03/29/2021 | 42 |  | Memorandum in Opposition by JOSEPH RANDALL BIGGS re 31 MOTION to Revoke *Pretrial Release* (Attachments: # 1 Exhibit Letter–email dated 03222020)(Hull, John) (Entered: 03/29/2021) |
| 03/31/2021 | 45 |  | REPLY TO OPPOSITION to Motion by USA as to ETHAN NORDEAN re 30 MOTION to Revoke *Pretrial Release* (McCullough, Jason) (Entered: 03/31/2021) |
| 03/31/2021 | 46 |  | REPLY TO OPPOSITION to Motion by USA as to JOSEPH RANDALL BIGGS re 31 MOTION to Revoke *Pretrial Release* (McCullough, Jason) (Entered: 03/31/2021) |
| 04/01/2021 | 47 |  | Amended Memorandum in Opposition by JOSEPH RANDALL BIGGS re 31 MOTION to Revoke *Pretrial Release Amended/Corrected* (Attachments: # 1 Exhibit Sweatt Email to Hull 03222021)(Hull, John) Modified event title on 4/30/2021 (znmw). (Entered: 04/01/2021) |
| 04/01/2021 |  |  | NOTICE OF HEARING as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). The VTC Motion Hearing set for 4/1/2021 is **RESCHEDULED** for 4/6/2021 at 11:30 AM before Judge Timothy J. Kelly. (zkh) (Entered: 04/01/2021) |
| 04/05/2021 | 49 |  | MOTION for Leave to File *Sur–Reply in Response to New Arguments Raised in Government's Reply in Support of Motion to Revoke Release Order* by ETHAN NORDEAN. (Attachments: # 1 Exhibit Ethan Nordean's Sur–Reply in Response to New Arguments Raised in Government's Reply in Support of Motion to Revoke Release Order, # 2 Exhibit Transcript of Couy Griffin Detention Hearing)(Smith, Nicholas) (Entered: 04/05/2021) |
| 04/06/2021 |  |  | NOTICE OF HEARING as to ZACHARY REHL (3). VTC Arraignment set for 4/14/2021 at 10:00 AM before Judge Timothy J. Kelly. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day in advance to make arrangements to appear. (zkh) (Entered: 04/06/2021) |

| 04/06/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Motion Hearing as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2) held on 4/6/2021. Both defendants appeared by video. Oral argument on 30 MOTION to Revoke *Pretrial Release* and 31 MOTION to Revoke *Pretrial Release*, heard and taken under advisement. Speedy Trial Excludable (XT) started nunc pro tunc 4/1/2021 through 4/9/2021, in the interest of justice, as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). Any supplemental memoranda due by 4/6/2021. VTC Oral Ruling set for 4/9/2021 at 2:00 PM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains on Personal Recognizance/HISP, 2–Remains on Personal Recognizance/HISP; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV; US Attorneys: James B. Nelson, Jason Bradley Adam McCullough, and Luke Matthew Jones; Pretrial Officer: John Copes. (zkh) (Entered: 04/06/2021) |
| 04/06/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Arraignment as to CHARLES DONOHOE (4) as to Counts 1, 2, 3, 4, 5, and 6 held on 4/6/2021. The defendant appeared by video. For the reasons stated on the record, oral motion by Attorney Shelli Peterson for Attorney Lisa Costner to appear pro hac vice on behalf of the defendant today, heard and GRANTED. Speedy Trial Excludable (XT) started 4/6/2021 through 4/12/2021, in the interest of justice. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: Lisa Costner and Shelli Peterson; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones; Pretrial Officer: John Copes. (zkh) (Entered: 04/06/2021) |
| 04/06/2021 | 51 | | NOTICE *of Delivery of Video Evidence* by USA as to ETHAN NORDEAN, JOSEPH RANDALL BIGGS re Motion Hearing,,,, Speedy Trial – Excludable Start,,,, Set Deadlines/Hearings,,, 46 Reply to opposition to Motion, 45 Reply to opposition to Motion (McCullough, Jason) (Entered: 04/06/2021) |
| 04/06/2021 | 52 | | NOTICE *of Submission of Evidence Referenced in April 6 Detention Hearing* by ETHAN NORDEAN re 51 Notice (Other), (Smith, Nicholas) (Entered: 04/06/2021) |
| 04/06/2021 | 53 | | SUPPLEMENT by JOSEPH RANDALL BIGGS *to Opposition to Motion to Revoke* (Hull, John) (Entered: 04/06/2021) |
| 04/08/2021 | 54 | | NOTICE *of Evidence Relevant to the Government's Detention Motion, Produced to Nordean on April 7, 2021* by ETHAN NORDEAN re 45 Reply to opposition to Motion (Smith, Nicholas) (Entered: 04/08/2021) |
| 04/09/2021 | 55 | | NOTICE OF ATTORNEY APPEARANCE: Lisa S. Costner appearing for CHARLES DONOHOE (Costner, Lisa) (Main Document 55 replaced on 4/26/2021) (znmw). (Entered: 04/09/2021) |
| 04/09/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). The Oral Ruling currently set for April 9, 2021, is hereby **VACATED**. Signed by Judge Timothy J. Kelly on 4/9/2021. (zkh) (Entered: 04/09/2021) |
| 04/09/2021 | | | Set/Reset Hearings as to CHARLES DONOHOE: Detention Hearing set for 4/12/2021 at 03:00 PM in Telephonic/VTC before Magistrate Judge G. |

| | | | |
|---|---|---|---|
| | | | Michael Harvey. (zpt) (Entered: 04/09/2021) |
| 04/12/2021 | 56 | | MOTION to Continue *Detention Hearing* by CHARLES DONOHOE. (Attachments: # 1 Text of Proposed Order)(Costner, Lisa) (Entered: 04/12/2021) |
| 04/13/2021 | 57 | | NOTICE *of Brady Evidence Produced to Nordean on April 13, 2021* by ETHAN NORDEAN re 30 MOTION to Revoke *Pretrial Release* (Smith, Nicholas) (Entered: 04/13/2021) |
| 04/14/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Arraignment as to ZACHARY REHL (3) as to Counts 1, 2, 3, 4, 5, and 6 held on 4/14/2021. Defendant appeared by video. Plea of NOT GUILTY entered as to Counts 1, 2, 3, 4, 5, and 6. Speedy Trial Excludable (XT) started 4/14/2021 through 5/4/2021, in the interest of justice. Defendant's Response to 37 MOTION to Revoke Release Order due by 4/28/2021. Government's Reply due by 4/30/2021. VTC Motion Hearing set for 5/4/2021 at 2:00 PM before Judge Timothy J. Kelly. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: Shelli Peterson and Shaka Johnson; US Attorney: Jason Bradley Adam McCullough. (zkh) (Entered: 04/14/2021) |
| 04/14/2021 | | | NOTICE OF HEARING as to ZACHARY REHL (3). The Motion Hearing currently set for 5/4/2021 is **RESCHEDULED** for 5/3/2021 at 2:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 04/14/2021) |
| 04/14/2021 | 58 | | TRANSCRIPT OF MOTION HEARING in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 4–6–21; Page Numbers: 1–69; Date of Issuance: 4–14–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter r eferenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/5/2021. Redacted Transcript Deadline set for 5/15/2021. Release of Transcript Restriction set for 7/13/2021.(Miller, Timothy) (Entered: 04/14/2021) |
| 04/14/2021 | 59 | | TRANSCRIPT OF MOTION HEARING in case as to JOSEPH RANDALL BIGGS before Judge Timothy J. Kelly held on 4–6–21; Page Numbers: 1–69; Date of Issuance: 4–14–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court rep orter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/5/2021. Redacted Transcript Deadline set for 5/15/2021. Release of Transcript Restriction set for 7/13/2021.(Miller, Timothy) (Entered: 04/14/2021) |
| 04/15/2021 | 60 | RESPONSE by CHARLES DONOHOE re: 56 *Opposing Detention* (Attachments: # 1 Exhibit)(Costner, Lisa) Modified text on 5/21/2021 (zltp). (Entered: 04/15/2021) |
| 04/15/2021 | 61 | SUPPLEMENT by CHARLES DONOHOE re 60 Response to document (Costner, Lisa) (Entered: 04/15/2021) |
| 04/15/2021 | | NOTICE OF HEARING as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). VTC Oral Ruling set for 4/16/2021 at 12:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 04/15/2021) |
| 04/15/2021 | 62 | ORDER Granting 56 MOTION to Continue Detention Hearing by CHARLES DONOHOE (4). Detention Hearing continued to 4/19/2021 at 03:00 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Signed by Magistrate Judge G. Michael Harvey on 4/15/2021. (zpt) (Entered: 04/16/2021) |
| 04/16/2021 | | NOTICE OF HEARING as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). The VTC Oral Ruling currently set for 4/16/2021 is **RESCHEDULED** for 4/19/2021 at 12:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 04/16/2021) |
| 04/19/2021 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Oral Ruling as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2) held on 4/19/2021. BOTH defendants appeared by video. For the reasons stated on the record, Government's 30 and 31 MOTION to Revoke *Pretrial Release*, GRANTED. Conditions of release REVOKED for ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). Order to be entered by the court. Oral Motion by defendants ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2) for a temporary stay of detention order, heard and DENIED. Speedy Trial Excludable (XT) started nunc pro tunc 4/9/2021 through 5/4/2021, in the interest of justice, as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). VTC Status Conference set for 5/4/2021 at 11:30 AM before Judge Timothy J. Kelly. Bond Status of Defendants: 1−Conditions of Release REVOKED/Order Pending to Report, 2−Conditions of Release REVOKED/Order Pending to Report; Court Reporter: Timothy Miller; Defense Attorneys: 1−David Benjamin Smith and Nicholas D. Smith, |

| | | | |
|---|---|---|---|
| | | | 2–John Daniel Hull, IV; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones; Pretrial Officer: Christine Schuck. (zkh) (Entered: 04/19/2021) |
| 04/19/2021 | | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Status Hearing as to CHARLES DONOHOE (1) held on 4/19/2021. Matter was set for a Detention Hearing but was not held. Detention Hearing continued to 4/21/2021 at 03:00 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Remains Committed; Court Reporter: FTR–Gold; FTR Time Frame: CTRM 6 [3:33:59–3:46:57]; Defense Attorney: Lisa Costner; US Attorney: Jason McCullough and Luke Jones; Pretrial Officer: Andre Sidbury; (zpt) (Entered: 04/19/2021) |
| 04/19/2021 | 64 | | RESPONSE TO Court Order Issued during Oral Ruling on April 19, 2021 by USA as to ETHAN NORDEAN, JOSEPH RANDALL BIGGS, ZACHARY REHL, CHARLES DONOHOE (Attachments: # 1 Filing in U.S. v. Pezzola, 1:21–cr–175, containing photograph)(Jones, Luke) Modified text on 5/21/2021 (zltp). (Entered: 04/19/2021) |
| 04/20/2021 | 65 | | DETENTION ORDER as to ETHAN NORDEAN (1). See Order for details. Signed by Judge Timothy J. Kelly on 4/20/2021. (lctjk1) (Entered: 04/20/2021) |
| 04/20/2021 | 66 | | DETENTION ORDER as to JOSEPH RANDALL BIGGS (2). See Order for details. Signed by Judge Timothy J. Kelly on 4/20/2021. (lctjk1) (Entered: 04/20/2021) |
| 04/21/2021 | 67 | | NOTICE OF APPEAL – Final Judgment by JOSEPH RANDALL BIGGS re 66 Order of Detention Pending Trial– Defendant HWOB. Filing fee $ 505, receipt number ADCDC–8389908. Fee Status: Fee Paid. Parties have been notified. (Hull, John) (Entered: 04/21/2021) |
| 04/21/2021 | | | ORAL MOTION to Commit Defendant to Custody of Attorney General by USA as to CHARLES DONOHOE (4). (zpt) (Entered: 04/21/2021) |
| 04/21/2021 | | | ORAL MOTION for Release from Custody by CHARLES DONOHOE (4). (zpt) (Entered: 04/21/2021) |
| 04/21/2021 | | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Detention Hearing as to CHARLES DONOHOE (4) held on 4/21/2021. Matter was held but did not conclude. Continued Detention Hearing set for 4/22/2021 at 03:00 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Remains Committed; Court Reporter: FTR–Gold; FTR Time Frame: CTRM 6 [3:13:35–5:36:32]; Defense Attorney: Lisa Costner; US Attorney: Jason McCullough and Luke Jones; Pretrial Officer: John Copes; (zpt) (Entered: 04/21/2021) |
| 04/21/2021 | 76 | | ORDER Delaying Transport as to CHARLES DONOHOE (1). Signed by Magistrate Judge G. Michael Harvey on 4/21/2021. (zpt) (Entered: 04/28/2021) |
| 04/22/2021 | 68 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid on 4/21/2021 as to |

| | | | |
|---|---|---|---|
| | | | JOSEPH RANDALL BIGGS re 67 Notice of Appeal – Final Judgment. (zltp) (Entered: 04/22/2021) |
| 04/22/2021 | 69 | | NOTICE OF APPEAL – Final Judgment by ETHAN NORDEAN re Status Conference,,,,, Speedy Trial – Excludable Start,,,,, Set Hearings,,,, Motion Hearing,,,, Speedy Trial – Excludable Start,,,, Set Deadlines/Hearings,,, 65 Order of Detention Pending Trial– Defendant HWOB. Fee Status: No Fee Paid. Parties have been notified. (Smith, Nicholas) (Entered: 04/22/2021) |
| 04/22/2021 | | | ORAL MOTION for Speedy Trial Waiver by USA as to CHARLES DONOHOE (2). (zpt) (Entered: 04/24/2021) |
| 04/22/2021 | | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Continued Detention Hearing as to CHARLES DONOHOE (4) held on 4/22/2021. Oral Motion by the Government to Commit Defendant to Custody of Attorney General as to CHARLES DONOHOE (4) Heard and Granted. Oral Motion for Release from Custody by CHARLES DONOHOE (4) Heard and Denied. Oral Motion by the Government for Speedy Trial Waiver Nunc Pro Tunc as to CHARLES DONOHOE (4) Heard and Granted. Time between 4/12/2021 and 5/4/2021 (22 Days) shall be excluded from calculation under the Speedy Trial Act in the interest of justice X–T. Bond Status of Defendant: Defendant Committed/Committment Issued; Court Reporter: Jeffrey Hook; Defense Attorney: Lisa Costner; US Attorney: Jason McCullough and Luke Jones; Pretrial Officer: Shay Holman; (zpt) (Entered: 04/24/2021) |
| 04/23/2021 | 70 | | NOTICE *of Conditions of Confinement following April 20 Detention Order* by ETHAN NORDEAN re 65 Order of Detention Pending Trial– Defendant HWOB (Smith, Nicholas) (Entered: 04/23/2021) |
| 04/23/2021 | 71 | | TRANSCRIPT OF ORAL RULING in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 4–19–21; Page Numbers: 1–83; Date of Issuance: 4–23–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter ref erenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/14/2021. Redacted Transcript Deadline set for 5/24/2021. Release of Transcript Restriction set for 7/22/2021.(Miller, Timothy) (Entered: 04/23/2021) |
| 04/23/2021 | 72 | | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT OF ORAL RULING in case as to JOSEPH RANDALL BIGGS before Judge Timothy J. Kelly held on 4–19–21; Page Numbers: 1–83; Date of Issuance: 4–23–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/14/2021. Redacted Transcript Deadline set for 5/24/2021. Release of Transcript Restriction set for 7/22/2021.(Miller, Timothy) (Entered: 04/23/2021) |
| 04/26/2021 | 73 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. Defendant is represented by CJA, as to ETHAN NORDEAN re 69 Notice of Appeal – Final Judgment,. (zltp) (Entered: 04/26/2021) |
| 04/26/2021 | 74 | | **TRANSCRIPT OF DETENTION HEARING (CONT.)** in case as to CHARLES DONOHOE before Magistrate Judge G. Michael Harvey held on April 22, 2021. Page Numbers: 1 – 56. Date of Issuance: April 26, 2021. Court Reporter: Jeff Hook. Telephone number: 202–354–3373. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public term inal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 5/17/2021. Redacted Transcript Deadline set for 5/27/2021. Release of Transcript Restriction set for 7/25/2021.(Hook, Jeff) (Entered: 04/26/2021) |
| 04/26/2021 | | | USCA Case Number as to JOSEPH RANDALL BIGGS 21–3021 for 67 Notice of Appeal – Final Judgment filed by JOSEPH RANDALL BIGGS. |

| | | |
|---|---|---|
| | | (zltp) (Entered: 04/27/2021) |
| 04/26/2021 | | USCA Case Number as to ETHAN NORDEAN 21–3022 for <u>69</u> Notice of Appeal – Final Judgment, filed by ETHAN NORDEAN. (zltp) (Entered: 04/27/2021) |
| 04/26/2021 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: VTC Status Hearing as to CHARLES DONOHOE (4) held on 4/26/2021. Control Status Hearing set for 5/3/2021 03:30 PM in Telephonic/VTC before Magistrate Judge G. Michael Harvey. Bond Status of Defendant: Defendant Remains Committed; Court Reporter: FTR–Gold; FTR Time Frame: CTRM 6 [3:10:41–3:38:26]; Defense Attorney: Lisa Costner; US Attorney: Luke Jones; Pretrial Officer: Andre Sidbury; (zpt) (Entered: 04/27/2021) |
| 04/28/2021 | <u>75</u> | TRANSCRIPT OF PROCEEDINGS in case as to CHARLES DONOHOE before Magistrate Judge G. Michael Harvey held on April 21, 2021; Page Numbers: 1–87. Date of Issuance:April 28, 2021. Transcriber: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/19/2021. Redacted Transcript Deadline set for 5/29/2021. Release of Transcript Restriction set for 7/27/2021.(Dickman, Janice) (Entered: 04/28/2021) |
| 04/28/2021 | | NOTICE OF HEARING as to ZACHARY REHL (3). The VTC Motion Hearing currently set for 5/3/2021 is **RESCHEDULED** for 5/5/2021 at 12:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 04/28/2021) |
| 04/28/2021 | <u>77</u> | ORDER for Transport as to CHARLES DONOHOE (4). Signed by Magistrate Judge G. Michael Harvey on 4/28/2021. (zpt) (Entered: 04/28/2021) |
| 04/29/2021 | <u>78</u> | Unopposed MOTION for Order to Transport Defendant by USA as to CHARLES DONOHOE. (Attachments: # <u>1</u> Text of Proposed Order)(Jones, Luke) (Entered: 04/29/2021) |
| 04/29/2021 | <u>79</u> | NOTICE *of Government's Violation of the Due Process Protections Act and Local Criminal Rule 5.1* by ETHAN NORDEAN (Smith, Nicholas) (Entered: 04/29/2021) |
| 04/30/2021 | <u>80</u> | ORDER granting the Government's <u>78</u> Motion for Order to Transport Defendant as to CHARLES DONOHOE (4). See Order for details. Signed by |

| | | | |
|---|---|---|---|
| | | | Judge Timothy J. Kelly on 4/30/2021. (lctjk1) (Entered: 04/30/2021) |
| 05/03/2021 | | | NOTICE OF HEARING **(Time Change)** as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2). VTC Status Conference set for 5/4/2021 at **12:00 PM** before Judge Timothy J. Kelly. (zkh) (Entered: 05/03/2021) |
| 05/03/2021 | 81 | | MOTION to Revoke *Detention Order* by CHARLES DONOHOE. (Costner, Lisa) Modified on 7/8/2021 (zhsj). (Entered: 05/03/2021) |
| 05/04/2021 | 82 | | Unopposed MOTION for Protective Order by USA as to JOSEPH RANDALL BIGGS, ZACHARY REHL, CHARLES DONOHOE. (Attachments: # 1 Text of Proposed Order)(Jones, Luke) (Entered: 05/04/2021) |
| 05/04/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4) held on 5/4/2021. ALL defendants appeared by video. Speedy Trial Excludable (XT) started 5/4/2021 through 6/3/2021, in the interest of justice, as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4). Government Response to 81 MOTION to Revoke due by 5/17/2021. Defendant DONOHOE (4) Reply due by 5/24/2021. VTC Status Conference set for 6/3/2021 at 2:00 PM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 4–Lisa S. Costner; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones. (zkh) (Entered: 05/04/2021) |
| 05/04/2021 | | | Set/Reset Deadlines as to CHARLES DONOHOE (4): Government Response due by 5/17/2021. Defendant Reply due by 5/24/2021. (zkh) (Entered: 05/04/2021) |
| 05/04/2021 | 83 | | ORDER granting the Government's 82 Unopposed Motion for Protective Order as to JOSEPH RANDALL BIGGS (2), ZACHARY REHL (3), CHARLES DONOHOE (4). See Order for details. Signed by Judge Timothy J. Kelly on 5/4/2021. (lctjk1) (Entered: 05/04/2021) |
| 05/05/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ZACHARY REHL (3) held on 5/5/2021. Case called for Motion Hearing but not held. Defendant appeared by video. Speedy Trial Excludable (XT) started nunc pro tunc 5/4/2021 through 6/3/2021, in the interest of justice. Defendant's Response to 37 MOTION to Revoke Release Order due by 5/17/2021. Government's Reply due by 5/24/2021. VTC Status Conference set for 6/3/2021 at 2:00 PM before Judge Timothy J. Kelly. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: Maria Jacob and Shaka Johnson; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones. (zkh) (Entered: 05/05/2021) |
| 05/13/2021 | 84 | | REPLY by USA as to ETHAN NORDEAN re 79 Notice (Other) (McCullough, Jason) (Entered: 05/13/2021) |
| 05/16/2021 | 85 | | REPLY by ETHAN NORDEAN *Regarding the Government's Violation of the Due Process Protections Act and Rule 5.1* (Attachments: # 1 Declaration of Daniel Arellano)(Smith, Nicholas) (Entered: 05/16/2021) |

| 05/17/2021 | 87 | | Memorandum in Opposition by USA as to CHARLES DONOHOE re 81 MOTION to Revoke *Detention Order* (McCullough, Jason) (Entered: 05/17/2021) |
|---|---|---|---|
| 05/19/2021 | 88 | | MOTION to Compel *the production of evidence and for a bill of particulars* by ETHAN NORDEAN. (Smith, Nicholas) (Entered: 05/19/2021) |
| 05/19/2021 | 89 | | MOTION for a Bill of Particulars by ETHAN NORDEAN. (See docket entry 88 to view document.) (zltp) (Entered: 05/21/2021) |
| 05/24/2021 | 90 | | REPLY TO OPPOSITION to Motion by CHARLES DONOHOE re 81 MOTION to Revoke *Detention Order* (Costner, Lisa) (Entered: 05/24/2021) |
| 05/24/2021 | 91 | | REPLY in Support by USA as to ZACHARY REHL re 37 MOTION to Revoke *Release Order and for Pretrial Detention* (Jones, Luke) (Entered: 05/24/2021) |
| 05/25/2021 | | | NOTICE OF HEARING as to ZACHARY REHL (3). The VTC Status Conference currently set for 6/3/2021 is **RESCHEDULED** for 6/1/2021 at 10:00 AM before Judge Timothy J. Kelly. (zkh) (Entered: 05/25/2021) |
| 06/01/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ZACHARY REHL (3) held on 6/1/2021. Defendant appeared by video. Speedy Trial Excludable (XT) started 6/1/2021 through 6/9/2021, in the interest of justice. VTC Status Conference set for 6/9/2021 at 1:00 PM before Judge Timothy J. Kelly. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorney: Shaka Johnson; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones. (zkh) (Entered: 06/01/2021) |
| 06/02/2021 | | | NOTICE OF HEARING **(Time Change)** as to ZACHARY REHL (3). VTC Status Conference set for 6/9/2021 at **10:00 AM** before Judge Timothy J. Kelly. (zkh) (Entered: 06/02/2021) |
| 06/02/2021 | 92 | | MOTION for Protective Order by USA as to ETHAN NORDEAN. (Attachments: # 1 Declaration of Thomas DiBiase (with attachments), # 2 Text of Proposed Order)(Jones, Luke) (Entered: 06/02/2021) |
| 06/02/2021 | 93 | | Memorandum in Opposition by USA as to ETHAN NORDEAN re 89 MOTION for Bill of Particulars, 88 MOTION to Compel *the production of evidence and for a bill of particulars* (Jones, Luke) (Entered: 06/03/2021) |
| 06/03/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4) held on 6/3/2021. Defendants NORDEAN (1) and BIGGS (2) appeared by video. For the reasons stated on the record, Defendant DONOHOE'S (4) appearance was WAIVED. Speedy Trial Excludable (XT) started 6/3/2021 through 7/15/2021, in the interest of justice, as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4). VTC Motion Hearing set for 6/9/2021 at 11:00 AM before Judge Timothy J. Kelly for Defendant DONOHOE (4). VTC Status Conference set for 7/15/2021 at 2:00 PM before Judge Timothy J. Kelly for Defendants NORDEAN (1), BIGGS (2) and DONOHOE (4). Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David |

| | | |
|---|---|---|
| | | Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 4–Lisa S. Costner; US Attorneys: Jason Bradley Adam McCullough, Luke Matthew Jones, and Nadia Moore. (zkh) (Entered: 06/03/2021) |
| 06/03/2021 | | Set/Reset Hearings as to CHARLES DONOHOE (4): VTC Motion Hearing set for 6/9/2021 at 11:00 AM before Judge Timothy J. Kelly. (zkh) (Entered: 06/03/2021) |
| 06/03/2021 | 94 | First MOTION to Dismiss Case by ETHAN NORDEAN. (Smith, Nicholas) (Entered: 06/03/2021) |
| 06/03/2021 | 95 | MOTION for Leave to File Excess Pages *re Motion to Dismiss the First Superseding Indictment* by ETHAN NORDEAN. (Smith, Nicholas) (Entered: 06/03/2021) |
| 06/03/2021 | 96 | NOTICE *OF FILING* by JOSEPH RANDALL BIGGS (Attachments: # 1 Exhibit Biggs 04032021 Acceptance of Protective Order)(Hull, John) (Entered: 06/03/2021) |
| 06/08/2021 | 97 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant Nordean's Motion to Dismiss (Doc. 83)* by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(Jones, Luke) (Entered: 06/08/2021) |
| 06/08/2021 | 98 | Unopposed MOTION for Extension of Time to File Response/Reply *to File Response to Defendant Nordean's Motion to Dismiss (Doc. 94) (Amended to Reflect Correct Docket Number of Motion to Dismiss))* by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(Jones, Luke) (Entered: 06/08/2021) |
| 06/09/2021 | | MINUTE ORDER as to ZACHARY REHL (3), CHARLES DONOHOE (4): The hearings currently set for June 9, 2021, are hereby VACATED, and shall be rescheduled promptly. Signed by Judge Timothy J. Kelly on 6/9/2021. (lctjk1) (Entered: 06/09/2021) |
| 06/09/2021 | | MINUTE ORDER as to ETHAN NORDEAN (1) granting the Government's 98 Unopposed Motion for Extension of Time. It is hereby ORDERED, for good cause shown, that the Government's motion is GRANTED. The Government shall file its opposition to Defendant Nordean's 94 Motion to Dismiss by July 1, 2021. Defendant shall file any reply in support of his motion to dismiss by July 15, 2021. Further, because the Government filed ECF No. 98 as a corrected version of ECF No. 97 and requests the same relief in both motions, it is hereby ORDERED that the Government's 97 Unopposed Motion for Extension of Time is DENIED AS MOOT. Signed by Judge Timothy J. Kelly on 6/9/2021. (lctjk1) (Entered: 06/09/2021) |
| 06/10/2021 | | NOTICE OF HEARING as to CHARLES DONOHOE (4). VTC Motion Hearing set for 6/23/2021 at 10:00 AM before Judge Timothy J. Kelly. (zkh) (Entered: 06/10/2021) |
| 06/10/2021 | 99 | REPLY in Support by ETHAN NORDEAN re 88 MOTION to Compel *the production of evidence and for a bill of particulars* (Smith, Nicholas) (Entered: 06/10/2021) |
| 06/15/2021 | 100 | NOTICE *of additional relevant evidence produced following Nordean's detention hearings* by ETHAN NORDEAN (Attachments: # 1 Exhibit |

| | | | |
|---|---|---|---|
| | | | 1)(Smith, Nicholas) (Entered: 06/15/2021) |
| 06/16/2021 | | | NOTICE OF HEARING as to ZACHARY REHL: Status Conference set for 6/21/2021 at 10:00 AM in Telephonic/VTC before Judge Timothy J. Kelly. (zcal) (Entered: 06/16/2021) |
| 06/18/2021 | | | MINUTE ORDER as to ZACHARY REHL (3): The hearing currently set for June 21, 2021, is hereby VACATED due to the unavailability of defense counsel and shall be rescheduled promptly. Signed by Judge Timothy J. Kelly on 6/18/2021. (lctjk1) (Entered: 06/18/2021) |
| 06/23/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Motion Hearing as to CHARLES DONOHOE (4) held on 6/23/2021. Defendant appeared by video. Oral argument heard, and for the reasons stated on the record, Defendant's 81 MOTION to Revoke *Detention Order* is DENIED. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorney: Lisa S. Costner; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones; Pretrial Officer: Christine Schuck. (zkh) (Entered: 06/23/2021) |
| 06/23/2021 | | | NOTICE OF HEARING as to ZACHARY REHL (3). VTC Status Conference set for 6/30/2021 at 12:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 06/23/2021) |
| 06/23/2021 | 101 | | DETENTION ORDER as to CHARLES DONOHOE (4). See Order for details. Signed by Judge Timothy J. Kelly on 6/23/2021. (lctjk1) (Entered: 06/23/2021) |
| 06/25/2021 | 107 | | JUDGMENT of USCA (certified copy) as to ETHAN NORDEAN, JOSEPH RANDALL BIGGS re 69 Notice of Appeal – Final Judgment, 67 Notice of Appeal – Final Judgment. The district courts pretrial detention ordersentered on April 20, 2021 is affirmed. USCA Case Number 21–3021; 21–3022. (zltp) (Entered: 07/02/2021) |
| 06/28/2021 | 102 | | Unopposed MOTION for Protective Order *(INTERIM)* by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(Jones, Luke) (Entered: 06/28/2021) |
| 06/29/2021 | 103 | | ORDER granting the Government's 102 Unopposed Motion for Protective Order as to ETHAN NORDEAN (1). See Order for details. Signed by Judge Timothy J. Kelly on 6/29/2021. (lctjk1) (Entered: 06/29/2021) |
| 06/30/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ZACHARY REHL (3) held on 6/30/2021. Defendant appeared by video for the initial thirty (30) minutes of the hearing and his appearance was waived for the remainder of the hearing. Oral argument on the government's 37 MOTION to Revoke *Release Order and for Pretrial Detention*, heard and GRANTED. Order to be issued by the court. Speedy Trial Excludable (XT) started 6/9/2021 through 7/28/2021, in the interest of justice, as to ZACHARY REHL (3). VTC Status Conference set for 7/28/2021 at 11:00 AM before Judge Timothy J. Kelly. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorney: Shaka Johnson; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones; Pretrial Officer: Christine Schuck. (zkh) (Entered: 06/30/2021) |

| 07/01/2021 | 104 | | DETENTION ORDER as to ZACHARY REHL (3). See Order for details. Signed by Judge Timothy J. Kelly on 7/1/2021. (lctjk1) (Entered: 07/01/2021) |
|---|---|---|---|
| 07/01/2021 | | | NOTICE OF HEARING (**Time Change**) as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4). VTC Status Conference set for 7/15/2021 at **11:00 AM** before Judge Timothy J. Kelly. (zkh) (Entered: 07/01/2021) |
| 07/01/2021 | 105 | | MOTION to Dismiss Case *Unopposed Motion to Join Nordean Motion to Dismiss* by JOSEPH RANDALL BIGGS. (Hull, John) (Entered: 07/01/2021) |
| 07/01/2021 | 106 | | Memorandum in Opposition by USA as to ETHAN NORDEAN re 94 First MOTION to Dismiss Case (McCullough, Jason) (Entered: 07/01/2021) |
| 07/06/2021 | 108 | | NOTICE OF APPEAL – Final Judgment by CHARLES DONOHOE re 101 Order, Order of Detention Pending Trial– Defendant HWOB. Fee Status: No Fee Paid. Parties have been notified. (Costner, Lisa) (Main Document 108 replaced on 7/8/2021) (zltp). (Entered: 07/06/2021) |
| 07/06/2021 | 109 | | NOTICE *of Evidence Referenced During June 30, 2021 Hearing* by USA as to ZACHARY REHL (Attachments: # 1 PowerPoint from June 30, 2021 Hearing)(Jones, Luke) (Entered: 07/06/2021) |
| 07/06/2021 | 110 | | Unopposed MOTION to Seal Certain Exhibits *(Text Messages) considered during Detention Hearings* by USA as to CHARLES DONOHOE. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Redacted Exhibit (001 – 003), # 3 Exhibit Redacted Exhibit (Bates 124 – 138), # 4 Exhibit Redacted Exhibit (Bates 622 – 645), # 5 Exhibit Redacted Exhibit (Bates 1332 – 1342), # 6 Exhibit Redacted Exhibit (Bates 1400 – 1413))(McCullough, Jason) Modified text on 7/27/2021 (zstd). (Entered: 07/06/2021) |
| 07/06/2021 | 111 | | NOTICE *of Exhibits used during Detention Hearings* by USA as to CHARLES DONOHOE (Attachments: # 1 Exhibit PowerPoint Exhibit used during hearings)(McCullough, Jason) (Entered: 07/06/2021) |
| 07/08/2021 | 112 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The fee was not paid as the defendant is represented by a CJA appointed attorney as to CHARLES DONOHOE re 108 Notice of Appeal – Final Judgment. (zltp) (Entered: 07/08/2021) |
| 07/08/2021 | | | MINUTE ORDER as to CHARLES DONOHOE (4) granting the United States' 110 Unopposed Motion to Seal Unredacted Exhibits. Upon consideration of the motion and the factors set forth in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980), it is hereby ORDERED that the motion is GRANTED, and the redacted versions of these exhibits shall remain on the public docket. In addition, to preserve the record, it is further ORDERED that the United States shall, by July 14, 2021, file entirely unredacted versions of the exhibits under seal. Signed by Judge Timothy J. Kelly on 7/8/2021. (lctjk1) (Entered: 07/08/2021) |
| 07/08/2021 | | | Set/Reset Deadlines as to CHARLES DONOHOE (4): Unredacted versions of the exhibits due by 7/14/2021. (zkh) (Entered: 07/08/2021) |
| 07/11/2021 | 113 | | REPLY in Support by ETHAN NORDEAN re 94 First MOTION to Dismiss Case (Smith, Nicholas) (Entered: 07/11/2021) |

| 07/12/2021 | 115 | | NOTICE *of Filing of Exhibits Under Seal (Text Messages) considered during Detention Hearings* by USA as to CHARLES DONOHOE re 110 Unopposed MOTION for Order Seal Unredacted Exhibits *(Text Messages) considered during Detention Hearings*, Order on Motion for Order,, (McCullough, Jason) Modified text on 7/13/2021 (zstd). (Entered: 07/12/2021) |
|---|---|---|---|
| 07/13/2021 | 116 | | TRANSCRIPT OF STATUS CONFERENCE in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 6–3–21; Page Numbers: 1–36; Date of Issuance: 7–13–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporte r referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/3/2021. Redacted Transcript Deadline set for 8/13/2021. Release of Transcript Restriction set for 10/11/2021.(Miller, Timothy) (Entered: 07/13/2021) |
| 07/13/2021 | 117 | | TRANSCRIPT OF STATUS CONFERENCE in case as to JOSEPH RANDALL BIGGS before Judge Timothy J. Kelly held on 6–3–21; Page Numbers: 1–36; Date of Issuance: 7–13–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 8/3/2021. Redacted Transcript Deadline set for 8/13/2021. Release of Transcript Restriction set for 10/11/2021.(Miller, Timothy) (Entered: 07/13/2021) |
| 07/13/2021 | 118 | | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES DONOHOE before Judge Timothy J. Kelly held on 6–3–21; Page Numbers: 1–36; Date of Issuance: 7–13–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 8/3/2021. Redacted Transcript Deadline set for 8/13/2021. Release of Transcript Restriction set for 10/11/2021.(Miller, Timothy) (Entered: 07/13/2021) |
| 07/14/2021 | 119 | | NOTICE *Regarding Discovery Correspondence* by USA as to ETHAN NORDEAN, JOSEPH RANDALL BIGGS, ZACHARY REHL, CHARLES DONOHOE (Attachments: # 1 4/21/2021 Letter (All Defendants), # 2 4/30/2021 Letter (Nordean), # 3 5/5/2021 Letter (Rehl), # 4 5/19/2021 Letter (Nordean), # 5 6/2/2021 Letter (All Defendants), # 6 6/2/2021 Letter (Nordean), # 7 6/2/2021 Letter (Biggs), # 8 6/2/2021 Letter (Rehl), # 9 6/2/2021 Letter (Donohoe), # 10 6/3/2021 Letter (Biggs, Rehl, Donohoe), # 11 6/3/2021 Letter (Rehl), # 12 7/1/2021 Letter (Nordean), # 13 7/2/2021 Letter (Biggs, Rehl, Donohoe), # 14 7/2/2021 Letter (Nordean), # 15 7/6/2021 Letter (All Defendants), # 16 7/6/2021 Letter (Nordean), # 17 7/7/2021 Letter (Nordean), # 18 7/7/2021 Letter (All Defendants), # 19 7/9/2021 Letter (All Defendants), # 20 7/13/2021 Letter (All Defendants), # 21 7/13/2021 Letter (All Defendants), # 22 7/14/2021 Letter (All Defendants))(Jones, Luke) (Attachment 5 replaced on 7/14/2021) (zltp). (Entered: 07/14/2021) |
| 07/14/2021 | 120 | | NOTICE *of Filing of Memorandum Regarding Status of Discovery in January 6, 2021 Cases* by USA as to ETHAN NORDEAN, JOSEPH RANDALL BIGGS, ZACHARY REHL, CHARLES DONOHOE (Attachments: # 1 Memorandum Regarding Status of Discovery)(Jones, Luke) (Entered: 07/14/2021) |
| 07/14/2021 | 121 | | Unopposed MOTION for Leave to File *Sur–Reply and Set Further Briefing Schedule* by USA as to ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(McCullough, Jason) (Entered: 07/14/2021) |
| 07/15/2021 | | | MINUTE ORDER as to JOSEPH RANDALL BIGGS (2) granting Defendant's 105 Unopposed Motion to Join Defendant Nordean's 94 Motion to Dismiss. It is hereby ORDERED that the motion is GRANTED. Signed by Judge Timothy J. Kelly on 7/15/2021. (lctjk1) (Entered: 07/15/2021) |

| 07/15/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) granting the United States' 121 Unopposed Motion for Leave to File Sur–Reply and Set Further Briefing Schedule. It is hereby ORDERED, for good cause shown, that the motion is GRANTED. It is further ORDERED that the United States shall file any sur–reply to Defendant Nordean's 94 Motion to Dismiss by July 29, 2021, and Defendant Nordean shall file any response to the sur–reply by August 5, 2021. Signed by Judge Timothy J. Kelly on 7/15/2021. (lctjk1) (Entered: 07/15/2021) |
|---|---|---|---|
| 07/15/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4) held on 7/15/2021. ALL Defendants appeared by video. Oral argument heard on 88 MOTION to Compel and 89 MOTION for a Bill of Particulars, and taken under advisement. Speedy Trial Excludable (XT) started 7/15/2021 through 9/21/2021, in the interest of justice, as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), and CHARLES DONOHOE (4). Joint Status Report as to Defendant NORDEAN (1) due by 7/26/2021. VTC Status Conference/Motion Hearing set for 9/21/2021 at 11:00 AM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 4–Lisa S. Costner; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones. (zkh) (Entered: 07/15/2021) |
| 07/15/2021 | | | Set/Reset Deadlines as to ETHAN NORDEAN (1): Joint Status Report due by 7/26/2021. (zkh) (Entered: 07/15/2021) |
| 07/16/2021 | | | USCA Case Number as to CHARLES DONOHOE 21–3046 for 108 Notice of Appeal – Final Judgment filed by CHARLES DONOHOE. (zltp) (Entered: 07/23/2021) |
| 07/20/2021 | 122 | | MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* by ETHAN NORDEAN. (Smith, Nicholas) (Entered: 07/20/2021) |
| 07/21/2021 | 123 | | MOTION to Substitute Attorney by CHARLES DONOHOE. (Attachments: # 1 Text of Proposed Order)(Costner, Lisa) (Entered: 07/21/2021) |
| 07/22/2021 | | | NOTICE OF HEARING (**Time Change**) as to ZACHARY REHL (3): VTC Status Conference set for 7/28/2021 at **10:00 AM** before Judge Timothy J. Kelly. (zkh) (Entered: 07/22/2021) |
| 07/26/2021 | 124 | | NOTICE OF ATTORNEY APPEARANCE: Shaka Johnson appearing for ZACHARY REHL (Johnson, Shaka) (Entered: 07/26/2021) |
| 07/26/2021 | | | MINUTE ORDER as to CHARLES DONOHOE (4) granting Defendant's 103 Motion to Substitute Counsel. Defendant's counsel, Lisa S. Costner, moves to withdraw her representation as CJA counsel and substitute the Federal Public Defender for the Middle District of North Carolina. The Court finds that the substitution will not unduly delay trial of this case, be unfairly prejudicial to any party, or otherwise not be in the interest of justice. *See* LCrR 44.5(d). Accordingly, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Lisa S. Costner's representation of Defendant as CJA counsel is hereby terminated, and the Federal Public Defender for the Middle District of North Carolina, specifically Federal Public Defender Lisa S. |

| | | | Costner, is hereby appointed to represent Defendant. Signed by Judge Timothy J. Kelly on 7/26/2021. (lctjk1) (Entered: 07/26/2021) |
|---|---|---|---|
| 07/26/2021 | 125 | | First MOTION to Continue *Status* by ZACHARY REHL. (Johnson, Shaka) (Entered: 07/26/2021) |
| 07/26/2021 | 126 | | STATUS REPORT by USA as to ETHAN NORDEAN (Attachments: # 1 Exhibit)(McCullough, Jason) (Entered: 07/26/2021) |
| 07/27/2021 | 127 | | RESPONSE by ETHAN NORDEAN re 126 Status Report (Smith, Nicholas) (Entered: 07/27/2021) |
| 07/27/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) granting Defendant's 125 Unopposed Motion to Continue. It is hereby ORDERED, for good cause shown, that the motion is GRANTED. The status conference currently set for July 28, 2021, is hereby RESCHEDULED for September 21, 2021, at 11:00 a.m. via videoconference and teleconference. The parties shall contact the Courtroom Deputy at (202) 354–3495 at least one business day in advance to make arrangements to participate. It is further ORDERED that the time period from July 28, 2021, to September 21, 2021, is EXCLUDED under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, with the consent of the parties. The Court finds that, because of the voluminous discovery in cases arising out of the Capitol breach and defense counsel's representation that he needs more time for effective preparation in this case, the ends of justice served by this continuance outweigh the best interests of the public and the defendant in a speedy trial under 18 U.S.C. § 3161(h)(7)(A). Signed by Judge Timothy J. Kelly on 7/27/2021. (lctjk1) (Entered: 07/27/2021) |
| 07/28/2021 | 128 | | MOTION to Adopt 94 *First MOTION to Dismiss Case filed by ETHAN NORDEAN* by CHARLES DONOHOE (4). (Attachments: # 1 Text of Proposed Order)(Costner, Lisa) Modified on 7/29/2021 to correct relief. (ztnr) (Entered: 07/28/2021) |
| 07/29/2021 | | | MINUTE ORDER as to CHARLES DONOHOE (4) granting Defendant's 128 Unopposed Motion to Adopt Defendant Nordean's 94 Motion to Dismiss. It is hereby ORDERED that the motion is GRANTED. Signed by Judge Timothy J. Kelly on 7/29/2021. (lctjk1) (Entered: 07/29/2021) |
| 07/29/2021 | 129 | | MOTION for Protective Order *Removal of Sensitivity Designation* by ETHAN NORDEAN. (Smith, Nicholas) (Entered: 07/29/2021) |
| 07/29/2021 | 130 | | SURREPLY by USA as to ETHAN NORDEAN re 94 First MOTION to Dismiss Case , 105 MOTION to Dismiss Case *Unopposed Motion to Join Nordean Motion to Dismiss* (McCullough, Jason) Modified event title on 8/12/2021 (znmw). Modified text on 8/16/2021 (zltp). (Entered: 07/29/2021) |
| 07/29/2021 | 131 | | NOTICE *of Delivery of Video Evidence* by USA as to ETHAN NORDEAN re 129 MOTION for Protective Order *Removal of Sensitivity Designation* (McCullough, Jason) (Entered: 07/29/2021) |
| 07/29/2021 | 132 | | RESPONSE by ETHAN NORDEAN re 131 Notice (Other) *re: Capitol CCTV video evidence improperly designated Highly Sensitive by the government* (Smith, Nicholas) (Entered: 07/29/2021) |
| 08/01/2021 | 133 | | ERRATA by USA as to ETHAN NORDEAN re 94 First MOTION to Dismiss Case filed by ETHAN NORDEAN, 105 MOTION to Dismiss Case |

| | | | |
|---|---|---|---|
| | | | *Unopposed Motion to Join Nordean Motion to Dismiss* filed by JOSEPH RANDALL BIGGS (Attachments: # 1 Refiled Surreply)(McCullough, Jason) Modified text on 8/16/2021 (zltp). (Entered: 08/01/2021) |
| 08/03/2021 | 134 | | Memorandum in Opposition by USA as to ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Jones, Luke) (Entered: 08/03/2021) |
| 08/04/2021 | 135 | | REPLY in Support by ETHAN NORDEAN re 94 First MOTION to Dismiss Case *re: Response to the Government's Surreply Brief* (Smith, Nicholas) (Entered: 08/04/2021) |
| 08/08/2021 | 136 | | REPLY TO OPPOSITION to Motion by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Attachments: # 1 Exhibit Declaration of Michael Nordean)(Smith, Nicholas) (Entered: 08/08/2021) |
| 08/08/2021 | 137 | | MOTION for Bond *and to Reopen Detention Hearing 18 USC 3142 (f)* by JOSEPH RANDALL BIGGS. (Attachments: # 1 Exhibit EMT 1, # 2 Exhibit EMT 2, # 3 Exhibit PB Bylaws)(Hull, John) (Entered: 08/08/2021) |
| 08/08/2021 | 143 | | MOTION to Reopen Detention Hearing by JOSEPH RANDALL BIGGS. (See Docket Entry 137 to view document). (znmw) (Entered: 08/16/2021) |
| 08/09/2021 | 138 | | MEMORANDUM OPINION AND ORDER as to ETHAN NORDEAN (1) denying Defendant's 88 Motion to Compel and for Bill of Particulars. See document for details. Signed by Judge Timothy J. Kelly on 8/9/2021. (lctjk1) (Entered: 08/09/2021) |
| 08/10/2021 | 139 | | NOTICE *of Second Declaration of Michael Nordean* by ETHAN NORDEAN re 136 Reply to opposition to Motion (Smith, Nicholas) (Entered: 08/10/2021) |
| 08/11/2021 | 140 | | NOTICE *of Recent Authority re Government's Motions to Revoke Release Orders in January 6 Cases* by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Attachments: # 1 Exhibit 1)(Smith, Nicholas) (Entered: 08/11/2021) |
| 08/12/2021 | 141 | | TRANSCRIPT OF MOTION HEARING in case as to CHARLES DONOHOE before Judge Timothy J. Kelly held on 6–23–21; Page Numbers: 1–79; Date of Issuance: 8–12–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporte r referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br><span style="color:red">**NOTICE RE REDACTION OF TRANSCRIPTS:**</span> The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | | |
|---|---|---|---|
| | | | Redaction Request due 9/2/2021. Redacted Transcript Deadline set for 9/12/2021. Release of Transcript Restriction set for 11/10/2021.(Miller, Timothy) (Entered: 08/12/2021) |
| 08/12/2021 | 142 | | Memorandum in Opposition by USA as to ETHAN NORDEAN re 129 MOTION for Protective Order *Removal of Sensitivity Designation* (Jones, Luke) (Entered: 08/12/2021) |
| 08/18/2021 | 145 | | MANDATE of USCA as to ETHAN NORDEAN, JOSEPH RANDALL BIGGS re 69 Notice of Appeal – Final Judgment, 67 Notice of Appeal – Final Judgment. In accordance to the judgment of 6/25/2021, the district court's pretrial detention orders entered on April 20, 2021 be affirmed. USCA Case Number 21–3021, 21–3022. (Attachments: # 1 USCA Judgment of 6/25/2021)(zltp) (Entered: 08/19/2021) |
| 08/19/2021 | 146 | | REPLY TO OPPOSITION to Motion by ETHAN NORDEAN re 129 MOTION for Protective Order *Removal of Sensitivity Designation on Capitol CCTV videos* (Attachments: # 1 Exhibit Press Coalition's Motion to Intervene)(Smith, Nicholas) (Entered: 08/19/2021) |
| 08/23/2021 | 147 | | TRANSCRIPT OF STATUS CONFERENCE in case as to ZACHARY REHL before Judge Timothy J. Kelly held on 6–30–21; Page Numbers: 1–75; Date of Issuance: 8–23–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporte r referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/13/2021. Redacted Transcript Deadline set for 9/23/2021. Release of Transcript Restriction set for 11/21/2021.(Miller, Timothy) (Entered: 08/23/2021) |
| 08/23/2021 | 148 | | Joint MOTION for Extension of Time to File Response/Reply as to 137 MOTION for Bond *and to Reopen Detention Hearing 18 USC 3142 (f)*, 143 MOTION for Hearing by USA as to JOSEPH RANDALL BIGGS. (Attachments: # 1 Text of Proposed Order)(McCullough, Jason) (Entered: 08/23/2021) |
| 08/23/2021 | 149 | | MOTION for Order to Transport Defendant *to District of Columbia* by USA as to ZACHARY REHL. (Attachments: # 1 Text of Proposed Order)(Jones, Luke) (Entered: 08/23/2021) |
| 08/24/2021 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER as to JOSEPH RANDALL BIGGS (2) granting the parties' <u>148</u> Joint Motion for Extension of Time. It is hereby ORDERED, *nunc pro tunc* and for good cause shown, that the parties' motion is GRANTED. It is further ORDERED that Defendant Biggs shall file his supplement to his <u>137</u> Motion to Reopen Detention Hearing today; the Government shall file its response to Biggs's <u>137</u> Motion to Reopen Detention Hearing and supplement by September 7, 2021; and Biggs shall file any reply by September 14, 2021. Signed by Judge Timothy J. Kelly on 8/24/2021. (lctjk1) (Entered: 08/24/2021) |
| 08/25/2021 | <u>152</u> | | NOTICE *of Ongoing Discovery Dispute Concerning Material Bearing on Pending Bail Motion* by ETHAN NORDEAN re <u>122</u> MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Smith, Nicholas) (Entered: 08/25/2021) |
| 08/26/2021 | <u>153</u> | | MOTION to Withdraw as Attorney by Shaka M. Johnson. by ZACHARY REHL. (Johnson, Shaka) (Entered: 08/26/2021) |
| 09/01/2021 | <u>154</u> | | TRANSCRIPT OF STATUS CONFERENCE in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 7−15−21; Page Numbers: 1−88; Date of Issuance: 9−1−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporte r referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/22/2021. Redacted Transcript Deadline set for 10/2/2021. Release of Transcript Restriction set for 11/30/2021.(Miller, Timothy) (Entered: 09/01/2021) |
| 09/01/2021 | <u>155</u> | | TRANSCRIPT OF STATUS CONFERENCE in case as to JOSEPH R. BIGGS before Judge Timothy J. Kelly held on 7−15−21; Page Numbers: 1−88; Date of Issuance: 9−1−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. |

| | | | |
|---|---|---|---|
| | | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/22/2021. Redacted Transcript Deadline set for 10/2/2021. Release of Transcript Restriction set for 11/30/2021.(Miller, Timothy) (Entered: 09/01/2021) |
| 09/01/2021 | 156 | | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES DONOHOE before Judge Timothy J. Kelly held on 7−15−21; Page Numbers: 1−88; Date of Issuance: 9−1−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 9/22/2021. Redacted Transcript Deadline set for 10/2/2021. Release of Transcript Restriction set for 11/30/2021.(Miller, Timothy) (Entered: 09/01/2021) |
| 09/02/2021 | 157 | | ENTERED IN ERROR.....NOTICE OF ATTORNEY APPEARANCE: Ira Knight appearing for CHARLES DONOHOE (Knight, Ira) Modified on 9/3/2021 (zltp). (Entered: 09/02/2021) |
| 09/02/2021 | | | NOTICE OF CORRECTED DOCKET ENTRY: as to CHARLES DONOHOE re 157 Notice of Attorney Appearance − Defendant was entered in error and counsel was instructed to refile said pleading. The correct NOA is docket entry 158 . (zltp) (Entered: 09/03/2021) |
| 09/03/2021 | 158 | | NOTICE OF ATTORNEY APPEARANCE: Ira Knight appearing for CHARLES DONOHOE (Knight, Ira) (Entered: 09/03/2021) |
| 09/06/2021 | | | MINUTE ORDER as to Zachary Rehl (3) granting 153 Motion to Withdraw as Attorney. The Court finds that allowing the withdrawal will not unduly delay trial of this case, be unfairly prejudicial to any party, or otherwise not be in the interest of justice. *See* LCrR 44.5(d). Accordingly, it is hereby ORDERED that the motion is GRANTED, but only upon another attorney entering his or her appearance to represent the Defendant. The Defendant's case is hereby referred to the criminal duty magistrate judge for ascertainment of counsel. Signed by |

| | | | |
|---|---|---|---|
| | | | Judge Timothy J. Kelly on 9/6/2021. (lctjk1) (Entered: 09/06/2021) |
| 09/06/2021 | 159 | | NOTICE OF ATTORNEY APPEARANCE: Jonathon Alden Moseley appearing for ZACHARY REHL (Moseley, Jonathon) (Entered: 09/06/2021) |
| 09/07/2021 | 160 | | NOTICE *of Submission of Video Clip Evidence Produced by the Government on August 31* by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Smith, Nicholas) (Entered: 09/07/2021) |
| 09/08/2021 | | | NOTICE OF HEARING as to ETHAN NORDEAN (1) and JOSEPH R. BIGGS (2): VTC Motion Hearing set for 9/13/2021 at 2:00 PM before Judge Timothy J. Kelly. (zkh) (Entered: 09/08/2021) |
| 09/08/2021 | | | Attorney update in case as to ETHAN NORDEAN. Attorney Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for WP COMPANY LLC,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for TEGNA, INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for PRO PUBLICA, INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for NEW YORK TIMES COMPANY,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for NBCUNIVERSAL MEDIA, LLC,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for NATIONAL PUBLIC RADIO, INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for LOS ANGELES TIMES COMMUNICATIONS LLC,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for GRAY MEDIA GROUP, INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for GANNETT CO., INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for E.W. SCRIPPS COMPANY,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for DOW JONES & COMPANY, INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for CBS BROADCASTING INC.,Charles D. Tobin,Maxwell S. Mishkin,Lauren Russell for BUZZFEED INC. added. (zltp) (Entered: 09/20/2021) |
| 09/08/2021 | 176 | | MOTION to Intervene by WP COMPANY LLC, TEGNA, INC., PRO PUBLICA, INC., NEW YORK TIMES COMPANY, NBCUNIVERSAL MEDIA, LLC, NATIONAL PUBLIC RADIO, INC., LOS ANGELES TIMES COMMUNICATIONS LLC, GRAY MEDIA GROUP, INC., GANNETT CO., INC., E.W. SCRIPPS COMPANY, DOW JONES & COMPANY, INC., CBS BROADCASTING INC., BUZZFEED INC., ASSOCIATED PRESS, AMERICAN BROADCASTING COMPANIES, INC., CABLE NEWS NETWORK, INC. as to ETHAN NORDEAN. "Leave to File Granted" by Judge Timothy J. Kelly on 9/8/2021. (Attachments: # 1 Text of Proposed Order)(zltp) (Additional attachment(s) added on 9/28/2021: # 2 Corporate Disclosure Statement) (zltp). (Entered: 09/20/2021) |
| 09/09/2021 | | | MINUTE ORDER as to ZACHARY REHL (3): In light of Defendant's change of counsel, it is hereby ORDERED that Defendant shall file any response to the Government's 149 Motion for Order to Transport Defendant by September 20, 2021. Signed by Judge Timothy J. Kelly on 9/9/2021. (lctjk1) (Entered: 09/09/2021) |
| 09/09/2021 | | | MINUTE ORDER as to ZACHARY REHL (3). On September 6, 2021, Judge Kelly referred this case to the criminal duty magistrate judge for the purposes of ascertaining new counsel for Defendant Rehl. In response to the Court's inquiry, Mr. Johnson (original counsel) and Mr. Moseley (proposed new |

| | | | |
|---|---|---|---|
| | | | counsel) both confirmed that Defendant Rehl wanted to terminate Mr. Johnson's representation and instead retain Mr. Moseley. It is therefore ORDERED that Mr. Johnson's representation is terminated, effective September 6, 2021, when Mr. Moseley entered his appearance. See Min. Order (Sept. 6, 2021) (noting that the Motion to Withdraw as Attorney 153 was granted "but only upon another attorney entering his or her appearance to represent the Defendant."). Mr. Moseley is now counsel of record for Mr. Rehl. Signed by Magistrate Judge Zia M. Faruqui on 9/9/2021. (zpt) (Entered: 09/10/2021) |
| 09/10/2021 | 162 | | NOTICE *of Recent Authority in The Dream Defenders v. Ron DeSantis (N.D. Fla. Sept. 9, 2021)* by ETHAN NORDEAN re 94 First MOTION to Dismiss Case (Attachments: # 1 Exhibit 1)(Smith, Nicholas) (Entered: 09/10/2021) |
| 09/13/2021 | 163 | | NOTICE *of Accused Zachary Rehls Coverage Under Prior Protective Order* by ZACHARY REHL re 83 Order on Motion for Protective Order (Moseley, Jonathon) (Entered: 09/13/2021) |
| 09/13/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Motion Hearing as to ETHAN NORDEAN (1) and JOSEPH R. BIGGS (2) held on 9/13/2021. Defendant NORDEAN (1) appeared by telephone. Defendant BIGGS (2) appeared by video. Oral argument heard and taken under advisement as to 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* filed by NORDEAN (1) and on 137 MOTION for Bond *and to Reopen Detention Hearing 18 USC 3142 (f)* filed by BIGGS (2). Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones; Pretrial Officer: Christine Schuck. (zkh) (Entered: 09/13/2021) |
| 09/14/2021 | | | MINUTE ORDER as to JOSEPH R. BIGGS (2): As discussed at yesterday's hearing, it is hereby ORDERED, for good cause shown, that Defendant Biggs's unopposed request for an extension of time to file a reply in support of his 137 Motion for Bond *and to Reopen Detention Hearing 18 USC 3142 (f)* is GRANTED. It is further ORDERED that Biggs shall file any reply by September 16, 2021. Signed by Judge Timothy J. Kelly on 9/14/2021. (lctjk1) (Entered: 09/14/2021) |
| 09/14/2021 | 164 | | MOTION to Access *Sealed Portion of 9/13/21 Hearing Transcript* by ETHAN NORDEAN. (Attachments: # 1 Text of Proposed Order)(Smith, Nicholas) (Entered: 09/14/2021) |
| 09/14/2021 | 165 | | NOTICE *of Joining Motion to Receive September 13, 2021 Bail Hearing Transcript* by JOSEPH R. BIGGS (Hull, John) (Entered: 09/14/2021) |
| 09/15/2021 | 166 | | NOTICE *of Additional Unproduced Brady Material* by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Smith, Nicholas) (Entered: 09/15/2021) |
| 09/15/2021 | | | **ENTERED IN ERROR.....** MINUTE ORDER as to ETHAN NORDEAN (1) and JOSEPH RANDALL BIGGS (2) granting Nordean's 164 Motion to Access *Sealed Portion of 9/13/21 Hearing Transcript*, joined 165 by Biggs. For good cause shown, it is hereby ORDERED that the court reporter's notes and transcription of the sealed portion of the proceeding of September 13, |

| | | | |
|---|---|---|---|
| | | | 2021, be made available to Nordean and Biggs, while otherwise remaining under seal. Signed by Judge Timothy J. Kelly on 9/15/2021. (lctjk1) Modified to mark entry as error on 9/16/2021 (zkh). (Entered: 09/15/2021) |
| 09/16/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) and JOSEPH R. BIGGS (2) granting Nordean's 164 Motion to Access *Sealed Portion of 9/13/21 Hearing Transcript*, joined 165 by Biggs. For good cause shown, it is hereby ORDERED that the court reporter's notes and transcription of the sealed portion of the proceeding of September 13, 2021, be made available to Nordean and Biggs, while otherwise remaining under seal. Signed by Judge Timothy J. Kelly on 9/16/2021. (lctjk1) (Entered: 09/16/2021) |
| 09/16/2021 | 167 | | Unopposed MOTION pursuant to Rule 36 to Correct a Clerical Error *to redact personal names of family including minor child* by ZACHARY REHL. (Moseley, Jonathon) (Entered: 09/16/2021) |
| 09/16/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) granting 167 Rehl's Unopposed Motion for Leave to Redact or Substitute A Redacted Version of Docket # 86. For good cause shown, it is ORDERED that the motion is GRANTED. The Clerk of the Court is instructed to seal ECF No. 86 , along with any attachments. By September 20, 2021, Defendant Rehl shall file on the public docket a copy of his Memorandum in Opposition to Detention, with attachments, that redacts the information identified in Rehl's motion. Signed by Judge Timothy J. Kelly on 9/16/2021. (lctjk1) Modified to link filing on 9/16/2021 (zkh). (Entered: 09/16/2021) |
| 09/16/2021 | 168 | | NOTICE *of Filing of Memorandum Regarding Status of Discovery in January 6, 2021 Cases* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE re 120 Notice (Other), (Attachments: # 1 Memorandum Regarding Status of Discovery in January 6, 2021 Cases)(McCullough, Jason) (Entered: 09/16/2021) |
| 09/17/2021 | 170 | | NOTICE *of Recent Authority Relevant to Motions to Dismiss* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, CHARLES DONOHOE (Attachments: # 1 Exhibit Opinion and Order in U.S. v. Phomma (D. Or. Sept. 15, 2021))(Jones, Luke) (Entered: 09/17/2021) |
| 09/17/2021 | 171 | | NOTICE *of Correspondence to Defendants in Advance of September 21, 2021, Hearing on Motions to Dismiss* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE (Attachments: # 1 Exhibit Sept. 17, 2021 Letter to Defense Counsel)(Jones, Luke) (Entered: 09/17/2021) |
| 09/18/2021 | 172 | | RESPONSE by ZACHARY REHL re 149 MOTION for Order to Transport Defendant *to District of Columbia in Opposition* (Moseley, Jonathon) (Entered: 09/18/2021) |
| 09/18/2021 | 173 | | Memorandum in Opposition by ZACHARY REHL re 149 MOTION for Order to Transport Defendant *to District of Columbia* (Attachments: # 1 Exhibit Exhibits for Memorandum of Law)(Moseley, Jonathon) (Entered: 09/18/2021) |
| 09/19/2021 | 174 | | RESPONSE by ETHAN NORDEAN re 171 Notice (Other), *re Government's Notice of New Section 231(a)(3) Argument and Effort to Transfer Defendant Rehl to D.C. Jail* (Attachments: # 1 Exhibit 1)(Smith, Nicholas) (Entered: 09/19/2021) |

| 09/20/2021 | 175 | | NOTICE *of Joining Nordean Response re: new DOJ section 231 argument and Notice re: issues raised by efforts to transfer Zach Rehl to DC Jail* by JOSEPH R. BIGGS (Hull, John) (Entered: 09/20/2021) |
|---|---|---|---|
| 09/20/2021 | | | NOTICE OF HEARING **(Time Change)** as to ZACHARY REHL (3): VTC Status Conference set for 9/21/2021 at **10:00 AM** before Judge Timothy J. Kelly. (zkh) (Entered: 09/20/2021) |
| 09/20/2021 | 177 | | RESPONSE by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS re 174 and 175 *Notice of Information Relevant to Bail Proceedings (ECF 174, 175)* (Jones, Luke) Modified to add links on 9/21/2021 (znmw). (Entered: 09/20/2021) |
| 09/20/2021 | 178 | | REDACTED TRANSCRIPT OF MOTION HEARING in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 9−13−21; Page Numbers: 1−102; Date of Issuance: 9−20−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/11/2021. Redacted Transcript Deadline set for 10/21/2021. Release of Transcript Restriction set for 12/19/2021.(Miller, Timothy) (Entered: 09/20/2021) |
| 09/20/2021 | 179 | | REDACTED TRANSCRIPT OF MOTION HEARING in case as to JOSEPH R. BIGGS before Judge Timothy J. Kelly held on 9−13−21; Page Numbers: 1−102; Date of Issuance: 9−20−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the cou rt reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers |

| | | | specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/11/2021. Redacted Transcript Deadline set for 10/21/2021. Release of Transcript Restriction set for 12/19/2021.(Miller, Timothy) (Entered: 09/20/2021) |
|---|---|---|---|
| 09/20/2021 | 180 | | NOTICE *Regarding Discovery Correspondence* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE (Attachments: # 1 7/28/2021 Letter (All Defendants), # 2 7/28/2021 Letter (All Defendants), # 3 7/28/2021 Letter (All Defendants), # 4 7/29/2021 Letter (All Defendants), # 5 8/9/2021 Letter (Biggs), # 6 8/24/2021 Letter (All Defendants), # 7 9/9/2021 Letter (Biggs), # 8 9/9/2021 Letter (Nordean, Donohoe), # 9 9/11/2021 Letter (Nordean, Biggs, Donohoe), # 10 9/16/2021 Letter (Nordean), # 11 9/16/2021 Letter (Biggs, Rehl, Donohoe), # 12 9/16/2021 Letter (Rehl), # 13 9/16/2021 Letter (Rehl), # 14 9/20/2021 Letter (All Defendants), # 15 9/20/2021 Letter (Donohoe), # 16 9/20/2021 Letter (Nordean, Biggs, Rehl))(Jones, Luke) (Entered: 09/20/2021) |
| 09/20/2021 | 181 | | RESPONSE by USA as to ETHAN NORDEAN re 166 Notice (Other) (McCullough, Jason) (Entered: 09/20/2021) |
| 09/21/2021 | 182 | | SUPPLEMENT by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f) DECLARATION of Hendrik Block dated 9/21/21* (Smith, Nicholas) (Entered: 09/21/2021) |
| 09/21/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ZACHARY REHL (3) held on 9/21/2021. Defendant appeared by audio. Oral argument heard on the Government's 149 MOTION for Order to Transport Defendant, and taken under advisement. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorney: Jonathon Alden Moseley; US Attorneys: Jason Bradley Adam McCullough and Luke Matthew Jones; Pretrial Officer: Christine Schuck. (zkh) (Entered: 09/21/2021) |
| 09/21/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference/Motion Hearing as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4) held on 9/21/2021. Defendant NORDEAN appeared by audio. Defendants BIGGS and DONOHOE appeared by video. Defendant REHL's Appearance was Waived. Oral argument heard on Defendant Nordean's 94 First MOTION to Dismiss Case, and taken under advisement. Speedy Trial Excludable (XT) started 9/21/2021 through 10/26/2021, in the interest of justice, as to ALL defendants. VTC Status Conference set for 10/26/2021 at 11:00 AM before Judge Timothy J. Kelly. Jury Selection/Trial set to commence on 5/18/2022 at 9:00 AM in the Ceremonial Courtroom before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 3–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 3–Jonathon Alden Moseley, 4–Lisa S. Costner and Ira Knight; US Attorneys: Jason Bradley Adam McCullough, Luke Matthew Jones, and James Pearce; Pretrial Officer: Christine Schuck. (zkh) (Entered: 09/21/2021) |
| 09/25/2021 | 184 | | MOTION for Bill of Particulars *pursuant to analysis by Judge Amit Mehta of unidentified, unknown number of those aided and abetted and conspired with* |

| | | | |
|---|---|---|---|
| | | | by ZACHARY REHL. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support Memorandum of Law)(Moseley, Jonathon) (Entered: 09/25/2021) |
| 09/26/2021 | 185 | | ENTERED IN ERROR..... MOTION Issuance Of A Subpoena To The U.S. Capitol Police *with included memorandum of law* by ZACHARY REHL. (Moseley, Jonathon) Modified on 9/27/2021 (zltp). (Entered: 09/26/2021) |
| 09/26/2021 | 186 | | Amended MOTION Issuance Of A Subpoena To The U.S. Capitol Police *with included memorandum of law* by ZACHARY REHL. (Moseley, Jonathon) (Entered: 09/26/2021) |
| 09/26/2021 | | | NOTICE OF CORRECTED DOCKET ENTRY: as to ZACHARY REHL re 185 MOTION Issuance Of A Subpoena To The U.S. Capitol Police *with included memorandum of law* was entered in error and counsel refiled said pleading. The correct docket entry is 186 . (zltp) (Entered: 09/27/2021) |
| 09/27/2021 | 187 | | SUPPLEMENT by JOSEPH R. BIGGS re 137 MOTION for Bond *and to Reopen Detention Hearing 18 USC 3142 (f) Second and Final Supplement to Motion to Reopen Hearing and for Release from Detention* (Hull, John) (Entered: 09/27/2021) |
| 09/28/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) denying as moot Nordean's 27 Motion for Bill of Particulars. In March, Nordean filed a motion for a bill of particulars regarding the first indictment, but the Government filed around the same time 26 the First Superseding Indictment. Nordean then filed in May a motion to compel and for a bill of particulars that this Court denied. *See* ECF 138 . Given both the First Superseding Indictment and this Court's 138 order, it is hereby ORDERED that Nordean's 27 Motion is DENIED AS MOOT. Signed by Judge Timothy J. Kelly on 9/28/2021. (lctjk1) (Entered: 09/28/2021) |
| 09/28/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) denying as moot the Government's 92 Motion for Protective Order. Because this Court granted the Government's later filed Motion for Protective Order (*INTERIM*), *see* ECF 103 , it is hereby ORDERED that the Government's 92 Motion is DENIED AS MOOT. Signed by Judge Timothy J. Kelly on 9/28/2021. (lctjk1) (Entered: 09/28/2021) |
| 09/28/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) granting Nordean's 49 Motion for Leave to File *Sur–Reply in Response to New Arguments Raised in Government's Reply in Support of Motion to Revoke Release Order*. It is hereby ORDERED, for good cause shown and *nunc pro tunc*, that Nordean's 49 motion for leave to file a sur–reply is GRANTED. The Clerk is directed to docket Nordeans sur–reply, ECF No. [49–1], with exhibit, ECF No. [49–2]. Signed by Judge Timothy J. Kelly on 9/28/2021. (lctjk1) Modified to provide additional instruction on 9/28/2021 (zkh). (Entered: 09/28/2021) |
| 09/28/2021 | 188 | | SUPPLEMENT by ZACHARY REHL re 186 Amended MOTION Issuance Of A Subpoena To The U.S. Capitol Police *with included memorandum of law disclosing permits independently released to BUZZFEED possibly making this motion moot* (Attachments: # 1 Exhibit Permits Issued by US Capitol Police for Jan 6 demonstrations released to BUZZFEED)(Moseley, Jonathon) (Entered: 09/28/2021) |

| 09/28/2021 | 189 | | SUR–REPLY by ETHAN NORDEAN re 30 MOTION to Revoke *Pretrial Release* (Attachments: # 1 Exhibit #1)(zltp) (Entered: 09/29/2021) |
|---|---|---|---|
| 09/30/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1): Currently pending before the Court are Nordean's 129 Motion to Remove Sensitivity Designation From Certain Capitol Videos Produced in Discovery, and the Press Coalition's 176 Motion to Intervene regarding the same. As noted in Chief Judge Howell's recent decision in *United States v. Torrens*, No. 21–cr–204, ECF No. 83 at 12, "many videos taken from the U.S. Capitol CCV system have been disclosed both through proceedings in the Capitol cases, and during former President Donald Trumps second impeachment proceedings." This Court therefore ORDERS the Government to file a status report by October 7, 2021, addressing whether the videos at issue have been released, if other footage from the same cameras has been released, if footage depicting the same area of the U.S. Capitol building has been released, and whether the Government still opposes Nordean's 129 Motion to Remove Sensitivity Designation. Signed by Judge Timothy J. Kelly on 9/30/2021. (lctjk1) (Entered: 09/30/2021) |
| 09/30/2021 | 190 | | MOTION for Release from Custody *, Renewed Motion For Release From Pre–Trial Detention and Motion To Re–Open Detention Hearing* by ZACHARY REHL. (Attachments: # 1 Text of Proposed Order)(Moseley, Jonathon) (Entered: 09/30/2021) |
| 09/30/2021 | 191 | | NOTICE *Memorandum of Law in Support of Renewed Motion For Release Of Accused Zachary Rehl From Pre–Trial Detention And Motion To Re–Open Detention Hearing* by ZACHARY REHL. (Attachments: # 1 Exhibit 1: Transcript of Bail Hearing Magistrate Pennsylvania, # 2 Exhibit 2. Court's Form Order for Pretrial Detention, # 3 Exhibit 3. U.S. Capitol Police Permits for Demonstrations Jan. 6, # 4 Exhibit 4. January 6 demonstrator given 3 years probation, # 5 Exhibit 5. Reuters News Report of FBI Report of No Advance Planning of Jan. 6 Attacks)(Moseley, Jonathon) Modified text on 10/1/2021 (zltp). Modified on 10/1/2021 (znmw). (Entered: 09/30/2021) |
| 09/30/2021 | 192 | | MOTION to Re–Open Detention Hearing by ZACHARY REHL. (See docket entry 190 to view document.) (zltp) (Entered: 10/01/2021) |
| 10/01/2021 | 194 | | MOTION for Waiver *of Motion formatting rules to allow table of contents and table of authorities to be filed as supplement* by ZACHARY REHL. (Moseley, Jonathon) (Entered: 10/01/2021) |
| 10/04/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) denying Rehl's 194 Motion for Waiver of Motion Formatting Rules Under Local Rules. Because the Local Rules of Criminal Procedure do not require a party to include a table of contents or table of authorities, no waiver is necessary. Thus, it is hereby ORDERED that Rehl's Motion for Waiver is DENIED. Signed by Judge Timothy J. Kelly on 10/4/2021. (lctjk1) (Entered: 10/04/2021) |
| 10/04/2021 | 196 | | SUPPLEMENT by JOSEPH R. BIGGS re 137 MOTION for Bond *and to Reopen Detention Hearing 18 USC 3142 (f) Biggs' Third Supplement to Motion to Reopen Hearing and for Release from Detention* (Hull, John) (Entered: 10/04/2021) |
| 10/05/2021 | 197 | | NOTICE *of Brady material produced after September 13 bail hearing* by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Smith, Nicholas) (Entered: 10/05/2021) |

| 10/06/2021 | 198 | | FIRST SUPPLEMENT *and Notice of Brady Material Produced After Bail Hearing on September 13 in Support of His Renewed Motion for Release of Accused Zachary Rehl from Pre−Trial Detention and Motion to Re−Open Detention Hearing* re 190 by ZACHARY REHL. (Moseley, Jonathon) Modified text on 10/13/2021 (zltp). (Entered: 10/06/2021) |
| 10/07/2021 | 199 | | MOTION for Extension of Time to *File Status Report in re ECF 129* by USA as to ETHAN NORDEAN. (McCullough, Jason) (Entered: 10/07/2021) |
| 10/08/2021 | 200 | | SECOND SUPPLEMENT *documenting that Rehl was not an organizer of January 6 events* by ZACHARY REHL. (Moseley, Jonathon) Modified on 10/13/2021 (zltp). (Entered: 10/08/2021) |
| 10/08/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1) granting the Government's 199 Motion for Extension of Time to File Status Report in re ECF 129 . It is hereby ORDERED, *nunc pro tunc* and for good cause shown, that the Government's motion for an extension is GRANTED. It is further ORDERED that the Government shall file the status report today, October 8, 2021. Signed by Judge Timothy J. Kelly on 10/8/2021. (lctjk1) (Entered: 10/08/2021) |
| 10/08/2021 | 201 | | NOTICE *of Multiple Government Plea Agreements Concerning Parading in the Capitol Offenses Involving Conduct More Serious Than Nordean's* by ETHAN NORDEAN as to ETHAN NORDEAN re 94 First MOTION to Dismiss Case (Smith, Nicholas) Modified text to remove unassociated defendants on 10/12/2021 (zltp). (Entered: 10/08/2021) |
| 10/08/2021 | 202 | | RESPONSE TO ORDER OF THE COURT by USA as to ETHAN NORDEAN re Order on Motion for Extension of Time,, Set/Reset Deadlines, (McCullough, Jason) (Entered: 10/08/2021) |
| 10/09/2021 | 203 | | THIRD SUPPLEMENT *disclosing Friday dawn FBI raid Oct 8 of Rehl's friend and Proud Boys deputy Aaron Whallon Wollkind showing FBI still trying to find evidence against Rehl* by ZACHARY REHL. (Moseley, Jonathon) Modified text on 10/13/2021 (zltp). (Entered: 10/09/2021) |
| 10/10/2021 | 204 | | MOTION to Compel *Supporting Documents of Rehl's alleged (uncited) statements or quotes upon which the Government relies for his indictment and arrest ad for continued prosecution of Rehl* by ZACHARY REHL. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Moseley, Jonathon) (Entered: 10/10/2021) |
| 10/11/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1), DIRECTING the government, after consultation with and consent of the parties, promptly to make the videos at issue in Nordean's 129 Motion to Remove Sensitivity Designation, and the Press Coalition's 176 Motion to Intervene regarding the same, publicly available without restrictions by providing access using the "drop box" technical solution described in Standing Order 21−28, In re: Media Access to Video Exhibits in Pretrial Capitol Cases. It is further ORDERED that Nordean's 129 Motion to Remove Sensitivity Designation is GRANTED, and the Press Coalition's 176 Motion to Intervene is DENIED AS MOOT. Signed by Judge Timothy J. Kelly on 10/11/2021. (lctjk1) (Entered: 10/11/2021) |
| 10/11/2021 | 205 | | Consent MOTION for Order Setting Briefing Schedule by USA as to ZACHARY REHL. (Attachments: # 1 Text of Proposed Order)(Jones, Luke |

| | | | |
|---|---|---|---|
| | | | (Entered: 10/11/2021) |
| 10/13/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) granting the Government's 205 Consent Motion for Order Setting Briefing Schedule. It is hereby ORDERED that the Government shall file its responses to Defendant Rehl's 184 motion for a bill of particulars, 185 186 motion for issuance of a subpoena to U.S. Capitol Police, 190 191 motion for release and to re–open his detention hearing and 198 200 203 supplemental filings, and 204 motion to compel discovery by October 15, 2021. It is further ORDERED that Defendant Rehl shall file any reply in support of the above motions by Friday, October 22, 2021. Signed by Judge Timothy J. Kelly on 10/13/2021. (lctjk1) (Entered: 10/13/2021) |
| 10/13/2021 | 206 | | NOTICE *of Judge Lamberth's Contempt Order against Warden of D.C. Jail for Civil Rights Violation re January 6 Detainee* by ETHAN NORDEAN as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Smith, Nicholas) (Entered: 10/13/2021) |
| 10/14/2021 | 207 | | NOTICE *of Comprehensive January 6 Plea Agreement Database Published on 10/13/21* by ETHAN NORDEAN re 94 First MOTION to Dismiss Case (Attachments: # 1 Exhibit Jan 6 Plea Agreement Chart)(Smith, Nicholas) (Entered: 10/14/2021) |
| 10/15/2021 | 208 | | Memorandum in Opposition by USA as to ZACHARY REHL re 184 MOTION for Bill of Particulars *pursuant to analysis by Judge Amit Mehta of unidentified, unknown number of those aided and abetted and conspired with*, 185 MOTION Issuance Of A Subpoena To The U.S. Capitol Police *with included memorandum of law*, 204 MOTION to Compel *Supporting Documents of Rehl's alleged (uncited) statements or quotes upon which the Government relies for his indictment and arrest ad for continued prosecution of Rehl*, 186 Amended MOTION Issuance Of A Subpoena To The U.S. Capitol Police *with included memorandum of law* (Jones, Luke) (Entered: 10/15/2021) |
| 10/15/2021 | 209 | | NOTICE OF SUBSTITUTION OF COUNSEL as to USA. Attorney Kenerson, Erik Michael added. (Kenerson, Erik) (Entered: 10/15/2021) |
| 10/15/2021 | 210 | | Memorandum in Opposition by USA as to ZACHARY REHL re 192 MOTION Re–Open Detention Hearing, 203 Supplemental MOTION for Release from Custody *by pre–trial release on bail, disclosing Friday dawn FBI raid Oct 8 of Rehl's friend and Proud Boys deputy Aaron Whallon Wollkind showing FBI still trying to find evidence against Rehl*, 190 MOTION for Release from Custody , *Renewed Motion For Release From Pre–Trial Detention and Motion To Re–Open Detention Hearing*, 200 MOTION for Release from Custody *from pre–trial detention, 2nd Supplement documenting that Rehl was not an organizer of January 6 events*, 198 MOTION for Release from Custody *Zachary Rehls Supplement And Notice Of Brady Material Produced After Bail Hearing On September 13 In Support Of His Renewed Motion For Release Of Accused Zachary Rehl From Pre–Trial Detention And Motion To Re–Open D*, 191 MOTION for Release from Custody *Memorandum of Law in Support of Renewed Motion For Release Of Accused Zachary Rehl From Pre–Trial Detention And Motion To Re–Open Detention Hearing* (Attachments: # 1 Exhibit 1 – ICANN Lookup, # 2 Exhibit 2 – |

| | | | |
|---|---|---|---|
| | | | *GiveSendGo Screenshot)(Kenerson, Erik) (Entered: 10/15/2021)* |
| 10/20/2021 | | | NOTICE OF HEARING **(Time Change)** as to ZACHARY REHL (3): Telephonic/VTC Status Conference set for 10/26/2021 at **10:00 AM** before Judge Timothy J. Kelly. (zkh) (Entered: 10/20/2021) |
| 10/21/2021 | 211 | | NOTICE *of remote hearing access limitations for Zachary Rehl at Philadelphia Detention Center* by ZACHARY REHL (Moseley, Jonathon) (Entered: 10/21/2021) |
| 10/25/2021 | 212 | | REPLY TO OPPOSITION to Motion by ZACHARY REHL re 184 MOTION for Bill of Particulars *pursuant to analysis by Judge Amit Mehta of unidentified, unknown number of those aided and abetted and conspired with,* 204 MOTION to Compel *Supporting Documents of Rehl's alleged (uncited) statements or quotes upon which the Government relies for his indictment and arrest ad for continued prosecution of Rehl* (Attachments: # 1 Exhibit Letter requesting transmission of Brady discovery over technical problems)(Moseley, Jonathon) (Entered: 10/25/2021) |
| 10/25/2021 | 213 | | NOTICE *OF FILING VIDEO EXHIBITS* by ZACHARY REHL re 191 MOTION for Release from Custody *Memorandum of Law in Support of Renewed Motion For Release Of Accused Zachary Rehl From Pre−Trial Detention And Motion To Re−Open Detention Hearing* (Moseley, Jonathon) (Entered: 10/25/2021) |
| 10/25/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), CHARLES DONOHOE (4): It is hereby ORDERED that the status conferences scheduled for tomorrow, October 26, 2021, at 10:00 a.m. and 11:00 a.m. are VACATED. The parties shall contact the Courtroom Deputy at (202) 354−3495 to set a new date. Signed by Judge Timothy J. Kelly on 10/25/2021. (lctjk1) (Entered: 10/25/2021) |
| 10/25/2021 | 214 | | STATUS REPORT *Regarding Discovery as of October 21, 2021* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE (Jones, Luke) (Entered: 10/25/2021) |
| 10/27/2021 | | | NOTICE OF HEARING as to ZACHARY REHL (3): VTC Status Conference/Motion Hearing set for 11/2/2021 at 10:00 AM before Judge Timothy J. Kelly. (zkh) (Entered: 10/27/2021) |
| 10/27/2021 | | | NOTICE OF HEARING as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4): VTC Status Conference set for 11/3/2021 at 11:00 AM before Judge Timothy J. Kelly. (zkh) (Entered: 10/27/2021) |
| 10/31/2021 | 215 | | NOTICE *of Filing of Supplemental Authority, Memorandum Opinion of Judge Royce Lamberth in USA v. Russell Taylor* by ZACHARY REHL re 191 MOTION for Release from Custody *Memorandum of Law in Support of Renewed Motion For Release Of Accused Zachary Rehl From Pre−Trial Detention And Motion To Re−Open Detention Hearing* (Attachments: # 1 Exhibit Memorandum Opinion in USA v. Russell Taylor Case No. 1:21−cr−392−RCL−2, by Judge Royce Lamberth)(Moseley, Jonathon) (Entered: 10/31/2021) |
| 11/02/2021 | | | |

| | | | |
|---|---|---|---|
| | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Motion Hearing/Status Conference as to ZACHARY REHL (3) held on 11/2/2021. Defendant appeared by video. Oral argument heard and taken under advisement as to defendant's 190 MOTION for Release from Custody and, *Renewed Motion For Release From Pre–Trial Detention and Motion To Re–Open Detention Hearing.* Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorney: Jonathon Alden Moseley; US Attorneys: Luke Matthew Jones and Erik Michael Kenerson. (zkh) (Entered: 11/02/2021) |
| 11/02/2021 | 216 | | NOTICE *Regarding Discovery Correspondence* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE (Attachments: # 1 9/21/2021 Letter (All Defendants), # 2 10/15/2021 Letter (All Defendants), # 3 10/21/2021 Letter (All Defendants))(Jones, Luke) (Entered: 11/02/2021) |
| 11/03/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4) held on 11/3/2021. Defendant NORDEAN appeared by audio. Defendants BIGGS and DONOHOE appeared by video. Defendant REHL's Appearance was Waived. Scheduling Order to be entered by the court. Speedy Trial Excludable (XT) started nunc pro tunc 10/26/2021 through 12/7/2021, in the interest of justice, as to ALL defendants. VTC Status Conference set for 12/7/2021 at 10:00 AM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 3–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 3–Jonathon Alden Moseley, 4–Lisa S. Costner and Ira Knight; US Attorneys: Luke Matthew Jones and Erik Michael Kenerson. (zkh) (Entered: 11/03/2021) |
| 11/03/2021 | 217 | | NOTICE *of Declaration of Judy Nordean re Additional Commitments Concerning Nordean's Proposed Release Conditions* by ETHAN NORDEAN re 122 MOTION for Bond *and to reopen Detention Decision pursuant to § 3142(f)* (Smith, Nicholas) (Entered: 11/03/2021) |
| 11/03/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1), JOSEPH RANDALL BIGGS (2), CHARLES DONOHOE (4): It is hereby ORDERED that the parties shall submit supplemental briefing on two issues related to the pending 94 First Motion to Dismiss. The parties' briefs shall address the following issues: First, as Defendant Nordean notes, several courts have construed "corruptly" to mean acting "with the intent to secure an unlawful advantage or benefit either for one's self or for another." *See* ECF No. 113 at 19 (citing cases); *see also United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part). Is this an appropriate definition of "corruptly" as the word is used in Section 1512(c)? And if the Court adopted that definition, would Section 1512(c)(2) cover the conduct alleged in the First Superseding Indictment? Second, the Government has argued that "corruptly" means acting "wrongfully" and "with an intent to obstruct." ECF No. 133–1 at 8. What does it mean to act "wrongfully"? Does someone act "wrongfully" merely acting "unlawfully," as the Government appears to suggest in its sur–reply, ECF No. 133–1 at 8, or is something more required? The Government shall submit its brief by November 17, 2021; Defendants shall file any response to the |

| | | | |
|---|---|---|---|
| | | | Government's brief by November 24, 2021; and the Government shall file any reply by December 3, 2021. Signed by Judge Timothy J. Kelly on 11/3/2021. (lctjk1) (Entered: 11/03/2021) |
| 11/03/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4): It is hereby ORDERED, for the reasons explained on the record at the status conference today, that the time period from October 26, 2021 to December 7, 2021 is EXCLUDED under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* The Court finds that the ends of justice served by this continuance outweigh the best interests of the public and Defendants in a speedy trial under 18 U.S.C. § 3161(h)(7)(A), for the reasons explained on the record: (1) the Government's ongoing production of voluminous discovery to Defendants; and (2) the public health limitations on the Court's ability to try a multi−defendant, six−week trial, as reflected in Standing Order No. 21−62: *In Re: Updated Status of Court Operations, including Jury Trials, and Speedy Trial Act Exclusions in Light of the Current Circumstances Relating to the COVID−19 Pandemic*, the findings of which the Court adopts after consideration of the specific circumstances of this case, and the Court's Continuity of Operations Plan referenced in that Order. The Court also notes, as acknowledged by the parties, that time is also excluded under the Speedy Trial Act during this time, in light of the Court's request for additional briefing on the pending 94 First Motion to Dismiss. *See* 18 U.S.C. § 3161(h)(1)(D). Signed by Judge Timothy J. Kelly on 11/3/2021. (lctjk1) (Entered: 11/03/2021) |
| 11/05/2021 | 218 | | STATUS REPORT *Regarding Discovery as of November 5, 2021* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE (Jones, Luke) (Entered: 11/05/2021) |
| 11/10/2021 | 219 | | TRANSCRIPT OF STATUS CONFERENCE in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 11−3−21; Page Numbers: 1−36; Date of Issuance: 11−10−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/1/2021. Redacted Transcript Deadline set for 12/11/2021. Release of Transcript Restriction set for 2/8/2022.(Miller, Timothy) (Entered: 11/10/2021) |
| 11/10/2021 | 220 | | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT OF STATUS CONFERENCE in case as to JOSEPH R. BIGGS before Judge Timothy J. Kelly held on 11−3−21; Page Numbers: 1−36; Date of Issuance: 11−10−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court rep orter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 12/1/2021. Redacted Transcript Deadline set for 12/11/2021. Release of Transcript Restriction set for 2/8/2022.(Miller, Timothy) (Entered: 11/10/2021) |
| 11/10/2021 | 221 | | TRANSCRIPT OF STATUS CONFERENCE in case as to ZACHARY REHL before Judge Timothy J. Kelly held on 11−3−21; Page Numbers: 1−36; Date of Issuance: 11−10−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court report er referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 12/1/2021. Redacted Transcript Deadline set for 12/11/2021. Release of Transcript Restriction set for 2/8/2022.(Miller, Timothy) (Entered: 11/10/2021) |
| 11/10/2021 | 222 | | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES DONOHOE before Judge Timothy J. Kelly held on 11−3−21; Page Numbers: 1−36; Date of Issuance: 11−10−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the Transcript Order Form |

| | | | |
|---|---|---|---|
| | | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court rep orter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/1/2021. Redacted Transcript Deadline set for 12/11/2021. Release of Transcript Restriction set for 2/8/2022.(Miller, Timothy) (Entered: 11/10/2021) |
| 11/12/2021 | 223 | | NOTICE *of Private Letter to Judge and AUSA in support of bail and home conditions* by ZACHARY REHL (Moseley, Jonathon) (Entered: 11/12/2021) |
| 11/12/2021 | 228 | | MOTION for Leave to File Confidential Letters From Wife Regarding Bail by ZACHARY REHL. (See Docket Entry 223 to View Document). (zhsj) (Entered: 11/23/2021) |
| 11/15/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) denying Defendant's 223 Motion. It is hereby ORDERED that Defendant Rehl's motion asking the Court to accept a letter from his wife via mail is DENIED. Defendant is directed to Local Criminal Rule 49(f)(1), which states that "[e]xcept when requested by a judge, correspondence shall not be directed by the parties or their attorneys to a judge, nor shall papers be left with or mailed to a judge for filing." Defendant Rehl may seek leave to file the letter on the public docket, or, if warranted, to file it under seal. Signed by Judge Timothy J. Kelly on 11/15/2021. (lctjk1) (Entered: 11/15/2021) |
| 11/17/2021 | 224 | | SUPPLEMENT by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, CHARLES DONOHOE re 130 Memorandum in Opposition, 106 Memorandum in Opposition *to 94 First Motion to Dismiss* (Kenerson, Erik) (Entered: 11/17/2021) |
| 11/18/2021 | 225 | | Unopposed MOTION for Joinder *in and support of Motion to Dismiss First Superseding Complaint filed by Ethan Nordean* by ZACHARY REHL. (Attachments: # 1 Text of Proposed Order)(Moseley, Jonathon) (Entered: 11/18/2021) |
| 11/18/2021 | 226 | | RESPONSE by ETHAN NORDEAN re 224 Supplement to any document *re The Government's Supplemental Brief on the Meaning of the Term "Corruptly" in the Context of Obstruction of Congress* (Smith, Nicholas) (Entered: 11/18/2021) |
| 11/19/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) granting Defendant's 225 Unopposed Motion to Join Defendant Nordean's 94 Motion to Dismiss. It is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Defendant Rehl may file a response to the Government's 224 Supplement under the timeline outlined in this Court's November 3, 2021 Minute Order. |

| | | | |
|---|---|---|---|
| | | | Signed by Judge Timothy J. Kelly on 11/19/2021. (lctjk1) (Entered: 11/19/2021) |
| 11/19/2021 | | | Set/Reset Deadlines as to ZACHARY REHL (3): Response due by 11/24/2021. (zkh) (Entered: 11/19/2021) |
| 11/19/2021 | 227 | | SUPPLEMENT by ZACHARY REHL as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE re Order,,,,,,, Set Deadlines,,,,,, *Supplemental Brief In Support Of* 94 *Ethan Nordeans Motion To Dismiss The First Superseding Indictment* (Attachments: # 1 Exhibit A: Memorandum of Attorney John Eastman, publicly released by CNN, requiring that Joint Session of Congress meet)(Moseley, Jonathon) Modified to include linkage on 11/30/2021 (zltp). (Entered: 11/19/2021) |
| 11/22/2021 | 247 | | MANDATE of USCA as to CHARLES DONOHOE re 108 Notice of Appeal – Final Judgment. In accordance to the judgment from September 27, 2021, it is ordered and adjudged that the district court's June 23, 2021 order be affirmed. USCA Case Number 21–3046. (Attachments: # 1 USCA Judgment of 9/27/2021)(zltp) (Entered: 12/10/2021) |
| 11/23/2021 | 230 | | MOTION for Discovery *of Grand Jury Transcript, Minutes, Notes, and Evidentiary Exhibits* by ZACHARY REHL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Letter September 24 for Grand Jury Transcript, # 3 Exhibit Email reminder October 29, # 4 Exhibit Letter reminder Nov. 23, # 5 Text of Proposed Order)(Moseley, Jonathon) (Entered: 11/23/2021) |
| 11/23/2021 | 231 | | MOTION for Hearing *upon Zachary Rehls Request For Scheduling Hearing, Argument, And Decision On Motion For Grand Jury Information* by ZACHARY REHL. (Moseley, Jonathon) (Entered: 11/23/2021) |
| 11/23/2021 | 232 | | Amended MOTION for Hearing *upon Zachary Rehls Request For Scheduling Hearing, Argument, And Decision On Motion For Grand Jury Information* by ZACHARY REHL. (Moseley, Jonathon) (Entered: 11/23/2021) |
| 11/24/2021 | 233 | | RESPONSE by JOSEPH R. BIGGS re 224 Supplement to any document *Defendant Biggs Response to Government Supplemental Brief on 18 U.S.C. Section 1512(c)(2)* (Hull, John) Modified text to remove unassociated defendants on 11/28/2021 (zltp). (Entered: 11/24/2021) |
| 11/25/2021 | 234 | | MOTION to Compel *Brady disclosures and discovery previously delivered to prior counsel but still not available to current counsel* by ZACHARY REHL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Letter Transmitting Physical Delivery of 3 empty external hard drives for Government's Use, # 3 Exhibit Letter Identifying Problems with Digital Media transmitting Brady disclosures and discovery, # 4 Text of Proposed Order)(Moseley, Jonathon) (Entered: 11/25/2021) |
| 11/30/2021 | | | NOTICE OF HEARING as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4): The VTC Status Conference currently set for 12/7/2021 is **RESCHEDULED** for 12/14/2021 at 10:00 AM before Judge Timothy J. Kelly. (zkh) (Entered: 11/30/2021) |
| 12/01/2021 | 235 | | ERRATA by ZACHARY REHL re 227 *Supplemental Brief In Support Of Ethan Nordeans Motion To Dismiss The First Superseding Indictment* (Moseley, Jonathon) Modified text on 12/16/2021 (zltp). (Entered: |

| | | | 12/01/2021) |
|---|---|---|---|
| 12/03/2021 | 236 | | REPLY by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE *Reply To The Defendants' Responses To 224 The United States' Supplemental Brief On 18 U.S.C. § 1512(C)(2)* (Jones, Luke) Modified to include linkage on 12/7/2021 (zltp). (Entered: 12/03/2021) |
| 12/05/2021 | 237 | | Unopposed MOTION Direction to pre–trial services to interview Defendant to qualify for public defender *Motion For Instructions For Evaluation For Qualifying For Public Defender* by ZACHARY REHL. (Attachments: # 1 Text of Proposed Order)(Moseley, Jonathon) (Entered: 12/05/2021) |
| 12/06/2021 | 238 | | REPLY by ETHAN NORDEAN re 236 Reply to document *re The Government's Supplemental "Reply" re the Meaning of the Term "Corruptly" in the Context of Obstruction of Congress* (Smith, Nicholas) Modified to remove unassociated defendants on 12/16/2021 (zltp). (Entered: 12/06/2021) |
| 12/06/2021 | 239 | | MOTION for Extension of Time to File Response/Reply *to to Motions to Compel (ECF 230, 234)* by USA as to ZACHARY REHL. (Attachments: # 1 Text of Proposed Order)(Jones, Luke) (Entered: 12/06/2021) |
| 12/07/2021 | 241 | | RESPONSE by ZACHARY REHL re 239 MOTION for Extension of Time to File Response/Reply *to to Motions to Compel (ECF 230, 234)* (Attachments: # 1 Exhibit Email, # 2 Exhibit Email, # 3 Exhibit Letter, # 4 Exhibit Letter, # 5 Exhibit Letter)(Moseley, Jonathon) (Entered: 12/07/2021) |
| 12/07/2021 | 242 | | NOTICE *of Attorney Status* by ZACHARY REHL (Moseley, Jonathon) (Entered: 12/07/2021) |
| 12/08/2021 | 243 | | NOTICE *of Nordean's Placement in the SHU without Explanation* by ETHAN NORDEAN (Smith, Nicholas) (Entered: 12/08/2021) |
| 12/08/2021 | | | MINUTE ORDER as to ZACHARY REHL (3) granting the Government's 239 Motion for an Extension of Time to Respond to Defendant's Motions to Compel. It is hereby ORDERED, for good cause shown, that the Government's motion is GRANTED. It is further ORDERED that the Government shall respond to Defendant Rehl's Motions to Compel by December 16, 2021. Signed by Judge Timothy J. Kelly on 12/8/2021. (lctjk1) (Entered: 12/08/2021) |
| 12/08/2021 | 244 | | MOTION for Reconsideration re Order on Motion for Extension of Time to File Response/Reply,, Set/Reset Deadlines, by ZACHARY REHL. (Attachments: # 1 Exhibit)(Moseley, Jonathon) (Entered: 12/08/2021) |
| 12/09/2021 | 246 | | MOTION to Withdraw as Attorney *Conditional on Documentation of available attorney* by Jonathon A. Moseley. by ZACHARY REHL. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Email Sept 7 2021 from Shelli Peterson, # 3 Exhibit Attachment to Email Sept 7 2021 from Shelli Peterson, # 4 Exhibit Email December 8 from Shelli Peterson, # 5 Text of Proposed Order)(Moseley, Jonathon) (Entered: 12/09/2021) |
| 12/12/2021 | 248 | | NOTICE *of and Response to New Authority in US v. Sandlin, 21–cr–88–DLF, and US v. Reffitt, 21–cr–32–DLF* by ETHAN NORDEAN (Smith, Nicholas) (Entered: 12/12/2021) |
| 12/12/2021 | 249 | | |

| | | | |
|---|---|---|---|
| | | | SUPPLEMENT by ZACHARY REHL re 246 MOTION to Withdraw as Attorney *Conditional on Documentation of available attorney* by Jonathon A. Moseley. (Moseley, Jonathon) (Entered: 12/12/2021) |
| 12/13/2021 | 250 | | SUPPLEMENT by ZACHARY REHL *Defendant Zachary Rehls Second Supplemental Brief In Support Of Ethan Nordean's 94 Motion To Dismiss The First Superseding Indictment re: Nordean's Notice of Supplemental Authority* (Moseley, Jonathon) Modified to include linkage on 12/16/2021 (zltp). (Entered: 12/13/2021) |
| 12/14/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ZACHARY REHL (3) held on 12/14/2021. Defendant appeared by video. For the reasons stated on the record, defendant's 246 MOTION to Withdraw as Attorney is GRANTED. Jonathon Alden Moseley is terminated as counsel for the defendant and Carmen D. Hernandez is appointed under the CJA to represent Defendant REHL(3). Joint Status Report due by 12/21/2021. Bond Status of Defendant: Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: Jonathon Alden Moseley, Michelle M. Peterson, and Carmen D. Hernandez; US Attorneys: Luke Matthew Jones, Jason Bradley Adam McCullough,Erik Michael Kenerson, and James Pearce. (zkh) (Entered: 12/14/2021) |
| 12/14/2021 | | | Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4) held on 12/14/2021. Defendant NORDEAN appeared by audio. Defendants BIGGS and DONOHOE appeared by video. Defendant REHL's Appearance was Waived. For the reasons stated on the record, the 122 MOTION for Bond by defendant NORDEAN, 137 MOTION for Bond by defendant BIGGS, 190 MOTION for Release from Custody and 192 MOTION to Re–Open Detention Hearing both by defendant REHL, are all DENIED. Speedy Trial Excludable (XT) started 12/14/2021 through 1/11/2022, in the interest of justice, as to ALL defendants. Government Submission due by 12/21/2021. Defense Responses due by 12/30/2021. Government Reply due by 1/6/2022. VTC Status Conference set for 1/11/2022 at 10:00 AM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 3–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 3–Carmen D. Hernandez, 4–Lisa S. Costner and Ira Knight; US Attorneys: Luke Matthew Jones, Jason Bradley Adam McCullough, Erik Michael Kenerson and James Pearce. (zkh) (Entered: 12/14/2021) |
| 12/14/2021 | | | MINUTE ORDER as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), and ZACHARY REHL (3), denying Defendants' 122 137 190 Motions to Reopen Bail Proceedings. It is hereby ORDERED, for the reasons set forth on the record today and below, that Defendants Nordean, Biggs, and Rehl's motions to reopen bail proceedings are DENIED. Further, the Court notes that even if the conditions proposed by Nordean included a ban on his possession of electronic devices——a ban that could make it hard for him to review electronic evidence in the case——and even if he abided by that condition, he would still have access to less sophisticated means of communication, such as the use of a land–line telephone or the regular mail, that he could use to exercise leadership, conduct planning, and communicate with associates. Signed by |

| | | | |
|---|---|---|---|
| | | | Judge Timothy J. Kelly on 12/14/2021. (lctjk1) (Entered: 12/14/2021) |
| 12/15/2021 | 251 | | NOTICE OF ATTORNEY APPEARANCE: Carmen D. Hernandez appearing for ZACHARY REHL (Hernandez, Carmen) (Entered: 12/15/2021) |
| 12/17/2021 | 252 | | TRANSCRIPT OF STATUS CONFERENCE in case as to ETHAN NORDEAN before Judge Timothy J. Kelly held on 12–14–21; Page Numbers: 1–47; Date of Issuance: 12–17–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repo rter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022.(Miller, Timothy) (Entered: 12/17/2021) |
| 12/17/2021 | 253 | | TRANSCRIPT OF STATUS CONFERENCE in case as to JOSEPH R. BIGGS before Judge Timothy J. Kelly held on 12–14–21; Page Numbers: 1–47; Date of Issuance: 12–17–21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354–3111. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court re porter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022.(Miller, Timothy) (Entered: 12/17/2021) |
| 12/17/2021 | 254 | | TRANSCRIPT OF STATUS CONFERENCE in case as to ZACHARY REHL before Judge Timothy J. Kelly held on 12–14–21; Page Numbers: 1–47; Date |

| | | |
|---|---|---|
| | | of Issuance: 12−17−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the <u>Transcript Order Form</u>\n\nFor the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court repor ter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.\n\n**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.\n\nRedaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022.(Miller, Timothy) (Entered: 12/17/2021) |
| 12/17/2021 | <u>255</u> | TRANSCRIPT OF STATUS CONFERENCE in case as to CHARLES DONOHOE before Judge Timothy J. Kelly held on 12−14−21; Page Numbers: 1−47; Date of Issuance: 12−17−21; Court Reporter: Timothy R. Miller, Telephone Number (202) 354−3111. Transcripts may be ordered by submitting the <u>Transcript Order Form</u>\n\nFor the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court re porter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.\n\n**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.\n\nRedaction Request due 1/7/2022. Redacted Transcript Deadline set for 1/17/2022. Release of Transcript Restriction set for 3/17/2022.(Miller, Timothy) (Entered: 12/17/2021) |
| 12/21/2021 | <u>256</u> | Joint STATUS REPORT *Regarding Motions Filed by Prior Counsel* by USA as to ZACHARY REHL (Jones, Luke) (Entered: 12/21/2021) |
| 12/21/2021 | <u>257</u> | NOTICE *Government's Submission Regarding Defendants' Ability to Confer with Counsel and Prepare for Trial* by USA as to ETHAN NORDEAN, JOSEPH R. BIGGS, ZACHARY REHL, CHARLES DONOHOE (Jones, Luke) (Entered: 12/21/2021) |
| 12/22/2021 | <u>258</u> | |

| | | | |
|---|---|---|---|
| | | | RESPONSE by ETHAN NORDEAN re 257 Notice (Other) *re Nordean's Ability to Confer with Counsel and Prepare for Trial* (Smith, Nicholas) (Entered: 12/22/2021) |
| 12/27/2021 | 259 | | NOTICE *of DC Jail Covid−19 Lockdown* by ETHAN NORDEAN (Smith, Nicholas) (Entered: 12/27/2021) |
| 12/27/2021 | 260 | | NOTICE OF APPEAL (Interlocutory) by ETHAN NORDEAN re Status Conference,,,,,, Speedy Trial − Excludable Start,,,,,, Set Deadlines/Hearings,,,,, Order on Motion for Bond,,,, Order on Motion for Hearing,,,, Order on Motion for Release from Custody,,,, Order on Motion for Miscellaneous Relief,,,,,,,. Fee Status: No Fee Paid. Parties have been notified. (Smith, Nicholas) (Entered: 12/27/2021) |
| 12/27/2021 | 261 | | NOTICE OF APPEAL (Interlocutory) by JOSEPH R. BIGGS re Status Conference,,,,,, Speedy Trial − Excludable Start,,,,,, Set Deadlines/Hearings,,,,, Order on Motion for Bond,,,, Order on Motion for Release from Custody,,,, Order on Motion for Miscellaneous Relief,,,,,,,, Order on Motion for Hearing,,,. Filing fee $ 505, receipt number ADCDC−8950338. Fee Status: Fee Paid. Parties have been notified. (Hull, John) (Entered: 12/27/2021) |
| 12/28/2021 | 262 | | ORDER as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4), denying Defendants' 94 105 128 225 Motion to Dismiss. See Order for details. Signed by Judge Timothy J. Kelly on 12/28/2021. (lctjk1) (Entered: 12/28/2021) |
| 12/28/2021 | 263 | | MEMORANDUM OPINION as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4), in support of 262 ORDER denying Defendants' 94 105 128 225 Motion to Dismiss. Signed by Judge Timothy J. Kelly on 12/28/2021. (lctjk1) (Entered: 12/28/2021) |
| 12/28/2021 | 264 | | NOTICE OF APPEAL (Interlocutory) by ZACHARY REHL re Order on Motion for Bond,,,,,,, Order on Motion for Hearing,,,, Order on Motion for Release from Custody,,,, Order on Motion for Miscellaneous Relief,,,. Fee Status: No Fee Paid. Parties have been notified. (Hernandez, Carmen) (Entered: 12/28/2021) |

# United States District Court for the District of Columbia

UNITED STATES OF AMERICA    )
                                        )
               vs.               )     Criminal No. __21-cr-175_____
                                          )
Ethan Nordean, et al. _____ )

## NOTICE OF APPEAL

Name and address of appellant:        Ethan Nordean
                                          FDC SeaTac
                                          2425 SOUTH 200TH STREET
                                          SEATTLE, WA  98198

Name and address of appellant's attorney:    Nicholas D. Smith
                                          7 East 20th Street
                                          Suite 4R
                                          New York, NY 10003

Offense:   18 USC 1512(c)(2); 18 USC 1361

Concise statement of judgment or order, giving date, and any sentence:

    12/14/21 Order denying motion to reopen bail proceedings; and related 12/14/21 oral
    Order denying motion to dismiss charges.

Name and institution where now confined, if not on bail:  FDC SeaTac

      I, the above named appellant, hereby appeal to the United States Court of Appeals for the
District of Columbia Circuit from the above-stated judgment.

    12/27/21 _____     /s/ Ethan Nordean_____
      DATE                             APPELLANT
                                                *Nicholas D. Smith*_____
                                                ATTORNEY FOR APPELLANT

| | |
|---|---|
| GOVT. APPEAL, NO FEE | ☐ |
| CJA, NO FEE | ✔ |
| PAID USDC FEE | ☐ |
| PAID USCA FEE | ☐ |

| | | | |
|---|---|---|---|
| Does counsel wish to appear on appeal? | YES ✔ | NO ☐ |
| Has counsel ordered transcripts? | YES ✔ | NO ☐ |
| Is this appeal pursuant to the 1984 Sentencing Reform Act? | YES ☐ | NO ✔ |

```
MIME-Version:1.0
From:DCD_ECFNotice@dcd.uscourts.gov
To:DCD_ECFNotice@localhost.localdomain
Bcc:
--Case Participants: Ira Knight (ira_knight@fd.org), Maxwell S. Mishkin
(litdocket_east@ballardspahr.com, mishkinm@ballardspahr.com), Jason Bradley Adam
McCullough (caseview.ecf@usdoj.gov, jason.mccullough2@usdoj.gov, jmccullough1@usa.doj.gov,
kim.e.hall@usdoj.gov, usadc.ecfnarcotics@usdoj.gov), Charles D. Tobin
(litdocket_east@ballardspahr.com, mishkinm@ballardspahr.com, tobinc@ballardspahr.com,
vincentf@ballardspahr.com), David Benjamin Smith (dbs@davidbsmithpllc.com), Lisa S.
Costner (amanda_benner@fd.org, caryn_cruickson@fd.org, lisa_costner@fd.org), Luke Matthew
Jones (luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov), John Daniel Hull, IV
(jdhull@hullmcguire.com), Nicholas D. Smith (nds@davidbsmithpllc.com), Lauren Russell
(russell@ballardspahr.com), Erik Michael Kenerson (erik.kenerson@usdoj.gov), Michelle M.
Peterson (montserrat_a_fernandez@fd.org, renee_caldwell-brown@fd.org,
shelli_peterson@fd.org), Judge Timothy J. Kelly (joel_nolette@dcd.uscourts.gov,
katrina_harris@dcd.uscourts.gov, margaret_rusconi@dcd.uscourts.gov,
roberto_borgert@dcd.uscourts.gov, samantha_zuba@dcd.uscourts.gov,
tjk_dcdecf@dcd.uscourts.gov, tracy_nelson@dcd.uscourts.gov,
zachary_ingber@dcd.uscourts.gov)
--Non Case Participants: Andrew Goudsward (agoudsward@alm.com), KATELYN POLANTZ
(katelyn.polantz@cnn.com), Michael A. Scarcella (mscarcella@alm.com), Joshua A. Gerstein
(jagalerts@yahoo.com), Spencer S. Hsu (spencer.hsu@washpost.com), Harper K. Neidig
(hneidig@thehill.com), Lawrence J. Hurley (sarah.n.lynch@thomsonreuters.com), Charles Ryan
Barber (foiacrb@gmail.com), Del Q. Wilber (del.wilber@latimes.com), Jacqueline E. Thomsen
(jathomsen@alm.com), David Yaffe-Bellany (davidyb@bloomberg.net), Louis A. Williams
(daniel.barnes@nbcuni.com, pete.williams@nbc.com), Patricia A. McKinney
(lisa.rubin@nbcuni.com), Aruna Viswanatha (aruna.viswanatha@wsj.com), Kyle Cheney
(kcheney@politico.com), Zoe M. Tillman (zoe.tillman@buzzfeed.com), Marcy Wheeler
(emptywheel@gmail.com), AUSA Document Clerk (adavis@usa.doj.gov,
carolyn.carter-mckinley@usdoj.gov, usadc.criminaldocket@usdoj.gov,
usadc.ecfhov@usdoj.gov), AUSA Hearings Clerk (usadc.ecfprobhov@usdoj.gov), Pretrial
Notification (psadistrictcourtgroup@psa.gov), Probation Court Notices
(dcpdb_probation_court_notices@dcp.uscourts.gov)
--No Notice Sent:

Message-Id:7486636@dcd.uscourts.gov
Subject:Activity in Case 1:21-cr-00175-TJK USA v. NORDEAN et al Status Conference
Content-Type: text/html
```

## U.S. District Court

## District of Columbia

**Notice of Electronic Filing**

The following transaction was entered on 12/14/2021 at 1:04 PM EDT and filed on 12/14/2021

| | |
|---|---|
| **Case Name:** | USA v. NORDEAN et al |
| **Case Number:** | 1:21-cr-00175-TJK |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Minute Entry for proceedings held before Judge Timothy J. Kelly: VTC Status Conference as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), ZACHARY REHL (3), and CHARLES DONOHOE (4) held on 12/14/2021. Defendant NORDEAN appeared by audio. Defendants BIGGS and DONOHOE appeared by video. Defendant REHL's Appearance was Waived. For**

**the reasons stated on the record, the [122] MOTION for Bond by defendant NORDEAN, [137] MOTION for Bond by defendant BIGGS, [190] MOTION for Release from Custody and [192] MOTION to Re–Open Detention Hearing both by defendant REHL, are all DENIED. Speedy Trial Excludable (XT) started 12/14/2021 through 1/11/2022, in the interest of justice, as to ALL defendants. Government Submission due by 12/21/2021. Defense Responses due by 12/30/2021. Government Reply due by 1/6/2022. VTC Status Conference set for 1/11/2022 at 10:00 AM before Judge Timothy J. Kelly. Bond Status of Defendants: 1–Remains Committed, 2–Remains Committed, 3–Remains Committed, 4–Remains Committed; Court Reporter: Timothy Miller; Defense Attorneys: 1–David Benjamin Smith and Nicholas D. Smith, 2–John Daniel Hull, IV, 3–Carmen D. Hernandez, 4–Lisa S. Costner and Ira Knight; US Attorneys: Luke Matthew Jones, Jason Bradley Adam McCullough, Erik Michael Kenerson and James Pearce. (zkh)**

**1:21–cr–00175–TJK–1 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org, renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com, mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov, Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–1 Notice will be delivered by other means to::**

**1:21–cr–00175–TJK–2 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org,

renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com,
mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov,
Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–2 Notice will be delivered by other means to::**

**1:21–cr–00175–TJK–3 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org,
renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com,
mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov,
Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–3 Notice will be delivered by other means to::**

**1:21–cr–00175–TJK–4 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org,
renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com,
mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov,
Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–4 Notice will be delivered by other means to::**

```
MIME-Version:1.0
From:DCD_ECFNotice@dcd.uscourts.gov
To:DCD_ECFNotice@localhost.localdomain
Bcc:
--Case Participants: Ira Knight (ira_knight@fd.org), Maxwell S. Mishkin
(litdocket_east@ballardspahr.com, mishkinm@ballardspahr.com), Jason Bradley Adam
McCullough (caseview.ecf@usdoj.gov, jason.mccullough2@usdoj.gov, jmccullough1@usa.doj.gov,
kim.e.hall@usdoj.gov, usadc.ecfnarcotics@usdoj.gov), Charles D. Tobin
(litdocket_east@ballardspahr.com, mishkinm@ballardspahr.com, tobinc@ballardspahr.com,
vincentf@ballardspahr.com), David Benjamin Smith (dbs@davidbsmithpllc.com), Lisa S.
Costner (amanda_benner@fd.org, caryn_cruickson@fd.org, lisa_costner@fd.org), Luke Matthew
Jones (luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov), John Daniel Hull, IV
(jdhull@hullmcguire.com), Nicholas D. Smith (nds@davidbsmithpllc.com), Lauren Russell
(russell@ballardspahr.com), Erik Michael Kenerson (erik.kenerson@usdoj.gov), Michelle M.
Peterson (montserrat_a_fernandez@fd.org, renee_caldwell-brown@fd.org,
shelli_peterson@fd.org), Judge Timothy J. Kelly (joel_nolette@dcd.uscourts.gov,
katrina_harris@dcd.uscourts.gov, margaret_rusconi@dcd.uscourts.gov,
roberto_borgert@dcd.uscourts.gov, samantha_zuba@dcd.uscourts.gov,
tjk_dcdecf@dcd.uscourts.gov, tracy_nelson@dcd.uscourts.gov,
zachary_ingber@dcd.uscourts.gov)
--Non Case Participants: Andrew Goudsward (agoudsward@alm.com), KATELYN POLANTZ
(katelyn.polantz@cnn.com), Michael A. Scarcella (mscarcella@alm.com), Zoe M. Tillman
(zoe.tillman@buzzfeed.com), Joshua A. Gerstein (jagalerts@yahoo.com), Spencer S. Hsu
(spencer.hsu@washpost.com), Harper K. Neidig (hneidig@thehill.com), Lawrence J. Hurley
(sarah.n.lynch@thomsonreuters.com), Charles Ryan Barber (foiacrb@gmail.com), Del Q. Wilber
(del.wilber@latimes.com), Jacqueline E. Thomsen (jathomsen@alm.com), Kyle Cheney
(kcheney@politico.com), Marcy Wheeler (emptywheel@gmail.com), David Yaffe-Bellany
(davidyb@bloomberg.net), Louis A. Williams (daniel.barnes@nbcuni.com,
pete.williams@nbc.com), Patricia A. McKinney (lisa.rubin@nbcuni.com), Aruna Viswanatha
(aruna.viswanatha@wsj.com), Pretrial Notification (psadistrictcourtgroup@psa.gov),
Probation Court Notices (dcpdb_probation_court_notices@dcp.uscourts.gov)
--No Notice Sent:

Message-Id:7486786@dcd.uscourts.gov
Subject:Activity in Case 1:21-cr-00175-TJK USA v. NORDEAN et al Order on Motion for Bond
Content-Type: text/html
```

## U.S. District Court

## District of Columbia

**Notice of Electronic Filing**

The following transaction was entered on 12/14/2021 at 1:48 PM EDT and filed on 12/14/2021

| | |
|---|---|
| **Case Name:** | USA v. NORDEAN et al |
| **Case Number:** | 1:21–cr–00175–TJK |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**

 **MINUTE ORDER as to ETHAN NORDEAN (1), JOSEPH R. BIGGS (2), and ZACHARY REHL (3), denying Defendants' [122] [137] [190] Motions to Reopen Bail Proceedings. It is hereby ORDERED, for the reasons set forth on the record today and below, that Defendants Nordean, Biggs, and Rehl's motions to reopen bail proceedings are DENIED. Further, the Court notes that even if the conditions proposed by Nordean included a ban on his possession of electronic devices––a ban that could make it hard for him to review electronic**

**evidence in the case––and even if he abided by that condition, he would still have access to less sophisticated means of communication, such as the use of a land–line telephone or the regular mail, that he could use to exercise leadership, conduct planning, and communicate with associates. Signed by Judge Timothy J. Kelly on 12/14/2021. (lctjk1)**

**1:21–cr–00175–TJK–1 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org, renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com, mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov, Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–1 Notice will be delivered by other means to::**

**1:21–cr–00175–TJK–2 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org, renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com, mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov,
Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–2 Notice will be delivered by other means to::**

**1:21–cr–00175–TJK–3 Notice has been electronically mailed to:**

John Daniel Hull, IV     jdhull@hullmcguire.com

David Benjamin Smith     dbs@davidbsmithpllc.com

Michelle M. Peterson     shelli_peterson@fd.org, montserrat_a_fernandez@fd.org,
renee_caldwell–brown@fd.org

Charles D. Tobin     tobinc@ballardspahr.com, LitDocket_East@ballardspahr.com,
mishkinm@ballardspahr.com, vincentf@ballardspahr.com

Luke Matthew Jones     luke.jones@usdoj.gov, matthew.ruggiero@usdoj.gov

Erik Michael Kenerson     erik.kenerson@usdoj.gov

Nicholas D. Smith     nds@davidbsmithpllc.com

Maxwell S. Mishkin     mishkinm@ballardspahr.com, LitDocket_East@ballardspahr.com

Jason Bradley Adam McCullough     jason.mccullough2@usdoj.gov, CaseView.ECF@usdoj.gov,
Kim.E.Hall@usdoj.gov, jmccullough1@usa.doj.gov, usadc.ecfnarcotics@usdoj.gov

Lisa S. Costner     lisa_costner@fd.org, amanda_benner@fd.org, caryn_cruickson@fd.org

Lauren Russell     russelll@ballardspahr.com

Ira Knight     ira_knight@fd.org

**1:21–cr–00175–TJK–3 Notice will be delivered by other means to::**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>v.<br><br>ETHAN NORDEAN et al.,<br><br>   *Defendants*. | Criminal Action No. 21-175 (TJK) |

**<u>ORDER</u>**

For the reasons set forth in the Court's accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' Motion to Dismiss, ECF Nos. 94, 105, 128, 225, is **DENIED**.

**SO ORDERED**.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY
United States District Judge

Date: December 28, 2021

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.                                                              Criminal Action No. 21-175 (TJK)

ETHAN NORDEAN et al.,

*Defendants.*

## <u>MEMORANDUM OPINION</u>

Defendants Ethan Nordean, Joseph R. Biggs, Zachary Rehl, and Charles Donohoe are alleged, among other things, to have conspired to stop, delay, or hinder Congress's certification of the Electoral College vote on January 6, 2021, and to obstruct and interfere with law enforcement officers engaged in their official duties that day.  They move to dismiss the First Superseding Indictment, arguing that the various statutes at issue do not apply to their alleged conduct, and that even if they do, the laws are unconstitutional as applied to them.  They also argue that the First Superseding Indictment otherwise fails to adequately allege certain offenses.  For the reasons explained below, the Court will deny the motion.

## I.      **Background**

In March 2021, a grand jury returned the First Superseding Indictment charging Defendants for their alleged roles in the events of January 6, 2021.  According to the First Superseding Indictment, the month after the 2020 United States presidential election on November 3, 2020, the presidential electors of the United States Electoral College met in the state capital of each state and the District of Columbia.  ECF No. 26 ¶ 3.  Their task was to formalize the results of the election: that Joe Biden and Kamala Harris had won enough votes to be the next president and vice

president of the United States. *Id*. And on January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol to certify the Electoral College's vote. *Id.* ¶ 4. But, the First Superseding Indictment alleges, Congress was attacked by a crowd that breached barriers erected by the United States Capitol Police and entered the Capitol by breaking windows and ramming open doors, forcing the evacuation of members of Congress and the halting of the Joint Session until later that evening. *Id.* ¶ 20–22. By the time law enforcement regained control over the Capitol and its grounds, about 81 members of the Capitol Police and 58 members of the Metropolitan Police Department had been assaulted, and the Capitol building had suffered millions of dollars in damage. *Id.* ¶ 23.

The First Superseding Indictment alleges that Defendants helped plan and orchestrate the events of January 6. Count One charges them with conspiracy under 18 U.S.C. § 371. ECF No. 26 ¶ 27. Defendants allegedly conspired "to stop, delay, or hinder Congress's certification of the Electoral College vote," in violation of 18 U.S.C. § 1512(c)(2), and "to obstruct and interfere with law enforcement officers engaged in their official duties to protect the Capitol and its occupants from those who had unlawfully advanced onto Capitol grounds," in violation of 18 U.S.C. § 231(a)(3). *Id*. Defendants—who allegedly held leadership positions or planning roles with the "Proud Boys" organization—purportedly carried out this conspiracy by, among other things, encouraging other Proud Boys to attend the protest on January 6; "[u]sing websites, social media, and other electronic communications to raise funds to support travel and equipment purchases for the visit to Washington, D.C."; "[o]btaining paramilitary gear and supplies—including tactical vests, protective equipment, and radio equipment—for the January 6 attack"; "[s]cheming to evade detection by law enforcement by dressing 'incognito' rather than wearing Proud Boys colors";

traveling to Washington, D.C., "prior to the attack"; using "programmable handheld radios, encrypted messaging applications, and other communications equipment to communicate and coordinate the January 6 attack"; "[d]ismantling" police barricades, and "[s]torming past" those barricades and law enforcement officers "in efforts to disrupt the proceedings at the Capitol"; and obtaining "entry into the Capitol building as a result of damage to windows and doors that otherwise would have precluded entry." *Id.* ¶ 28. The First Superseding Indictment also alleges that Defendants engaged in a series of detailed overt acts in furtherance of the conspiracy, described below.

In November 2020, Nordean, Biggs, and Rehl allegedly described what would happen if the election were "stolen." ECF No. 26 ¶¶ 31–36. Two days after Election Day, Biggs posted on social media, "It's time for fucking War if they steal this shit." *Id.* ¶ 31. Nordean supposedly said, "What's more disturbing to me than the Dems trying to steal this election, is how many people . . . just accepted Biden won, despite the obvious corruption[.]" *Id.* ¶ 32 (ellipsis in original). And he allegedly later warned, "We tried playing nice and by the rules, now you will deal with the monster you created." *Id.* ¶ 34. Rehl posted: "Hopefully the firing squads are for the traitors that are trying to steal the election from the American people." *Id.* ¶ 35. And Rehl allegedly described January 6 as "the day where Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes, and yes, there will be a big rally on that day." *Id.* ¶ 36 (alterations in original).

By December, Nordean and Rehl started to raise funds for January 6. ECF No. 26 ¶¶ 37–38. Nordean allegedly created an online crowdfunding campaign, soliciting money not only for "communications" but also for "[p]rotective gear" for Proud Boys who would attend. *Id.* ¶ 37. And he supposedly "shared a link to this crowdsourcing campaign on his social media page and

encouraged others to share it" as well.  *Id.*  Rehl also allegedly shared a link to an online fundraiser with the name "Travel Expenses for upcoming Patriot Events."  *Id.* ¶ 38.

In the days before January 6, Defendants allegedly communicated covertly to plan for the events of that day.  ECF No. 26 ¶¶ 39–48.  On January 5, Defendants all joined a specific encrypted messaging channel called "Boots on the Ground," which "was created for communications by Proud Boys members in Washington, D.C."  *Id.* ¶ 42.  The channel had been created after Donohoe expressed concern that a prior channel might be compromised by law enforcement.  *Id.* ¶ 39.  Not long afterward, a co-conspirator allegedly posted on the channel: "We had originally planned on breaking the guys into teams.  Let's start divying them up and getting baofeng channels picked out."  *Id.* ¶ 41.  "Baofeng" is a "manufacturer of handheld radios and other communications equipment," according to the First Superseding Indictment.  *Id.* ¶ 41 n.1.  Biggs allegedly posted a message shortly after the channel was created, noting that he was with Nordean and that "[t]omorrow's the day."  *Id.* ¶ 42.  He then apparently asked for "numbers" so that he and others could "plan accordingly for tonight and go over tomorrow's plan."  *Id.* ¶ 43.  Biggs later posted in one of the encrypted messaging channels, "We have a plan."  *Id.* ¶ 48.  When Donohoe asked what the plan was so he could pass it on, Biggs allegedly responded that he had given a plan to the Proud Boys Chairman.  *Id.*

On the morning of January 6, "a group of Proud Boys members gathered near the Washington Monument."  ECF No. 26 ¶ 51.  Early that morning, Donohoe communicated that he "had the keys until [Nordean] and [Rehl] show up."  *Id.* at 50 (cleaned up).  Nordean, Biggs, and Rehl allegedly "led the group, which included Donohoe, to the east side of the Capitol."  *Id.* ¶ 52 (capitalization altered).  The group with Defendants "were not wearing Proud Boys colors of black and yellow," *id.* ¶ 53, consistent with an earlier directive given by Defendants and others, *id.* ¶ 12.  Just

4

before 1:00 p.m.—when "the Joint Session convened in the Capitol to certify the Electoral College vote," *id.* ¶ 17—the group, allegedly led again by Nordean, Biggs, and Rehl, and including Donohoe, moved to the Capitol entrance on First Street, "which was secured by a small number of Capitol Police who were standing behind waist height metal barriers," *id.* ¶ 54.

According to the First Superseding Indictment, shortly after Defendants got to the First Street entrance, the metal barriers were "violently disassembled and trampled by the crowd." ECF No. 26 ¶ 55. Defendants crossed over the same barriers, and "charged" toward the Capitol. *Id.* As Defendants moved toward the building, individuals who had arrived with them apparently continued to remove metal barriers. *Id.* ¶ 56. Eventually, Defendants came to the "west plaza of the Capitol where additional metal barricades and law enforcement were deployed to protect the Capitol and its occupants from the advancing crowd." *Id.* ¶ 57. Nordean and Biggs allegedly shook one of the barricades until they and others "were able to knock it down." *Id.* ¶ 58. Defendants and the rest of the crowd then advanced past it, toward the Capitol. *Id.*

Arriving at the west plaza, Nordean and Biggs allegedly "positioned themselves at or near the front of the crowd." ECF No. 26 ¶ 59. Biggs then recorded a video, announcing, "we've just taken the Capitol." *Id.* Donohoe helped the crowd "advance up a flight of stairs towards the Capitol," overwhelming law enforcement officers trying to contain it. *Id.* ¶ 61. Fellow Proud Boys member Dominic Pezzola used a riot shield to break a window, which "allowed rioters to enter the building and force open an adjacent door from the inside." *Id.* ¶ 62. Biggs allegedly entered the building through that adjacent door before leaving and, 30 minutes later, "forcibly" re-entered the building on the opposite side, "pushing past at least one law enforcement officer" and eventually making his way to the Senate chamber. *Id.* ¶¶ 62–65. A few minutes after Biggs first entered, a member of the "Boots on the Ground" channel posted "We just stormed the capitol."

*Id.* ¶ 62.  Rehl entered the Capitol through the same door as Biggs.  *Id.* ¶ 67.  And Nordean "entered and remained in the Capitol, including in the Rotunda, before exiting the Capitol with another member of the Proud Boys."  *Id.* ¶ 66.  Later, close to 4:00 p.m., Donohoe announced on one of the encrypted messaging platforms that some were "regrouping with a second force."  *Id.* ¶ 68.

As these events took place, "members of the House and Senate (including Vice President Pence) . . . were evacuated from their respective chambers.  The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants."  *Id.* ¶ 21.  It was not until 8:00 p.m. that night that the "Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building in a secure location throughout these events."  *Id.* ¶ 22.

In the end, as asserted in the First Superseding Indictment, almost "81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted," as were members of the media.  ECF No. 26 ¶ 23.  And the Capitol building "suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order."  *Id.*  Meanwhile, Defendants allegedly "celebrated the events" of that day "through communications on social media and in encrypted chat messages."  *Id.* ¶ 24.

Besides conspiring to violate 18 U.S.C. §§ 1512(c)(2) and 231(a)(3), Counts Two and Three of the First Superseding Indictment also charge Defendants with violating those statutes, either as principals or under an aiding and abetting theory.  ECF No. 26 ¶¶ 69–72.  Defendants are alleged to have corruptly obstructed, influenced, and impeded an official proceeding, and aided and abetted others to do the same—that is, they allegedly "unlawfully entered the Capitol grounds

or the Capitol building to . . . stop, delay, and hinder Congress's certification of the Electoral College vote," and succeeded in doing so—in violation of 18 U.S.C. § 1512(c)(2). *Id.* ¶ 70. And as for the substantive 18 U.S.C. 231(a)(3) charge, Defendants purportedly "committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in official duties incident to and during the commission of a civil disorder," and aided and abetted others to do the same. *Id.* ¶ 72. As alleged in the First Superseding Indictment, "the civil disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function." *Id.*

Defendants are also charged with violating three other statutes. Count Five alleges that they unlawfully and knowingly entered and remained in a restricted building and grounds—*i.e.*, "any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-Elect were temporarily visiting"—without lawful authority to do so, in violation of 18 U.S.C. § 1752(a)(1). ECF No. 26 ¶ 76. Count Six charges them with "knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions," engaging in "disorderly and disruptive conduct in and within such proximity to" the same restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(2). *Id.* ¶ 78. Finally, in Count Four, they are charged with willfully injuring and committing depredation against property of the United States, and aiding and abetting others to do so, in violation of 18 U.S.C. § 1361. *Id.* ¶ 74. Defendants, "together and with others known and unknown, aided and abetted others known and unknown to forcibly enter the Capitol," thus causing more than $1,000 in damage to the building. *Id.*

Defendant Nordean moved to dismiss the First Superseding Indictment. ECF No. 94. Defendants Biggs, Donohoe, and Rehl later joined the motion. ECF Nos. 105, 128, 225. Defendants

argue that the Section 1512(c)(2), Section 231(a)(3), and Section 1752 charges should be dismissed because the statutes do not apply to Defendants' alleged conduct, and if the statutes do apply, they are unconstitutional.  Defendants also contend that the Section 231(a)(3) and Section 1361 charges are otherwise inadequately alleged.

## II.    Legal Standard

Before trial, a criminal defendant may move to dismiss a count of the indictment based on a "defect in the indictment."  Fed. R. Crim. P. 12(b)(3)(B).  Defects can include "lack of specificity" and "failure to state an offense."  *Id*.  A "failure to state an offense" argument includes constitutional challenges to the statute creating the charged offenses.  *See United States v. Stone*, 394 F. Supp. 3d 1, 7 (D.D.C. 2019); *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973).  When considering a challenge to the indictment, "a district court is limited to reviewing the *face* of the indictment"; the Court must "presume the allegations [in the] indictment to be true."  *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks omitted).  "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  *United States v. Sanford, Ltd*., 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

## III.   Analysis

### A.    18 U.S.C. § 1512(c)(2)

Defendants first challenge the application of Section 1512(c)(2) to their alleged conduct both preceding January 6, 2021, and on that day.  In full, Section 1512(c) reads:

Whoever corruptly—
>    (1) alters destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>    (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).  According to Defendants, Section 1512(c)(2) does not apply here because Congress's certification was not an "official proceeding," and the phrase "otherwise obstructs, influences, or impedes" is limited to conduct like the destruction or alteration of documents and other records.  In addition, if the statute is not read as they propose, Defendants argue that it is vague as applied; contravenes the rule of lenity; conflicts with the novel-construction principle; and violates the First Amendment.  None of these arguments succeeds.

> **1.    Congress's Certification of the Electoral College Vote Was an "Official Proceeding" Under Section 1512(c)(2)**

Defendants start by arguing that Congress's certification of the Electoral College vote was not an "official proceeding" because it did not involve "Congress's implied power of investigation in aid of legislation but instead formalized the result of the 2020 U.S. Presidential election."  ECF No. 94 at 19 (internal quotation marks omitted).  The Court is not persuaded.

Section 1515 of title 18 defines terms used in Section 1512.  It specifically provides that "the term 'official proceeding' means," among other things, "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B).  Although the statute does not go further to define "proceeding," the dictionary does.  The term refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behaviour."  *Proceeding*, def. 2a, Oxford English Dictionary (3d ed. 2021), *available at* https://www.oed.com.  Under that straightforward definition, Congress's certification was a "proceeding."  According to the Electoral Count Act of 1887, a Joint Session of the Senate and House of Representatives must convene at "the hour of 1 o'clock in the afternoon"

on "the sixth day of January succeeding every meeting of the electors."  3 U.S.C. § 15; *see also* U.S. Const. art. II, § 1, cl. 3; U.S. Const. amend. XII.  And the Joint Session must follow specific steps: the President of the Senate (the Vice President) must open the votes, hand them to two tellers from each House, ensure the votes are properly counted, and then call for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." 3 U.S.C. § 15.  Once any objections are "received and read," they must be "submitted" to both the Senate and the House of Representatives for their decision.  *Id.*  "When the two Houses separate to decide upon an objection . . . each Senator and Representative may speak to such objection or question five minutes, and not more than once."  *Id.* § 17.  The presiding officer must end the debate after two hours.  *Id.*  The Senate and House "concurrently may reject the vote or votes when they agree that such vote or votes have not been so regularly given by electors whose appointment has been so certified."  *Id.* § 15.  In sum, that the certification of the Electoral College vote consists of these "series of actions" strongly suggests that is a "proceeding" under the statute.

That said, the Court agrees with the court in *United States v. Sandlin* that not everything that falls under this general definition of "proceeding" qualifies as a Section 1515(a)(1)(B) "proceeding" because the phrase "before the Congress" suggests that the "proceeding" must involve "some formal convocation" of the Legislative Branch.[1]  --- F. Supp. 3d ---- , 2021 WL 5865006,

---

[1] Defendants point out in a recent filing that the *Ramos* court stated that a proceeding "before" an agency implies not just "some formal convocation of the agency" but one "in which parties are directed to appear."  ECF No. 248 at 3.  They argue that this "defeats the [*Sandlin* court's] formality per se definition" because "'parties' are by definition those opposed in an adjudicatory proceeding."  *Id.*  But the Fifth Circuit's description of the relevant actors in an *agency* proceeding as "parties" means little in the context of defining a "proceeding before the Congress."  Indeed, it is hard to imagine how there would be ever "parties" to a "proceeding before the Congress" in the sense Defendants describe—save for maybe an impeachment.  And while they were not "parties" in the sense described by Defendants, the relevant actors here—Vice President Pence and the members of Congress—were "directed to appear" by both statute and the Constitution.  3 U.S.C. § 15; *see also* U.S. Const. art. II, § 1, cl. 3; U.S. Const. amend. XII.

at *3 (D.D.C. Dec. 10, 2021) (internal quotation marks omitted) (quoting *United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008)).  But even so, Congress's certification makes the grade.  Once again, the certification process mandated under the Constitution requires the Senate and House to "convene[]" in Joint Session.  ECF No. 26 ¶ 4; U.S. Const. art. II, § 1, cl. 3; U.S. Const. amend. XII.  And by statute, the Joint Session must happen on a specific day, at a precise time, in a particular location.  3 U.S.C. § 15.  For all these reasons, the certification is therefore a "series of actions" that requires "some formal convocation," making it a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and thus an "official proceeding," *id.* § 1512(c)(2).

Defendants argue that "official proceeding" refers to something more specific than a "series of actions" before a formally convened Congress.  In their view, an "official proceeding" must be in some sense adjudicative or judicial.  ECF No. 94 at 21.  But the text of the statute does not suggest such an interpretation.  To repeat, the law defines "official proceeding" simply as a "proceeding before the Congress."  18 U.S.C. § 1515.  And the cases Defendants cite are not very helpful for them in this context.  They address whether *other* activities—like FBI investigations—constitute *other* types of proceedings—like "a proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1)(C); *see* ECF No. 94 at 21–22 (discussing *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013)); ECF No. 105 at 3.

Besides, if Congress wanted to define "official proceeding" in a way that required something more like an adjudicative setting—rather than simply "a proceeding before the Congress"—it could have imported the language it used in 18 U.S.C. § 1505.  That section criminalizes obstruction of the "due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee

of the Congress." *Id.* But Congress did not do so, and courts presume that choice was intentional.[2] *See Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.").

And finally, even if an "official proceeding" had to be quasi-adjudicative or quasi-judicial in some way—a requirement missing from the plain text of the statute—because Congress's certification of the Electoral College vote has *some* of those features, it would pass the test. As explained above, it is a formal process. *See Ermoian*, 752 F.3d at 1170 ("[T]he descriptor 'official' indicates a sense of formality normally associated with legal proceedings[.]"); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (concluding that an agency's "detailed process of review and decision-making" was "sufficiently formal" to qualify as an "'official proceeding'"). In addition, the Vice President, as President of the Senate, serves as "presiding officer" while the votes cast by Electors are counted. 3 U.S.C. § 15. As in a court of law, members of Congress may object, which in turn causes the Senate and House of Representative to separately consider and render their separate "decision[s]" on the objection." *Id.* Further, after the count is finished, the certification must end with a "result declared."[3] *Id.* § 16.

---

[2] If, as Defendants argue, ECF No. 248 at 4–5, there needed to be some sort of "clear[]" proof that Congress meant a "proceeding before the Congress" to be different from a proceeding before a different type of governmental body—*i.e.*, not necessarily adjudicative or investigatory—this choice would do the trick. *See, e.g.*, *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018) ("Congress's choice to depart from the model of a closely related statute is a choice neither we nor the agency may disregard.").

[3] Whether the Electoral Count Act is "interpreted as a hortatory House internal rule" or a statutory requirement, there is no question that it sets forth a list of official procedures. ECF No. 135 at 6. And that Congress has long followed those procedures—including on January 6, 2021— illustrates the formality of the certification process and why it qualifies as a "proceeding before the Congress." This Court need not, as Defendants argue, "answer nonjusticiable political questions" to come to these conclusions. *Id.* at 7.

12

### 2.    Section 1512(c)(2) Prohibits Conduct That Need Not Impair Evidence

Defendants next argue that Section 1512(c)(2) should be limited by the subsection that comes before it—*i.e.*, Section 1512(c)(1).   That section covers "corruptly . . . alter[ing], destroy[ing], multilat[ing] or conceal[ing] a record, document, or other object, or attempt[ing] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1).   Given Section 1512(c)(1)'s focus on the impairment of evidence, Defendants say, Section 1512(c)(2) should be construed to apply only to the same.   But that interpretation cannot be squared with Section 1512's statutory text or structure.

Section 1512(c)(2) prohibits conduct that "corruptly . . . obstructs, influences, or impedes" congressional proceedings.   Those verbs—"obstruct," "influence," and "impede"—cover a wide range of conduct.   "[O]bstruct" and "impede" can "refer to anything that blocks, makes difficult, or hinders."   *Marinello v. United States* 138 S. Ct. 1101, 1106 (2018) (cleaned up).   And "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on."   *Influence*, def. 1b, Oxford English Dictionary (3d ed. 2021), *available at* http://www.oed.com.   This language is plainly "expansive" in scope, *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013), and does not suggest a limitation along the lines Defendants propose.

The structure of the statute confirms Section 1512(c)(2)'s broad reach.   Section 1512(c)(1) focuses on the destruction of documents and other records.   *See* 18 U.S.C. § 1512(c)(1).   Section 1512(c)(2) follows, and applies to conduct that "*otherwise* obstructs, influences, or impedes."   *Id.* § 1512(c)(2) (emphasis added).   The use of the word "otherwise" suggests that Section 1512(c)(2) was intended to target something different than (c)(1)—that is, conduct "beyond simple document destruction."   *Burge*, 711 F.3d at 809; *see also United States v. Petruk*, 781 F.3d 438, 446–47 (8th Cir. 2015) (citing Webster's New World College Dictionary 1021 (4th ed. 2007), which defines

13

"otherwise" as "in another manner; differently"). In this way, Section 1512(c)(2) "operates as a catch-all."[4]  *Burge*, 711 F.3d at 809.

Consistent with this reading, at least one Court of Appeals has affirmed the application of Section 1512(c)(2) to obstructive conduct without requiring that conduct to have impaired evidence. In *United States v. Phillips*, the Tenth Circuit upheld the application of Section 1512(c)(2) to a defendant's "disclos[ure] [of] the true identity of an undercover officer to a subject of" several investigations. 583 F.3d 1261, 1262 (10th Cir. 2009). The court never mentioned the impairment of evidence or testimony. It simply explained that "a reasonable jury could conclude that the natural and probable effect of" such disclosure "was impeding a federal grand jury investigation." *Id.* at 1265. In fact, the court held, "a jury could find that [the defendant] had no purpose other than to thwart such an investigation." *Id.* Similarly, there is no reason to think that Section 1512(c)(2) does not apply to Defendants' conduct charged in the First Superseding Indictment, which was allegedly intended to "stop, delay, or hinder Congress's certification of the Electoral College vote," ECF No. 26 ¶ 27, even if it did not involve the impairment of evidence.

Defendants' argument that Section 1512(c)(2)'s scope is more limited leans primarily on the canon of statutory interpretation known as *ejusdem generis*, Latin for "of the same kind." *Ass'n of Am. R. R. v. United States*, 603 F.2d 953, 963 n.28 (D.C. Cir. 1979). That canon teaches that "'when a general term follows a specific one, the general term should be understood as a reference

---

[4] The Court need not turn to legislative history for guidance, given this unambiguous text. *See Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) ("Congress's authoritative statement is the statutory text, not the legislative history." (quotation marks omitted)). That said, the legislative history cited by Defendants does not conflict with the Court's interpretation of Section 1512(c)(2). The comments of various Senators to which Defendants point address additional conduct Section 1512(c) would punish—*i.e.*, what "loopholes" it would close—but these comments do not suggest that Subsection (c)(2) is *limited* to those examples. ECF No. 94 at 5–6.

14

to subjects akin to the one with specific enumeration.'"  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223 (2008) (quoting *Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991)).  But that canon has no force here.

*Yates v. United States*—a case in which a plurality of the Court applied *ejusdem generis*— illustrates why.  574 U.S. 528 (2015) (plurality opinion).  In that case, the Supreme Court considered the meaning of the term "tangible object" as it appeared in 18 U.S.C. § 1519, which punishes anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter" before a federal department or agency. *Id.* at 531.  In concluding that "tangible object" does not cover "fish," a plurality of the Supreme Court applied the *ejusdem generis* canon and read "tangible object" in light of the terms preceding it.  *Id.* at 545–46.  The plurality reasoned that "[w]here general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Id.* at 545 (quotation marks omitted).  And Section 1519 lists first two specific things—"records" and "documents"—followed by "tangible object[s]," a more general term that encompasses both records and documents.  "Had Congress intended 'tangible object' . . . to be interpreted so generically as to capture physical objects as dissimilar as documents and fish, Congress would have had no reason to refer specifically to 'record' or 'document.'"  *Id.* at 546.  Indeed, other courts applying the canon have explained that when Congress uses "a list of specific items separated by commas and followed by a general or collective term," it signals that Congress "remained focused on [a] common attribute" when promulgating the statute.  *Ali*, 552 U.S. at 225; *see also Begay v. United States*, 553 U.S. 137 (2008) (applying *ejusdem generis* to a statute with a similar structure).

Section 1512(c)(2) is different than Section 1519 because it has no "list of specific items separated by commas and followed by a general or collective term." *Ali*, 552 U.S. at 225 (noting that the "absence of a list . . . undercuts the inference embodied in *ejusdem generis*"). Section 1512(c) has two separate clauses: Section 1512(c)(1) and Section 1512(c)(2). Section 1512(c)(1) refers to the destruction or manipulation of documents or other records. Then, set apart by a semicolon, and set off in different subsection, is the catch-all for all other efforts to obstruct an official proceeding—Section 1512(c)(2). The two subsections "have separate numbers, line breaks before, between, and after them, and equivalent indentation . . . placing the clauses visually on an equal footing." *Sandlin*, 2021 WL 5865006, at *6 (quoting *Loughrin v. United States*, 573 U.S. 351, 359 (2014)). Such "circumstances" suggest "separate meanings." *Id.*; *see also NACS v. Bd. of Governors of Fed. Rsrv. Sys.*, 746 F.3d 474, 486 (D.C. Cir. 2014) ("Even if punctuation is sometimes a minor element in interpreting the meaning of language, punctuation is often crucial. . . . After all, Congress communicates through written language, and one component of written language is grammar, including punctuation.").

Defendants also invoke the *noscitur a sociis* canon of statutory interpretation. *Noscitur a sociis* is the principle that "a word is known by the company it keeps." *Yates*, 574 U.S. at 543. The canon is used to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Id.* (quoting *Gustagson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Defendants point to the *Yates* plurality's use of this canon, along with *ejusdem generis*, to limit the meaning of the term "tangible object" in 18 U.S.C. § 1519. But once again, the plurality's reasoning is inapplicable here. In *Yates*, the plurality concluded that it would be "unnatural" to apply some verbs Congress used in Section 1519—"alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry"—to objects that

were not something like the records or documents specifically listed in the statute.  *Yates*, 574 U.S. at 544.  But while Section 1512(c)(1) employs verbs much like Section 1519, those in *Section 1512(c)(2)*—"obstruct[]," "influence[]," and "impede[]"—suggest no such limitation.

As for the potential for superfluity, admittedly, that gives the Court some pause.  But the "preference for avoiding surplusage constructions is not absolute."  *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004).  In fact, "overlap . . . is not uncommon in criminal statutes."  *Loughrin*, 573 U.S. at 358 n.4.  This Court agrees with the court in *Sandlin* that reading Section 1512(c)(2) to extend beyond the impairment of evidence does not "create[] *intolerable* overlap."[5]  2021 WL 5865006, at *7.  As that court explained, "a broad interpretation of [Section] 1512(c)(2) does not entirely subsume numerous provisions with[in] the chapter.  For instance, [Section] 1512(a)(1)(C), (a)(2)(C), (b)(3), and (d)(2)–(4) proscribe conduct unrelated to an 'official proceeding.'"  *Id.*  The same is true with Section 1505, which concerns congressional inquiries and investigations.  18 U.S.C. § 1505.  Defendants counter that these "sub-sub-sections" in Section 1512 are not "unconnected to an official proceeding" because they prohibit conduct that *could* affect an official proceeding.  ECF No. 248 at 10.  But that is a far cry from prohibiting conduct that *must* affect such a proceeding.[6]

---

[5] Defendants argue that the Supreme Court "has rejected the 'mere overlap' counter-canon in the context of 'catchall' provisions in obstruction statutes."  ECF No. 248 at 11–12.  But the cases they cite do not hold that any overlap is forbidden.  In fact, in one of the cases, the Court noted that "[s]ome overlap in criminal provisions is, of course, inevitable."  *Marinello*, 138 S. Ct. at 1107.

[6] As part of this argument, Defendants contend that a congressional inquiry or investigation would necessarily qualify as a "proceeding before the Congress."  ECF No. 248 at 11.  But as defined above—*i.e.*, a series of actions before a formally convened Congress—that is not necessarily so.

Thus, even if there is *some* overlap in these provisions without Defendants' limiting construction, it is still the better reading. The "cardinal canon" to which "a court should always turn" to "first" is that "a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *see also Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) ("Redundancy is not a silver bullet. . . . Sometimes the better overall reading of the statute contains some redundancy."). Reading Section 1512(c)(2) to include conduct unrelated to the impairment of evidence is most consistent with the text and structure of the statute, so the "'rule[] of thumb'" of trying to avoid superfluity when construing statutes must "give way." *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (quoting *Conn. Nat'l Bank*, 503 U.S. at 253–54).

### 3. Section 1512(c)(2) Is Not Unconstitutionally Vague

Defendants next argue that Section 1512(c)(2) is unconstitutionally vague in several ways. The "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Courts "are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask." *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). Indeed, the doctrine does "not doubt the constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct"; after all, "the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." *Johnson*, 576 U.S. at 603–04 (quotation marks omitted). "[T]erms

18

void for vagueness lack statutory definitions, narrowing context, or settled legal meanings." *Bron-stein*, 849 F.3d at 1106 (internal quotation marks omitted) (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)).  As the D.C. Circuit has put it, "a statute's vagueness is either susceptible to judicial construction or is void for vagueness based on the application of traditional rules for statutory interpretation." *Id.*

Defendants argue that Section 1512(c)(2) is impermissibly vague in three ways.  First, they argue, the term "official proceeding" is vague if it is applied to Congress's certification.  Second, they say that applying the phrase "otherwise obstructs, influences, or impedes" to conduct other than the "impairment of evidence" is vague.  Finally, they assert that, as applied to them, the word "corruptly" renders the entire section vague.  They are wrong on all counts.

### a.     "Official proceeding"

To start, the term "official proceeding" is not vague as applied to Congress's certification of the Electoral College vote.  As explained above, an "official proceeding" is defined in the statute as a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and Congress's certification of the Electoral College vote qualifies as such.  That the statute has not been applied to Congress's certification before does not mean that someone of "ordinary intelligence" would not be fore-warned of this application of the statute's plain language.  *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  Nor does it signal that the statute invites arbitrariness.  Applying a straightforward reading of a statute to a novel set of facts is not "discriminatory."  ECF No. 94 at 26; *cf. United States v. Hammond*, 354 F. Supp. 3d 28, 47 (D.D.C. 2018) ("[A] court does not create a new rule if it only applies a general standard to yet another factual situation.") (quotation marks omitted).  At bottom,

applying this statute to new—even unprecedented—facts "does not, standing alone, render a statutory application so novel as to be unconstitutional for vagueness." *United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *8 (D.D.C. Apr. 16, 2021).

b.     **"Otherwise obstructs, influences, or impedes"**

The phrase "otherwise obstructs, influences, or impedes" is not vague as applied to Defendants' conduct for similar reasons. As explained above, that language is best read broadly, not as constrained by the subsection preceding it. And so read, "otherwise obstructs, influences, or impedes" plainly encompasses the conduct alleged here, even if no court has had the occasion to apply Section 1512(c)(2) to similar facts.

c.     **"Corruptly"**

Defendants' vagueness argument centered on the term "corruptly" also fails. They argue that because the D.C. Circuit found the term unconstitutionally vague in 18 U.S.C. § 1505 as applied to the defendant in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), the Court must also find it infirm in Section 1512(c)(2) as applied to them. The Court disagrees.

In *Poindexter*, the defendant was charged with violating Section 1505 by, among other things, lying to Congress. Section 1505 bars "corruptly, or by threats or force, or by any threatening letter or communication influenc[ing], obstruct[ing], or imped[ing] or endeavor[ing] to influence, obstruct, or impede . . . the due and proper exercise of" Congress's "power of inquiry." 18 U.S.C. § 1505. Poindexter argued that "the term 'corruptly' [was] too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Poindexter*, 951 F.2d at 379. The Circuit agreed. The court explained that the term's dictionary definitions like "depraved, evil, immoral, wicked, and improper," did not clarify the word's meaning. *Id.* 378–79 (internal quotation marks omitted). Nor did the statute's legislative history. *Id.* at 380–84. Even so, the Court

20

did not declare "corruptly" unconstitutionally vague in all legal or factual contexts. *Id.* at 377–78, 385. In fact, it "approved" of one interpretation of the word as used in Section 1505. *United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996) (discussing *Poindexter*). The *Poindexter* court explained that Section 1505 "favors the transitive reading" of "corruptly"—*i.e.*, the word refers to "corrupting another" rather than "acting oneself 'in a corrupt or depraved manner.'" *Poindexter*, 951 F.2d at 379. Thus, the court approved of interpreting "corruptly" in Section 1505 to mean "'corrupting' another person by influencing him to violate his legal duty." *Id.* (emphasis removed). But because that interpretation did not cover lying to Congress, the court held that the word was still impermissibly vague as applied to Poindexter's conduct.

In the 30 years it has been on the books, courts have not applied *Poindexter* widely to render impotent the many obstruction statutes that use the word "corruptly." Rather, as other judges in this district pointed out recently, courts have recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances." *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017) (citing cases); *see Sandlin*, 2021 WL 5865006, at *11; *United States v. Caldwell*, --- F. Supp. 3d ---- , 2021 WL 6062718, at *9 (D.D.C. Dec. 20, 2021). That trend could only have been reinforced by the Supreme Court's later decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). *See, e.g.*, *Edwards*, 869 F.3d at 502. There, in addressing the meaning of "corruptly" in Section 1512(b), the Supreme Court held that "corrupt" and "corruptly" were associated with "wrongful, immoral, depraved, or evil" behavior. *Arthur Andersen*, 544 U.S. at 705 (citing dictionaries). In that context, the Court suggested that the word meant "wrongdoing," without suggesting that it was unconstitutionally vague. *Id.* at 705–06 ("consciousness of wrongdoing" joins the meanings of "knowingly" and "corruptly" together); *see Edwards*, 869 F.3d at 502.

In any event, a key reason *Poindexter* does not control the outcome here is because of an important textual difference between Section 1505 and Section 1512(c):  Section 1512(c) favors an *intransitive* reading of the word "corruptly."  That is so because, unlike Section 1505, "corruptly" in Section 1512(c) is not linked to a "disjunctive series" of terms—"by threats," "[by] force," and "by any threatening letter or communication"—which are transitive and "take as their object a natural person."  *Poindexter*, 951 F.2d at 379.  Instead, "corruptly" in Section 1512(c) modifies two sets of open-ended verbs: "alter, destroy, mutilate, or conceal" and "obstruct, influence, or impede."  18 U.S.C. § 1512(c) (verb tense altered).  Under this structure, the focus of "corruptly" is how a defendant acts, not how he causes another person to act.[7]  As a result, "the concern that animated *Poindexter*—that a transitive reading of corruptly under [S]ection 1505 did not reach the making of false statements to Congress—is simply not present in this prosecution under [S]ection 1512(c)(2)."  *Caldwell*, 2021 WL 6062718, at *10.

For these reasons, *Poindexter* does not mandate that the Court hold Section 1512(c) unconstitutionally vague in this case.  And for those that follow, the Court finds that applying "corruptly" in Section 1512(c)(2) to Defendants' alleged conduct does not render the statute infirm in that way.  For these Defendants are alleged to have acted (1) intentionally and (2) wrongfully, in this case by unlawful means.

To begin with, the Court notes that the parties do not contest that Section 1512(c)—either through the term "corruptly" or otherwise—requires a defendant to specifically intend to obstruct, influence, or impede an official proceeding.  *See United States v. Delgado*, 984 F.3d 435, 452 (5th

---

[7] *Cf.* Kyle R. Taylor, Note, *The Obstruction of Justice Nexus Requirement After Arthur Andersen and Sarbanes-Oxley*, 93 Cornell L. Rev. 401, 423 (2008) ("[Section] 1512(c)(2) is intransitive—it applies to obstructive activity that the defendant directly performs, rather than obstructive activity that the defendant somehow encourages.").

Cir. 2021); *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to

act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quot-

ing *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*,

710 F.3d 1124, 1151 (10th Cir. 2013) (same).  Some courts have held that the "nexus" requirement

in obstruction statutes—the requirement that "the obstructive conduct be connected to a specific

official proceeding"—is best understood as an articulation of this intent requirement.  *United*

*States v. Young*, 916 F.3d 368, 385 & n.12 (4th Cir. 2019) (citing cases); *see also United States v.*

*Hawkins*, 185 F. Supp. 3d 114, 127 (D.D.C. 2016).  But either way, the parties do not contest that

the statute requires a specific intent to obstruct.

    Against that backdrop, the Court turns to the word "corruptly."  As Judge Silberman has

observed, that word must mean something more than an intent to obstruct when a statute like this

one criminalizes merely "influenc[ing]" a proceeding before the Congress.[8]  *See United States v.*

*North*, 910 F.2d 843, 942 (D.C. Cir. 1990) (Silberman, J., concurring in part and dissenting in

part), *withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990).  The Supreme

---

[8] Unlike many other obstruction statutes, Section 1512(c)(2) covers not just judicial proceedings, but "proceeding[s] before the Congress."  18 U.S.C. § 1515(a)(1)(C).  And while there are "'very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding,'" "[o]ne can imagine any number of non-corrupt ways in which an individual can intend to impede the work of an agency or congressional committee."  *United States v. Russo*, 104 F.3d 431, 436 (D.C. Cir. 1997) (quoting *United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990), *withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990)).  On top of that, Section 1512(c) criminalizes merely "influenc[ing]" such a proceeding.  Whatever it means to be charged with "corruptly influencing" a proceeding before the Congress, "it must require more than merely acting with the purpose of influencing the congressional committee."  *North*, 910 F.2d at 942 (Silberman, J., concurring in part and dissenting in part) (discussing the meaning of "corruptly" in Section 1505).  As Judge Silberman put it, "If attempting to influence a congressional committee by itself is a crime, we might as well convert all of Washington's office buildings into prisons.  Some might not think that such a bad idea, but I doubt that Congress so intended."  *Id.*

Court in *Arthur Andersen* provided a starting point when it explained that "corrupt" and "corruptly" were associated with "wrongful, immoral, depraved, or evil" behavior. *Arthur Andersen*, 544 U.S. at 705 (citing dictionaries). True, the Circuit in *Poindexter* cautioned that words like "evil" and "immoral" offer no more specificity than "corrupt." 951 F.2d at 379. But this Court agrees with the court in *Sandlin* that reading "corruptly" to mean "wrongfully" in this context does not present the same concerns. 2021 WL 5865006, at *12–13. That is so because wrongfully provides another well-settled meaning applicable here: "contrary to law, statute, or established rule." *Id.* at *13 (citing *Wrongful*, def. 3(a), Oxford English Dictionary (2d ed. 1989)).

Many courts have, in one way or another, applied this definition in the context of alleged obstructive conduct. As some have noted, a defendant can act "wrongfully"—*i.e.*, "corruptly"—through either his means or his purpose. *See Sandlin*, 2021 WL 5865006, at *11; *see also North*, 910 F.2d at 942–43 (Silberman, J., concurring in part and dissenting in part) ("[T]o say that someone corruptly endeavors to obstruct an inquiry might mean (1) that he does so with a corrupt purpose, or (2) that he does so by independently corrupt means, or (3) both."). Here, the Court need not wade into Section 1512(c)'s application to corrupt purposes because "*independently criminal*" means qualify as corrupt. *North*, 910 F.2d at 943. Indeed, "[u]nlawful activities clearly fall within the meaning of 'corrupt' acts under any plain construction of the term." *United States v. Bailey*,

24

72 F.3d 138 (Table), 1995 WL 716276, at *3 (10th Cir. Nov. 22, 1995).[9]  Even courts that have

not described "corruptly" specifically in terms of unlawful means have used similar definitions.[10]

With this definition of "corruptly" in hand, the Court has little problem finding that the use

of the word "corruptly" does not render Section 1512(c)(2) unconstitutionally vague as applied to

Defendants, whose alleged conduct involved helping to plan and orchestrate the attack on the Cap-

itol.  The First Superseding Indictment charges Defendants with obstructing Congress's certifica-

tion of the Electoral College vote through means that involved: (1) willfully injuring and commit-

ting depredation against property of the United States, and aiding and abetting others to do so, in

violation of 18 U.S.C. § 1361; (2) unlawfully and knowingly entering and remaining in the Capitol

and its grounds without lawful authority to do so, in violation of 18 U.S.C. § 1752(a)(1); (3) know-

ingly, and with intent to impede and disrupt the orderly conduct of Government business and of-

ficial functions, engaging in disorderly and disruptive conduct in the Capitol and on its grounds,

in violation of 18 U.S.C. § 1752(a)(2); and (4) steps intending to obstruct law enforcement during

a civil disorder, in violation of 18 U.S.C. § 231(a)(3).  Defendants had fair notice that this conduct

---

[9] *Accord United States v. Erickson*, 561 F.3d 1150, 1160 (10th Cir. 2009) (noting the definition of "corruptly" as "[s]omething against law") (quoting *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979)); *United States v. Liebo*, 923 F.2d 1308, 1312 (8th Cir. 1991) ("[A]n act . . . 'corruptly' done" is an act "done voluntarily and intentionally, and with a bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.") (cleaned up).

[10] For example, as noted above, in *Poindexter*, the D.C. Circuit "expressly approved of" reading "corruptly" in the transitive sense to mean "corrupting another person by influencing him *to violate his legal duty*." *Morrison*, 98 F.3d at 630 (internal quotation marks omitted) (quoting *Poindexter*, 951 F.2d at 379); *see also Edwards*, 869 F.3d at 502 ("'transitive' corruption" includes trying "to persuade another person to lie when the other person has a legal duty to tell the truth") (cleaned up).  Thus, it follows that when used in the intransitive sense, "corruptly" can mean to violate one's *own* legal duty. *See Hawkins*, 185 F. Supp. 3d at 126 (observing that the defendant could "be said to have acted 'corruptly'" under Section 1512(c)(2) because he "made false statements to FBI agents and the U.S. Attorney's Office in an attempt to influence the grand jury investigation").

25

was proscribed by Section 1512(c)(2).  And applying Section 1512(c)(2) to the facts alleged does not make it so standardless that it calls for discriminatory or arbitrary enforcement, either.  The statute requires (1) intent to obstruct, influence, or impede an official proceeding and (2) wrongfulness, in this case, the use of unlawful means to do so.  These requirements provide the "minimal guidelines" necessary "to govern law enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)).

Arguing that the statute invites discriminatory enforcement, Defendants repeatedly point to charging decisions and plea deals related to other January 6 defendants, *see* ECF No. 226 at 12–13, and the uncharged protestors on the Capitol steps during Justice Kavanaugh's confirmation hearings, *see* ECF No. 113 at 13–16.  But neither provides evidence of vagueness.  Both merely show "the Executive's exercise of discretion over charging determinations."  *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016).  And "Supreme Court precedent teaches that the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague."  *Kincaid v. Gov't of D.C.*, 854 F.3d 721, 729 (D.C. Cir. 2017); *see also United States v. Griffin*,  --- F. Supp. 3d ---- , 2021 WL 2778557, at *7 (D.D.C. July 2, 2021) (rejecting argument that defendant's prosecution was discriminatory given large numbers of similarly situated, uncharged individuals from January 6 and uncharged protestors at Justice Kavanaugh's confirmation hearings).  "As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible."  *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).

### 4.     Applying Section 1512(c)(2) To Defendants Does Not Violate the Rule of Lenity

Defendants next claim that even if Section 1512(c)(2) is not unconstitutionally vague as applied, "any ambiguities in the statute should be resolved in [their] favor under the rule of lenity."

ECF No. 94 at 30.  The rule of lenity stands "for the principle that if a criminal statute is subject to multiple meanings, the court should resolve any ambiguity in favor of the defendant." *United States v. Sun-Diamond Growers of Cal.*, 941 F. Supp. 1262, 1268 n.8 (D.D.C. 1996).  But the rule "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (cleaned up).  As explained above, Section 1512(c)(2) is not ambiguous after application the ordinary canons of statutory construction.  Thus, the rule of lenity does not apply.

### 5.       Applying Section 1512(c)(2) To Defendants Is Not a Novel Construction

Defendants also insist that applying Section 1512(c)(2) to the facts alleged here amounts to a novel construction of the statute in violation of due process, because no court has applied it to a proceeding like Congress's certification.  ECF No. 94 at 31–32.  Not so.  "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).  That is because when a court "unexpectedly broadens a statute which on its face had been definite and precise," that "judicial enlargement . . . , applied retroactively, operates precisely like an ex post facto law." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). True, no court has interpreted Section 1512(c)(2) to include the precise allegations made here.  But that does not mean that this reading "unexpectedly broadens" it.  *Id.*; *see also United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 101 (D.D.C. 2008) (rejecting argument "that because no court has ever construed Section 1960 to deem a business that does not transact in cash to be a money transmitting business, such a construction would be novel" and thus unconstitutional).  As discussed above, Section 1512(c)(2)'s application to the allegations in the First Superseding Indictment is

27

"fairly disclosed" by the text.  *Lanier*, 520 U.S. at 266.  Thus, the Due Process Clause does not require dismissal.

In advancing this argument, Defendants rely heavily on *Bouie*, but the statute addressed in that case is quite different than Section 1512(c)(2).  In *Bouie*, the Supreme Court considered a challenge to a South Carolina law that "was admirably narrow and precise."  378 U.S. at 351.  Thus, the Court found, it "lull[ed] . . . potential defendant[s] into a false sense of security, giving [them] no reason even to suspect that" certain conduct could be "brought within it by an act of judicial construction."  *Id.* at 352.  In contrast, as described above, Section 1512(c)(2) is not "narrow" at all.  It sweeps broadly—punishing a host of "corrupt" conduct.  Thus, it hardly lulled Defendants into a false sense of security, giving them no reason to suspect that the conduct charged in the First Superseding Indictment was prohibited under Section 1512(c)(2).  *Id.*; *see also McDonald v. Champion*, 962 F.2d 1455, 1458–59 (10th Cir. 1992).

### 6.    Applying Section 1512(c)(2) To Defendants Does Not Violate the First Amendment

Finally, Defendants argue that, as applied to them, Section 1512(c)(2) violates the First Amendment.  According to Defendants, the statute's "incidental restriction on alleged First Amendment freedoms is . . . greater than is essential to the furtherance of" the Government's interest.  ECF No. 94 at 32 (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).  But "to prevail on an as-applied First Amendment challenge," Defendants "must demonstrate that the statute is unconstitutional as applied to [their] particular expressive activity."  *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016).  The Court easily concludes that it is not.

The Court first turns to the threshold question of whether the conduct with which Defendants are charged is protected by the First Amendment at all.  *See Caputo*, 201 F. Supp. 3d at 71

(explaining that "[t]he Court must first assess whether [the defendant's] conduct is, in fact, expressive"); *see also Texas v. Johnson*, 491 U.S. 397, 403 (1989) ("We must first determine whether Johnson's burning of the flag constituted expressive conduct, permitting him to invoke the First Amendment in challenging his conviction.").  It is not.  Defendants are alleged to have "corruptly" obstructed, influenced, and impeded an official proceeding, and aided and abetted others to do the same—that is, they allegedly "unlawfully entered the Capitol grounds or the Capitol building to . . . stop, delay, and hinder Congress's certification of the Electoral College vote," and succeeded in doing so.  ECF No. 26 ¶ 70.  And more specifically, they are charged with conduct involving acts of trespass, depredation of property, and interference with law enforcement, all intended to obstruct Congress's performance of its constitutional duties.  No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment.  Defendants are not, as they argue, charged with anything like burning flags, wearing black armbands, or participating in mere sit-ins or protests.  ECF No. 94 at 33.  Moreover, even if the charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had.  *See Grayned*, 408 U.S. at 116 ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (government may punish physical obstruction); *Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (The First Amendment does not allow a "group of demonstrators" to "insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations."); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message.").

29

Even assuming some aspect of Defendants' charged conduct warranted First Amendment protection, applying Section 1512(c)(2) to them still passes muster.  The Supreme Court has "held that when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."  *O'Brien*, 391 U.S. at 376 (cleaned up).  The Government has a weighty interest in protecting Congress's ability to function without "corrupt" interference, and that interest is unrelated to the suppression of free expression.  18 U.S.C. § 1512(c)(2).  And here, given that Congress was convened in Joint Session to undertake one of its most solemn and important constitutional duties, that interest could hardly have been more important.  In addition, applying the statute to Defendants imposes no more than an incidental limitation on First Amendment freedoms, if even that.  In fact, by focusing on "corrupt" actions, the statute does not even reach free speech.  *See United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996) ("By targeting only such persuasion as is corrupt, Section 1512(b) does not proscribe lawful or constitutionally protected speech[.]") (cleaned up); *United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985) (statute limited to those who "corruptly endeavor to interfere with the due administration of justice . . . is clearly limited to . . . constitutionally unprotected and purportedly illicit activity").  Finally, the statute "leave[s] open ample alternative channels for communication of the information."  *Am. Libr. Ass'n v. Reno*, 33 F.3d 78, 88 (D.C. Cir. 1994) (*quoting Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  Quite obviously, there were many avenues for Defendants to express their opinions about the 2020 presidential election, or their views about how Congress should perform its constitutional duties on January 6, without resorting to the conduct with which they have been charged.

30

**B.      18 U.S.C. § 231(a)(3)**

Defendants next challenge the applicability and constitutionality of 18 U.S.C. § 231(a)(3).

Section 231(a)(3) prohibits "commit[ting] or attempt[ing] to commit any act to obstruct, impede,

or interfere with any fireman or law enforcement officer lawfully engaged in the lawful perfor-

mance of his official duties incident to and during the commission of a civil disorder."  18 U.S.C.

§ 231(a)(3).  But for the statute to apply, the "civil disorder" at issue has to in some way "obstruct[],

delay[], or adversely affect[] commerce or the movement of any article or commodity in commerce

or the conduct or performance of any federally protected function."  *Id*.  The First Superseding

Indictment alleges that the civil disorder at issue "obstructed, delayed, and adversely affected the

conduct and performance of a federally protected function."  ECF No. 26 ¶ 72.  Defendants say

these charges must be dismissed because the First Superseding Indictment does not identify any

adversely affected "federally protected function."  On top of that, Defendants claim that the statute

is both unconstitutionally vague and facially overbroad.  The Court disagrees.

> **1.      The First Superseding Indictment Identifies a Federally Protected
> Function That Was Obstructed, Delayed or Adversely Affected by a
> Civil Disorder**

According to Defendants, Congress's certification of the 2020 election is not a "federally

protected function," and because it is not, the First Superseding Indictment fails to identify one

affected by the events of January 6, 2021.  They are right on the former, but wrong on the latter.

To begin with, the Court agrees with Defendants that Congress's certification of the 2020

election was not a "federally protected function," for purposes of Section 231(a)(3).  A "federally

protected function" is defined in the statute as a "function, operation, or action carried out, under

the laws of the United States, by any department, agency, or instrumentality of the United States

or by an officer or employee thereof; and such term shall specifically include, but not be limited

to, the collection and distribution of the United States mails."  18 U.S.C. § 232(3).  The issue, then,

is whether the Congress is a "department, agency or instrumentality" for purposes of the statute. The Government argues it is a "department," ECF No. 133-1 at 13, but the Court disagrees. That term is not defined in 18 U.S.C. § 232, but it is elsewhere in Title 18 as "one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of government." 18 U.S.C. § 6. Of course, Congress is not an "executive department." *Id*. And the Court is unconvinced that the context here shows that the word "department" includes the legislative branch. The Supreme Court has said that "fairly powerful" contextual evidence is needed to rebut the presumption that the term "department" has the ordinary meaning set forth in 18 U.S.C. § 6. *Hubbard v. United States*, 514 U.S. 695, 700 (1995). Like the statute in *Hubbard*, "there is nothing in the text of [Section 231(a)(3)], or in any related legislation, that even suggests—let alone 'shows'—that the normal definition . . . was not intended." *Id*. at 701. The only specific "federally protected function" the statute references is "the collection and distribution of the United States mails," which is carried out by the executive branch. 18 U.S.C. § 232(3).

The question of whether the First Superseding Indictment identifies a federally protected function under Section 231(a)(3) does not end there, though. In the alternative, the Government argues that the United States Secret Service's protection of the Vice President and Vice President-elect on January 6 is also a federally protected function. ECF No. 133-1 at 15. And here, the Government is on firmer ground. Unlike Congress, the Secret Service is plainly an executive department. It is part of the Department of Homeland Security, which is one of the "executive departments enumerated in section 1 of Title 5." 18 U.S.C. § 6; *see* 5 U.S.C. § 101; 18 U.S.C. § 3056. Further, the Court has no trouble concluding that the Secret Service's statutorily prescribed responsibility to protect the Vice President and Vice President-elect, 18 U.S.C. § 3056(a)(1), both

of whom the First Superseding Indictment describes as present at the Joint Session on January 6, *see* ECF No. 26 ¶ 17, counts as a function carried out "under the laws of the United States," 18 U.S.C. § 232(3).

Defendants counter that interpreting "federally protected function" to include the actions of federal law enforcement officers like the Secret Service would write the term "federally protected function" out of the statute. ECF No. 135 at 26. They argue that, under that reading, "the 'law enforcement officers' referenced in the statute would constitute both the entities *protecting* the 'function' adversely affected by the civil disorder but also the 'federally *protected* function at the same time.'" ECF No. 113 at 30; *see also* ECF No. 135 at 26. But that is not necessarily so. For instance, here, the federally protected function with which the civil disorder interfered was the Secret Service's statutorily required protection of the Vice President and Vice President-elect. But the statute prohibits a defendant from obstructing any "law enforcement officer" performing official duties "incident to and during" the civil disorder, which in this case would also include the members of the Capitol Police and Metropolitan Police Department who responded to the Capitol and its grounds that day.[11] ECF No. 26 ¶ 23. And even if Defendants are right in some cases, that

---

[11] Defendants also rely on *United States v. Rupert*, No. 20-cr-104 (NEB/TNL), 2021 WL 1341632 (D. Minn. Jan. 6, 2021) (Report & Recommendation), *adopted*, 2021 WL 942101 (D. Minn. Mar. 12, 2021), for the proposition that a "federally protected function" cannot include the efforts of federal law enforcement officers. Defendants claim that, in *Rupert*, the court "reject[ed] [the] government's argument that it could simply point to law enforcement officers interfered with during a civil disorder to satisfy the 'federally protected function' element." ECF No. 135 at 24–25. But there, the Government did not argue that federal law enforcement officers were engaging in any action that constituted a federally protected function beyond responding to the civil disorder— like the Secret Service was here. *Rupert*, 2021 WL 1341632, at *17. And in any event, the court did not have to address the merits of this issue in *Rupert*. In response to the defendant's motion to dismiss in that case, the Government essentially abandoned its "federally protected function" theory and instead argued that the civil disorders interfered with commerce. *Id.* ("[T]he Government did not address Defendant's federally-protected-function argument at all."). Thus, the Court found the Government's federally-protected-function argument moot. *Id.*

33

does not make the term "federally protected function" a nullity.  "Language in a statute is not rendered superfluous merely because in *some* contexts that language may not be pertinent." *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981) (emphasis added).

Besides, "no canon of construction justifies construing the actual statutory language beyond what the terms can reasonably bear." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 816 (D.C. Cir. 2008) (cleaned up).  Defendants effectively ask the Court "to do just that, by adding words that are not in the statute that the legislature enacted," *id.* at 816–17—*i.e.*, that "[t]he term 'federally protected function' means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States [*except law enforcement agencies*]."  That construction makes no sense, especially given that "department" includes the Department of Defense, the Department of Justice, and the Department of Homeland Security—all of which include component law enforcement agencies.  *See* 5 U.S.C. § 101; 18 U.S.C. § 6 (defining "department" as any executive department in 5 U.S.C. § 101).

Finally, the Court's construction of "federally protected function" is nothing new, even if cases interpreting the phrase are scarce.  For example, in *United States v. Dodge*, the Eighth Circuit described law enforcement officers responding to a civil disorder on a federal enclave as "engag[ing] in a federally-protected function."  538 F.2d 770, 780 (8th Cir. 1976).  And a district court in Nevada upheld a conviction under Section 231(a)(3) for interfering with agents from the Federal Bureau of Investigation when they responded to the occupation of a reservation; according to that court, both the "investigating of reported crimes and the operation of the post office were federally protected functions."  *United States v. Jaramillo*, 380 F. Supp. 1375, 1377–78 (D. Neb. 1974).  Defendants try to distinguish these cases by pointing out that they occurred on American Indian reservations.  ECF No. 135 at 27–28.  But regardless of the location, these courts still concluded

that the efforts of federal law enforcement agencies qualified as federally protected functions under the statute.[12]

## 2.     Section 231(a)(3) Is Not Unconstitutionally Vague or Overbroad

Defendants also attack to the constitutionality of Section 231(a)(3), arguing that it is both vague and facially overbroad.[13]  Neither argument succeeds.  As explained above, a statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill*, 530 U.S. at 732 (citing *City of Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)).

Section 231(a)(3) does not carry the potential for misunderstanding or arbitrary enforcement like the statutes in the cases Defendants cite.  It prohibits any "act" done "to obstruct, impede, or interfere" with law enforcement responding to a "civil disorder."  18 U.S.C. 231(a)(3).  These terms are not "dependent on the subjective reaction of others," ECF No. 94 at 43—as with others like "annoying," *Coates*, 402 U.S. at 611, "unjust or unreasonable," *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 86 (1921), or "indecent," *Williams*, 553 U.S. at 306.  Indeed, there are

---

[12] Defendants also argue that adopting this interpretation creates a "Fifth Amendment[] presentment" issue because "it is almost surely the case" that the Secret Service's actions were not "presented to the Grand Jury."  ECF No. 135 at 27.  But "if the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge, the indictment is not fatally deficient on Fifth Amendment grounds."  *Sunia*, 643 F. Supp. 2d at 78 (quoting *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998)).  While the Secret Service's protection of the Vice President and Vice President-elect at the Capitol on January 6 is "perhaps not explicitly alleged in the indictment," it is "necessarily implied by" the allegations that the Vice President and Vice President-elect were present at the Joint Session.  *Id.*; ECF No. 26 ¶¶ 17, 21; *see also United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 860 (7th Cir. 1998) ("The indictment must be 'read to include facts which are necessarily implied' and 'construed according to common sense.'") (quoting *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993)).

[13] Throughout briefing, Defendants seem to conflate "vagueness" and "overbreadth."  The two doctrines, however, are "distinct."  *United States v. Hite*, 896 F. Supp. 2d 17, 21 (D.D.C. 2012).  Thus, the Court addresses each argument separately.

specific fact-based ways to determine whether a "defendant's conduct interferes with or impedes others," or if a law enforcement officer is performing his official duties "incident to and during" a civil disorder.  ECF No. 94 at 44.  Plus, this Court must consider vagueness "as applied to the particular facts at issue, for a [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up).  The First Superseding Indictment alleges that Defendants schemed to "evade detection by law enforcement on January 6," and they themselves charged over metal barriers and past law enforcement officers toward the Capitol that day.  ECF No. 26 ¶¶ 28, 55–61.  "This alleged conduct would fit within the type of conduct prohibited by [Section] 231(a)(3).  The statute sufficiently gives th[ese] defendant[s] notice of the conduct it prohibits."  *United States v. Phomma*, No. 20-cr-465 (JO), 2021 WL 4199961, at *6 (D. Or. Sept. 15, 2021).

Defendants' overbreadth argument fares no better.  "[I]n a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct."  *City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987) (quoting *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)).  "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  A defendant must show "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  *Id.* at 801.  "Rarely, if ever, will an overbreadth challenge

36

succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Section 231(a)(3) "applies to persons who commit or attempt to commit 'any act to obstruct, impede, or interfere' with law enforcement or firefighters. The words 'any act' imply that the statute is directed towards conduct, not speech." *Phomma*, 2021 WL 4199961, at *5. In fact, Section 231(a)(3) does not even mention speech, and it simply does not prohibit peaceful expression or association. For these reasons, several courts have rejected arguments that Section 231(a)(3) is overbroad on its face.[14] *See id.*; *United States v. Howard*, No. 21-cr-28 (PP), 2021 WL 3856290, at *11–12 (E.D. Wis. Aug. 30, 2021); *United States v. Wood*, No. 20-cv-56 (MN), 2021 WL 3048448, at *8 (D. Del. July 20, 2021); *United States v. Mechanic*, 454 F.2d 849, 852 (8th Cir. 1971); *see also United States v. Hoffman,* 334 F. Supp. 504, 509 (D.D.C. 1971) (rejecting First Amendment challenge to Section 231(a)(3)). For the same reasons, this Court joins them.[15]

_____

[14] Defendants also argue that the Section 231(a)(3) charges against them must be dismissed because they are not alleged to have committed violent acts, and the statute only reaches such acts. In doing so, they rely on *United States v. Mechanic*, in which they say the Eighth Circuit found that Section 231(a)(3) "applies only to violent physical acts." 454 F.2d 849, 852 (8th Cir. 1971). But at least one court has found that to be a misreading of *Mechanic*. In *United States v. Howard*, the court explained that "[i]t appears that the Eighth Circuit was considering the specific 'acts' committed by the defendants in that case . . . when it referenced 'violent acts.'" No. 21-cr-28 (PP), 2021 WL 3856290, at *11 (E.D. Wis. Aug. 30, 2021). In any event, there is no basis in the text of the statute for such a limitation. The Court "conclude[s] that the statute is targeted primarily if not exclusively at conduct, *whether violent or not*." *Phomma*, 2021 WL 4199961, at *5 (emphasis added); *Howard*, 2021 WL 3856290, at *11 ("Section 231(a)(3) criminalizes *acts*—violent or otherwise—not speech."); *United States v. Wood*, No. 20-cv-56 (MN), 2021 WL 3048448, at *7 (D. Del. July 20, 2021) ("Although it may be likely that violent conduct will be at issue with a defendant charged under the statute, it is possible for nonviolent acts to also fall within the statute's prohibition.").

[15] In a recent filing, Defendants bring to the Court's attention the Northern District of Florida's decision in *Dream Defenders v. DeSantis*, --- F. Supp. 3d ---- , 2021 WL 4099437 (N.D. Fla. 2021).

C.      18 U.S.C. § 1752

Defendants argue that they could not have violated Section 1752 without entering an area restricted by the Secret Service, and the First Superseding Indictment does not allege that the Secret Service restricted either the Capitol or its grounds on January 6.  ECF No. 94 at 46.  They are right that the First Superseding Indictment alleges that the United States Capitol Police Board "closed" the area.  ECF No. 26 ¶ 15.  And the Government does not argue that any law enforcement agency other than the Capitol Police restricted the area.  *See* ECF No. 106 at 32–36.  But Defendants are wrong that the Secret Service must have restricted the Capitol building and its grounds for

---

That case does not change the Court's conclusion that Section 231(a)(3) is neither vague nor overbroad.  In *Dream Defenders*, the court found that the plaintiffs were likely to succeed in showing that a new Florida law was unconstitutionally vague and overbroad.  *Id.* at *28–29.  That law defines rioting in part as "willfully participat[ing] in a violent public disturbance involving an assembly of three or more persons, acting with a common intent to assist each other in violent and disorderly conduct."  § 870.01(2), Fla. Stat. (2021).  As Defendants point out, "civil disorder" in Section 231(a)(3) is defined using some of the same words: "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual."  18 U.S.C. § 232(1).  But there the similarities end.  Most obviously, relevant to a vagueness analysis, the language from the Florida law defines the behavior the statute prohibits, unlike the definition of "civil disorder" in Section 231(a)(3), which is only a part of the broader statute.  And Section 231(a)(3)'s definition of civil disorder does not use the same "violent public disturbance" phrase found in the Florida law, which the court in *Dream Defenders* thought left unclear how and when violence needed to be involved.  *See* 2021 WL 4099437, at *21 ("Is a violent public disturbance a peaceful protest that later turns violent?  Is it a protest that creates an imminent risk of violence?").  "Civil disorder" in Section 231(a)(3) is defined explicitly as "involving" affirmative "acts of violence."  18 U.S.C. § 232(1).  As for overbreadth, Section 231(a)(3) does not criminalize "participat[ing]" in a civil disorder, which could "consume[] vast swaths of core First Amendment speech."  2021 WL 4099437, at *29.  It prohibits "act[s]" that "obstruct, impede, or interfere," which do not.  18 U.S.C. § 231(a)(3); *see also Dream Defenders*, 2021 WL 4099437, at *29 (distinguishing Florida riot law from those that criminalize "disobeying a lawful order, . . . obstructing justice, [and] . . . actively joining in violent or destructive conduct").

38

Section 1752 to apply.  As several other courts in this district have already found, the statute imposes no such requirement.  *See, e.g.*, *Griffin*, 2021 WL 2778557, at *2; *United States v. Caldwell*, No. 21-cr-28 (APM), ECF No. 415 (D.D.C. Sept. 14, 2021).

Section 1752 prohibits "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so," as well as "knowingly" and intentionally "engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions."  18 U.S.C. § 1752(a)(1)–(2).  The statute defines "restricted building or grounds" to include "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."  *Id.* § 1752(c)(1)(B).  Thus, "someone can violate the statute by knowingly 'entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.'"  *Griffin*, 2021 WL 2778557, at *3 (quoting *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd,* 831 F. App'x 513 (D.C. Cir. 2020)).

At bottom, nothing in the statute's text dictates that the Secret Service must restrict the area at issue.  The statute's focus is on *where* a defendant enters, not *who* does the restricting.  Indeed, "Section 1752 says nothing about who must do the restricting."  *Griffin*, 2021 WL 2778557, at *4.  And "the only reference in the statute to the Secret Service is to its protectees."  *Id.*  Thus, the statute is not ambiguous as to who may restrict an area under it.  ECF No. 113 at 35–36; *see also Griffin*, 2021 WL 2778557, at *4 ("Just because Congress left this part of the statute open-ended does not mean any word or phrase is ambiguous or that the statute is inoperable unless the Court fills in the blank.").  And given the "straightforward" text of the statute, "there is no reason to

resort to legislative history" to discern its meaning on this point.  *United States v. Gonzales*, 520 U.S. 1, 6 (1997).

None of Defendants' other arguments that the statute requires the Secret Service to do the restricting are persuasive, either.  First, the "absurdities" of which Defendants warn amount to nothing.  The Court in *Griffin* already rejected the notion that this interpretation would allow the Postal Service to "resolve[], unilaterally, that the 'restricted area' of the White House should extend from the State Department to the west, and to the E. Barrett Prettyman U.S. Courthouse, to the east."  ECF No. 94 at 47.  "The USPS could not extend the 'restricted area' to indefinite bounds because then it would no longer be an area 'of the White House or its grounds.'"  *Griffin*, 2021 WL 2778557, at *5.  For a similar reason, if a "Secret Service protectee . . . is 'temporarily visiting' a place[,] . . . any local police unit could" not "decide to extend the 'restricted area' to 20 blocks" around the protectee.  ECF No. 113 at 35 (internal citation omitted).  "[U]nder [Section] 1752(c)(1)(B), the restricted area could never encompass an area wider than the building or grounds where the Secret Service protectee was present."  *Griffin*, 2021 WL 2778557, at *5.

Second, the statute is not unconstitutionally vague such that Defendant's preferred construction is necessary.[16]  The text is clear and gives fair notice of the conduct it punishes, and it is not standardless enough to invite arbitrary enforcement.  Put simply, "[t]his law is no trap awaiting the unwary."  *Griffin*, 2021 WL 2778557, at *6.  On top of that, the First Superseding Indictment

---

[16] Defendants' vagueness arguments are no more persuasive when focused on Section 1752(a)(2) specifically.  That subsection concerns "disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds."  18 U.S.C. § 1752(a)(2).  Defendants claim that "within such proximity to" is unconstitutionally vague.  ECF No. 94 at 51.  But the First Superseding Indictment alleges that Defendants were *in* the restricted area.  ECF No. 26 ¶¶ 59–68, 78.  So whatever "fuzzy boundary standard[]" that phrase may introduce is irrelevant here.  ECF No. 94 at 52.

alleges that the Capitol grounds were restricted in a highly visible way, by being cordoned off by metal barricades and a row of Capitol Police officers.  ECF No. 26 ¶¶ 54–56, 58.

Third, neither the rule of lenity nor the "novel construction principle" require the Secret Service to have restricted the area in question.  For both doctrines "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *Lanier*, 520 U.S. at 267.  As explained above, lenity only comes into play "when a court has exhausted all canons of statutory construction" but ambiguity remains.  *Griffin*, 2021 WL 2778557, at *6.  And the novel construction principle "applies only where the judicial 'construction unexpectedly broadens a statute which on its face had been definite and precise.'"  *E-Gold, Ltd.*, 550 F. Supp. 2d at 101 (quoting *Bouie*, 378 U.S. at 353).  Here, the statute is not ambiguous, nor does applying it to Defendants' alleged conduct unexpectedly broaden it.

### D.     The First Superseding Indictment Otherwise Adequately Alleges Violations of 18 U.S.C. §§ 231(a)(3) and 1361

Finally, Defendants argue that the First Superseding Indictment does not state offenses under Section 231(a)(3) and Section 1361 because it includes no relevant "specific acts or circumstances."  ECF No. 94 at 55.  Once again, the Court disagrees.  Under Federal Rule of Criminal Procedure 7(c)(1), an indictment need be only "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  And the constitutional requirements are twofold:  first, the indictment must "contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend," and, second, it must allow the defendant "to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United*

41

*States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (cleaned up).  The First Superseding Indictment satisfies these requirements for both the civil disorder charges and the destruction of government property charges.

The Court explained why the Section 231(a)(3) charges hold up when it denied Nordean's motion for a bill of particulars.  *See* ECF No. 138.  As explained there, "[t]he First Superseding Indictment specifies in great detail how [Defendants] are alleged to have" "'commit[ted] or attempt[ed] to commit any act to obstruct, impede, or interfere with'" a "'law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects . . . the conduct or performance of any federally protected function,'" either as a principal or under an aiding and abetting theory.  *Id.* at 4–5 (ellipses in original) (quoting 18 U.S.C. § 231(a)(3)); *see also id.* at 5 (detailing allegations related to civil disorder charges).  These allegations meet the standards above, which the Court notes do not require the Government to disclose all its evidence or *how* it will prove its case.

The Section 1361 charge also passes muster.  The First Superseding Indictment alleges that "[o]n January 6, 2021," Defendants "attempted to, and did, willfully injure and commit depredation against property of the United States, and did aid and abet other known and unknown to do so."  ECF No. 26 ¶ 74.  It also charges that Defendants "together and with others known and unknown, aided and abetted others known and unknown to forcibly enter the Capitol and thereby caused damage to the building in an amount more than $1,000."  *Id.*  And the Section 1361 count incorporates earlier paragraphs in the document, which include allegations that a Capitol building "door was opened after a Proud Boys member, Dominic Pezzola, charged elsewhere, used a riot shield at 2:13 p.m. to break a window that allowed rioters to enter the building and force open an

adjacent door from the inside." *Id.* ¶ 62.  These allegations, taken together and with the rest of the First Superseding Indictment, are enough to withstand a motion to dismiss.

None of this is to say that the First Superseding Indictment is a model of clarity on Section 1361.  It does not specifically allege, as the Government has since represented in response to Nordean's motion for a bill of particulars, that the depredation at issue "was Pezzola's breaking of the Capitol window."  ECF No. 138 at 7.  As the Court noted in denying the motion, that is information it would have required the Government to provide in a bill of particulars had it not already done so.  *Id.*  But the First Superseding Indictment is not deficient just because it lacks this information.  *See United States v. Brantley*, 461 F. App'x 849, 852 (11th Cir. 2012) ("The sufficiency of the indictment was also not undermined by the filing of a more detailed bill of particulars.").  Dismissal is required only when an omitted fact "is a material element of the offense."  *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971).  And the identification of the exact property depredated is not that.  Nor does guilt "depend so crucially upon" that clarification.  *Resendiz-Ponce*, 549 U.S. at 110 (cleaned up).  The First Superseding Indictment alleges the required facts here.  *See United States v. Conlon*, 628 F.2d 150, 156 n.33 (D.C. Cir. 1980) ("There is a difference . . . between failing to state an element of the offense and being less specific than one could be in spelling out the acts that constitute the offense.").

## IV.   Conclusion

For all the above reasons, the Court will deny Defendants' motion to dismiss.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 28, 2021

43

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) Case No. 1:21-cr-175 ) |
| ETHAN NORDEAN, et al., | ) **Judge Timothy J. Kelly** ) |
| Defendants. | ) ) ) |

## DEFENDANT NORDEAN'S MOTION TO REOPEN BAIL HEARING

David B. Smith (D.C. Bar No. 403068)
David B Smith PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

**Request for Oral Hearing**

## TABLE OF CONTENTS

I.  Detention information obtained after Nordean's bail was revoked ................... 2

    A.  Leadership and political rallying ........................................................ 2

    B.  Video showing Nordean permitted to enter the Capitol Building ................ 5

    C.  Mitigating Telegram chats produced after detention ........................... 5

    D.  Government concedes that its claim that Nordean is legally responsible
        for over $1,000 in property damage rests on Pezzola's window-smashing
        alone ......................................................................................... 6

    E.  Nordean's current conditions of confinement and the prospect of
        a distant trial ............................................................................... 7

    F.  New release conditions options for Nordean ..................................... 8

II.  Argument .......................................................................................... 10

    A.  Standard for reopening bail hearing under § 3142(f) ........................ 10

    B.  Nordean's case does not "involve" an "offense" listed in § 3142(f)(1) ...... 10

        1.  The FSI failed to present essential conspiracy and *Pinkerton*
            elements to the grand jury in violation of Nordean's Fifth
            Amendment right ................................................................. 11

        2.  The FSI failed to present essential elements of the aiding
            and abetting offense to the grand jury in violation of Nodean's
            Fifth Amendment right .......................................................... 15

    C.  New information "materially bears" on conditions of release .............. 17

        1.  Recent January 6 defendant release orders ........................... 17

        2.  New information shows that detaining Nordean for a year
            or longer while the aforementioned defendants are released
            is grossly disparate ............................................................. 19

III.  Conclusion ...................................................................................... 23

Defendant Nordean, through his counsel, moves to reopen his detention hearing, pursuant to 18 U.S.C. § 3142(f), for the following reasons.

Nordean's release order was revoked in April.  In the following three months, a great deal of information "that was not known to [him] at the time of the [detention hearing]" has been obtained.  § 3142(f).  In part, the information was not then known to him because the government withheld it over the course of multiple detention hearings, only to produce mitigating material after his bail had been revoked, including video showing law enforcement permitting Nordean to enter the Capitol Building on January 6.  It also includes material Nordean has uncovered through diligent investigation which rebuts any claim that he occupies a current leadership role in the Proud Boys.  This information materially bears on the issue whether there are conditions of release that will reasonably assure public safety.  Nor does the First Superseding Indictment (FSI) allege the elements of a crime necessary to support the detention predicate that Nordean destroyed, or aided and abetted the destruction of, over $1,000 in federal property on January 6.

Nordean offers a bond secured by $1,000,000 in cash and, if that is not sufficient, pledges a home of nearly equivalent value, against any material breach of a release condition.  A network of video cameras has been installed around the home where he would be detained that display every entrance to the residence.  The video is streamed through an application that makes 24/7 surveillance free to any pretrial service office with the internet, creating a virtual Panopticon. Nordean consents to random, warrantless searches of the home during detention and proposes the use of a random electronic storage detection dog sweep of the home, at his expense.  The government has not shown by any evidence, much less evidence clear and convincing, some

1

specific harm Nordean would impose on the community for which he would be willing to risk $50, let alone $1 million and a home.

As the Court knows, Nordean is not accused of assault or violence. It also knows that many January 6 defendants who committed assaults and acts of violence on January 6 have been released on bail, including many also accused of conspiracy.  Pretrial detention is degrading his Fifth and Sixth Amendment rights, as Nordean is unable to view nearly any evidence in his case or to virtually confer with counsel.  The amount of complex discovery he must review is enormous.  Because there is no statutory basis for detention under § 3142(f) and there are conditions that reasonably assure public safety, indeed virtually guarantee it, he should be released so that he can adequately prepare for trial against novel claims the government has never before charged.  If these conditions and facts do not satisfy the BRA, under which liberty is the norm, the precedent set by this case will be dangerous.

## I.  Detention information obtained after Nordean's bail was revoked

### A.  Leadership and political rallying

On April 19, the Court's decision to revoke Nordean's bail rested largely on two § 3142(g)(4) danger-to-the-community factors: Nordean's perceived current leadership of the Proud Boys organization[1] and the possibility that he would engage in dangerous political rallying in the future.  Specifically, the Court found that:

> [T]hrough their leadership . . . and the networks that these two individuals can draw on, [Nordean and Biggs] can produce events that draw large numbers of people, including

---

[1] As the Court knows, the dangerousness factors focus on future risk, not on the historical facts alleged in the indictment.  *United States v. Munchel*, 991 F.3d 1273, 1285 (D.C. Cir. 2021) (question of whether defendant poses an "unmitigable threat to public safety" is "forward-looking" and "does not turn on any generalized, backward-looking assessment of the rioters or the riot").  Nordean focuses in this motion on his lack of any current leadership role in the group. But that does not mean he concedes that leadership per se is a basis for detention absent a showing that the leadership is criminal in nature.

2

Proud Boys, others sympathetic to Proud Boy perspectives . . . Even if the [2020 presidential] election has passed all of politics has not.

Hr'g Trans., 4/19/21, p. 55.

The Court also noted the "leadership roles" for Nordean and Biggs "before, during, and after the riot." Hr'g Trans., 4/19/21, pp. 42; 44 (stressing leadership factor in detention). Specifically, the Court noted that "the grand jury charge[d] that Nordean was a member of the group's leadership through what's known as an Elders chapter and is President of his local chapter in Washington State." *Id.* at 16.

However, as the Court observed, Section 3142(g)(4) dangerousness analysis is forward-looking, *Munchel*, 991 F.3d at 1285, and Nordean is no longer a leader of the group in any capacity. Following the detention hearing, Nordean managed to obtain a sworn declaration from a current leader of the organization. ECF No. 85-1. Specifically, the declarant is the current president of the Seattle chapter of the group, i.e., one of the leadership roles the Court previously assigned to Nordean. *Id.* at 1. The declarant swore under penalty of perjury that the Elders chapter no longer engages in activity and was dissolved this summer. *Id.* Moreover, he swore that the Pacific Northwest section of the organization had become autonomous of, and retains no connection to, any national group. The declarant swore that Nordean is not a president of the group in Seattle, nor in any other chapter. *Id*. at 2. Nordean "no longer has any leadership role in [Seattle] or the [Pacific Northwest]. He is no longer a participant in any Proud Boys Internet communications, and has not been since his arrest in February 2021, including the period between March 3, 2021 and April 19, 2021 during which he was released on house arrest." *Id.* at 2.

The government has not factually rebutted that sworn declaration since it was filed on May 16, 2021.

3

Before his bail was revoked, Nordean had presented a February 2021 audio recording of himself in a conversation with members of his group in which he rejected future political rallying.  However, the Court found that "without any further context there's no indication that that was some kind of permanent decision." Hr'g Trans., 4/19/21, p. 55:22.

There was "further context." A week before the April 19 detention hearing, the government compiled a review of Nordean's audio messages on the Telegram app.  ECF No. 100-1.  In a FD-302 memorandum dated April 14, the government noted multiple additional statements from Nordean forswearing rallying.  *Id.*  The government neither produced the audio messages to Nordean before the detention hearing nor referenced them when the Court made its comment on April 19 about a lack of "further context." That is particularly disturbing given Nordean's previous submission to the Court of one, but not all of, those audio recordings.  In that submission, Nordean's counsel noted that, because the government possessed his phone and had not produced the audio file, Nordean had to obtain it from a third-party.  Yet despite knowing that Nordean was attempting to show his lack of intent to rally in the future with the audio files, the government withheld additional audio files demonstrating the point until after the Court detained him.[2] *See* LCrR 5.1 (beginning at arraignment, the government must make good-faith efforts to disclose as soon as reasonably possible "information that is inconsistent with or tends to negate the defendant's guilt as to any element").

---

[2] This is similar to another episode in the government's second, unsuccessful attempt to detain Nordean.  The government represented to the Chief Judge that Nordean used "encrypted communications" on January 6 to lead an invasion of the Capitol Building from multiple points. Yet his phone was powered off during the relevant time period.  Having seized the device, the government possessed information that would disprove its claim.  It did not produce the *Brady* material to the defense before the bail hearing.  Hr'g Trans., 3/3/21, p. 37.

4

### B.     Video showing Nordean permitted to enter the Capitol Building

Excepting property destruction, each charge against Nordean relies, at least in part, on the claim that he illegally entered the Capitol Building on January 6.  The government has made this point repeatedly.  Nordean's entry into an alleged "restricted area" set under § 1752 was without "lawful authority." FSI, ¶¶ 76, 78.  Nordean's "obstruction" of Congress was "corrupt" because his entry into the Capitol was "unlawful." ECF No. 106, p. 23.  And Nordean "interfered" with law enforcement officers by virtue of his "unlawful" entry into the Capitol Building.  *Id.* at 40 (citing FSI ¶¶ 20, 61-67 as examples of alleged facts establishing a § 231(a)(3) offense).

Yet, on July 7, about three months after Nordean's bail was revoked, the government produced for the first time a Capitol security video depicting the following.  Two law enforcement officers stand aside and permit Nordean to enter the Capitol Building.  The government has provided no explanation for why this video was produced about five months after he was indicted.

### C.     Mitigating Telegram chats produced after detention

Two weeks after the Court revoked Nordean's bail, the government produced additional Telegram chats extracted from his phone.  ECF No. 79.  Like the Telegram chats it used to support detention, the post-detention production was drawn from the same device (Nordean's phone), the same app (Telegram), and only postdate by some days the chats the government used to detain Nordean.  *Id.* at 2.  The Court will recall that because the Telegram messages are "encrypted" (though not end-to-end encrypted), they are designed to evade law enforcement and are therefore candid, according to the government.   The chats produced post-detention show the following:

5

- Nordean endorsing the comment that the affidavit filed in support of defendant Biggs' criminal complaint was a "steaming pile of dog shit that tries to make it seem like the capital shit was planned";

- Nordean indicating several times he did not want to rally in the future.  "Fuck politics, build communities and local economy," he wrote days before his arrest;

- Chats indicating a lack of coordination between Nordean and Dominic Pezzola on January 6.

ECF No. 79, pp. 2-5.

### D.   Government concedes that its claim that Nordean is legally responsible for over $1,000 in property damage rests on Pezzola's window-smashing alone

In seeking revocation of Nordean's release order, the government relied on one of the FSI's charges alone—that Nordean destroyed, or aided and abetted the destruction of, property, damaged in an amount exceeding $1,000.  ECF No. 45, pp. 6-7.  However, the government declined to describe the full extent of its alleged evidence in support of that charge.  Although it cited Pezzola's smashing of a Capitol window, the government represented that was only one piece of evidence among others supporting the property destruction claim.  *Id.* at 6 ("Defendant . . . did aid and abet the violent and destructive entry into the Capitol, *including* that of Pezzola, who is charged elsewhere.") (emphasis added).  The government also proffered Nordean's "personal[] breaking down [of] barriers" as another piece of evidence supporting the over-$1,000-in-damage claim.  *Id.* at 7.  Further, in Nordean's appeal to the D.C. Circuit, the sole piece of evidence the government was willing to cite in support of the $1,000 damage claim was the "fence-shaking" video.  USCA Case No. 21-3021, Doc. No. 1898908, p. 39 n. 19.  As to Pezzola's actions, all the government was willing to represent to the court of appeals was the following, in a footnote:

> The government further alleged that Dominic Pezzola's activities were relevant in this case, because video images showed that Donohoe was carrying the stolen shield with Pezzola, thus effectively "adopting" Pezzola's actions for the group.

6

*Id*. at 22 n. 13.

The Court will notice that the government's appellate brief makes no argument about Nordean's alleged *Pinkerton* conspiracy liability for the window Pezzola smashed.  USCA Case No. 21-3021, Doc. No. 1898908.  Yet in the status conference on July 15, the government acknowledged for the first time that the $1,000-in-property-damage claim is based on Pezzola's window-smashing alone, and not on any other incident of property destruction.  This concession is legally significant for bail purposes for the reasons described below.

### E.    Nordean's current conditions of confinement and the prospect of a distant trial in 2022

The government has been advised that Nordean cannot review electronic discovery at his jail facility absent the presence of defense counsel.  That facility is thousands of miles from the courthouse.  As of July 6, the facility announced to counsel that it will "no longer schedule any attorney/client VTCs and telephone calls with its inmates after July 1, 2021."[3]

On July 19, the government wrote an email to the facility, copying Nordean's counsel. The email indicated that on July 16, the government called an official at the Seattle facility to see whether those access-to-counsel denials could be ameliorated.  Counsel for the government indicated that the jail official represented on July 16 that (1) the jail can "in some circumstances" store discovery materials in the education department and permit inmates to review them there but not take them elsewhere and (2) the facility "is returning to protocol in which legal visits are in-person as opposed to virtual" and that the official will "inquire about the possibility of arranging for virtual meetings with counsel for Mr. Nordean."

---

[3] Nordean's counsel advised the government that Nordean still has access to a common-area CJA phone line, but (1) counsel and the defendant cannot plan these sporadic phone calls, as Nordean may use the line whenever it happens to be free; and (2) the phone is in a common area where it is extremely difficult to hear the defendant in the ambient jail noise.

7

On July 20, in response to questions from Nordean's counsel, an official at Nordean's facility apprised the government and defense counsel as follows.  First, the facility is "not able to accommodate virtual visits" between Nordean and counsel, only in-person legal visitation in Seattle.  "If there is an impending court deadline, the inmate may request a *one-time legal call* through his unit team" (emphasis added).  Second, for Nordean's review of electronic discovery in this case, "in-person" is the "best option." The official noted that a process designed for sex offenders permits inmates to view CDs in their unit, but the official could not commit that counsel would be able to virtually or telephonically meet with Nordean at the same time as he accessed CDs in the CD viewing unit of the facility, i.e., counsel and Nordean cannot review discovery productions together.  Late in the day on July 20, counsel held a phone call with the facility official to confirm that point.  The official confirmed that Nordean and his counsel will not be able to speak on an attorney-client phone line and review electronic discovery at the same time.

By its own description, the government has produced an enormous amount of discovery material in this case, which is continuing.  There is no set discovery schedule and no calendared trial date.  Other January 6 trials are scheduled for the spring of 2022.

### F.    New release conditions options for Nordean

In finding that no release condition or combination of conditions could reasonably assure public safety, the Court focused on a specific risk: that no condition could "ensure" that an associate of Nordean's does not visit him in his "home and provid[e] [him] with a smartphone for some period of time." Hr'g Trans., 4/19/21, pp. 65-66.

Following Nordean's bail revocation, a network of video cameras has been installed around the residence where Nordean was previously confined in home detention, providing a

8

view on every entrance to the dwelling.[4]  The video is streamed through a commercial application that makes 24/7 surveillance free to any pretrial service office with the internet.[5] Credentials can be provided that make pretrial services the only party with access to the video. Below is a blueprint of the home depicting the video camera coverage of the residence:



*One of the cameras installed at the home confinement residence; an ESD dog*

---

[4] Some of these cameras were in place prior to Nordean's detention, others were subsequently installed and/or moved to complete visual coverage of the residence.

[5] The surveillance application is called Ring.  *See* https://ring.com/security-cameras.

9

Nordean consents to random, warrantless searches of the residence for any material breach of a release condition. *See*, *e.g.*, *United States v. Yeary*, 740 F.3d 569, 583 (11th Cir. 2014) (court may impose a warrantless search condition of pretrial release with the defendant's knowing and voluntary consent). That would include a random ESD dog sweep or sweeps to detect any breach of a condition forbidding Nordean's use or possession of electronic devices, at the discretion of pretrial services and at defendant's expense.[6]

He also offers a secured bond of $1,000,000 in cash and, if that is not sufficient, pledges a home of nearly equivalent value, against any material breach of a condition of release.

## II.     Argument

### A.     Standard for reopening bail hearing under § 3142(f)

The Court may "reopen" a detention decision "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." § 3142(f).

Here, the court of appeals directed Nordean and defendant Biggs to present "to the district court in the first instance" arguments they raised on appeal about the government withholding material information bearing on the government's detention motion. *U.S. v. Biggs*, 2021 U.S. App. LEXIS 19125, *3 (D.C. Cir. June 25, 2021) (citing § 3142(f)).

---

[6] The Seattle Police Department's K9 Unit uses dogs trained to detect chemical compounds found in electronic devices. Seattle Police Department, Canine (K9) Unit, available at: https://www.seattle.gov/police/about-us/about-policing/k9. Nordean will compensate the Department for the dog's time or make an equivalent charitable contribution to the K9 Unit as a condition of release.

10

**B.      Nordean's case does not "involve" an "offense" listed in § 3142(f)(1)**

As shown above, the government conceded on July 15 that the sole piece of property damage exceeding $1,000 for which Nordean is detained under § 3142(f)(1) is the Capitol window smashed by Dominic Pezzola.  Because the FSI does not constitutionally charge a crime that would render Nordean liable for that loss, his case does not "involve" an "offense" listed in Section 3142(f)(1).

  1.      *The FSI failed to present essential conspiracy and* Pinkerton *elements to the grand jury in violation of Nordean's Fifth Amendment right*

The FSI does not charge a criminal conspiracy between Pezzola and Nordean.  Therefore, Nordean cannot be held liable for Pezzola's acts under the principles of *Pinkerton v. United States*, 328 U.S. 640 (1946).  Under the Fifth Amendment to the Constitution, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . ." U.S. Const. amend. V.  "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away," *Stirone v. United States*, 361 U.S. 212, 218-19, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960), the "very purpose" of which "is to limit [the accused's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge," *id*. at 218.  Thus, "[t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant" of the "protection which the guaranty of the intervention of a grand jury was designed to secure[,] [f]or a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962).

11

Accordingly, courts have long held that an indictment that omits an essential element of an offense—much less the entire offense—is deficient under the Fifth Amendment. *Apprendi v. New Jersey*, 530 U.S. 466, 500 (2000) (Thomas, J., concurring) (discussing cases and treatises since the 1840s, which repeatedly emphasize the importance of including every element in an indictment); *Jones v. United States*, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) (holding that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt"); *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988) (en banc) ("It is well established that an indictment is defective if it fails to allege elements of scienter that are expressly contained in the statute that describes the offense."). Thus, "[a]s a general rule, criminal proceedings were [properly] submitted to a jury after being initiated by an indictment containing 'all the facts and circumstances which constitute the offence, . . . stated with such certainty and precision, that the defendant . . . may be enabled to determine the species of offence they constitute, in order that he may prepare his defence accordingly . . . and that there may be no doubt as to the judgment which should be given, if the defendant be convicted.'" *Apprendi*, 530 U.S. at 478 (quoting J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862)); *Alleyne v. United States*, 570 U.S. 99, 122, 133, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (Breyer, J., concurring) (noting that "*Apprendi* has now defined the relevant legal regime for an additional decade").

Here, the FSI does not allege all the elements of a criminal conspiracy between Pezzola and Nordean—it does not even charge the crime. The essential elements of a conspiracy charge are (1) an agreement among two or more persons, (2) either to commit an offense against the

12

United States or to defraud the United States, (3) with knowledge of the conspiracy and with actual participation in it, where (4) one or more of the co-conspirators takes any overt act in furtherance of the conspiracy.  18 U.S.C. § 371; *Braverman v. United States*, 317 U.S. 49, 53, 87 L. Ed. 23, 63 S. Ct. 99 (1942).  "The crime of conspiracy focuses on *agreements, not groups*." *United States v. Martin*, 618 F.3d 705, 735 (7th Cir. 2010) (emphasis added).  And as to "each co-coconspirator," the government must allege and prove his understanding of, and agreement with, the plan to commit an offense against the United States.  *United States v. North*, 708 F. Supp. 375, 377 (D.D.C. 1988).  That is the very definition of "co-conspirator"—a person who is in agreement with the charged criminal conspiracy.  *United States v. Tabron*, 437 F.3d 63, 66 (D.C. Cir. 2006) (same).  Once the co-conspirators are established, the *Pinkerton* doctrine holds that a defendant may be held vicariously liable for reasonably foreseeable substantive offenses committed by other *co-conspirators* in furtherance of *the charged* conspiracy.  *See*, *e.g.*, *United States v. Garcia*, 497 F.3d 964, 967 (9th Cir. 2007) (holding that to rely on co-conspiracy liability under *Pinkerton*, a co-conspirator must have committed the substantive offense while the defendant was a member of the same conspiracy).

The FSI charges a conspiracy between *Ethan Nordean, Joseph Biggs, Zachary Rehl, and Charles Donohoe—not between* "*all Proud Boys*."  FSI, ¶ 26.  It alleges that the objects of the *Defendants'* charged conspiracy were to (1) stop, delay, or hinder Congress's certification of the Electoral College vote, and (2) obstruct and interfere with law enforcement officers engaged in their official duties to protect the Capitol and its occupants from those who had unlawfully advanced onto Capitol grounds.  *Id.* at ¶ 27.  The FSI contains one paragraph concerning Pezzola:

> At 2:14 p.m., BIGGS entered the Capitol Building through a door on the northwest side.
> The door was opened after a Proud Boy member, Dominic Pezzola, charged elsewhere,

13

used a riot shield at 2:13 p.m. to break a window that allowed rioters to enter the building and force open an adjacent door from the inside.  BIGGS and Proud Boys members Gilbert Garcia, William Pepe, and Joshua Pruitt, each of whom are charged elsewhere, entered the same door within two minutes of its opening.  At 2:19 p.m., a member of the Boots on the Ground Channel posted, "We just stormed the capitol."

FSI, ¶ 62.[7]

The Court will notice that this paragraph does not allege that (1) Pezzola was a party to, or a co-conspirator of, the conspiracy alleged in the FSI, or even that (2) Pezzola is an *unindicted* co-conspirator *to the criminal agreement alleged in this indictment*.  Thus, the FSI does not charge or allege the elements of a conspiracy involving Pezzola.  The *Pinkerton* question is not even reached because no indictment has been presented to a grand jury alleging a conspiracy crime involving Dominic Pezzola *and Nordean*.  *See*, *e.g.*, *United States v. Kingrea*, 573 F.3d 186, 193-94 (4th Cir. 2009) (vacating conspiracy conviction because indictment did not allege essential element of conspiracy offense and thus violated defendant's presentment right under Fifth Amendment).  The bare allegation that Pezzola was a "Proud Boy member" is not sufficient to render Nordean liable for the smashed window because (1) "the crime of conspiracy focuses on agreements, not groups," *Martin*, 618 F.3d at 735; and anyway, (2) the First Amendment does not permit various liability by virtue of association with a group absent the allegation and "'clear proof a defendant specifically intends to accomplish the [illegal] aim[] of the organization'" at issue—here, property destruction.  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 917 (1982) (quoting *Scales v. United States*, 367 U.S. 203, 229 (1961)).

But even if the FSI had charged a criminal agreement between Pezzola and Nordean *under § 371*, it separately fails to allege, and therefore failed to present to the grand jury, "fact[s] that increase[] the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, 530

---

[7] Capitol video shows that hundreds, if not thousands, of protestors entered through this door following Pezzola's actions, not just members of Nordean's group.

14

U.S. at 490. "Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 570 U.S. at 103. "Consequently, those facts must [also] be presented to the grand jury and included in the indictment." *United States v. Masud al Safarini*, 257 F. Supp. 2d 191, 199 (D.D.C. 2003) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The FSI's conspiracy is charged under § 371. FSI, ¶ 25. That offense carries a five-year statutory maximum sentence. § 371. However, Nordean's alleged substantive-offense vicarious liability under *Pinkerton* for Pezzola's smashing of a window would carry a 10-year maximum. § 1361. Accordingly, facts that increase Nordean's potential penalty under *Pinkerton* are "elements" that must be presented to the grand jury. *Alleyne*, 570 U.S. at 103; *Apprendi*, 530 U.S. at 500; *Hamling*, 418 U.S. at 117. Thus, the FSI was required to allege: (1) while Pezzola and Nordean were members of the conspiracy charged in the FSI, (2) Pezzola depredated federal property, (3) in furtherance of the conspiratorial objectives in the FSI, (4) which property offense was reasonably foreseeable to Nordean. *United States v. Washington*, 106 F.3d 983, 1011 (D.C. Cir. 1997). The FSI alleges none of those elements— it does not even allege Pezzola was in agreement with the conspiracy alleged in the FSI.

2.     *The FSI failed to present essential elements of the aiding and abetting offense to the grand jury in violation of Nordean's Fifth Amendment right*

The FSI charges only one other offense which could satisfy § 3142(f)(1)'s requirement that Nordean's case "involves" an "offense" under that subsection totaling over $1,000 in property destruction, i.e., aiding and abetting the depredation of federal property. FSI, ¶ 74 (charging 18 U.S.C. § 2). Here, too, the FSI failed to present essential elements of the offense to the grand jury in violation of Nordean's Fifth Amendment right.

"[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014).  As to the second element— notably stricter than the *Pinkerton* standard—"[a]n intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to *the specific and entire crime charged*. . ." *Id.* at 76 (emphasis added).  As *Rosemond* put it, quoting Judge Learned Hand: to aid and abet a crime, "a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'" *Id.* (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)).  That is why merely "knowing that a crime is being committed, even when coupled with presence at the scene" is not enough to constitute aiding and abetting." *United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962); *see also United States v. Centeno*, 793 F.3d 378, 387 (3d Cir. 2015) ("Neither mere presence at the scene of the crime nor mere knowledge of the crime is sufficient to support a [aiding and abetting] conviction."); *United States v. Rosalez*, 711 F.3d 1194, 1205 (10th Cir. 2013) ("Mere presence at a crime scene or knowledge alone that a crime is being committed is insufficient.").

The FSI alleges neither *Rosemond* element of aiding and abetting liability with respect to Nordean and Pezzola's window-smashing crime.  It neither alleges Nordean "took an affirmative act in furtherance" of the window-smashing, nor that he took that act with the intent to facilitate *the specific offense at issue*, i.e., destruction of the window.  Accordingly, the government did not constitutionally present to the grand jury the charge that Nordean aided and abetted Pezzola's destruction of property.  *Alleyne*, 570 U.S. at 103; *Apprendi*, 530 U.S. at 500; *Hamling*, 418 U.S. at 117.

16

Recall that the government's first indictment contended that Nordean "aided and abetted" property destruction by "appearing to engage in a brief exchange with" Robert Gieswein, a man who later entered through the window broken by Pezzola. ECF No. 13, p. 5.  The government dropped that failed claim from the FSI after the Chief Judge pointed out that it did not plead an aiding and abetting offense.  Hr'g Trans., 3/3/21, pp. 79-80.  If anything, the FSI's aiding and abetting claim is even "weaker," in the Chief Judge's words, as it does not even reference Nordean at all in connection with Pezzola's breaking of a window—or anything else Pezzola allegedly did, ever.  FSI, ¶ 62.

Therefore, Nordean's case does not "involve" an "offense" listed in § 3142(f)(1).[8]

## C.   New information "materially bears" on conditions of release

Even if the Court determines that Nordean's case somehow "involves" an "offense" listed in § 3142(f)(1), notwithstanding the FSI's presentment flaws, the information he has obtained following revocation of his release order in April overwhelmingly shows the government has not presented "clear and convincing evidence" that the "threat" he poses to public safety is "unmitigable" by *any* condition or *combination* of conditions.  *Munchel*, 991 F.3d at 1285.

1.   *Recent January 6 defendant release orders*

Since such safety determinations are relative, Nordean will begin with recent cases where the threat posed by other January 6 defendants has been found mitigable by conditions of release under the BRA.  Consider Patrick McCaughey, III.  Among other felonies in a nine-count

---

[8] A finding that Nordean's case does not "involve" the "offense" that Nordean destroyed, or aided and abetted the destruction of, *over $1,000* in federal property for purposes of § 3142(f)(1) does not first require dismissal of Count 4, charging a violation of § 1361.  Section 1361 also contains a misdemeanor offense for damage less than $1,000 and the government appears to allege that Nordean and Biggs caused damage to a fence they "shook." However, a misdemeanor offense does not satisfy the detainable offenses listed in § 3142(f)(1).

17

indictment, McCaughey is charged with assaults on multiple officers within the Capitol Building. *United States v. McCaughey*, 21-cr-40 (D.D.C. 2021).  These are not "technical" assaults. Having stolen a police shield, McCaughey used it to pin an officer to a door and squeeze him as the officer cried out in pain, blood dripping from his mouth.  ECF No. 30, p. 4.  Later, body camera footage depicts the defendant striking multiple officers with the stolen riot shield.  Judge McFadden initially denied the defendant's motion to reopen detention.  However, after McCaughey presented video evidence showing the officer's pinning at a different angle, and more to the point, after the defendant pledged a $725,000 secured bond, Judge McFadden released him on the following conditions beyond the standard ones: home detention and GPS location monitoring.  ECF Nos. 54, 54-1.

Consider Michael Perkins.  Perkins is charged with engaging in a coordinated *attack* on law enforcement with four co-defendants.  *United States v. Perkins*, 21-cr-447, ECF No. 10, p. 3 (D.D.C. 2021).  During a violent melee with officers, Perkins picked up a flagpole and threw it like a spear at a line of law enforcement.  *Id.* at 8.  Picking it up, he thrust the weapon into the chest of a police officer.  *Id.*  Not finished, he raised the pole over his head and brought it down like a club on the head of another officer.  *Id.* at 11.  Magistrate Judge Harvey denied the government's motion to detain Perkins pretrial, releasing him on conditions that included home detention with GPS location monitoring.  ECF No. 29.

Consider this Court's release of Douglas Jensen, charged with five felonies.  Initially detained pretrial, Jensen moved to reopen the bail hearing under § 3142(f).  As the Court knows, Jensen was one of the first protestors to breach the Senate, menacing a lone police officer who defended the legislative chamber like Horatius at the bridge.  The government alleged that Jensen was "*the most aggressive of the rioters* because he was constantly encouraging other

18

rioters to advance forward in the *standoff with law enforcement* in the Ohio Clock Corridor."
*United States v. Douglas Jensen*, ECF No. 24, p. 13 (D.D.C. 2021) (emphasis added).  He caried
a knife with a three-inch blade.  He appeared to subscribe to certain QAnon theories that could
suggest personal instability.  Nevertheless, the Court released Jensen on strict conditions
including home incarceration, GPS location monitoring, and submitting to substance abuse and
mental health screening.  ECF No. 30.

Apart from those recent release orders in cases involving assaults on law enforcement,
many January 6 defendants charged with conspiracy, or who present other factors potentially
suggestive of dangerousness, have been released, too:

- *U.S. v. Caldwell*, 21-cr-28, ECF No. 75 (D.D.C. 2021) (Mehta, J.) (leader of Oath
  Keepers conspiracy released on strict conditions, including a ban on communications
  with Oath Keepers members.  Oath Keepers members equipped in paramilitary uniforms
  entered the Capitol in military "stack" formation, had trained in combat tactics before
  January 6, and appeared to be stockpiling firearms across the Potomac);

- *U.S. v. Steele*, 21-cr-28 (D.D.C. 2021) (member of Oath Keepers conspiracy released on
  strict conditions);

- *U.S. v. Connie Meggs*, 21-cr-28 (D.D.C. 2021) (same);

- *U.S. v. Crowl*, 21-cr-28 (D.D.C. 2021) (same);

- *U.S. v. Young*, 21-cr-28 (D.D.C. 2021) (same);

- *U.S. v. James*, 21-cr-28 (D.D.C. 2021) (same);

- *U.S. v. Klein*, 21-cr-236, Apr. 12, 201 (D.D.C. 2021) (Bates, J.) (releasing defendant who
  placed himself at front of mob and used force against several officers to breach the
  Capitol's entrance);

- *U.S. v. Barnett*, 21-cr-38 (D.D.C. 2021) (Cooper, J.) (releasing man who entered Capitol
  with stun gun, stole mail from the House Speaker, and left threatening note on her desk);

- *U.S. v. Griffin*, 21-cr-92 (D.D.C. 2021) (Howell, C.J.) (releasing man who said that if
  there were a Second Amendment rally at the Capitol there would be "blood runnin'" from
  walls).

19

2.     *New information shows that detaining Nordean for a year or longer while the aforementioned defendants are released is grossly disparate*

As the Court knows, Nordean is not charged with assaulting anyone on January 6.  He is not charged with conspiring to assault anyone.  Nor is he charged with violence.  To the contrary, the government belatedly produced Capitol footage showing Nordean stopping another protestor from shoving a law enforcement officer on January 6.  ECF No. 57.

As Nordean's motion to dismiss shows, the charges against him are virtually all predicated on strained and novel readings of nonviolent process-crime statutes.  That is worlds from the concrete assaults on law enforcement alleged in the *McCaughey*, *Jensen*, *Perkins*, and *Klein* cases, a legal theory as old as the hills.  As the Court knows, it does not take a social scientist to determine that a defendant who proves willing to smash a pole on a police officer's head stands on a higher level of dangerousness than one who "obstructs" an "official proceeding" by entering the Capitol Building.  Yet it is the former category of defendant who has been released under the BRA and Nordean who is detained.  The Court will recall that Nordean had complied with his conditions of release for over a month before his bail was revoked.

Following his detention, Nordean filed a declaration from a current leader of the group swearing that Nordean is no longer a leader in the organization in any sense of the word.  ECF No. 85-1.  It swears, on penalty of perjury, that at no point did Nordean communicate with Proud Boys during his home detention.  The government has not factually rebutted that declaration.  Following his detention, the government produced evidence it withheld throughout the bail proceedings.  It shows that Nordean repeatedly disavowed future political rallying, in the days before his arrest in February.  The government never provided any explanation for why the material was not produced until after Nordean's bail was revoked.  On July 7, months after he was detained, the government produced a video showing law enforcement officers permitting

20

Nordean to enter the Capitol Building on January 6.  That affects the merits of several of the government's novel charges, all of which Nordean has challenged in a motion to dismiss that had not been filed at the time his bail was revoked over three months ago.

Nordean is willing to post a $1 million secured bond, in cash.  If a million in cash is not sufficient to the Court, he is willing to pledge a home of nearly equivalent value.  He is willing to pledge this collateral against any material breach of any condition of release imposed by the Court.  As to the chance that an associate of Nordean's might give him a phone, the risk identified by the Court in revoking his bail: (1) weeks ago, Nordean's counsel inquired whether the government possessed any evidence indicating that the Proud Boys organization has engaged in violent rallying or other group crimes since January 6 or evidence indicating that a member of the group has violated a defendant's bail conditions.  The government disdained to respond; (2) Nordean has installed a network of cameras around the home, which any pretrial services office with the internet may access for free, 24/7.  The government also refused to respond to Nordean's question whether his new conditions of release would satisfy it.

Although the BRA release standard is whether there are conditions that "reasonably assure" the safety of the community, § 3142(g), the government will in response to this motion ignore the statutory language and raise a host of speculative objections.  The government will contend that Nordean's video surveillance does not guarantee things, ignoring that *its* burden is to offer "clear and convincing evidence" that Nordean's conditions do not even "reasonably" assure public safety.  It will offer no evidence showing a likelihood that, half a year on from the charged crime, Nordean will in some undefined way harm the public on complete lockdown, never mind that he complied with his bail conditions for over a month before he was detained.  It

21

will say, There is no guarantee an associate of Nordean's will not remotely disable the cameras with (say) a laser beam during an hour of the day that pretrial services cannot monitor the video.

Even if the Court were to treat these as good faith arguments, they would fail.  A noted penal reformer showed why three centuries ago.  His Panopticon, a prison design, would much later become the model for US supermax detention facilities.  See The Bentham Project: the Panopticon, University College London, available at: https://www.ucl.ac.uk/bentham-project/who-was-jeremy-bentham/panopticon.  His key penal innovation was the "central inspection principle." Before the video age, prisoners could not be monitored all at the same time.  So Bentham arrayed their cells in a circle around a central inspection tower.  Although the tower would be manned by only one guard who could not monitor the cells all at once, the system would still reap great efficiencies.  The mere possibility of being monitored was enough to keep the inmates in line.  So too with Nordean's cameras and a $1 million bond.

If home incarceration, GPS monitoring, a network of video cameras outside the home streaming 24/7, warrantless and random searches featuring electronics-sniffing dogs, and a bond secured by a $1,000,000 and a home are not conditions that "reasonably" assure public safety, in a nonviolent case, due to the theoretical risk of the defendant being given a cell phone to commit an unspecified crime, it is difficult to conceive of any defendant not being detained pretrial.  This is a dangerous precedent for liberty.

Then the Court must consider Nordean's constitutional rights to due process and assistance of counsel.  Currently, Nordean is unable to review any electronic evidence or receive regular legal phone calls.  His facility recently advised that it cannot set up virtual legal visits between Nordean and counsel and that if counsel wishes to review evidence with Nordean, it must be in person, in Seattle.  Preparing for trial in this case while incarcerated at all, much less

22

in these conditions, is simply infeasible.  As the government notes at every opportunity, this case is but one of the prosecutions making up one of the largest, if not the largest, criminal investigations in DOJ's history.  The amount of already produced discovery Nordean will be required to review with counsel, but cannot while incarcerated, is enormous.  Complicating matters further, the government's bid to share grand jury materials with a discovery contractor was recently denied.  *In Re Capitol Breach Grand Jury Investigations within the District of Columbia*, Grand Jury Action No. 21-20 (D.D.C. July 16, 2021).  There is a serious risk this development will significantly frustrate the government's attempts to set up a centralized database for January 6 discovery.  Even before that development, trials for January 6 defendants were being scheduled for the spring of 2022.  Here, there is no discovery schedule and no trial date calendared.

## III.  Conclusion

In sum, then, the government has produced no evidence, much less the clear and convincing kind, showing any specific risk that Nordean, who has no criminal history, poses to the public, half a year following the charged crimes.  He is not accused of violence.  Nordean is no longer a "leader" of his group.  He has repeatedly disavowed political rallying, though that is not a crime.  The government has not even proffered evidence that his former group has engaged in dangerous rallying since January 6.  Nordean has offered unprecedented conditions of release, including 24/7 video surveillance; warrantless, random searches of his home; removal of all electronics from the residence; GPS location monitoring; and complete home incarceration.  He offers a bond secured by $1 million in cash and, if necessary, a home of nearly equivalent value, against any material breach of his release conditions.  To prepare for trial on novel charges, he must review an enormous amount of discovery with counsel, which he cannot now do while

23

incarcerated.  Although people accused of violent crimes, including murder and rape, are granted bail every day in this country, and indeed although many January 6 defendants accused of assault on law enforcement have been granted bail, Nordean would likely remain detained for a year or longer awaiting trial, if he is not released.  Significantly, that pretrial detention would outlast the sentence of conviction recently imposed on a January 6 defendant who was accused of the same obstruction crime as Nordean.  If these facts require detention, it is hard to see what is left of the BRA's protections.

Dated: July 20, 2021                           Respectfully submitted,

                                               */s/ David B. Smith*
                                               David B. Smith (D.C. Bar No. 403068)
                                               108 N. Alfred St.
                                               Alexandria, VA 22314
                                               Phone:(703)548-8911
                                               Fax:(703)548-8935
                                               dbs@davidbsmithpllc.com

                                               Nicholas D. Smith (D.C. Bar No. 1029802)
                                               7 East 20th Street
                                               New York, NY 10003
                                               Phone: (917) 902-3869
                                               nds@davidbsmithpllc.com

                                               *Counsel to Ethan Nordean*

24

## Certificate of Service

I hereby certify that on the 20th day of July, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Jim Nelson
Assistant United States Attorney
555 4th Street, N.W., Room 4408
Washington, D.C. 20530
(202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com
*Counsel to Ethan Nordean*

25

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) |
| v. | ) Case No. 1:21-cr-175 |
|  | ) |
|  | ) **Judge Timothy J. Kelly** |
| ETHAN NORDEAN, et al., | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**DEFENDANT NORDEAN'S MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT**

David B. Smith (D.C. Bar No. 403068)
David B Smith PLLC
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Counsel to Ethan Nordean*

## TABLE OF CONTENTS

INTRODUCTION .......................................................... 1

STATUTORY HISTORY AND FACTUAL BACKGROUND ...................... 3

    A.    Section 1512(c)(2)'s structure and legislative history........... 3

    B.    Section 231(a)(3)'s structure and legislative history............ 7

    C.    Section 1752 and the U.S. Secret Service ....................... 8

        1.  The legislative history of § 1752 ........................... 8

        2.  The current § 1752 ...................................... 12

        3.  History of the protection of the Executive Mansion ........ 14

    D.    The First Superseding Indictment (FSI) ...................... 16

ARGUMENT ............................................................. 18

    I.    Standard for a Rule 12(b) motion to dismiss ................... 18

    II.    The Section 1512(c)(2) counts should be dismissed ............. 18

        A.    The FSI fails to state a § 1512(c)(2) offense ................ 18

        B.    If the government's interpretation of § 1512(c)(2) is applied
            it is unconstitutionally vague as to Nordean ................. 24

            1.  § 1512(c)(2) does not provide fair notice that "official
               proceedings" includes proceedings unrelated to the
               administration of justice ............................ 25

            2.  The government's interpretation of "corruptly" fails
               this Circuit's *Poindexter* test ...................... 27

        C.    The rule of lenity dictates that any ambiguities in § 1512(c)(2)
            be resolved in Nordean's favor ............................. 30

        D.    The novel construction principle of the Due Process Clause
            requires rejection of the government's interpretation, which would
            operate as an *ex post facto* law ............................ 31

        E.    The FSI's application of § 1512(c)(2) is invalid under the

First Amendment, as applied to Nordean ..................................... 32

III.   The Section 231(a)(3) counts should be dismissed ..................... 35

    A.   Section 231(a)(3) exceeds Congress's Commerce Clause authority ........................................................................ 35

        1.   The police power and the Commerce Clause's prohibition on Congress's regulation of intrastate activity that does not "substantially affect" interstate commerce ................. 36

        2.   Section 231(a)(3) does not substantially affect interstate commerce…………………………………………….......... 37

            (a)   Section 231(a)(3) does not regulate economic activity .................................................................... 37

            (b)   The jurisdictional element of § 231(a)(3) does not limit its reach to activities that substantially affect interstate commerce .................................... 39

            (c)   Congress did not find that § 231(a)(3)'s activities substantially affect interstate commerce ................. 40

            (d)   The relationship between § 231(a)(3)'s activities and any effect on interstate commerce is too attenuated .................................................................. 42

    B.   Section 231(a)(3) is unconstitutionally vague .................... 42

        1.   Section 231(a)(3)'s vague standards fail to provide fair notice and risk arbitrary enforcement ........................... 42

        2.   Section 231(a)(3) cannot be saved by construction without violating the constitutional separation of powers ................. 45

IV.   The Section 1752 counts should be dismissed ......................... 46

    A.   The FSI fails to state an offense because only the USSS restricts areas under § 1752 ........................................................... 49

    B.   If the government's interpretation of § 1752 is applied, it is unconstitutionally vague as to Nordean .................................. 49

1.   The government's interpretation of § 1752(c) is
     unconstitutionally vague ........................................ 49

2.   The government's interpretation of § 1752(a)(2) is
     unconstitutionally vague ........................................ 51

C.   The rule of lenity dictates that any ambiguities in § 1752 be resolved
     in Nordean's favor ................................................ 54

D.   The novel construction principle dictates against the government's
     interpretation, which would operate as an *ex post facto* law ............. 54

V.   The FSI should be dismissed because it does not provide adequate
     notice and does not ensure the grand jury made determinations
     required by the Fifth Amendment ................................... 55

A.   The federal property depredation allegations are not elucidated
     sufficiently ..................................................... 56

B.   The civil disorder allegations are not elucidated sufficiently ........... 57

CONCLUSION ...................................................... 57

## <u>TABLE OF AUTHORITIES</u>

**CASES**               **Page**

*Barenblatt v. United States*, 360 U.S. 109 (1959) ................................................................. 20

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) ............................................................ passim

*Brown v. Louisiana*, 383 U.S. 131 (1966) ........................................................................... 33

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................................... 24

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ............................................................ passim

*City of Houston v. Hill*, 482 U.S. 451 (1987) ...................................................................... 35

*Coates v. City of Cincinnati*, 402 U.S. 611 (1971) .......................................................... 44-45

*Colautti v. Franklin*, 439 U.S. 379 (1979) .......................................................................... 43

*Cole v. Arkansas*, 333 U.S. 196 (1948) ............................................................................... 55

*Citizens United v. FEC*, 558 U.S. 310 (2010) ..................................................................... 24

*Connally v. General Constr. Co.*, 269 U.S. 385 (1926) ....................................................... 52

*Corley v. U.S.*, 556 U.S. 303 (2009) .................................................................................... 47

*Ctr. for Biological Diversity v. E.P.A.*, 722 F.3d 401 (D.C. Cir. 2013) ............................... 47

*Edwards v. District of Columbia*, 755 F.3d 886 (D.C. Cir. 2014) .................................. passim

*Hamling v. United States*, 418 U.S. 87 (1974) .................................................................... 18

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982) ............................. passim

*Kent v. Dulles*, 357 U.S. 116 (1958) .................................................................................... 52

*Kilbourn v. Thompson*, 103 U.S. 168 (1881) ....................................................................... 19

*Kolender v. Lawson*, 461 U.S. 352 (1983) ........................................................................... 24

*McGrain v. Daugherty*, 273 U.S. 136 (1927) ...................................................................... 19

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ....................................... 47

*Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.2d 1 (D.C. Cir. 2009) ............................................... 24

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ............................................. 24,53

*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) ............................................................. passim

*Smith v. O'Grady*, 312 U.S. 329 (1941) ....................................................................... 55

*Snyder v. Phelps*, 562 U.S. 443 (2011) ....................................................................... 33

*Stirone v. United States*, 361 U.S. 212 (1960) ........................................................... 56

*St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531 (1978) ................................... 40

*Texas v. Johnson*, 491 U.S. 397 (1989) ...................................................................... 33

*Tinker v. Des Moines Ind. Comm. School Dist.*, 393 U.S. 397 (1989) ......................... 33

*Trump v. Mazars United States*, 940 F.3d 710 (D.C. Cir. 2019) ................................. 19

*United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 503 (1969) ............................... 47

*United States v. Ballestas*, 795 F.3d 138 (D.C. Cir. 2015) .......................................... 12

*United States v. Bronstein*, 849 F.3d 1101 (D.C. Cir. 2017) ...................................... 24

*United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005) .......................................... passim

*United States v. Bursey*, 2004 U.S. Dist. LEXIS 29661 (D.S.C. Sept. 13, 2004) ....... passim

*United States v. Caputo*, 201 F. Supp. 3d 65 (D.D.C. 2016) ...................................... 34

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) .......................................... 21

*United States v. Grace*, 461 U.S. 171 (1983) ............................................................. 33

*United States v. Granderson*, 511 U.S. 39 (1994) .................................................. passim

*United States v. Harmon*, 474 F. Supp. 3d 76 (D.D.C. 2020) .................................... 12

*United States v. Kozminski*, 487 U.S. 931 (1988) ...................................................... 45

*United States v. Lanier*, 520 U.S. 259 (1997) ........................................................... 24

*United States v. Lopez*, 514 U.S. 549 (1995) ......................................................... passim

*United States v. Moore*, 613 F.2d 1029 (D.C. Cir. 1979) ........................................... 46

v

*United States v. Morrison*, 529 U.S. 598 (2000) ..................................................... passim

*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) ................................... passim

*United States v. Ragen*, 314 U.S. 513 (1942) ................................................................ 43

*United States v. Rumley*, 345 U.S. 41 (1953) ............................................................... 20

*United States v. Santos*, 553 U.S. 507 (2008) ........................................................ passim

*United States v. Wiltberger*, 18 U.S. 76 (1820) ............................................................ 30

*Virginia v. Hicks*, 539 U.S. 113 (2003) ......................................................................... 44

*Williams v. Fears*, 179 U.S. 270 (1900) ......................................................................... 52

**STATUTES**

18 U.S.C. § 1752 ..................................................................................................... passim

18 U.S.C. § 3056 ..................................................................................................... passim

18 U.S.C. § 1512(c)(2) ........................................................................................... passim

18 U.S.C. § 231(a)(3) ............................................................................................. passim

18 U.S.C. § 1503 ...................................................................................................... 20-21

18 U.S.C. § 1504 ...................................................................................................... 20-21

18 U.S.C. § 1505 ..................................................................................................... passim

18 U.S.C. § 1510 ...................................................................................................... 20-21

18 U.S.C. § 1513 ...................................................................................................... 20-21

18 U.S.C. § 1515 ...................................................................................................... 20-21

18 U.S.C. § 1516 ...................................................................................................... 20-21

18 U.S.C. § 1517 ...................................................................................................... 20-21

18 U.S.C. § 1518 ...................................................................................................... 20-21

18 U.S.C. § 1519 ...................................................................................................... 20-21

vi

18 U.S.C. § 1521 .................................................................................................... 20-21

**RULES AND REGULATIONS**

Federal Rule of Criminal Procedure 7 ...................................................................... 11

Federal Rule of Criminal Procedure 12 .................................................................... 12

31 Code of Federal Regulations Part 408 ................................................................. 10

**OTHER AUTHORITIES**

Joseph Story, Commentaries on the Constitution (1833) .......................................... 55

The White House Historical Association .................................................................. 16

W. Blackstone, Commentaries on the Laws of England (1765) ........................... 25, 52

Defendant Ethan Nordean, through his counsel, files this motion to dismiss the First Superseding Indictment (FSI), pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, because it fails to state valid offenses and violates several constitutional protections.

## INTRODUCTION

The FSI charges that, on January 6, 2021, Nordean conspired, attempted to, and did, violate, and aided and abetted the violation of, 18 U.S.C. § 1512(c)(2) and § 231(a)(3).  FSI, Counts 1-3.  It also charges that, on the same day, Nordean violated § 1752 by entering a "restricted building and grounds" without lawful authority.  FSI, Counts 5-6.  Finally, it charges that Nordean attempted to, and did, deprecate, and aided and abetted the depredation of, federal property, causing damage over $1,000.  FSI, Count 4.  Those charges should be dismissed with prejudice for the following reasons.

**Section 1512(c)(2).**  The basis of the § 1512(c)(2) charge (Count Two), and the count charging a conspiracy to violate that statute (Count One), is that Nordean and others aimed to "hinder Congress's certification of the Electoral College vote" after the 2020 presidential election, which the FSI characterizes as an "official proceeding" under § 1512(c)(2).  FSI, ¶ 27. Nordean did so, the government alleges, in the misguided belief that the legislature should refuse to certify the vote upon a review of evidence that he mistakenly contended showed voter fraud. But, as the FSI correctly alleges, the joint session of Congress on January 6 did not review evidence and find facts; it merely "formalized the result of the 2020 U.S. Presidential Election." *Id.* at ¶ 3.  Thus, Congress was not exercising its implied power of investigation.  Because Section 1512(c)(2) has never been applied to a "proceeding" that does not involve a tribunal hearing evidence and finding facts, the government misapplies the statute.  Even if its construction were formally correct, as applied to Nordean the government's interpretation of §

1

1512(c)(2) is void for vagueness, requiring dismissal under the Due Process Clause of the Fifth Amendment to the Constitution, particularly in the context of Nordean's political speech, assembly and petitioning of the government for a redress of grievances.  U.S. Const. amend I. And even if the statute's notice were not unconstitutionally vague, the very fact that the government's interpretation of § 1512(c)(2) is without precedent means that the rule of lenity, and the novel construction principle, require any ambiguity to be resolved in Nordean's favor.  In addition, insofar as the FSI's § 1512(c)(2) charges criminalize the nonviolent protest of acts of Congress per se, they violate the First Amendment, as applied to Nordean.

**Section 231(a)(3).**  Section 231(a)(3), concerning interference with local law enforcement during a "civil disorder," exceeds Congress's Commerce Clause authority by reaching purely intrastate interactions between individuals and local law enforcement officers. Such police powers have always belonged to the States.  Section 231(a)(3)'s requirement that a "civil disorder" affect commerce "in any way or degree" lacks the requisite causal nexus between a defendant's act and interstate commerce, nor does it require a substantial effect on commerce.  No interpretation of § 231(a)(3) avoids constitutional infirmity.  In addition, as with its construction of § 1512(c)(2), the government's interpretation of §231(a)(3), as applied to Nordean, is unconstitutionally vague as it rests on imprecise terms—such as "any act"—in defining the crime, providing inadequate notice of the prohibited conduct and facilitating arbitrary and discriminatory enforcement that have manifested in this case.

**Section 1752.**  Since its enactment in 1970, Section 1752 has criminalized the unlawful entry into areas restricted for the protection of U.S. Secret Service (USSS) protectees.  Statutory text, legislative history, and common sense all point to the conclusion that the agency that restricts such areas is the one that guards them, i.e., the USSS.  But here, the government

2

contends that any federal or state entity may criminalize a person's movements under federal law.  It alleges that Nordean violated § 1752 because the Capitol was visibly restricted by the U.S. Capitol Police (USCP).  But the USCP do not guard the Secret Service protectees identified in § 1752; they protect members of Congress, who are neither guarded by the USSS nor covered by § 1752.  The government's interpretation of § 1752 is a nonce argument designed for January 6 defendants alone.   The § 1752 counts should be dismissed for failure to state offenses.  As applied to Nordean, the government's interpretation of § 1752 is also void for vagueness, requiring dismissal under the Due Process Clause of the Fifth Amendment to the Constitution, particularly in the context of Nordean's political speech, assembly and petitioning of the government for a redress of grievances.  Even if the statute's notice were not unconstitutionally vague, the fact that the government's interpretation of a 50-year-old statute is without precedent means that the rule of lenity, and the novel construction principle, require any ambiguity to be resolved in Nordean's favor.

**All Counts, including Count Four.**  The FSI's boilerplate January 6 allegations—not specifying what property was damaged and by whom, or how Nordean interfered with law enforcement—violate the presentment and notice functions of grand jury indictments under the Fifth and Sixth Amendments and Rule 7(c) of the Federal Rules of Criminal Procedure.

On all these grounds, independently and collectively, the Court should dismiss the FSI.

## STATUTORY HISTORY AND FACTUAL BACKGROUND

A.      **Section 1512(c)(2)'s structure and legislative history**

Section 1512(c) provides: "Whoever corruptly—

(1)      alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

3

(2)      otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned. . .

§ 1512(c).

Section 1515 defines the term "official proceeding" as used in Section 1512(c).  "[T]he term 'official proceeding' means—

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

§ 1515(a)(1).

Section 1515 also defines the term "corruptly"—but only for obstruction offenses charged "in section 1505." § 1515(b).  Before this definition was added, the D.C. Circuit had determined that § 1505's adverb "corruptly" was unconstitutionally vague.  *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).  Congress subsequently amended § 1515 to provide,

*As used in section 1505*, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

§ 1515(b) (emphasis added).

Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002 (SOX).  SOX was "[a]n Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sabanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.  As the previous U.S. attorney general described it,

4

SOX "was prompted by Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, had systematically destroyed potentially incriminating documents." Mem. of William P. Barr, dated June 8, 2018 ("Barr Mem"), p. 5, available at: https://bit.ly/2RYVZ47.  Upon a review of the statute's legislative history, the former attorney general concluded that the plain purpose of § 1512(c)(2) was a "loophole closer meant to address the fact that the existing section 1512(b) covers document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly." *Id.*

The legislative history supports the former attorney general's interpretation of § 1512(c)(2)'s purpose.  A Senate Judiciary Committee report described SOX's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations." S. Rep. No. 107-146, at 2 (2002).  The report states that the Corporate Fraud Accountability Act was designed to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records." S. Rep. No. 107-146, at 14-15.  Section 1512(c) did not exist as part of the original proposal.  S. 2010, 107th Cong. (2002).  Rather, Senator Trent Lott introduced it as an amendment in July 2002.  148 Cong. Rec. S6542 (daily ed. July 10, 200).  The senator explained the purpose of adding § 1512(c):

> [This section] would enact stronger laws against *document shredding*.  Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered . . . [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena.  I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

5

*Id.* at S6545 (emphasis added).

Senator Orin Hatch explained that § 1512(c) would "close [] [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents. *Id.*  As the former attorney generally summarized this history, "The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence." Barr Mem., p. 6.

Unlike § 1512(c), Section 1505 concerns obstruction of congressional proceedings "by threats or force." It provides criminal penalties for:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of *the power of inquiry* under which *any inquiry or investigation* is being had by either House, or any committee of either House or any joint committee of the Congress—

§ 1505 (emphasis added).

The italicized portions of that section show that Congress limited the obstruction-of-Congress offense to a specific kind of congressional "proceeding": those pursuant to Congress's "power of inquiry," which are "inquir[ies] or investigation[s]." § 1505. The legislative history of § 1505 shows that it was designed to prevent obstruction of only those proceedings held pursuant to Congress's investigative power.  *Poindexter*, 951 F.2d at 380-81.  Section 241, the predecessor of § 1505, was passed in 1940 to bar witness tampering before Congress.  As the D.C. Circuit summarized the legislative history: "The Senate and House Reports and the floor debates concerning [§ 1505's predecessor] . . . state that the 'proposed legislation simply extends the protection now provided by law for witnesses in Court proceedings to witnesses in proceedings before either House of Congress or committees of either House (or joint

6

committees).'" 951 F.2d at 381 (quoting .R. Rep. No. 1143, 76th Cong., 1st Sess. 1 (1939); S.

Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939)).

### B.    Section 231(a)(3)'s structure and legislative history

Section 231 provides criminal penalties for:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—

§ 231(a)(3).

Section 231(a)(3) was enacted as part of the Civil Obedience Act of 1968 (COA).  Pub.

L. 90-284, Apr. 11, 1968, Title X.  Senator Russell B. Long of Louisiana sponsored the COA

during the Senate's debates over the Civil Rights Act of 1968.  114 Cong. Rec. 1294-96 (Jan. 29,

1968).  It was proposed as a rejoinder to the civil rights bill and to the civil rights movement.

Long explained the purposes of the COA in floor debate:

First, the COA was to nullify the legal protections proposed under the "hate crime" title

of the Civil Rights Act of 1968.  Codified at 18 U.S.C. § 245, that title criminalized interfering

with another person because of the person's race or because he engaged in federally protected

activity.  Senator Long was clear that the COA was designed to diminish the hate crime law.  114

Cong. Rec. 1287-94 (Jan. 29, 1968).  His "greatest immediate concern" about the hate crime law

was "the unwitting stumbling block it could place before State and local officials in their honest

attempts to detain and prosecute incendiary rabble rousers." *Id.* at 1289.  He noted that "half of

the Baton Rouge police force could have been thrown into jail" under the hate crime law for

beating and setting attack dogs on peaceful protestors.  *Id.*

7

Second, it was the COA's purpose to jail civil rights leaders.  For example, Senator Long said the COA was needed due to "a so-called civil rights march led by Dr. Martin Luther King in the streets of Birmingham in March of 1963." 114 Cong. Rec. 1294 (Jan. 29, 1968).  During that march, Long complained, Dr. King had "addressed a tense crowd with inflammatory words," while in jail, King "wrote an inflammatory letter which gained wide recognition in its pleas for Negroes to disobey those laws they felt unjust." *Id.*  Long offered similar explanations for the COA by reference to other civil rights leaders.  114 Cong. Rec. 5536 (Mar. 6, 1968).  As for the constitutional power Congresses needed to pass the COA—the Commerce Clause—Long explained the COA would apply to intrastate conduct so that it would "not leave available to Rap Brown or Stokely Carmichael the technical defense that they did not cross the State boundary with the intent to create a riot." 114 Cong. Rec. 5533.

Third, Senator Long said the COA would "strike at" the "doctrine . . . that one should not obey the laws that stand in the way of alleged 'civil rights.'" 114 Cong. Rec. 1295 (Jan. 29, 1968).

As to the COA section that would become § 231(a)(3), Senator Long explained that this section "would make it a Federal offense for people to snipe at firemen or shoot at policemen while they are trying to do their duty protecting lives and property." 114 Cong. Rec. 5542.

C.     **Section 1752 and the U.S. Secret Service**

1.     *The legislative history of § 1752*

Congress enacted 18 U.S.C. § 1752 as part of the Omnibus Crime Control Act of 1970. Public Law 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan. 2, 1971).  At the time, the USSS was part of the Treasury Department.

8

Later Congresses would amend Section 1752, but like its current iteration, the 1970 statute provided that it was "unlawful for any person . . . (1) willfully and knowingly to enter or remain in . . .(ii) any posted, cordoned off, or otherwise restricted area of a building or grounds where the President is or will be temporarily visiting. . ." 84 Stat. 1891-92.[1]  The statute made clear which entity "prescribed regulations" governing the "posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting": the Treasury Department, of which the USSS was then part. § 1752(d)(2); 84 Stat. 1892.

In 1969, Senators Roman Lee Hruska and James Eastland designed S. 2896, which would later be codified at § 1752.  The very purpose of the bill was to give the Secret Service the power to restrict areas for temporary visits by the president, a power which no other federal agency then possessed.  S. Rep. No. 91-1252 (1970).  The Senate Judiciary Committee report accompanying S. 2896 made clear that in 1970, "[a]lthough the Secret Service [was] charged with protecting the person of the President . . . there [was], at the present time, no Federal statute which specifically authorize[d] *them to restrict entry to areas* where the President maintains temporary residences or offices." S. Rep. No. 91-1252, at 7 (emphasis added).

Similarly, during floor debate on the bill, senators explained that the key purpose of the legislation that would become § 1752 was to vest the Secret Service in particular with the authority to set restricted areas, cutting through the patchwork of existing State laws and local ordinances and *freeing the Secret Service from reliance on other government agencies*. Explaining the need for S. 2896, Senator McClellan stated:

> Protecting the President . . . is a formidable task for the Secret Service, which is charged with safeguarding the personal life of the President.  As difficult as this task is, however,

---

[1] Unlike the current § 1752, the 1970 statute did not criminalize mere entry into a restricted area but also required the disruption of government business or the obstruction of ingress or egress from the area. 84 Stat. 1891-92.

9

it is rendered even more difficult because the Secret Service's present powers are somewhat limited.  Title 18, section 3056 of the United States Code authorizes the Secret Service to protect the life of the President, but does little more.  *Consequently, the Service must rely upon a patchwork of State laws and local ordinances and local officers to clear areas for security perimeters, to provide for free ingress and egress when the President is visiting, and to protect the President's private homes from trespassers.*

116 Cong. Rec. 35,651 (1970) (statement of Sen. McClellan) (emphasis added).

Similarly, Senator Hruska explained that S. 2896 was needed to empower the Secret

Service to set restricted areas:

It would be unconscionable not to recognize the obvious fact that the President's vulnerability is maximized when he is traveling or residing temporarily in another section of the country.  It would be unconscionable not to recognize the obvious fact that *the Secret Service does not presently possess adequate Federal authority during these most vulnerable occasions.*  This body cannot ignore the obvious responsibility and duty it has at this moment to *create the needed* protection and *authority*.

116 Cong. Rec. 35,653 (statement of Sen. Hruska) (emphasis added).

Following enactment, Treasury promulgated regulations governing restricted areas under

§ 1752 in Chapter IV, part 408 of title 31 of the Code of Federal Regulations.  31 C.F.R. §§

408.1-408.3.  Section 408.1 stated that "the regulations governing access to such restricted areas

where the President or any other person protected by the Secret Service is or will be temporarily

visiting are promulgated pursuant to the authority vested in the Secretary of the Treasury by 18

U.S.C. § 1752." 31 C.F.R. § 408.1.  Part 408 provided many examples of the USSS, and no other

agency, exercising its power under § 1752 to set and define restricted areas:

- A temporary residence of President Reagan in California was defined by USSS using property law metes and bounds, § 408.2(a);

- For temporary residences of other Secret Service protectees, the Secret Service shall provide the description of restricted property, § 408.2(b);

10

- Concerning temporary offices of Secret Service protectees, the Secret Service shall provide to the pubic "verbal or written notice to prospective visitors at each protective site," § 408.2(c).

As for gaining lawful access to areas restricted under § 1752, Part 408 was clear that authorization must be obtained from the Secret Service.  § 408.3.  No other federal agency was mentioned in Part 408.

In 2006, the Secret Service Authorization and Technical Modification Act of 2005, Public Law 109-177, Title VI, Sec. 602, 120 Stat. 252 (Mar. 9, 2006), amended Section 1752 to eliminate references to regulations.  Subsection (d) of § 1752 as enacted in 1970, which authorized the Secretary of the Treasury to issue regulations, was struck.  References to residences as "designated" were also eliminated.[2]

In 2012, § 1752 was amended for a final time in the Federal Restricted Buildings and Grounds Improvement Act of 2011, Public Law 112-98, Sec. 2, 126 Stat. 263 (Mar. 8, 2012). The Act's legislative history shows that the only agency involved in enforcement of § 1752 is the USSS.   The only agency discussed by members of Congress in connection with § 1752 is the Secret Service.  157 Cong. Rec. H 1372-1373.   Members of Congress offered lectures on the history of the Secret Service.  *Id.*   The 2012 bill's author was Congressman Thomas Rooney of Florida.  Addressing the three restricted areas defined in § 1752(c)—the White House or Vice President's residence, a place where a Secret Service protectee is visiting, and special events of

---

[2] When it later repealed Part 408 of title 31 in April 2018, the Department of Homeland Security, of which the USSS is now part, explained that, in its current form, § 1752 itself defines the restricted areas which were previously described (in the same way) in the regulations, rendering the latter redundant and unnecessary.  Restricted Building or Grounds, 84 Fed. Reg. 18,939-18,940 (Apr. 30, 2018) (repealing 31 C.F.R. Part 408).

11

national significance—Congressman Rooney simply states the Secret Service is responsible for all three.  157 Cong. Rec. H 1372-1373 ("H.R. 347 ensures that the Secret Service has the ability to secure all necessary areas surrounding restricted buildings and grounds that house our leaders, their families, and foreign heads of state.").  Other representatives flatly state as obvious fact that the Secret Service restricts areas under the statute. For example, Congressman Hank Johnson of Georgia: "Current federal law prohibits individuals from entering or remaining in areas cordoned off as restricted because of protection being provided by the Secret Service." 157 Cong. Rec. H 1373.[3]

2.    *The current § 1752*

 In its current version, Section 1752 criminalizes "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1).  It also criminalizes,

> knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions. . .

§ 1752(a)(2).

> In turn, "restricted building or grounds" is statutorily defined.  In Section 1752,

> (1) the term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area—

> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;

---

[3] Although not relevant to this motion, the 2012 amendment clarified that § 1752 does not apply to people who have lawful authority to enter a restricted area; that the White House and Vice President's residence are restricted areas; and that the requisite *mens rea* is "knowingly," not "willfully."  157 Cong. Rec. H 1372-1373.

12

(B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance;

18 U.S.C. § 1752(c)(1).

The first two subparts of Section 1752(c) concern individuals protected by the USSS. In subpart (A) those individuals are the President (at the White House) and the Vice President (at his or her official residence). In subpart (B) the individual protected by the Secret Service is the President or "other person protected by the Secret Service."[4] Members of Congress are not protected by the Secret Service. 18 U.S.C. § 3056(a) (setting forth persons USSS is "authorized to protect"). Protection of Congressmen and Senators is the role of a separate federal agency, the United States Capitol Police. The U.S. Capitol Police do not provide for the protection of Secret Service protectees. *See* United States Capitol Police: Our Mission, available at: https://www.uscp.gov/; § 3056(a).

The final Section 1752(c) subpart concerns "a building or grounds so restricted in conjunction with an event designated as a special event of national significance." "Designation" in this subpart refers to a specific federal agency process. Major federal government or public events that are considered to be nationally significant may be designated by the President—or his representative, the Secretary of the Department of Homeland Security (DHS)—as National Special Security Events (NSSE). 18 U.S.C. § 3056(e)(1). Section 3056 designates the USSS as the lead federal agency responsible for coordinating, planning, exercising and implementing

---

[4] The term "other person protected by the Secret Service" is also statutorily defined. It means "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential Memorandum, when such person has not declined such protection." 18 U.S.C. § 1752(c)(2).

13

security for NSSEs.  *Id.*[5]  Accordingly, all three subparts of 18 U.S.C. § 1752(c)(1) concern

decision-making authority or action by the Secret Service.

Section 3056 sets forth the "Powers, authorities, and duties of United States Secret

Service." 18 U.S.C. § 3056.  Subsection (d) criminalizes interfering with agents "engaged in the

protective functions authorized by this section *or by section 1752 of this title. . .*" 18 U.S.C. §

3056(d) (emphasis added).  Subsection (e) states, "When directed *by the President*, the United

States Secret Service is authorized to participate, under *the direction of the Secretary of

Homeland Security*, in the planning, coordination, and implementation of security operations at

special events of national significance, *as determined by the President*." 18 U.S.C. § 3056(e)(1)

(emphasis added).  Finally, subsection (g) stresses the independence of the Secret Service's

mission.  "The United States Secret Service shall be maintained as a distinct entity within the

Department of Homeland Security and shall not be merged with any other Department function.

No personnel and operational elements of the United States Secret Service shall report to an

individual other than the Director of the United States Secret Service, who shall report directly to

the Secretary of Homeland Security without being required to report through any other official of

the Department." 18 U.S.C. § 3056(g).

3.     *History of the protection of the Executive Mansion*

The history of the protection of the Executive Mansion shows that it has generally, if not

exclusively, been the duty of a single law enforcement actor or entity, not of overlapping,

---

[5] The joint session of Congress that met at the U.S. Capitol on January 6, 2021, to open, certify, and count the November 2020 presidential election votes was not designated an NSSE. National Special Security Events: Fact Sheet, Jan. 11, 2021, p. 1, Congressional Research Service, available at: https://fas.org/sgp/crs/homesec/R43522.pdf.

14

independent agencies.  The following points are drawn from The White House Historical Association:[6]

**1812-1814**: President Madison garrisoned a company of 100 militia on the grounds of the President's House.

**1823**: Commissioner for Public Buildings, Joseph Elgar, recommended to President Monroe that plainclothes officers protect the White House.

**1830**: D.C. Marshal Tench Ringgold ordered guards posted at the White House gates to maintain order at the president's "public levees."

**1837-1841**: President Van Burden ordered the White House grounds to be patrolled by day guards and night watchmen.

**1842**: Establishment of the first permanent security force for the White House: an auxiliary guard that consisted of a captain and his three men, who looked out for suspicious-looking people.

**1853-1857**: Franklin Pierce becomes the first president to have a full-time bodyguard, Thomas O'Neil.

**1861**: Metropolitan Police guarded the Executive Mansion but Lincoln "did not want the house to take on the characteristics of an armed camp. Guards inside the Executive Mansion dressed in civilian clothes and concealed their firearms."

**1901**: After the assassination of President McKinley, Congress informally requested Secret Service protection for the president.

---

[6] Founded in 1961 by First Lady Jacqueline Kennedy, The White House Historical Association is a private nonprofit educational organization with a mission to enhance understanding of the Executive Mansion.  The White House Historical Association, About Us, May 10, 2021, available at: https://www.whitehousehistory.org/about.

15

**1901-1909**: During the Theodore Roosevelt administration, the Secret Service assumed full-time responsibility for protecting the president.

**1922**: At the request of President Warren G. Harding, a permanent White House Police Force was created.

**1930**: The White House Police Force placed under the administration of the Secret Service.

**1951**: Congress passed Public Law 82-79 which permanently authorized Secret Service protection of the president, his immediate family, the president-elect and the vice president.

**1962**: Congress passed Public Law 87-829, enlarging Secret Service coverage to include the vice president and the vice president-elect.

**1970**: Congress passed Public Law 91-217, renaming the White House Police Force the Executive Protective Service.

**1977**: The Executive Protective Service officially renamed the Secret Service Uniformed Division.

**2003**: Congress passed Public Law 107-296, under which the Secret Service was transferred from the Department of the Treasury to the Department of Homeland Security. Guarding the White House, The White House Historical Association, available at: https://www.whitehousehistory.org/press-room/press-timelines/guarding-the-white-house.

### D.     The First Superseding Indictment

The First Superseding Indictment (FSI) charges Nordean with the following offenses:

**Count One**: conspiring to (1) corruptly obstruct, influence, and impede an official proceeding, namely, "Congress's certification of the Electoral College vote" on January 6, in violation of 18 U.S.C. § 1512(c)(2), and to (2) obstruct, impede, and interfere with law

16

enforcement officers engaged in the lawful performance of official duties incident to and during the commission of a civil disorder, in violation of 18 U.S.C. § 231(a)(3).

 **Count Two**: corruptly obstructing, influencing, and impeding an official proceeding by entering the Capitol grounds or the Capitol building to "stop, delay and hinder Congress's certification of the Electoral College vote," in violation of § 1512(c)(2).

 **Count Three**: obstructing, impeding and interfering with law enforcement officers lawfully engaged in official duties incident to and during the commission of a civil disorder, in violation of § 231(a)(3).

 **Count Four**: injuring and committing depredation against property of the United States, causing "damage to the [Capitol] building in an amount more than $1,000."

 **Counts Five and Six**: unlawfully and knowingly entering "a restricted building and grounds, that is, any posted, cordoned off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting," in violation of § 1752(a)(1), and engaging in disorderly and disruptive conduct that in fact disrupted the orderly conduct of government business while in that restricted area, in violation of § 1752(a)(2).[7]

 The FSI does not allege in what sense Nordean's conduct was "corrupt" in the sense of § 1512(c)(2).  It alleges that the joint session of Congress on January 6 "formalized the result of the 2020 U.S. Presidential election." FSI, ¶ 3.  The FSI does not allege what acts Nordean committed to obstruct, impede or interfere with law enforcement officers on January 6.  It does not allege what federal property he depredated, how he depredated it, or what the damage

---

[7] All counts also charge Nordean with attempting to commit, and aiding and abetting the commission of, those offenses.

amounted to.  Nor does it allege how any of the defendants depredated federal property.  The FSI does not allege that the Secret Service set the "restricted area" it alleges Nordean entered or remained in.

## **ARGUMENT**

### I.      **Standard for a Rule 12(b) motion to dismiss a criminal information**

Rule 7 of the Federal Rules of Criminal Procedure provides that "the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1).  This rule performs three constitutionally required functions: (1) fulfilling the Sixth Amendment right to be informed of the nature and cause of the accusation; (2) preventing a person from being subject to double jeopardy, as required by the Fifth Amendment; and (3) protecting against prosecution for crimes based on evidence not presented to the grand jury, as required by the Fifth Amendment.  *See*, *e.g.*, *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).

Rule 12 provides that a defendant may move to dismiss the pleadings on the basis of a "defect in the indictment or information," including a "lack of specificity" and a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii),(v).  In the Supreme Court's last decision to address the standard, it held that an indictment must "fairly inform[] a defendant of the charge against which he must defend" and "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

### II.     **The Section 1512(c)(2) counts should be dismissed**

### A.      **The FSI fails to state § 1512(c)(2) offenses**

18

Counts One and Two of the FSI, charging Nordean with violating and conspiring to violate § 1512(c)(2), rest on the legal theory that he obstructed, impeded and interfered with the joint session of Congress on January 6, which the FSI characterizes as an "official proceeding" under that statute.  Because the joint session's Electoral College vote count did not exercise Congress's implied power of investigation in aid of legislation but instead "formalized the result of the 2020 U.S. Presidential election," FSI, ¶ 3, the joint session did not constitute an "official proceeding" as that term has been construed in every reported § 1512(c)(2) case on the subject.

It is settled law that proceedings held pursuant to Congress's legislative power under the Constitution exhibit legal characteristics different from those held under its implied and auxiliary power of investigation.  *See*, *e.g.*, *Trump v. Mazars United States*, 940 F.3d 710, 719-23 (D.C. Cir. 2019) (outlining history of Congress's power to investigate in aid of legislation).  In its earliest decision to draw a formal distinction between the legislative and investigative powers, the Supreme Court held that the House of Representatives had exceeded its investigatory authority by opening an inquiry into the bankruptcy proceedings of a firm in which the United States had invested money.  *Kilbourn v. Thompson*, 103 U.S. 168 (1881).  The Court held that Congress's sole route to a remedy in the bankruptcy proceeding was "by a resort to a court of justice" *id.* at 183, because the House's investigation "could result in no valid legislation." *Id.* at 195.  Later, in *McGrain v. Daugherty*, the Court found that Congress properly issued a subpoena for bank records relevant to the Senate's investigation into the Department of Justice because "the subject to be investigated was . . . [p]lainly [a] subject . . . on which legislation could be had." 273 U.S. 136, 176 (1927).

Cases involving defendants' attempts to interfere with Congress's auxiliary investigative power have always included actions that prevent, or are designed to prevent, Congress from

19

hearing evidence and making factual findings: refusals to answer congressional committees'
requests, *United States v. Rumley*, 345 U.S. 41, 42 (1953); refusals to testify at congressional
hearings, *Barenblatt v. United States*, 360 U.S. 109 (1959); and obstructing proceedings by
making false statements to a congressional inquiry, *United States v. Poindexter*, 951 F.2d 369
(D.C. Cir. 1991).  All of these cases have indisputably involved alleged inference with
Congress's exercise of its investigative power.

That Congress intended to limit congressional obstruction prosecutions to acts interfering
with its investigative power is seen in the text and structure of Chapter 73 of title 18, concerning
"Obstruction of Justice." As noted above, although the government charges Nordean with a
violation of § 1512(c)(2), it is § 1505 that criminalizes obstruction of congressional proceedings
"by threats or force." § 1505.  The government did not use that more appropriate statute here for
a simple reason.  Section 1505 explicitly requires that the obstructed proceeding be an "inquiry
or investigation . . . being had by either House, or any committee of either House or any joint
committee of the Congress." § 1505.  Here, the Congressional Record unequivocally shows the
joint session was not exercising Congress's investigatory power on January 6.  To the contrary, it
shows that members of the House and Senate requested but did not receive such power. 167
Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021).

Chapter 73's other sections betray a uniform, targeted focus on the obstruction of
proceedings related to the administration of justice. They exhibit that purpose either by focusing
on the investigation affected by the obstruction,[8] or on the actor whose key role in the

---

[8] § 1510 (criminalizing interference with criminal investigation through bribery), § 1516
(obstruction of federal audit), § 1517 (obstruction of examination of financial institution), § 1518
(obstruction of health care investigation), § 1519 (obstruction of federal investigation through
document destruction and falsification).

20

administration of justice has been affected by the obstruction.[9]  Similarly, Section 1515's

definition of "official proceeding," as that term is used in § 1512(c)(2), contains an array of

proceedings that involve the administration of justice:

(a) As used in sections 1512 and 1513 of this title and in this section—

(1) the term "official proceeding" means—

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

§ 1515(a)(1).

Attempts by the government to charge defendants with violations of § 1512(c) outside

this context of a judicial or quasi-judicial proceeding have uniformly failed.  In *United States v.*

*Ermoian*, 752 F.3d 1165 (9th Cir. 2013), for example, the government argued that an FBI

investigation qualified as an "official proceeding" under § 1515.  The Ninth Circuit rejected that

argument with the following reasoning:

"Proceeding" has been defined in various ways, ranging from the broad to the specific. But an account of both lay and legal dictionaries suggests that definitions of the term fall into one of two categories: "proceeding" may be used either in *a general sense* to mean "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior" *or more specifically as a legal term* to mean "[a] legal action or process; any act done by authority of a court of law; a step taken by either party in a legal case." *Proceeding*, Oxford English Dictionary, *available at* http://www.oed.com; *see*

---

[9]  §§ 1503, 1504 (jurors), § 1513 (witnesses, victims, informants), § 1521 (judges or law enforcement officers).

21

*also* Black's Law Dictionary 1241 (8th ed. 2004) (defining proceeding either narrowly as (1) "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment;" (2) "[a]ny procedural means for seeking redress from a tribunal or agency;" and (3) "[t]he business conducted by a court or other official body; a hearing" or more broadly as "an act or step that is part of a larger action."). As such, one of the word's definitions ("an action or series of actions") is broad enough to include a criminal investigation, as it encompasses a wide range of activities. *See Proceeding*, Oxford English Dictionary, *available at* http://www.oed.com. But the other ("any act done by authority of a court of law; a step taken by either party in a legal case") would exclude criminal investigations in the field, *as it associates the term with formal appearances before a tribunal*. *See id.*

752 F.3d at 1169-70 (emphasis added).

The court of appeals determined that the specifically legal definition of "proceeding"—associated with formal appearances before a tribunal—was the right one for several reasons. First, "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings." *Id.* at 1170.  Second, the word "proceeding" in § 1515(a)(1) is "surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'federal grand jury,' 'Congress,' and 'federal government agency.'" *Id.*  Third, legal dictionaries define "proceeding" as "'a word much used to express the *business done in courts*.'" *Id.* (quoting Black's Law Dictionary 1241 (8th ed. 2004)) (emphasis original).  Fourth, the "use of the preposition 'before' suggests an appearance in front of [a body] sitting as a tribunal." *Id.* at 1171. Fifth, "Section 1512 refers to 'prevent[ing] the attendance or testimony of any person in an official proceeding'; 'prevent[ing] the production of a record, document, or other object, in an official proceeding'; and 'be[ing] absent from an official proceeding to which that person has been summoned by legal process.' 18 U.S.C. § 1512(a)(1)(A)-(B), (a)(2)(B)(iv).  The use of the terms 'attendance,' 'testimony,' 'production,' and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id.* at 1172.

22

Every single one of those factors applies to the phrase "a proceeding before the Congress." § 1515(a)(1)(B).  As the FSI itself alleges, there was no "hearing *before* a tribunal" on January 6, but rather a "formaliz[ation of] the result of the 2020 U.S. Presidential election." FSI, ¶ 3.  The joint session on January 6 was not an exercise of Congress's investigatory power. 167 Cong. Rec. H79, 105-06, 108, 111 (2021); 167 Cong. Rec. S16, 25, 32 (2021).  The FSI does not allege Nordean's "obstruction" of Congress on January 6 in the sense meant by all § 1512 precedent: the prevention of a tribunal's ability to hear evidence and make factual findings.  With exquisite irony, the government contends that Nordean and the other defendants were very much mistaken in their belief that it would be appropriate for Congress to investigate voter fraud on January 6.  FSI, ¶ 28.

Counts One and Two suffer from additional legal flaws.  As shown above, the legislative history of § 1512(c)(2) overwhelmingly shows that, in the words of the former U.S. attorney general, Congress intended that the statute serve as a "loophole closer meant to address the fact that the existing section 1512(b) covers document destruction only where a defendant has induced another person to do it and does not address document destruction carried out by a defendant directly."  Barr Mem, p. 5.  The FSI does not allege that Nordean violated § 1512(c)(2) by virtue of directly destroying or altering documents destined for use in a proceeding to administer justice.  It does not even allege a proceeding to administer justice.  Instead, it appears to allege that he violated the statute by virtue of his mere presence at the Capitol.  That allegation does not state an offense under § 1512(c)(2).  It is not even close.

For all of these reasons, Counts One and Two fail to state that Nordean committed offenses under § 1512(c)(2).  Therefore, they should be dismissed with prejudice.

23

**B.    If the government's interpretation of § 1512(c)(2) is applied, it is unconstitutionally vague as to Nordean**

A criminal statute is unconstitutionally vague if it "'fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)); *see also Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.2d 1, 23 (D.C. Cir. 2009) (noting that criminal statute must "'provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal'") (quoting *Buckley v. Valeo*, 424 U.S. 1, 77 (1976)).  "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 67 (1997).  "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes.  And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).  In addition, if the law at issue "interferes with the right of free speech or of association, a more stringent vagueness test [] appl[ies]." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 500 (1982) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)).

Vagueness challenges are either facial or as-applied.  "'[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded by the complaint.'" *Edwards v. District of Columbia*, 755 F.3d 886, 1001 (D.C. Cir. 2014) (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010)).

If the government's novel interpretation of § 1512(c)(2) is applied here, it is unconstitutionally vague for the following reasons.

24

1.     *§ 1512(c)(2) does not provide fair notice that "official proceedings" includes proceedings unrelated to the administration of justice*

As indicated above, § 1512(c)(2) has never been used to prosecute a defendant for the obstruction of an "official proceeding" unrelated to the administration of justice, i.e., a proceeding not charged with hearing evidence and making factual findings.  Moreover, there is no notice, much less fair notice, in § 1512(c)(2) or in any statute in Chapter 73 that a person may be held federally liable for interference with a proceeding that does not resemble a legal tribunal.  Accordingly, the government's interpretation of § 1512(c)(2) here is void-for-vagueness as applied to Nordean.

In this case, the void-for-vagueness doctrine's function of guarding against arbitrary or discriminatory law enforcement is worth elaborating.  As Justice Gorsuch explained in a *Dimaya* concurrence,

> Vague laws invite arbitrary power.  Before the Revolution, the crime of treason in English law was so capaciously construed that the mere expression of disfavored opinions could invite transportation or death.  The founders cited the crown's abuse of 'pretended' crimes . . .as one of their reasons for revolution. . . Today's vague laws may not be as invidious, but they can invite the exercise of arbitrary power all the same—by leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up.

138 S. Ct. at 1223-24.

Justice Gorsuch gave some early, original examples of statutes that failed to provide fair notice and thus led to arbitrary enforcement:

> Blackstone illustrated the point with a case involving a statute that made "stealing sheep, or other cattle" a felony. 1 Blackstone 88 (emphasis deleted). Because the term "cattle" embraced a good deal more then than it does now (including wild animals, no less), the court held the statute failed to provide adequate notice about what it did and did not cover—and so the court treated the term "cattle" as a nullity. *Ibid.* All of which, Blackstone added, had the salutary effect of inducing the legislature to reenter the field and make itself clear by passing a new law extending the statute to "bulls, cows, oxen," and more "by name." . . .

This tradition of courts refusing to apply vague statutes finds parallels in early American practice as well. In *The Enterprise*, 8 F. Cas. 732, F. Cas. No. 4499 (No. 4,499) (CC NY 1810), for example, Justice Livingston found that a statute setting the circumstances in which a ship may enter a port during an embargo was too vague to be applied, concluding that "the court had better pass" the statutory terms by "as unintelligible and useless" rather than "put on them, at great uncertainty, a very harsh signification, and one which the legislature may never have designed." *Id.,* at 735. In *United States* v. *Sharp*, 27 F. Cas. 1041, F. Cas. No. 16264 (No. 16,264) (CC Pa. 1815), Justice Washington confronted a statute which prohibited seamen from making a "revolt." *Id.*, at 1043. But he was unable to determine the meaning of this provision "by any authority . . . either in the common, admiralty, or civil law." *Ibid*. As a result, he declined to "recommend to the jury, to find the prisoners guilty of making, or endeavouring to make a revolt, however strong the evidence may be." *Ibid.*

Nor was the concern with vague laws confined to the most serious offenses like capital crimes. Courts refused to apply vague laws in criminal cases involving relatively modest penalties. *See*, *e.g., McJunkins* v. *State*, 10 Ind. 140, 145 (1858).

138 S. Ct. at 1226.

The concern about vagueness-enabled arbitrary enforcement is manifested here. It takes two forms, which might be called specific and general arbitrariness. At a general level, the government's enforcement of § 1512(c)(2) against Nordean is arbitrary because, prior to January 6, it had never prosecuted a violation of that statute by alleging obstruction of a congressional proceeding that was not held pursuant to Congress's investigatory power. Accordingly, the government's election to put a new interpretation on the statute for a select group of related cases raises questions about discriminatory law enforcement. Those questions are only underlined by the patently political nature of the circumstances of the offense, as well as the criminalization of Nordean's First Amendment rights to political speech, assembly, and to petition the government for a redress of grievances. U.S. Const. amend I; *Hoffman Estates*, 455 U.S. at 500 (stricter scrutiny of vague statutes in the context of activities protected by the First Amendment).

Perhaps more serious is the specific arbitrariness here. The government has charged nearly 500 people with federal crimes related to the January 6 protests. Many, if not most, of

26

those defendants allegedly entered the Capitol Building.  Yet many, if not most, of those people

have not been charged under § 1512(c)(2), even though the government alleges all the

defendants had the same object: to stop the Electoral College vote count.  The explanation for

why the government chose to prosecute Nordean under § 1512(c)(2), and not others, is not hard

to find.  The government targets him for political reasons.  It is stated on the face of the FSI.

Nordean is a "leader" of the Proud Boys, a "pro-Western fraternal organization for men whose

refuse to apologize for creating the modern world; aka Western Chauvinists." FSI, ¶ 5.

Of course, Nordean's affiliation with a political group has nothing to do with § 1512(c)(2).  But

the government's naked reliance on Nordean's political associations shows the danger of

arbitrariness inherent in the vague and elastic interpretation of § 1512(c)(2) it offers for this

specific set of defendants alone.

Insofar as they both allege that Nordean obstructed a type of "official proceeding"

nowhere identified in §§ 1512(c)(2) and 1515, Counts One and Two must be dismissed under the

Due Process Clause of the Fifth Amendment.

### 2. *The government's interpretation of "corruptly" fails this Circuit's* Poindexter *test*

The FSI contends that Nordean's alleged obstruction of Congress on January 6 was

aimed at stopping or delaying the Electoral College vote count.  However, the FSI does not

allege how Nordean's purported aim, a sincerely held political belief, satisfies § 1512(c)(2)'s

"corruptly" requirement.  The FSI alleges that a desire to protest in support of a mistakenly held

political belief is "corrupt" under that statute.  That construction is void-for-vagueness as §

1512(c)(2) provides no notice of that interpretation, which would also invite arbitrary and

discriminatory law enforcement.

In *United States v. Poindexter*, a former national security advisor was charged under § 1505 for obstructing a congressional investigation into the Iran/Contra Affair. 951 F.2d 369, 371 (D.C. Cir. 1991). In that case, the defendant's obstruction consisted of lying to or misleading Members of the House and Senate Intelligence Committees about U.S. shipments of missiles to Iran. *Id.* at 372. The relevant passage of § 1505 provided "Whoever corruptly . . . . influences, obstructs, or impedes or endeavors to influence, obstruct or impede . . .the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House . . .shall be [punished]. . ." The court held that Poindexter's lying to Congress, while a violation of § 1001, was not an obstruction offense under § 1505.

The D.C. Circuit first determined that two forms of vagueness inhered in the adverb "corruptly." First, the court observed that the verb "corrupt" "may be used transitively ('A corrupts B,' i.e., 'A causes B to act corruptly') or intransitively ('A corrupts,' i.e., 'A becomes corrupt, depraved, impure, etc.')." 951 F.2d at 379. It also found that § 1505's adverb "corruptly" could take on either a transitive or intransitive meaning. The court decided that § 1505 "favor[ed] the transitive reading." *Id.* Second, the court found that "corruptly" was also vague in the sense that "[r]eading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from acting 'immorally' or 'improperly' oneself." *Id.*

Accordingly, to avoid unconstitutional vagueness the court construed § 1505 "to include only 'corrupting' another person by influencing him to violate his legal duty." *Id.* The court further found that even that definition of "corruptly" may suffer from unconstitutional vagueness where the defendant's purpose is not "to obtain an improper advantage for himself or someone

28

else. . ." *Id.* at 385.  The court gave this example of activity the adverb "corruptly" may not cover

without vagueness problems:

> [S]omeone who influences another to violate his legal duty [but] to cause the enactment
> of legislation that would afford no particular benefit to him or anyone connected to him.
> Or, as the Chief Judge instances at the oral argument of this case, there "would be some
> purposes that would be corrupt and some that wouldn't be . . . Suppose the [defendant
> acted] to protect the historical reputation of some historical figure that has been dead for
> 20 years and he decides that he doesn't want to mar that person's reputation."

*Poindexter*, 951 F.2d at 386.

As indicated above, following *Poindexter* Congress amended § 1515 to clarify that "As

used *in Section 1505*, the term 'corruptly' means acting with an improper purpose, personally or

by influencing another, including making a false or misleading statement, or withholding,

concealing, altering or destroying a document or other information." § 1515(b) (emphasis

added).  However, Congress did not amend § 1515 to define "corruptly" as used in § 1512.  In

addition, the phrase "improper purpose" was held unconstitutionally vague in *Poindexter*.  951

F.2d at 379 ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more

specific—indeed they may be less specific—than 'corrupt.'").

Here, the FSI's construction on § 1512(c)'s adverb "corruptly" fails this Circuit's

*Poindexter* test.  First, the FSI does not allege that Nordean obstructed the January 6 joint session

"to obtain an improper advantage for himself or someone else. . ." *Poindexter*, 951 F.2d at 386.

Instead, it contends he allegedly obstructed the session in support of the sincerely held political

belief that the 2020 presidential election was not fairly decided.  Such an interpretation of §

1512(c) is unconstitutionally vague because it leaves to judges and prosecutors to decide which

sincerely held political beliefs are to be criminalized on an ad hoc basis.  *Dimaya*, 138 S. Ct. at

1223-24.  Second, the FSI neither alleges that Nordean influenced another person to obstruct the

January 6 proceeding in violation of their legal duty, nor that Nordean himself violated any legal

29

duty by virtue of his mere presence that day.  Accordingly, Counts One and Two should be dismissed as they rest on an unconstitutionally vague interpretation of "corruptly."

### C.     The rule of lenity dictates that any ambiguities in § 1512(c)(2) be resolved in Nordean's favor

Even if § 1512(c)(2) is not unconstitutionally vague as applied to Nordean, any ambiguities in the statute should be resolved in his favor under the rule of lenity.  Under that principle, "where text, structure, and history fail to establish that the government's position is unambiguously correct," courts must "apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994).  "When interpreting a criminal statute, we do not play the part of a mindreader." *United States v. Santos*, 553 U.S. 507, 515 (2008) (Scalia, J.).  "In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent. 'Probability is not a guide which a court, in construing a penal statute, can safely take.'" *Id.* (quoting *United States v. Wiltberger*, 18 U.S. 76 (1820)).

Here, even if the Court decides that the government's interpretation of § 1512(c)(2) is correct—i.e., that "official proceedings" of Congress include those which are not held pursuant to its investigatory power, that § 1512(c)(2) applies outside the context of document destruction, and that "corruptly" includes a disinterested but mistaken purpose—it is plainly not unambiguously so.   That is shown by the lack of any case law supporting the government's interpretations, by the legislative history which tells against those interpretations, and by the text and structure not just of § 1512(c) but of all sections of Chapter 73.

Because the government's interpretations are not unambiguously correct, the Court is required to resolve any ambiguities in Nordean's favor by dismissing Counts One and Two. *Granderson*, 511 U.S. at 54; *Santos*, 553 U.S. at 515.

30

**D.**    **The novel construction principle of the Due Process Clause requires rejection of the government's interpretation, which would operate as an *ex post facto* law**

Because no court has construed § 1512(c)(2) as the government does in this case, to apply that novel construction against Nordean in this case would violate the novel construction principle of the Due Process Clause of the Fifth Amendment.

The Supreme Court has held that the novel construction principle is similar to an *ex post facto* law which has been described as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). "[A]n unforeseen judicial enlargement of a criminal statute, applied retroactively, operates precisely as an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids." *Id.* If a "legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Id.*

*Bouie* also concerned a trespass case that gave every indication of being politically motivated. The 1964 case involved a combination drugstore and restaurant in South Carolina. The restaurant would not serve black Americans. Two black college students took seats in the restaurant. After they entered, an employee hung up a "no trespass" sign. The store manager called the police, who asked the students to leave. When they refused, they were arrested and charged with trespass. The students were tried and convicted, with the State Supreme Court upholding the trespass convictions. The Supreme Court reversed, based on the novel construction principle of the Due Process Clause. It reasoned that the South Carolina Supreme Court's construction of the trespass statute was effectively an *ex post facto* law. By its terms, the state statute merely prohibited "*entry* upon the lands of another . . .after notice from the owner . .

31

prohibiting such entry. . ." 378 U.S. at 355 (emphasis added). However, there "was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave. Petitioners did not violate the statute as it was written; they received no notice before entering either the drugstore or the restaurant department." *Id.* Finally, "the interpretation given the statute by the South Carolina Supreme Court . . . ha[d] not the slightest support in prior South Carolina decisions." *Id*. at 356.

So too here. Nordean did not "violate the statute as it was written." *Bouie*, 378 U.S. at 355. Section 1512 prohibits obstruction of "official proceedings" which all courts have construed to mean proceedings before a tribunal that mimic a court of law. There is "nothing in the statute to indicate that it also prohibited the different act," *Bouie*, 378 U.S. at 355, of interfering with proceedings that do not hear evidence or find facts. "The interpretation given the statute by the [government] . . . has not the slightest support in prior [§ 1512] decisions." *Id.*

Accordingly, the novel construction principle requires rejection of the government's interpretation, which would operate as an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.

### E.    The FSI's application of § 1512(c)(2) is invalid under the First Amendment, as applied to Nordean

As the FSI itself acknowledges, Nordean's activities on January 6 included political expression, assembly and petitioning of the government for a redress of grievances. U.S. Const. amend. I. Insofar as the § 1512(c)(2) charges characterize protest per se as obstruction of congressional proceedings, they are unconstitutional applications of the statute as applied to Nordean.

To prevail on an as-applied challenge under the First Amendment, Nordean must merely show that § 1512(c)(2) is being unconstitutionally applied as to the specific protected activity for

32

which he is charged.  *Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014).  The

first question is whether Nordean's alleged conduct was "expressive." *Texas v. Johnson*, 491

U.S. 397, 404 (1989).  "[T]o bring the First Amendment into play," Nordean must merely show

"[a]n intent to convey a particularized message was present" and "the likelihood . . . that the

message would be understood by those who viewed it." *Id.*  Next, the court assesses whether the

challenged statute is related in any way to the suppression of free expression.  If so, and if the

law is content-neutral, the court must subject the statute to intermediate scrutiny.  *Edwards*, 755

F.3d at 1002.  Under that standard, the statute is constitutionally applied only if (1) "it is within

the constitutional power of the government"; (2) "it furthers an important or substantial

governmental interest"; (3) "the governmental interest is unrelated to the suppression of free

expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no

greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S.

367, 377 (1968).

 Here, there is no argument that the conduct charged under § 1512(c)(2) was not protected

expression.  The entire thrust of the conspiracy charge and underlying § 1512(c)(2) offense is

that Nordean and others protested at the Capitol concerning the results of the 2020 presential

election.  FSI, ¶¶ 27, 28.   That is the very core of the First Amendment.  *See, e.g., Johnson*, 491

U.S. at 404 (flag burning expressive); *Tinker v. Des Moines Ind. Comm. School. Dist.*, 393 U.S.

503, 505 (1969) (students wearing black armbands to protest war is expressive); *Brown v.

Louisiana*, 383 U.S. 131, 141-142 (1966) (sit-in to protest segregation expressive); *United States

v. Grace*, 461 U.S. 171 (1983) (picketing is expressive).  *See also Snyder v. Phelps*, 562 U.S.

443, 444 (2011) ("A statement's arguably inappropriate or controversial character . . . is

irrelevant to the question [of] whether it deals with a matter of public concern.").

33

Similarly, there is no argument that § 1512(c)(2)'s application here is unrelated to the suppression of expression, assembly and the petitioning of the government for a redress of grievances.  Again, the thrust of the obstruction claim is that Nordean and the other defendants intended to affect the actions of Congress: otherwise known as political demonstration and protest.  Critically, the FSI's obstruction claim is not *limited* to any alleged intent to *enter* the Capitol and to affect congressional action *by force or threats*.  FSI, ¶ 27.  After all, the government could have attempted to charge such an offense under § 1505, prohibiting obstruction of Congress's investigatory powers by force or threats.  The FSI does not charge that offense and its obstruction theory encompasses the very act of protesting to affect congressional action itself.  Accordingly, § 1512(c)(2) is here "related to the suppression of free expression." *See*, *e.g.*, *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016) (restricted area statute "related to the suppression of free expression" where charged defendant jumped White House fence to protest executive action).

Accordingly, under an intermediate scrutiny test, the Court applies the *O'Brien* factors to determine the constitutionality of § 1512(c)(2)'s application here.  The following two factors show that the statute's application here is patently unconstitutional: (1) the government's interest *is* related to the suppression of free expression; and (2) the incidental restriction on First Amendment freedoms *is* greater than is essential to the furtherance of that interest.  *O'Brien*, 391 U.S. at 377.  As explained, that the § 1512(c)(2) theory in this case is not limited to an attempt to influence Congress by threats or force can only mean that it covers acts that influence Congress through protest and demonstration.  Moreover, nothing in the FSI cabins Nordean's "obstruction" to the act of entry into the Capitol Building.  If his "obstruction" encompasses protest outside the Capitol Building, the government is criminalizing not just his expression, but

34

the expression of every group that politically demonstrates outside that building with a view to affecting, or "obstructing," legislation.  Second, that restriction is far greater than is "essential" to the furtherance of the government's legitimate interest in preventing obstruction of official proceedings of Congress.  For the government could adequately protect that interest merely by preventing obstruction of Congress "by threats or force"—*i.e.*, using the proper statute for the crime it is failing to allege, 18 U.S.C. § 1505—or at the very least by preventing obstruction of Congress through unlawful entry into the building.  *City of Houston v. Hill*, 482 U.S. 451, 459 (1987) ("[W]e have repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them.").  Accordingly, the FSI's § 1512(c)(2) charges against Nordean unconstitutionally infringe on his First Amendment rights and should be dismissed.

III.    **The Section 231(a)(2) counts should be dismissed**

    A.    **Section 231(a)(3) exceeds Congress's Commerce Clause authority**

The Commerce Clause prohibits the criminalization of noneconomic intrastate activity unless "the regulated activity 'substantially affects' interstate commerce." *United States v. Lopez*, 514 U.S. 549, 559 (1995).  Under that test, the Supreme Court has invalidated federal criminal laws prohibiting gun possession in a school zone and domestic violence in the Violence against Women Act.  *Lopez*, 514 U.S. at 552-64; *United States v. Morrison*, 529 U.S. 598, 607-19 (2000).  Following *Lopez* and *Morrison*, § 231(a)(3) constitutes an unconstitutional exercise of Congress's power, intruding into the State's constitutionally protected police power, because it regulates strictly local conduct and demonstrates no substantial connection to interstate commerce.

35

1.      *The police power and the Commerce Clause's prohibition on Congress's regulation of intrastate activity that does not "substantially affect" interstate commerce*

"Under our federal system, the States possess primary authority for defining and enforcing the criminal law." *Lopez*, 514 U.S. at 561 n. 3 (internal quotation marks omitted). Accordingly, the Supreme Court in *Lopez* concluded that, in the criminal context, Congress's "power . . . [t]o regulate Commerce with foreign Nations, and among the several States[,]" under Article I, § 8, cl.3, is inherently limited by the Tenth Amendment's reservation of police power to the States. The limited federal commerce power permits Congress to regulate only three categories of activity:(1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce;" and (3) "those activities that *substantially* affect interstate commerce." *Id.* (emphasis added).

The Supreme Court developed the third *Lopez* category in order to define "the outer limits" on Congress's authority to enact legislation "regulating intrastate economic activity" that "substantially affect[s] interstate commerce." *Lopez*, 514 U.S. at 559; *see also United States v. Robertson*, 514 U.S. 669, 671 (1995) ("The 'affecting commerce' test was developed in our jurisprudence to define the extent of Congress' power over purely *intra*state commercial activities that nonetheless have substantial *inter*state effects") (emphasis in original). The regulated activity must "substantially affect" interstate commerce because "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Morrison*, 529 U.S. at 618.

In *Morrison*, the Supreme Court established a "controlling four-factor test for determining whether a regulated activity 'substantially affects' interstate commerce." *United*

36

*States v. Adams*, 343 F.3d 1024, 1028 (9th Cir. 2003) (quoting *United States v. McCoy*, 323 F.3d

1114, 1119 (9th Cir. 2003)). Those factors are:

> (1) whether the regulated activity is commercial/economic in nature; (2) whether
> an express jurisdictional element is provided in the statute to limit its reach; (3)
> whether Congress made express findings about the effects of the proscribed activity
> on interstate commerce; and (4) whether the link between the prohibited activity
> and the effect on interstate commerce is attenuated.

*Adams*, 343 F.3d at 1028 (citing *Morrison*, 529 U.S. at 610-612). "The 'most important' factors

for a court to consider are the first and the fourth." *Id.*

2.     *Section 231(a)(3) does not substantially affect interstate commerce*

Section 231(a)(3) criminalizes "any act" that obstructs, impedes, or interferes with a local

police officer performing lawful duties "incident to and during the commission of a civil disorder

which *in any way or degree* obstructs, delays, or adversely affects commerce of the movement of

any article or commodity in commerce. . ." (emphasis added).  Since § 231(a)(3) is not directed

at the channels or instrumentalities of commerce, only the third *Lopez* factor is at issue.

However, under the four controlling factors described in *Adams* and *Morrison*, § 231(a)(3) does

not regulate activity that substantially affects interstate commerce. Accordingly, the statute is

unconstitutional.

a)     Section 231(a)(3) does not regulate economic activity

As in *Lopez* and *Morrison*, the act of interfering with the duties of a law enforcement

officer in a civil disorder is not economic in nature. It therefore fails the first *Morrison* factor.

In *Lopez*, the Court found the activity of gun possession under the Gun-Free School

Zones Act has "nothing to do with 'commerce' or any sort of economic enterprise, however

broadly one might define those terms." *Lopez*, 514 U.S. at 567.  Further, the Gun-Free School

37

Zones Act was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* Similarly, in *Morrison*, the Supreme Court concluded that the civil remedy for gender-motivated violence under Violence Against Women Act was a regulation of noneconomic activity that exceeded Congress's commerce authority. 529 U.S. at 617. Even though the VAWA was enacted with the support of significant congressional findings regarding the "nationwide, aggregated impact" of gender-motivated violence on interstate commerce, the Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617. The "noneconomic, criminal nature of the conduct at issue was central" to the *Lopez* and *Morrison* rulings. *Morrison*, 529 U.S. at 610.

In contrast to *Lopez* and *Morrison*, in *Gonzales v. Raich*, the Supreme Court upheld a federal law prohibiting the intrastate cultivation of marijuana for personal use because the law formed an "essential part" of the Controlled Substances Act (CSA), which encompassed "a larger regulation of economic activity." 545 U.S. 1, 24-25 (2005) (quoting *Lopez*, 514 U.S. at 561). The majority observed that the "primary purpose" of the CSA is "to control the supply and demand of controlled substances in both lawful and unlawful drug markets." *Raich*, 545 U.S. at 19. Understood within that larger framework, the challenged provision was a regulation on "economic activity" because "failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA." *Id.* at 22.

As with the statutes under consideration in *Lopez* and *Morrison*, the activity regulated by § 231(a)(3) is noneconomic for purposes of the first *Morrison* factor. The gravamen of § 231(a)(3) criminalizes obstruction, interference, and impeding state officers, with no direct

38

connection to commerce or economic activity. And, unlike in *Raich*, § 231(a)(3) is not part of

any larger body of economic regulation; it involves "a brief, single-subject statute[,]" which "by

its terms has nothing to do with commerce or any sort of economic enterprise, however broadly

one might define those terms." *Raich*, 545 U.S. at 23-24 (distinguishing *Lopez*, 514 U.S. at 561)

(internal quotation marks omitted); *accord Morrison*, 529 U.S. at 613 ("Gender-motivated

crimes of violence are not, in any sense of the phrase, economic activity").

> b)   The jurisdictional element of § 231(a)(3) does not limit its reach to
> activities that substantially affect interstate commerce

Although § 231(a)(3) contains a commercial nexus element, the element is faulty because

it does not limit the reach of the statute to activities that "substantially affect" interstate

commerce.  There are several problems under the second *Morrison* factor on limitations to the

statute's reach.

First, the commercial nexus element is not connected to the "any act" element. Section

231(a)(3) makes it a crime to:

> commit any act to obstruct, impede, or interfere with any fireman or law
> enforcement officer lawfully engaged in the lawful performance of his official
> duties incident to and during the commission of a civil disorder *which in any way
> or degree obstructs, delays, or adversely affects commerce or the movement of any
> article or commodity in commerce*.

(Emphasis added). The commercial nexus clause unambiguously modifies the term "civil

disorder," not "any act." Thus, a charge under § 231(a)(3) need not be supported by evidence

that a defendant's *act* impacted interstate commerce. Instead, it requires evidence only that the

act interfered with an officer engaged in the performance of duties "incident to and during the

commission of a civil disorder," and that the civil disorder, not the individual's act, minimally

affected commerce.

The statutory "incident to and during" connector further diminishes any required link to

39

interstate commerce. Although the statute does not make clear whether the connector applies to the act itself or to the lawful performance of official duties, either construction places the interstate commerce element another step removed from the regulated activity. The term "incident" as an adjective connotes a degree of separation, in that one occurrence of lesser importance is "[d]ependent on, subordinate to, arising out of, or otherwise connected with (something else, usu. of greater importance)." INCIDENT, BLACK'S LAW DICTIONARY (11th ed. 2019). Activity with only an incidental connection to an event that affects commerce is not a permissible subject of federal criminal law.

Finally, the commercial nexus element of § 231(a)(3) does not require a *substantial* effect on interstate commerce, but instead requires a civil disorder that affects commerce "in any way or degree." The terms are virtual opposites. Substantial means "[c]onsiderable in extent, amount, or value," whereas the word "any" is expansive and unqualified. *Compare* SUBSTANTIAL, BLACK'S LAW DICTIONARY (11th ed. 2019) *with* ANY, BLACK'S LAW DICTIONARY (11th ed. 2019); *see St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 550 (1978) (statutory language that covered "'any' act" was "broad and unqualified"). An "any way or degree" impact on commerce is not a "substantial" impact.  The second *Morrison* factor is not satisfied.

c)      Congress did not find that § 231(a)(3)'s activities substantially affect interstate commerce

Formal congressional findings are neither required nor sufficient to establish a valid exercise of federal commerce authority. *Lopez*, 514 U.S. at 562-63; *Morrison*, 529 U.S. at 614. Congressional findings may demonstrate that an activity "substantially affects interstate commerce, even though no such substantial effect [is] visible to the naked eye." *Lopez*, 514 U.S.

40

at 563. But "the existence of congressional findings is not sufficient" when Congress merely offers a "but-for causal chain from the initial occurrence of violent crime . . . to every attenuated effect upon interstate commerce." *Morrison*, 529 U.S. at 615.

Here, Congress made no findings to establish that the activity regulated by § 231(a)(3) substantially affects interstate commerce beyond any impact "visible to the naked eye." The only potentially relevant findings relate to the impact of "riots" on interstate commerce.  114 Cong. Rec. 1294-95 (Jan. 29, 1968). Upon first proposing the Civil Obedience Act, Senator Long stated certain facts, without citation, concerning what he called the "wholesale Negro violence," which he said "was an almost nightly affair in the streets of our cities" between 1965 and 1967.  114 Cong. Rec. 1295. For example, he said:

> In [1967], nearly 100 people were killed. Nearly 2,000 were injured. Police reported 4,289 cases of arson alone. Over 16,000 rioters were arrested. The estimated property loss was in the neighborhood of $160 million. The estimated economic loss to riot-torn businesses was $504 million.

*Id.*  Senator Long asserted that these "riots" impeded interstate commerce:

> Any riot, as we know and experience them today, generally does impede the flow of goods in interstate commerce. It stops the movement of people in interstate commerce. It interferes with the goods that were intended to move in interstate commerce.

114 Cong. Rec. 5535-36 (Mar. 6, 1968).

But the statutory definition of "civil disorder" involving "acts of violence by assemblages of three or more persons" (18 U.S.C. § 232(1)) has no connection to riots on the scale described by Senator Long.  Moreover, § 231(a)(3) does not target the destructive behavior attendant to a riot; the criminalized conduct is interference with an official's duties "incident to and during" a civil disorder. The congressional record contains no findings that individual interference with

41

police and firefighters as defined under § 231(a)(3) substantially affects interstate commerce. The third *Morrison* factor is not satisfied.

          d)       The relationship between § 231(a)(3)'s activities and any effect on interstate commerce is too attenuated

Any causal chain that could link the activity proscribed under § 231(a)(3) to any substantial impact on interstate commerce is too far attenuated to place the activity within reach of Congress' commerce authority. The offense conduct of § 231(a)(3) need not affect commerce directly. It suffices to establish that a person's acts interfered with an official's duties performed "incident to and during" any "civil disorder" that, in turn, affects commerce. Such an "incidental effect on interstate commerce . . . does not warrant federal intervention." *Musick v. Burke*, 913 F.2d 1390, 1397 (9th Cir. 1990). The noneconomic conduct penalized by § 231 by definition is too attenuated to satisfy the "substantially affects" test for commercial impact.

Even if interference with police § 231(a)(3) could affect commerce in the aggregate, when considered on a nationwide scale, that would be insufficient to place those acts within the federal commerce authority. In *Morrison*, the Supreme Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." 529 U.S. at 617. Here, the paucity of cases prosecuted under § 231(a)(3) further negates any claim of an aggregate effect. In sum, the four *Morrison* factors demonstrate that § 231(a)(3) regulates purely local, noneconomic activities that do not "substantially affect" interstate commerce. As a result, § 231(a)(3) falls outside of Congress's power to regulate under the Commerce Clause.

    **B.**       **Section 231(a)(3) is unconstitutionally vague**

          1.       *Section 231(a)(3)'s vague standards fail to provide fair notice and risk arbitrary enforcement*

42

Section 231(a)(3) fails the core tests for satisfying the certainty requirements of the Due Process Clause. First, it is replete with vague and imprecise terms that fail to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited:

- **"any act"** can include pure speech, expressive conduct, minimal jostling, and grievous assaults;

- **"to obstruct, impede, or interfere"** leaves uncertainty as to whether it defines a culpable mens rea or a required result and, additionally, offers no objective limit requiring, for example, *forcible* interference or assault, *cf.* 18 U.S.C. § 111(a);

- **"incident to and during the commission of a civil disorder"** leaves the degree of connection with a "civil disorder" unclear and fails to state whether the defendant must have participated in the civil disorder;

- **"in any way obstructs, delays, or adversely affects commerce"** provides no limiting concept for what it means to obstruct, delay, or adversely affect commerce.

In addition, Section 231(a)(3) contains no express mens rea at all, leaving police, prosecutors, and judges to decide whether the statute requires knowledge (and if so, of what) or specific intent (and if so, to do what) or neither. A statute's constitutionality under the vagueness doctrine is "closely related" to whether it contains an express mens rea requirement. *See Colautti v. Franklin*, 439 U.S. 379, 395 (1979) ("Because of the absence of a scienter requirement in the provision . . . the statute is little more than 'a trap for those who act in good faith.'") (quoting *United States v. Ragen*, 314 U.S. 513, 524 (1942)).

The statute is prone to vagueness challenge because its terms are dependent on the subjective reaction of others, rather than the acts and intent of the defendant. In *United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921), for example, the Court held that a prohibition on "unjust or unreasonable rate[s] or charge[s]" was unconstitutionally vague because assessment of whether charges were "unjust or unreasonable" was left entirely to the "estimation of the court and jury." *Id.* at 89. The Court likewise struck down an ordinance that criminalized behaving in a

43

manner "annoying to persons passing by." *Coates v. City of Cincinnati*, 402 U.S. 611, 612

(1971). Because "[c]onduct that annoys some people does not annoy others," the ordinance did

not "specif[y] any "standard of conduct . . . at all." *Id*. at 614. And in *City of Chicago v. Morales*,

527 U.S. 41 (1999), the Court invalidated a statute that prohibited loitering "with no apparent

purpose," because it improperly left "'it to the courts to step inside and say who could be

rightfully detained, and who should be set at large.'" *Id.* at 60 (quoting *United States v. Reese*, 92

U.S. 214, 221 (1876)).

Here, § 231(a)(3) triggers criminal liability based on the reactions of others in two ways.

First, it asks whether the defendant's conduct interferes with or impedes others. A gesture, sign,

or other act that distracts one officer could have no impact at all another officer. Second, the

statute asks whether the defendant's act is "incident to and during" a civil disorder in which the

defendant may have no involvement at all. These subjective standards leave it to the discretion of

police and prosecutors to determine whether a particular individual's conduct runs afoul of the

law.

By enacting subsection 3 of the Civil Obedience Act, Congress created "a criminal

prohibition of alarming breadth." *United States v. Stevens*, 559 U.S. 460, 474 (2010). The "very

existence" of statutes like § 231(a)(3) is pernicious because it "may cause others not before the

court to refrain from constitutionally protected speech or expression." *Members of City Council

of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984). The mere "threat of enforcement of

an overbroad law may deter or 'chill' constitutionally protected speech," "especially when the

overbroad statute imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

As with the law at issue in *McCoy v. City of Columbia*, which made it unlawful "for any

person to interfere with or molest a police officer," § 231(a)(3)'s vagueness chills protected

44

speech. *McCoy*, 929 F. Supp. 2d 541, 547-53 (D.S.C. 2013). By expansively encompassing "any act" that could interfere with the duties of a police officer or firefighter during a civil disorder, § 231(a)(3) is not limited to "violent acts" or acts that result in bodily injury or that otherwise put persons or property in imminent danger. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."). The statute does not weed out those acts with expressive content or those that occur in a traditional public forum. Section 231(a)(3) reaches a substantial amount of expressive conduct, and without clear boundaries, the law chills free speech.

> 2.   *Section 231(a)(3) cannot be saved by construction without violation the constitutional separation of powers*

A statute's vagueness does not permit judges to "'rewrite [the] . . . law to conform it to constitutional requirements.'" *Stevens*, 559 U.S. at 481. "When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). "Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Id.* at 2325.  In the present case, the statute's scope "may entirely depend" on a law enforcement official's unbounded speculation about subjective factors, *Coates*, 402 U.S. at 614, thus subjecting "individuals to the risk of arbitrary or discriminatory prosecution and conviction," *United States v. Kozminski*, 487 U.S. 931, 949-950 (1988) (holding statute unconstitutionally vague where liability "depend[ed] entirely upon the victim's state of mind").

45

It does not matter whether some conduct clearly falls within § 231(a)(3)'s reach. The Supreme Court's holdings "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson,* 576 U.S. at 602; *accord Dimaya*, 138 S. Ct. at 1214 n.3 (reaffirming this principle). Section 231(a)(3) is not susceptible to construction that eliminates its many constitutional deficiencies without judicial encroachment on the legislative function of defining criminal laws. Accordingly, Counts One and Three of the FSI should be dismissed with prejudice.

## IV.     The Section 1752 counts should be dismissed

### A.     The FSI fails to state an offense because only the USSS restricts areas under § 1752

Counts Five and Six contend that Nordean violated § 1752 by entering the Capitol Building, which the FSI characterizes as a "restricted building and grounds," as that phrase is defined in § 1752.  However, it does not allege that the U.S. Secret Service (USSS) restricted that area under the statute.  FSI, ¶¶ 76, 78.  The government's position is that any government entity may set a restricted area under § 1752 and that the Capitol Police restricted the area Nordean entered on January 6.

The government's position finds no support in the statutory text, the legislative history, or precedent.  Penal statutes are strictly construed.  *United States v. Moore*, 613 F.2d 1029, 198 U.S. App. D.C. 296 (D.C. Cir. 1979).  As shown above, all three definitions of "restricted building or grounds" in § 1752(c)(1) concern the authority and actions of the USSS and not any other federal agency.  Section 3056, concerning the "powers, authorities, and duties of United States Secret Service," confirms that § 1752 is a statute directed to the USSS and not any other federal agency.  18 U.S.C. § 3056(d).  The legislative history of § 1752 is saturated with references to the USSS and to no other federal agency.

46

Common sense chimes with the statutory analysis. The government claims that any federal or state agency may unilaterally set a "restricted area" and arrest anyone found within it so long as a Secret Service protectee is also present.  The implications of that argument are absurd.  Accordingly, such a statutory interpretation is highly disfavored.  *See United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S. Ct. 1059, 84 L. Ed. 1345 (1940) ("When [one possible statutory] meaning has led to absurd or futile results . . . this Court has looked beyond the words to the purpose of the act."); *see also Corley v. U.S.*, 556 U.S. 303, 317, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009) (interpreting criminal procedure statute to avoid "absurdities of literalism"); *Ctr. for Biological Diversity v. E.P.A.*, 722 F.3d 401, 411, 406 U.S. App. D.C. 140 (D.C. Cir. 2013) (recognizing "'the long-standing rule that a statute should not be construed to produce an absurd result'" (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068, 329 U.S. App. D.C. 341 (D.C. Cir. 1998)).

The government's interpretation countenances the following absurdities.   The U.S. Postal Inspection Service (hypothetically) determines that the Secret Service is not properly protecting the president.  Because, according to the government, there is no requirement in the statute for the government to prove that the restricted area was restricted at the direction of the Secret Service, the Postal Service resolves, unilaterally, that the "restricted area" of the White House should extend from the State Department to the west, and to the E. Barrett Prettyman U.S. Courthouse, to the east.  Even though the Secret Service may disagree with the Postal Service's view of the appropriate size of the restricted area, for purposes of § 1752 liability that does not matter, and the reader of the brief is liable, and potentially detainable pretrial, unless some federal agency (the Postal Service? The Secret Service? Both?) gives him "lawful authority" to "knowingly" "remain" where he is.  18 U.S.C. § 1752(a)(1).  Or, to take another absurd example,

47

even if the Secret Service determines that the restricted area protecting a Secret Service protectee temporarily visiting a place is appropriately limited to one block, § 1752(c)(1)(B), a local police unit may unilaterally determine that it should extend 20 blocks.  Any person exercising his First Amendment rights in blocks two to twenty may then be federally prosecuted—by the same government that deemed the restricted area limited to one block.

That is why what little § 1752 precedent there is supports Nordean, while none supports the government's interpretation.  Instructive is *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005).  There, Bursey entered an area restricted by the USSS in advance of a political rally in South Carolina held by the president.  *Id.*, at 304.  Reviewing the trial record, the Fourth Circuit observed that "the Secret Service designated an area near [the rally] as a restricted area." *Id.*  It also noted that the "authorized persons" admitted into the area all "wore lapel pins issued by the Secret Service," meaning that the USSS was the entity that granted "lawful access" to the area. *Id.*  Intending to protest the Iraq war, Bursey approached the restricted area with a megaphone. A Secret Service Agent advised him he could not remain in that area.  He was repeatedly advised thereafter of the same by multiple law enforcement agents over a twenty to twenty-five minute period.  *Id.*  Bursey was charged and convicted under § 1752(a)(1).

One sufficiency argument Bursey raised on appeal was that, as a matter of *mens rea*, "he was never advised that the area was a federally restricted zone, *so designated by the Secret Service.*" 416 F.3d at 308 (emphasis added).  The Fourth Circuit rejected this argument.  But not on the ground that § 1752 restricted areas need not be so restricted by the USSS.  Instead, trial evidence showed that Bursey "understood the restriction to have been created by the Secret Service (as opposed to state or local law enforcement)." *Id.*  Added the Fourth Circuit,

> [T]here was ample evidence that Bursey understood the area to have been restricted by the Secret Service, *and thus a federally restricted zone*.  Specifically, Bursey testified that

48

> he believed that "at that event, October, when the President came to town, that the circumstances would be similar to his prior visits, where … the Secret Service comes in and preempts" local and state police. . . Bursey also acknowledged that, in protesting at two earlier visits to South Carolina by the incumbent President, he was advised in both instances that "the Secret Service had basically preempted the security arrangements" of local police.

*Bursey*, 416 F.3d at 309 (emphasis added).

The import of the Fourth Circuit's logic is clear. Had the Fourth Circuit even contemplated the idea that entities other than the USSS could restrict areas under § 1752, the above reasoning would lack sense. Likewise, the trial court also simply assumed the USSS was the only entity that restricts areas under the statute. *United States v. Bursey*, 2004 U.S. Dist. LEXIS 29661, at *31 (D.S.C. Sept. 13, 2004) ("Bursey's own testimony confirms that he understood the restrictions would be established by the Secret Service.").

Because Counts Five and Six are based on the government's allegation that Nordean crossed into an area restricted not by the USSS but by the U.S. Capitol Police, they should be dismissed for failure to state an offense under § 1752.

### B.   If the government's interpretation of § 1752 is applied, it is unconstitutionally vague as to Nordean

#### 1.   *The government's interpretation of § 1752(c) is unconstitutionally vague*

If the Court concludes that the FSI properly charges Nordean with violating § 1752 by crossing a boundary set by an agency other than the USSS, the statute is unconstitutionally vague as applied to him.

Under the government's interpretation of § 1752, there is *no* notice, much less "fair notice," of the conduct proscribed *in this case*. As shown above, the text, legislative history, and common sense all point to the ordinary person's reasonable conclusion that the government agency that may restrict a person from entering an area in which there is a Secret Service

49

protectee is—the Secret Service.  Assuming the truth of the government's allegations in this case, Nordean saw police lined up outside the U.S. Capitol, whether they were U.S. Capitol Police or Metro Police.  But if the text, legislative history and common sense inform an "ordinary person" that he violates § 1752 by entering an area the Secret Service has restricted— as in *Bursey*, one of the handful of cases interpreting the statute—there is no similar notice in the statute that being on the wrong side of a police barricade is, independent of the Secret Service, in violation of that statute.  The FSI does not allege postings on January 6 warning Nordean that the Secret Service designated the area he entered as restricted.  They do not allege any law enforcement officers notified Nordean of that fact.  Nothing in § 1752 so much as hints at the possibility that disobeying local law enforcement per se may result in liability under that statute, provided some USSS protectee lurks somewhere within the restricted area.

The concern about vagueness-enabled arbitrary enforcement is manifested here.  At a general level, the government's enforcement of § 1752 against Nordean is arbitrary because, prior to January 6, it had never prosecuted a violation of that statute with the allegation that the accused entered an area restricted by some government agency other than the USSS.  Accordingly, the government's election to put a new interpretation on the statute for a select group of related cases raises questions about discriminatory law enforcement.  Those questions are only underlined by the patently political nature of the circumstances of the offense, as well as the criminalization of Nordean's First Amendment rights to political speech, assembly, and to petition the government for a redress of grievances.  U.S. Const. amend I; *Hoffman Estates*, 455 U.S. at 500 (stricter scrutiny of vague statutes in the context of activities protected by the First Amendment).

50

Perhaps more serious is the specific arbitrariness here.  Hundreds or perhaps thousands of other protestors "entered" the same "restricted area" as Nordean.  Yet it is undisputed that most of those people have not been charged under § 1752 like him.  The explanation for why the government chose to prosecute Nordean under § 1752, and not others, is not hard to find.  As shown above, it is stated on the face of the FSI.  Nordean is a "leader" of the Proud Boys, a "pro-Western fraternal organization for men whose refuse to apologize for creating the modern world; aka Western Chauvinists." FSI, ¶ 5.

That has anything to do with § 1752 or the Secret Service.  But the government's naked reliance on those factors shows the danger of arbitrariness inherent in the vague and elastic interpretation of § 1752 it offers for this specific set of defendants alone.  Insofar as they both allege that Nordean entered and remained in a "restricted area" set by an agency nowhere identified in the statute, Counts Five and Six are unconstitutionally vague.

2.    *The government's interpretation of § 1752(a)(2) is an unconstitutionally vague boundary standard*

Count Six alleges that Nordean engaged in "disorderly and disruptive conduct in and *within such proximity to*, a restricted building and grounds." FSI, ¶ 78 (emphasis added).  To the extent the government has not properly alleged that area Nordean entered was a "restricted area" under § 1752(c) but has somehow alleged that *some* area within the Capitol Building was, the § 1752(a)(2) phrase "within such proximity to" is an unconstitutionally vague boundary standard as applied to Nordean.

"[T]he freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause . . ." *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999).  As the Supreme Court described it in *Morales*, the Court has "expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty protected by the

51

Constitution.'" *Id.* (quoting *Williams v. Fears*, 179 U.S. 270, 274 (1900)).  "Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,'" *id.* (quoting *Kent v. Dulles*, 357 U.S. 116, 126 (1958)), or "the right to move 'to whatsoever place one's own inclination may direct' identified in Blackstone's commentaries." *Id.* (quoting 1 W. Blackstone, Commentaries on the Laws of England 130 (1765)).

      *Morales* concerned a Chicago city ordinance banning "criminal street gang members" and those associating with them from "loitering" in "any public place." Under the ordinance, law enforcement was directed to order all relevant persons to disperse and remove themselves "from the area." 527 U.S. at 47.  If those so ordered disobeyed by not leaving "the area," they were guilty of violating the ordinance.  The Court held that the ordinance was unconstitutionally vague.  Among other notice problems, the Court determined that the ordinance's requirement that the accused remove themselves "from the area," raised a host of ambiguities.  "How far must they move? If each loiterer walks around the block and they meet again at the same location, are they subject to arrest or merely to being ordered to disperse again?" 527 U.S. at 59.

      The Supreme Court has similarly found vagueness in statutes that rest on the fuzzy boundary standards of "neighborhood" and "locality." In *Connally v. General Constr. Co.*, 269 U.S. 385 (1926), the Court held that "both terms are elastic and, dependent upon the circumstances, may be equally satisfied by areas measured by rods or by miles." *Id.* at 395. *Connally* concerned an Oklahoma statute requiring that "not less than the current rate of per diem wages in the locality where the work is performed shall be paid to laborers . . ." *Id.* at 388. Criminal penalties were imposed for violations.  The Court found the statute unconstitutionally vague.  The vagueness problem was not just with the terms "neighborhood" and "locality":

52

Certainly, the expression "near the place" leaves much to be desired in the way of a delimitation of boundaries; for it at once provokes the inquiry, "how near?" . . . The result is that the application of the law depends not upon a word of fixed meaning in itself, or one made definite by statutory or judicial definition, or by the context or other legitimate aid to its construction, but upon the probably varying impressions of juries as to whether given areas are or are not to be included within particular localities. The constitutional guaranty of due process cannot be allowed to rest upon a support so equivocal.

269 U.S. at 395.

Just so here.  The government alleges that, on January 6, Nordean was "within such proximity to a restricted building and grounds" under § 1752(a)(2).  But: "How near?" *Connally*, 269 U.S. at 395.  Were just the steps of the west front of the Capitol "within such proximity to" a "restricted area"? Where *was* the restricted area (if any), as set by the USSS? Were the Senators and Congressmen who themselves objected to the Electoral College vote count "within such proximity to" a restricted area?  Did they receive permission from the Secret Service? All the protestors on the National Mall? The Supreme Court? Is "proximity" measured "by rods or by miles"? *Connally*, 269 U.S. at 395.  And if "'near the place' leaves much to be desired in the way of a delimitation of boundaries," *id.*, how does "within such proximity to" survive when the noun "proximity" is defined as "nearness to [a] place. . ." "Proximity." Collins Dictionary.com, available at: https://www.collinsdictionary.com/us/dictionary/english/proximity (May 17, 2021).

However, the vagueness in the government's § 1752(a)(2) charge here should be more strictly construed than in *Morales* and *Connally*.  For, unlike in those cases, the criminalized activity includes pure political speech, assembly and Nordean's right to petition the government. *Hoffman Estates*, 455 U.S. at 500; *Papachristou*, 405 U.S. at 156.  "The constitutional guaranty" of these rights "cannot be allowed to rest upon a support so equivocal," *Connally*, 269 U.S. at 395, as the vague boundary phrase "within such proximity to." § 1752(a)(2).

53

**C.      The rule of lenity dictates that ambiguities in § 1752 be resolved in Nordean's favor**

Here, even if the Court decides that the government's interpretation of § 1752 is formally correct—i.e., that any agency may set restricted areas under § 1752(c) and that § 1752(a)(2)'s reference to conduct "within such proximity to" a restricted area applies to the west front of the Capitol steps on January 6—it is plainly not unambiguous*ly* so.  That is shown by the lack of any references in § 1752 to agencies other than the USSS; the statute's legislative history, which similarly focuses exclusively on the USSS; the clear role that the USSS plays in all three definitions of "restricted buildings or grounds" in § 1752(c); the indication in Section 3056 that the USSS enforces restricted areas in § 1752; the lack of any case law supporting the government's position; and the common sense notion that if the USSS patrols and guards the restricted areas in § 1752, it also sets them.

Because the government's interpretations are not unambiguously correct, the Court is required to resolve any ambiguities in Nordean's favor by dismissing Counts Five and Six. *Granderson*, 511 U.S. at 54; *Santos*, 553 U.S. at 515.

**D.      The novel construction principle dictates against the government's interpretation, which would operate as an *ex post facto* law**

Because no court has ever construed Section 1752 to mean that agencies other than the USSS may set restricted areas under the statute, such a construction would be retroactively applied to Nordean would constitute an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.  *Bouie*, 378 U.S. at 353 (1964).

Nordean did not "violate the statute as it was written." *Bouie*, 378 U.S. at 355.  Section 1752 prohibits entry into an area restricted by the USSS.  There is "nothing in the statute to indicate that it also prohibited the different act," *Bouie*, 378 U.S. at 355, of entering into an area

54

restricted by the U.S. Capitol Police.  "The interpretation given the statute by the [government] . . . has not the slightest support in prior [§ 1752] decisions." *Id.*

Accordingly, the novel construction principle dictates against the government's interpretation, which would operate as an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment.

**V.     The FSI should be dismissed because it does not provide adequate notice and does not ensure the grand jury made determinations required by the Fifth Amendment**

The constitutional rights to presentment to a grand jury and adequate notice of the charges are embedded in the Fifth and Sixth Amendments to the Constitution and in Rule 7(c) of the Federal Rules of Criminal Procedure. In the January 6 cases, the government has mass produced indictments identical in language with the exception of names of protestors. A review of the FSI reveals that the federal depredation of property and civil disorder charges do not plead any specific acts or circumstances but rather conclusory January 6 allegations.

"[R]eal notice of the true nature of the charge" is "the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). In holding that the notice requirements of the Sixth Amendment apply to the States through the requirement of due process, the Supreme Court stated: "No principle of procedural due process is more clearly established than that notice of the specific charge [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *see* Joseph Story, *Commentaries on the Constitution*, § 1779 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances, of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

55

The Fifth Amendment's presentment provision also requires that the facts be elucidated sufficiently in the indictment so that the grand jury's finding of probable cause can be ascertained and to foreclose conviction based on any offense not found by the grand jury. *See Stirone v. United States*, 361 U.S. 212, 215-162 (1960) ("[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."). Without specificity of charged conduct and circumstances, the court would be forced to "guess as to what was in the minds of the grand jury at the time they returned the indictment[,]" which would "deprive the defendant of a basic protection that the grand jury was designed to secure," by allowing a defendant to be convicted "on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (citing *Russell v. United States*, 369 U.S. 749, 770 (1962)).

## A.     The federal property depredation charges are not elucidated sufficiently

Count Four alleges that Nordean depredated federal property on January 6, "caus[ing] damage to the [Capitol] building in an amount more than $1,000." FSI, ¶ 74.  However, the FSI does not allege: what property Nordean depredated; how he depredated it; and what the damage to each piece of property was.  That basic pleading failure violates Nordean's constitutional rights to presentment to a grand jury and adequate notice of charges.  U.S. Const. amend. V, VI.

## B.     The civil disorder allegations are not elucidated sufficiently

Count Three alleges that Nordean obstructed, impeded, and interfered with law enforcement during a civil disorder." FSI, ¶ 72.  However, nowhere does the FSI allege how Nordean did those things on January 6 or on any other date.  FSI, ¶¶ 18, 21, 22, 26, 27, 28, 30, 39, 57, 60, 61, 64 (every reference to law enforcement).  That basic pleading failure violates

56

Nordean's constitutional rights to presentment to a grand jury and adequate notice of charges. U.S. Const. amend. V, VI.

## CONCLUSION

For all the foregoing reasons, Nordean respectfully requests that the Court dismiss the FSI with prejudice.

Dated: June 3, 2021                              Respectfully submitted.

                                                 DAVID B. SMITH, PLLC


                                                 */s/ David B. Smith*
                                                 David B. Smith (D.C. Bar No. 403068)
                                                 108 N. Alfred St.
                                                 Alexandria, VA 22314
                                                 Phone:(703)548-8911
                                                 Fax:(703)548-8935
                                                 dbs@davidbsmithpllc.com

                                                 Nicholas D. Smith (D.C. Bar No. 1029802)
                                                 7 East 20th Street
                                                 New York, NY 10003
                                                 Phone: (917) 722-1096
                                                 nds@davidbsmithpllc.com

                                                 *Attorneys for Ethan Nordean*

### Certificate of Service

I hereby certify that on the third day of June, 2021, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

            Jim Nelson
            Assistant United States Attorney
            555 4th Street, N.W., Room 4408
            Washington, D.C. 20530
            (202) 252-6986

57

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, VA Bar No. 25930
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

58