IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              CR No. 1:21-cr-00175-TJK-3

v.                                    Washington, D.C.
                                      Tuesday, September 21, 2021
ZACHARY REHL,                         10:00 a.m.

                 Defendant.
- - - - - - - - - - - - - - - - - x
_____

TRANSCRIPT OF STATUS CONFERENCE
HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:     Luke M. Jones, Esq.
                           Jason B.A. McCullough, Esq.
                           U.S. ATTORNEY'S OFFICE
                           555 4th Street, NW
                           Washington, DC 20530
                           (202) 252-7233

For the Defendant:         Jonathon A. Moseley, Esq.
                           JONATHAN MOSELEY ATTORNEY AT LAW
                           5765-F Burke Centre Parkway
                           #337
                           Burke, VA 22015
                           (703) 656-1230

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111

Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

| | |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE DEPUTY CLERK:  We are on the record in |
| 3 | criminal matter 21-175, Defendant 3, United States of |
| 4 | America v. Zachary Rehl. |
| 5 | Present for the Government are Jason McCullough |
| 6 | and Luke Jones; present from Pretrial Services is Christine |
| 7 | Schuck; present for the defendant is Jonathon Moseley; also |
| 8 | present is the defendant, Mr. Rehl. |
| 9 | THE COURT:  All right.  Well, good morning to |
| 10 | everyone. |
| 11 | The reason we are -- I took this matter up at |
| 12 | 10:00 o'clock was just so everyone -- it's clear to |
| 13 | everyone, it was the only time we could have Mr. Rehl.  I |
| 14 | thought we'd have him by video, but apparently we have him |
| 15 | by phone, but in either case, he was not available to be |
| 16 | present at 11:00 o'clock.  And so I wanted to, especially |
| 17 | since he had new counsel, just make sure that we connected |
| 18 | the dots and that that's -- and that I was able to have a |
| 19 | conference with Mr. Rehl and his attorney. |
| 20 | Mr. Rehl, I want you to know, as soon as I -- I |
| 21 | know that you were dissatisfied with your old attorney.  You |
| 22 | wrote me a letter as such.  And there may have been -- who |
| 23 | knows how long -- what the delay may have been, |
| 24 | pandemic-related or not pandemic-related, from when I -- you |
| 25 | wrote that letter to when I got it, but whenever I -- when I |

1     did get it, as I turned to reach out to see what the next

2     steps would be, I think it was within a day or two that,

3     Mr. Moseley, you entered your appearance.  We provided that

4     letter, but it sounded like you were already well along in

5     retaining new counsel.

6              So Mr. Rehl, have you been satisfied so far with

7     Mr. Moseley since he's been in the case?

8              THE DEFENDANT:  So far.  Yes, Your Honor.  Thank

9     you.

10             THE COURT:  All right.  So I just wanted to let

11    you know that if Mr. Moseley hadn't entered, we would have,

12    one way or the other, figured out how to get you at least

13    screened to see if you were eligible for Court-appointed

14    counsel or, one way or the other, we were going to handle

15    it, but I'm glad that's behind us now.

16             THE DEFENDANT:  Thank you, Your Honor.

17             THE COURT:  Absolutely.

18             Mr. Moseley, just to respond, I know you emailed

19    chambers yesterday with a -- something you wanted to file

20    under seal, you know?  Look at Rule -- Local Rule 49

21    indicates how to file something under seal, in which case,

22    obviously, it will be temporarily held under seal for a

23    period of time and I'll rule on it one way or the other and

24    then it will either be under seal or it won't, but the rules

25    -- the local rules in particular make clear that that's the

1     way to handle that, not to email a document to us for some

2     sort of advisory opinion about how to proceed.  The rules

3     lay out how to do that, and that is why we didn't respond to

4     you.  I knew we'd be seeing you here today and I would let

5     you know that.

6              As far as the substance, I will say -- I mean, I

7     know your email that, I guess, for the record, the

8     Government was copied on as well references some things we

9     discussed under seal at the last hearing and, frankly --

10    but, frankly, they were not the reasons we were under seal

11    and -- frankly, number one.  And, number two, I'm not sure

12    how they're relevant to anything that's before me right now.

13             But -- and let me just ask whoever from the

14    Government wants to respond to this.  I don't see any reason

15    why the -- that -- the matter that Mr. Moseley referenced,

16    there's no reason for that to be under seal.  Does the

17    Government agree with that?

18             MR. JONES:  I think that we defer to Mr. Moseley

19    as to whether that information should remain under seal.  I

20    think --

21             THE COURT:  All right.

22             MR. JONES:  -- the Government has an interest in

23    not speaking to certain matters on the public record beyond

24    what we've filed publicly.

25             THE COURT:  All right.  So I'll just say this,

```
1    Mr. Moseley.  You -- if you have a -- just like I'd say to
2    any other attorney in the case, if there's something that
3    you think you want to bring to my attention that you think
4    needs to be under seal, follow the rules, file something
5    under seal, and I'll rule one way or the other about whether
6    it should be, but I don't think -- at least as far as today
7    goes and, certainly, our motion to -- the motion to -- well,
8    the motion for transport order that I'm going to -- I'll
9    talk to you about and, certainly, the motion to dismiss, I
10   don't think the matter you raised is relevant to any of
11   that, but if you disagree and you want to present it to me
12   as something that you'd like to file under seal and -- I'll
13   decide whether it should be under seal and we'll go from
14   there.  I don't want to tell you how to proceed.
15              MR. MOSELEY:  Okay.
16              THE COURT:  That's, I think, how the rules --
17              MR. MOSELEY:  All right.
18              THE COURT:  -- would govern things.
19              The only other thing -- and then, Mr. Moseley,
20   I'll turn it over to you and see if there's anything else
21   you want to raise with me here -- my thought is we'll put
22   off discussing, sort of, next steps and scheduling and when
23   we're going to come back until we have all the other
24   defendants with us.  My hope is we can, you know, again, try
25   to get everyone back on the same day and we'll do our best
```

1    to have Mr. Rehl with us, subject to -- if he's still in

2    Pennsylvania, subject to all of the logistical problems that

3    that sometimes presents.  So we'll put that off.

4            But the only other thing that I wanted to raise is

5    the motion for transport order.  And I would just hear

6    quickly from the Government and then from you, Mr. Moseley,

7    on that.  So whoever from the Government wants to address

8    that, I'm -- I -- frankly, I've never -- I -- let's put it

9    this way.  I get -- I have -- there's a -- I have a lot of

10   experience with litigants telling me -- or in particular

11   Government counsel telling me that, Gee, the marshals

12   dictate when and how and where folks are detained.  Judge,

13   you can't order them to do -- to put the person here, there,

14   or the other place.  And so -- and this is a little bit of

15   an exception to that.  So -- at least in terms of the

16   Government asking for this.  So I guess I -- my obvious

17   first question is why -- if the marshals think he should be

18   detained in D.C. because the case is pending here, and

19   that's not an irrational thought, why they can't just do it

20   without my order.

21           MR. JONES:  Thank you, Your Honor.  Luke Jones for

22   the United States.

23           As a general matter, as Your Honor knows, when a

24   defendant's arrested in a District in which they're not

25   charged, they'll appear before a magistrate judge; can

1    challenge identity if they wish.  After those issues are

2    resolved, there is a, you know -- a standard order that

3    courts issue -- magistrates issue to commit a defendant to

4    another District.  Defendants, you know -- I -- the marshals

5    have discretion in terms of specific placement of defendants

6    in specific facilities and, you know, in this case and in --

7    in most cases, it's not, frankly, the prosecutor's lane to

8    get involved, but, you know, to the extent the Marshals

9    Service has made that request of the Government and a

10   request of the Court, we certainly want to communicate that

11   and to indicate to the Court that the, you know, Marshals

12   Service policy is -- and the, sort of, standard court

13   practice is -- that defendants are detained in the District

14   in which they're charged.

15           In this case, the immediate transfer of Mr. Rehl

16   did not occur because his release order by the magistrate in

17   Philly was stayed and then -- until Your Honor revoked it.

18   At that point, you know, the Government did not come to Your

19   Honor asking for a transfer order.  It wasn't, you know, the

20   focus of the prosecution at that time.  I, you know -- this

21   matter came up on August 18th.  The Government was contacted

22   by the Marshals Service who had apparently contacted the

23   magistrate judge in Philadelphia regarding Mr. Rehl's

24   detention.  The Government gathers there was some confusion,

25   given that there was a release order on the docket for

1     Mr. Rehl in Philadelphia.  The court there that day

2     scheduled a hearing for noon to address the issue.  The

3     Government spoke with counsel for Mr. Rehl at the time,

4     Mr. Johnson and Ms. Mann [ph], and sent the court there the

5     -- Your Honor's order detaining Mr. Rehl, revoking the

6     magistrate's order.  Once the court received that, the court

7     canceled the hearing, recognizing that it wasn't necessary,

8     and indicated that the court would, in the normal -- in

9     due -- in the normal course that day, issue a transfer

10    order.

11          At that time, given that the matter was pending

12    before Your Honor, it was the Government's view that

13    although it would certainly be within the normal course for

14    the magistrate to issue that transfer order, that it would

15    be better for that matter or any order to be issued --

16    addressed and issued by Your Honor.  And the Government

17    especially was interested in avoiding a circumstance in

18    which Mr. Rehl was transferred, Your Honor was unaware of

19    it, defense counsel was not given an opportunity to address

20    it.  And so the Government, in consultation with defense

21    counsel, conveyed that to the magistrate in Philadelphia who

22    completely agreed and indicated to the Government that, Yes,

23    Judge Kelly should handle this; and we indicated, as the

24    marshals have requested of us, that we would ask Your Honor

25    for an order to transfer the defendant to the District of

1    Columbia.

2              THE COURT:  All right.

3              MR. JONES:  That's the lay of the land and happy

4    to answer any further questions.  Hopefully, that provides

5    some clarity.

6              THE COURT:  All right.  That additional color, I

7    suppose -- I -- makes sense, your position, and I, sort of,

8    understand, I think, how we got ourselves where we are.

9              Mr. Moseley, what -- I'm -- I -- obviously, I read

10   your response -- your opposition.  I think, you know -- it's

11   a strange thing.  There isn't a lot of law to apply and I'm,

12   you know -- if anything, you know, I think -- let's put it

13   this way.  Yeah, there's not a lot of law to apply.  So --

14   and you -- the thrust of your argument, I think, was that

15   your client would be better off in Philadelphia.  He's near

16   friends; he's near family; and that's better for him, which

17   I think is a fair point, although I don't know -- I mean,

18   you also made the point that -- you argued that you, in

19   fact, were -- you thought you would have better access to

20   him there, although you are much physically closer to D.C.

21             So play all that out for me and just let me know

22   why -- I mean, I do think it makes sense that, in general, a

23   defendant be brought to the -- and that certainly is the

24   practice, and the only reason it didn't happen here was the

25   odd procedural history that Mr. Jones just walked through,

1      and it certainly makes usual sense, even if the defendant

2      happens to be arrested in his -- in a place -- at a place

3      that is close to his home or her home, that the person be

4      brought to the District where charges are pending.  So tell

5      me why I shouldn't at least follow that typical practice.

6              MR. MOSELEY:  Well, thank you, Your Honor.  I hope

7      you can hear me.

8              THE COURT:  I can.  We can.

9              MR. MOSELEY:  There is -- I'm amazed at how many

10     things there are -- isn't precedent for that you'd think

11     there should be and it always surprises me.  But in this

12     case, I'd start out with the idea -- I understand the

13     initial threshold question here you're exploring, but it

14     seems to me that, you know, as long as they're asking, then

15     it becomes a matter of you making the best decision that you

16     would make, and I think that -- as I said, if they're asking

17     for your opinion, then I think that opinion should take into

18     account all these things.

19              As I may talk briefly about the status -- which is

20     that, for me, it's very early -- there's -- there doesn't

21     seem to be any reason to -- I mean, the Government did not

22     provide any reason to transfer him in their motion and I

23     don't see any reason for doing so.  Now, if there's going to

24     be a trial, of course, but there are no -- there are going

25     to be some pre-, you know -- some motions to dismiss and

1    things like that from my -- I have not formally joined in

2    the one later this morning, but there's really nothing on

3    the schedule in terms of this.  And I'll address, also, the

4    progress with discovery.  It seems like we're waiting for a

5    monumental task of going through all the discovery.  So I

6    don't know what the rationale in favor of it would be.  If

7    this were a county jail or someplace where their budget

8    would be burdened, that might be a reason, but I think this

9    is the same, you know, budgetary line item for the Bureau of

10   Prisons no matter where he is.  And I do believe that -- as

11   I've stated there that, as a pretrial detainee, detention is

12   not supposed to be a punishment and it's just supposed to be

13   to protect the public, and he's -- he has relationships of

14   his own with his family in Philadelphia and they have an

15   interest in their relationships with him that, apparently

16   without really any benefit, would be disrupted.  And so, you

17   know, I -- and it seems to be, to me, no difference in terms

18   of him going from one place to the other.

19           The -- as I mentioned, the -- this District has

20   issued a number of COVID-related arguments -- orders which

21   have stressed heavily the value of remote access, like we're

22   doing now, and that it should be relied upon.  It's being

23   renewed under certain rules, I think, every 90 days, but

24   it's been done for the next 90 days.  And so -- and also,

25   there are concerns about, you know -- I interpret -- I cited

1     to a CDC comment.  The whole page is, sort of, on the other

2     stuff, but I quoted from it that just mixing people around

3     per se is a risk if it doesn't have a reason.  And I don't

4     know that there's been any showing that the Philadelphia

5     jails are any more busy than in D.C.  I once got in a --

6     kind of, a shoving match between a -- judges in two states,

7     kind of, saying, No, my court is busier than yours, you

8     know?  He can come up and -- so I don't know where that

9     goes, but -- so I believe that the benefit of -- I've found

10    that the Philadelphia Detention Center is -- although far,

11    is very easy for me to meet with Mr. Rehl during their, you

12    know, limited hours, but it's not a problem, and I think it

13    would be a great benefit to be able to meet with him like

14    that.  Like I said, the main status I have on other things

15    is that I'm just trying to -- struggling to catch up.  And

16    so I've got a lot of talking to him to do.  And some of the

17    other attorneys describe how they've been living this for

18    seven, eight, nine months, and practically nothing else.  So

19    to me, that would be a benefit, and to him in terms of his

20    assistance of counsel; Sixth Amendment right would be

21    important, I think.

22            So I think that it's premature, as I say there.  I

23    think that there, you know -- there certainly may be a need

24    -- well, I mean, certainly, when it comes to trial, if it

25    goes to that, that he will need to be there in the District

 1    of Columbia, but I don't see it as a pressing matter now,

 2    and I think it's something that has only downsides and no

 3    real advantages here other than perhaps inertia.  And I say

 4    if the marshals in Philadelphia feel like, Well, we just

 5    want to get rid of this, you know, it's just -- it's not

 6    like the tax -- it's not like the Treasury is going to be

 7    any different in terms of him being incarcerated in one

 8    place or another place.  And, obviously, I will argue that

 9    he should not be incarcerated anywhere, as I'm sure all the

10    defendants will argue.  But if he's going to be detained, I

11    don't see that it's a burden on them any more than if the

12    government is paying for it in D.C.

13              And so that's my concern there, is that he be able

14    to -- to not be punished pretrial when he's still presumed

15    innocent and other people not be affected, too.

16              THE COURT:  All right.  Well, I'll take these --

17    I'll take your arguments under advisement here.  I do think

18    -- I'll take your arguments under advisement.  I mean, as

19    you were speaking, the other thing that comes to mind is

20    that we have had -- one of the problems, I think, so far has

21    been -- with Mr. Rehl being detained where he is, is the

22    opportunity to have him be present for proceedings even

23    remotely, taking your point that we're all in a posture

24    where remote -- where having folks -- attorneys or parties

25    participate remotely is a good thing, but we've had a

1    difficult time getting a connection to the facility where

2    he's located such that we -- it's taken a long time to get

3    -- and as evidenced by today when we have argument in a half

4    an hour on the motion to dismiss, albeit not one of his

5    motions, but that's been a challenge, and moving him to D.C.

6    would enable us to have everyone -- would enable us to

7    schedule things so we knew we had everyone present for each

8    hearing going forward.  But I'm not going to rule today.

9    I'll take your arguments under advisement and we'll see

10   where we go with that.

11          Is there anything else, Mr. Moseley?  I mean, I'm

12   going to -- what I'm going to do, then -- I wanted -- again,

13   once I found out your client was not going to be available

14   at 11:00, I wanted to be on the record with you to make sure

15   the connection between you, your client, and me was -- just

16   to make sure you were off to a running start representing

17   Mr. --

18          MR. MOSELEY:  Yes.

19          THE COURT:  -- Rehl and to make sure that he was

20   on and understood where things stood and was satisfied.  Of

21   course, Mr. Moseley, you're welcome to be present during the

22   argument at 11:00 o'clock.  And my thought was, again, that

23   in terms of scheduling and whatnot, we would do that without

24   Mr. Rehl present because we'll have all the other defendants

25   present at 11:00 o'clock or -- either before or after we

1    have argument on that hearing.  So my thought is now to just

2    adjourn and, again, taking your point -- well, adjourn after

3    I just ask you, is there anything else you want to raise

4    with me?  You've made your first appearance in the case here

5    today.

6                MR. MOSELEY:  Well, very little, but I probably

7    should say it just that, you know, most -- like I say, most

8    of the status -- I really don't have much status because

9    I've got a lot of discovery from -- given to Shaka Johnson's

10   law firm that he provided to me that I've got to go through.

11   I'm, (inaudible) -- technical difficulty getting up on the

12   USfx [sic] account, but I'm not there yet anyway because I

13   have to go through that first.  We will be filing motions

14   but haven't yet.  And the one thing that I wanted -- I was

15   almost going to file a reply to this, I think.  If, at some

16   point -- and I appreciate that this is a monumental task and

17   not so easily -- easy, but if there's any estimate of the --

18   we're getting some reports about how discovery is

19   proceeding.  If there's any way to estimate how far they

20   are, what percentage they -- and I know it goes at different

21   speeds.  I've done things like that.  It's not, you know, a

22   perfectly predictable thing.  But if they have any sense of

23   how much they've gone through and how much there still is

24   and when we might expect it, it's going to bear on, you

25   know, scheduling a trial and a lot of other things.  A lot

 1   of these motions, it seems to me, would normally not be done

 2   before all the disclosures.  It's, sort of, awkward, as I

 3   heard on the 13th, that we don't -- we're, you know -- we're

 4   trying to jump the gun, but we don't want people in

 5   detention longer than necessary either.  So any estimate

 6   from the Government at some point -- and I guess it's their

 7   contractors, actually -- would be helpful --

 8          THE COURT:  I'll --

 9          MR. MOSELEY:  -- and --

10          THE COURT:  -- because -- no, go ahead.  Finish

11   your point.

12          MR. MOSELEY:  Well, I think that's all the status

13   I have at this point, except I've got a lot of work to do.

14          THE COURT:  All right.  I will ask -- because I

15   don't -- I -- we won't have time to talk about -- or I don't

16   know that we'll have time to talk about it when we have all

17   the other defendants present for the argument.  So what does

18   the Government want to represent in terms of discovery at

19   this point in terms of both case-specific discovery and

20   general discovery more broadly about the January 6th event?

21          MR. JONES:  Thank you, Your Honor.  Luke Jones.

22          And I -- if you'll indulge me, I'll provide an

23   update now.  I want to note, I think it's -- I'm glad that

24   we're able to do it now while Mr. Rehl's on the line.  I

25   think, as Your Honor indicated, one of the regrettable

1    consequences of our, sort of, current circumstances is that

2    we've been having hearings without the defendants present.

3    Obviously, that's not -- I think we haven't had any major

4    issues with that, but I don't think it's anyone's

5    preference.

6         With respect to discovery, you know -- and I'll

7    say, especially with respect to Mr. Rehl, that once

8    Mr. Moseley joined the case, we reached out to him

9    immediately.  He agreed to the terms of the protective

10   order.  The Government began providing him materials.  He

11   made certain specific requests.  The Government's

12   prioritized those.  We understand he's obtained material

13   from Mr. Johnson and we'll continue to offer to reproduce

14   anything that he hasn't received.  All of the materials, as

15   he's indicated, are voluminous and, based on our

16   conversation with him yesterday, we understand he has a lot

17   to review.

18        As to case-specific discovery, the Government is,

19   in its view, substantially complete insofar as it has

20   provided the defense with Mr. Rehl's case file and

21   cross-discovery from other defendants.  That includes

22   hundreds of FBI serials and attachments, large amounts of

23   video, and audio, you know?  For Mr. Rehl and for the

24   co-defendants in this case, those productions have been

25   diligent and substantial and we are moving as fast as we

1    can.

2            Importantly, we have also taken pains to respond

3    promptly to specific discovery requests.  Often, those

4    requests require a fair amount of coordination with FBI or

5    other agencies to ensure we have access to the material if

6    it exists.  We've prioritized those requests, as the Court

7    has seen with respect to other requests.  For example, the

8    Eddie Block videos that have been the subject of numerous

9    filings and certain Capitol Police closed-circuit video.

10           In the coming weeks, the Government anticipates

11   providing additional cross-discovery from defendants not

12   charged in this case but who are nonetheless relevant and

13   potentially relevant to the case.  And we expect to be

14   substantially complete with that effort by the end of

15   October, although I'll note that is a goal and an estimate

16   and depends in part on the FBI's ability to complete certain

17   reviews.

18           As to digital devices and scoping, that review by

19   FBI continues.  We've noted previously that, absent

20   agreement by defendants to permit sharing of unscoped

21   devices and accounts, those sets of data require what's

22   called scoping by the FBI to identify the portion of the

23   data that falls within the scope of a warrant.  Now, as that

24   process unfolds, you know, relevant information is

25   identified by the FBI and that is often serialized or put

1    into the case file and, therefore, in productions to date,

2    including recent productions, the Government's produced a

3    fair amount of evidence gleaned from defendants' digital

4    devices and accounts, not only produced that to those

5    particular defendants but also to co-defendants.  All that

6    said, the full process of scoping devices and accounts takes

7    time, and we understand that the FBI is working to complete

8    that task not only in this case but across the riot cases.

9    The Government, you know, is loath to provide a timeline,

10   but I do think it's realistic that the FBI could complete

11   that effort with respect to this case within the next two to

12   three months with productions on a rolling basis.

13        And, you know, as to office-wide discovery which

14   Mr. Moseley referenced, on September 16th, ECF 168, the

15   Government provided an update on that office-wide effort.

16   That speaks for itself, but in short, the discovery team has

17   made significant progress in standing up platforms, the

18   Evidence.com and Relativity, and that discovery -- body-worn

19   camera, closed-circuit video, investigative files -- that's

20   currently being loaded up for defense review which should be

21   available shortly, you know?

22        With respect to the path forward, you know, we

23   recognize that there's a lot for Mr. Moseley to review.  We,

24   you know -- we also recognize that Mr. Rehl and his

25   co-defendants are detained.  So we're mindful of the need,

1    particularly in a detained case, to get to trial as soon as

2    we reasonably can.  So we're certainly open to discussing

3    that issue.  I think, in addition to, you know -- in

4    addition to discovery, both specific and office-wide, you

5    know, I think, you know -- we recognize that the clogged

6    trial schedules and the pandemic have, you know -- create

7    some hurdles to proceeding to trial, but, you know, given

8    this is a detained case, we're interested in moving forward

9    as quickly as we can.  And so we're open to discussing that

10   further.  We haven't had a chance to discuss that with

11   Mr. Moseley.  We think, you know, regardless of, you know,

12   sort of, further dates farther out, you know, we assume, at

13   least with respect to Mr. Rehl and likely with the other

14   defendants, it makes sense to come back in a period of 30 to

15   60 days to address the status of the case, perhaps any

16   motions that are ripe for argument.

17            And I -- and the only other matter I would -- want

18   to address would be the Speedy Trial Act.  While we have

19   Mr. Rehl on the line, you know, in short, the Government

20   would ask the Court to make a finding that the ends of

21   justice served by continuance outweigh the interests of the

22   public and the defendant in a speedy trial and that the time

23   between now and any next hearing should be excluded under

24   the Act.  We point to the appointment of new counsel to

25   represent Mr. Rehl, the need for counsel to get up to speed,

1    in addition to the reasons cited by the Court previously in

2    this case, including the unprecedented nature of the

3    prosecution and the resulting voluminous discovery.

4            So that was a mouthful but hopefully helpful for

5    Mr. Moseley and the Court.

6            THE COURT:  No, I -- that's a good update.

7            I think -- Mr. Moseley, you know what I was --

8    what I was thinking is whether you would want to --

9            And I don't know whether we can -- Ms. Harris,

10   whether we can facilitate this.

11           But, obviously, as far as next steps going

12   forward, scheduling when we come back in this case, trial

13   dates, and the like, it -- I don't want to -- I don't know

14   that it makes sense for me to make any findings or we're not

15   going to schedule anything until we have all of us here and

16   I can't just exclude speedy trial into, you know -- without

17   a specific date in mind.  But perhaps, Mr. Moseley, on the

18   speedy trial front, it makes sense for you -- if we can --

19           Ms. Harris, can we facilitate, between now and

20   when we come back at 11:00 o'clock -- can Mr. Moseley talk

21   to Mr. Rehl with everyone else off the line until we pick up

22   at 11:00 o'clock?

23           THE DEPUTY CLERK:  Yes.  I can place them in a

24   breakout room.

25           THE COURT:  Okay.  So why don't we do that.

```
 1              And, Mr. Moseley, you'll have the opportunity --
 2    even though Mr. Rehl won't be with us when we discuss,
 3    again, sort of, scheduling going forward, you'll have the
 4    opportunity to discuss with him the Speedy Trial Act, his
 5    rights under the Speedy Trial Act, the fact that you're new
 6    counsel just coming in and you're getting up to speed, and
 7    you'll have -- you'll be able to have the -- you'll know his
 8    position on that when we come back to discuss scheduling at
 9    11:00 o'clock.  I just think that makes sense for you to be
10    able to have that time with him and discuss where you'd like
11    to go from here.  Does that make sense to you, Mr. Moseley?
12              MR. MOSELEY:  Thank you, Your Honor.  Yes.
13              THE COURT:  All right.  So --
14              MR. MOSELEY:  Thank you.
15              THE COURT:  -- Ms. Harris, is there anything -- so
16    with that -- with all of that, then, on the record, what I'd
17    like to do, then, is just come back at 11:00 o'clock with
18    all the -- all -- everyone here -- well, you know, all the
19    parties except for Mr. Rehl.  We'll come back at 11:00
20    o'clock for scheduling and hearing on the motion.
21              And, Mr. Moseley, we'll put you in a break room as
22    long as they'll allow -- I think until -- at least until
23    11:00 -- with Mr. Rehl and you can have -- take that
24    opportunity to go ahead and discuss, sort of, Speedy Trial
25    Act and scheduling going forward and so you can,
```

1    (inaudible) -- representations when we come back.

2              MR. MOSELEY:  Thank you.

3              THE COURT:  All right.  So Ms. Harris, will you

4    put Mr. Moseley and Mr. Rehl in the breakout room.

5              And I will see everyone at 11:00 o'clock.

6              THE DEPUTY CLERK:  Will do, Your Honor.

7              MR. JONES:  Thank you, Your Honor.

8              THE DEPUTY CLERK:  Mr. Moseley, just give me one

9    second.  I will put you and Mr. Rehl together.

10             (Brief pause.)

11             Okay.  I'm opening the room now.

12             (Brief pause.)

13             Mr. Moseley, you should accept the invite to the

14   room.

15             (Brief pause.)

16             There we go.

17             Everyone else, you can leave and come back if

18   you'd like or just go off video.  Whatever you feel the need

19   to do.  Thank you.

20             MR. MCCULLOUGH:  Thank you, Ms. Harris.

21             THE DEPUTY CLERK:  You're welcome.

22             (Proceedings concluded at 10:43 a.m.)

23                  * * * * * * * * * * *

24             **CERTIFICATE OF OFFICIAL COURT REPORTER**

25        **I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby**

1   certify that the above and foregoing constitutes a true and

2   accurate transcript of my stenographic notes and is a full,

3   true and complete transcript of the proceedings to the best

4   of my ability, dated this 11th day of January 2022.

5       Please note:  This hearing occurred during the COVID-19

6   pandemic and is, therefore, subject to the technological

7   limitations of court reporting remotely.

8                           /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                            Official Court Reporter
9                           United States Courthouse
                            Room 6722
10                          333 Constitution Avenue, NW
                            Washington, DC 20001

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25