```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          CR Nos. 1:21-cr-00175-TJK-1
                                          1:21-cr-00175-TJK-2
v.                                        1:21-cr-00175-TJK-3
                                          1:21-cr-00175-TJK-4
1-ETHAN NORDEAN
2-JOSEPH RANDALL BIGGS             Washington, D.C.
3-ZACHARY REHL                     Tuesday, September 21, 2021
4-CHARLES DONOHOE,                 11:00 a.m.
                   Defendants.
- - - - - - - - - - - - - - - - x
```

_____

           TRANSCRIPT OF STATUS CONFERENCE/MOTION HEARING
            HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                   UNITED STATES DISTRICT JUDGE

_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:    Luke M. Jones, Esq.
                          Jason B.A. McCullough, Esq.
                          James Pearce, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233

For the Defendants:       Nicholas D. Smith, Esq.
                          David B. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869

                          John D. Hull, IV, Esq.
                          HULL MCGUIRE PC
                          1420 N Street, NW
                          Washington, DC 20005
                          (202) 429-6520

                          Ira Knight, Esq.
                          Lisa S. Costner, Esq.
                          FEDERAL PUBLIC DEFENDERS OFFICE
                          301 North Elm Street
                          Suite 410
                          Greensboro, NC 27401
                          (336) 333-5455

APPEARANCES VIA VIDEOCONFERENCE CONTINUED:

For the Defendants:      Jonathon A. Moseley, Esq.
                         JONATHAN MOSELEY ATTORNEY AT LAW
                         5765-F Burke Centre Parkway
                         #337
                         Burke, VA 22015
                         (703) 656-1230

Court Reporter:          Timothy R. Miller, RPR, CRR, NJ-CCR
                         Official Court Reporter
                         U.S. Courthouse, Room 6722
                         333 Constitution Avenue, NW
                         Washington, DC 20001
                         (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2               THE DEPUTY CLERK:  Good morning, Judge Kelly.

3               We are back on the record in criminal matter

4     21-175, United States of America v. Defendant 1, Ethan

5     Nordean; Defendant 2, Joseph R. Biggs; and Defendant 4,

6     Charles Donohoe.

7               Present for the Government are Jason McCullough,

8     Luke Jones, and James Pearce; present from Pretrial Services

9     is Christine Schuck; present for Defendant 1 are Nicholas

10    Smith and David Smith; present for Defendant 2 is John Hull;

11    present for Defendant 4 is Ira Knight and Lisa Costner;

12    Defendant 3, Zachary Rehl's appearance has been waived; also

13    present are Defendant No. 1, Nordean; Defendant 2,

14    Mr. Biggs; and Defendant 4, Mr. Donohoe.

15              THE COURT:  All right.  Well, good -- it is

16    still -- morning to everyone here.  Sorry we've been delayed

17    through no fault of Mr. Donohoe, but my understanding is the

18    facility there ran into some trouble complying with making

19    him available at 11:00 o'clock as we had requested.

20              My to-do list today, I thought we'd go through.

21    Obviously, I'm going to have -- I'm going to hear you on the

22    motion to dismiss that's outstanding filed by Defendant

23    Nordean and joined by a number of other defendants, and then

24    after that we'll talk scheduling and, kind of, where we go

25    from here.

```
 1              So Mr. Nordean's counsel, Mr. Smith, it's your

 2    motion.  So let me start with some questions for you.

 3              The argument on -- that you make on the 1512 count

 4    on official -- on the definition of "official proceeding,"

 5    let me see if I can summarize how I see the case law.  You

 6    tell me where I've gone wrong.  There's a lot of

 7    back-and-forth between the parties about what courts have

 8    said to characterize something as an official proceeding.

 9    And the Government makes the point, I think fairly, that at

10    least some of what the courts have relied on has been the

11    degree of formality.  The more formal, the more something is

12    an official proceeding.  And to be fair, what you all have

13    emphasized is the fact that typically there's, oh, you know,

14    an investigatory purpose of some kind connected to the

15    proceeding.  I guess my question -- and you have -- I think

16    it's fair to characterize your argument that regardless of

17    how formal the procedure may be, if it doesn't have an

18    investigative purpose to it, then it really doesn't count as

19    an official proceeding.  And I guess my question is, is that

20    -- do you think that's a fair reading of the cases or do you

21    really think that that -- it's just -- in the typical case

22    in which this is applied, you have an investigative purpose

23    because of the nature of the, you know -- the nature of the

24    circumstances in which the Government has seeked [sic] to

25    charge -- to charge conduct -- to charge crimes for it, but
```

```
1   as far as just the language of the statute, "official

2   proceeding," it doesn't seem to apply any investigative

3   purpose.  And so I guess my point is, do you really think

4   the cases require that or is that just a characteristic of

5   things that happen to have fallen under this statute that

6   the Government has used, then, to charge?

7              MR. NICHOLAS SMITH:  Thank you, Judge, for laying

8   the table.  That was -- that's a very clear exposition, I

9   think, of the debate.  And where we wanted to start, Your

10  Honor, is that we're, kind of, standing on the --

11             (Brief pause.)

12             THE COURT REPORTER:  Oh, excuse me --

13             (Brief pause.)

14             MR. NICHOLAS SMITH:  The other courts --

15             THE COURT REPORTER:  Oh --

16             MR. NICHOLAS SMITH:  -- the judges have made --

17             THE COURT REPORTER:  -- Mr. Smith -- excuse me.

18  I'm sorry to interrupt.  The Zoom froze.  I didn't -- I

19  missed a large portion of what you just said.  I can tell

20  you where I last got you.

21             MR. NICHOLAS SMITH:  Thank you, Tim.  So you don't

22  need to do that, but can you just confirm that you can hear

23  me now.

24             THE COURT REPORTER:  Yes, sir.  I can.  Thank you.

25             MR. NICHOLAS SMITH:  Okay.  Thanks.
```

1          So Your Honor, what I was saying was that some of
2     your colleagues on the bench have addressed this issue.  And
3     so we'd like to begin with a comment Your Honor just made
4     and one that a couple of other judges have made which is --
5     let's set aside that until January 6th, no court had ever
6     applied any obstruction statute to a congressional
7     proceeding that wasn't an investigation or inquiry.  That is
8     the standard that every Court of Appeals that has considered
9     the meaning of the word "proceeding" and "official
10    proceeding" in Sections 1505 and 1512 has held, that it's a
11    truth- -- a proceeding with a truth-seeking function
12    carrying a threat of a penalty.  That is the through-line
13    for every case, but --
14          THE COURT:  Well, Mr. Smith, let me just interrupt
15    you there.  Have they really held that that's an immutable
16    -- that that's a required characteristic or is that just
17    something that they have described as reflective of the ways
18    in which the Government has sought to apply the statute?  In
19    other words, we've got a -- I, you know -- I take your
20    point.  There's no debating the fact that these -- this
21    statute -- these statutes have not been applied to a similar
22    type of proceeding.  That's partly just a function of the
23    nature of the -- of how unusual the proceeding -- whatever
24    you want to -- whether it falls -- since you are not -- the
25    proceeding at issue here is an unusual proceeding.

```
 1              MR. NICHOLAS SMITH:  Yes, Your Honor.  So --
 2              THE COURT:  So I -- anyway, I guess -- I think the
 3    way you stated it, do you really think the cases say that
 4    that is required?  The truth-seeking function as you just
 5    laid out.
 6              MR. NICHOLAS SMITH:  So Your Honor, I was about to
 7    answer the question more directly.
 8              THE COURT:  All right.  I'm sorry.  I'll stop
 9    interrupting you.
10              MR. NICHOLAS SMITH:  I didn't mean to skate the
11    issue, because I think we have an answer that's -- that I
12    think is ironclad and I think it's directly responding to
13    some of the other judges that have raised this point.
14              THE COURT:  Okay.
15              MR. NICHOLAS SMITH:  So Your Honor, these
16    judges -- according to your logic that Your Honor just
17    stated right now, let's say we're in year one, because this
18    is a unique situation, and let's say we don't apply the
19    precedence because -- for the subtle point Your Honor just
20    made.  So the question is, these courts have raised, do we
21    need to think hard about what, quote, a proceeding before
22    the Congress, end quote, means?  Because Congress could have
23    said that "proceeding" in that phrase means investigations
24    or inquiries in Congress, as it did in 1505, but it did not.
25    So the interpretive principle here is something Congress
```

 1    could have said but did not.

 2            Your Honor, the reason that most courts don't cite

 3    that as an interpretive principle, Your Honor, is because it

 4    doesn't have any grip.  Each party can formulate something

 5    Congress could have said but did not.  So in this case, for

 6    example, Congress could have said "proceeding" means only

 7    inquiries or investigations, as, (inaudible) -- 1505, but

 8    did not.  On the other side of the equation, a party can say

 9    Congress could have said by "proceeding," we mean something

10    different from 100 years of obstruction jurisprudence, but

11    we -- but Congress did not.  So in order to get out of the

12    bottle, Judge, there's an interpretive principle for this

13    exact scenario, and that is, quote, courts assume Congress

14    is aware of existing law when it passes legislation and is

15    aware of the judicial background against which it is

16    legislating, end quote.  That's the Miles against Apex

17    Marine Corp. case, 498 U.S. 19, a 1990 Supreme Court

18    decision.  So courts don't assume Congress intends a

19    material change to a meaning given a legal term by courts

20    unless that change is made legislatively clear.  That's the

21    Hubbard case we've cited.  That's 1995, Your Honor.  On a

22    separate subject, we cited it for Section 231, but it's

23    actually quite on point here.

24            Your Honor, the D.C. Circuit makes the point this

25    way:  Quote, when Congress uses the language of one statute

1     in another statute, it usually intends both statutes to have

2     the same meaning, end quote.  And when interpreting

3     statutes, the, quote, assumption is that Congress knows the

4     law by which the Supreme Court means judicial decisions, end

5     quote.  That's the Avocados against Veneman case, 370 F.3d

6     1242 [sic], D.C. Circuit 2004.

7              Justice -- and I'm going to make this point in one

8     more way, because Justice Gorsuch in Dimaya -- in the Dimaya

9     concurrence makes it very succinctly and I think it's really

10    -- it's delightful precision here.  Justice Gorsuch cites

11    Blackstone for the point that Congress could have said

12    something but didn't is not really an interpretive method.

13    An English statute made, quote, stealing sheep or other

14    cattle, end quote, a felony.  And at the time, "cattle," the

15    word embraced a vernacular understanding more than it does

16    to moderners like us.  So it meant not just what we think of

17    as cattle but bulls and oxen.  So the question was to

18    Blackstone, is a bull rustler covered by this or is it just

19    a cattle rustler?  So the court cited Blackstone

20    interpreting "cattle," and the court didn't hold that

21    Parliament could have said "cattle" was limited to the

22    specific cattle species alone but did not and -- but did not

23    and, therefore, "cattle" encompassed bulls and oxen.

24    Parliament could have said something but didn't.  That

25    wasn't Blackstone's point at all, Your Honor, which Justice

 1    Gorsuch is focusing on in Dimaya.  To the contrary, the

 2    point is that the English court held that precisely because

 3    Parliament did not specify what "cattle" encompassed, the

 4    statute should not apply to, for example, a bull rustler as

 5    opposed to a cattle rustler.

 6            So where are we with 1512?  The interpretive

 7    principle is we assume Congress's knowledge of the existing

 8    law and judicial background at the time the statute at issue

 9    was enacted.  It was enacted in 2002, Your Honor, as a part

10    of the Sarbanes-Oxley Act.  So what was obstruction of

11    Congress before Sarbanes-Oxley, Your Honor?  Before 1512 was

12    enacted, 1505 was the obstruction of Congress statute.

13    "Proceeding" in 1505 explicitly means investigations or

14    inquiries.  That ties into the administration of justice,

15    Your Honor.

16            THE COURT:  But --

17            MR. NICHOLAS SMITH:  So what --

18            THE COURT:  Mr. Smith, hold on.  Hold on.  Hold

19    on.  I take your point that Congress could have said some --

20    one thing but didn't is, at a minimum, something that

21    doesn't get us very far, but -- and I take your point

22    broadly speaking to mean that, of course, Congress -- you --

23    we assume Congress, when they use the same terms, they mean

24    -- that are already in the statute, they are, you know --

25    they are assumed to have imported the meaning of those terms

1   from elsewhere in the statute, but they didn't -- in this

2   case, right, they didn't use -- and I take your point that

3   there's another -- there were other statutes that talked

4   about obstruction of Congress, but they used a term

5   "official proceeding."  They didn't -- that term -- that --

6   is your argument that they picked that term up from

7   someplace else and plopped it down here?

8          MR. NICHOLAS SMITH:  Judge, the "official

9   proceeding" term, if I'm not mistaken, is the umbrella term.

10  When we're -- the exact provision we're dealing with in

11  1515(a)(1) is a proceeding before the Congress.  Quote, a

12  proceeding before the Congress.  And what the legal term

13  that Congress is assumed to legislate against is the term

14  "proceeding," Your Honor.  So we're looking at --

15          THE COURT:  Okay.

16          MR. NICHOLAS SMITH:  -- how the term "proceeding"

17  was interpreted in the obstruction statutes before

18  Sarbanes-Oxley.  And so, Your Honor, the point I was making

19  was about -- so there's two factors here.  There's the

20  legislative background Congress is legislating against and

21  then there's the judicial background.  The legislative

22  background, Your Honor, is proceeding within Section 1505.

23  In the Poindexter case, Judge Ginsburg painstakingly

24  examines the legislative history of obstruction of Congress.

25  And I'm going to make this -- this is going to get weedy,

1    but this point is --

2            THE COURT:  It is.

3            MR. NICHOLAS SMITH:  -- it's crucial and I'm going

4    to make it really quickly.  The progenitor of all

5    obstruction of Congress statutes was Section 241, as Judge

6    Ginsburg pointed out.  Congress, quote, simply extended the

7    protection now provided by law for witnesses in court

8    proceedings to witnesses in proceedings before either house

9    of Congress, end quote.  That's 951 F.2d at 381.  Judge,

10   that's how we got obstruction of Congress, Section 241, Your

11   Honor.  That's where we get investigations or -- and

12   inquiries, because, Your Honor, we're just taking the

13   obstruction of justice jurisprudence and moving it into

14   Congress.

15           So what about the -- so Your Honor, what about the

16   judicial background before Sarbanes-Oxley?  What was

17   Congress assumed to be legislating against in that

18   connection?  This is where the official proceeding argument

19   for the Government goes to die, Your Honor.  In United

20   States against Kelley -- that's the D.C. Circuit decision

21   we've cited.  That decision was from 1994.  Compare that

22   with 2002, Your Honor, when Sarbanes-Oxley was passed.  In

23   that decision, the D.C. Circuit addressed charges under both

24   Section 1505 and 1512.  There, the Government stipulated

25   that, quote, "proceeding" meant the same thing in both

 1      statutes.

 2              THE COURT:  Well --

 3              MR. NICHOLAS SMITH:  The D.C. Circuit premised

 4      part of its decision on that basis, and then the court held

 5      that "proceeding" in that case was satisfied because the IG

 6      investigation had, quote, adjudicative power, end quote,

 7      and, quote, the power to enhance investigations through

 8      subpoenas and warrants, end quote.

 9              The other legislative -- the other judicial

10      background that Congress was assumed to be legislating

11      against in 2002 is the Poindexter decision from 1991.  And,

12      as we just said, Judge Ginsburg examined the entire

13      legislative history of obstruction of Congress and made it

14      clear that this concerns the administration of justice which

15      is a proceeding with a truth-finding function carrying the

16      threat of a penalty.

17              The other point that, I think, rounds this out and

18      makes it almost impossible to overcome, Your Honor, and

19      really raises a question of the appearance of justice and

20      truth is that the Department of Justice's own words doom its

21      argument.  Online right now, anyone can find the DOJ

22      resource manual which instructs prosecutors that the term

23      "proceeding" in Section 1505 is the same as Section 1512.

24              THE COURT:  Well, it doesn't -- Mr. Smith, it says

25      -- I -- the language doesn't really say the same; right?  It

```
 1    says --
 2              MR. NICHOLAS SMITH:  Largely.
 3              THE COURT:  -- the same or -- I mean, so I don't
 4    know how that -- far that gets you.  And I think it's -- I
 5    mean, I'll put it this way.  If every time the, you know --
 6    the Government came in here -- well, anyway, I think the
 7    Government's view of the statute, just like their views here
 8    today that you're going to be -- that you oppose, is just
 9    that.  Their view.  It's not -- I mean, I take it into
10    consideration, but it's not the precedent of a court; it's
11    not -- right?  I mean, I understand the rhetorical value
12    you're deriving from it, but I --
13              MR. NICHOLAS SMITH:  Well, Judge, I'm just
14    thinking more of in a common-sense perspective when you talk
15    to someone on the street and they claim that they believe
16    something but you find out that they actually don't believe
17    what they're saying.  That tends to affect one's judgment
18    about crediting the opinion that's being offered.
19              And, Your Honor, one more point is it's not just
20    the DOJ resource manual, Your Honor.  We've cited decisions
21    where the judge -- where the Government, before January 6th,
22    stipulated in proceedings that Section 1512's "proceeding"
23    refers to quasi-adjudicative administration-of-law-type
24    proceedings.
25              So to be perfectly clear, Judge, before January
```

1    6th, after January 6th, there has never been an obstruction

2    of Congress prosecution involving a proceeding that was not

3    an investigation or inquiry.  The Government has stipulated

4    in these cases that the Electoral College vote count on

5    January 6th was not an investigation or inquiry.  That's in

6    the Pepe case.  That ends this.  So the question, Your

7    Honor, is not what Congress could have said but didn't, but

8    whether the Government has rebutted the interpretive canon

9    assumption that Congress, in Sarbanes-Oxley in 2002, was

10   aware of existing law defining "proceeding" to mean an

11   adjudicative proceeding, Your Honor.

12            THE COURT:  All right.  That's -- I think you've

13   stated the argument very -- your argument as clearly and as

14   effectively as I've heard it.  I just -- I don't know.  I

15   think how much the background -- the -- as you -- kind of,

16   hopping off of the analysis in Poindexter, how much I can

17   read into the judicial and legislative background here, I

18   think, is the question, because at the end of the day,

19   Congress decided to use this term "official proceeding" and

20   there are a lot of, you know, cases that lay that out, but

21   -- lay out at least some of the aspects of the proceeding

22   that courts have said, Okay.  We're going to -- we're, kind

23   of, relying on this; we're relying on that.  How much that

24   is something that the investigative part is required, I

25   guess, is the question.  I don't know if that gets you all

```
 1    the way there, your -- the points you're making, but I

 2    understand your argument.

 3              MR. NICHOLAS SMITH:  Judge, there's just one more

 4    point to round out "official proceeding," and I think

 5    it's --

 6              THE COURT:  Please.

 7              MR. NICHOLAS SMITH:  -- really critical because

 8    even if the Court finds that a proceeding before the

 9    Congress -- and that's the relevant phrase, a proceeding

10    before the Congress -- does not need to be an investigation

11    or inquiry, I think there's a very powerful secondary

12    argument, Judge, that because every single Court of Appeals

13    that has interpreted "proceeding" and "official proceeding"

14    requires not just some kind of vacuous formality but

15    requires adjudicative-type procedures, the Government's main

16    argument is that the Electoral College vote count is

17    quasi-adjudicative or adjudicative.  So I would like to show

18    Your Honor why that is also not the case.

19              So to establish that the Electoral College vote

20    count is adjudicative, the Government emphasizes Congress's

21    discretion to reject Electoral College certificates.  The,

22    (inaudible) -- is this is like a court proceeding.  The Vice

23    President, the presiding officer of the Senate, or -- and

24    Congresspersons can reject -- can make decisions like an

25    investigate body, like the administrative agencies that
```

1    investigate in the decisions, like a court.  This raises two

2    problems for the Government, Your Honor.  One is an

3    intrinsic contradiction in its claims.  The Vice President

4    himself noted on January 6th that the role of the presiding

5    officer himself, the most constitutionally important

6    function, was, quote, largely ceremonial, not adjudicative.

7    So to prosecute defendants for their conduct motivated, they

8    say, by the erroneous idea that the joint session should

9    have been conducting an inquiry into voter fraud, the

10   Government is playing up Congress's ability to reject

11   certificates on that basis.  So what it's doing is it's --

12   it is agreeing with the former President that certificates

13   could have been constitutionally rejected on the basis of

14   voter fraud.  That's the Government's position, Your Honor,

15   and the question is whether they really believe it.

16              THE COURT:  Well, I think the --

17              MR. NICHOLAS SMITH:  Or even another --

18              THE COURT:  I --

19              MR. NICHOLAS SMITH:  The -- Judge --

20              THE COURT:  Does the Government -- let me just say

21   this.  Does the Government have to have -- I mean,

22   ultimately, this, kind of, dovetails with one of your other

23   arguments in a way.  To some degree, this is -- isn't it

24   fair to say that the process, whatever -- however you want

25   to characterize the process, it is to some degree a

1    political process, and if Congress wants to -- if somebody

2    wants to object -- and there is a process to object.  There

3    is a process for the -- I mean, that's in place.  How that

4    plays out and -- I mean, I guess, don't we bleed into a

5    political -- I mean, I know this is one of your other

6    arguments.  But don't we bleed into -- when we say, Well, as

7    a matter of law, this could have happened or that could have

8    happened, how much -- I mean, I suppose we know things that

9    couldn't happen.  But the particulars, are those really --

10   is that really -- does the Government really have to have a

11   position one way or the other about what had to happen or

12   what couldn't happen?

13           MR. NICHOLAS SMITH:  Yes, Your Honor.  That's a

14   great question, and we think the answer is yes.  Here's why

15   the Government has to take a position on this really thorny

16   subject and why the Court has to rule on it or attempt to.

17   They are arguing that this is a quasi- -- that they

18   satisfied the precedent in all of the Circuits holding that

19   "proceeding" must be quasi-adjudicative.  So they are

20   attempting to establish that certain procedures during the

21   electoral count -- vote count are quasi-adjudicative --

22           THE COURT:  But the -- no, I -- all they have to

23   do is prove -- or in order to avoid dismissal on this basis,

24   right, they have to -- all they have to do is say that

25   they've adequately alleged that it's an official proceeding.

 1    You're engrafting the quasi-judicial part to it and, maybe,

 2    they're accepting it, but that's the definition they have to

 3    meet.

 4            MR. NICHOLAS SMITH:  And, Judge, the reason -- and

 5    where quasi-adjudicative comes from is not out of the ether,

 6    but that's how every single -- even the Circuit Courts that

 7    the Government is citing --

 8            THE COURT:  Right.

 9            MR. NICHOLAS SMITH:  -- have required an

10    adjudicative element.  If it's not Kelley, it's all -- it's

11    the Fifth Circuit; it's the Ninth Circuit.  Ermoian is the

12    most -- clearest on this.  But that's why the Government

13    itself is spending the lion's share of its briefing trying

14    to establish that these electoral count proceedings are

15    adjudicative.  They are citing the Vice President's role,

16    albeit inconsistently with the Vice President himself.

17    They're siding with the former President on this issue.

18            But, Judge, here's why I think the question you

19    just posed about whether the Government has to address this

20    issue is exactly right, and they do, and it's for this

21    reason, Your Honor.  The -- what are the -- we're dealing

22    with constitutional provisions about the electoral count and

23    we're dealing with a statute.  So let's take the

24    constitutional provisions first.  You've got the Electors

25    Clause, Your Honor -- that's Article II, Section 1, Clause

1   3 -- and you've got the Twelfth Amendment which is an

2   elaboration on the Electors Clause.  Neither one of those

3   provisions empowers Congress to play kingmaker in an

4   adjudicative way.  What they actually say when you read the

5   plain language of those rules, they direct that the

6   electoral count certificates be sent to the seat of

7   government where the presiding officer is opening them in

8   front of both houses of Congress.  There's nothing

9   adjudicative about it.  It's a ministerial tally.  That's

10  why the Government is falling back on the Electoral Count

11  Act of 1887, Your Honor.  So the questions for the Court

12  are, can Congress constitutionally augment its Electoral

13  vote -- College vote count powers through legislation?  And

14  the second question is, does -- the Electoral Count Act of

15  1887 and the adjudicative procedures that the Government is

16  relying on, did they actually bind Congress?  Is this

17  legislation in the sense that we formally understand

18  legislation?

19          We agree with the Court that the first question is

20  justiciable.  Whether Congress is permitted to do something

21  under the Electors Clause and Twelfth Amendment is a

22  justiciable question.  The question that's not justiciable,

23  Your Honor, is whether the Electoral Count Act of 1887 binds

24  Congress.  And those are the provisions that the Government

25  is relying on.  That's a political question, Your Honor,

 1    because what the Electoral Count Act tried to do is entrench

 2    itself against every single future Congress.  It's a --

 3            THE COURT:  All right.  I understand that

 4    argument, Mr. Smith.

 5            MR. NICHOLAS SMITH:  So Your Honor --

 6            THE COURT:  I do understand it.

 7            MR. NICHOLAS SMITH:  Thank you, Judge.

 8            So the point is that in order to answer whether

 9    this proceeding -- this exotic proceeding, an electoral

10    count proceeding in front of the -- a joint convention, is

11    quasi-adjudicative, it's dragging the Court into addressing

12    all kinds of political questions, and just one of them off

13    the top, Your Honor, is that the proceeding that the

14    defendants and all other defendants intervened -- or

15    obstructed was not the joint session, Your Honor.  The

16    record -- the Congressional Record on the day of the

17    proceeding shows that it was discontinued and suspended at

18    1:15 which is about an hour before the first intrusion into

19    Congress.  It did not resume until later that evening, Your

20    Honor.  So now, the Government's trying to drag the Court

21    into not just saying whether a joint session is an official

22    proceeding, novelly, but whether this thing under the rules

23    of either chamber is still considered a live proceeding

24    despite being suspended which is a preeminent political

25    question, Your Honor.

 1          THE COURT:  All right.

 2          MR. NICHOLAS SMITH:  The decisions on these points

 3   are Baker against Carr and Rostenkowski which found that

 4   there are non-justiciable -- which is a criminal case

 5   involving the interpretation of a House rule where, again,

 6   Judge Ginsburg said that because of the Rulemaking Clause's

 7   applicability here, this is not always a non-justiciable

 8   question when courts are required to interpret proceedings,

 9   you know -- House rules, but when they're vague, it is.

10          THE COURT:  All right.  All right.  I understand

11   that piece of the argument.

12          MR. NICHOLAS SMITH:  This is a House rule, Your

13   Honor, because --

14          THE COURT:  I got it.  Mr. Smith, I got it.

15          MR. NICHOLAS SMITH:  Okay.

16          THE COURT:  I got it.

17          MR. NICHOLAS SMITH:  The second one -- the

18   second --

19          THE COURT:  Next -- well, go ahead.  What were you

20   going to say?

21          MR. NICHOLAS SMITH:  Your Honor, the issue that

22   has interested -- piqued the interest of the other judges in

23   this court more than the official proceeding issue, although

24   I think they're different faces of the same problem, is the

25   Yates and ejusdem generis issue.  The Government is applying

1    1512(c)(2) in a way that has never been done before.  It's

2    using something called the residual clause in a way that

3    would imply that the rest of Section 1512 and Chapter 73

4    need not exist.  Section 1512(c)(2) says that --

5              THE COURT:  Well, let me -- Mr. Smith, let me ask

6    you a question about that.  So I -- the way I read the

7    statute, it's quite different to say, A, B, you know -- the

8    Yates case -- I don't have the language in front of me --

9    but the statute says, you know, A, B, or other -- C -- or

10   other tangible object in that case, and the court decided

11   that reading -- in applying that principle you just

12   mentioned, that it would read C in light of A and B and it

13   would interpret C in light of A and B.  And I guess when I

14   look at this statute, it looks much more like it's trying to

15   be very, you know -- it -- Congress was trying to -- rather

16   than cabin what it was doing but almost create a situation

17   where it was being as broad as possible.  So I'm not sure --

18   I mean, tell me why you think that principle applies here.

19             MR. NICHOLAS SMITH:  Judge, thank you.

20             I think that principle applies for the same reason

21   that the former -- the last Attorney General says it

22   applies, who is no -- who doesn't --

23             THE COURT:  Mr. Smith, I have never heard you so

24   willing to defer to the Department in all these questions,

25   but --

```
 1              MR. NICHOLAS SMITH:  I think there's a reason

 2   that's a running theme, Judge.  I think there's --

 3              THE COURT:  All right.

 4              MR. NICHOLAS SMITH:  -- a reason.  There's a

 5   reason.

 6              So you know, there's a brilliant piece of writing

 7   we've submitted -- a brilliant piece of legal craftsmanship

 8   we have submitted to the Court.  Say what you will about,

 9   you know, the individual or whatever, political controversy,

10   but nobody can deny that this is an excellent piece of legal

11   analysis.  And the former Attorney General examined the

12   exact same arguments that the Government is attempting to

13   make here, the argument that (c)(2) is an -- the residual

14   clause is unlimited.  It can effectively criminalize every

15   type of misconduct that the rest of Chapter 73 does, and the

16   way they square the circle is they say, Well, overlap is not

17   the same thing as swallowing.  So we're, kind of, fumbling

18   around with semantics here, overlap or swallowing.  So --

19   but what the former Attorney General says is, quote, Section

20   (c)(2) encompasses any conduct, even if it is not

21   specifically described in 1512, that is directed at

22   undermining a proceeding's truth-finding function through

23   actions impairing the integrity and availability of

24   evidence.  And what's so -- end quote.  And what's elegant

25   about that description, Judge, is it does several things.
```

1   It doesn't swallow the rest of Chapter 73; it covers actions

2   that are not specifically listed in 1512(c)(1), Your Honor;

3   and it also doesn't swallow up the other provisions of 1512,

4   because the key here is actions impairing the integrity and

5   availability of evidence which go to the proceeding's

6   truth-finding function.

7           THE COURT:  All right.

8           MR. NICHOLAS SMITH:  So what does --

9           THE COURT:  Mr. Smith, I understand that part of

10  the argument.  If we're going to get through and if I'm

11  going to be able to hear the other parties, I'm going to

12  have to ask you to focus on my questions.  I got your point

13  about what Former Attorney General Barr said.

14          Can we move on to -- and it links up actually

15  closely with where you are here.  Talk to me about

16  Poindexter and "corruptly."  Tell me -- talk to me about

17  that part of your argument and why it -- let me ask it this

18  way.  Is every obstruction statute that uses the word

19  "corruptly" subject to the same flaws that you've -- you

20  argue here?

21          MR. NICHOLAS SMITH:  That's a great question,

22  Judge, and that's exactly where we were going to start which

23  is we were going to point to Judge Silberman in the North

24  case in which Judge Silberman notes that obstructly [sic] --

25  excuse me, "corruptly" will be interpreted differently in

1    different contexts.  So -- and I think that's a nuance that

2    hasn't been picked up yet in the arguments.  What

3    "corruptly" might mean in a judicial proceeding is going to

4    necessarily be different than "corruptly" when you're

5    dealing with interactions with Congress.  That's Judge

6    Silberman's concurrence in North.  And I think that goes a

7    long way to explain why we're in Poindexter land and not,

8    sort of, being steered towards Arthur Andersen which is not

9    really relevant for other reasons which I can get to, but

10   we're in Poindexter land because this is obstruct -- this is

11   "corruptly" in the context of Congress, and what Poindexter

12   argued was that Section 1505's use of "corruptly" was

13   unconstitutionally vague as applied to this conduct in

14   Congress, Your Honor, and to avoid vagueness that was

15   inherent in a value-ladened definition of "corruptly" such

16   as "improper purpose" or "evil," the court interpreted it

17   transitively; meaning, to corruptly -- to corrupt another

18   person to commit an obstructive act against the person's

19   legal duty.

20           So our first argument is that's still good law in

21   this Circuit, that's not what the Government alleges here,

22   and we don't need to go further, but then, Your Honor, let's

23   say we distinguish Poindexter or find that it's not binding

24   on the Court.  What are the definitions that the Government

25   has offered and are they vague?  The first one that the

1    Government's offered in this case is "corruptly" is

2    synonymous with "wrongful."  Well, Poindexter has already

3    held that that is unconstitutionally vague, Your Honor.  So

4    I'm not exactly sure how the Government gets around that

5    problem.  It's a hopelessly vague word and it would lead to

6    problems like this, Judge, in the context of, again, the

7    Electoral Count Act joint convention.  So if a politician

8    challenges the vote, for example, like Al Gore, and he

9    attempts to delay the electoral count joint session because

10   that will inevitably happen when he's challenging a vote

11   count, well, that becomes corrupt, Judge, if it's wrongful.

12   So what Al Gore did satisfied that standard because the

13   Supreme Court found that the -- he and his co-conspirators,

14   according to the Government, engineered recount votes that

15   denied voters their equal protection rights.  That's

16   wrongful, Judge.  So we have obstruction of Congress.

17   That's -- is -- that's yielded by the Government's theory in

18   this case.

19          The other definition they have is, maybe,

20   "corruptly" means "done while the defendant is committing

21   another offense at the same time."  So they say here,

22   Mr. Nordean obstructed Congress by virtue of entering the

23   building and that was corrupt because it was also a

24   violation of what they're calling a restricted area under

25   1752.  The problem with that argument is it's been

1    explicitly rejected by Poindexter.  The D.C. Circuit

2    affirmed a false statement charge to Congress and

3    simultaneously vacated an obstruction conviction.  They're

4    based on the same lies to Congress.  So if that were the

5    case that one was corrupt when one simultaneously committed

6    another crime while impeding Congress, then Poindexter would

7    not exist, but it does.

8              And finally, the last definition they've offered,

9    Judge, is "the intent to intimidate."  So I think if the

10   Court was listening to the last motion to dismiss hearing in

11   one of these cases in front of Judge Mehta, I believe, Judge

12   Mehta was pressing the Government on what its theory for,

13   you know, "corruptly" was in this case, and the Government

14   said, Well, they intimidated and -- the defendants

15   intimidated and scared Congress.  There's so many problems

16   with this one, Your Honor.  Section 1512(b)(1) already

17   covers intimidation and it explicitly distinguishes

18   corruption from intimidation.  That's Section 1512(b)(1).

19   If those words have different meanings, they can't be

20   collapsed, Your Honor.  So -- Section 1505 also

21   distinguishes corrupt behavior and actions that threaten or

22   intimidate Congress.  That's in both of those statutes, Your

23   Honor.

24             Then I think --

25             THE COURT:  Mr. Smith, this is, kind of, a running

```
 1    thread through a lot of these arguments.  But isn't it fair
 2    to say that, like, Congress may well have enacted a
 3    patchwork of statutes that -- I think you used the word --
 4    they said overlap in -- at least in this narrow example,
 5    that overlap?  That doesn't mean one reading of them is
 6    wrong, does it?
 7              MR. NICHOLAS SMITH:  Well, Judge, if by overlap --
 8              THE COURT:  I mean, I wish we could assume that
 9    Congress, sort of, carefully crafted, sort of, this set of
10    obstruction statutes so that a particular act might violate
11    one of them but couldn't violate more than one.
12              MR. NICHOLAS SMITH:  Well, Your Honor, that's
13    exactly what Congress said.  If you look at the legislative
14    history, it's quite clear.  All of the senator sponsors were
15    referring to closing the loophole created by the Enron
16    decision, Judge.
17              THE COURT:  Right.  No, no, no, I was -- I read
18    what you wrote and I read that, but -- well, then it becomes
19    a question of, you know, intent versus what the language
20    they all voted on actually says.  But go ahead.
21              MR. NICHOLAS SMITH:  Well, yes, and that's what --
22    that's when we assume Congress legislates with knowledge of
23    general legal principles and decisions, and those decisions,
24    like Yates and earlier ones like Begay [ph], hold that when
25    there's a list of actus reus followed by a general
```

```
 1    provision, then the ejusdem generis principle applies.
 2    Here, the list is alters -- whoever corruptly alters,
 3    destroys, mutilates, or conceals a record, document, or
 4    other object, dot, dot, dot, or otherwise obstructs,
 5    influences, or impedes any official proceeding, or attempts
 6    to do so, shall be punished.  That's the list --
 7              THE COURT REPORTER:  Mr. Smith --
 8              MR. NICHOLAS SMITH:  -- that Yates is referring
 9    to.
10              THE COURT REPORTER:  Mr. Smith --
11              MR. NICHOLAS SMITH:  The only --
12              THE COURT REPORTER:  Mr. Smith --
13              MR. NICHOLAS SMITH:  The only response --
14              THE COURT REPORTER:  Mr. Smith --
15              MR. NICHOLAS SMITH:  What?
16              THE COURT REPORTER:  Kindly, could you please slow
17    down?
18              MR. NICHOLAS SMITH:  Sure.
19              THE COURT REPORTER:  Thank you.
20              MR. NICHOLAS SMITH:  Sure, Tim.  Thank you.  Thank
21    you, Tim.
22              So the response the Government offers to that
23    point, Your Honor, is that, Well, maybe, there's a list --
24    maybe, there's a list like in Yates, but the list here is
25    separated by a typographical space.  They say there's a
```

```
1    space, a literal -- a line space -- a blank white space

2    between Subsection (1) and (2) of 1512(c).  There is -- the

3    reason the Government doesn't cite any decisions for the

4    space principle is there are none, Judge, and it doesn't

5    really -- that, kind of, typographical space doesn't really

6    mean anything in logic about why the list that's separated

7    by a comma is -- followed by a general provision would be --

8    that, kind of, ejusdem generis principle would be upset by a

9    space.  So it could have easily if, frankly, Congress was

10   doing its job there, because look at the comparison

11   statutes.  1503, there's just one giant block of language,

12   and one section of that is called the omnibus clause, but

13   it's incredibly difficult to parse because it's one huge

14   block.  So what Congress did here is went easy on the

15   reader's eyes by putting a space between the commas.

16            So Judge, the other point we'd like to make is

17   that the Government and some of the courts have said, Well,

18   doesn't Arthur Andersen resolve this case?  Doesn't Arthur

19   Andersen define "corruptly" in terms of 1512?

20            THE COURT:  No, I understand -- Mr. Smith, I

21   understand the way you've argued that in your brief.  No

22   need to --

23            MR. NICHOLAS SMITH:  All right.

24            THE COURT:  -- move on to it here.

25            MR. NICHOLAS SMITH:  Okay, Judge.
```

```
 1              One point that's not in our brief, Judge, is that
 2     the Government is fond of citing Justice Scalia's
 3     concurrence and dissent in the Aguilar case.  What the Court
 4     will find there is that Justice Scalia endorses the
 5     following definition of "corruptly," citing the jury
 6     instructions in that case.  Quote, An act is done corruptly
 7     if it is done with the hope or expectation of either
 8     financial gain or other benefit to oneself or a benefit of
 9     another person, end quote.  That's 1515 [sic] U.S. at 1616
10     [sic].  That's a definition -- a consensus definition that
11     we've cited --
12              THE COURT:  You have.
13              MR. NICHOLAS SMITH:  And the -- and somewhat --
14     the Court might want to ask the Government, well, why isn't
15     it using that -- why isn't it relying on the consensus
16     definition of "corruptly," Your Honor?  Well, because -- and
17     there's a reason -- because Poindexter said, in the context
18     of Congress, a person may not act corruptly, quote, if their
19     act would afford no particular benefit to him or anyone
20     connected with him, end quote.  And the Poindexter court
21     gave an example of that in Congress --
22              THE COURT:  All right.  Mr. Smith, I understand
23     this part.  I get it.
24              MR. NICHOLAS SMITH:  Okay.  Okay.
25              THE COURT:  I'll ask them, but I can't ask them if
```

```
1    I don't --
2              MR. NICHOLAS SMITH:  Okay.  Judge, I'm going to
3    finish up.  I'm going to wrap up the --
4              THE COURT:  No.  No, I don't -- there's no
5    question pending.
6              The -- actually, the last question I do have is --
7    tell me about your -- where you think Judge McFadden went
8    wrong with regard to the -- his opinion -- the --
9              MR. NICHOLAS SMITH:  The 1752 --
10             THE COURT:  -- Griffin opinion on that charge.
11             MR. NICHOLAS SMITH:  Yeah.  Thank you, Judge.
12             We think Judge McFadden is an excellent judge and
13   we're openly saying his decision is reasonable and
14   thoughtful, but we think where the judge went -- where we
15   think the decision is mistaken is the provision -- the
16   question is whether the Secret Service needs to set the
17   restricted area under Section 1752 or whether --
18             THE COURT:  Right.
19             MR. NICHOLAS SMITH:  -- any government entity can.
20             THE COURT:  I mean, doesn't it -- wasn't it your
21   -- was what you -- your point, I think, was that, Gee, his
22   interpretation would allow for anybody off the street to set
23   out traffic cones and somehow restrict an area.  I mean,
24   isn't there a difference between saying, Look, the statute
25   doesn't say any particular law enforcement agency, and so I
```

 1    don't think it has to be the Secret Service, but isn't it a

 2    -- fair to read just from the structure and -- overall, you

 3    know, structure of the statute that it's not allowing just

 4    any Tom, Dick, and Harry to go in and cordon off an area --

 5                   MR. NICHOLAS SMITH:  That's --

 6                   THE COURT:  -- and that has the force of law?

 7                   MR. NICHOLAS SMITH:  That's right, Judge, and --

 8    but -- and despite that, with this -- we're reaching that

 9    plain meaning of the statute even though it's not explicitly

10    stated.  We are inferring, based on the neighboring

11    provisions, that any civilian cannot set a restricted area,

12    even though the phrase on restriction is passive.  So what

13    Judge McFadden did reasonably is he says, Well, it doesn't

14    mean any person can do this, of course.  It means any law

15    enforcement agency, is what the judge said.  But "law

16    enforcement agency" is not a phrase in the statute either.

17    I would not say that the judge was importing language into

18    the statute.  He's reasonably inferring the meaning of this

19    passive phrase based on context clues and -- but we're --

20    what we're saying is that the context clues all point to the

21    Secret Service setting the restricted area.  The Secret

22    Service is the agency that's listed in every section of

23    1752(c)(1) that defines the types of restricted areas at the

24    White House where the Secret Service protectees are

25    traveling and each one of those places.  There's a separate

1    statute that says that the Secret Service is enforcing

2    Section 1752.  And, Judge, the clincher here is that Judge

3    McFadden said, Well, it's true that this passive phrase is

4    open-ended.  But another way of putting "open-ended," Your

5    Honor, is "ambiguous."  At best for the Government, it's

6    ambiguous who --

7                THE COURT:  Well --

8                MR. NICHOLAS SMITH:  -- (inaudible.)  And once we

9    say that, Your Honor, we're opening a door that doesn't --

10   that the decision doesn't withstand, because we go to the

11   legislative history, Judge, and there is no doubt that what

12   Congress was doing was passing 1752 to give this power of

13   restriction to one agency.  No -- the senators -- the Senate

14   report on 1752 says, There's no other body that can restrict

15   areas except local law enforcement.  We want to give the

16   Secret Service this authority.  So what we're -- what that

17   means is, We're legislating in an area where the federal law

18   enforcement does not have the power.  Power -- that's the

19   power reserved to the states under the Tenth Amendment.

20   That's a police power, the police power to restrict areas.

21   So we're creating a power for the Secret Service.  That's

22   who it belongs to, Judge.  And there's actually an OLC

23   opinion that essentially says as much, Judge.

24                THE COURT:  All right.

25                MR. NICHOLAS SMITH:  So --

```
1              THE COURT:  I understand your argument.

2              Let me hear from the Government.  Who is

3      addressing the -- who's --

4              MR. NICHOLAS SMITH:  Well, Judge, did you --

5      Judge, do you want to hear arguments on the civil disorder

6      charge or are -- that's the one last charge and it can be

7      run through really quickly.

8              THE COURT:  I don't need to hear from you on it,

9      but I do want to hear from the Government on it.

10             Who from the Government's going to be addressing

11     this?

12             MR. PEARCE:  Your Honor, I'll be responding on

13     behalf of the Government.  This is James Pearce.

14             THE COURT:  Mr. Pearce?  All right.  Fair enough.

15             Mr. Pearce, why don't you start -- I do want to

16     get to the point that counsel raised, but why don't I give

17     you, just quick, a -- first, a quick opportunity to respond

18     to really the two points we've -- I've focused on with

19     Mr. Smith.  One is this issue of the, kind of, official

20     proceeding and the nature of the -- of -- well, we'll start

21     with that, the official proceeding and why the Government

22     thinks this is -- qualifies as an official proceeding

23     despite the fact that, as Mr. Smith I think fairly points

24     out, all the cases -- most if not all the cases that do

25     interpret it do seem to suggest that some sort of
```

1    investigatory purpose is connected to that kind of

2    proceeding.

3             MR. PEARCE:  Thank you, Your Honor.

4             I think the place to start, as the Supreme Court

5    is fond of reminding us, is the text itself.  And the text

6    here in 1515(a)(1)(B) -- which is the relevant provision

7    within official proceeding that we're relying upon -- is a

8    proceeding before the Congress.  And, frankly, you really

9    don't need to go much further than that.  That is -- on its

10   terms, refers to something like the joint session; right?  I

11   mean, there might be some hard questions at the outer

12   boundaries of what would qualify as a proceeding before the

13   Congress, but when you're talking about something where

14   you've got a presiding official gaveling in a session,

15   you've got the full -- both the Senate and the House of

16   Representatives there, our position is that's a proceeding

17   before the Congress, full stop, and there's really no need

18   to go any further than that.

19             But responding to some of the points raised by my

20   friend on the other side, I think all of the cases that have

21   struggled in the context of how to define the term "official

22   proceeding" have not done so with respect to a proceeding

23   before the Congress.  They have overwhelmingly -- and these

24   are the Ermoian cases, Kelley, the cases out of the Fifth

25   and Second Circuit, as well -- have dealt with this question

1    of, what do we do with some kind of law enforcement

2    investigation, and then whether that law enforcement

3    investigation qualifies under a different "official

4    proceeding" definition, 1515(a)(1)(C).  And so there's been

5    a lot of, kind of, efforts to try to analogize and make it

6    look like mostly something in 1515(a)(1)(A), sort of, the

7    grand jury and the court-type proceedings.  And so our view

8    is really those cases have really nothing to say about how

9    to interpret the entirely distinct term "proceeding before

10   the Congress."

11            Now, I'll say more about that in a moment, but I

12   did want to address the point on 1505 and some of the

13   history.  I mean, I do -- it is a statutory canon and one

14   that's recognized that, look, when you have already a

15   statute on the books like 1505 -- and my friend on the other

16   side is right that's -- that preceded 1512 as well as

17   1512(c)(2) -- Congress legislates against that background.

18   And so Congress, when it chose -- and it didn't make this

19   decision in 2002 in Sarbanes-Oxley.  It made this decision

20   in 1982 when it first passed the obstruction of justice

21   statute that is 1512.  When it includes "a proceeding before

22   the Congress," it could well have adopted the language in

23   the already-existing 1505 which, I think it is accurate to

24   say, refers to proceedings -- or, sort of, narrows the

25   "proceeding" definition to an investigation or inquiry being

1    had by, you know, either house of Congress, a committee,

2    etcetera.  Well, it didn't do that; right?  It chose broader

3    language in the -- in 1512 in 1982.  The Sarbanes-Oxley Act

4    in 2002 referred to that broader definition.  And so that is

5    the language.  That broader definition, while there may be

6    some hard questions on the boundaries -- on the outline, you

7    know, in our view, fully scoops up and includes the

8    certification of the Electoral College vote.

9         And I say all that to say the Court need not

10   engage in the kind of, (inaudible) -- questions that cases

11   like Ermoian are doing, you know?  Is there enough formality

12   here?  I mean, we think that there is.  Is there enough

13   quasi-adjudicative-type tribunal-like proceedings?  We think

14   that there are.  But, frankly, those are not questions that

15   the Court need to tangle with, let alone go all the way down

16   into the rabbit hole of trying to decide, Well, if it's

17   quasi-, you know -- is there enough of an adjudicative or,

18   sort of, tribunal-like proceeding that it implicates the

19   political question?  There's no reason at Rule 12 or

20   otherwise for the Court to decide that and the plain

21   language enough is decisive.

22        I -- there's more I could say.  I feel like I --

23   at the big-picture level, that's most responsive, and I want

24   to be attentive to the Court's time.  So I'm happy to

25   address if there are specific questions or to move on to

 1    some of the other arguments.

 2            THE COURT:  No, I'd like you to move on to what I

 3    think is a -- well, a more -- in my mind, a closer but --

 4    well, put it this way -- a more difficult question which is

 5    this issue of Poindexter and the use of the word "corruptly"

 6    and the vague -- potential vagueness of the statute that the

 7    defendants raise.  This is what Mr. Smith wanted to -- me to

 8    press you on.  But I do think this is -- it -- this is

 9    tricky.  And so why don't you address, I guess, use of the

10    word "corruptly," what definition the Government wants me to

11    adopt, and why you think that comports with Poindexter and

12    the other relevant case law.

13            MR. PEARCE:  Absolutely, Your Honor, although let

14    me make one comment just somewhat procedural in nature which

15    is defining the term "corruptly" is ultimately a jury

16    instruction issue, and it's ensuring that the jury has the

17    right term to assess whether or not the defendants violated

18    Section 1512(c)(2).  So -- and I'm going to provide the

19    definition that we're operating with, but this is a Rule 12

20    stage and our obligation is to allege the statutory language

21    and allege adequate facts satisfying it; right?  And so --

22            THE COURT:  Yes, sir.  Well, yes, although

23    Poindexter -- although Poindexter was -- did find it

24    unconstitutionally vague; isn't that fair?  And that would

25    be a reason pre- -- at this stage for me to dismiss the

```
 1    count if it were unconstitutional.
 2              MR. PEARCE:  I -- so I -- yeah, and I -- and
 3    that's why I said I'm happy to answer and we'll fill out --
 4              THE COURT:  Okay.
 5              MR. PEARCE:  -- and explain why --
 6              THE COURT:  Right.
 7              MR. PEARCE:  -- it's not.  But Poindexter was not
 8    at a Rule 12 stage; right?
 9              THE COURT:  Right.
10              MR. PEARCE:  So -- and Poindexter also wasn't a
11    1512 case; right?  It was interpreting 1505.  The Court's
12    probably aware of the fuller history, but Congress came back
13    not immediately but in 1996 and applied a definition to 1505
14    essentially legislatively overruling Poindexter, and we make
15    these points in the brief.  It's all -- I want to address --
16    because I think they're related but not the same -- the
17    question of why it's not vague and, kind of, what our
18    definition is, although let me do it in the reverse because
19    I think that's perhaps more helpful.
20              We see "corruptly" as embodying -- "corruptly," as
21    used in 1512(c)(2), because I agree with my friend on the
22    other side, "corruptly," like "willfully," is a word that
23    will do different work in different statutes.  If --
24    1512(c)(2), similar to what the Seventh Circuit has done in
25    its jury instructions and what a number of other cases have
```

1    recognized, has a component of an intent to obstruct the

2    official proceeding -- so an intent piece -- and a

3    wrongfulness or a consciousness of wrongdoing piece.  Okay?

4    And it's those two parts -- those two components that make

5    up "corruptly."  And, you know, whether any set of facts

6    meets that, again, that's a jury determination; right?  But

7    those are the operative principles.  Cases since

8    Poindexter -- and, of course, Poindexter was decided 12

9    years before this particular statutory provision was even

10   enacted -- but the Government's aware of no cases under

11   1512(c)(2) that have ever held the word "corruptly" to be

12   constitutionally vague either facially or as applied, and I

13   take the challenge here to be an as-applied challenge.

14          Now, speaking specifically to Poindexter and the,

15   sort of, three reasons post-Poindexter why even that

16   analysis isn't particularly helpful here, one is, again, it

17   was limited to 1505 and Congress, sort of, weighed in and

18   essentially overruled that; second, the D.C. Circuit in

19   United States v. Morrison about four or five years after

20   Poindexter held that applying the analysis in Poindexter to

21   1512(b) -- not the not-yet-existing 1512(c) -- was not

22   constitutionally vague; and then the Arthur Andersen case in

23   2005, the Supreme Court's decision, again, it was a 1512(b)

24   decision, but it nonetheless was giving content to the term

25   "corruptly."

1           So all of that, I think, stands for the

2     straightforward proposition that "corruptly" is not a vague

3     term; right?  It's -- and it's -- and then to the extent it

4     is a more focused argument here, well, that, you know,

5     Mr. Nordean or some of the other defendants' actions were

6     not corrupt; were not adequately, you know -- he -- that he

7     didn't operate with the intent to obstruct the certification

8     of the Electoral College proceeding or he didn't act with

9     wrongfulness or consciousness of wrongdoing, construing all

10    of the allegations in the indictment as factually accurate,

11    I mean, you are talking about individuals storming up into a

12    building, trampling over barricades, many of them going

13    inside the building, you know, sort of, getting right up

14    into the face of law enforcement.  Will a jury ultimately

15    agree that that is adequately wrongful and evince the intent

16    to obstruct?  Maybe; maybe, not.  Certainly, a grand jury

17    was persuaded, and the Government thinks we will be able to

18    prove our case beyond a reasonable doubt, but it's certainly

19    not constitutionally vague, and there's nothing about the

20    term -- even though, yes, it is true, this particular

21    statute has not been used in the context of an obstruction

22    on Congress itself, but I think Your Honor noted that the

23    circumstances are unusual here, and it certainly falls --

24    and I know this is tailing back towards that first argument,

25    so I'll just make the point quickly -- within the plain

1    language of what the provision encompasses both in terms of

2    the official proceeding as well as the breadth of the

3    operative verbs in 1512(c)(2).

4         THE COURT:  I guess the question is, you know --

5    again, when you say intent and wrongfulness, you know, when

6    I read Poindexter, if I'm not mistaken, there --

7    "wrongfulness" was another term that the court in

8    Poindexter, sort of, thought, at least in that circumstance,

9    was -- if I'm not correct -- if I'm not mistaken, was

10   another term that the court there said, We don't think that

11   this gives much more texture to what we're describing --

12   what the statute is describing.  And, again, I guess you

13   would just say, Well, that's what -- wrongfulness is still

14   what would distinguish at least what the Government alleges

15   to have happened here versus what happened when Al Gore

16   litigated the case all the -- his electoral case all the way

17   to the Supreme Court.

18        MR. PEARCE:  So I'm not sure if the question is,

19   what would distinguish those two?  I mean, I would think --

20   I do not think that latter example is captured, right,

21   because I think what is embedded in "wrongfulness," it

22   includes -- I mean, my friend on the other side, sort of,

23   parses this out.  I mean, I think, you know, violating

24   another statute, we're not saying that is itself sufficient,

25   but I think that is absolutely part of the wrongfulness

```
1     inquiry; right?  I mean, I don't think that in the Al Gore
2     example, there's any other law that one could point to.
3     And, again, we're not saying that that's a sufficient
4     condition --
5               THE COURT:  Right.
6               MR. PEARCE:  -- to get you to wrongfulness, but
7     that's a relevant consideration as part of the wrongfulness
8     inquiry.
9               THE COURT:  Right.
10              MR. PEARCE:  So I think that would be a pretty
11    easy principle to knock out the Al Gore example and a
12    handful of others.
13              Now, again, and I'm sure the Court is aware of the
14    hearings in front of Judge Mehta and Judge Moss.  Are there
15    some hard cases at the borderlines?  Absolutely, there are.
16    I mean, there are always hard cases at the borderlines of
17    these things; right?  And so, you know, I know that in the
18    briefing -- and this didn't come up this morning in the
19    argument thus far -- but, you know, how do you distinguish
20    this from, say, the Kavanaugh hearings or something like --
21              THE COURT:  Right.
22              MR. PEARCE:  -- this; right?  And I think there's,
23    sort of, two ways to say that.  One is, you know, we've --
24    we articulate the principles about wrongfulness,
25    consciousness of wrongdoing and intention to obstruct.  Is
```

1    it possible that there were some individuals engaged on that

2    day that may have met those?  Possibly, there were.  The

3    Government didn't charge it.  I don't know the facts of

4    those particular cases well enough to say.  But it may well

5    be true that there were some individuals that would have

6    met, you know, both the intent aspect and the wrongfulness

7    aspect, but that's neither here nor there ultimately.

8              And then, you know, I think another way to, sort

9    of, think about this is, as Justice Kagan observed in her

10   dissent in the Yates case, like 1519, Section 1512(c)(2) has

11   no statutory minimum and a 20-year maximum.  So it's a broad

12   statute and it places faith in the judges to recognize that

13   there are, as Justice Kagan noted, sort of, obstructions

14   that run the gamut from minor to major, and so that there is

15   a sentencing function at the back end to ensure that

16   culpability of different defendants who may have violated

17   Section 1512(c)(2), have been prosecuted for it, you know,

18   are not all facing the same, you know, potential punishment

19   for it.

20             I can say more about that.  I -- there's also, of

21   course, the question about, sort of, Yates more broadly and

22   ejusdem generis, but I don't want to bunt onto a new topic

23   if there are, sort of, other areas here that the Court wants

24   to explore.

25             THE COURT:  There is one more area that I want to

1  explore that moves on to a totally different part of the

2  indictment.

3          I must say, so the argument about 231(a)(3) and

4  the Government's reliance on the "federally protected

5  function" hook, I found this not, you know, terribly

6  persuasive.  There's a part of the statute -- or I think the

7  Government lays out at one point that the case law suggests

8  that there has to be a powerful showing that department --

9  that the language in that statute, department or agency of

10  the United States, covers something other than the executive

11  branch.  And explain to me your argument about how you get

12  there.

13          MR. PEARCE:  So -- absolutely, but let me just set

14  it up with one preparatory statement that I think may be

15  helpful for the Court --

16          THE COURT:  Please.

17          MR. PEARCE:  -- which is in our reply -- or I

18  guess, our surreply, we identified a number of different

19  federally protected functions on which the Government could

20  rely to prove that element, and I want to focus on three.

21  And I take the Court's question to be focused on whether the

22  certification of the Electoral College vote qualified, and

23  I'll answer that question, but I -- but there are also two

24  others, the Capitol Police's protection of the United States

25  Capitol and the Secret Service's protection of the Vice

1    President and the Vice President-elect, that, as I

2    understand Your Honor's question, do not implicate that

3    question at all.  And so in either of those, that's, sort

4    of, sufficient to establish that element without need to

5    engage the admittedly somewhat harder question about the

6    certification of the Electoral College vote.

7              THE COURT:  Right.  So I mean, although the

8    Capitol Police are still part of -- I mean, the Capitol

9    Police are -- they're not part of the executive branch, are

10   they?

11             MR. PEARCE:  So what 232 -- and I believe it's --

12   Subsection (3) talks about is any department, agency, and

13   the Capitol Police is an agency under 18 U.S.C. 6, in our

14   view.  And so it doesn't matter --

15             THE COURT:  Department, agency, or instrumentality

16   of the United States.

17             MR. PEARCE:  That's right.  And "instrumentality"

18   seems to be a bit of an odd term, but --

19             THE COURT:  Right.

20             MR. PEARCE:  -- "department" and "agency" are the

21   ones that do the work.  The Capitol Police is an agency.

22   They -- and I'll just run through these because I think

23   they're more quickly stated than the question that you

24   posed, but the Capitol Police is an agency under 2 U.S.C.

25   1961.  They have a statutory obligation to protect the

1    United States Capitol 24 hours a day.  And so they are

2    always engaged in that federally protected function.  Of

3    course, the indictment alleges on the afternoon of January

4    6th, various officers -- some of the Capitol Police; some

5    from the Metropolitan Police Department -- were obstructed

6    or interfered with in the midst of a disorder that adversely

7    affected that federally protected function.  So that's one

8    way to get there.  The other -- and then I promise I'll get

9    back to the question -- is the Secret Service.

10              THE COURT:  No, it's okay.

11              MR. PEARCE:  Under 18 U.S.C. 3056, the Secret

12   Service has the federal obligation to protect the Vice

13   President as well as the Vice President-elect.  Both of

14   those things were happening on the afternoon of January 6th.

15   And we could prove to a jury, and quite well will prove to a

16   jury, that the civil disorder -- because it doesn't have to

17   be the defendant-specific actions -- but the civil disorder

18   adversely affected or obstructed in any way or degree the

19   protection of the Vice President and the Vice

20   President-elect, (inaudible.)  So -- and I don't think -- I

21   don't hear my friend on the other side to make any argument

22   that the Secret Service doesn't qualify in that respect as a

23   department now under the Department of Homeland Security; at

24   one point, of course, under Treasury.

25              So whatever hard questions there are on whether

1    the certification of the Electoral College vote fits the

2    bill, those don't arise with respect to those -- the two

3    that I just discussed.  Now, as to that certification,

4    there's, sort of, two ways that we get there.  And I think

5    what your question alluded to was admittedly the more

6    challenging argument, although one that I'm going to make

7    and that the Government stands behind, which is that we

8    are -- the -- obviously, the entity that's doing the

9    certification as a whole is Congress.  And my friend on the

10   other side is right that typically -- so under 18 U.S.C. 6,

11   the idea of a department is -- regularly does not include

12   Congress unless the context suggests a broader meaning, and

13   that clause is the one that we think does the work here;

14   that the context of 232 -- 231(a)(3), in conjunction with

15   232(3), does suggest a broader meaning, and the reason is

16   this.  What the federally protected function element is

17   doing, just like the interstate commerce element, is

18   providing a basis for federal prosecution; right?  It's not

19   part of the obstructive conduct of the -- or, you know, the

20   actus reus or the mens rea.  It's what gives federal -- what

21   provides federal jurisdiction.  And it is almost impossible

22   to imagine that Congress would not have provided or intended

23   that a civil disorder that centered on an attack -- the very

24   seat of Congress itself, the United States Capitol, was

25   itself not a federally -- not engaged in a federally

1    protected function.  I grant you that the textual argument

2    is a harder row for us here and, under Hubbard, I think it's

3    true that that's a challenging piece, but I do think -- I

4    mean, look, if the civil disorder had been outside the very

5    building I am in right now, the Department of Justice,

6    there's no question; right?  Because that's a department.

7    No one has to question it.  But what Congress typically does

8    when it uses the interstate commerce piece is to reach

9    broadly and it does the same with the federally protected

10   function.  Now, again, it's a harder argument for us.  So I

11   recognize there are weaknesses to it, but I do think that

12   that is what Congress intended and that is the way the

13   statute ought to be read.

14          The second way that we rely on that -- the

15   certification itself -- the certification of the Electoral

16   College vote is that one of the participants there was the

17   Vice President, albeit in his role as the Senate -- the, you

18   know, President of the Senate, but he is an officer of an

19   agency, which is the Office of the Vice President, and he

20   was engaged in his role as the, you know -- presiding as the

21   President of the Senate on the afternoon of January 6th in

22   the statutorily and constitutionally required job of

23   certifying the Electoral College vote.  And so that is

24   sufficient to prove -- to establish the federally protected

25   element [sic] function with respect to the certification of

 1     the Electoral College vote.

 2              THE COURT:  All right.  I understand the argument

 3     now, and I take your point on the -- those other -- that --

 4     ways of meeting the federally protected function

 5     requirement.

 6              MR. NICHOLAS SMITH:  Your Honor, may I respond to

 7     those?  Because we didn't have an opportunity to address

 8     that --

 9              THE COURT:  You -- I will give -- because, again,

10     it's your motion, I will give you three minutes, Mr. Smith,

11     to respond to anything the Government -- any point the

12     Government has made.

13              MR. NICHOLAS SMITH:  Your Honor, may I have five

14     minutes?  And we will stick to that.

15              THE COURT:  All right.  We'll stick to five.

16              MR. NICHOLAS SMITH:  Okay.

17              Your Honor, my colleague with the Government said

18     that -- beginning with Section 1512 and the official

19     proceeding -- that there's a broader definition of "official

20     proceeding" in Section 1512(c)(2) than in Section 1505.

21     What does that -- what does the Government mean by

22     "broader"?  The provision 1515(a)(1) says, Proceeding before

23     Congress.  The relevant term we're interpreting is

24     "proceeding."  It's -- there's no broader definition here.

25     So what the Government means by "broader" is, again, what

1      Congress could have said but did not.  I think we've shown

2      that that's not a proper interpretive principle.  The

3      assumption is Congress legislates against the judicial

4      interpretation and legislative use of "proceeding."  So

5      there is no broader.  There's no broader here.

6              The Government is contending that formality per se

7      establishes the definition of "proceeding" that Congress was

8      legislating against.  There is no decision that holds that

9      formality per se satisfies the interpretation of

10     "proceeding" in the obstruction statutes.  There is -- the

11     through-line, Judge, is a truth-seeking function under

12     threat of a penalty.

13             The Government says, on "corruption" -- on

14     "corruptly," Your Honor, that this is a jury instruction

15     issue.  Not if none of the Government's definitions work.

16     We don't need to reach jury instructions, because the

17     Government hasn't offered a definition.  So what does it

18     offer?  The Government -- the Court will think back on what

19     Mr. Pearce said, and Mr. Pearce frequently said, quote, It

20     is not vague.  It is not vague.  But it is not defining what

21     "it" is.  The Government's strategy here is to not offer a

22     definition so as to not be pinned down at the time of jury

23     instructions, but it's not actually -- it's very

24     articulately explaining answers but which are hollow.  They

25     don't explain what it means by "corruptly."  And I think

1          Mr. Pearce did not address why the Government is not

2     satisfied by the consensus definition cited by Justice

3     Scalia in the Aguilar concurrence and dissent which is

4     "corruptly" means an action done to obtain an improper

5     material advantage for oneself or an associate, Your Honor.

6          The -- Mr. Pearce raised the guidelines -- the --

7     excuse me, the statutory -- the penalties.  This is an

8     incredibly important point, Your Honor.  The Government has

9     conceded in its briefing in the 1512 cases that this is not

10    the administration of justice.  We can have an official

11    proceeding when the administration of justice is not

12    involved.  That means, Your Honor, if these defendants are

13    found guilty of Section 1512, they can't be sentenced under

14    the guidelines, Your Honor, because all of the relevant

15    obstruction of justice guidelines apply to interference

16    with, quote, the administration of justice.  We can submit a

17    supplement to Your Honor if Your Honor wants to see it, but

18    the Government has virtually conceded a dozen times that

19    this does not involve the administration of justice.  So we

20    have a freak crime, a novel crime, that can't be sentenced

21    under the guidelines.

22          If Your Honor compares the statutory maximum in

23    1512 and 1505, the Government is positing that 1505 has a

24    5-year statutory maximum; 1512 has a 20-year.  That means

25    the Government is positing that threatening Congress with

1    force --

2              THE COURT:  Right.

3              MR. NICHOLAS SMITH:  -- during the official

4    proceeding is -- Congress, (inaudibly) -- significantly less

5    seriously than not threatening Congress with force.  That's

6    just another way of showing that this doesn't really work,

7    Your Honor.

8              On Section 231, the federally protected function,

9    (inaudible) -- none of the defenses Mr. Pearce just offered

10   work and for various reasons.  As Your Honor pointed out,

11   the U.S. Capitol Police is not an executive agency.  That's

12   the Oakar and Dean decision in the D.C. Circuit.  Those

13   decisions say that Section 6 refers after Hubbard to

14   executive departments and agencies.  That's binding law in

15   this court.  The U.S. Capitol Police is not an executive

16   agency.

17             On the U.S. Secret Service, Your Honor, there's a

18   tautological problem.  Section 231 says that interference

19   with law enforcement during a civil disorder that affects

20   interstate commerce or a federally protected function is the

21   crime.  What the Government is doing is collapsing the

22   interference with law enforcement section and the federally

23   protected function section.  The -- according to the

24   Government itself, the Secret Service are a law enforcement

25   agency.  The statute Mr. Pearce cited says they're a law

1    enforcement agency.  They were enforcing the law; therefore,

2    the Government is saying that the Secret Service were both

3    the function that is -- the function that protects the

4    federally protected function and the federally protected

5    function itself.  If that's the case, there's no need for a

6    federally protected function in the statute.  The statute

7    could merely say interference with law enforcement during a

8    civil disorder is the crime.  It says a civil disorder that

9    affects -- adversely affects a federally protected function.

10   If just messing with law enforcement during a riot, in

11   short, is enough, there is no need for the definition of --

12   there's no need for the element of federally protected

13   function.

14          Then, Judge, one last point is the grand jury

15   problem.  If you look at the DOJ's website, at every single

16   complaint -- criminal complaint that alleges -- it's all

17   lined up -- that alleges Section 231(a)(3), they all say the

18   same thing, Judge.  They all say the joint session of

19   Congress is the federally protected function.  That's the

20   allegation that went to the jury -- the grand jury.  You

21   have a massive presentment problem, Your Honor.  The

22   presentment law; the Fifth Amendment law says that the

23   Government has to allege the specific facts that satisfy the

24   elements of an offense to the grand jury.  There's going to

25   be -- if this problem is not fixed -- and it needs to be

1    fixed, and the Government has waited to see whether the

2    courts will make it -- fix it -- there's going to be

3    variance issues; there's going to be constructive amendment

4    issues because the right facts were not put forward to the

5    grand jury.  All of this was done to avoid the Commerce

6    Clause argument that the defendants would make.  So there's

7    a presentment problem to Your Honor.

8              On the last argument Mr. Pearce made that the

9    joint session itself could argue -- could -- overcomes the

10   Hubbard presumption that "department" and "agency" do not

11   refer to the judicial or legislative branch, in Hubbard

12   itself, the court found that the old Section 1001 statute

13   did not make that powerful showing simply because the

14   statute did not define the function to include the branch of

15   government at issue which was courts.  That's the standard,

16   whether the statute defines the function to include the

17   entity that we're positing has a federally protected

18   function.  Section 231 does not do that.  Mr. Pearce did not

19   point to a section in 231 that says that the Congress is a

20   federally protected function.  There isn't.  So the default

21   provision applies.  That's Hubbard.  The default provision

22   under Oakar and Dean in the D.C. Circuit says the executive

23   departments and agencies.

24             THE COURT:  All right.  Thank you, Mr. Smith.  You

25   are over your time, but thank you.

1          Mr. Pearce, I'm going to give you just a quick

2      opportunity, because this back-and-forth was really not

3      captured in the papers.

4          The last two points that Mr. Smith made, broadly

5      speaking, one, his response on the Secret Service that

6      you're, sort of, bootstrapping in a way or that using the

7      Secret Service as the federally protected function, sort of,

8      isn't consistent with the statute, could you address that,

9      and also, this issue -- this presentment problem about

10     whether the -- and I haven't looked because this wasn't -- I

11     don't recall this really being briefed -- I haven't looked

12     at the statute -- at the indictment for this, but whether

13     there would be some sort of presentment problem if, for

14     example, I were to find that, let's just say, the Secret

15     Service satisfied the federally protected function portion

16     of the statute but that, maybe, the grand jury wasn't ever

17     given facts that would have -- that -- and, in fact, the

18     defendants weren't indicted on facts that would meet that

19     definition in that way.

20         MR. PEARCE:  Sure.  I'll take them in that order,

21     Your Honor.

22         As to the first, there's no collapsing that

23     happens.  The federally protected function is a separate

24     identifiable function that the Government has to establish.

25     And if that is related to the obstructive acts that the

1     defendants also engage in, there's no problem or tautology

2     there.  And, in fact, there's not a whole lot of case law on

3     Section 231, but there are a handful of cases.  We do cite a

4     couple in our surreply, Dodge and Jaramillo.  One is a

5     District Court case; one is an Eighth Circuit case.

6                But, you know, other than the, you know -- putting

7     aside just the sparse language, the -- sorry, the sparse

8     decisions on Section 231(a)(3), right, I mean, understanding

9     what the statute is doing, it is interested in obstruction

10    of law enforcement in the midst of a civil disorder; right?

11    What -- as we were discussing earlier, you know, what

12    provides federal jurisdiction is whether that civil disorder

13    is affecting in some way either interstate commerce or the

14    federally protected function.  It would be perverse to say

15    that if, you know, law enforcement were out patrolling and

16    then they were attacked and they were patrolling pursuant to

17    a -- let's just acknowledge it's a federally protected

18    function; that's not an issue -- and then they're attacked

19    and they're interfered with and they're obstructed, that

20    that would somehow fall outside of the statute.  That's

21    probably precisely what Congress had identified Section 231

22    to do; right?  There's no carveout to say, Oh, sorry, law

23    enforcement officer, because you were engaged in a federally

24    protected function, you, therefore, are not an eligible

25    victim or you -- or there's no prosecution available because

1    you've been obstructed or interfered with as part of a civil

2    disorder.  So there's nothing that -- sort of, as a matter

3    of logic that follows from that nor, unsurprisingly, did the

4    case law bear that out.

5          Now, as to the presentment issue -- I mean, my

6    friend on the other side, Mr. Smith, is, sort of,

7    speculating about what the grand jury did or did not hear

8    based on complaints.  And ultimately, you know, whether the

9    -- I suppose probably the best case on the grand -- the

10   reviewability of the grand jury's work is the Kaley Supreme

11   Court decision in 2014 which says when the -- when a grand

12   jury issues an indictment, basically, that's not a process

13   that's subject to review, and if there is some issue about

14   the adequacy of the evidence before the grand jury, under

15   the Nova Scotia Supreme Court case, that's not prejudicial;

16   that's ultimately something that the petit jury can resolve.

17         Now, you know -- so in most respects -- or it's

18   not actually subject to a challenge at this stage of the

19   litigation and arguably full stop.  But it also doesn't

20   implicate a variance problem; right?  I agree that there

21   would be a potential variance problem if the indictment had

22   said -- again, just to posit a hypothetical to make this

23   clear -- the indictment had said, A federally protected

24   function, comma; namely, the certification of the Electoral

25   College vote.  And let's just say -- although I certainly

1    hope that Your Honor does not reach this conclusion and,

2    frankly, may not need to reach this conclusion -- that the

3    certification of the Electoral College vote is not, in fact,

4    a federally protected function.  So then we'd have a

5    variance problem if we came to trial and started to say,

6    Well, you know what?  It doesn't matter.  We're actually

7    relying on the Secret Service.  But the indictment tracks

8    the statutory language and it says, A federally protected

9    function.  And so that's not subject to a variance problem.

10   And, as I said, under Kaley and Nova Scotia, it also does

11   not present a presentment problem at this point.

12             THE COURT:  All right.  Thank you, everyone, for

13   your arguments and for preparing so diligently for today.

14             I want to now turn to just scheduling some things.

15             What is the -- here is my thought about things

16   going forward.  I did check -- because -- especially given

17   various portions of the briefing both in this motion to

18   dismiss and with regard to the motion for -- to reopen the

19   bond proceedings, I did go ahead and check to see what the

20   first available trial date we could have in this case would

21   be.  And so what I'd like to do -- regardless of when we

22   come back next, what I think it makes sense to do is grab

23   the first available trial date that we can have in this

24   courthouse.

25             Let me ask first the -- from the Government's

```
 1    perspective -- I took a guess at -- when I was looking at

 2    the calendar and trying to figure out when our first trial

 3    date might be, I took a guess as to how long a trial this

 4    might be, but let me ask either Mr. Jones or Mr. McCullough

 5    to let me know how long they think the Government's case

 6    might be in -- the Government's case in chief might be in

 7    this case.

 8              MR. JONES:  Yeah, always hard to predict, Your

 9    Honor, but I think we'd say two to three weeks.  I think

10    that's on the conservative side in terms of blocking time.

11    At this stage, that's our best estimate.

12              THE COURT:  Okay.  And let me hear from -- I guess

13    I'll start with Mr. Nordean's counsel.  Obviously, again,

14    even harder to anticipate on your end.  But what's your

15    sense of how much I should try to block off in terms of

16    allowing -- if I'm blocking off two, three weeks for the

17    Government's case, how much if -- and any leeway I should

18    consider when I think about your case, Mr. Smith?

19              MR. NICHOLAS SMITH:  Thank you, Judge.

20              So like Your Honor just said, this is really

21    difficult to wrap our heads around right now when we don't

22    have much access to the defendants themselves, but I think

23    that this tees up an important point about the case, you

24    know -- the trial's calendaring here which is that Emily

25    Miller, the discovery coordinator for the Government on the
```

1    January 6th cases, said yesterday in a hearing that general

2    January 6th discovery and the Brady obligation discovery

3    won't be ready by next March, Your Honor.  And I'm not sure

4    if Your Honor's familiar that the Government has gone to

5    each case -- calendared case -- January 6th case and moved

6    to vacate the -- those trials.  So Judge, I think we're

7    getting slightly different reads from this team and the

8    general discovery production deadline --

9            THE COURT:  Well --

10           MR. NICHOLAS SMITH:  Mr. Jones said that -- I

11   think in the hearing at 10:00 o'clock that the defense

12   review of general discovery should begin shortly.  What --

13   if Your Honor closely reviews the fine print in the status

14   reports here that the Government's actually just referring

15   to productions in the future to the Federal Public

16   Defender's Office in D.C., not to individual defense counsel

17   --

18           THE COURT:  Mr. Smith, maybe, let me start again.

19   I hear what you are saying.  The only thing I can do right

20   now is try to get the earliest possible trial date that this

21   court can accommodate.  And we'll -- I'll be riding the

22   Government about discovery.  That will be a separate issue.

23   But -- and I get that it's impossible for you to tell -- for

24   -- or it's difficult for you to estimate what I should --

25   how much time I should block off, but if I'm going to try to

1    do this, it seems to me a separate issue from pressing the

2    Government here.  Unfortunately, because this is a

3    four-codefendant case, we have to -- under the current

4    standing order and the protocols with how our court is

5    handling the virus, we need to use the ceremonial courtroom

6    in our courthouse and there will be no other -- and that's

7    -- that courtroom's also used for voir dire in every other

8    case.  So it's going to be an issue blocking off, let's

9    say -- two to three weeks from the Government's perspective.

10   I -- my estimate was to block off four weeks at least as a

11   -- as, kind of, a ballpark here.  But I want to get a trial

12   date down, and then we can talk about when the Government --

13   when we'll be able to press the Government to have discovery

14   ready, and if that's not in time for the trial, we'll

15   certainly see that coming and address it.

16          So Mr. Smith, what do you think -- do you think

17   four weeks -- if I block off four weeks, that will be

18   ultimately adequate?  Again, with the understanding you're

19   at a bit of an information deficit at this point.

20          MR. NICHOLAS SMITH:  Your Honor, I think, yeah,

21   with that said -- with that limitation said, I think four

22   weeks, it sounds roughly like a ballpark answer.  But, you

23   know, Judge, like one of the points that the courtroom

24   deputy made to us before the judge entered the courtroom is

25   that Mr. Nordean's jail is -- no longer has VTC availability

```
 1    at all, Your Honor.  I think that goes to one of the filings
 2    we've made in court relating to our bail motion --
 3               THE COURT:  I understand.  I understand.
 4               MR. NICHOLAS SMITH:  So --
 5               THE COURT:  I understand.
 6               MR. NICHOLAS SMITH:  -- it's just very difficult,
 7    Judge, in these circumstances where we don't know what
 8    percentage of discovery we've received, we're not in regular
 9    communication with the clients, and --
10               THE COURT:  All right.  Mr. Hull, four weeks sound
11    like a ballpark reasonable estimate to you just to get
12    something on the calendar at this point?
13               MR. HULL:  Your Honor, I've thought a lot about
14    this, and I have the same constraints and disadvantages that
15    all defense counsel do in this case where all four
16    defendants are so important to the Government that, I guess,
17    all discovery, kind of, applies.  So my estimate would be
18    six based on what I know now, and I would even throw in the
19    word "conservative."  Start to finish, everyone --
20               THE COURT:  "Conservative"; meaning, that might be
21    an overestimation?  I'm just --
22               MR. HULL:  No, no, no, start to finish, everyone,
23    and I'm presupposing that all four defendants will be in the
24    case and be part of the trial, the Government's case in
25    chief.
```

```
 1              THE COURT:  Right, right, right, right.  Mr. Hull,
 2    what I mean to say is, when you say "conservative"; meaning,
 3    it's --
 4              MR. HULL:  Maybe more than six.
 5              THE COURT:  Okay.  Okay.  All right.
 6              Mr. Moseley, I --
 7              Well, actually, let me turn to Ms. Costner.
 8    (Inaudible) -- question to you about how much time you think
 9    I should block off.
10              MR. KNIGHT:  Your Honor, Ira Knight for
11    Mr. Donohoe.  Do you --
12              THE COURT:  Oh, I'm sorry.
13              MR. KNIGHT:  -- (inaudible) -- that question?
14              THE COURT:  Yes, sir.
15              MR. KNIGHT:  Thank you.
16              I -- for our case, I think we could estimate about
17    a week at this point based on the availability of
18    information that we've got, but I think we could prepare our
19    case to present it in -- for a week.
20              THE COURT:  All right.  And, Mr. Moseley, I don't
21    know that -- I'll hear from you, although you're so new to
22    the case, I don't know.  You may not have much of a view to
23    present.
24              MR. MOSELEY:  Well, I have a couple comments,
25    although I'm probably, you know, not the best at estimating
```

 1    time at any case, but I assume that includes jury selection,
 2    and I think it might be impossible to proceed without
 3    contemplating the possibility that the entire trial might
 4    not be consecutive.  If there are additional days, that that
 5    might be something that we would consider.  And there's
 6    going to be a lot of overlap between the defendants, of
 7    course.  So -- and my client wants to get this, you know,
 8    going if he's in detention.  So I guess the best speculation
 9    I can give would be that, you know, with those
10    qualifications, four weeks might, you know -- could be
11    something we should put on the calendar.
12              THE COURT:  All right.  What I had done was
13    looking at the calendar and I had, in my head, thought four
14    weeks was about -- was my estimate without hearing from you
15    all, but, frankly, it really doesn't matter.  The first slot
16    at least at this point that we could do a four-week trial --
17    now, I believe a six-week trial, frankly, wouldn't change
18    this because I think six weeks is still available at this
19    time -- is starting on May 18th.  So what I -- for jury
20    selection, Wednesday, May 18th.  So that could change.  It's
21    possible that -- it's possible, for example, that dates
22    could free up to make something available sooner, but that's
23    -- given, I think, that they've already blocked off a number
24    of multi-week -- blocked off slots in the -- for the -- in
25    the ceremonial courtroom already, I think, three or four

1    weeks at a time for a number of other, actually, January 6th

2    cases, that's the first date we can get.  So my request --

3    this has nothing to do, I mean, with the other motions that

4    are outstanding before me.  But is there any reason why

5    anyone could think that I shouldn't grab that date right now

6    so that we can have that on the calendar?

7              Mr. Jones or Mr. McCullough, any reason I

8    shouldn't do that?

9              MR. JONES:  No, Your Honor.  Given that the

10   defendants are currently detained, you know, we certainly

11   think the earliest trial date makes the most sense and we

12   think that is a reasonable timeline.

13             THE COURT:  Right.  And, look, if I -- if, for

14   whatever reason one way or the other, they -- that status

15   changes and the defense wants to relax that trial date,

16   obviously, I'll hear from them on that, but I'm just

17   operating under the assumption for the moment -- which is

18   the reality at the moment -- that they are detained.

19             Mr. Smith, any reason you think I shouldn't grab

20   that trial date and reserve six weeks?

21             MR. NICHOLAS SMITH:  Judge, we're not -- I don't

22   think we're opposing that, but we think it might be

23   appropriate to address the bail motions before we decide

24   rather than the opposite because --

25             THE COURT:  Right.  I -- and that's why I'm saying

1    -- Mr. Smith, I hear -- I understand your concern, but if I

2    don't grab this right now with all -- I mean, I don't have a

3    ruling for you on the bail motion right now.  And I'm afraid

4    if I don't grab this right now, you're going to be pushed

5    further into the future.  That's what I was saying.  If we

6    -- if I set it now and I decide your bail motion releasing

7    your clients and you want to come back and say, We want more

8    time, for whatever reason, we can do that, but I just can't

9    ratchet it the other direction.

10           MR. NICHOLAS SMITH:  Well, Judge, if that's what

11   you're doing, then we have no objection, but if we're going

12   to hear that, you know -- it, kind of, depends on how we're

13   able to work with our clients if, you know -- given the

14   communication issues right now.  I think if Your Honor's

15   saying that he's inclined to grant the bail motions, then we

16   have no objection to the trial date right now --

17           THE COURT:  That --

18           MR. NICHOLAS SMITH:  -- but, you know, if -- I

19   mean, it's just so -- I mean, you know, kind of, having to

20   say this before we know how we're going to be working with

21   the defendants is really -- it's, like, shooting in the dark

22   or something, like --

23           THE COURT:  All right.  I take your issue, but I

24   -- again, I think I need to grab this date, and I'm going to

25   -- look, my resolution of the bond review motion is entirely

1    independent of this.  And all I'm representing to you,

2    Mr. Smith, is if I decide that -- to grant the bail motion,

3    you're going to have every opportunity to come back to me

4    and say, for whatever reason, We want to relax the -- we

5    want a trial date later in time.  My only -- and to be

6    clear, we're going to be dealing with the issues you might

7    raise.  Let's say I deny the bond motion.  If we get close

8    to this trial date and you're telling me -- and we'll get to

9    this -- that, for whatever reason, you can't be prepared,

10   well, we're going to know that well in advance in terms of

11   discovery, in terms of the access to your client, and all

12   the rest of it.  So --

13              MR. NICHOLAS SMITH:  Yeah.  Judge, we agree with

14   the first prong of the analysis, but the second -- we can

15   tell you right now what access to our client is.  We can

16   tell you right now that it's very, very challenging and that

17   we've heard this is -- could be a six-week case and I just,

18   you know -- Judge, I think we just would like to -- I mean,

19   if you're -- if that's a -- if the first leg of the analysis

20   is what the Court is inclined to do, then Your Honor's

21   correct.  We have no objection to setting the trial date

22   now.  But if Your Honor's inclined to deny the bail motion

23   which would mean, you know, pretrial confinement of longer

24   than a year, then I think, you know, it's really hard to

25   predict what we need to do in that case to --

1          THE COURT:  All right.  Mr. Hull, why don't I hear

2     from you.

3          MR. HULL:  Grant the bail motion, I'll do it

4     earlier, but I think right now, we need a placeholder and

5     that makes a lot of sense and we can go forward or either

6     way on it, but yes, I think we need a date.

7          THE COURT:  Okay.  And, Mr. Knight?

8          MR. KNIGHT:  Yes, Your Honor.  I think grabbing

9     the first available date's the appropriate thing to do.  It

10    puts us on the calendar.  It lets us react appropriately if

11    the situation changes or develops in the future.

12         THE COURT:  All right.  Mr. Moseley?

13         MR. MOSELEY:  I think I've said it.  I think it's

14    impossible to know, and I think that's the best possible

15    conclusion at this point.

16         THE COURT:  All right.  What -- so I will set

17    this, you know, for purposes of our scheduling, then, for

18    jury selection on May 18th and we will block off six weeks.

19    Obviously, as I've mentioned here, that is subject to change

20    one direction -- well, earlier if possible and everyone

21    would agree, but in particular into the future --

22    particularly if I grant the bond motion, it may be that the

23    -- all the parties want to push it into the future, and I

24    would consider that, of course.

25         The next -- so my next, then, sort of -- where we

 1    go from here, my suggestion is we set this out for -- I
 2    don't want to set it out for a long period of time, because
 3    I do want to make sure discovery is proceeding and know
 4    where that stands and you all are going to be getting
 5    answers from me on the bond review and on some of these --
 6    obviously, the issues we've briefed today.  So my thought is
 7    to set it out for somewhere between 30 to 45 days from now.
 8    We'll come back and you'll either -- you'll certainly have a
 9    review -- you'll certainly have an answer from me on the
10    bond review.  And if I want to put my -- all my thoughts on
11    -- you'll either have a piece of paper from me on that or I
12    will certainly -- I'll just get the attorneys together on
13    the line and -- like I did the last time -- and let you know
14    what my ruling is on the bond review.  And, frankly, same
15    thing with regard to the motions we've -- the parties have
16    briefed today or argued today.  I'll either -- on that,
17    whether I get you something orally or in writing, it will be
18    -- it will certainly be sooner rather than later.  But my
19    thought is if we put the time in today to come back
20    relatively soon, it will make sure I get you what you need
21    and I -- and then we can talk at that point about where
22    discovery is and, frankly, if I deny the bond review
23    motions, what we can discuss at that next hearing is -- are
24    the -- these access to -- the issues that defense counsel
25    have been having in terms of access to their client.

  1              So let me ask Mr. Jones or Mr. McCullough what you

  2    think about coming back in 30 or -- 30 to 45 days.  I think,

  3    Mr. Jones, you might have said 60 days before, but I'd

  4    rather it be sooner and go from there.

  5              MR. JONES:  Sure, Your Honor, and I think I said

  6    30 to 60.  So I think we're --

  7              THE COURT:  Okay.

  8              MR. JONES:  -- on the same page there.

  9              THE COURT:  All right.  Mr. Smith, your view on

 10    all of that?

 11              MR. NICHOLAS SMITH:  Judge, we would just request

 12    that we be able to address the access to counsel issues if

 13    the Court would like -- needs more information to address it

 14    before the decision rather than after, because we think it's

 15    a part of the decision-making process.

 16              THE COURT:  Well, I have -- no, I -- when I say

 17    address, I have your -- I mean, I -- you've laid it all out

 18    and I have those.  To the extent I'm going to consider those

 19    and the bond review motion, I think I have what I need.  My

 20    point is, you know, frankly -- if I deny them, I think it --

 21    if I deny the bond review motion, it seems to me it behooves

 22    me to get under the hood and be more proactive to make sure

 23    you can get to your client.  I don't know, you know -- we

 24    may run up against the limits of my authority here.  I don't

 25    know.  But it will be on my agenda front and center if I

1    deny the bail -- the bond review motions.  So that's my

2    point.

3            But coming back in about that amount of time, does

4    that seem reasonable to you, Mr. Smith?

5            MR. NICHOLAS SMITH:  It does, Your Honor.  I don't

6    know if we're going to be able to have, you know -- add

7    much about the access to counsel issue.  It's -- we've got

8    affidavits on the record and, you know, we've spoken to the

9    officials at the jail and everything else and they've told

10   us that there's no access.  There's no VTC access.  So

11   that's our response, Judge; that we don't have -- I think

12   this is fully briefed right now, and if we come back in 30

13   days, I think the response is probably going to be the

14   same --

15           THE COURT:  Mr. --

16           MR. NICHOLAS SMITH:  -- but there -- yeah.

17           THE COURT:  Mr. Hull --

18           MR. NICHOLAS SMITH:  We have --

19           THE COURT:  -- what's your view --

20           MR. NICHOLAS SMITH:  -- (inaudible.)

21           THE COURT:  Mr. Hull --

22           MR. HULL:  My --

23           THE COURT:  -- what's your --

24           MR. HULL:  My sentiments, as a preparatory

25   comment, are the same as Mr. Smith's.  But how about October

```
 1    19th or the week of October 18th?  No later than that.

 2               THE COURT:  That's closer to -- yeah, that --

 3               MR. HULL:  That's 30 days, I think.

 4               THE COURT:  Roughly, that week would be -- I think

 5    that's doable.

 6               Mr. Knight, your view?

 7               (Brief pause.)

 8               MR. KNIGHT:  I'm sorry, Your Honor.  I flipped

 9    over to the calendar there to check Mr. Hull.  And I think

10    that that suggestion is a good one.  That week seems

11    appropriate and we'd be able to check in at that point.  I

12    agree with that.

13               THE COURT:  Okay.  Mr. Moseley?

14               MR. MOSELEY:  Yes, Your Honor.  I agree.  I --

15    about access, I understand you're talking about taking

16    measures.  I don't know why COVID-19 money couldn't help

17    with their ATC [sic] connection, but I think all of that

18    sounds good to me.

19               THE COURT:  All right.  So let's go ahead --

20               (Brief pause.)

21               I'm going to --

22               (Brief pause.)

23               I know it's one more -- well, no, we can do it.

24    We can do it.  I think I should be able to do it.

25               (Brief pause.)
```

```
 1              Let me throw out one more week.  It would be
 2    Monday, October 25th, at 2:00 o'clock.  It's just one -- the
 3    following week after what you asked for, Mr. Hull.
 4              Is that doable --
 5              THE DEPUTY CLERK:  Judge Kelly --
 6              THE COURT:  Yes?
 7              THE DEPUTY CLERK:  -- I do know that --
 8              THE COURT:  Right.
 9              THE DEPUTY CLERK:  -- the afternoon is not
10    available for a couple -- because of magistrate cases --
11              THE COURT:  Right.  Right.  All right.  And I'm
12    just thinking also about the various connectivity issues
13    with the various defendants.
14              Ms. Harris, is there any reason why we wouldn't be
15    able to do it the morning of the 26th with regard to, like,
16    connectivity issues with each defendant?
17              THE DEPUTY CLERK:  So the morning of the 26th
18    should be fine, although I can't speak for Defendant Rehl
19    because -- I can get a confirmation rather quickly in the
20    next couple of days for --
21              THE COURT:  Right.
22              THE DEPUTY CLERK:  -- the current three
23    defendants, but Mr. Rehl, I would not know the status until
24    the --
25              THE COURT:  Right.
```

 1              THE DEPUTY CLERK:  -- (inaudible) -- before.

 2              THE COURT:  No, that's an ongoing -- that's been

 3     an ongoing point of frustration.

 4              All right.  So let's --

 5              MR. DAVID SMITH:  Your Honor --

 6              THE COURT:  Yes?

 7              MR. DAVID SMITH:  Yeah.  Sorry to butt in here,

 8     but we have a status hearing scheduled in another Capitol

 9     riot case on the morning of the 26th.  So you know, we'd

10     have to work around that somehow.

11              THE COURT:  Okay.  What time is that one scheduled

12     for?

13              MR. DAVID SMITH:  That's at 10:00.

14              THE COURT:  All right.  How does, then, 11:00

15     o'clock work for the 26th?  Let me ask the Government at

16     least first.

17              MR. JONES:  Yes, Your Honor.  That date appears to

18     work for the Government.

19              THE COURT:  All right.  Mr. --

20              MR. NICHOLAS SMITH:  Yes.  Yes, Your Honor.  That

21     works.

22              THE COURT:  All right.  Mr. Hull?

23              MR. HULL:  That works.

24              THE COURT:  Mr. Knight?

25              MR. KNIGHT:  That's agreeable, Your Honor.

```
1              THE COURT:  And, Mr. Moseley?

2              MR. MOSELEY:  That's good, Your Honor.

3              THE COURT:  All right.  So we have two placeholder

4    dates now -- not placeholder dates -- but anchors to work

5    with: 11:00 o'clock on October 26th for a status where,

6    obviously, I will know -- you'll know much more about the

7    status of the pending motions by then; and then a trial date

8    reserved starting May 18th.  As I said, that's the first

9    available date that the courthouse can accommodate a

10   multi-defendant trial and one of that length.

11             Let me hear the Government's -- what the

12   Government's position is on tolling the speedy trial from

13   now until -- just until October 26th.

14             MR. JONES:  Certainly, Your Honor.

15             The Government would note that the pending motions

16   automatically toll.  There's a variety of motions before

17   Your Honor, including the one argued today, the motion to

18   dismiss, that would toll the Speedy Trial Act.  We'd also

19   submit, as we did during the hearing earlier with Defendant

20   Rehl, that the ends of justice served by continuing the

21   hearing -- continuing the case outweigh the interests of the

22   public and the defendant in a speedy trial and that the time

23   between now and the next hearing should, therefore, be

24   excluded under the Act.  I'd note, as I did earlier, that

25   new counsel was just appointed to Defendant Rehl, and also,
```

1    reference the points raised by the parties and the Court in

2    prior exclusions under the Speedy Trial Act, given the

3    unprecedented nature of the case, the voluminous discovery

4    resulting from that.

5             THE COURT:  All right.  What's -- let me start

6    with, I guess, the easy -- let me start in reverse order

7    with Mr. Moseley just because he just came in the case.

8             What is your view, Mr. Moseley, about tolling the

9    speedy trial, again, just until October 26th?

10            MR. MOSELEY:  Well, we spoke to my client about

11   that earlier -- (inaudible.)  We won't -- we -- we'd opposed

12   it.  I don't think -- although I have a ton of work ahead of

13   me, I don't think my work would delay it, but I understand

14   the exceptions that exist and I -- and -- but we would

15   rather -- he would rather, obviously, get to trial as

16   quickly as possible if he's detained.

17            (Brief pause.)

18            I mean, I can't argue about the factors that have

19   been identified as facts on the record, but I'm just saying

20   his desire -- he does not want to extend -- to do anything

21   to extend it and that would be his desire, to get a trial as

22   early as possible.

23            THE COURT:  All right.  So he does not consent,

24   but you're recognizing, obviously, the factors and the fact

25   that you are new to the case.

```
 1                    (Brief pause.)

 2                    All right.  Mr. Knight, your --

 3                    MR. MOSELEY:  And myself --

 4                    (Brief pause.)

 5                    THE COURT:  Mr. Knight, can you hear me?

 6                    MR. KNIGHT:  I can hear you well.  I was still

 7       hearing Mr. Moseley.  I'm sorry, Your Honor.

 8                    THE COURT:  Okay.  No, I heard a little feedback

 9       there, as well.

10                    What is you and your client's view about tolling

11       until October 26th?

12                    MR. KNIGHT:  Given the Court's consideration of

13       the pending motion that we argued today, we would have no

14       objection.  I think that would be a limited time and that

15       wouldn't overly prejudice Mr. Donohoe.

16                    THE COURT:  All right.  Mr. Hull, same question to

17       you.

18                    MR. HULL:  Your Honor, as you know, I like short

19       bursts between -- short periods of time between status

20       conferences particularly in this situation, but one of the

21       reasons I thought -- and I agreed so quickly to a week later

22       than what I had suggested is that besides the -- as I count

23       them, we have two motions before you, general prep issues, a

24       fourth issue of jail, you know -- maybe, jail condition

25       issues, and we also have general discovery issues, but
```

```
 1    there's also things that are, maybe, a little bit more
 2    narrowed and specific like the Eddie Block tapes, a very
 3    specific discovery dispute which needs to be resolved pretty
 4    quickly and hopefully before you decide the bail motion, and
 5    perhaps a constitutional one which we've talked about off
 6    and on publicly and with a large part under seal which I
 7    think you're familiar with.  So there are other -- there's
 8    quite a bit for us to do, and that's why I would say yes,
 9    I'd agree to that, not only the date; and, of course, on the
10    speedy trial toll, the answer is yes.
11              THE COURT:  And, Mr. Smith?
12              MR. NICHOLAS SMITH:  Yes, we agree to the date,
13    Your Honor, and we agree with Mr. Jones's position that the
14    pending motion to dismiss toll the Speedy Trial Act.
15              THE COURT:  All right.
16              So I will find, then, based on both the pending
17    motions; based on the representations the Government has
18    made in the past about the voluminousness of discovery;
19    based on the fact that Mr. Rehl has just retained new
20    counsel who is just in the case; and finally, based on, as
21    I've said before, the standing order that our Chief Judge
22    has issued and filed as of August 25th regarding the
23    COVID-19 pandemic and the limited availability of this
24    courthouse to host jury trials -- so for -- and with the
25    consent of at least three of the four defendants in the
```

 1    case, that the time between today's date and October 26th is

 2    excludable under the Speedy Trial Act because the ends of

 3    justice that are served by taking such action outweigh the

 4    best interests of the public and the defendant in a speedy

 5    trial for all those reasons that I mentioned.

 6              All right.  You all have a lot of work to do and,

 7    as you all know, I have a lot of work to do, as well.  And

 8    I'll endeavor to get you answers one way or the other on all

 9    the questions you've put to me as soon as I can.

10              Is there anything else anyone thinks we need to

11    address right now from the Government?

12              MR. JONES:  No, Your Honor.  I don't believe so.

13              THE COURT:  Mr. Smith?

14              MR. NICHOLAS SMITH:  No, Your Honor.

15              THE COURT:  Mr. Hull?

16              MR. HULL:  No, sir.

17              THE COURT:  Mr. Knight?

18              MR. KNIGHT:  No, Your Honor.

19              THE COURT:  And, Mr. Moseley?

20              (Brief pause.)

21              Mr. Moseley -- oh, you're muted, Mr. Moseley.  I

22    think you said no, but you are muted.  You have to -- there

23    you go.

24              MR. MOSELEY:  Okay.  I said no, Your Honor.  We're

25    fine.

1            THE COURT:  All right.  Very well.

2            Until then -- until October 26th, then, the

3    parties are dismissed.

4            MR. JONES:  Thank you, Your Honor.

5            (Proceedings concluded at 1:15 p.m.)

6                   * * * * * * * * * * *

7               CERTIFICATE OF OFFICIAL COURT REPORTER

8        I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby

9    certify that the above and foregoing constitutes a true and

10   accurate transcript of my stenographic notes and is a full,

11   true and complete transcript of the proceedings to the best

12   of my ability, dated this 11th day of January 2022.

13       Please note:  This hearing occurred during the COVID-19

14   pandemic and is, therefore, subject to the technological

15   limitations of court reporting remotely.

16                         /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
17                         United States Courthouse
                           Room 6722
18                         333 Constitution Avenue, NW
                           Washington, DC 20001

19

20

21

22

23

24

25