IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA           CR No. 1:21-cr-00175-TJK-1

v.                                 Washington, D.C.
                                   Tuesday, February 8, 2022
1-ETHAN NORDEAN,                   11:00 a.m.
                 Defendant.
- - - - - - - - - - - - - - - - x
_____

                    TRANSCRIPT OF STATUS CONFERENCE
            HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
                    UNITED STATES DISTRICT JUDGE
_____

APPEARANCES VIA VIDEOCONFERENCE:

For the United States:    Luke M. Jones, Esq.
                          Erik M. Kenerson, Esq.
                          Jason B.A. McCullough, Esq.
                          James Pearce, Esq.
                          U.S. ATTORNEY'S OFFICE
                          555 4th Street, NW
                          Washington, DC 20530
                          (202) 252-7233


For the Defendant:        Nicholas D. Smith, Esq.
                          David B. Smith, Esq.
                          DAVID B. SMITH, PLLC
                          7 East 20th Street
                          Suite 4r
                          New York, NY 10003
                          (917) 902-3869


Also Present:             Carmen D. Hernandez, Esq.
                          7166 Mink Hollow Road
                          Highland, MD 20777
                          (240) 472-3391


Court Reporter:           Timothy R. Miller, RPR, CRR, NJ-CCR
                          Official Court Reporter
                          U.S. Courthouse, Room 6722
                          333 Constitution Avenue, NW
                          Washington, DC 20001
                          (202) 354-3111



Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.

1     **P R O C E E D I N G S**

2          THE DEPUTY CLERK:  We are on the record in

3     Criminal Matter 21-175, United States of America v.

4     Defendant 1, Ethan Nordean.

5          Present for the Government is Jason McCullough,

6     Luke Jones, and Erik Kenerson; present for the defendant are

7     David Smith and Nicholas Smith.

8          THE COURT:  All right.  Well, good morning to

9     everyone.

10          We are here for a status conference in this

11     matter.  And the -- Defendant Nordean -- and I guess I'll

12     just, again, say for the record, the only reason we are

13     proceeding without the other defendants is because this was

14     the only time that -- where the facility that Mr. Nordean is

15     right now would be at a -- would be able to facilitate his

16     presence here today, even though he is only present by phone

17     and not by video.

18          At any rate, there are two motions pending for

19     Mr. Nordean, one under seal and one that is not under seal.

20     My thought is, in the limited amount of time we have today,

21     to hear argument from the parties very briefly on the motion

22     that's not under seal regarding selective prosecution and

23     then quickly -- and then pivot to going under seal and

24     discussing the motion that was filed under seal.

25          Mr. -- I don't know whether -- who is the lead for

```
1    the Government here today, whether it's --

2                 MR. JONES:  (Indicating.)

3                 THE COURT:  Mr. Jones, I see you --

4                 MR. JONES:  Yes, Your Honor.

5                 THE COURT:  -- have unmuted yourself.  So I'll

6    take that it's you.  Does that seem like a reasonable way to

7    spend our time today?

8                 MR. JONES:  It does, Your Honor.  I'll note I

9    believe the public line is currently hooked up which, I

10   believe, is how the Court wants it; just want to make sure

11   that if we need to go under seal, we can do that.

12               We, obviously, addressed a number of issues at the

13   status hearing at 10:00 o'clock.  I assume those are matters

14   of public record and may not need to, sort of, reiterate all

15   of that but wanted to ensure that Mr. Nordean was, you know,

16   made aware --

17               THE COURT:  That's fair, Mr. Jones.  Why don't you

18   go ahead and just for the record here -- as you said, you

19   updated me on -- updated the parties and everyone except

20   Mr. Nordean and his counsel on, sort of, where things stand

21   on, sort of, the discovery front.  Why don't you try to

22   summarize that, again, just for their benefit, even though

23   that is a public record, before we pivot to other things.

24               MR. NICHOLAS SMITH:  (Indicating.)

25               THE COURT:  Mr. Smith, I see -- do you want to say
```

1    something, Mr. Smith?

2                MR. NICHOLAS SMITH:  Yes, Judge.  Thank you.

3                I was just going to say that we had the

4    opportunity -- Mr. Nordean's counsel -- to listen to the

5    hearing.  So his counsel are informed on Mr. Jones's status

6    update and we would offer to, at the next opportunity,

7    explain those updates to the defendant so that --

8                THE COURT:  All right.

9                MR. NICHOLAS SMITH:  -- we don't have to take up

10   the Court's time on --

11               THE COURT:  Thank you.  Mr. Smith, thank you so

12   much for that.  It's very helpful, again, given the limited

13   amount of time we have here.  So let's dispense with that.

14               And so, Mr. Smith, why don't I just hear you on

15   your selective prosecution motion, then I'll hear from the

16   Government, and then we'll pivot.

17               MR. NICHOLAS SMITH:  (Indicating.)

18               THE COURT:  Yes?

19               MR. NICHOLAS SMITH:  So Judge, what -- having said

20   that, let me just contradict myself and say that there are

21   just a few items on scheduling that we wanted to add to the

22   discussion --

23               THE COURT:  Okay.

24               MR. NICHOLAS SMITH:  -- but I think they're pretty

25   quick.

1            So in the scheduling order, which is detailed and

2     we're grateful for that, we noticed that there's one item

3     that may be missing or it may be intentionally omitted

4     purposefully, but -- so the item is a general witness list

5     exchange.  So the scheduling order has a date for the

6     exchange in Annex A -- or Appendix A for the exchange of

7     expert witness -- proposed expert witness lists but no

8     general witness list exchange.  And it -- I was comparing

9     this with the first -- what I believe is the first

10    obstruction trial in the -- in this investigation in the

11    Reffitt case, R-E-F-F-I-T-T, which is scheduled to begin on

12    the 28th.  There was a -- Judge Friedrich's had a line item,

13    exchange date for witness lists.  So we would ask for that

14    to be included in the scheduling order.

15            THE COURT:  All right.  Let me hear from the -- I

16    expect that, for the most part, given the Government's

17    obligations in terms of Brady and in terms of, obviously, it

18    -- Jencks and all the rest, that there won't be any surprise

19    on -- great surprise on witnesses.  I haven't, in criminal

20    cases, typically required that, but let me just hear from

21    the Government on that one point and I'll certainly take it

22    up and consider it.

23            MR. JONES:  Thank you, Your Honor.

24            Yeah, we hadn't identified a date for witness list

25    production.  I think we can consider that and perhaps get

1    back with the Court, perhaps work with defense counsel for

2    all defendants on that issue.

3                THE COURT:  I mean, I think -- Mr. Jones, the

4    obvious -- well, depending on the nature of the witnesses,

5    obviously, one time to do it would be to include it in the

6    pretrial statement.  That's a natural place it could be

7    inserted.  On the other hand, there might be particular

8    concerns about particular witnesses that you might make an

9    argument you would not be able to disclose until closer, but

10   I -- I'll -- let's just -- so let me just --

11               Mr. Smith, you've made the point.  And I think --

12   why don't I have the parties talk about that offline and see

13   if you can't reach an accommodation and you all -- we can

14   talk about it as we get closer, but I -- it's on the -- it's

15   on the -- it's on my radar.

16               Next issue, Mr. Smith.

17               MR. NICHOLAS SMITH:  Yeah.  Thank you, Judge.  And

18   we just wanted to emphasize that we weren't asking for a

19   commitment to the witnesses but just anticipated.  So --

20               THE COURT:  Sure.  Of course.

21               MR. NICHOLAS SMITH:  -- the --

22               THE COURT:  Right.

23               MR. NICHOLAS SMITH:  Okay.  The second scheduling

24   order issue is -- again, this is, kind of, teeing off from

25   what -- how the trial is shaping up in the obstruction case

1    in Reffitt that I just referenced.  The Government is

2    proposing to offer a witness in that case -- and I believe

3    the witness will be used in all of the obstruction cases --

4    who will -- a Senate aide who will be testifying to the jury

5    to, quote, explain the constitutionality of the Electoral

6    Count Act and the electoral certificate counting and

7    procedures.  So this is not the appropriate time to be

8    objecting that that's not correct expert or lay testimony

9    but rather, Judge, if the Government intends to use such a

10   witness in this case, that would essentially have to prompt

11   more defense motions before March 16th, and here's the

12   reason.  The jury instructions in the Reffitt case allow the

13   jury to decide themselves that the joint session was not an

14   official proceeding.  The jury -- the jury instruction does

15   not define "official proceeding" to mean necessarily the

16   procedures that Congress follows when counting electoral

17   votes.  If that's the case, our position is that this is a

18   legal issue, not one that goes to the jury.  So we would

19   probably have to file a motion to clarify the Court's

20   decision on the motion to dismiss.  The Court held that even

21   if the Government were required, as another judge in this

22   court just held, to prove that an official proceeding

23   requires adjudication, that would be satisfied by the

24   Electoral Count Act.  We made an argument that the section

25   of the Act on which the Court relies -- it's called -- it's

```
1    3 U.S.C. Section 15 and it's a provision that allows

2    Congress to reject certificates as, quote, irregularly

3    given.  We made an argument that this is unconstitutional

4    and I think, at this point, maybe, even a majority of the

5    Senate or Congress would agree and that's why they're

6    reforming the Act, but there wasn't a decision on that

7    point.  So I think, maybe -- I'm just putting this out there

8    and saying, maybe, this should be litigated more than one

9    month in advance of trial.

10             THE COURT:  I -- Mr. Smith, it -- you may be

11   right.  I -- it sounds like it should be the subject of a

12   motion in limine on your part.  I mean, I, you know -- I

13   don't see why there's a reason to take --

14             MR. NICHOLAS SMITH:  We don't -- we won't know,

15   under the current Court order, what -- who the witness --

16   assuming we do get a witness list --

17             THE COURT:  Sure.

18             MR. NICHOLAS SMITH:  -- we wouldn't know who --

19   whether -- who the witness is or what the precise argument

20   is until, I guess, about a month before trial.

21             THE COURT:  I guess my point is, I think you --

22   obviously, in this particular case, you have what's

23   happening in Reffitt.  I don't know why, on this score, you

24   can't engage the Government.  They're not going to -- I

25   can't imagine why they wouldn't be, on this particular
```

 1    front, straightforward with you about how they -- if they

 2    plan to address that issue the exact same way that they're

 3    addressing it, apparently, in Reffitt in this case, and if

 4    so, you'd be perfectly entitled to file your motion and say,

 5    The Government has represented that this is what they plan

 6    to do and we would like to have that -- and we -- we think

 7    it's appropriate or at least it may be appropriate for the

 8    Court to exclude that witness.  So I think -- I'll -- look,

 9    we're -- this isn't going to be the last time we're together

10    before the motions deadline or before the pretrial

11    conference, but I think it sounds to me like that's a --

12    something you can file a pretrial motion about and I'll take

13    it up.

14              MR. NICHOLAS SMITH:  Okay.  Thank you, Judge.

15              THE COURT:  All right.

16              MR. NICHOLAS SMITH:  On the selective prosecution

17    motion, I think our argument is contained in the briefs, but

18    just to summarize, Judge, I think, although relief in

19    selective prosecution arguments is rare, these are

20    extraordinary circumstances, unusual circumstance- --

21    charging circumstances as the Government routine- -- points

22    out often, and the circumstances here are that although the

23    Government's stipulated facts in over, I think, 100 plea

24    agreements show concerted activity by hundreds or, maybe,

25    thousands of Capitol defendants, there's only one -- the

1       charging statistics show clearly that there's only one

2       category of defendant that has been charged for the most

3       part with conspiracy to commit obstruction of justice, and

4       all of the members in that category -- which are about 40 of

5       740, 730 -- belong to groups to which they are entitled to

6       belong under their associational rights.

7               Now, the Government could say that that is a mere

8       coincidence or they are charged that way because those

9       groups are the groups that conspired to obstruct justice,

10      but the facts in the Government's own plea agreements don't

11      bear that distinction out.  I think the Court itself has

12      pointed out that there were many -- of necessity, hundreds

13      -- dozens or hundreds of people involved in the Capitol

14      protests concertedly acted together.  They had to.  That's

15      how groups of people interact with each other and that's the

16      crime of conspiracy.  But only one group has been charged

17      with that crime.  And I think that's a pretty clear-cut case

18      of at least establishing some evidence that the charging

19      decision at least in part incorporated the defendants'

20      exercise of a protected right here which is an associational

21      right.  And the Government comes back and says, Well, the

22      charging decisions may have involved the associational

23      rights of the defendants, but this is merely incidental

24      because those are the defendants that happened to conspire,

25      but when the law is broken down by the elements and the

 1    charges themselves, that just doesn't hold up, Judge.  So we

 2    think that that -- we've crossed the very minimal line

 3    needed to just obtain discovery.

 4            THE COURT:  All right.  You're not arguing -- is

 5    it fair to say, then -- and it feels like your argument has

 6    shifted a little bit here -- that the core of your argument

 7    isn't -- is really about conspiracy rather than obstruction?

 8    Is that fair?

 9            MR. NICHOLAS SMITH:  Yes, it's about conspiracy.

10    And we would take the Government's point that there are -- I

11    think there's over 250 defendants charged with obstruction

12    and a large number of them do not --

13            THE COURT:  Right.

14            MR. NICHOLAS SMITH:  -- belong to the -- their

15    membership in groups, if it exists, is not a part of the

16    charging decision.  So we would concede the point that the

17    argument is weaker there.

18            THE COURT:  All right.

19            MR. NICHOLAS SMITH:  And -- but the argument is

20    primarily conspiracy to obstruct --

21            THE COURT:  Right.

22            MR. NICHOLAS SMITH:  -- which is not

23    insubstantial, Judge, because, as the Court knows, there's a

24    five-year -- and this is a separate charge and there's a

25    five-year statutory maximum for that charge.  So it's not a

1    trivial charge.

2              THE COURT:  Sure.  And it affects what kind of

3    evidence admissible -- is admissible -- I mean, there's all

4    sorts of ways in which the landscape is different when

5    conspiracy is charged.  So I think that's fair.

6              What -- okay.  Let me hear from the Government in

7    opposition.

8              MR. JONES:  Thank you, Your Honor.  Luke Jones for

9    the Government.

10             Briefly, I think we've made our points in the

11   opposition.  As Your Honor notes, defendant's reply brief

12   does appear to abandon the contention that the felony versus

13   misdemeanor charge is a basis for their selective

14   prosecution argument.  As to conspiracy, I think we'd make a

15   couple points.  First, you know, it's no surprise that

16   groups of people who associate with each other end up

17   conspiring with each other or, rather, folks who conspire

18   together are people who are associated with each other.  The

19   idea that these particular individuals -- and Mr. Nordean in

20   particular -- have been targeted based on their, sort of,

21   First Amendment protected activity is not borne out by the,

22   you know -- does not put him in a particular category

23   vis-à-vis other defendants in this case.  Even in these

24   other conspiracy charges, some of which would -- do involve

25   members of the Oath Keepers or members of -- who identify as

```
 1    Three Percenters -- there's additional conspiracy cases that
 2    have been charged.  And we'd also note that these, you
 3    know -- this investigation continues and there's, you know,
 4    no reason to think that there weren't -- won't be additional
 5    charges, including conspiracy charges, that are brought
 6    against individuals who worked in concert in connection with
 7    their offenses on January 6th.  And I think, you know, the
 8    minimal bar that Mr. Smith references is not so minimal,
 9    given the prerogative of the executive to make charging
10    decisions, and it's -- that's why the Supreme Court has
11    identified a high bar for these types of claims.  We don't
12    think the defense has met that bar with the selective
13    prosecution argument and --
14              THE COURT:  Mr. Jones, speaking --
15              MR. JONES:  Yeah.
16              THE COURT:  -- of that high bar, there's an
17    interesting legal issue, kind of, running through all this
18    which is this issue about whether selective enforcement is
19    subject to a different standard than selective prosecution.
20    There have been, you know, cases outside this District -- I
21    think exclusively outside this District -- that apply a
22    slightly different -- a lower bar for a selective
23    enforcement claim.  Is it the Government's view that those
24    are essentially the same standard or is there any reason to
25    employ a lower standard for --
```

1          MR. JONES:  Well --

2          THE COURT:  -- an enforcement case?

3          MR. JONES:  Right.  I think that the key here is

4    that even under a lower standard -- for example, if the

5    Court were to apply a standard in which, you know,

6    statistics alone could form the basis of a motion for

7    discovery under selective enforcement without looking to

8    evidence of an arbitrary classification or the intent of law

9    enforcement or prosecutors, so to speak, in acting against

10   individuals or bringing in prosecutions -- even under that

11   lower standard, there's simply not the evidence based on the

12   statistics here to support that claim.  In addition, that

13   depends, you know -- that type of claim depends entirely on

14   an assessment that someone like Mr. Nordean is similarly

15   situated to these hundreds of other individuals who have

16   been charged.  I think the facts, as laid out in the

17   charging document and in many pleadings filed throughout

18   this case, amply demonstrate how Mr. Nordean as well as his

19   co-defendants are differently situated, and it's not because

20   they happen to be members of a particular group but, rather,

21   because of their actions leading up to and on January 6th

22   and that, in and of itself, is enough to rebuff any claim of

23   selective enforcement, let alone selective prosecution.

24          THE COURT:  All right.  It's an interesting issue.

25   I'm going to take it under advisement but get you a ruling

1   relatively quickly, but I don't want to burn --

2               MR. NICHOLAS SMITH:  (Indicating.)

3               THE COURT:  Yeah.  Mr. Smith, you want to --

4               MR. NICHOLAS SMITH:  Just one sentence in response

5   to -- or, maybe, two --

6               THE COURT:  Yep.

7               MR. NICHOLAS SMITH:  -- in response to Mr. Jones's

8   comments.

9               So Mr. Jones said that other non-group

10  conspiracies have been charged in the January 6th

11  investigation, but I don't think the Court has seen any

12  cited or mentioned, but even if there were a handful, I

13  think they -- the argument would still remain that the vast

14  -- the great majority of these conspiracies are tied to

15  organizations to which these defendants do have a right to

16  belong.

17              And the second point, Judge, is it's just a

18  common-sense inference, Your Honor, that if all of the

19  elements -- if only the elements of the offense and

20  sufficiency of the evidence were involved in the charging

21  decision for these conspiracy cases -- notwithstanding what

22  the former U.S. -- Acting U.S. Attorney General -- or Acting

23  U.S. Attorney of the office said on television, if only the

24  elements of the offense and sufficiency were involved,

25  others would be charged with this offense because others, by

1      the Government's concession, have acted concertedly in

2      committing crimes outside the Capitol.  So you -- there's

3      this hole in the explanation here for why no one else except

4      for these group members have been charged.

5              And I think the last point is important.  So the

6      Government's making the argument that the group that these

7      defendants belong to is incidental to the charging decision

8      rather than central to it.  So they're saying, Well, the

9      group dynamic helps bolster the claim.  It's evidence of an

10     agreement.  And in some cases, that's, of course, the case.

11     Take a criminal organization like organized crime, the mafia

12     or MS-13 or a group like this.  In those cases, it goes --

13     it stands to reason that the Government will rely on the

14     organization to which the defendants belong to bolster a

15     conspiracy case but because those are criminal organizations

16     for which there's no right to belong.  They don't have a

17     political element.  MS-13 is not a political organization

18     that espouses views on Western civilization, not to my

19     knowledge.  They sell drugs and they murder people.  That's

20     what they do.  So -- but there's a -- and that is the

21     paradigm in which the Court has considered this issue.  This

22     goes back to my point that January 6th is a little bit

23     different.  These organizations aren't being selected

24     because they operate as criminal organizations as such like

25     MS-13.  There's no dispute that they are also political

1  organizations that exist for that reason.  So it's not -- so

2  merely to point out, as the Government is, that they're --

3  that criminal organizations exist and that the organization

4  itself can be cited to bolster evidence of the conspiracy,

5  it just doesn't apply in this context, Your Honor.  These

6  are not -- these are not criminal organizations.  They might

7  not be beloved of the Government and the rest of the

8  country, but the First Amendment rights aren't limited to

9  organizations that are so beloved.

10         So there is a very real issue here, Judge.  And I

11  think that the statistics themselves under the Davis case

12  the Court just cited, Judge Easterbrook's decision on

13  selective enforcement, and even under Armstrong itself,

14  these are facts enough to nudge the case over the line for

15  discovery.

16         THE COURT:  All right.  I'll just make one point

17  in response to the points you're making.  It doesn't -- but

18  I agree with you wholeheartedly -- and I would hope the

19  Government would -- that the Proud Boys are not an

20  organization akin to any of the ones that you just mentioned

21  for the -- all the reasons you explained.  I agree

22  wholeheartedly with that.

23         In any event, so I will take that under advisement

24  and get you all a ruling soon.

25         Given our limited time, I think we are best -- our

1    time is best spent now moving into a sealed proceeding to

2    discuss your sealed motion.

3            Before we do that, let me just confirm, I guess,

4    for the -- with the Government.  We have with us

5    Ms. Hernandez and Mr. Rehl.  They -- Ms. Hernandez filed a

6    -- and the reason we do is because Ms. Hernandez filed

7    something joining that motion earlier today.  I assume the

8    Government has no objection to them -- that they are covered

9    by the protective order and the Government has no reason to

10   object to them proceeding with us into a sealed session; is

11   that correct?

12           MR. JONES:  That's correct, Your Honor.

13           THE COURT:  All right.

14           MR. JONES:  No objection.

15           THE COURT:  So let's go ahead and do that,

16   Ms. Harris.

17           (Following proceedings under seal:)

18   ███████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████

20   ██████████████████

21   ████████████████████████████████████████████████

22   ███████████████████████████████████████████

23   ███████████████████████████████████████████

24   ███████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████

















































43



















52





























* * * * * * * * * * * *

<u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

1          I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby

2     certify that the above and foregoing constitutes a true and

3     accurate transcript of my stenographic notes and is a full,

4     true and complete transcript of the proceedings to the best

5     of my ability, dated this 12th day of March 2022.

6          Please note:  This hearing occurred during the COVID-19

7     pandemic and is, therefore, subject to the technological

8     limitations of court reporting remotely.

9                            /s/Timothy R. Miller, RPR, CRR, NJ-CCR
                             Official Court Reporter
10                           United States Courthouse
                             Room 6722
11                           333 Constitution Avenue, NW
                             Washington, DC 20001

12

13

14

15

16

17

18

19

20

21

22

23

24

25