UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 21-175 (TJK) |
| ETHAN NORDEAN, | |
| *Defendant*. | |

**MEMORANDUM ORDER**

Defendant Ethan Nordean has moved for discovery and for an evidentiary hearing in support of his claims of selective prosecution and enforcement. As explained below, he has not met the high standard for discovery on those claims. Thus, the Court will deny the motion.

**I.     Legal Standards**

    **A.     Selective Prosecution and Enforcement Claims**

The Executive Branch has "broad discretion" in "enforc[ing] the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation omitted); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016). Indeed, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Fokker Servs. B.V.,* 818 F.3d at 741 (cleaned up). Thus, "the presumption of regularity applies to [those] decisions and, in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." *Id*. (cleaned up).

But the Executive's discretion is limited by the Fifth Amendment, which prohibits the Government from pursuing criminal charges against a citizen that amount to a "'practical denial' of equal protection of law." *Armstrong*, 517 U.S. at 465 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356,

373 (1886)). Claims of "selective prosecution" or "selective enforcement" guard against this possibility. *Id.*; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (the Equal Protection Clause "prohibits selective enforcement of the law based on considerations such as race"). Selective prosecution and enforcement claims are subject to the same "demanding" standard. *Armstrong*, 517 U.S. at 463; *see Mahoney v. U.S. Capitol Police Bd.*, No. 21-cv-2314 (JEB), 2022 WL 523009, at *8 (D.D.C. Feb. 22, 2022), *on reconsideration in part*, 2022 WL 1184565 (D.D.C. Apr. 21, 2022) (describing the same two-prong test for selective enforcement and selective prosecution claims); *Richards v. Gelsomino*, 814 F. App'x 607, 610 (D.C. Cir. 2020) (quoting *Armstrong*'s test for selective prosecution for a selective enforcement claim).

To establish either claim, a defendant must make two showings. First, she must demonstrate that the relevant policy or action "had a discriminatory effect." *Armstrong*, 517 U.S. at 465; *see also Richards*, 814 F. App'x at 610. In other words, she must show that the Government afforded "different treatment" to persons "similarly situated" to her. *Armstrong*, 517 U.S. at 470. When another person's circumstances "present no distinguishable legitimate . . . factors that might justify" different prosecutorial or enforcement decisions between that person and the defendant, that person is similarly situated to the defendant. *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (cleaned up). Courts "narrowly" interpret the phrase "similarly situated." *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019). Second, a defendant must show that the challenged policy or action had "a discriminatory purpose" or intent. *Armstrong*, 517 U.S. at 465. In other words, she must show that the Government prosecuted, arrested, or otherwise investigated her "because of" her membership in an identifiable group. *Wayte v. United States*, 470 U.S. 598, 610 (1985); *see also Mahoney*, 2022 WL 523009, at *8.

### B. Discovery on Selective Prosecution and Enforcement Claims

The standard for *discovery* on a selective prosecution claim is "rigorous"—indeed, nearly as rigorous as that for proving the claim itself. *Armstrong*, 517 U.S. at 468.[1] "If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim." *Id.* That, in turn, would "divert prosecutors' resources and may disclose the prosecutorial strategy." *Id.* Given this disruption, a defendant "must present 'at least a colorable claim' of selective prosecution before any discovery is permitted." *United States v. Judd*, No. 21-cr-40 (TNM), 2021 WL 6134590, at *3 (D.D.C. Dec. 28, 2021) (quoting *Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982)). To present a colorable claim, a defendant must provide at least "some evidence" tending to show the existence of both discriminatory effect and discriminatory purpose. *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009). "A defendant cannot, for example, rely merely on government selectivity in prosecuting individuals for similar conduct—that would amount to a showing of prosecutorial discretion." *Judd*, 2021 WL 6134590, at *3 (citing *United States v. Diggs*, 613 F.2d 988, 1003 (D.C. Cir. 1979)).

Some courts in other jurisdictions have found that a lower standard for discovery is appropriate in the selective enforcement context—at least in cases involving reverse-sting operations, where, as one judge explained, "the potential for abuse and mischief . . . should not be ignored." *United States v. Washington*, 869 F.3d 193, 223 (3d Cir. 2017) (McKee, J, concurring in part and dissenting in part); *see also United States v. Sellers*, 906 F.3d 848, 852–55 (9th Cir. 2018); *United*

---

[1] The standard for an evidentiary hearing is the same. *See United States v. Edelin*, 134 F. Supp. 2d 59, 87 (D.D.C. 2001). For simplicity's sake, the Court will refer to Nordean's request for discovery.

3

*States v. Davis*, 793 F.3d 712, 720 (7th Cir. 2015) (en banc).[2]  This Circuit has not recognized this lower standard even in that rare context, and district courts here apply the same discovery standard to selective enforcement claims as selective prosecution claims.  *See United States v. Dixon*, 486 F. Supp. 2d 40, 45 (D.D.C. 2007); *United States v. AT & T Inc.*, 290 F. Supp. 3d 1, 3–4 (D.D.C. 2018).  This Court will follow suit.

**II.    Analysis**

    **A.    Discovery on Nordean's Selective Prosecution Claim**

Nordean's proposed selective prosecution claim focuses on the conspiracy charge against him, at that time brought under 18 U.S.C. § 371.[3]  In his view, he and others are charged with criminal conspiracy because they "belong to one of three political or cultural groups"—the Proud Boys, Oathkeepers, or Three Percenters.  ECF No. 280 at 1–2.  But Nordean has not met either requirement for discovery on this theory.[4]

---

[2] Still, even under the more permissive test, a defendant must show enough evidence to support a "reasonable inference of discriminatory intent and non-enforcement," *Washington*, 869 F.3d at 221, or as one court put it, "something more than mere speculation," *Sellers*, 906 F.3d at 855; *see also United States v. Lopez*, 415 F. Supp. 3d 422, 427 (S.D.N.Y. 2019) (explaining that discovery is warranted in the reverse-sting context where "a defendant who is a member of a protected group can show that that group has been singled out for reverse sting operations to a statistically significant extent in comparison with other groups").

[3] The Second Superseding Indictment was returned since Nordean filed his motion. ECF No. 305. In it, Nordean is charged with Conspiracy to Obstruct an Official Proceeding in violation of 18 U.S.C. § 1512(k), instead of 18 U.S.C. § 371. *Id.* ¶¶ 25–107.

[4] Nordean started out by focusing on the obstruction count against him, 18 U.S.C. § 1512(c)(2). He argued that he was singled out for prosecution with this charge because of his alleged membership in the Proud Boys. *See* ECF No. 267 at 6–7. In his motion, he claimed that "the government's novel construction of [Section] 1512(c)(2) implies that hundreds of Title 40 misdemeanants are guilty of, but not charged under, that statute," while Nordean and other members of "disfavored political organizations" have been so charged. *Id.* at 11–12.  But for substantially the same reasons the Court discusses below in the conspiracy context, Nordean identified no defendant *similarly situated to him* who is *not* a member of a disfavored political organization and who is *not* charged

4

### 1. Discriminatory Effect

To begin with, Nordean does not make out a colorable showing of discriminatory effect. As explained, such a showing requires at least some evidence that the Government has afforded different treatment to those outside his alleged protected class who are alleged to have committed *about the same crime under about the same circumstances*—that is, those who are "similarly situated" to him in relation to the January 6, 2021 attack on the Capitol.

Nordean argues that the only 40 individuals who "have been charged with criminal conspiracy" are members of the Proud Boys, Oathkeepers, or Three Percenters. ECF No. 280 at 1–2. Meanwhile, other January 6 defendants who do not belong to those groups are not charged with conspiracy, even though many are alleged to have "engaged in concerted conduct and 'planning' . . . both before January 6 and on that day." *Id.* at 3. But that other January 6 defendants *could* have been charged with conspiracy merely reflects prosecutorial discretion; it is not nearly enough to get discovery on a claim of selective prosecution. Nordean must provide "some evidence" that someone *similarly situated to him* and *not* an alleged member of the Proud Boys or similar group has *not* been charged with conspiracy in relation to the January 6 attack. He has not done so. And that is understandable, given the comprehensive allegations against him and his alleged coconspirators.

---

with violating Section 1512(c)(2). In any event, in opposition, the Government pointed out that hundreds of January 6 defendants unconnected to any group like the Proud Boys *are* charged with violating Section 1512(c)(2), undermining any claim of discrimination on this basis. *See* ECF No. 279 at 9–10. Nordean then changed tack a bit, both in his reply and at argument on the motion, by clarifying that he no longer relies on obstruction for his claim of selective prosecution, but conspiracy. *See* ECF No. 312 at 11:4–9.

5

To decide whether individuals are similarly situated, "a court must examine *all* relevant factors, including relative culpability, the strength of the case against particular defendants, willingness to cooperate, and the potential impact of a prosecution on related investigations." *Khanu*, 664 F. Supp. 2d at 32 (emphasis added).  Thus, whether couched as relative culpability or the strength of the conspiracy case against him, to show a defendant similarly situated to him regarding the January 6 attack, Nordean would have to identify defendants like him and his coconspirators, who allegedly:

- created a formal command-and-control structure around plans for January 6, ECF No. 305 ¶¶ 29–34, 38, 42;[5]

- used sophisticated means to plan and execute the conspiracy and evade law enforcement, for example, by using encrypted communication channels and programmable handheld radios, *id*. ¶¶ 29–34, 38, 42, 51, 52, 54, 55, 58, 59, 62;

- caused hundreds of followers to be present at the Capitol on January 6, *id*. ¶¶ 70, 74;

- obtained paramilitary gear and supplies, *id*. ¶ 35;

- possessed a written plan to "occupy crucial buildings" on January 6, *id*. ¶ 41;

- discussed "storm[ing] the Capitol" in the days before January 6, *id*. ¶ 50;

- played a key role in the mob's entry into the Capitol, in their case by communicating with the person who first breached a barrier restricting access to the Capitol grounds just before he did so, *id*. ¶ 76, and by themselves breaking a window that allowed entry by "the first members of the mob," *id*. ¶ 93; and

- took credit for the January 6 attack; *id*. ¶ 100.

Of course, Nordean need not identify a defendant who is alleged to have engaged in precisely this same conduct.  But he has not come close to identifying a person who is similarly

---

[5] The Court cites allegations in the Second Superseding Indictment, most of which were also in the First Superseding Indictment.

situated to him, or in other words, who presents "*no* distinguishable legitimate prosecutorial factors" that would explain different charging decisions on conspiracy charges. *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997) (emphasis added), *cited with approval in Branch Ministries*, 211 F.3d at 145. His motion fails for this reason alone.

### 2. Discriminatory Motive

Nordean also fails to show "some evidence" of the second element of selective prosecution: discriminatory motive or intent. For this element, Nordean must make a colorable claim that the Government chose to prosecute him "at least in part because of" his membership in the Proud Boys. *Wayte v. United States*, 470 U.S. 598, 610 (1985). This can be shown by either direct or circumstantial evidence. *See Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997).

Nordean's argument largely rests on comments made by the Trump Administration's then-acting U.S. Attorney for the District of Columbia at a press conference and in a later interview. The press conference was held about a week after January 6. *See Acting U.S. Attorney Michael Sherwin Provides Update on Criminal Charges Related to Events at the Capitol on January 6*, DOJ Office of Public Affairs, (Jan. 12, 2021) ("Press Conference").[6] The interview took place a few months later. *See* Scott Pelly, *Inside the Prosecution of the Capitol Rioters*, CBS News (Mar. 22, 2021) ("CBS Interview").[7] Neither shows any evidence of purposeful discrimination against Nordean.

---

[6] *Available at* https://www.justice.gov/opa/video/acting-us-attorney-michael-sherwin-district-columbia-and-fbi-washington-field-office-adic.

[7] *Available at* https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21/.

To begin with, the press conference does not discuss the Proud Boys or any similar group that Nordean alleges is politically disfavored. True, the acting U.S. Attorney said that he told prosecutors to focus on building sedition and conspiracy cases. *See* Press Conference, *supra*, at 10:28–41 (noting "marching orders . . . to build seditious [sic] and conspiracy charges related to the most heinous acts that occurred in the Capitol"). But merely focusing on building such cases does not suggest any sort of *discriminatory* motive for prosecuting Nordean—or anyone else.

The interview gets Nordean no further. Nordean pulls some quotes out of context to try to create the sense that the Government had no evidence of any conspiracies but wanted to target members of "far-right militia" groups to create a "shock and awe" effect. ECF No. 267 at 9–10. But that is not what the then-former acting U.S. Attorney said. He explained that "10% of the cases" were what he would "call the more complex conspiracy cases," in which the Government does "have evidence, it's in the public record where individual militia groups from different facets: Oath Keepers, Three Percenters, Proud Boys, did have a plan." CBS Interview, *supra.* He also conceded that the Government did not know what the "full plan" was—"to come to D.C., organize, and breach the Capitol in some manner." *Id.* Similarly, he later explained that the Government was still "trying to determine" whether there was a "premeditated plan to breach the Capitol"— perhaps as opposed to obstructing the proceedings inside in some other way—but detailed the evidence of planning the Government *had* found. *Id.* None of these comments suggest, much less show, that the Government was prosecuting members of certain "political groups" based on anything but the evidence that it uncovered.

Nordean also briefly points to "January 6 charging statistics." ECF No. 267 at 20–21. But "statistical proof normally must present a stark pattern to be accepted as the sole proof of discriminatory intent." *McCleskey v. Kemp*, 481 U.S. 279, 293 (1987) (cleaned up). Indeed, as one court

has put it, inferring discriminatory intent from "statistical evidence of discriminatory effect, without more, . . . remains the exceedingly rare exception to the general rule." *United States v. Thorpe*, 471 F.3d 652, 661 (6th Cir. 2006) (citing *Wayte v. United States*, 470 U.S. 598, 610 (1985)). Nordean's one-sentence reference to statistics—presumably referring to the 40 Proud Boys, Oathkeepers, and Three Percenters charged with conspiracy—falls well short of "some evidence" of discriminatory intent.

That is so because, as reflected in the features of the conspiracy that Nordean is alleged to have participated in described above, "[t]here are simply too many variables not addressed" in Nordean's rough calculation for it to say anything about whether the Government acted with discriminatory intent in pursuing a conspiracy charge against him for his alleged role in the January 6 attack. *Edelin*, 134 F. Supp. 2d at 86. Among those variables, it seems to the Court, are how extensively a particular defendant is alleged to have acted in concert with others, the number of potential coconspirators, and whether the closeness and nature of the potential coconspirators' relationship supports an inference of conspiracy.[8] In the end, which specific charges to bring against the hundreds of January 6 defendants—including whether to bring a conspiracy charge—is the kind of discretionary judgment "essential to the criminal justice process" for which raw statistics are an insufficient measure of discriminatory intent. *McCleksey*, 481 U.S. at 296–97; *see also United States v. Olvis*, 97 F.3d 739, 746 (4th Cir. 1996) (discussing the "general rule that in cases involving discretionary judgments 'essential to the criminal justice process,' statistical evidence

---

[8] A "conspiracy can be inferred from a combination of close relationships or knowing presence and other supporting circumstantial evidence." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1130 (D.C. Cir. 2009) (quoting parenthetically *United States v. Mellen*, 393 F.3d 175, 191 (D.C. Cir. 2004) (Henderson, J., dissenting in part)); *see also United States v. Mann*, 494 F. App'x 389, 390 (4th Cir. 2012) ("Evidence tending to prove a conspiracy may include a defendant's relationship with other members of the conspiracy[.]").

of racial disparity is insufficient to infer that prosecutors in a particular case acted with a discriminatory purpose").

In any event, the pattern is not as stark as Nordean suggests. A quick review of January 6 cases reveals that some defendants who do not appear to be members of the purportedly disfavored groups he identifies *are* charged with conspiracy. For example, Ronald Sandlin and Nathaniel Degrave are charged with conspiracy under 18 U.S.C. § 1512(k). *See* Superseding Indictment at 9, *United States v. Sandlin et al.*, No. 21-cr-88 (DLF) (D.D.C. Sept. 15, 2021), ECF No. 46. Same with Eric Munchel and Lisa Eisenhart. *See* Indictment at 1, *United States v. Munchel et al.*, No. 21-cr-118 (RCL) (D.D.C. Feb. 12, 2021), ECF No. 21; Superseding Indictment at 2, *United States v. Munchel et al.*, No. 21-cr-118 (RCL) (D.D.C. Jun. 2, 2021), ECF No. 76. And Julian Khater and George Tanios are charged with conspiracy under 18 U.S.C. § 372. *See* Indictment at 3, *United States v. Khater et al.*, No. 21-cr-222 (TFH) (D.D.C. Mar. 17, 2021), ECF No. 8. None of these defendants appear to be members of the Proud Boys, Oath Keepers, or Three Percenters. And the flip side is true as well: some alleged Proud Boys are not charged with conspiracy. Joshua Pruitt is not charged with conspiracy. *See* Superseding Indictment, *United States v. Pruitt*, No. 21-cr-23 (TJK) (D.D.C. Nov. 10, 2021), ECF No. 30. Neither is Arthur Jackman. *See* Second Superseding Indictment, *United States v. Jackman*, No. 21-cr-378 (TJK) (D.D.C. Dec. 1, 2021), ECF No. 72. And both are alleged to be members of the Proud Boys.

As additional evidence of the Government's purported discriminatory intent, Nordean also points to allegations in the First Superseding Indictment that Nordean had a leadership role in the Proud Boys and the Government's highlighting of that alleged role to support his pretrial detention. ECF No. 267 at 11–13. On the first point, Nordean is alleged to have been a leader of the Proud Boys who conspired with other such leaders to, among other things, recruit hundreds of Proud

10

Boys to come to Washington, D.C., on January 6 for an unlawful purpose. That the charging document merely alleges those facts, which contextualize the alleged conspiracy, does not suggest discriminatory intent. On the second, as the Circuit has all but confirmed, evidence of leadership connected to the January 6 attack is relevant to whether a defendant should be detained pending trial in part because "whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). So in its view, "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who *aided, conspired with, planned, or coordinated* such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Id*. at 1284 (emphasis added). Thus, that the Government cited Nordean's status as a leader in seeking his detention is also not evidence of its discriminatory intent.

### B.  Selective Enforcement

Nordean's arguments for discovery on his selective enforcement claim fail as well. As described above, the same standard for discovery applies as in the selective prosecution context. But even if the Court applied the lower standard for discovery recognized by courts outside this Circuit in certain contexts, Nordean still would come up well short. He does not have enough evidence to support a "reasonable inference of discriminatory intent and non-enforcement." *Washington*, 869 F.3d at 221.

Again, Nordean fails to show discriminatory effect in the form of any person *similarly situated to him* who is *not* a member of a disfavored political organization and who has *not* been

11

referred for prosecution, investigated or arrested (on a conspiracy charge or any other) for his role on January 6. His selective enforcement claim fails for this reason alone, as well.

Nordean tries to avoid this conclusion by appearing to take a few swings at showing discriminatory motive, but none carry the day for him. He points mainly to language in two items seemingly related more to enforcement than prosecution: search warrant applications and the affidavit in support of the criminal complaint against him. The search warrant applications listed as "things to be seized" all "[r]ecords and information that constitute evidence of NORDEAN's affiliation with the Proud Boys, including clothing with Proud Boys emblems, insignia, or other identifying characteristics." ECF No. 267 at 17. And in the affidavit attached to Nordean's criminal complaint, an FBI agent alleged that Nordean was a member of the Proud Boys and described the organization. ECF No. 6-1 ¶¶ 4–7. But neither the search warrant applications nor the FBI agent's affidavit suggest that law enforcement intended to single out Nordean for a conspiracy investigation because of his association with the Proud Boys. To repeat, Nordean is alleged to have held a leadership position in the Proud Boys and conspired with other Proud Boy leaders to, among other things, recruit hundreds of Proud Boys to come to Washington, D.C., on January 6 for an unlawful purpose. That law enforcement sought evidence of those factual allegations—which relate to the preexisting relationships between Nordean and his alleged coconspirators—and merely noted Nordean's alleged affiliation in the affidavit supporting the complaint do not hint at selective enforcement on those grounds.

Nordean also tries to argue that he has been singled out for enforcement in a statistically significant way in comparison with other potential January 6 defendants, but he has offered no statistical evidence about the investigation or enforcement of these cases—only conclusory statements about who the FBI "investigated and referred for prosecution" on conspiracy charges. ECF

12

No. 267 at 18. As noted above, he *does* represent how many January 6 defendants have been charged with conspiracy. But "[t]he decision of whether or not to prosecute, and for what offense, rests with the prosecution." *Bishay v. U.S. Dep't of Just.*, No. 19-cv-01045, 2019 WL 1932550, at *1 (D.D.C. Apr. 30, 2019). And the complaint referenced above that was sworn out by a law enforcement officer did not even charge Nordean with conspiracy. ECF No. 6. Thus, none of this bolsters a claim for selective enforcement of the laws against criminal conspiracies.

### III. Conclusion

For all these reasons, it is hereby **ORDERED** that Nordean's motion is **DENIED.**

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 7, 2022