## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-175-1 (TJK)** |
| | : | |
| **ETHAN NORDEAN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES' SUR-REPLY TO DEFENDANT NORDEAN'S MOTION FOR AN ORDER DIRECTING THE GOVERNMENT TO IDENTIFY *BRADY* MATERIAL IN PRODUCED DISCOVERY

The United States of America hereby files this brief sur-reply to respond to factual allegations and arguments first raised in Defendant Nordean's Reply. ECF 379.

In his reply, Defendant Nordean presents a "counterexample" that he says will "reveal" the weakness in the government's discovery plan. In fact, the example offered by Nordean underscores the well-crafted nature of the government's approach to discovery in this case.

### INTRODUCTION

Nordean effectively asks this Court for an order requiring the government to specify, for all materials it has produced or will later produce, whether any item could serve a purpose favorable to the defense. In support of his claim, Nordean argues that the government failed to inform him of a 15 second segment found within a 44-minute video (the "Hemphill Video") taken by a woman from Boise, Idaho with no ostensible connection to Nordean or his codefendants. Notwithstanding Nordean's candid acknowledgement that the government produced the video and Nordean identified it within two weeks of its production, Nordean wants more. As Nordean would have it, "*knowledge* of *Brady* material in the government's possession, custody, or control is imputed to the prosecution team." ECF 379 at 6 (emphasis added). But that is not the law in this circuit or this country; nor is it a workable standard. Nordean plainly distorts the government's

actual obligation to produce all discoverable materials, which the government is fulfilling, with Nordean's invented requirement that the prosecution team be omniscient. Furthermore, this supposed "imputed knowledge" rule is inconsistent with Nordean's attempts to reassure the Court that he is merely asking for the government to "direct defense counsel to *Brady* material of which the government is already aware — and for which it does not need to perform any additional search."  ECF 379 at 1; *see also id.* at 2.

As explained in its Opposition and further described below, the government has engaged in extensive efforts to identify all discoverable materials and to produce those materials in an organized and readily searchable format. It has given Nordean and all other defendants access to robust tools that allow for searching across all produced materials. And it has deployed meaningful technological tools and protocols to identify all relevant materials to the defendants. The government's approach far exceeds any judicially recognized standard and meets the challenge of discovery in this historic case.

## ARGUMENT

*Brady v. Maryland* requires the government to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment."  373 U.S. 83, 87 (1963). The government did so here.

The government produced the Hemphill Video to Nordean and his co-defendants on May 12, 2022. As with its prior productions in global discovery the government identified the source of the materials that were produced (*e.g.*, "Hemphill, Pamela Ann") and guidance on how to use Relativity to navigate to the items (*e.g.*, "you may filter by the name of the individual . . . and the type of item" by using specific fields in Relativity). In practice, this requires the use of drop-down filters that are similar to those used in online shopping programs, as can be seen from

the Relativity[1] screenshot below.



The Hemphill Video could also be found by typing "Hemphill" in the search bar that appears at the top of the main Relativity screen, or by consulting the Bates numbers that appeared next to Hemphill's name in an index that accompanied the May 12 production.

By no later than May 26, 2022—two weeks after its production—Nordean had identified the Hemphill Video. Nordean claims that this video was identified to him by a "source outside the government." ECF 379 at 6. Nordean's ability to review the video would appear to be a direct result of the government's production of the video in discovery. This sequence underscores the extensive efforts that the government has undertaken to make all discoverable materials available to the defendant in a searchable and readily accessible form. The materials were produced to Nordean. Nordean promptly identified them. Despite the extraordinary volume of materials recovered in the course of its investigation, Nordean can make use of materials that were recorded on the cellphone of a woman in Boise, Idaho, who has no known relationship to Nordean.

Further, as explained in its Opposition, the government has instituted a protocol pursuant to which facial-recognition technology is used to search a video library at regular intervals. ECF 374 at n.1. When Defendant Nordean brought the issue to the government's attention on May 26, 2022, the government sought to identify the status of the facial-recognition procedures with respect

---

[1] Despite Nordean's ceaseless efforts to demean the efforts of Deloitte and the functionality of Relativity, the firm and the software are indisputably among the leaders in the field of complex legal discovery.

to the Hemphill videos. The government determined that the Hemphill videos had been uploaded into the video library on May 17, 2022. Nordean's prompt discovery of the Hemphill video on May 26, 2022, appears to have outpaced the facial-recognition protocols that had been established.

After receiving Nordean's notification, the prosecution team requested that the facial-recognition team at the Federal Bureau of Investigation perform a search against all media in the video library as of May 31, 2022. The prosecution team was advised that the facial recognition software returned a potential match on the Hemphill video, but due to the high volume of results for Nordean in other videos (e.g., videos taken by Eddie Block, Nick Quested, and open source), the Hemphill video fell too far down on the list of identified videos to be included in the report. The prosecution team and the Capitol Siege Section Discovery Unit have since worked with the facial recognition team to refine its reporting algorithm to ensure that all likely matches of a defendant are returned in the facial recognition reports. These reports will be serialized to Defendant Nordean's case file and produced in discovery, and this process will serve to assist the defense in its effort to identify additional videos that may include a particular defendant. The government will continue to perform regular searches of the video library to identify new materials as new videos are added to the repository. The government's proactive deployment of technology in furtherance of this effort again underscores the government's commitment to meeting its discovery obligations in these historic and unprecedented cases. *See* Department of Justice and Administrative Office of the U.S. Courts Joint Electronic Technology Working Group (JETWG) Criminal E-Discovery, A Pocket Guide for Judges, Appendix B ESI Protocol, Section 1 (Purpose), Subsection (b)( "[T]he volume of ESI in many cases may make it impossible for counsel to personally review every potentially discoverable item, and, as a consequence, the parties increasingly will employ software tools for discovery review, so ESI discovery should be done in

a manner to facilitate electronic search, retrieval, sorting, and management of discovery information.").

Finally, while it would not have impacted the government's production of the Hemphill Video or its protocol to identify the video, the prosecution team disputes Nordean's characterization of the video as exculpatory. The Hemphill video captures the Proud Boys from approximately 11:20 a.m. until approximately 12:00 p.m. on January 6, while Nordean and Biggs marched their men around the Capitol. In his brief, Nordean described a sequence "not long before" the breach when Hemphill "asked whether Nordean had a plan to enter the building." In his brief, Nordean reports that Nordean "denied any such plan." The government understands that Nordean is referring to the following exchange amongst Nordean, Rehl, and Pamela Hemphill at approximately the 3 minute 35 second mark of the video (*i.e.*, approximately 11:20 a.m.):

> Hemphill:     *Are we going inside? I wanna go inside.*
> Nordean:     *No, we're not going inside.*
> Hemphill:     *Well, shit, I did in Boise with [NAME].*
> Nordean:     *[Laughs] I mean, if you want to go inside…*
> Rehl:          *I don't think they'll let us inside.*

Exhibit 1 at 3:35 – 3:50. Approximately 20 minutes later in the same video, a member of the marching group again raised the prospect, saying, "Ethan, let's fucking do it." Nordean responded, "What?", to which the man responded, "let's go check out the Capitol." Nordean nodded in agreement, looked around, and then used his hand as if to tell the man to be patient. *Id.* at 25:27 – 25:38. Approximately one minute later, a man near Nordean again said, "Storm the Capitol. Let's do it. Storm the Capitol" to which Nordean did not appear to react. *Id.* at 26:55 – 27:00. A few minutes later, in a separate video that has previously been submitted to this Court, the Proud Boys member known as Milkshake cried out, "Let's take the fucking Capitol!" Against this backdrop, Nordean and Biggs then purposely and intentionally marched their men—the men they had

assembled—back to a thinly guarded gate on the west side of the Capitol. They arrived at 12:50 p.m. They stormed the Capitol grounds minutes later. Nordean's purported "denial" of any plan to enter the Capitol building to a random woman is belied by the entirety of the video and Nordean's words and actions on January 6.[2]

## Conclusion

The government's extensive and carefully crafted discovery procedures fully discharge the government's discovery obligations in this case. Nordean's request far surpasses the government's obligations under applicable case law and the Local Criminal Rules and is unreasonable in light of the extraordinary efforts the government has already undertaken to identify and provide discoverable information to the defense. Nordean's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:   /s/ Jason McCullough
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
ERIK M. KENERSON
Ohio Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
   On Detail to the District of Columbia

---

[2] Undersigned counsel were not aware of the Hemphill video until counsel for Nordean brought it to our attention. The Hemphill video actually demonstrates the opposite of what Nordean hopes it would—the government is attempting to ferret out relevant information from the terabytes available, and it is being transparent in its methodology with the defense and the court. If the order Nordean seeks had been in place throughout this case, it would not have affected the discovery and provision of the Hemphill Video, as government counsel cannot label an item of which it is not aware. The government's myriad discovery filings in this case, as well as its opposition to the defendant's motion, show the lengths to which it is going to identify potentially relevant material, and they demonstrate that the timing of the identification of the Hemphill Video had nothing to do with government malfeasance or negligence. The government will continue to work diligently to identify potentially relevant materials regardless of whether the Court enters the order Nordean seeks.

Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7233 //
jason.mccullough2@usdoj.gov


By:  */s/ Conor Mulroe*
     CONOR MULROE, NY Bar No. 5289640
     Trial Attorney
     U.S. Department of Justice, Criminal
     Division
     1301 New York Ave. NW, Suite 700
     Washington, D.C. 20530
     (202) 330-1788
     Conor.Mulroe@usdoj.gov