UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.  Case No.  21-CR-175-2 (TJK)

JOSEPH RANDALL BIGGS, et al.,

Defendants.

### BIGGS' SUPPLEMENT TO MOTION TO CHANGE VENUE

Pursuant to this Court's Minute Order of June 10, 2022, defendant Biggs supplements his motion to join defendant Tarrio's May 2 Motion to Transfer Venue (ECF 349). Biggs' motion of June 9 was filed in the wake of the sensationalized negative press and media coverage about Proud Boys—and especially about Biggs himself—commenced just last week in the televised hearings of the House Select Committee on January 6. The hearings so far are slick, choreographed with the assistance of a former president of ABC News, far beneath the dignity of the United States Congress and, in Bigg's case, comprised of misrepresentations, outright lies and high tabloid noise of the first order. A show. A production.  A spectacle.

The problem: the most respected legislative body in world is P.T. Barnum here. The good, well-meaning, informed, media-attentive citizenry of the District of Columbia from which jurors are drawn will believe that spectacle as packaged. They trust Congress. The rely on our mainstream media. Earnestly, and in good faith, potential jurors will take strong cues from the messaging of both. The hearings will continue at least throughout the month of June. Biggs' jury trial start date is August 8, 2022.

Trial by jury is the most critical feature of American law. It pervades our jurisprudence and

233-year history. We still remind jurors themselves that the "effectiveness of the democratic system itself is largely measured" by their quality as citizens serving on our courts.[1] In criminal cases especially, however, juror quality is stretched to include a lack of bias that could result in, purposely or inadvertently, unfair if not tragic unintended results to an accused. The Sixth Amendment guarantees Joseph Biggs a right to trial "by an impartial jury." The right to an impartial jury does not require *tabula rasa* emptiness, complete detachment or "ignorance" on the part of jurors. *Skilling v. United States*, 561 U.S. 358, 381 (2010). Perfect fairness and total lack of bias is not required. It's enough that under the Sixth Amendment district courts protect a defendant from "bias or prejudice that would prevent [jurors] from returning a verdict according to the law and the evidence." *Connors v. United States*, 158 U.S. 408, 413 (1895) quoted in *United States v. Tsarnaev*, slip op. at 8, 142 S. Ct. 1024, 1034 (Mar. 4, 2022). Satisfying that goal, however, is deceptively difficult, and different, in every high-profile case.

Long-followed procedures have made juror fairness issues easier to decide. The standard to transfer for trial, applied as a commonsense judgment call in a court's discretion, is contained in Rule 21 of the Federal Rules of Criminal Procedure. Rule 21(a) does not require that a better or "fairer" venue exists for the trial of Proud Boy Joseph Randall Biggs, i.e., the Southern District of Florida, the Eastern District of Virginia, or elsewhere. It is more straightforward than that.

> Rule 21. Transfer for Trial
>
> (a) FOR PREJUDICE. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant

---

[1] *See*, JUD. CONF. OF THE U.S., HANDBOOK FOR TRIAL JURORS SERVING IN THE UNITED STATES COURTS 15 (2019) http://www.vaed.uscourts.gov/jury/jurortrialhandbook.pdf [https://perma.cc/D3JT-UGQX]

> exists in the transferring district that the defendant cannot obtain a
> fair and impartial trial there.

This precept is flexibly applied and met whenever there is "so great a prejudice" that a fair and impartial trial cannot be had. Certainly, the prejudice in Biggs' case is now "great." Moreover, it is "so great" as to prevent a fair trial now, on August 8, after the November 2022 midterms or for months if not years after the midterms no matter what the midterms results are. The four polls cited by a number of January 6 defendants in venue transfer motions put juror bias issue numbers against Proud Boys and others in the 90% to 93% range. *See*, Tarrio motion (ECF 349), and briefing cycle. Those "bias" numbers are likely only to increase in future polls, and in defendant Biggs' case that is particularly so. Behold the following colloquy between Representative Liz Cheney and Capitol Hill Police Officer Caroline Edwards heard and seen by over 20 million Americans, including lovably dorky, wonky, media-attentive Washingtonians, just five nights ago:

Q: Officer Edwards, can you describe the crowd that had assembled at the Peace Circle as you and your fellow officers stood behind and guarded the bike racks at the Peace Circle?

A: Yes, so there were about, I want to say about five of us on that line. There was our bike rack, and then at the bottom of the Pennsylvania Avenue walkway, or right by Peace Circle, there was another bike rack. The crowd had kind of gathered there. It was the crowd led by **Joseph Biggs**. They were mostly in civilian clothes. There were some who had military fatigues on. We could see people with bulletproof vests on, things like that. They didn't seem extremely cohesive, but they had gathered there in their outfits. But they had gathered there together. **Joseph Biggs** started, he had a micro, or a megaphone, and he started talking about, first it was things kind of relating to Congress. Then the table started turning once the, what is now the Arizona group is what you said, the crowd with orange hats, they came up chanting F-U-C-K Antifa.

They joined that group and once they joined that group, **Joseph Biggs** rhetoric turned to the Capitol Police. He started asking us questions like, "You didn't miss a paycheck during the pandemic?" Mentioning stuff about our pay scale was mentioned and started turning the tables on us. I've worked, I can conservatively say probably hundreds of civil disturbance events. I know when I'm being turned into a villain. That's when I turned to my sergeant and I stated the understatement of the century. I said, "Sarge, I think we're going to need a few more people down here."

Edwards' canned, cagey and morally superior "I think we're going to need a bigger boat" testimony on prime-time television last Thursday night before 20 million isolating Biggs in a portrayal as J6 Insurrection Mob Boss—to the exclusion of any other Proud Boy—is enough to warrant a change of venue for him to the Southern District of Florida in Miami. But she doesn't stop there. Joseph Biggs' name is next mentioned prominently in her testimony about the beginning of the protestors going east up Capitol Hill around 1 PM on January 6. While up to this point as little as 5% of her entire testimony about the gathering at Peace Circle has been true (even on material and basic facts), she continues in the same vein, now bashing Biggs again, by associating him with another protestor and infamous January 6 character he does not know, has never met, and had never heard of or seen a photo of until late 2021:

OFFICER EDWARDS: After that, I think they started conferring. They went a little silent. They started conferring among each other. I saw the person now identified as **Ryan Samsel**. He put his arm around **Joseph Biggs** and they were talking. Then they started approaching the first barricade. They ripped the first barricade down and they approached our bike racks.[2] At that time we started holding on, grabbing the bike racks. There weren't many of us, so I grabbed

---

[2] Even our most activist establishment press didn't totally buy into Edwards' tall tale about Biggs and Samsel, their "collusion," and Biggs otherwise much-hyped role in the march up Capitol Hill. *See*, A. Feuer, "Dispute Over Claim That Proud Boys Leader Urged Attack at Capitol," NEW YORK TIMES, p. 6 (Oct. 6, 2021.) Biggs, for the record, by this point has not moved from Peace Circle. His only activity with Samsel occurred for 1.5 seconds (at most) when Samsel put his hand on Biggs shoulder and said something in passing. Biggs, known by some protestors as a former media and InfoWars personality, said nothing to Samsel in return and may not have even noticed Samsel at the time. Biggs was 60 yards from Officer Edwards during the entire bike rack episodes she describes. Finally, Biggs does not know Edwards. It is unlikely she knew his name or face. It's true that Biggs had a megaphone and stood at Peace Circle. Yes, he taunted Antifa. But the Biggs "pay grade" testimony, for example is pure and somewhat strange fable.

the middle between two different bike racks. I wasn't under any pretense that I could hold it for very long, but I just wanted to make sure that we could get more people down and get our CDU units time to answer the call. We started grappling over the bike racks. I felt the bike rack come on top of my head. I was pushed backwards and my foot caught the stairs behind me and my chin hit the handrail and then at that point I had blacked out, but the back of my head clipped the concrete stairs behind me.

Apart from risk of prejudice that comes with Joseph Biggs' name being mentioned **four** times in rapid succession up front on opening night of the House Select Committee's hearings, Biggs and his counsel respectfully submit that the above testimony alone by Officer Edwards in its totality is more than enough to justify a transfer of venue to Miami, Florida, as defendant Tarrio has urged. *See also, Delaney v. United States,* 199 F.2d 107, 114 (1st Cir. 1952) (trial judge abused his discretion in not granting a trial continuance in view of ongoing Congressional hearings into a scandal involving the defendant.)

Finally, Biggs quotes from briefing in another poll-based motion to transfer venue filed two months ago in another January 6 case and foreshadowing the House Select Committee's influence on the DC juror pool beginning five nights ago.

> While pretrial publicity of the Capitol incident exists in other areas of the country, the personal impact J6 had on District residents requires a transfer. The District of Columbia is further shown to have over 66% as personally impacted by a "fear of personal safety." The District of Columbia's jury pool is saturated with prejudice. Moreover, the notion that more than 4 out of 10 jurors would assume that J6 was "racially motivated" is disturbing and incorrect. Defendants should not have to prove that they are not racists. And the work of the Select Committee is a daily dose of additional media coverage.

*United States v. Caldwell*, Memorandum in Support of Motion to Transfer Venue, 22-cr-00015-APM, ECF 93, 22 (April 15, 2022). Under the circumstances, and given the outsized role played

by the House Select Committee in shaping negative if 'good faith' juror attitudes toward Joseph Randall Biggs and the Proud Boys in the District of Columbia, Biggs' change of venue request is compelling and important.

    This motion to transfer should be granted.

                                          Respectfully submitted,

                                          COUNSEL FOR JOSEPH BIGGS

Dated: June 14, 2022                By: /s/ *J. Daniel Hull*
                                          JOHN DANIEL HULL
                                          DC Bar No. 323006
                                          California Bar No. 222862
                                          HULL MCGUIRE PC
                                          1420 N Street, N.W.
                                          Washington, D.C.  20005
                                          (202) 429-6520 office
                                          jdhull@hullmcguire.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 14, 2022, defendant Biggs' Supplement to Motion to Change Venue was served via the Electronic Case Filing (ECF) system upon the government and all counsel of record.

By: /s/ *J. Daniel Hull*
JOHN DANIEL HULL
DC Bar No. 323006
California Bar No. 222862
HULL MCGUIRE PC
1420 N Street, N.W.
Washington, D.C.  20005
(202) 429-6520
jdhull@hullmcguire.com