### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br><br>v.<br><br>ETHAN NORDEAN et al.,<br><br>*Defendants*. | Criminal Action No. 21-175 (TJK) |

### <u>MEMORANDUM OPINION AND ORDER</u>

On February 3, 2021, Ethan Nordean was arrested for his alleged role in the events of January 6.  He was released on home detention one month later, but on April 20, 2021, this Court revoked his release and ordered him detained.  Between then and now Nordean has filed 13 motions, 15 supplements to those motions, and two appeals.  The Government has also filed many motions, as have Nordean's codefendants.  The Government has been steadily producing discovery born of the "largest" investigation and prosecution "in American history."  ECF No. 120-1 at 2. And in March 2022, the Grand Jury returned the Second Superseding Indictment, adding two new codefendants and several new charges.[1]  That month, based on that new indictment and the status of discovery, the Court vacated a previously set May trial date.  It then set a June deadline for discovery to be completed and scheduled trial for August, on the first date available for all counsel. Nordean now moves for his immediate release under the Speedy Trial Act, claiming that the 90-day clock to start his trial has already run.  The Court disagrees, and so it will deny his motion.

---

[1] Although not relevant here, the Grand Jury has since returned a Third Superseding Indictment. ECF No. 380.

## I.     Legal Background

The Speedy Trial Act governs how quickly a federal criminal defendant's trial must begin. *See* 18 U.S.C. § 3164(a).  Trials involving (1) "a detained person who is being held in detention solely because he is awaiting trial" and (2) "a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk" should start no later than 90 days "following the beginning of such continuous detention or designation of high risk by the attorney for the Government." *Id.* § 3164(a)–(b).  If a detainee's trial does not start within the 90-day window, "through no fault of the accused or his counsel," the Court must review "the conditions of release." *Id.* § 3164(c).  The same must happen if a designated releasee's trial does not start within the 90-day window, "through no fault of the attorney for the Government." *Id.*  And "[n]o detainee . . . shall be held in custody pending trial after the expiration of" the 90-day deadline. *Id.*

At the same time, the Speedy Trial Act "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases.  To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006).  And those exclusions—found at 18 U.S.C. § 3161(h)—apply to the 90-day trial clock for detainees and designated releasees.  18 U.S.C. § 3164(b).  Relevant here, the excludable periods include "delay resulting from . . . proceedings concerning the defendant," such as "delay resulting from any interlocutory appeal" and "delay resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1).  They also include a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* § 3161(h)(6).  And a Court may toll time for "[a]ny period of delay resulting from a continuance

. . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7).

## II.   Analysis

Nordean argues that he should be released under Section 3164 because he has been detained for 90 nonexcludable days without trial—or will soon hit that 90-day mark. ECF No. 343 at 1.[2]  But after considering Nordean's motions, the post-hearing supplements to those motions, the Government's motions, Nordean's appeals, his codefendants' motions and appeals, and the Court's many ends-of-justice findings related to the enormous amount of discovery in this case and COVID-19's impact on the Court's ability to hold trials consistent with the public health, that deadline is still a ways off.  All in all, the Court finds that there have been no nonexcludable days since Nordean's continuous detention began.  In fact, almost all the days at issue are excluded on three to five separate and independent grounds.

### A.      When Nordean's Continuous Detention Began

To begin with, the Court must determine when Nordean's 90-day clock started to run. Nordean argues that it started on February 3, 2021, when he was first arrested, not on April 20, 2021, when the Court ordered him detained.  ECF No. 343 at 16.  The Court disagrees.

As explained above, Section 3164 provides that the 90-day clock for "cases involving . . . a detained person who is being held in detention solely because he is awaiting trial" starts

---

[2] Nordean also claims at times that his detention violates his due process rights.  But he makes no arguments in support of those claims.  And it "is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."  *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).  Indeed, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).

"following the beginning of such continuous detention," and the clock for "cases involving . . . a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk" starts "following the . . . designation of high risk."  18 U.S.C. § 3164(a)–(b).  Neither Nordean nor the Government contends that Nordean was ever designated "as being of high risk."  Thus, the question is when Nordean's "continuous detention" began.  The answer is April 20, 2021, when the Court ordered him detained and he reported for that detention.  ECF No. 65; ECF No. 70.  That is the only date from when Nordean has been and still is "continuously" detained.  Thus, that is the only period of "continuous detention" that the Court could end by releasing Nordean, which is what Section 3164 envisions and he himself seeks.  *See* 18 U.S.C. § 3164(b)–(c) ("The trial of [a detainee] . . . shall commence not later than ninety days following the beginning of such continuous detention," and "[n]o detainee . . . shall be held in custody pending trial after the expiration of such ninety-day period[.]").

Nordean makes two arguments in response, neither of which is persuasive.  First, he argues that he was, in fact, "detained" from February 3, 2021, through April 20, 2021.  He points out that he was held from February 3 until March 3, when—before the case was assigned to the undersigned—the Chief Judge of this Court ordered him released with conditions, effectively affirming a magistrate judge's determination along the same lines.  ECF No. 343 at 17.  He then argues that he was still "detained," as Section 3164 uses the term, when the Court released him on conditions that amounted to home detention.  *Id.*

To make this argument, Nordean points to subsection (c), which states that "[f]ailure to commence trial of a detainee" in the requisite 90-days "shall result in the automatic review by the court of the conditions of release," and "[n]o detainee . . . shall be held in custody pending trial after the expiration of such ninety-day period."  18 U.S.C. § 3164(c).  According to Nordean,

requiring at the 90-day mark both the release of detainees from custody *and* automatic review of "the conditions of release" means that "the 'detention' referenced in [Section 3164] cannot be limited to persons being held in official custody"—it must also include some form of release for which there are "conditions" the Court can review.  ECF No. 343 at 17.  He then argues that this reading tracks the "plain meaning" of "detention," which he describes as "*any* 'confinement or compulsory delay.'"  *Id.* at 17 (emphasis added).

Nordean's reading does not withstand scrutiny.  To begin with, it ignores the repeated way in which the concepts of detention and release are used in the two related statutory schemes at issue.  Section 3164 itself explicitly distinguishes between "detainees" and certain "releasees."  18 U.S.C. § 3164.  And under the Bail Reform Act—which governs the detention of defendants pre-trial—the relevant question is whether the defendant is detained or released.  *See* 18 U.S.C. § 3142.  Indeed, "detention" there specifically means that *no* "condition or combination of conditions" of release can ensure the defendant's appearance and protect the public.  *Id.* § 3142(e).  Given that context, it would make no sense to read "detention" here as including a form of release with certain conditions, as Nordean urges.

In addition, in describing the "plain meaning" of "detention," Nordean leaves out the first part of the definition.  ECF No. 343 at 17.  Detention includes "[t]he act or instance of holding a person in custody."  *Detention*, Black's Law Dictionary (11th ed. 2019).  And being held "in custody" is exactly what pretrial detention requires.  Under the Bail Reform Act, a "detention order" must "direct that [the defendant] be committed to the custody of the Attorney General for confinement in a corrections facility."  18 U.S.C. § 3142(i); *see also Pretrial Detention*, Black's Law Dictionary (11th ed. 2019) ("The holding of a defendant before trial on criminal charges either because the established bail could not be posted or because release was denied.").  The Court will

not read detention to mean one thing under one statute and another under the next, especially when the two are as closely linked as the Bail Reform Act and the Speedy Trial Act.

True, Section 3164(c) instructs courts to review "the conditions of release" of a defendant detained without trial for more than 90 days. But that does not mean that a "detainee" can include someone who has been released with conditions. Instead, the statute appears to assume that if any detainee's clock hits 90 days, the court must *both* review his conditions of release and release him from custody. *See* 18 U.S.C. § 3164(c); *see also Godwin v. United States,* No. 19-14273-E, 2020 WL 6342962, at *3 (11th Cir. July 13, 2020) ("The remedy for a violation of the 90-day rule is an automatic review of the conditions of release and release from further custody pending trial."). Courts have made sense of that dual instruction by reading the statute to allow courts releasing detainees to at the same time consider what conditions of release would be appropriate. *See, e.g.*, *United States v. Knight*, 157 F. Supp. 2d 70, 74 (D.D.C. 2001) ("Under Section 3164(c), any such release, of course, may include stringent conditions placed on the terms of the release under the Bail Reform Act, 18 U.S.C. § 3142(c)."). In the end, no court has adopted the alternative reading Nordean proposes, and this Court will not be the first.

Second, Nordean claims that, in the alternative, he "was subject to 'continuous detention' from February 3 to March 3, and to 'continuous detention' from April 19 to the present." ECF No. 343 at 18 n.6. But, for one thing, Nordean was not detained on April 19. The Court had yet to enter its detention order; nor had Nordean reported for that detention. *See* ECF No. 65. Both things happened on April 20. *Id.*; *see also* ECF No. 70. More importantly, the Court cannot join those two separate periods of detention for purposes of the 90-day clock, which is what Nordean seemingly requests. Under Section 3164, the 90-day clock runs from start of a defendant's "*continuous* detention." 18 U.S.C. § 3164(b) (emphasis added). Yes, Nordean was detained for one

month after his arrest, but that "continuous detention" ended on March 3, 2021.  ECF No. 23.  And

a period of "continuous detention" cannot end and then resume; that would defy the plain meaning

of the word "continuous"—that is, "without break, cessation, or interruption; without intervening

space or time; uninterrupted; unbroken; continued."  *Continuous*, Webster's New International

Dictionary 577 (2d ed. 1959).  If Congress wanted courts to combine different periods of detention

together in this context, it could have said that the trial of a detainee "shall commence not later

than ninety days following the beginning of . . . detention."  But it did not.  Thus, the relevant

"uninterrupted" period of Nordean's detention started on April 20, 2021.[3]  Again, it does not ap-

pear that any court has ever adopted Nordean's reading of the statute, and again, this Court will

not be the first.

---

[3] Even if the Court considered February 3 as the start date for Nordean's 90-day clock, the Court would still deny his motion because only 12 nonexcludable days occurred between then and April 20.  Given Nordean's motions, the Government's motions, the Court's transport order, and the Court's ends of justice findings, only February 19 through February 22 and March 4 through March 11 would be nonexcludable under the Speedy Trial Act.  *See* ECF No. 16 at 29 (noting Government's motion for detention on February 3); *id.* at 29–30 (noting argument on detention motion and order of release on February 8); *compare id.* at 25 (ordering transfer of Nordean on February 8) *and* ECF No. 13 at 7 (reporting that, as of February 23, Nordean had not been transferred yet), *with* 18 U.S.C. § 3161(h)(1)(F) (excluding "delay resulting from transportation of any defendant" up to "ten days from the date [of] . . . an order directing such transportation"); *see also* ECF No. 14 (Government's February 23 motion to unseal); Feb. 25, 2021 Minute Order (granting ECF No. 14); ECF No. 13 (Nordean's February 23 motion to lift stay on release order); ECF No. 15 (Nordean's February 26 motion for release from custody); Mar. 3, 2021 Minute Entry (denying as moot ECF Nos. 13 & 15); ECF No. 29 (Government's March 12 motion to continue arraignment on superseding indictment); Mar. 15, 2021 Minute Order (granting ECF No. 29); ECF No. 27 (Nordean's March 15 motion for bill of particulars, for which the Government's response was due on March 29); ECF No. 28 (Government's March 17 motion to unseal superseding indictment); Mar. 19, 2021 Minute Order (granting ECF No. 28); ECF No. 30 (Government's March 20 motion to revoke Nordean's release); Mar. 23, 2021 Minute Entry (noting ends of justice exclusion for March 23 through April 1); Apr. 6, 2021 Minute Entry (noting ends of justice exclusion for April 6 through April 9); Apr. 19, 2021 Minute Entry (noting grant of ECF No. 30 and ends of justice exclusion for April 19 through May 4).

### B.      Excludable Time

With the April 20 start date established, the Court next turns to how many nonexcludable days have elapsed since then under the Speedy Trial Act. Simply put, there are none. Over the last 14 or so months, there have been multiple overlapping periods of delay justifiable under the Speedy Trial Act. And when considered together, no days have elapsed. The Court will address these periods of delay by category.

### 1.      Nordean-Related Motions

The Court first considers the delay stemming from Nordean's own pretrial motions and the Government's motions directed at Nordean. Under the Speedy Trial Act, "the time it takes the trial court to decide a pretrial motion does not count toward" the 90-day clock. *United States v. Van Smith*, 530 F.3d 967, 969 (D.C. Cir. 2008); *see* 18 U.S.C. § 3161(h)(1)(D), (H). The exclusion is automatic. *See United States v. Wilson*, 835 F.2d 1440, 1443 (D.C. Cir. 1987), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010). And contrary to Nordean's claims, ECF No. 343 at 16 n.5, this exclusion applies to "*any* pretrial motion"—no matter the subject, and including motions about a defendant's pretrial detention. 18 U.S.C. § 3161(h)(1)(D) (emphasis added); *see United States v. Hemphill*, 514 F.3d 1350, 1357 (D.C. Cir. 2008) ("We have interpreted this phrase to mean what it says: any motion will toll the clock. Indeed, a defendant's motion to dismiss for a speedy trial violation will itself stop the clock." (cleaned up)); *see also United States v. Lattany*, 982 F.2d 866, 872 n.6 (3d Cir. 1992) ("Motions regarding the defendant's pretrial detention and bond are 'pretrial motions' for speedy trial purposes and thus excludable from the speedy trial calculation."); *United States v. Schiavo*, 94 F.3d 640, 1996 WL 490008, at *7 (1st Cir. 1996) (Table) ("We think that 'any pretrial motion' easily encompasses pretrial motions relating to pretrial release or detention, and have previously held as much.").

That said, there are some limits on the time that gets excluded by the filing of a motion. "If the court does not hold a hearing for the pretrial motion, the Act excludes the period of time between the filing of the motion and the day the court receives all the papers it reasonably expects to help it decide the motion." *Van Smith*, 530 F.3d at 969 (cleaned up).   Once the court has "the necessary papers, the motion is considered 'under advisement by the court,' and up to thirty days more may be excluded while the court considers the matter." *Id.*  If, on the other hand, the court holds a hearing on the motion, "the Act excludes the period of time between the filing of the motion and the conclusion of the hearing, whether or not consideration of the motion caused actual delay of the trial, and whether or not the amount of delay that occurred was reasonable." *Id.* (cleaned up).  And if the court "takes the motion 'under advisement'" after the hearing, "up to thirty days more may be excluded for delay occasioned by the court's consideration of the matter." *Id.*[4]

One wrinkle, relevant here, is how supplements filed *after* the hearing affect the excludable period of delay.  The Supreme Court has said that time is excluded "after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion." *Henderson v. United States*, 476 U.S. 321, 331 (1986).  The Court explained that it would make no sense "for Congress to exclude automatically all the time prior to the hearing on a motion and 30 days after the motion is taken under advisement, but not the time during which the court remains unable to rule because it is awaiting the submission by counsel of additional

---

[4] Nordean repeatedly disputes that an additional 30 days may be excluded when a court takes a motion under advisement after a hearing on it.  ECF No. 331 at 6 n.4; ECF No. 343 at 2–3.  That argument simply ignores the precedent of this Circuit to the contrary.  *See, e.g.*, *Van Smith*, 530 F.3d at 969; *United States v. Harris*, 491 F.3d 440, 444 (D.C. Cir. 2007); *United States v. Saro*, 24 F.3d 283, 292 (D.C. Cir. 1994); *Wilson*, 835 F.2d at 1442; *see also United States v. Sutter*, 340 F.3d 1022, 1030 (9th Cir. 2003); *United States v. Scott*, 270 F.3d 30, 55 (1st Cir. 2001); *United States v. Davenport*, 935 F.2d 1223, 1228 (11th Cir. 1991); *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988).

materials." *Id.*  Other courts have read that decision to mean that "if the court requires further filings at the hearing, then the 30-day period runs from the date of the last filing." *United States v. Scott*, 270 F.3d 30, 55 (1st Cir. 2001).  The same is true for when the court realizes "the need for additional filings early in" the 30-day consideration period and "so notif[ies] the parties." *Id.* at 57; *see also United States v. Janik*, 723 F.2d 537, 544 (7th Cir. 1983) ("the requirement of prompt disposition . . . may not be circumvented by . . . ordering the hearing reopened *more* than 30 days after the matter has been taken under advisement" (emphasis added)).

As far as the Court can tell, no court has addressed what happens when a party files within the 30-day, post-hearing consideration window an unexpected supplement to the pending motion. In Nordean's view, unsurprisingly, no extra time is excluded.  He argues that the above cases limit the exclusion of additional time to when the court requests supplemental filings at the hearing or within 30 days afterward.  *See* ECF No. 343 at 4–6.  Thus, time is not excluded, he says, when the Court does not expect the materials, even if a defendant files supplements day after day that he urges the Court to consider.  *Id.*  In the Court's view, that makes no sense.  "[T]he Speedy Trial Act does not countenance such game-playing; it was intended to be a shield, not a sword." *United States v. Ntube*, No. 93-cr-3222 (HHG), 1996 WL 808068, at *8 (D.D.C. Dec. 9, 1996).

The approach most consistent with the Speedy Trial Act's structure and the above case law is for the 30-day consideration period to restart when a supplement is filed—at least if the supplement is filed during the governing 30-day consideration period.[5]  That is so because the "provisions of the [Speedy Trial] Act are designed to exclude all time that is consumed in placing the trial

---

[5] The Court need not address the question of what happens if a new supplement is filed more than 30 days after the hearing or last filing because each supplement or request for supplemental briefing here was filed within 30 days of the hearing or last supplemental filing.

court in a position to dispose of a motion." *Henderson*, 476 U.S. at 331.  And a court is not immediately positioned to dispose of a motion when a party presents it with a new supplemental filing that the party urges it consider in resolving the motion.[6]  Thus, the Court determines that the Speedy Trial Act automatically excludes up to 30 days after the Court took each supplemental filing under advisement.  18 U.S.C. § 3161(h)(1)(H).  As a result, the following periods are excluded from Nordean's 90-day clock:[7]

- From May 19, 2021, when Nordean moved for a bill of particulars, ECF Nos. 88 & 89, until August 16, 2021, 30 days after the argument, July 15, 2021 Minute Entry.[8]

- From June 3, 2021, when Nordean moved to dismiss, ECF No. 94, until December 28, 2021, when the Court denied the motion, ECF No. 262.  On top of the supplement Nordean filed before the hearing, he filed two supplements less than a month after the September 21 motion hearing.  ECF Nos. 201 & 207.  And the Court requested additional briefing within 30 days of the later supplement.  *See* Nov. 3, 2021 Minute Order.  That additional briefing was complete by

---

[6] Another way to view these supplemental filings is as supplemental motions for identical relief.  After all, the other party may oppose them and they are presented for the Court to "dispose of." *Van Smith*, 530 F.3d at 971.  Indeed, unlike a purely informative notice—such as the Government's many reports on the status of discovery in this case—the supplements filed here were a form of "application made to a court or judge for [the] purpose of obtaining a rule or order directing some act to be done in favor of the applicant."  *Melendez v. United States*, 518 U.S. 120, 126 (1996) (cited by *Harris*, 491 F.3d at 444, when discussing the definition of a "motion").  Nordean's supplements sought an order either dismissing the indictment or reopening his detention hearing, depending on the supplement.  Similarly, the Government's supplements sought an order denying Nordean's motions.

[7] Even if the supplemental filings did not toll time under the Speedy Trial Act, there would *still* be no nonexcludable days given the time tolled because of other motions, appeals, codefendant-related proceedings, and ends-of-justice findings.

[8] Because 30 days would technically fall on August 14, 2021, a Saturday, Federal Rule of Criminal Procedure 45(a) applied, which made Monday, August 16, 2021, the 30th day.  *See United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) ("Although the Supreme Court has recognized that previous versions of Rule 45 did not expressly apply to statutes and did not comport with common-law time calculations, the current version of the Rule . . . does both.") (citing *United States v. Tinklenberg*, 563 U.S. 647, 661 (2011), and Fed. R. Crim. P. 45(a)).  From here on, the Court will note the end of any excludable period as the day dictated by Rule 45(a).

December 6, 2021, ECF No. 238, and Nordean filed another supplement on December 12, 2021, ECF No. 248.[9]

- From June 28, 2021, when the Government moved for a temporary protective order, ECF No. 102, until June 29, 2021, when the Court granted the motion, ECF No. 103.

- From July 20, 2021, when Nordean moved to reopen his bond hearing, ECF No. 122, until December 14, 2021, when the Court denied the motion, Dec. 14, 2021 Minute Entry. Nordean filed five supplements to this motion before the hearing and six after the hearing, all within 30 days of the last. *See* ECF Nos. 166, 174, 182, 197, 206, 217.[10] And the Court noted at the November 3 status conference that it would need to consider the additional motion-to-dismiss briefing it was ordering when deciding the bond motions. ECF No. 219 at 4–5.

- From July 29, 2021, when Nordean moved to remove the sensitivity designation of certain video exhibits, ECF No. 129, until September 20, 2021, 30 days after the Court had all the filings since there was no hearing on this motion, ECF No. 146.

- From September 14, 2021, when Nordean moved for access to the sealed transcript, ECF No. 164, until September 16, 2021, when the Court granted the motion, Sept. 16, 2021 Minute Entry.

- From December 22, 2021, when Nordean filed a renewed motion for bond under 18 U.S.C. § 3142(i), ECF No. 258; *see also* ECF No. 340 at 23:21–23 (construing filings as renewed motions), until January 21, 2022, when the Court denied it, ECF No. 281.

- From December 29, 2021, when Nordean moved for discovery in support of his selective prosecution claims, ECF No. 267, until March 10, 2022, 30 days after the Court's hearing on the motion, Feb. 8, 2022 Minute Entry.

- From December 29, 2021, when Nordean moved under seal, ECF No. 266, until May 12, 2022, when the Court granted the motion in part and denied it in part without prejudice, ECF No. 354. The Court had granted the motion in part on February 10, 2022, just days after the hearing. ECF No. 289. But the Court told the parties it needed more information before it resolved the remaining issues. *Id.* Although delayed by litigation over the Court's review of that additional information, *see infra*, the Court finally had the information by March 11, 2022. ECF No. 313. The Court informed the parties that it needed a hearing on the outstanding issues on April 5, 2022, and that hearing took place on April 21, 2022. Apr. 5, 2021 Tr. at 37, 42.

---

[9] Nordean titled some of these filings as "notices" rather than supplements, but their function was the same: they aimed to provide the Court with additional information and arguments in support of Nordean's motion.

[10] Again, Nordean did not title all of these filings "supplements," but that was their function.

- From February 9, 2022, when the Government moved for an order allowing temporary sealing, ECF No. 287, until the Court granted the motion that same day, Feb. 9, 2022 Minute Order.

- From February 22, 2022, when Nordean moved under seal about the above sealed motion, ECF No. 294, until March 8, 2022, when the Court denied the motion, ECF No. 310.

- From February 22, 2022, when the Government moved under seal, ECF No. 295, until February 23, 2022, when the Court granted the motion, Feb. 23, 2022 Minute Entry.

- From March 6, 2022, when the Government moved under seal, ECF No. 299, until March 7, 2022, when the Court granted the motion in part, Mar. 7, 2022 Minute Entry.

- From March 21, 2022, when the Government moved to vacate the trial date, ECF No. 314, until April 12, 2022, when the Court granted the motion, ECF No. 338.

- From March 25, 2022, when Nordean moved to sever, ECF No. 321, until April 12, 2022, when the Court denied the motion, ECF No. 339.

- From April 5, 2022, when Nordean filed this motion, ECF No. 331, until May 20, 2022, 30 days after the Court had all the filings, ECF No. 343.

- From May 19, 2022, when Nordean moved for an order requiring the Government to identify *Brady* materials, ECF No. 365, through today, as the hearing on this motion was not until June 9, 2022, June 9, 2022 Minute Entry.

- From June 9, 2022, when Defendants jointly moved to modify the scheduling order, ECF No. 387, until June 12, 2022, when the Court granted the motion in part, June 12, 2022 Minute Order.

## 2. Nordean's Appeals

The Speedy Trial Act also excludes "[a]ny period of delay . . . resulting from any interlocutory appeal." 18 U.S.C. § 3161(h)(1)(C). Courts appear to agree that this period of delay starts when a party files its notice of appeal and ends the date the mandate issues from the Circuit. *See United States v. Yunis*, 705 F. Supp. 33, 34–35 (D.D.C. 1989) (describing the excludable period as from the date the appeal "was noticed" until "the Court of Appeals issued its mandate"); *see also United States v. Pete*, 525 F.3d 844, 848–49 (9th Cir. 2008) (footnotes omitted) (same); *United States v. Arellano-Garcia*, 471 F.3d 897, 900 (8th Cir. 2006) (same); *United States v. Rivera*, 844 F.2d 916, 919–20 (2d Cir. 1988) (same); *United States v. Ferris*, 751 F.2d 436, 439 (1st Cir. 1984)

(same).  Although the D.C. Circuit has yet to address the precise contours of when the period of delay begins and ends, that approach makes sense.  The purpose of the Speedy Trial Act's excludable periods of delay is "to remove" from the trial-clock calculation "periods when the district court justifiably cannot try the defendant's case."  *United States v. Felton*, 811 F.2d 190, 198 (3d Cir. 1987).  Thus, "[w]hen the matter is on appeal, the district court lacks power to proceed," so "logically that time is excluded."  *Id.*  No case of which the Court is aware suggests otherwise.

Nordean, however, contends that neither of his two interlocutory appeals can toll time under the Speedy Trial Act because both concerned this Court's detention decisions.  ECF No. 343 at 13.  He argues that "pretrial incarceration" is a prejudice courts consider in the Sixth Amendment speedy trial rights context, and he appealed this Court's detention decisions precisely because of the prejudice his ongoing detention caused.  *Id.*  Thus, he reasons, excluding time for his interlocutory appeals would conflict with his Sixth Amendment speedy trial right.  *Id.* at 13–14.  But treating appeals differently under the Speedy Trial Act based on the nature of the issue of appealed would contravene the statute's explicit requirement that delay from "*any* interlocutory appeal" be excluded.  18 U.S.C. § 3161(h)(1)(C) (emphasis added).  Moreover, the Circuit has already confirmed that the statute means what it says by noting in *United States v. Young*, 428 F. App'x 9, 10 (D.C. Cir. 2011), that the district court had "appropriately excluded" time while the defendant's appeal over his bond status was pending.  Finally, the Court notes that the Speedy Trial Act's exclusion of this time does not conflict with Nordean's Sixth Amendment speedy trial right; he may make a constitutional speedy trial argument no matter whether any period is excluded under the statute.  Indeed, the D.C. Circuit has stressed that the "absence of a Speedy Trial Act violation

does not *ipso facto* defeat a Sixth Amendment speedy trial act claim." *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014).[11]

In the end, because "*any* interlocutory appeal[s]" are excluded from a defendant's speedy-trial clock, 18 U.S.C. § 3161(h)(1)(C) (emphasis added), the following periods are excludable:

• From April 22, 2021, when Nordean noticed his appeal of this Court's detention decision, ECF No. 69, until August 18, 2021, when the Circuit's mandate issued, ECF No. 145.

• From December 27, 2021, when Nordean noticed his appeal of this Court's decision not to reopen his bond hearing, ECF No. 260, until April 26, 2022, when the Circuit's mandate issued, *United States v. Nordean*, No. 21-3096 (D.C. Cir. Apr. 26, 2022).[12]

### 3.   Codefendant-Related Delay

The Speedy Trial Act also allows for excludable periods of delay relating to Nordean's codefendants. Under the statute, "a reasonable period of delay" is excluded "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). In other words, "when defendants with ticking clocks are joined together, each defendant's speedy-trial clock is synchronized with the clock of the defendant with the most time remaining." *United States v. Johnson*, No. 21-cr-0332 (PLF), 2021 WL 3207044, at *1 (D.D.C. July 29, 2021) (cleaned up). Thus, first, "upon the addition of a new co-defendant, all defendants' speedy trial clocks are reset to day zero." *Van Smith*, 530 F.3d at 970. And second, "an exclusion applicable to one defendant applies to all codefendants." *Saro*, 24 F.3d at 292 (quoting *United States v. Edwards*, 627 F.2d 460, 461 (D.C. Cir.

---

[11] At times in this motion, Nordean cites the Sixth Amendment. But he makes no affirmative arguments about such a violation, or for relief from it. Indeed, the "remedy for a violation of the Speedy Trial Clause is dismissal," *United States v. Homaune*, 898 F. Supp. 2d 153, 168 (D.D.C. 2012), and Nordean seeks only his release.

[12] The mandate does not yet appear on this Court's docket.

1980)); *see also Johnson*, 2021 WL 3207044, at *1 ("Delay caused by a co-defendant's pretrial proceedings is excluded under [18 U.S.C. § 3161(h)(6)].") (cleaned up).

Both effects of this provision of the Speedy Trial Act are relevant here. First, Enrique Tarrio was arrested and added as a codefendant on March 7, 2022—about 13 months after Nordean was first arrested. ECF No. 305.[13] So under the Speedy Trial Act, Nordean's speedy-trial clock "reset" that day to zero, regardless of the effect of any other basis to exclude time. *Van Smith*, 530 F.3d at 970. Nordean argues that the delay in indicting Tarrio was not "reasonable," so there can be no excludable delay based on his addition. ECF No. 343 at 19. But this Court already found the delay reasonable, and Nordean makes no new arguments on this point. *See* ECF No. 338 at 2.[14]

Second, Nordean's codefendants have filed many motions, and taken their own appeals, that have resulted in excludable delay applicable to Nordean as well. Nordean argues that these periods do not affect his speedy-trial clock. His rationale is that exclusions for codefendants' proceedings "are not automatic"; they instead require the Court to "make a finding as to whether a period of delay attributable to defendant joinder is reasonable." ECF No. 343 at 8 (cleaned up). And this Court has yet to find that the below periods of delay are "reasonable." *Id.* at 8–9. Fair enough. *See Henderson*, 476 U.S. at 327; *but see United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (suggesting that Section 3161(h)(6) exclusions are automatic). But nothing bars the Court from determining that they are reasonable now. Unlike other exclusion

---

[13] Dominic Pezzola, who was previously charged, was also joined as a codefendant in March 2022. *See* ECF No. 305.

[14] In addition, in *Van Smith*, the Circuit refused to question the "reasonableness" of delay when considering "the delay excluded by resetting the speedy trial clock to reflect the addition of a new defendant." *Van Smith*, 530 F.3d at 972 (comparing delay for new defendants to delay related "to motions made by a co-defendant"). The Circuit explained that "[t]he Supreme Court has stated that all defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant, and [it saw] no reason to depart from that practice." *Id.* (cleaned up).

provisions, "[t]here is no requirement in 18 U.S.C. § 3161(h)[(6)] that the trial judge make a finding of reasonableness on the record." *United States v. Cordova*, 157 F.3d 587, 599 (8th Cir. 1998). Nordean does not argue otherwise. Nor does he even try to argue that the delay attendant to his codefendants' pretrial proceedings was unreasonable.

When assessing the "reasonableness" of delay related to codefendants, courts take two approaches. "Some circuits have interpreted [Section 3161(h)(6)] as requiring a defendant to file a motion for severance in order to challenge the reasonableness of the delay on appeal." *United States v. Maryea*, 704 F.3d 55, 67 (1st Cir. 2013) (citing *United States v. Howard*, 443 F. App'x 596, 598 (2d Cir. 2011), and *United States v. Culpepper*, 898 F.2d 65, 67 (6th Cir. 1990)). Others view the filing of a severance motion an "important consideration" but not dispositive, *id.*, looking instead to "the totality of the circumstances prior to trial, or . . . the actual prejudice suffered by the [defendant] as a result of the . . . exclusion." *United States v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999); *see also United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998); *United States v. Tobin*, 840 F.2d 867, 870 (11th Cir. 1988). The D.C. Circuit "has not provided a lot of insight" on which approach it finds correct. *United States v. Shaw*, 510 F. Supp. 2d 148, 151 (D.D.C. 2007). But that does not matter here; the below periods of delay are reasonable under any methodology.

To begin with, Nordean did not move to sever until this past March, and even then, he only moved to sever from Tarrio and Pezzola. *See* ECF No. 321.[15] He has never moved to sever his trial from that of codefendants Joseph Biggs, Zachary Rehl, or Charles Donohoe. On top of that, Nordean and those three of his codefendants often filed either closely related motions or motions

---

[15] The Court denied his motion without prejudice. *See* ECF No. 339.

from which they could all benefit. Many arguments made by Biggs, Rehl, and Donohoe about the propriety of their bond status applied to the other defendants, including Nordean. Biggs, Rehl, and Donohoe also all moved to join in many of Nordean's motions. *See infra*. And Nordean suggested recently that he has waited to see if other defendants would file a motion before doing so himself. *See* May 19, 2022 Tr. at 59 (noting that he was waiting for Rehl to file a motion on a certain issue). Put simply, many motions were attributable to only one defendant (the movant) as a technical matter, but not as a practical one. In addition, it is hard to see how excluding any one of the below periods of delay would prejudice Nordean given that much of the same the periods are already excluded both on account of his own motions and appeals and based on the Court's ends-of-justice findings. *See infra*. In sum, the Court concludes, the periods of delay linked to Nordean's code-fendants are reasonably attributable to Nordean as well.[16]

Thus, whether or not Nordean's Speedy Trial Act clock restarted with Tarrio's joinder, the following periods of delay are excluded from Nordean's 90-day clock:[17]

- From April 21, 2021, when Biggs noticed his appeal of the Court's detention decision, ECF No. 67, until August 18, 2021, when the mandate issued, ECF No. 145.

- From April 29, 2021, when the Government moved for an order that Donohoe be transported to North Carolina, ECF No. 78, until April 30, 2021, when the Court granted the motion, ECF No. 80.

---

[16] Nordean points repeatedly in his opening brief to *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986), which found that the "'reasonable delay' exclusion of [Section] 3161(h)[(6)] has a different meaning and application under [Section] 3164 than under [Section] 3161, because of the different context in which it arises"—that is, in the context of a defendant's continued detention. Perhaps. But even if the Court agreed with the Tenth Circuit, in finding the above periods of delay reasonable, the Court does so even while considering Nordean's detained status. So *Theron* is not inconsistent with this Court's conclusion here.

[17] The Court does not include here any periods of delay caused by Government motions that also concerned Nordean; rather, it included those periods in the list of Nordean-related motions. *See supra*.

- From May 3, 2021, when Donohoe moved for the Court to revoke his detention order, ECF No. 81, until June 23, 2021, when the Court heard argument and then denied the motion, ECF No. 101; *see also* June 23, 2021 Minute Entry.

- From May 4, 2021, when the Government moved for a protective order as to Biggs, Rehl, and Donohoe, and the Court granted that motion.  ECF Nos. 82 & 83.

- From July 1, 2021, when Biggs moved to join Nordean's motion to dismiss, ECF No. 105, until July 15, 2021, when the Court granted the motion, July 15, 2021 Minute Order.

- From July 6, 2021, when Donohoe noticed his appeal of the Court's detention decision, ECF No. 108, until November 22, 2021, when the mandate issued, ECF No. 247.

- From July 6, 2021, when the Government moved to seal certain exhibits as to Donohoe, ECF No. 110, until July 8, 2021, when the Court granted the motion, July 8, 2021 Minute Order.

- From July 21, 2021, when Donohoe moved to substitute counsel, ECF No. 123, until July 26, 2021, when the Court granted the motion, July 26, 2021 Minute Order.

- From July 26, 2021, when Rehl moved to continue his status conference, ECF No. 125, until July 27, 2021, when the Court granted the motion, July 27, 2021 Minute Order.

- From July 28, 2021, when Donohoe moved to adopted Nordean's motion to dismiss, ECF No. 128, until July 29, 2021, when the Court granted the motion, July 29, 2021 Minute Order.

- From August 8, 2021, when Biggs moved to reopen the Court's detention decision, ECF No. 137, until December 14, 2021, when the Court denied the motion, Dec. 14, 2021 Minute Entry.  With the Court's permission at the hearing in September, Biggs replied after the hearing.  ECF No. 169.  He then filed two additional supplements—the first 11 days after the reply, ECF No. 187, and the second seven days after that, ECF No. 196.  Then, 30 days after the second supplement, the Court ordered additional briefing on the defendants' pending motion to dismiss, which the Court said it would also consider when deciding the bond motions.  *See* ECF No. 219 at 4.  The additional briefing was complete by December 6, 2021.  ECF No. 238.

- From August 23, 2021, when the Government moved to transport Rehl, ECF No. 149, until October 21, 2021, which was 30 days after the Court heard had a hearing on the motion, Sept. 21, 2021 Minute Entry.

- From August 26, 2021, when Rehl's attorney moved to withdraw, ECF No. 153, until September 6, 2021, when the Court granted the motion, Sept. 6, 2021 Minute Order.

- From September 16, 2021, when Rehl moved to redact part of a filing, ECF No. 167, and the Court granted the motion, Sept. 16, 2021 Minute Order.

- From September 25, 2021, when Rehl moved for a bill of particulars, ECF No. 184, until November 24, 2021, which was 30 days after Rehl replied, ECF No. 212.

- From September 26, 2021, when Rehl moved for a subpoena, ECF No. 186, until October 15, 2021, when the Government confirmed Rehl's own suspicions, *see* ECF No. 188, that the motion was moot, ECF No. 208.

- From September 30, 2021, when Rehl moved to reopen his detention decision, ECF Nos. 190, 191, & 192, until December 14, 2021, when the Court denied the motion, Dec. 14, 2021 Minute Entry. One day after the Court held a hearing on Rehl's motion, the Court ordered additional briefing on the defendants' pending motion to dismiss, which the Court indicated it would consider when deciding the bond motions. *See* ECF No. 219 at 4. The additional briefing was complete by December 6, 2021. ECF No. 238.

- From October 1, 2021, when Rehl moved for a waiver of certain formatting rules, ECF No. 194, until October 4, 2021, when the Court denied the motion, Oct. 4, 2021 Minute Order.

- From October 10, 2021, when Rehl moved to compel the production of certain documents, ECF No. 204, until November 24, 2021, which was 30 days after Rehl replied, ECF No. 212.

- From November 12, 2021, when Rehl moved for leave to file a letter from his wife, ECF Nos. 223 & 228, until November 15, 2021, when the Court denied the motion, Nov. 15, 2021 Minute Order.

- From November 18, 2021, when Rehl moved to join Nordean's motion to dismiss, ECF No. 225, until November 19, 2021, when the Court granted the motion, Nov. 19, 2021 Minute Order.

- From November 23, 2021, when Rehl moved for discovery of grand jury transcripts and for a hearing, ECF Nos. 230, 231, & 232, until December 21, 2021, when the Government informed the Court that Rehl's new attorney planned to withdraw the motions, ECF No. 256.

- From November 25, 2021, when Rehl moved to compel *Brady* disclosures, ECF No. 234, until December 21, 2021, when the Government informed the Court that Rehl's new attorney planned to withdraw the motion, ECF No. 256.

- From December 5, 2021, when Rehl filed a motion about his attorney, ECF No. 237, until December 14, 2021, when the issue was mooted because Rehl's attorney withdrew and a new attorney was appointed, Dec. 14, 2021 Minute Entry.

- From December 27, 2021, when Biggs noticed his appeal of the Court's decision not to reopen his bond hearing, ECF No. 261, until April 26, 2022, when the mandate issued, *United States v. Biggs*, No. 21-3097 (D.C. Cir. Apr. 26, 2022).[18]

---

[18] The mandate does not yet appear on this Court's docket.

- From December 28, 2021, when Rehl noticed his appeal of the Court's decision not to reopen his bond hearing, ECF No. 264, until today as the mandate still has not issued, *United States v. Rehl*, No. 21-3098 (D.C. Cir.).

- From December 30, 2021, when Biggs renewed his motion for release under 18 U.S.C. § 3142(i), ECF No. 270, until January 21, 2022, when the Court denied the motion, ECF No. 281.

- From February 8, 2022, when Rehl moved to join Nordean's sealed motion, ECF No. 286, until February 9, 2022, when the Court granted the motion in part, Feb. 9, 2022 Minute Order.

- From March 2, 2022, when Biggs moved to join Nordean's sealed motion, ECF No. 297, until March 4, 2022, when this Court granted the motion, Mar. 4, 2022 Minute Order.

- From March 25, 2022, when this Court appointed conflicts counsel for Biggs and Tarrio, Mar. 25, 2022 Minute Order, until today as the conflicts counsel's report and recommendation is not due until June 30, 2021, Apr. 13, 2022 Minute Order.  While the appointment of counsel is not one of Section 3161(h)(1)'s enumerated categories of excludable delay, that list "is illustrative rather than exhaustive."  *Bloate*, 559 U.S. at 208.

- From April 18, 2022, when Tarrio moved to revoke the detention decision, ECF No. 341, until May 27, 2022, when the Court denied the motion, ECF No. 369.

- From April 21, 2022, when Rehl moved to compel the Government to provide notice, ECF No. 344, until June 9, 2022, when the Court denied the motion, June 9, 2022 Minute Order.

- From May 2, 2022, when Tarrio moved to change venue, ECF No. 349, until today because several Defendants have moved to join Tarrio's motion and filed supplements to which the Government must respond, ECF Nos. 384, 386, & 399.

- From May 19, 2022, when Biggs moved for an order that he be provided a laptop, ECF No. 363, until June 2, 2022, when Biggs agreed with the Court that the motion should be denied as moot, June 2, 2022 Tr. at 35–36.

- From June 2, 2022, when Tarrio moved to join Nordean's *Brady* motion, ECF No. 375, until June 3, 2022, when the Court granted the motion, June 3, 2022 Minute Order.

- From June 6, 2022, when Rehl moved for leave to respond to the Government's press release, ECF No. 377, until June 16, 2022, when the Court denied the motion, June 16, 2022 Minute Order.

- From June 8, 2022, when Tarrio moved to adopt in part and join Rehl's motion for leave to respond, ECF No. 383, until June 10, 2022, when the Court granted the motion, June 10, 2022 Minute Order.

- From June 9, 2022, when Rehl moved to join Tarrio's change of venue motion, ECF No. 384, until June 10, 2022, when the Court granted the motion, June 10, 2022 Minute Order.

- From June 9, 2022, when the Government moved for leave to file a sur-reply, ECF No. 385, until June 10, 2022, when the Court granted the motion, June 10, 2022 Minute Order.

- From June 9, 2022, when Biggs moved to join Tarrio's change of venue motion, ECF No. 386, until June 10, 2022, when the Court granted the motion, June 10, 2022 Minute Order.

- From June 11, 2022, when Rehl moved for an order that the Government designate and produce any images, video and audio recordings, out-of-court statements, transcripts and summary charts it will use in trial before the deadline for filing pretrial motions, ECF No. 391, until today, as the Court did not have a hearing on this motion until June 16, 2022, *see* June 14, 2022 Minute Order.

- From June 15, 2022, when Rehl moved to reopen his detention, ECF No. 401, until today, as the Government still needs to respond to the motion.

- From June 16, 2022, when Biggs and Pezzola moved to continue the trial, ECF No. 403, until today, as the Court still needs to hear from the other Defendants, *see* June 17, 2022 Minute Order.

### 4.    Ends-of-Justice Continuances

Finally, the Speedy Trial Act further excludes delay "if the judge granted [a] continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" and set forth his findings "in the record of the case, either orally or in writing."   18 U.S.C. § 3161(h)(7)(A).   "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion."  *Rice*, 746 F.3d at 1078.  But "the findings requirement imposes 'procedural strictness.'" *United States v. Bikundi*, 926 F.3d 761, 776 (D.C. Cir. 2019) (quoting *Zedner*, 547 U.S. at 509). Those findings must show that the court "seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials."  *Id.* at 776–77 (cleaned up).  And this Court has made a series of such findings, most often because of the unprecedented volume of discovery related to this case.

Nordean, in turn, makes two arguments about those findings: (1) that the Court cannot exclude the 22 days for which it made retroactive ends-of-justice findings because the Speedy Trial

Act does not allow courts to make ends-of-justice findings *nunc pro tunc*, ECF No. 331 at 4, and (2) that the Court's findings at times were insufficient, *id.* at 5–6; ECF No. 343 at 18–20.  Even if he is right on the first point, he is wrong on the second.

Nordean specifically argues that the period from June 3, 2021, until July 15, 2021, was not excludable because he "objected," "the court never stated that it considered the required [Section] 3161(h)(7)(B) factors," and "complexity plus multiple defendants are not enough for an ends-of-justice continuance over a defense objection."  ECF No. 331 at 5–6 (internal quotation marks omitted).  He also argues that the Court should not have granted two other ends-of-justice continuances from March 23, 2022, until April 5, 2022, and then from April 5, 2022 until April 21, 2022, over his objection, based on the complexity of the trial and the number of defendants.  ECF No. 343 at 19–20.[19]

But starting with the period from June 3, 2021, to July 15, 2021, the record shows that the Court "seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials."  *Bikundi*, 926 F.3d at 777 (cleaned up).  On June 3, the Court found that "the ends of justice that [we]re served" by granting this continuance "outweigh[ed] the best interests of the public and the defendant[s] . . . in a speedy trial," given the consent of the other defendants, "the size of the investigation generally here with regard to the events of January 6th," and the "nature" of discovery for this specific conspiracy case.  ECF No. 116 at 28–29.  And the Court made clear that it would not keep granting continuances on these grounds "forever"; it would "make sure that progress" was made at the next hearing.  *Id.* at 29.

_____

[19] Nordean notes the Court's other ends-of-justice findings without objecting to them.  *See* ECF No. 331 at 5–8; *see also* ECF No. 343 at 18–20 (objecting to the Court's *nunc pro tunc* findings and the March 23, 2022, ends-of-justice findings).

Such findings mirror those the Circuit has found sufficient.  *See, e.g.*, *Bikundi*, 926 F.3d at 777 (concluding that the district court's ends-of-justice findings were adequate where it found that the "interests of justice outweighed 'the interests of the parties and the public in a speedier trial' because the purpose of the continuance was to 'permit defense counsel and the government time to both produce discovery and review discovery'").  True, Nordean opposed this exclusion, but the Court took that into account when weighing the interests at stake.  ECF No. 116 at 26–29.  Besides, a defendant's objection, standing alone, is not enough to render an ends-of-justice continuance invalid.  *Cf. United States v. Herbst*, 666 F.3d 504, 510 (8th Cir. 2012) (rejecting argument that, when the defendant opposed his attorney's continuance request, the ends-of-justice continuance was invalid, because "the plain language of section 3161(h)(7)(A) does not require a defendant's consent to the continuance if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" (cleaned up)).

Nordean's arguments about the two continuances from March 23, 2022, through April 21, 2022, are also meritless.  On March 23, the Court found that a continuance was warranted "in the interests of justice" given the time needed for the parties "to brief the[] issues" discussed at that hearing—that is, the Government's recently filed motion to vacate the May trial date.  ECF No. 322 at 38.  The Court also noted that time was properly excluded until April 5, 2022, because of the reasons detailed just the day before at the status conference with the other defendants.  *Id.* at 37–38.  At that time, the Court found that "the ends of justice that [we]re served by" the continuance "outweigh[ed]" the "best interests of the public and the defendant in a speedy trial," because the continuance gave the recently added Tarrio and his counsel "an opportunity to get up to speed on the case and to assess the discovery and how they wish to proceed in the case."  Mar. 22, 2022

Tr. at 36.  And that continuance was applicable to Nordean under Section 3161(h)(6) because it was "a reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted."  ECF No. 322 at 37–38.  Then on April 5, the Court found, again with Tarrio's consent, that a continuance was warranted under the "ends of justice" provision for the same "discovery issues" it had referred to repeatedly in past findings.  Apr. 5, 2022 Tr. at 49; *see Bikundi*, 926 F.3d at 778 (finding sufficient district court's statement "that its prior reason for granting an ends-of-justice continuance continued to apply because discovery was ongoing" because the Speedy Trial Act does not require a "court to repeat all of the details of its findings on the record each time it grants an ends-of-justice continuance").  These findings all show that this Court "seriously weighed the need for delay against the interests in a speedy trial," which is the "fundamental concern."  *Rice*, 746 F.3d at 1079 (cleaned up).[20]

Thus, even without the 22 days for which the Court made retroactive findings—days excludable for other reasons, *see supra*—the Court's ends-of-justice findings under Section 3161(h)(7)(A) resulted in the following excludable periods:

- From April 19, 2021, until May 4, 2021.  *See* ECF No. 71 at 80.

---

[20] Nordean also suggests in his opening brief that, under the logic of *Theron*, this Court's "ends-of-justice" continuances under Section 3161 should not toll Section 3164's 90-day clock because Section 3164 concerns pretrial detention, so a different weighing of the interests is warranted.  But Section 3164 does not require a separate or different analysis.  As the Ninth Circuit concluded in *United States v. Torres*, 995 F.3d 695, 707 (9th Cir. 2021), the analysis under Section 3161 is no different because Section 3164(h)(7) "requires a district court to consider a defendant's detained status in weighing the ends of justice."  *Id.*  And that is precisely what the Court did in this case. The Court "was well aware of [Nordean's] detention status, having previously denied [his] request for release.  There is no indication that the [Court] failed to consider [Nordean's] interest in being free from prolonged pretrial detention when it considered whether the ends of justice justified a continuance."  *Id.* at 707 n.10.  Thus, "neither the result nor the reasoning of *Theron* is inconsistent with the result [the Court] reach[es] today."  *Id.* at 707.

- From May 4, 2021, until June 3, 2021.  *See* ECF No. 333 at 22–23.

- From June 3, 2021, until July 15, 2021.  *See* ECF No. 116 at 28–29.

- From July 15, 2021, until September 21, 2021.  *See* ECF No. 154 at 79.

- From September 21, 2021, until October 26, 2021.  *See* ECF No. 274 at 81–82.

- From November 3, 2021, until December 7, 2021.  *See* Nov. 3, 2021 Minute Order.

- From December 14, 2021, until January 11, 2022.  *See* ECF No. 252 at 42–43.[21]

- From February 8, 2022, until March 8, 2022.  *See* ECF No. 311 at 26.[22]

- From March 23, 2022, until April 5, 2022.  *See* ECF No. 322 at 38.

- From April 5, 2022, until April 21, 2022.  *See* Apr. 5, 2022 Tr. at 49.

- From April 21, 2022, until May 19, 2022.  *See* ECF No. 347 at 24.

- From May 19, 2022, until June 2, 2022.  *See* May 19, 2022 Tr. at 64.

- From June 2, 2022, until June 9, 2022.  *See* June 2, 2022 Tr. at 46.

- From June 9, 2022, until June 16, 2022.  *See* June 9, 2022 Tr. at 81.

\*         \*         \*

Because of the often-overlapping grounds that warrant exclusion of the time under the

Speedy Trial Act, no nonexcludable day has passed since Nordean's continuous detention began

---

[21] This time, one of the Court's reasons for finding this period excludable was specific to Rehl; the Court found that giving his new attorney "the opportunity to receive discovery, review it, talk to her client, [and] generally get up to speed on the case" outweighed the interests in the public and the defendants in a speedy trial.  ECF No. 252 at 43.  Excluding time on those grounds applies to Nordean too because it is "a reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6).

[22] At this time, the Court again highlighted the need to give Rehl's attorney "who [wa]s relatively new to the case," time to "receive and review all the discovery in this matter."  ECF No. 311 at 26. And, again, that exclusion applies to Nordean under Section 3161(h)(6).

in April 2021.  Indeed, by the Court's calculation just about every day since Nordean was detained is excluded on three to five separate and independent grounds.  Thus, his 90-day speedy-trial clock has not lapsed.

## III.    Conclusion and Order

For all these reasons, it is hereby **ORDERED** that Nordean's Motion for Release Pursuant to 18 U.S.C. § 3164, ECF No. 331, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 20, 2022