UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :    CASE NO. 21-cr-175-2, 3, 5 (TJK) |
| v. | : |
| JOSEPH BIGGS, | : |
| ZACHARY REHL, | : |
| and | : |
| ENRIQUE TARRIO, | : |
| Defendants. | : |

**GOVERNMENT'S RESPONSE TO DEFENDANTS REHL AND BIGGS'
SUPPLEMENTS TO TARRIO'S MOTION TO TRANSFER VENUE**

Defendant Tarrio has moved to transfer venue in this case to the Southern District of Florida. ECF No. 349. The government filed an opposition on June 2, 2022, and Tarrio filed a reply on June 9, 2022. ECF Nos. 376, 389. Defendants Biggs and Rehl moved to join Tarrio's motion on June 9, 2022, with Rehl including a substantive supplement. ECF Nos. 384, 386. Biggs moved for leave to file an additional supplement on June 14, attaching a proposed supplement, which was later docketed by the clerk's office. ECF Nos. 399, 406. Biggs, Rehl, and Tarrio have all failed to establish that they "cannot obtain a fair and impartial trial" in this district, Fed. R. Crim. P. 21(a), and this Court should accordingly deny their motions.[1]

---

[1] This response only addresses those arguments raised by Biggs and Rehl in their supplemental filings. The government incorporates herein the arguments raised and legal authority cited in its opposition to Tarrio's original venue motion. *See* ECF No. 376.

## ARGUMENT

Neither Biggs nor Rehl has cited any pretrial publicity to which there has been greater exposure in the District of Columbia than in the Southern District of Florida or any other district, nor have they identified any pretrial publicity that cannot be addressed through voir dire. Their supplemental filings thus do not overcome—alone or in combination with Tarrio's filings—the constitutional and statutory preference that trial for this crime shall take place in the state and district in which it was committed. *See* U.S. Const. Art. III, § 2, cl.3 & Amend. VI; Fed. R. Crim. P. 18.

I.   The Publicity Cited by Biggs and Rehl is National in Scope

In attempting to establish presumptive prejudice, Rehl cites articles published after the government returned the Third Superseding Indictment in this case. The publications he cites are all national in scope, including BLOOMBERG NEWS, THE NEW YORK TIMES, THE WASHINGTON POST, and The Associated Press, along with a television show on MSNBC. *See* ECF No. 384 at 2-3. None of those publications is local in scope.[2] Indeed, although the Third Superseding Indictment received media attention, that attention was truly national—and sometimes international—in scope. To provide just a few examples of many, articles about the Third

---

[2]   Although THE WASHINGTON POST is of course based in the District of Columbia, it has national distribution, especially its online edition. THE WASHINGTON POST article cited by the Rehl is additionally of the type of non-sensational publication—in this case, largely recitation of allegations in the indictment—that courts have generally found insufficient to require a venue transfer. *See United States v. Haldeman*, 559 F.2d 31, 61 (D.C. Cir. 1976). Rehl moreover failed to cite articles carried in publications in the Southern District of Florida, which is the proposed district to which venue would be transferred in Tarrio's motion. *See Proud Boys accused of 'seditious conspiracy' in US Capitol riot. What is it?*, available at https://www.miamiherald.com/news/nation-world/national/article262214822.html, THE MIAMI HERALD June 6, 2022 (last visited June 15, 2022); *How the Proud Boys Gripped the Miami-Dade Republican Party*, available at https://www.sun-sentinel.com/news/nationworld/ct-aud-nw-nyt-proud-boys-miami-dade-gop-20220602-ewzvw5vbdzetjbddrpdioasqiu-story.html SOUTH FLORIDA SUN-SENTINEL June 2, 2022 (last visited June 18, 2022).

Superseding Indictment were published in publications based in the following locations:

- France (https://www.france24.com/en/americas/20220607-proud-boys-charged-with-seditious-conspiracy-for-us-capitol-attack);
- India (https://indianexpress.com/article/world/proud-boys-charged-with-seditious-conspiracy-in-capitol-riot-7956801/);
- Sacramento, CA (https://www.kcra.com/article/former-proud-boys-leader-seditious-conspiracy-capitol-riot/40209382#);
- Lancaster, PA (https://www.wgal.com/article/former-proud-boys-leader-seditious-conspiracy-capitol-riot/40209382);
- Salt Lake City, UT (https://kslnewsradio.com/1969878/proud-boys-charged-with-seditious-conspiracy-in-capitol-riot/);
- Albuquerque, NM (https://www.koat.com/article/former-proud-boys-leader-seditious-conspiracy-capitol-riot/40209382);
- Cleveland, OH (https://www.news-herald.com/2022/06/07/proud-boys-charged-with-seditious-conspiracy-in-capitol-riot/); and
- Orlando, FL (https://www.clickorlando.com/news/local/2022/06/09/florida-proud-boys-leader-pleads-not-guilty-to-seditious-conspiracy-in-capitol-riot/).

Biggs' supplement fares no better in demonstrating prejudice specific to the District of Columbia. It focuses on the June 9, 2022, nationally televised hearing of House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("HSC"), noting that the hearing was seen by "20 million Americans." *See* ECF 406 at 3. The closest Biggs comes to alleging that potential jurors in the District of Columbia were more affected than those of other districts is his statement that 20 million national viewers included an unspecified number of "lovably dorky, wonky, media-attentive Washingtonians." ECF No. 406 at 3. Biggs cites nothing to establish that D.C. residents were more or less likely than those in any other district to have watched the Congressional hearings. But even if they were, for the reasons set forth below, neither Biggs nor Rehl has come close to demonstrating that voir dire would be inadequate to identify and guard against any potential juror bias.

Biggs suggests that national scope of the publicity does not matter, arguing that Federal Rule of Criminal Procedure 21(a) "does not require that a better or 'fairer' venue exists." ECF

3

No. 406 at 2. But he fails to explain how transfer would be helpful—much less required—if obtaining an impartial jury would be just as difficult in the transferee district. And the D.C. Circuit has indicated that pointless transfers are not required. *See Haldeman*, 559 F.2d at 64, n.43 (observing that "a change of venue would have been of only doubtful value" in a case that received national coverage).

## II.   Voir Dire Can Adequately Safeguard The Defendants' Rights to a Fair Trial

Neither defendant Rehl nor Biggs cites any authority for the proposition that nationally televised Congressional hearings require a change in venue. Biggs and Rehl both cite *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952), and Rehl cites *United States v. Ehrlichman*, 546 F.2d 910, 916, n.8 (D.C. Cir. 1976), for the proposition that Congressional hearings held close in time to a criminal trial regarding the same subject matter may require a continuance. Curiously, neither defendant seeks a continuance in this motion, and Rehl stated on the record as recently as June 16, 2022, that he opposes the remedy at issue in the two cases he cites.[3] Neither defendant has presented the Court with any reason to believe that D.C. residents watched these hearings at a greater rate than the nation as a whole and, moreover, even if D.C. residents did watch the hearings at a disproportional rate, neither defendant has proffered any reason to believe that 12 impartial jurors cannot be seated out of the hundreds of thousands of residents who did not watch the hearings.

---

[3] Biggs requested a continuance after he filed this supplement, ECF No. 403, and the government does not oppose. ECF No. 404. On June 20, 2022, Rehl filed a response to Biggs' motion to continue, in which he requested additional time to determine whether to join Biggs' motion, stating that his only hesitation would be the amount of time he would remain incarcerated. ECF No. 411 at 1. That filing also lists a number of other articles that Rehl considers to be prejudicial pretrial publicity. *Id.* at 2-6. The HSC hearing he cites, as well as the other publications, are all national in scope, including four nationally televised shows and a video published in the New York Times. Nothing in Rehl's filing suggests prejudice localized on the District of Columbia.

The 20 million Americans who tuned in to the June 9 prime time hearings represent only six percent of the U.S. population. If D.C. residents tuned in at roughly the national average, it would mean that approximately 42,000 residents out of just under 700,000 watched the hearings, leaving approximately 658,000 who did not watch. If the Court approximates the jury pool by using the number of registered voters (489,000), then by this estimate, 447,000 potential D.C. jurors did not watch the hearings. Even if the Court assumes *arguendo* that D.C. residents tuned in at a rate *four times* the national average—and undersigned counsel knows of no reason to make that assumption—it would still leave 532,000 residents (or 321,000 registered voters) who did not tune in. There is no reason to believe that the Court cannot seat 12 impartial jurors out of hundreds of thousands available.

*Ehrlichman* in particular forecloses the defendants' requested relief. In the same footnote cited by Rehl, the D.C. Circuit agreed with the government's position here that "the proper occasion" for determining whether it is possible to select a fair and impartial jury "is upon the voir dire examination." *Ehrlichman*, 546 F.2d at 916 n.8 (quoting *Jones v. Gasch*, 404 F.2d 1231, 1238-39 (D.C. Cir. 1967)). The Circuit moreover made clear that the proper way to address whether voir dire is unsatisfactory in a particular case is to "look to the results of the voir dire for indication of any 'pattern of deep and bitter prejudice' that would bring into question the veracity and reliability of the jurors' representations of impartiality." *Id.* (citing *Jones*, 404 F.2d at 1238-39). The government has already shown that this type of prejudice has been lacking from the jury panels called to date in January 6th cases. *See* ECF No. 376 at 26-30.

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), further forecloses Biggs' and Rehl's positions. The majority in that case explicitly rejected a comparison between alleged prejudice based on high-profile Congressional proceedings and the presumptive prejudice present

5

in *Rideau v. Louisiana,* 373 U.S. 723 (1963).  *Haldeman*, 559 F.2d at 62, n.35.  The majority declined to presume prejudice even though eight of the twelve jurors in *Haldeman* had viewed some or part of the Congressional hearings at issue.  *See id.* at 152 (MacKinnon, J., concurring in part and dissenting in part).  As the majority observed, "the network news programs and legislative hearings" were "national in their reach," and "[s]candal at the highest levels of the federal government is simply not a local crime of peculiar interest to the residents of the District of Columbia."  *Haldeman*, 559 F.2d at 64, n.43.  Thus, "a change of venue would have been of only doubtful value."  *Id.*  The same is true here, where the congressional hearings have been nationally televised, and the events of January 6 are of national interest.

The issues raised in Biggs' supplement regarding the HSC hearings are adequately—and better—dealt with through focused voir dire examination, such as asking specifically whether any of the veniremen watched the hearing at issue, and/or granting the continuance Biggs has requested, rather than through the extreme step of transferring the case to the Southern District of Florida.[4]  Indeed, given the national importance of the hearings, it is not at all clear that whatever prejudice may have formed in potential jurors' minds as to defendant Biggs is of any greater magnitude in the District of Columbia than it is in the Southern District of Florida or anywhere else, and a continuance and/or focused voir dire may be necessary no matter the venue.

---

[4] There have been additional hearings since Biggs filed his supplement, at least one of which included a reference to co-defendant Pezzola and a statement regarding killing Vice President Pence.  The public hearings are currently scheduled to continue through June, with the release of transcripts reportedly scheduled for September.  As noted in the government's response to Biggs' motion to continue, ECF No. 404, the government does not oppose a continuance based on the unavailability of the transcripts.  However, for the reasons stated herein, a transfer of venue is inappropriate.

## CONCLUSION

Biggs, Rehl, and Tarrio have failed to establish that a change in venue is appropriate. The national scope of the coverage of the Third Superseding Indictment and the HSC hearings means that any juror bias is not limited to the District of Columbia, and the use of focused voir dire and a potential continuance of the August trial date would suffice to identify and root out any potential bias. The defendants' request to transfer venue should thus be denied.[5]

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Erik M. Kenerson
ERIK M. KENERSON // Ohio Bar No. 82960
JASON B.A. MCCULLOUGH
  D.C. Bar No. 998006
NADIA E. MOORE // N.Y. Bar No. 4826566
  On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530
(202) 252-7201
Erik.Kenerson@usdoj.gov

 /s/ Conor Mulroe
Conor Mulroe // N.Y. Bar No. 5289640
Trial Attorney // U.S. Department of Justice,
  Criminal Division
1301 New York Avenue, Suite 700
(202) 330-1788
conor.mulroe@usdoj.gov

---

[5] Rehl asked permission to "supplement the change of venue motion [with] four separate surveys of the potential juror pool in the District of Columbia conducted by defendants in other January 6 cases that shed light on the need for a change of venue." ECF No. 384 at 7. He neither attached any surveys to his supplement, nor did he file any additional supplements. The Court should thus not consider any juror surveys other than the two originally cited by Tarrio, and for the reasons stated in the government's opposition to Tarrio's motion, ECF No. 376 at 13-26, the Court should not accord either survey much weight in its analysis.