UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

CASE NO: 21-CR-175-TJK

v.

ENRIQUE TARRIO,

      **Defendant.**

_____/

### *ENRIQUE TARRIO'S MOTION FOR THE GOVERNMENT TO PRODUCE DISCOVERY: BRADY MOTION*

**COMES NOW** the Defendant, Enrique Tarrio, by and through his attorneys, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the Fifth and Sixth Amendment to the United States Constitution, and respectfully moves this Honorable Court to Order that the Government provide any and all *Brady Material*, including but not limited to the records previously requested as detailed below. In support thereof, Defense states as follows:

### PROCEDURAL HISTORY

On March 7, 2022, a grand jury in the District of Columbia issued a six count *Second Superseding Indictment*, charging Defendant Enrique Tarrio with Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C §1512(k); Obstruction of an Official Proceeding, in violation of 18 USC §1512(c)(2); Obstruction of Law Enforcement During a Civil Disorder, in violation of 18 USC §231(a)(3); Destruction of Government Property, in violation of 18 USC §1361; and Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 USC §111(a)(1). Thereafter, the Government filed a Third Superseding Indictment charging Tarrio with a new allegation of Seditious Conspiracy.

All allegations levied against Tarrio, Chairman and public face of the Proud Boys, hinge on a few transcripts of conversations with other Proud Boys members via electronic means which seemingly form the backbone of the government's case against him. Tarrio was not present during the events of January 6, 2021 Capitol Incident (hereinafter referred to as "Jan6").

Prior to any rally or protest that the Proud Boys would attend, they would always communicate with the appropriate law enforcement agencies as per standard operating procedure. The communications included (1) notification that the organization would be attending a rally/protest, (2) request/organize sufficient law enforcement presence for security so that the Proud Boys would not be in danger of any attacks by extreme left wing groups, and (3) coordinate the staging area and route to avoid extreme left wing group areas and any potential conflicts. The communications with law enforcement agencies are well documented as the information is relayed to officers and other law enforcement groups[1] prior and during any rally/protest share their live location.

The Government has provided *Brady* evidence that demonstrates co-conspirator Biggs maintained ongoing communication with Portland Police prior to one of the rallies and informed them of all of the Proud Boys' intended locations and their intended route. The Proud Boys' actions during that Portland rally stayed true to their stated intentions communicated to Portland law enforcement and the Proud Boys complied with law enforcement directives.

Prior to January 6, 2021, the Proud Boys visited Washington DC on multiple occasions, to wit: July 2019, November 2019, February 2020, April 2020, July 2020, November 2020, December 2020, and finally on January 6, 2021. Prior to each of these visits, the Proud Boys communicated with Metropolitan DC police. As per the standard operating procedure, the Proud

---

[1] In addition to local law enforcement agencies, other organizations that share this intelligence prior and during rallies/protests include but are not limited to the FBI, Homeland Security, and the Secret Service.

Boys informed Metro DC police of all of their intended locations and their intended route with their live location

The Defense has requested all evidence of communications between the Proud Boys and law enforcement that occurred prior to the rallies/protests that the Proud Boys attended. This request has been made on multiple occasions, both orally and through written requests. To date, the Government has not tendered these communications. Instead, the Government has attempted to shift the burden of discovering exculpatory information to the defense.

For example, on June 7, 2022, my colleague, Sabino Jauregui sent an email to the Government which states, in pertinent part:

> "I am requesting all communications Mr. Tarrio and/or any Proud Boy had with the Metropolitan Police Department of the District of Columbia and/or the Secret Service. Including, but not limited to phone calls, emails, text messages, etc. Further, any reports generated by the Metropolitan police department and/or Secret Service based on those contacts, and any reports monitoring the Proud Boys movements during any events, rallies, or protests. Lastly, any contacts between Tarrio and Lt. Shane Lemond, intelligence (DC MPD).

The Government responded by suggesting the Defense search the *Cellbrite* application, which contains all the communications within Tarrio's phone and others; as well as requesting the Defense's assistance in gathering information responsive to the Defense's request including specific names and a date range. The Government's response is inadequate and fails to meet their obligation. Undersigned spoke with the Government on Thursday, July 21, 2022 right before 5:00pm, and was told that by the following week, we would have some of the information requested. To date, nothing has been provided.

## **MEMORANDUM OF LAW**

The Fourteenth Amendment to the United States Constitution holds that the accused is entitled to due process. Specific to this motion, the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland, 373 U.S. 83, 87*

(1963). Implicit in the requirement of the materiality of evidence to be disclosed is a concern that the suppressed evidence might affect the outcome of the trial. *US v. Bagley, 473 U.S. 667, 674* (1985). *Bagley* states, in pertinent part, that "the prosecutor will not have violated his constitutional duty to disclose unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial" *Bagley at 676*. This discovery requested by undersigned is of such nature that falls directly under the progeny of *Brady* and *Bagley*. Impeachment evidence[…] as well as exculpatory evidence, fall within the *Brady* rule. *Bagley at 676.*

Contrary to the Government's communications, it is not the Defense that should assist the Government, but rather the Government that is duty bound to assist the Defense in obtaining evidence that would affect the outcome or sentence of the accused. It has been held that the "burden-shifting" prosecution argument of due diligence has been rebuked by the United States Supreme Court. "This due diligence defense places the burden of discovering exculpatory information on the defendant and releases the prosecutor from the duty of disclosure. It relieves the government of its *Brady* obligations." "...Our decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed." *Banks v. Dretke*, 540 U.S. 668, 695 (2004).

It is true that by requiring the prosecutor to assist the defense in making its case, the *Brady* rule represents a limited departure from a pure adversary model. However, "[t]his is because the prosecutor's role transcends that of an adversary. The prosecutor is the representative not of an ordinary party to a controversy, but of a sovereignty... whose interest... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *United States v. Bagley*, 473 U.S. 667 (1985) – footnote 6; *Berger V. United States*, 295 U.S. 78, 88 (1935). *See also Kyles v. Whitley*, 514 U.S. 419 (1995) (The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.)

In this case, the Defense has made a specific request for all communications prior to and during any Proud Boys rallies/protests, including but not limited to the Washington DC events in July 2020, November 2020, December 2020, and January 6, 2021. The Defense has specified that the communications requested are between Proud Boys and law enforcement. The Government has received a specific and relevant request and their failure to adequately respond is a violation of Rule 16 of the Federal Rules of Criminal Procedure, and the Fifth and Sixth Amendment to the United States Constitution.

## **CONCLUSION**

The Government in this case has provided extensive discovery including over 14 terrabytes of hard drives and two separate online platforms. The Government has been communicative with the Defense regarding finding specific information but when requested to provide the information above, the Government has not provided any evidence or information. This evidence and information goes to the heart of this matter. The information requested is in the hands of the Government, by direct communication with law enforcement or indirect communications between law enforcement officers/agencies to one another based on communications with Tarrio and his colleagues regarding their movement before and during rallies/protests. This evidence and information is undoubtedly *Brady* material to which the Defense is entitled. This matter is set for trial on December 12, 2022 and any delay in providing information requested is justice delayed. Justice delayed is justice denied.

**WHEREFORE**, Tarrio respectfully moves this District Court grant this motion and order the Government to search for, obtain and disclose to the defense the following evidence and information relative to communications between the Proud Boys and law enforcement concerning rallies/protests :

1) Emails discussing the listed communications (prosecutor to police, police to prosecutor, state witnesses to police or prosecutor and police or prosecutor to witness, lay and expert);

2) Text messages and instant messages between Proud Boys, Proud Boys to/from Law Enforcement;

3) Any messages between officers, officer to station, or department to department relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

4) Two-way dispatch messages relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

5) 911 calls relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

6) Audio and/or videotapes relative to communications between the Proud Boys and law enforcement concerning rallies/protests (including those captured via body cameras or cell phone cameras);

7) Any records stored, sent or received via Dropbox or similar cloud computing or FTP (file transfer protocol) websites between law enforcement relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

8) All electronic devices including but not limited to computers, laptops, iPads, cellular phones and smart phones that may contain discoverable material relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

9) All social media accounts that may bear upon the above prosecution including but not limited to Facebook, Google, AOL, Yahoo, Twitter, Instagram, Snap Chat and any online cloud backups which may contain information relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

10) All handwritten notes of law enforcement officers to be reviewed in camera for Brady material;

11) All handwritten or memorialized notes of the prosecutor concerning witness interviews of law enforcement officers, experts and lay witnesses involved in the above prosecution where

questionable Brady material may be located (an in camera review by the judge may determine disclosure). Such notes are intended to include but are not limited to investigations and trial preparation of witnesses relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

12) Any and all electronic devices including cell phones and computers belonging to witnesses listed by the government which may contain Brady material, including but not limited to evidence relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

13) The name and address of any witness known to the prosecution that has given a statement to the prosecution or law enforcement that is contrary to the prosecution's theory of the case including pre and post interviews conducted during polygraph testing as well as any witness or evidence that would support a valid defense;

14) The name and address of any witness known to the prosecution that has given a statement to the prosecution or law enforcement evidence relative to communications between the Proud Boys and law enforcement concerning rallies/protests;

15) All contents of investigative files (to include all agencies that contributed to the prosecution) that include notes, memorandum and reports that contain evidence relative to communications between the Proud Boys and law enforcement concerning rallies/protests.  This also applies to the notes of any witness coordinator;

16) Any other evidence that would be discoverable under *Brady*.

                    Respectfully submitted,
                    */s/ Nayib Hassan*
                    Florida Bar No. 20949
                    Attorney for Defendant
                    Law Office of Nayib Hassan, PA
                    6175 NW 153 St., Suite 221
                    Miami Lakes, Florida 33014
                    Tel. No.: 305.403.7323
                    Fax No.: 305.403.1522

                    ***/s/ Sabino Jauregui, Esq.***
                    Florida Bar Number 503134
                    Jauregui Law, P.A.
                    1014 West 49 Street
                    Hialeah, Florida 33012
                    Phone 305-822-2901
                    FAX 305-822-2902

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically noticed through the CM/ECF system to the US Attorney's Office on this 1st day of August, 2022 to the following:

Jason McCollough
Erik Kenerson
Nadia Moore
Conor Mulroe

*/s/ Nayib Hassan*
Florida Bar No. 20949
Attorney for Defendant
Law Office of Nayib Hassan, PA
6175 NW 153 St., Suite 221
Miami Lakes, Florida 33014
Tel. No.: 305.403.7323
Fax No.: 305.403.1522