UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CASE NO: 1:21-cr-0175-3 (TJK) |
| | * |
| ZACHARY REHL, | * |
| Defendant | * |

********

REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO REOPEN HEARING AND REQUEST FOR A HEARING

Nothing in the government's opposition to reopening the Detention Hearing (ECF 421) refutes the fact that on January 6, Mr. Rehl did not use any violence or cause any injury to anyone, he did not destroy any property, he did not impede or otherwise confront any law enforcement officers and he did not bring any weapons to Washington, DC.  Mr. Rehl also did not direct or help anyone else to do any such things.  Mr. Rehl does not have a history of violence. Indeed, despite participating in multiple political demonstrations throughout his life, Mr. Rehl has never been arrested, charged with or convicted of any criminal conduct in connection with those events. *See* Secret Service Assessment, quoted below.

Indeed, more evidence has recently been uncovered that the picture of the Proud Boys that the government has sought to weave as an organization bent on violence and the use of force against the United States is not accurate:

> On 01/06/21, at an unknown time, Proud Boys (RID) will host an unnamed demonstration in Washington DC. The purpose of this demonstration is to join the proTrump demonstrations. There was no indication of civil disobedience. The group advised they will not wear their traditional black and yellow attire and will dress "incognito." The group self-reported plans to demonstrate in smaller groups throughout DC. Current numbers of planned participants was not indicated, but

> the group stated they will "turnout in record numbers." *Proud Boys is of record for numerous demonstrations at the White House and temporarily protected sites. Their demonstrations have concluded without arrests."*

Article, Citizens for Responsibility and Ethics in Washington (emphasis added).[1]

Mr. Rehl served his country honorably as a member of the United States Marine Corps, receiving a number of medals and letters of commendation. He was honorably discharged after suffering an injury, which has resulted in a determination of 100% disability. After his medical discharge, he used his veterans benefits to attend Temple University, where he received a Bachelors and Masters degrees. He is married and has two daughters; his youngest child will be one-year old next month. He has extensive ties to the community. He is the son and grandson of Philadelphia police officers and has devoted his time and energy in Philadelphia to supporting the police and other worthy causes. After January 6, Mr. Rehl went back home to Philadelphia to live his life, without once taking any action that would support a finding that he presents " a concrete, prospective threat to public safety," under any standard much less by clear and convincing evidence as required by 18 U.S.C. § 3142(f)(2). *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021).

In determining whether to detain Mr. Rehl, the fact that Mr. Rehl has no history of violent conduct and did not commit any violence or use any weapons on January 6 are undisputed and must inform the Court's decision that the government has failed to meet its burden by clear and convincing evidence that Mr. Rehl poses an articulable threat of future violence. *See Munchel* at 1283 ("Detention determinations must be made individually and, in the final analysis, must be based on the

---

[1] At https://tinyurl.com/msyxy54w. On 8/26/22, the government produced discovery consistent with the quote above but has designated it "highly sensitive" so it will be produced to the Court under seal.

evidence which is before the court regarding the particular defendant").

I.      **The Court Should Reopen the Dentention Hearing**

The Court should reopen the hearing pursuant to 18 U.S.C. § 3142(f) because Mr. Rehl has met the statutory requirement for reopening the detention hearing. In his motion (ECF 401), Mr. Rehl presented information that was "not known" to him and that "has a material bearing" on whether he presents a risk of danger. Moreover, the Court should reopen the hearing as an exercise of its sound discretion because justice requires it under the circumstances of this case, in light of the material exculpatory facts presented and the participation of new counsel, who replaced counsel that for different reasons failed to provide adequate representation to Mr. Rehl. *See, e.g., United States v. Thorne*, 548 F. Supp. 3d 70, 92-93 (D. D.C. 2021), as corrected (July 16, 2021). While Mr. Rehl will address each of the material new facts separately, he first addresses the legal standards.

A.      **Mr. Rehl's Motion Contains New Exculpatory Facts**

It is undisputed that most, if not all the exculpatory facts Mr. Rehl presented to the Court in his Motion were not previously presented to the Court. For example, the Court was not presented with copies of the Telegram chats that showed Mr. Rehl was not privy to any "agreement" to attack the Capitol; if a different agreement was reached by Tarrio, Biggs, and Nordean on the evening of January 5, Mr. Rehl was not privy to it. (ECF 401 at 19-23). With respect to the MOSD Zoom meeting, the Court was only presented with a handful of quotes that the government had included in the Indictment (about the top-down structure) which excluded the Proud Boys attempts to prevent a repeat of the December debacle, when four Proud Boys were stabbed on the streets of DC by a counter-demonstrator. *Id.* at 14-17. The Court was also not presented with the Hemphill video, was

3

not presented with the statements of persons who had been debriefed by the government, who provided exculpatory information about Mr. Rehl, or about other facts that only came to light after Donohoe and Finley pleaded guilty months after the earlier detention hearing. *Id.* at 10-12, 17-19. Indeed, as to some of these facts, the government concedes, as it must, that they are new but argues that they are not material. However, where even some facts are new, § 3142(f) provides for reopening the hearing. *See, e.g., United States v. Schneider*, No. 07-10234-01-MLB, 2008 WL 11396795, at *5 (D. Kan. Apr. 21, 2008) (reopening detention hearing where some, but not all, of the allegations were new); *United States v. Calvin*, No. CR-07-0919-PHX-FJM, 2008 WL 853608, at *1 (D. Ariz. Mar. 27, 2008) (misinformation presented warrants reopening detention hearing prompted court to "consider ab initio the issue of detention").

Nonetheless, the government argues that the facts, although newly presented to the Court, were known to Mr. Rehl. However, the government's arguments do not support its contention. For example, it argues that it had produced the MOSD video on June 2, 2021, several weeks in advance of the June 30 hearing. In support, it attached a 4-page list of videos that it produced on June 2 (ECF 421-1 at 4-7). Notably, those videos were only part of the voluminous discovery that the government produced before the detention hearing. For multiple reasons, Mr. Rehl cannot be held to account for voluminous discovery that he never saw or discussed with his counsel.

First, Mr. Rehl's prior counsel did not share any discovery with him. When undersigned counsel entered her appearance, counsel alerted the Court that Mr. Rehl had not yet been shown "a single piece of discovery" by prior counsel. Tr. Hearing, 12/14/21 (ECF 254 at 41). Indeed, Mr.

Rehl replaced former counsel because of the deficiencies in their representation.[2] Second, the number of videos and other materials that the Government produced were so voluminous that it would have been impossible for even the most diligent of attorneys to have reviewed in time to present them to the Court. It would be highly unfair and lacking in due process to hold Mr. Rehl accountable for information that was not reviewed by him nor discussed with his prior counsel.

Second, because the government has not identified exculpatory information within any of the discovery, the MOSD video apparently was not reviewed by prior counsel. Indeed, on March 15, 2022, counsel for Mr. Biggs sent an email to government counsel requesting the MOSD video.[3] Lastly, while the government has alleged that the MOSD video was publicly available on line, that is not accurate. Undersigned counsel is prepared to attest to the Court that in March 2022, after the above-noted exchange of emails, counsel searched the net for the video and was unable to locate it.[4]

---

[2] Indeed, the Court itself noted the problems with representation at the start of the Detention hearing. (ECF 147 at 32-33). Mr. Rehl also wrote a letter to the Court regrading his concerns about the representation, which will be submitted under seal in a separate filing. Mr. Rehl's second counsel also expressed his difficulties accessing discovery. Deficiencies in his representation will also be addressed in a sealed submission.

[3] The email from Mr. Hull stated, in pertinent part:

> Second request for MOSD meeting Brady materials. Aka video recording of a meeting mentioned in new indictment. You have it. We don't. Please produce. Again, it's a lengthy video recording of a Zoom-type meeting of MOSD. Late January 2020.

That same day, AUSA Jones responded with a USAfx link to the previously produced video. That the video had not been uncovered by one of the other defense counsel in the volume of discovery is additional evidence of the difficulties that the defense has encountered in accessing discovery.

[4] In recent weeks, the video is now publicly available on the net.

Every bit of information that is contained in Mr. Rehl's motion to reopen was "new" at the time that it was included in the Motion. Counsel has never received any discovery from prior counsel. Undersigned counsel first received the previously produced discovery directly from the government in February 2022, after counsel provided a hard-drive to the government to expedite the production. For example, it is unclear when the government produced the exculpatory telegram messages that are included in Mr. Rehl's motion. It took counsel several months to review the discovery sufficiently and discuss the case with Mr. Rehl to file the motion. In sum, the request to reopen is not made to have the Court revisit issues which were adequately presented at an earlier time such that it would be fair to Mr. Rehl to reject his request.

Lastly, Mr. Rehl would also ask the Court to consider the Joint Report filed on 12/21/21, shortly after counsel entered her appearance (ECF 256). In pertinent part, the report states

> The parties have conferred, and defendant Rehl, through new counsel, wishes to withdraw the pending motions (ECF 230, 234) without prejudice to re-filing such motions (*or any other motions*) in the future, once counsel for Mr. Rehl is able to review the discovery and pleadings filed in the case. The government does not object.

(emphasis added). It was counsel's understanding that the government would not object to any motions to be filed by counsel after she had an opportunity to review the case. The motion to reopen the detention hearing should be covered by that filing.

### B.  Newly Presented Facts Are Material

The new facts that Mr. Rehl presented in his Motion all significantly affect the detention decision because they refute the arguments the government had presented to the Court, based on snippets of incomplete information. As Mr. Rehl has argued with ample support from telegram texts and other information, there is ample evidence that Mr. Rehl did not enter into an agreement to attack

the Capitol, which is the primary basis relied on by the Court to detain him. For purposes of the Bail Reform Act, facts are material if they are capable of significantly affecting the detention decision." *United States v. Peralta*, 849 F.2d 625, 626-27 (D.C. Cir. 1988) (detention hearing may be reopened at any time before trial if material information exists that was unknown at time of hearing); *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003) (new information would "influence the judgment about whether there are conditions of release which will reasonably assure that the defendant will not flee and will not harm any other person or the community").

### C. The Court Should Reconsider the Detention Order in the Interests of Justice

Even were the Court to determine that the 3142(f) standard has not been met, the Court should in its discretion reconsider its decision to detain Mr. Rehl. "Although not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are allowed in criminal cases." *United States v. Jones*, 916 F. Supp. 2d 83, 86 (D. D.C. 2013). With respect to pretrial detention orders, courts in this district apply the "as justice requires" standard ordinarily applied to motions under F.R.C.P. 54(b). *See, e.g., United States v. Hong Vo*, 978 F. Supp. 2d 41, 47 (D. D.C. 2013). The Court has discretion to reconsider a prior decision the it has "misunderstood the parties, made a decision beyond the adversarial issues presented, or made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred." *Id*. at 48 (quoting Arias v. DynCorp, 856 F. Supp. 2d 46, 52 (D.D.C. 2012)).

#### 1. Government's Arguments Failed to Consider Precedent

In seeking to detain Mr. Rehl, the government persuaded the Court to rely on statements made by Mr. Rehl that are protected by the First Amendment because they did not present the "imminent" danger required to punish speech. See, e.g., *Hess v. Indiana*, 414 U.S. 105 (1973)

7

(reversing conviction of anti-war protester who was charged with disorderly conduct for stating "We'll take the fu**ng street later (or again),"); *Brandenburg v. Ohio,* 395 U.S. 444 (1969) (state may not forbid speech advocating the use of force or unlawful conduct unless this advocacy is directed to inciting or producing **imminent** lawless action and is likely to incite or produce such action). Every statement relied on by the government was too remote in time to meet the *Brandenburg* test. The first statement attributed to Mr. Rehl in the indictment is from November 2020 (ECF 380 at ¶ 14); no statement was made on January 5 or 6. No statement can therefore be said to have caused "imminent" danger.[5]

The government's reliance on *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) is misplaced. *Mitchell* met the "imminent" or "present danger" requirement as the statements at issue were spoken seconds before they incited a violent assault on another person. Moreover, *Mitchell* recognized that before words could be use to punish a defendant, words must be "scrutinized with care to be certain the statements are not expressions of mere lawful and permissible difference of opinion with our own government." *Id.* at 489-90. In this case, when it asks the Court to detain Mr. Rehl based on statements made days or weeks before January 6, the government's arguments violate First Amendment precedents. Mr. Rehl's did not cause imminent danger. The government arguments – which have taken Mr. Rehl's words out of context or truncated his statements in a manner that mislead – fail the requirement that words must be carefully scrutinized before speech can be used to prosecute a person.

Nor do any of Mr. Rehl's statements meet the test set out by the D.C. Circuit in *United States v. Munchel*, 991 F.3d 1273, 1287 (D.C. Cir. 2021) (rhetorical bravado" when measured

---

[5] Imminent is defined as impending; about to happen.

8

against a defendant's lack of actual violence does not amount to an"identified and articulable threat to an individual or the community" as would support pretrial detention).

The Court's reliance on *Chrestman* factors that were overruled by *Munchel* presents the type of issue that requires reconsideration. *See* Motion to Reopen (ECF 401 at 32-34).

### 2. Appointment of New Counsel

Under circumstances similar to those present in this case where new counsel was appointed, Chief Judge Howell reconsidered a suppression motion:

> The government correctly contends that defendant has not made a threshold showing that any of the factors favoring reconsideration apply to his renewed motions to suppress the evidence seized. . . Yet the determination that reconsideration is warranted is in the trial court's "sound discretion" and thus reconsideration may be allowed, when the district court deems it necessary to prevent manifest injustice. Defendant argues that "justice requires consideration" of his new motions to suppress under the Court's discretionary authority because first, "[m]ost of the issues" presented in the motions "were not previously raised" and "failing to raise them could be considered ineffective"; second, "the determination of the motions has a great effect on the evidence at trial" and "therefore ... are vital to the posture of the case"; and third, some "latitude to raise ... additional arguments" is appropriate because defendant has changed counsel since resolution of his first motions to suppress.
>
> As explained supra, defendant's current counsel was initially appointed in March 2020, after resolution of defendant's previous motions to suppress, which had been filed by counsel in whom defendant evidently lacked confidence. . . Given her late entry into the case, the pending motions are her first opportunity to advance the arguments presented therein, not an attempt to raise new arguments that she should have advanced at an earlier date. Under these unique circumstances, defendant will be allowed an opportunity to revisit the . . . searches, even though the substantially similar arguments raised in his first motions to suppress have already been denied. The merits of defendant's pending motions to suppress the fruits of these searches are considered next.

*United States v. Thorne*, 548 F. Supp. 3d 70, 92–93 (D.D.C. 2021), as corrected (July 16, 2021)

9

(cleaned up) (internal citations omitted)

### 3. The Bail Reform Act Does Not Authorize Detention for The Conspiracy Charges Filed Against Mr. Rehl

The government has failed to address the argument raised by Mr. Rehl that the Bail Reform Act does not authorize detention in this case. *See United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999); Motion to Reopen (ECF 401) at 30-31. In detaining Mr. Rehl, the government focused its arguments on the obstruction conspiracy. However under the Bail Reform Act, the obstruction charge (18 U.S.C. § 1512(c)(2)) is not one of the six enumerated circumstances set out in 18 U.S.C. § 3142(f) that triggers a detention hearing. "Absent one of these circumstances, detention is not an option. *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).

That in itself requires the Court to exercise its discretion to reopen the detention hearing.

## II. New Material Facts Defeat the Government's Arguments that There is Clear and Convincing Evidence that Mr. Rehl Poses a Articulable Future Risk

### A. The MOSD

When reviewed in its entirety and not by reference to a few statement taken out of context as the Indictment does, the MOSD contains material exculpatory evidence that Mr. Rehl did not sign on to a plan to attack the Capitol by force or otherwise. The government's theory, as set out in the various indictments and its pleadings, is that Tarrio created the MOSD, with a top-down structure for the purpose of attacking the Capitol. Yet, although it has in its possession more than **165,000** telegram messages from the defendants and other Proud Boys, it has been unable to produce a single one where Tarrio, Nordean, and Biggs (the men whom the government alleges are at the top of the structure) told the membership to go out and attack that Capitol or illegally interfere with the electoral college count. Or that Mr. Rehl was aware of or signed on to such a plan.

10

Unlike the government, which continues selectively to quote sections of the MOSD meeting, Mr. Rehl attached the full transcript of the MOSD December 30 meeting for the Court to consider. *See* Motion to Dismiss (ECF 440, ex. 1, filed 08/24/22).

The government quotes Mr. Rehl saying that on January 6 "we're not going to be doing a Proud Boy fucking 8 o'clock at night march and flexing our guns and shit" as if that is some evidence of a plan to attack the Capitol. In fact, as any fair and full hearing of the MOSD transcript shows, Mr. Rehl was addressing the December 12 debacle where drunken Proud Boys got into a melee with counter demonstrators at 8 or 9 pm at night, which left four Proud Boys stabbed and hospitalized.

Again, the government refers to select quotes about reevaluating their disposition toward the police. Significantly, most of the quoted statements were made by persons whom the government has not indicted. And the fact that the talk is of "reevaluating" proves that the Proud Boys have always been disposed to "back the blue." Again, bottom line is that Mr. Rehl did not endorse any comments to attack the police. And that Mr. Tarrio - the head of the top-down MOSD structure – did not give the order to reevaluate the Proud Boys' relationship to the police.

Most importantly for purposes of detention, the government does not cite a single statement where Mr. Rehl agreed to such a plan.

**B.     The Hemphill Video**

Again the government tries to make lemonade out of lemons. The part of the Hemphill video where Mr. Rehl is present is exculpatory. In that segment of the video, Nordean rejects Ms. Hemphill's request to enter the Capitol; Mr. Rehl standing beside him agrees that he does not support entering the Capitol. The later Hemphill segments which the government claims contain inculpatory evidence do not involve any statements or participation by Mr. Rehl. Notably, the whole

11

paragraph at the top of page 10 of the government's response does not mention Mr. Rehl.

The government also mentions the Eddie Block video. Although Mr. Rehl did not rely on the video in his motion to reopen, in fact the video includes a statement where when asked who is in charge that morning, Block does not mention Mr. Rehl; he refers to Nordean and Biggs. Indeed, counsel can represent to the Court that earlier this year, when counsel contacted Mr. Block to discuss what he saw of Mr. Rehl on January 6, Mr. Block had no idea who Mr. Rehl was.

### C.  *1776 Returns*

The government claims the *1776 Returns* document is "immaterial" to the detention decision because Mr. Rehl had no knowledge of the document. However, the *1776 Returns* document is referenced in the Third Superseding Indictment under the section captioned "Acts in Furtherance of the Conspiracy" at (¶¶ 41, 106 and 107). *1776 Returns* is therefore material to the (a) nature and circumstances of the offense; and (b) the weight of the evidence against Mr. Rehl, two of the factors that the Court must consider under the Bail Reform Act. The fact that Mr. Rehl had no knowledge of the existence of the document weighs in favor of release.

### D.  Finley Guilty Plea

The government claims that Mr. Rehl's reference to the Finley guilty plea is neither new new nor material because he knew of Finley's charges before the last hearing. However, the Finley guilty plea and statement of offense were not filed until April 6, 2022, long after the previous detention hearing. It is the statement of offense that provides details about what Finley saw and did on and after January 6. Among other things, Finley identified Nordean and Biggs as the persons directing the others, that he looked to Nordean as the leader, that he saw others remove barricades, and that after January 6, Finley "took measures to obstruct the government's investigation into criminal

12

conduct at the Capitol" by deleting social media and photos and directing members of his chapter as well as presidents of other chapters to do the same. The Court was also not informed that Finley participated in the Boots on the Ground Telegram chat. None of those things were known to Mr. Rehl at the time. Nor was it known to Mr. Rehl that Finley would be allowed to plead to a 6-month misdemeanor, making the Finley plea material to whether Mr. Rehl, who is similarly situated poses an articulable prospective risk.

**E. Donohoe Plea**

The Donohoe plea is material precisely because it uniquely fails to support any argument that there was a plan to attack the Capitol. Indeed, Donohoe admits that he "was not given details of the plan referred to by Biggs, but Donohoe understood from discussions among the MOSD and other Proud Boys that the objective in Washington, D.C., on January 6, 2021, was to obstruct, impede, or interfere with the certification of the Electoral College vote." (ECF 336 at ¶ 23). Whatever Donohoe understood cannot be gleaned from the telegram chats as no such text has been presented to the Court or reviewed by counsel. Perhaps what Donohoe believed was a function of what he personally believed or was intending to do on January 6. The government does not include any case that supports its claim that the Donohoe plea provides evidence against Mr. Rehl for purposes of the detention determination. Indeed, in counsels experience, the Donohoe plea is unique in conspiracy prosecutions in allowing a defendant to state not that he conspired to do what he is charged with but rather that he "believed" that was the plan.

**F. The Government's Reliance on Mr. Rehl's Statement About the Capitol Improperly Characterizes the Statement and Its Import**

On page 9 of its opposition, the government relies on a statement about the Capitol but again the government quotes the statement out of context, omits material words spoken by Mr. Rehl and

ignores First Amendment precedent.

The reference is to an allegation in the Indictment where PERSON-3 posted a voice note to the MOSD Leaders Group in which he stated:

> I mean the main operating theater should be out in front of the house of representatives. It should be out in front of the Capitol building. That's where the vote is taking place and all of the objections. So, we can ignore the rest of these stages and all that shit and plan the operations based around the front entrance to the Capitol building. I strongly recommend you use the national mall and not Pennsylvania avenue though. It's wide-open space, you can see everything coming from all angles.
>
> REHL responded that the Capitol was a "good start."

Indictment at ¶ 49.

The full quote by Mr. Rehl on January 3 is:

> Is Noble Lead [Tarrio] still doing a speech? Where is that? These are things that are holding up my thought process for the moment. Other than that the capital is a good start.

Bates #21CR175_00006411.

Clearly, the full quote shows that Mr. Rehl views the comment about the Capitol as a reference to the type of activity that takes place at a political rally where speeches are made, not at a seditious conspiracy event as the government argued to the grand jury. Moreover, while the government surely tries to paint a rally at the Capitol as an "act in furtherance of the conspiracy", Indictment at 10, it is in fact a "public forum" for First Amendment purposes.

> [C]ourts have long recognized that the Capitol Grounds as a whole meet the definition of a traditional public forum: They have traditionally been open to the public, and their intended use is consistent with public expression. In *Jeannette Rankin Brigade v. Chief of Capitol Police*, a three-judge panel of the United States District Court for the District of Columbia, striking down a statute that forbade " 'parad[ing], stand [ing], or mov[ing] in processions or

14

assemblages'" around the Capitol, concluded that the Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F.Supp. 575, 583–84 (D. D.C.1972) (three-judge panel) (quoting 40 U.S.C. § 193g). The Supreme Court summarily affirmed, making Jeannette Rankin Brigade binding precedent. 409 U.S. 972 (1972). Later, in *Community for Creative Non-Violence v. Kerrigan* ("CCNV"), we observed that "[t]here is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding as "a reasonable time, place or manner restriction" a regulation limiting the length of time during which demonstration "[p]rops and [e]quipment" may remain on the *42 **392 Grounds). Clearly, therefore, the "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was designed – legislating" – is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." *Jeannette Rankin Brigade*, 342 F.Supp. at 584. Indeed, in *Jeannette Rankin Brigade*, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion."

*Lederman v. United States*, 291 F.3d 36, 41-42 (D.C. Cir. 2002) (sidewalk abutting East steps of Capitol was a public forum for First Amendment purposes).

Thus, not only did the government truncate Mr. Rehl's statement, mischaracterizing its meaning to the Grand Jury and to the Court. It also fails to recognize that D.C. Circuit and Supreme Court precedent recognized that the Capitol grounds up to and including the sidewalk abutting the steps to the Capitol is a "public forum" for First Amendment purposes.

### G. Other Statements Allegedly Made by Mr. Rehl

In the first page of the Gov Opposition, it quotes three statements allegedly made by Mr. Rehl without citing the date or the context. Each of the statements are taken out of context. The statement that "I'm proud as fuck of what we accomplished yesterday" is not the entire statement. The full statement acknowledges that President Biden is the President. The second statement cited by the government again omits material facts. "This is what Patriotism looks like" references an

15

image of thousands of Americans on the Mall carrying American flags and peacefully attending a political rally. The image that accompanies that statement does not contain a single image of violence or destruction of property. The last statement referenced by the government refers, which allegedly makes reference to tarring and feather turn coats and that "cops turning on us are also what they call 'turncoats' was deleted by Mr. Rehl within moments of posting. As many of us do, sometimes our exuberance overtakes us before we come to our senses and delete intemperate postings.

While counsel has attempted to address these three statements, Mr. Rehl respectfully requests that the Court strike them from consideration where the government fails to cite the specific date, omits material words and images, and fails to reference the specific location where it was produced in the discovery so that they can be adequately addressed.

While not addressed in the papers, more evidence that the government has taken Mr. Rehl's statements out of context in the indictment and as argued to the Court is the argument that the fact that Mr. Rehl brought a handful of radios to the rally on January 6 is inculpatory. In fact, a telegram message from December 27, 2020 where Mr. Rehl tells other Proud Boys that radios at rallies are a life-saving tool:

> From: 454128414 Captain Trump
> For real, best thing is to invest in is some radios and set up channels for your chapters and designate guys to watch over a smaller crowd so everyone can stay in touch, they are a lifesaver. One of our guys literally had a heart attack in DC and was saved because we were able to contact each other on these, dude wanted to go back to his room and we all told his ass he was going to the hospital and he was told by the Ors he woulda died if he did that.
> 12/27/2020 1049:35 PM(UTC-8)

Bates #21CR175_00002092.

## CONCLUSION

For all these reasons, and any that may become apparent at a hearing on this matter, Mr. Rehl respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society in light of all the recent additional evidence that he submitted in the Motion to Reopen the Detention Hearing. He has met the statutory definition for reopening the hearing, or in the alternative for the exercise of this Court's discretion to reconsider its decision to detain Mr. Rehl, in the interests of justice. His continued detention under all the facts and circumstances are not the least restrictive conditions that will reasonably protect the public from a prospective articulable risk of danger. Accordingly, his continued detention violates his rights under the Due Process clause.

Wherefore, Mr. Rehl respectfully requests that this Honorable Court release him on high intensity supervision and conditions the Court deems necessary.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 29th day of August, 2022 on all counsel of record via ECF.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**