𝔍𝔫 𝔗𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔬𝔩𝔲𝔪𝔟𝔦𝔞
_____

UNITED STATES OF AMERICA,

      *v.*

DOMINIC PEZZOLA,

      *Defendant*.
_____

No. 1:21-cr-175 (TJK)

## DEFENDANT DOMINIC PEZZOLA'S
## SUPPLEMENTAL MOTION TO DISMISS COUNT 10

Dominic Pezzola, by his undersigned counsel, respectfully moves to *supplement* Mr. Nordean's motion to dismiss at ECF 434, and hereby moves to dismiss Count Ten of the Third Superseding Indictment[1] and, in support of the motion, sets forth the following facts and arguments:

### I.    INTRODUCTION AND OVERVIEW

Mr. Pezzola is charged in a Third Superseding Indictment (hereafter referred to as "TSI") with, *inter alia*, Robbery of Personal Property of the United States, pursuant to 18 U.S.C. § 2112. (*See* ECF Doc. 177, Count Ten). Mr. Pezzola is the only Defendant charged in Count Ten of this Indictment with Robbery, in violation of 18 U.S.C. Section 2112. Mr. Pezzola respectfully moves this Honorable Court to dismiss Count Ten for

---

[1] On September 28, 2022, this Honorable Court provided leave to file the instant application on or before October 5, 2022, on the condition that such filing was 15-pages or less.

1

various reasons.

First, the TSI fails to state an offense and lacks specificity. FED R. CRIM. P. 12(b)(3)(B)(iii). Count Ten specifically alleges:

> . . . by force and violence and by intimidation, did take and attempt to take, from the person and presence of a Capitol Police officer, personal property belonging to the United States, that is, a riot shield.

(In violation of Tile 18, United States Code, Section 2112).

Second, the Government can only back-up, or support, the plain language in the TSI with videos establishing two things, from two completely different perspectives. The first set of videos, captured on an unknown individual's cell phone, depict when Mr. Pezzola picked up a shield, amidst being in a crowd of hundreds of people. These videos do not depict Pezzola "at the front lines" when Pezzola obtained the shield because he moved back hundreds of feet before the officer dropped his shield directly in front of Pezzola, and such officer then ran back to the "front line". The second set of video evidence consist of a single video, also captured from an unknown individual's cell phone, which depicts, in sum and substance", one asking "you *stole*[2] a shield", and then the response of an unknown person is "Yeah".[3]

---

[2] The word "stole" requires a legal definition and interpretation from a legal expert.

[3] Upon review, the defense cannot conclusively state which individual responded with the word "Yeah".

Third, the TSI failed to allege certain facts that render the conclusion that Mr. Pezzola "by force and violence and by intimidation, did take and attempt to take, from the person and presence of a Capitol Police officer, personal property belonging to the United States, that is, a riot shield."

## II.   STANDARD OF REVIEW

A defendant may move to dismiss an indictment on the grounds that it fails to state an offense. FED. R. CRIM. P. 12(b)(3)(B). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). Accordingly, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (internal quotations omitted).

### A.   *Motion to Dismiss*

Where a count of an indictment appears to be based entirely on farcical or speculative grounds—or a mere snippet of a leading question on a cell phone video— a court should look deeper into the prosecution's basis for lodging a criminal accusation. *See United States v. Akinyoyenu*, 199 F. Supp. 3d 34, 36 (D.D.C. 2016) (explaining that "[t]he Court will only consider dismissing an indictment if the defendant shows that the prosecutor instituted some error or irregularity—more than a mere assertion that the prosecutor presented inadequate, unreliable[,] or incompetent evidence.").

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (*citing Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960)).

However, a defendant "may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(3)(B). With that in mind, Rule 12 provides that a defendant may also move to dismiss the indictment for "failure to state an offense" and "lack of specificity." FED. R. CRIM. P. 12(b)(3)(B)(iii), (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962). But, before trial, a defendant may move to dismiss a charge based on a "defect in the indictment." FED R. CRIM. P. 12(b)(3)(B). "The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged." *United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016). The Court thus bases its analysis only on the language charged in the Indictment and the language of the statute alleged to have been violated. *Id.* at 109–10 (collecting citations).

To the extent that Pezzola challenges the scope of a federal criminal statute and its application to his alleged conduct, additional interpretive rules apply. First, federal courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute." *United States v. Aguilar*, 515 U.S. 593, 600 (1995). The Supreme Court has urged this restraint "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.' " *Id.* at 600 (citations omitted).

### B.   *The Rule of Lenity*

Running parallel to this principle is the rule of lenity, where courts construe penal laws strictly and resolve ambiguities in favor of the defendant," so long as doing so would not "conflict with the implied or expressed intent of Congress". *Liparota v. United States*, 471 U.S. 419, 427 (1985); *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring).

### C.   *Actual Allegations in the TSI Regarding Robbery Cannot be Backed with Actual Evidence*.

The only pertinent allegation of the TSI is ¶ 86, which states:

> PEZZOLA moved toward the front of the police line and ripped away a Capitol Police officer's riot shield while the officer was physically engaging with individuals who had gathered unlawfully into the west plaza of the Capitol.

However, this threadbare allegation alleges only a conclusion of law and no facts – except a very general allusion to a general area of the 58.8 acres of the U.S. Capitol

Grounds and the details that an unnamed (not even by code) U.S. Capitol Police ("USCP") officer was "physically engaging" with individuals. The latter detail undercuts the allegation of Count 10 and does not support it. If an officer were physically engaging with individuals, he would be using the riot shield. The implied suggestion that Pezzola got the riot shield because USCP officer was not paying attention to it while distracted is not credible. It is the inconsistency here that must be considered. Perhaps if the officer were engaging other individuals in conversation, he might lower his riot shield to talk. But the allegation claims that he was "physically engaging" with other individuals. He would be not only using the riot shield, but if we are to believe that allegation Pezzola would have had to reach into the middle of a violent altercation without being hit himself.

Additionally, ¶ 88 of the TSI states the following, "[s]hortly thereafter, Donohoe and PEZZOLA combined to carry the riot shield through the west plaza. After reaching the rear of the concreate area of the west plaza, Donohoe posted a message at 1:37 p.m. that read, "Got a riot shield." While standing at the rear of the plaza, Donohoe took a picture of PEZZOLA holding the riot shield and making a hand gesture associated with the Proud Boys.[4]

Regarding the riot shield the TSI is devoid an allegation having anything

---

[4] Somewhere during this time frame is when the Government can present the second video could have been depicted, where an individual stated "you *stole* a shield", and a response of some person is "Yeah".

meaningful that Pezzola and Donohoe both had to "combine" to carry one riot shield.

On the contrary, this allegation suggests that the riot shield was too heavy and/or unwieldy for Pezzola to have stolen it from a USCP police officer. It appears that the allegations are more directly supportive of the conclusion that the USCP police officer dropped the riot shield. Specifically, ¶ 88 of the TSI states that Donohoe – not Pezzola – posted a message "Got a riot shield." But this undercuts the allegations. If the point were to boast, he would have said he "Took a riot shield [from an officer]."

If the allegation is taken at face value, then Donohoe states that [someone] obtained a riot shield, perhaps by finding it or picking it up after it was fumbled.

Simply stated, ¶ ¶ 88 - 94 of the TSI do not support any conclusion that Defendant Pezzola committed any crime. Therefore, the entirety of the TSI is devoid of facial sufficiency that Defendant Pezzola committed any crime that is alleged in Count 10.

### III.  LAW AND ARGUMENT

Pezzola, a respected family-oriented man, military man who served this country proudly, owned a small business that employed others, has an excellent background, and no history of violence is hereby alleged to have "by force and violence and by intimidation, . . . take . . . a riot shield".

In a prior application to this Court for Bond, Mr. Pezzola highlighted that he picked the shield up from the floor. In response to such, the government pasted two screen shots and five videos, which even taken together collectively do not tell the entire

story. After reviewing the videos the government references, a few points must also be stressed:

(1) Pezzola is pushed from behind and loses his footing around 37 seconds into the video;

(2) the video is unclear as to what Pezzola does at such time, and does not capture Pezzola taking a shield from an officer (this is the time frame of picture 1 of 2 that the government attached);

(3) Pezzola falls back and regains his footing without a shield in his hands;

(4) then at 1 minute and 1 second into the video you can make out Pezzola picking the shield up off the floor.

Overall, the videos are unclear and shows Pezzola being pushed and putting his hands up, then falling without a shield. At the same time officers may have fell around or on Pezzola, and its after such events that Pezzola picked up a shield off the floor as the officers turned around and went back to the line the officers set up. Simply put, Pezzola did not obtain a shield "by force and violence and by intimidation. . .".

Count 10 appears to be based solely on a hearsay phone video depicting defendant Pezzola along with at least three other individuals walking through a crowd on Jan. 6 with a plastic shield while a stranger's voice is heard saying, "You stole a riot shield?" The video depicts a voice responding "Yeah." Significantly, other videos provided by the United States *do not* appear to show any alleged "robbery" of an officer's "riot shield."; rather, these other videos appear to depict defendant Pezzola amidst

crowd chaos adjacent to officers with "riot shields" where Pezzola and others recover a plastic riot shield abandoned by officers.

Thus, it appears the entirety of Count 10 is based on a brief, throwaway leading question by an unnamed individual directed at either Pezzola or those around him (filmed at another location and time), actually "stole a riot shield". However, the facts and allegations here fail to establish force or the threat of force was made by Pezzola in or order to obtain such riot shield. Thus, the allegations, are facially insuficent to support such count and charge.

Again. the prosecution's allegation of Count 10 appears to be based solely on a hearsay phone video depicting defendant Pezzola along with at least three other individuals walking through a crowd on Jan. 6 with a plastic shield while an unknown stranger's voice is heard saying, "You stole a riot shield?" The video depicts an unknown voice responding "Yeah."

This is a classic reason for the *corpus delecti* rule, even assuming the identity of the speakers, because the circumstances of a rally bend towards puffery (as an actual legal term), embellishment and exaggeration. People use colorful language in certain situations, so that the word "stole" is not likely to be meant with precision but as a wry joke. There is a tendency to impress or join in the camaraderie of the crowd, regardless of whether another person might disapprove. There is a tendency to use imprecise language for (wry) joking effect rather than for precision or accuracy. There is a tendency to offer statements of enthusiasm (even if misguidedly so) such as "Yeah,"

not as a statement of factual precision. This is especially true with extremely short exchanges between total strangers in which the nature of the exchange is to simply share superficial and shallow comments or shared feelings, or to boast, rather than to make factually accurate reports of events. An exchange of a few seconds among people who don't know each other does not lend itself to a detailed report of events.

Significantly, other videos provided by the United States <u>do not</u> appear to show any alleged "robbery" of an officer's "riot shield."; rather, these other videos appear to depict defendant Pezzola amidst crowd chaos adjacent to officers who are carrying "riot shields" where Pezzola and others recover a plastic riot shield abandoned by officers.

Thus, it appears the entirety of Count 10 is facially insufficient to support this charge.

### A. *The Common Law of Evidence Forbids Lay Testimony on the Ultimate Issue of a Case.*

Even assuming the hearsay on the nine-second snippet video could *otherwise* be entered into evidence, the hearsay depicted in the clip constitutes invalid lay testimony on "the ultimate issue".

For generations, the common law of evidence prohibited witnesses from providing legal conclusions or testimony on the "ultimate issue" of a trial. Witnesses were forbidden from explicitly saying a death was "murder," or saying that a sexual act was "rape," for example. Such determinations are the province of the jury (or judge in bench trials) alone.

**B. *The Federal Rules of Evidence Strongly Disfavor Testimony on the Ultimate Issue.***

Despite the common law ban, the drafters of the Federal Rules of Evidence opted to not include a total prohibition of such testimony. Specifically, the *Ernest* Court explained the following:

> Rule 701 of the Federal Rules of Evidence abrogates the common law by allowing lay witnesses to testify to opinions or inferences if they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." As the Third Circuit noted in *Teen-Ed, Inc. v. Kimball International, Inc.*, 620 F.2d 399 (3d Cir. 1980): "the expression of opinion or inferences by a lay witness is permitted because of the qualification in Rule 701(a) that the factual predicate of the testimony be within the witness's perception." 620 F.2d at 403.

*Ernst v. Ace Motor Sales, Inc.*, 550 F. Supp. 1220, 1223 (E.D.Pa. 1982).

But as Judge Giles held in the *Ernst* case referenced above, testimony regarding the ultimate issue of a case may only be admitted where "the factual predicate of the testimony" is "within the witness's perception." *Id.* Thus, "Officer Rupp's opinion [in the *Ernst* case] about the point of impact was based upon his perception of physical evidence found at the accident scene; more particularly, his opinion was based upon a trail of debris leading from the highway to the plaintiff's car." *Id.*

Here, defendant Pezzola (and others) are filmed carrying a plastic shield while a strange voice asks the leading question: "You stole a riot shield?" to which someone is recorded responding, "Yeah." By no stretch of the imagination could such an

11

unsolicited hearsay question be based on a "factual predicate" or "within the witness's perception."

The United States does not appear to possess any evidence showing Pezzola "robbing" or "stealing" the plastic shield. Instead, the discovery provided by the government includes clips of Pezzola (with hundreds of others) engaged in vigorous protest amid contentious pushing and pulling on Jan 6th. If anything, the known evidence indicates Pezzola and others picked up a plastic shield that was dropped or abandoned by officers.

The very notion, concept, and idea of 'theft' or 'robbery' appears to stem from the snippet of an unknown person saying "You stole a riot shield?" and a response saying "Yeah" (taken at a different time and place from where any purported "robbery" occurred). Without this inadmissible snippet, Pezzola's acquisition of a plastic shield can be regarded as a "robbery" only on the basis of speculation and imagination.

But where a count of an indictment appears to be based entirely on farcical or speculative grounds—or a mere snippet of a leading question on a cell phone video—a court should look deeper into the prosecution's basis for lodging a criminal accusation. See *United States v. Akinyoyenu*, 199 F. Supp. 3d 34, 36 (D.D.C. 2016) ("The Court will only consider dismissing an indictment if the defendant shows that the prosecutor instituted some error or irregularity—more than a mere assertion that the prosecutor presented inadequate, unreliable[,] or incompetent evidence."

Where a criminal allegation appears obviously contrived, or based on no real

factual basis, a court is justified in granting a motion to dismiss. *See United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. 2017) (dismissing seven child pornography charges where the indictment did not contain any facts that described defendant's alleged criminal conduct).

Here, in Count 10, Pezzola is accused of "robbery," with just the passing language that "by force and violence and intimidation, [Pezzola] did take and attempt to take, from the person and presence of a Capitol Police Officer, personal property belonging to the United States, that is, a riot shield." Count 10 does not even name or provide any abbreviation of the name of any specific officer.

It appears that Count 10 was concocted after federal investigators stumbled upon a video clip of an unknown person saying, "You stole a riot shield?" and a passing, off-hand response by another voice saying, "Yeah." This exchange appears to be belied by the known, actual, evidence of Pezzola engaged in protest amidst the crowd chaos of Jan. 6, whereupon Pezzola and others came into possession of an abandoned plastic shield.

The very notion, concept, and idea of 'theft' or 'robbery' appears to stem from the snippet of an unknown person saying "You stole a riot shield?" and a response saying "Yeah" (taken at a different time and place from where any purported "robbery" occurred). Without this inadmissible snippet, Pezzola's acquisition of a plastic shield can be regarded as a "robbery" only on the basis of speculation and imagination.

Again, the only pertinent allegation of the TSI is ¶ 86, which states that

> "86. PEZZOLA moved toward the front of the police line and ripped away a Capitol Police officer's riot shield while the officer was physically engaging with individuals who had gathered unlawfully into the west plaza of the Capitol."

However, this threadbare allegation alleges only a conclusion of law and no facts – except a very general allusion to a general area of the 58.8 acres of the U.S. Capitol Grounds and the details that an unnamed (not even by code) U.S. Capitol Police ("USCP") officer was "physically engaging" with individuals. The latter detail undercuts the allegation of Count 10 and does not support it. If an officer were physically engaging with individuals, he would be using the riot shield. The implied suggestion that Pezzola got the riot shield because USCP officer was not paying attention to it while distracted is not credible. It is the inconsistency here that must be considered. Perhaps if the officer were engaging other individuals in conversation, he might lower his riot shield to talk. But the allegation claims that he was "physically engaging" with other individuals. He would be not only using the riot shield, but if we are to believe that allegation Pezzola would have had to reach into the middle of a violent altercation without being hit himself.

Also, ¶ 88 of the TSI, while at least related to the riot shield, does not allege anything meaningful that Pezzola and Donohoe both had to "combine" to carry one riot shield. On the contrary, this allegation suggests that the riot shield was too heavy and/or unwieldy for Pezzola to have stolen it from a USCP police officer. It appears that the allegations are more directly supportive of the conclusion that the USCP police

14

officer dropped the riot shield.  ¶ 88 states that Donohoe – not Pezzola – posted a message "Got a riot shield."  But this undercuts the allegations.  If the point were to boast, he would have said he "Took a riot shield [from an officer]."  If we take the allegation to mean exactly what it says, Donohoe states that [someone] obtained a riot shield, perhaps by finding it or picking it up after it was fumbled.  He says what he said, not that they stole the riot shield.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant, through counsel, respectfully requests that Count Ten be dismissed.

Dated:  October 5, 2022                              /s/ **Steven A. Metcalf II**

                                                            STEVEN A. METCALF II, ESQ.
                                                            **Metcalf & Metcalf, P.C.**
                                                            *Attorneys for Pezzola*
                                                            99 Park Avenue, 6th Floor
                                                            New York, NY 10016
                                                            *Phone* 646.253.0514
                                                            *Fax* 646.219.2012
                                                            [metcalflawnyc@gmail.com](mailto:metcalflawnyc@gmail.com)

## CERTIFICATE OF SERVICE

  I hereby certify that, on October 5, 2022, the forgoing document was filed via the Court's electronic filing system, and sent to the AUSA via email, which constitutes service upon all counsel of record.

                 /*s*/ **Steven A. Metcalf II, Esq.**
                 _____
                 STEVEN A. METCALF II, ESQ.
                 **Metcalf & Metcalf, P.C.**
                 99 Park Avenue, 6th Floor
                 New York, NY 10016
                 *Phone* 646.253.0514
                 *Fax* 646.219.2012
                 [metcalflawnyc@gmail.com](mailto:metcalflawnyc@gmail.com)