**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-0175 (TJK)** |
| | : | |
| █████████████ | : | |
| █████████████ | : | |

*EX PARTE* **AND UNDER SEAL**

**REPORT AND RECOMMENDATION REGARDING SINGLE ATTORNEY'S**
**REPRESENTATION OF ONE DEFENDANT IN A CRIMINAL CASE AND OF A CO-**
**DEFENDANT IN SUBSTANTIALLY RELATED MATTERS**

Pursuant to the Court's April 13, 2022, Minute Order undersigned counsel respectfully

submits the instant report and recommendation regarding whether defense counsel John Hull's

representation of Enrique Tarrio before the House Select Committee to Investigate the January 6

Attack on the Capitol (hereinafter the "January 6 Committee") and his representation of Joseph

Biggs in the above-captioned matter, in which Mr. Tarrio is a codefendant, creates a conflict

between either of them and Mr. Hull, and, if so, whether the conflict can be waived by Messrs.

Tarrio and Biggs.[1]  Below is a thumbnail recitation of the factual scenario of the charges against

Messrs. Tarrio and Biggs, the representations made to undersigned counsel by each of them, by

attorney John Hull, and attorneys Nayib Hassan and Sabino Jauregui (who represent Mr. Tarrio

in the above-captioned matter), and by Assistant United States Attorneys Erik Kenerson and

---

[1] While outside the scope of undersigned counsel's mandate from the Court, it bears mention that Mr.
Hull also represents Messrs. Biggs and Tarrio in 21-CV-2265 (APM), and 21-CV-3267 (APM), and also
represents Mr. Tarrio in 21-CV-400 (APM). *But see* Note 14, *infra.*  Each of those three cases is based on
the events of January 6, 2021, at the U.S. Capitol. Additionally, Mr. Hull represents ████████████
████████████████████ Jorden Bonenberger in 22 CR 102 (JDB) ████████ whom is also charged with
offenses emanating from the events of January 6, 2021, on the U.S. Capitol.

Jason McCullough, followed by summaries of two significant transcripts undersigned counsel reviewed and then a discussion of both the applicable ethical rules,[2] caselaw and other legal authority on the issues, and the potential conflicts that could arise through Mr. Hull's representation of Enrique Tarrio before the January 6 Committee and his representation of Joseph Biggs in the above-captioned matter, as well as in various civil cases.  *See* Note 1, *supra*, and Note 14, *infra*.  Thereafter is a discussion of the Court's oversight powers in a situation that raises a potential conflict followed by a suggested recommendation regarding how to proceed to resolve any conflict issues in this case.

## I.      Factual Background

### A.  Charges

In this case Joseph Biggs and Enrique Tarrio, among others,[3] are charged by indictment (Doc. No. 380) with Seditious Conspiracy, in violation of 18 U.S. Code §2384 (Count One), Conspiracy to Obstruct and Official Proceeding, in violation of 18 U.S. Code §1512(k) (Count Two), Obstruction of an Official Proceeding and Aiding and Abetting, in violation of in violation of 18 U.S. Code §§1512 (c)(2), 2 (Count Three), Conspiracy to Prevent an Office from Discharging Any Duties, in violation of 18 U.S. Code §372 (Count Four), Civil Disorder and Aiding and Abetting, in violation of 18 U.S. Code §§231(a)(3), 2 (Count Five), Destruction of

---

[2] All ethical rules cited herein are D.C. Rules of Professional Conduct.

[3] There are a total of five co-defendants in the above-captioned case, but only two are/have been represented by John Hull.  Accordingly, discussion of the other three co-defendants, *i.e.*, Ethan Nordean, Zachary Rehl, and Dominic Pezzola, is not included in this report and recommendation other than to note when Mr. Tarrio may have provided information about them about which he might be examined were he to be a witness either on his own behalf or on behalf of the government.  Specifically, although they are charged in some of the enumerated counts in which Messrs. Tarrio and Biggs are charged, the other three codefendants are not discussed herein as their circumstances do not appear to implicate any conflict issues *vis a vis* John Hull.

Government Property and Aiding and Abetting, in violation of 18 U.S. Code §§1361, 2 (Count

Six), Destruction of Government Property and Aiding and Abetting, in violation of 18 U.S. Code

§§1361, 2 (Count Seven), Assaulting, Resisting or Impeding Certain Officers, in violation of 18

U.S. Code §§111(a)(1) (Count Eight) and Assaulting, Resisting or Impeding Certain Officers, in

violation of 18 U.S. Code §§111(a)(1) (Count Nine).

### B.  Facts

From a review of a 16-page Affidavit In Support of Criminal Complaint and Arrest

Warrant for Joseph Biggs (Doc. 1-1, in 21-MJ-00126) by FBI Special Agent Eric McGuire

(dated January 19, 2021), a one-page FD-302 (dated March 31, 2021) by FBI Agent Todd

Michael Myers regarding a telephone interview with Joseph Biggs, the Third Superseding

Indictment in the above-captioned case dated June 6, 2022 (Doc. No. 380), the Government's

Memorandum In Support of Motion for Detention in *United States v. Enrique Tarrio*, S.D Fla.

No. 22-MJ-02369 (Doc. No. 9-1, March 14, 2022), and the March 17, 2022, Detention Order in

*United States v. Enrique Tarrio*, S.D Fla. No. 22-MJ-02369 (Doc. No. 14), it appears that the

government has evidence indicating, *inter alia*, that Messrs. Biggs and Tarrio planned and

directed the events at the U.S. Capitol in an effort to prevent, hinder or delay by force the

execution of laws governing the transfer of power, including the Twelfth Amendment to the

United States Constitution, and to obstruct, influence and impede an official proceeding, *i.e.*,  the

certification of the Electoral College vote.  Part of that evidence includes photographs and videos

of Joseph Biggs on the grounds of the United States Capitol on January 6, 2021, Mr. Biggs'

admission that he entered the United States Capitol on January 6, 2021,[4] communications and

---

[4] During his January 18, 2021, interview with law enforcement agents, Mr. Biggs admitted entering the
United States Capitol on January 6, 2021, although he denied that there was a "plan" to engage in any
conduct that was illegal.

arguable directives from, *inter alia*, Enrique Tarrio through electronic means,[5] and communications regarding the events of January 6, 2021, between Messrs. Tarrio and Biggs, also through electronic means, including one in which it is alleged Mr. Biggs stated, "We have a plan . . . I gave Enrique [Tarrio] a plan."  Indictment, p. 17, ¶65. At least some of the communications from Mr. Tarrio were conveyed through his phone for which the government sought access (that was granted through the issuance of a search warrant).[6]

With respect to his January 18, 2021, statement to law enforcement, Joseph Biggs made admissions regarding planning for a demonstration in the District of Columbia on January 6, 2021, although he did not admit that the plan included anything more than a demonstration, stating that he had "no idea" who had planned the events that ultimately transpired that day at the Capitol.  In that statement to law enforcement Mr. Biggs also said that part of the plan was that Mr. Tarrio would create an on-line "post" to deter Antifa, adding that at one point Mr. Tarrio "told most people to stay away."  Enrique Tarrio did not make any post-arrest statements to law enforcement.

Seemingly, the government will seek to establish the agreements that form the basis of the conspiracy counts in the indictment (Counts 1, 2 and 4), as well as the alleged objectives of the conspiracies, through the various communications described above (and perhaps through the testimony of cooperating witnesses), while presumably it will try to establish the overt acts of the conspiracies, as well as the other counts in the indictment, through eyewitness accounts and photographic and video evidence.

---

[5]The electronic means include encrypted messages, messages on social media, posts on social media and "voice notes."

[6] April 5, 2022, Status Hearing, Transcript, pp. 5-6.

### C.  Mr. Hull's Compensation[7]



Mr. Biggs

In short, it does not appear that

As far as

---

[7] Undersigned counsel explicitly told Messrs. Biggs, Tarrio and Hull that her inquiry about Mr. Hull's compensation was not meant to elicit how much he was being paid (and indeed, that undersigned counsel was not asking for that information), but rather only information about the mechanisms by which he was/is being paid.

[8] E-Mail from J. Daniel Hull to undersigned counsel (August 29, 2022)

[9] *Id.*

[10] *Id.*

[11] ▪

███████████████████████████████████████████████████████

███████████████████, "[12]

## II.    <u>Investigation</u>

In the course of preparing the instant report and recommendation undersigned counsel spoke separately with Joseph Biggs (at the Alexandria Detention Center on May 30, 2022), Enrique Tarrio, (by telephone on June 23, 2022), John Hull (on April 25, 2022, and briefly on June 14 and 21, and August 30, 2022), and Assistant United States Attorneys Erik Kenerson and Jason McCullough (on May 27, June 10 and 22, and August 30, 2022).  Undersigned counsel also reviewed the aforementioned 16-page Affidavit In Support of Criminal Complaint and Arrest Warrant for Joseph Biggs (Doc. 1-1, in 21-MJ-00126) by FBI Special Agent Eric S. McGuire (dated January 19, 2021), a one-page FD-302 (dated March 31, 2021) by FBI Agent Todd Michael Myers regarding a telephone interview with Joseph Biggs, a recording of Joseph Biggs' January 18, 2021, 28-minute interview with law-enforcement, a████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████, a

███████████████████████████████████████████████

███████, [13] the Third Superseding Indictment in the above-captioned case dated June 6, 2022

---

[1]████

[13]███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████
███████████████

(Doc. No. 380), the Government's Memorandum In Support of Motion for Detention in *United States v. Enrique Tarrio*, S.D Fla. No. 22-MJ-02369 (Doc. No. 9-1, March 14, 2022), the March 17, 2022, Detention Order in *United States v. Enrique Tarrio*, S.D Fla. No. 22-MJ-02369 (Doc. No. 14), and a 43-page transcript of an April 5, 2022, status hearing in the above-captioned matter.  In addition, undersigned counsel listened to a recording of the January 18, 2021, interview with Mr. Biggs provided by government counsel.

### A.  <u>Joseph Biggs</u>



---

[14] ████████████████████████████  PACER reflects that Mr. Hull represents Messrs. Biggs and Tarrio in two separate civil cases, each emanating from the events of January 6, 2021.  *See* Note 1, *supra*. A review of the dockets in 21-CV-2265 (APM) and 21-CV-3267 indicates that in 21-CV-2265 the complaint was filed on August 26, 2021 (Doc. No. 1) and Mr. Hull entered his appearance on behalf of Joseph Biggs on October 18, 2021 (Doc. No. 55), and on behalf of Enrique Tarrio on November 1, 2021 (Doc. No. 68), and that on September 1, 2022, Mr. Hull filed a motion to withdraw as Mr. Tarrio's counsel (Doc. No. 164).  According to the docket in 21-CV-3267 (APM) the complaint in that case was filed on December 14, 2021, (Doc. No. 1), and Mr. Hull entered his appearance on behalf of both Enrique Tarrio and Joseph Biggs on December 17, 2021 (Doc. Nos. 13 and 14) and filed a motion to withdraw as Mr. Tarrio's counsel on September 1, 2022 (Doc. No. 151). In 21-CV-400 Mr. Hull entered his appearance on behalf of Enrique Tarrio on December 20, 2021 (Doc. No. 51) and filed a motion to withdraw as Mr. Tarrio's counsel on September 1, 2022 (Doc. No. 73). *See* Exhibit One.  As of the filing of the instant Report and Recommendation none of Mr. Hull's motions to withdraw as Mr. Tarrio's counsel have been granted.  That said, assuming those motions to withdraw eventually are granted, Mr. Tarrio's status will simply change from being a current client of Mr. Hull's in those cases, to being a former client of his.



[17]

███████████████████████████████████████████████████████████

███████████████

**B.  Enrique Tarrio**

In a conversation separate from that which undersigned counsel had with Joseph Biggs,

Enrique Tarrio, ████████ ██████████████████████████████████████

█████████████████████████████████████████████████████

████████████████ ████████████████████████████████████████

██████████████ █████████████████████ ████████████████████

██████████████████████████████████████ ██████████████

█████████████████████████████████████████████████████

███████

        █████████████████████████████████████ █████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████ ████████████████ ███████████████

███████████████████████████████████████████████████

██████████████

        ███████████████████████████████ ███████████████████

█████████████████████████████████████████████████████████



.[19]

_____

[18] ███████████████

[19] The detention order in 22-MJ-02369-AOR (S.D. Fla. March 17, 2022) (Doc. No. 14) states that Mr. Tarrio's "criminal history includes three prior convictions, including an August 22, 2013, conviction stemming from Tarrio's participation in a conspiracy to unlawfully profit by receiving, possessing and reselling stolen diabetic test strips . . ." Moreover, the government's Memorandum in Support of Motion for Detention in in 22-MJ-02369-AOR (S.D. Fla. March 14, 2022) (Doc. No. 9-1) makes reference to that same prior 2013 federal conviction in 12-CR-20947 (JAL), as well as to Mr. Tarrio's two D.C. Superior Court convictions from 2021. *See* Note 23, *infra*.

C. **John Hull** (Defense Counsel for Joseph Biggs in 21-CR-175, Counsel for Enrique Tarrio Before the January 6 Committee, and in 21-CV-400 (APM), and Counsel for Messrs. Biggs and Tarrio in 21-CV-2265 (APM), and 21-CV-3267 (APM))

On April 25, 2022, when undersigned counsel spoke with defense counsel John Hull, he stated that ██████████████████████████████████████████████████████ ████████████████████████████████████████[20]██████████████ ████████████████████████████ ████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████[21] ████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████[22]

When asked whether █████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████ ██████████████████████████



---

[20] During a June 21, 2022, conversation with undersigned counsel, Mr. Hull stated that ████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████

[21] ██████████████████████████████████████████████████████ ██████ ██ █████████████████████████████████████████████ ██████████████████████████████████████████████████[c] ██████████████████████████████████████████

[22] ████████████ █████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████

**13**



Mr. Hull stated that █████████████████████████████████████████████████

He further explained that ███

According to Mr. Hull, ███

---

[23] ████████████████████████████████████████████████████  A review of the D.C. Superior Court electronic docket (Courtview) revealed that in 2021 CMD 106 Mr. Tarrio was charged on January 5, 2021, with destruction of property to which he entered a guilty plea on July 19, 2021, and for which he was sentenced on August 23, 2021, to 90 days incarceration, of which 60 were suspended.  The docket review also revealed that in 2021 CF2 105 Mr. Tarrio was charged on January 5, 2021, with two counts of possession of a large capacity ammunition feeding device and entered a guilty plea on July 19, 2021, to one count of attempted possession of a large capacity ammunition feeding device for which he was sentenced on August 23, 2021, to 150 days incarceration, execution suspended as to 25 days and to run consecutively to the sentence in 2021 CMD 106.

[24] ████████████████████████████████

**14**

When asked ████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████

████████████████████ Mr. Hull, ████████████████████████
████████████████████████████████████
████████████████████████████████████████

██████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████ Mr. Hull said that ████████████████
███████████████████████████████. Finally,

Mr. Hull said that ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████

████████████

Mr. Hull further indicated that ████████████████████████
██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████

Mr. Hull said that he ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████████
██████████.

████████████████████████████████████████████████████ .

████████████ █████████████████

According to Mr. Hull ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████ .[25] Responding to a question █████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ .

**D.  Nayib Hassan**

Nayib Hassan, one of Mr. Tarrio's two lawyers in the above-captioned case, told

undersigned counsel that ████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████   ███████████

---

[25] ██ ████████████████████████████████

███████ █████████████████████████████████ ▪ ██████████████

████████████████████████████████████████████████████████████

███████████████████████████

### E.  Sabino Jauregui

Regarding ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ ██████████████ ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

████████ ███████████████████████████████████████████████, the issue
to be resolved relates to Mr. Hull's representation of Joseph Biggs in the above-captioned case while also
having represented, or currently representing, solely Mr. Tarrio in several parallel and related matters, *i.e.*,
before the January 6 Committee, and in 21-CV-400(APM), and representing both Mr. Tarrio and Mr.
Biggs in 21-CV-2265 (APM) and 21-CV-3267 (APM).  *But see*, Note 14, *supra*.

███████████████████████████████████████████████. *See* Notes 1 and 14, *supra*.

Mr. Jauregui further explained that ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

███████████ ██████████████████████ █████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████ ███████ ████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

Mr. Jauregui stated that ████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████.[27]  On the issue of ██████████████

████████████████████████████████████████████████████

████████████████████ ████████████████ █████████████████

██████████████████████████████████████████

────────────────────

██████ ████████████████████████████████████████

████████████████████████████████████████

With respect to ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ Mr. Jauregui further

explained that █████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ ████████████████ ███████████████████████

█████████████████████████████████████████████

### F.  __Erik Kenerson and Jason McCullough__ (Assistant United States Attorneys)

Assistant United States Attorneys Erik Kenerson and Jason McCullough explained that John Hull represented Mr. Tarrio before the January 6 Committee[28] and also represents both Mr. Tarrio and Mr. Biggs in civil matters, although they indicated that they did not have any specific knowledge about Mr. Hull's representation in those other matters.  When asked, Messrs. Kenerson and McCullough also indicated that they did not know the extent of any conflict presented by Mr. Hull's representation of Messrs. Biggs and Tarrio in these various matters, nor whether Mr. Hull had knowledge from Mr. Tarrio that could be detrimental to Mr. Biggs.

---

[28] ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Messrs. Kenerson and McCullough explained that Mr. Biggs was arrested in January 2021 and shortly thereafter had hired Mr. Hull as his counsel.[29]  They further noted that Mr. Tarrio was not arrested until March 2022.[30]  As such, they explained, there were approximately thirteen months before Mr. Tarrio became Mr. Biggs' co-defendant in this case when Mr. Hull was representing only Mr. Biggs,[31] and that the other matters were the civil case(s) in which Mr. Hull represents both Mr. Biggs and Mr. Tarrio and Mr. Hull's representation of Mr. Tarrio before the January 6 Committee.[32]  Messrs. Kenerson and McCullough initially indicated that they expected that there were attorney-client communications between Mr. Hull and Mr. Tarrio while Mr. Biggs was the only one charged in the above-captioned criminal matter, and that perhaps Mr. Hull did not know that Mr. Tarrio also would be charged in this case.  Indeed, on August 25, 2022, through an e-mail to undersigned counsel they indicated that, although they were not privy to the substance of jail calls between Messrs. Tarrio and Hull, between October 6, 2021, and January 9, 2022, a time period when he already was representing Mr. Biggs in the above-captioned matter, there were fourteen such calls between Mr. Hull and Mr. Tarrio.

In addition, Messrs. Kenerson and McCullough said that when Mr. Tarrio was arrested, he gave Mr. Hull's name as his attorney, and that Mr. Hull has acknowledged the possibility that a conflict exists in this matter with his representation of Mr. Biggs. Specifically, government counsel stated that when Mr. Tarrio was arrested and appeared for his removal proceeding in the

---

[29] In this case, the docket reflects that Mr. Biggs was arrested on January 20, 2021 (Doc. No. 38) and that Mr. Hull's Notice of Appearance on behalf of Mr. Biggs was entered on March 5, 2021 (Doc. No. 8)

[30] *See* 22-MJ-2369(AOR) (S.D. Fla.), Doc. No. 4 (3/8/22)

[31] Mr. Biggs was charged in this case on January 19, 2021 (Doc. No. 1), whereas Mr. Tarrio was not charged until the second superseding indictment (Doc. No. 305) was filed on March 7, 2022.

[32] *See* Notes 1 and 14, *supra*

Southern District of Florida on March 8, 2022, *see* Note 30, *supra*, he had told the PreTrial Services Agency that Mr. Hull was his attorney, adding that although Mr. Hull appeared remotely at that initial hearing, he had agreed that the Federal Defender's Office in Miami should represent Mr. Tarrio for purposes of the removal proceeding. Messrs. Kenerson and McCullough stated that Mr. Tarrio then hired Messrs. Hassan and Jauregui as his counsel.  Messrs. Kenerson and McCullough also indicated that at a hearing in the above-captioned case Mr. Hull had made representations that appeared to be representations regarding Mr. Tarrio's position and state of mind and on Mr. Tarrio's behalf. *See* pp. 25-26, *infra*.

Messrs. Kenerson and McCullough explained that the difference between Mr. Biggs and Mr. Tarrio in the above-captioned case is that Mr. Biggs was present at the Capitol on January 6, 2021, and entered the Capitol building two separate times, whereas Mr. Tarrio was not in the District of Columbia on January 6 and, in the government's view, ███████████████████

██████████████████████████████████████████████████████

Government counsel characterized ███████████████████████████

████████████████████████████████

In response to a question about whether there were *Bruton* statements[33] given by either Mr. Tarrio or Mr. Biggs, Messrs. Kennerson and McCullough said that Mr. Tarrio did not give a post-arrest statement, and that it was unclear whether the statement Mr. Biggs gave on January 18, 2021, to law enforcement agents constituted a *Bruton* statement.[34]  Nevertheless, government

---

[33] *Bruton v. United States,* 391 U.S. 123 (1968).

[34] ███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████

counsel did indicate that Mr. Tarrio had made statements on social media that they believed were evidence of his intent and with which Mr. Biggs might not want to be associated.

Explaining that Messrs. Biggs and Tarrio communicated with one another on January 5 and 6, 2021, and surrounding dates, Messrs. Kenerson and McCullough said it is possible that one of the two could plead guilty in the above-captioned case and have information about the other that would be useful to the government.  A separate possibility exists in the government's view that either Mr. Biggs or Mr. Tarrio could elect to testify in his own defense in the above-captioned matter and that if it were Mr. Tarrio, Mr. Hull would have to cross-examine his own client. According to Messrs. Kenerson and McCullough, any plea agreement for either Mr. Biggs or Mr. Tarrio would involve cooperation and "almost certainly to the detriment" of the non-pleading of the two.

G. 

[35]







### H.  The April 5, 2022 Status Hearing in This Case

During an April 5, 2022, status hearing in this case, when he was appearing on behalf of Mr. Biggs, Mr. Hull made representations regarding Mr. Tarrio in the context of arguments about the government's search of the latter's cell phone.  Seemingly the evidence obtained through Mr. Tarrio's cell phone is a significant part of the prosecution's case against both Mr. Tarrio and Mr. Biggs, as well as against the others charged in this case.  In relevant part, Mr. Hull stated:

> . . . I represented Mr. Tarrio in three civil suits and still am, . . . and also any completed – or 99 percent completed House of Representatives inquiry.

> And I spent a lot of time with Mr. Tarrio.  I visited him ten times in jail.  For purposes of other issues, I shouldn't be saying that or emphasizing it, but it's true . . . And my notes are that Enrique [Tarrio] told me – and I asked him . . . I asked him,

> did, in fact, they ask you for a passcode or any way to get into the phone, and he said no. . .
>
> . . . And then there were more conversations about it when he received a subpoena from the House Select Committee, and I decided to work on that because they were very interested in trying to depose him in jail.
>
> . . . Whether or not they had the passcode, certainly the Justice Department has the technology to get into that phone when, one, they know about the phone.  And if, in fact, Enrique Tarrio is the head of some conspiracy to obstruct and certify [sic] the Harris-Biden Electoral College certification . . . why wouldn't they be very aggressive . . . Why wouldn't they be very aggressive about that? . . . so this doesn't pass the -- you know, the B.S. test for me.

21-CR-175, Status Hearing (April 5, 2022), pp. 7-9

## III.   **Relevant Ethical Rules**

Although a number of ethical rules are implicated in the circumstances presented by Mr.

Hull's representation of Mr. Biggs in the above captioned matter, his representation of Mr.

Tarrio before the January 6 Committee, and his simultaneous representation of Messrs. Biggs

and Tarrio in multiple civil matters,[45,46] four ethical rules are directly implicated.  The most

relevant of the four is Rule 1.9 regarding conflicts arising from representation of a former client.

---

[45] *See* Notes 1 and 14, *supra*

[46] Among the other ethical rules that may be relevant in this situation is Rule 2.1 (in his capacity as an advisor "a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social, and political factors, that may be relevant to the client's situation.") (emphasis supplied).  While Rule 1.3 regarding a lawyer's duty of diligence and zeal states that "(a) A lawyer shall represent a client zealously and diligently within the bounds of the law" and that "(b) A lawyer shall not intentionally: . . . (2) Prejudice or damage a client during the course of the professional relationship," Comment 10 to that Rule explicitly states that "Rule 1.3 is a rule of general applicability, and it is not meant to enlarge or restrict any specific rule. In particular, Rule 1.3 is not meant to govern conflicts of interest, which are addressed by Rules 1.7, 1.8, and 1.9."

In addition, Rule 1.6 regarding client confidences and secrets is directly relevant to this situation. Finally, Rule 1.7 dealing with conflicts of interest generally, and Rule 1.8 regarding specific situations that may present a conflict for a lawyer are also implicated.

### A.   Rule 1.6

(a) Except when permitted under paragraph (c), (d), or (e), a lawyer shall not knowingly:

(1) reveal a confidence or secret of the lawyer's client;
(2) use a confidence or secret of the lawyer's client to the disadvantage of the client;
(3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person.

(b) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client.

*************************************

(e) A lawyer may use or reveal client confidences or secrets:

(1) with the informed consent of the client;
(2) (A) when permitted by these Rules or required by law or court order; and
   (B) if a government lawyer, when permitted or authorized by law;
(3) to the extent reasonably necessary to establish a defense to a criminal charge, disciplinary charge, or civil claim, formally instituted against the lawyer, based upon conduct in which the client was involved, or to the extent reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client;
(4) when the lawyer has reasonable grounds for believing that a client has impliedly authorized disclosure of a confidence or secret in order to carry out the representation;
(5) to the minimum extent necessary in an action instituted by the lawyer to establish or collect the lawyer's fee; or
(6) to the extent reasonably necessary to secure legal advice about the lawyer's compliance with law, including these Rules.

(f) A lawyer shall exercise reasonable care to prevent the lawyer's employees, associates, and others whose services are utilized by the lawyer from disclosing or using confidences or secrets of a client, except that such persons may reveal information permitted to be disclosed by paragraphs (c), (d), or (e).

(g) The lawyer's obligation to preserve the client's confidences and secrets continues after termination of the lawyer's employment.

(h) The obligation of a lawyer under paragraph (a) also applies to confidences and secrets

learned prior to becoming a lawyer in the course of providing assistance to another lawyer.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

D.C. Rules of Professional Conduct, Rule 1.6: Confidentiality of Information

**B.**    **Rule 1.8**

As Rule 1.8 recognizes, a specific concern arises when co-defendants, or even a single

defendant, is represented by a lawyer being compensated by someone other than the person the

lawyer is representing as the lawyer's allegiance to the client may be compromised.  Rule 1.8(e)

states:

> **(a)** A lawyer shall not accept compensation for representing a client
> from one other than the client unless:
>
> (1) The client gives informed consent[47] after consultation;
> (2) There is no interference with the lawyer's independence of
> professional judgment or with the client-lawyer relationship; and
> (3) Information relating to representation of a client is
> protected as required by Rule 1.6.

D.C. Rules of Professional Conduct, Rule 1.8: Conflict of Interest: Specific Rules

**C.**    **Rule 1.9**

A lawyer who has formerly represented a client in a matter shall not thereafter represent
another person in the same or a substantially related matter in which that person's
interests are materially adverse to the interests of the former client unless the former
client gives informed consent.

D.C. Rules of Professional Conduct, Rule 1.9: Conflict of Interest: Former Client.  Importantly

Comment 1 to Rule 1.9 specifically states that "After termination of a client-lawyer

relationship, a lawyer may not represent another client except in conformity with the Rule" and

---

[47] Rule 1.0(e) explains that informed consent is "the agreement by a person to a proposed course of
conduct after the lawyer has communicated adequate information and explanation about the material risks
of and reasonably available alternatives to the proposed course of conduct."

that [t]he principles in Rule 1.7 determine whether the interests of the present and former client

are adverse."[48]

## IV.    **Potential Conflicts**

The Sixth Amendment's guarantee of counsel in a criminal case includes the "right to

representation that is free from conflicts of interest."  *Wood v. Georgia*, 450 U.S. 261, 271

(1981).  *See also Glasser v. United States*, 315 U.S. 60, 70 (1942) (the Sixth Amendment right to

counsel "contemplates that such assistance be untrammeled and unimpaired.")  Because "[t]he

---

[48] Rule 1.7 governs situations in which a single lawyer represents more than one co-defendant in a criminal case.  In relevant part it states:

> **(a)**  A lawyer shall not advance two or more adverse positions in the same matter.
> **(b)**  Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
>     (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;
>     (2) Such representation will be or is likely to be adversely affected by representation of another client;
>     (3) Representation of another client will be or is likely to be adversely affected by such representation;
>     (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.
>
> **(c)**  A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if
>     (1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and
>     (2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

D.C. Rules of Professional Conduct, Rule 1.7: Conflict of Interest: General Rule.

Sixth Amendment's 'essential aim' 'is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers,'" "a criminal defendant's right to counsel of his choice is not absolute." *United States v. Lorenzana-Cordon*, 125 F.Supp.3d 129, 134 (D.D.C. 2015), citing *Wheat v. United States*, 486 U.S. 153, 159 (1988). *See also Wheat*, 486 U.S. at 164 (while the court "must recognize a presumption in favor of [the accused's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.") It has been well recognized that "there are significant dangers inherent in the representation [by a single attorney] of multiple defendants in the **course of the same criminal investigation**." *United States v. Bikundi*, 80 F.Supp. 3d 9, 22 (D.D.C. 2015) (emphasis supplied). Mr. Hull's representation of Mr. Tarrio before the January 6 Committee and his representation of Mr. Biggs in the above-captioned case certainly fall within the scope of "the same criminal investigation" given that both emanate from the events of January 6 at the U.S. Capitol and that both Mr. Biggs and Mr. Tarrio have been criminally charged based on those events.

While the circumstances at issue regarding Mr. Hull's representation of Mr. Biggs in this case do not involve his simultaneous representation of co-defendants charged in a single criminal case, authorities relevant to that scenario are instructive. *See* Note 48, *supra* (and accompanying text) Under the scenario of a single lawyer representing co-defendants in a criminal case the six stages during which a conflict may arise include 1) during plea bargaining, 2) where the defendants have inconsistent defenses, 3) where one or more of the defendants wishes to exercise his right to testify at trial, 4) where the government's evidence may be more damaging to one codefendant than to another, 5) during closing arguments and 6) at sentencing. *See generally*,

John Stewart Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, 62 MINN.L.REV. 119, 125-134 (1978). Similar concerns are presented in this case.

As recognized by the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475 (1978), again, in the context of joint representation of codefendants by a single attorney:

> Joint representation of conflicting interests is suspect because of what it prevents the attorney from doing . . . [A conflict may] . . . preclude . . . defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable . . .[A] conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

435 U.S. at 489-490. *See also Holloway*, 435 U.S. at 490 ("[I]n a case of joint representation of conflicting interests the evil --- it bears repeating --- is in what the advocate finds himself compelled to refrain from doing, not only at trial, but also as to possible pretrial plea negotiations and in the sentencing process.") (emphasis in original).  Likewise, in the circumstances presented by this case Mr. Hull's representation of Mr. Biggs when he previously represented Mr. Tarrio before the January 6 Committee, and presently represents Messrs. Biggs and Tarrio in civil matters arising from the same set of facts, raises similar issues.

As an overarching concern the issue is whether Mr. Hull's allegiance to Mr. Tarrio will influence and/or compromise his representation of Mr. Biggs and fulfillment of his ethical obligations to Mr. Biggs.  Examples of the circumstances under which this could happen include

1) The advice Mr. Hull might give Mr. Biggs regarding whether to accept a plea offer from the government or regarding the defense to present at trial;

2) How Mr. Hull would decide about filing, and if filed, argue, motions a) for severance of Mr. Biggs' case from that of the co-defendants, including Mr. Tarrio, and b) to suppress evidence seized from the phone of his client, Enrique Tarrio;

3) How Mr. Hull would cross-examine Mr. Tarrio were he to testify either as a witness for himself or for the government;

4) The arguments Mr. Hull might make, or refrain from making, on Mr. Biggs' behalf both in closing arguments and, in the event of conviction, at sentencing;

5) How Mr. Hull would ensure that the confidences and secrets Mr. Tarrio shared with him about the events of January 6 were maintained;

6) How Mr. Hull would forebear from using information he has obtained through his representation of Mr. Tarrio before the January 6 Committee, information to which neither government counsel nor other defense counsel has access.[49]

In short, the foregoing consideration demonstrate that "[o]n their face, the[ ] circumstances pose a serious potential for conflict since the subject matter of the successive representation is identical and the two clients involved are now co-defendants." *United States v. Bikundi*, 80 F.Supp.3d at 17. *See also* Restatement Third, The Law Governing Lawyers §129 (recognizing that among the conflicts arising from a single lawyer representing more than one client charged in the same criminal case is when "one defendant is offered favorable treatment in return for testimony against a co-defendant, [such that] a single lawyer could not give advice favorable to one defendant's interests while adhering to the duty of loyalty to the other . . . [and i]n closing argument, [when] counsel must choose which facts to stress[, f]or example, stressing the minor role of one defendant [which] might imply the major role of another.")

A. **Potential Conflicts in This Case**

As a preliminary matter, because Messrs. Biggs and Tarrio are charged in the above-captioned case with, *inter alia*, conspiracy in Counts One, Two and Four, once there is evidence that either or both of them entered into an agreement regarding the charged objective(s) of the conspiracy, and that either or both of them committed one overt act in furtherance of the

---

[49] ████████████████████

conspiracy, each can be criminally liable for the reasonably foreseeable acts of all the other co-conspirators that are taken in furtherance of the conspiracy. *See United States v. Smith*, 950 F.3d 893, 895 (D.C. Cir. 2020) ("A defendant is guilty of conspiracy when (1) he 'enter[s] into an agreement with at least one other person to commit a specific offense'; (2) he 'knowingly participate[s] in the conspiracy with the intent to commit the offense'; and (3) a member of the conspiracy commits 'at least one overt act ... in furtherance of the conspiracy.'"), citing *United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996). *See also United States v. Stoddard*, 892 F.3d 1203, 1221 (D.C. Cir. 2018) ( "It is a core principle of conspiratorial liability that a co-conspirator may be held liable for acts committed by co-conspirators during the course of the conspiracy only when those acts are 'in furtherance of the conspiracy' and 'reasonably foresee[able]' to the defendant"), citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946), and *United States v. McGill*, 815 F.3d 846, 917 (D.C. Cir. 2016). Thus, the fact that Mr. Tarrio was not physically present at the U.S. Capitol on January 6, 2021, does not shield him from criminal liability on all nine counts of the indictment in which he is charged.  Moreover, and independently, some of the counts with which he is charged allege aiding and abetting a substantive offense, *i.e.*, Counts Three, Five, Six and Seven, which also may not require that he have been physically present at the Capitol when the offenses occurred.

To be clear, although Mr. Hull does not represent Mr. Tarrio in this case, he did formerly represent him during his deposition before the January 6 Committee, making Mr. Tarrio a "former client" and therefore raising concerns under Rule 1.9.  Beyond that, Mr. Tarrio is a current client of Mr. Hull's in various civil matters.  *See* Notes 1 and 14, *supra*.  Importantly, it is indisputable ████████████████████████████

████████████████████████████████████████████

█████████ "substantially related" to this case, since "the criminal conduct [at issue] . . . overlap[s both] geographically [and] temporally" with both. *United States v. Carlyle*, 964 F.Supp. 8, 11 (D.D.C. 1997).

As Rule 1.9 explains, "matters are substantially related 'if they involve the same transaction or legal dispute **or** if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.'" *United States v. Crowder*, 313 F.Supp.3d 135, 143 (D.D.C. 2018), quoting D.C. R. Prof'l Conduct 1.9, cmt. 3 (emphasis supplied). With respect to Mr. Hull's representation of Mr. Tarrio before the January 6 Committee ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████ Because the commentary to Rule 1.9 is stated in the disjunctive, *i.e.*, "if they involve the same transaction or dispute **or** if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter," it is not necessary, that both conditions be met for a lawyer to be prohibited from representing the second client.  That said, in this case arguably both prongs of the rule are met because 1) the matter about which Mr. Hull represented Mr. Tarrio before the January 6 Committee ███████ ██████████████████████████████████████████████████████████, and 2) there is a substantial risk that ██████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████. Regarding the latter Mr. Hull's "prior representation [of Mr. Tarrio] in [the January 6 Committee deposition ████████████████████████████

████████████████████████████████ *Crowder*, 313 F.Supp.3d at 143. Additionally, presumably during the course of his representation of Mr. Tarrio before the January 6 Committee, Mr. Tarrio shared confidences and secrets with Mr. Hull, thereby directly implicating Rule 1.6.

With respect to whether the interests of a current client are "materially adverse to the interests of the former client," under Rule 1.9, one court has explained that "'material adversity' . . . encompass[es] situations that 1) 'pit the duty of loyalty to each client against the loyalty to the other;' and 2) 'risk breaching the duty of confidentiality to the client witnesses.'" *United States v, Bikundi*, 80 F. Supp.3d at 17-18, citing *Lawyer Examining a Client as an Adverse Witness, or Conducting Third Party Discovery of the Client*, ABA FORMAL OP. 92-367.

Based on the foregoing factual scenario in this case, it appears that there are several potential conflicts that might arise from Mr. Hull's representation of Mr. Biggs: one in the area of plea negotiations with the government for Mr. Biggs; a second at the pre-trial motions stage; a third in the event of a trial where a) the government may call Mr. Tarrio as a witness against Mr. Biggs or Mr. Tarrio, even if not a witness for the government, might testify on his own behalf at trial which could require Mr. Hull to cross-examine his former client, and/or d) in closing during which Mr. Hull might have to make arguments on behalf of Mr. Biggs that would be harmful to Mr. Tarrio; and a fourth at sentencing where, to zealously advocate on behalf of Mr. Biggs, Mr. Hull might have to make arguments about relative culpabilities that would be detrimental to Mr. Tarrio.

1.  <u>Plea Negotiations</u>

The government has indicated to undersigned counsel that any plea offers extended to either Mr. Biggs or Mr. Tarrio in this case would require cooperation, including against the other. ██████████████████████████████████████

████████████████████████████████████████████

██████████████████   The potential conflict for Mr. Hull is that his advice to Mr. Biggs about whether to accept a plea offer that required his (Mr. Biggs') cooperation against Mr. Tarrio could be influenced by his (Mr. Hull's) allegiance to Mr. Tarrio both as a former client and as a current client in the civil matters.  Additionally, in negotiating the terms of any plea agreement Mr. Hull might be required to argue the relative culpability of Mr. Biggs as compared to Mr. Tarrio which could require him to make representations adverse to Mr. Tarrio in violation of Rule 1.9

2.  <u>Motions</u>

Based on undersigned counsel's conversations with government counsel it appears that there are at least two motions that may be appropriate to file on behalf of Mr. Biggs, one for severance and a second for suppression of evidence obtained through the search warrant issued for Mr. Tarrio's phone. [50]  Arguably Mr. Hull's willingness to file such motions, as well as the vigor with which he might prosecute them if filed, could be influenced and tempered by his prior and former and current representation of Mr. Tarrio.

3.  <u>Trial</u>
    a.  <u>Co-Defendant Testimony</u>

At trial there is the potential that, were Mr. Tarrio to testify, whether in his own defense or as a government witness, and if his testimony were to incriminate Mr. Biggs, Mr. Hull would

---

[50] *See Franks v. Delaware*, 438 U.S. 154 (1978); *United States v. Leon*, 468 U.S. 897 (1984)

be forced to cross-examine his own client.  *See Nix v. Whiteside*, 475 U.S. 157, 188 n. 7 (1986)

(Blackmun, J., concurring) ("observing that 'an attorney who has previously represented one of

the state's witnesses has a continuing obligation to that former client not to reveal confidential

information received during the course of that prior representation.  That continuing duty could

conflict with his obligation to his present client, the defendant, to cross-examine the . . .

witnesses zealously'"), cited in *United States v. Bikundi*, 80 F.Supp.3d at 18.   Were Mr. Hull to

cross-examine Mr. Tarrio less than vigorously due to his allegiance to him, arguably Mr. Biggs

would not be receiving the full zealous representation to which he is entitled under the Sixth

Amendment.  Were Mr. Hull to do so forcefully, or at all, he would be violating his obligation to

Mr. Tarrio.

Moreover, through his representation of Mr. Tarrio before the January 6 Committee

presumably Mr. Hull has access to Mr. Tarrio's confidences and secrets which could only be

used in service to Mr. Biggs with Mr. Tarrio's permission.  Rules 1.6, 1.9.  As the court in

*Bikundi* observed, even if a co-defendant who was a former client of defense counsel testifies in

his own behalf, his former counsel would still "be forced to cross-examine [his] former client"

and might be subject to "ethical censure should [he] err and mistakenly confront [the former

client] with information obtained during [his] representation of him . . ." 80 F.Supp.3d at 18.

Separately, Mr. Hull has access to ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████Thus, were Mr. Hull to vigorously cross-examine Mr. Tarrio ███████████

███████████████████████████████████████████████████████████

███████████████████████████████.  On the other hand, were Mr.

Hull to ███████████████████████████████████████████████████████

benefit Mr. Biggs, the latter's Sixth Amendment right of confrontation would be compromised

due to his counsel's less than zealous representation of him occasioned by his previous

representation of Mr. Tarrio.

      In the context of a single lawyer representing both the accused and an adverse witness

called by the government, courts have deemed this manifestation of the conflict issue to have

been avoided where a second lawyer handles the cross-examination of the adverse-witness client.

*See e.g.*, *United States v. Lorenzana-Cordon*, *supra* (where second counsel was appointed to

cross-examine witness who was represented by the same lawyer as the accused).  Such a

solution, however, would not be viable under the circumstances in this case because as much as

Rule 1.9 would forbid Mr. Hull from using information he gained through representation of Mr.

Tarrio in the January 6 Committee proceedings directly in service to Mr. Biggs, Rule 1.6 would

forbid him from sharing with another lawyer Mr. Tarrio's confidences and secrets gained

through that representation.  Moreover, the spirit of Rule 1.9 would be violated if, by engaging a

second lawyer for the purposes of cross-examining Mr. Tarrio (whether as a government witness

or on his own behalf) Mr. Hull could do indirectly, *i.e.*, through providing information to another

lawyer who would conduct the witness examination of Mr. Tarrio, what it forbids him to do

directly.

      **b.**  Inconsistent Defenses

      ████████████████████████████████████████████████ and while Mr.

Tarrio's testimony before the January 6 Committee has been completed, Mr. Hull continues to

represent Messrs. Biggs and Tarrio in other cases in which each is exposed to civil liability.  *See*

Notes 1 and 14, *supra*. ██████████████████████████████████.

███████████████████, there is a concern that Mr. Hull could refrain from making certain arguments for Mr. Biggs in his criminal trial in this case based on they might impact the civil matters, including on Mr. Tarrio's civil liability.  Such a concern could compromise Mr. Hull's allegiance to Mr. Biggs and his duty to provide him with zealous and diligent representation within the bounds of the law. Rule 1.3(a) ("A lawyer shall represent a client zealously and diligently within the bounds of the law")

### c.  Closing Argument

In closing argument, in service to defending Mr. Biggs, Mr. Hull might need to inculpate or impugn Mr. Tarrio or argue that Mr. Tarrio is more culpable than Mr. Biggs.  If, based on his loyalty to Mr. Tarrio, Mr. Hull failed to do so, Mr. Biggs' defense would be compromised and Mr. Hull would have violated his duty to provide Mr. Biggs with zealous and diligent representation within the bounds of the law. Rule 1.3(a).  On the other hand, were Mr. Hull to inculpate or impugn Mr. Tarrio, or argue that he is more culpable than Mr. Biggs, he might be abrogating Rule 1.9's prohibition against representation that is materially adverse to a former client.

### 4.  Sentencing

As in closing arguments, and even as in plea negotiations, to secure the most favorable possible sentence for Mr. Biggs in this case, Mr. Hull might have to make arguments regarding the relative culpability of Messrs. Biggs and Tarrio, thereby requiring him to make arguments adverse to Mr. Tarrio.  Were he to refrain from doing so based on his prior and current representation of Mr. Tarrio, he would be violating his duty of zealous representation to Mr. Biggs. Rule 1.3(a).  Were he to do so in service to Mr. Biggs, he might violate his obligations to Mr. Tarrio under Rule 1.9.

## V.     <u>Waiver</u>

In the context of simultaneous representation of co-defendants by a single lawyer Rule

1.7(c)(1) contemplates that a single lawyer may represent codefendants in the same matter if

"[e]ach potentially affected client provides informed consent to such representation after full

disclosure of the existence and nature of the possible conflict and the possible adverse

consequences of such representation." Rule of Professional Conduct 1.7(c)(1).   Likewise, Rule

1.9 contemplates that Mr. Tarrio could consent to Mr. Hull's representation of Mr. Biggs in this

case.  Rule 1.9 (allowing a former client to give "informed consent" to a lawyer's subsequent

representation of someone whose interests are "materially adverse" to the former client's).[51]

To establish a valid waiver of any potential conflicts requires a knowing and intelligent

waiver.  *United States v. Lorenzana-Cordon*, 125 F.Supp.3d at 135, citing *Holloway v. Arkansas*,

435 U.S. at 483 n.5.  *See also*, *United States v. Bikundi*, 80 F.Supp.3d at 21-22.  In the context of

a potential conflict born of a single lawyer representing multiple co-defendants in the same case

the standard for a knowing and intelligent waiver is the same as the standard for waiver of the

Sixth Amendment right to counsel.  *Glasser v. United States*, 315 U.S. at 71.  In *Glasser* the

Supreme Court explained

> The trial court should protect the right of the accused to have
> the assistance of counsel.  'This protecting duty imposes the
> serious and weighty responsibility upon the trial judge of
> determining whether there is an intelligent and competent
> waiver by the accused.  While the accused may waive the right
> to counsel, whether there is a proper waiver should be clearly
> determined by the trial court, and it would be fitting for that
> determination to appear upon the record.'

*Id*., quoting *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938).

---

[51] *See* Note 47, *supra* (definition of "informed consent")

At least one commentator has observed that with respect to waivers of attorney conflicts, "one must seriously question the ability of most criminal defendants to appreciate fully the significance of conflicts of interest," adding that "[b]ecause of the relationship of trust between attorney and client and the defendant's relative ignorance of criminal trial dynamics, a defendant is likely to defer to the judgment of his counsel and rely on counsel's representation that he can adequately serve the interests of all defendants."  John Stewart Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, *supra*, 62 MINN.L.REV. at 154 (citations omitted).  In a similar vein the Supreme Court also has recognized that potential conflicts arising from a single lawyer representing multiple co-defendants "are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics."  *Wheat v. United States*, 486 U.S. at 163.  Beyond the challenges of a layperson fully grasping the possibilities for potential conflicts that arise from multiple codefendants being represented by the same attorney, the Supreme Court also has acknowledged that "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." *Id.*

The validity of a waiver of the right to conflict-free counsel depends on whether it is voluntary and intelligent, which in turn, "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'"  *United States v. Carlyle*, 964 F.Supp. at 14,  quoting *United States v. Garcia*, 517 F.2d 272, 277 n.5 (5th Cir. 1975) (citing *Johnson v. Zerbst*, 304 U.S. at 464).  To be clear, given undersigned counsel's limited role in this matter, ██████████████████████████

████████████████████████████████████████████████████████████████

███ That said, ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███

## VI.   <u>The Court's Oversight Powers</u>

The Supreme Court has recognized that "[t]he Sixth Amendment right to choose one's

counsel is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. at 159

(citations omitted).  It also has acknowledged the broad oversight powers of federal courts in

ensuring that the ethical rules are followed in criminal cases.  *Wheat v. United States*, 486 U.S. at

159-160 ("While 'permitting a single attorney to represent codefendants . . . is not *per se*

violative of constitutional guarantees of effective assistance of counsel,' a court confronted with

and alerted to possible conflicts of interest must take adequate steps to ascertain whether the

conflicts warrant separate counsel.") citing *Holloway v. Arkansas*, 435 U.S. at 482.  In *Wheat*, a

case involving a single lawyer's representation of multiple clients in the same case, the Court

explained that "[f]ederal courts have an independent interest in ensuring that criminal trials are

conducted within the ethical standards of the profession and that legal proceedings appear fair to

all who observe them," acknowledging that "[n]ot only the interest of a criminal defendant but

the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by

unregulated multiple representation."  486 U.S. at 160.

In *United States v. Garcia*, the Fifth Circuit explained that the standard for waiver of

conflict-free counsel is the same as that for waiver of any constitutional right.  *Garcia*, 517 F.2d

at 275-277.  It further explained that the "Supreme Court [had] recognized the need for

affirmative judicial involvement in the waiver process" as follows:

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such a waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter. A judge can make certain that an accused's waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*United States v. Garcia*, 517 F.2d at 277-278, quoting *Von Moltke v. Gillies*, 332 U.S. at 708, 723-724 (1948).

Indisputably a trial court's task in ruling on whether to allow a waiver of a conflict of interest by a client is a difficult one. Indeed, in the context of a conflict based on a lawyer representing codefendants in the same case, the Supreme Court observed,

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when the relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat*, *supra*, 486 U.S. at 162-163. In elaborating on a trial court's oversight powers the Court in *Wheat* also indicated that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in the rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, *supra,* 486 U.S. at 163.

Although by its terms the federal rule assigning a role to district courts in ensuring conflict-free counsel, *i.e.*, F.R.Cr.P. 44(c),[52] applies to situations where a single attorney represents co-defendants in a criminal case and not to the circumstances with which this Court is presented, other courts have made clear that, even without a specific rule, nonetheless trial courts have an obligation to ensure " '"that criminal trials are conducted within the ethical standards of the [legal] profession and that legal proceedings appear fair to all who observe them." '" *United States v. Bikundi*, 80 F.Supp.3d at 16, citing *United States v. Lopesierra-Gutierrez*, 780 F.3d 193, 199-200 (D.C. Cir. 2013), quoting *Wheat*, 486 U.S. at 161.  Accordingly, although Mr. Hull is not representing two co-defendants in the same criminal case, similar safeguards ensuring the validity of any waivers by each Mr. Biggs and Mr. Tarrio seem appropriate here.

## VII.   Recommendation

At this stage of the case it does not appear possible to determine whether there is an actual conflict that exists in having Mr. Hull represent Mr. Biggs in the above-captioned case when he previously represented Mr. Tarrio before the January 6 Committee (and represents both Messrs. Biggs and Tarrio in several pending civil matters[53]).  That said, at this juncture it is impossible to "predict the myriad paths [this case may] take."  *United States v. Carlyle*, 964 F. Supp. at 13. The need to ensure that the validity of any waiver of the right to conflict-free counsel in this case is particularly supported by ███████████████   ████████████

████████████████████████████████████████████████

---

[52] Federal Rule of Criminal Procedure 44(c) directs that when "two or more defendants have been charged jointly . . . and [they] are represented by the same counsel," the Court "must promptly inquire about the propriety of joint representation and must advise each defendant of the right to effective assistance of counsel, including separate representation."  Fed.R.Cr.P 44(c).  Significantly the rule further directs that "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel."

[53] *See* Notes 1 and 14, *supra*

██████████████████████████████████████████████████████████████████

████████   Moreover, ██████████ ████████████████████████████████████

███████████████████████   ██████████████   ██████████████████████████

███████████████████████████████████████████████████████   also counsels

in favor of the Court's need to assure itself that any waivers of the right to conflict-free counsel

are valid. Given that there are a number of ways Mr. Hull's representation of Mr. Biggs in this

case could be problematic for both Mr. Biggs and for Mr. Tarrio, it is critical that any waivers be

clearly established on the record.

As other courts in this district have done, out of an abundance of caution, before

inquiring of Mr. Biggs about whether he wishes to continue with Mr. Hull as his lawyer and

inquiring of Mr. Tarrio about 1) whether he waives any conflict under Rule 1.9, 2) consents to

Mr. Hull's sharing of his confidences and secrets, pursuant to Rule 1.6, and 3) waives other

possible conflicts discussed herein, it would be prudent for the Court to appoint separate

independent "experienced counsel having no stake in an on-going attorney-client relationship or

the fees that may be generated therefrom" to advise each Mr. Tarrio and Mr. Biggs about

potential conflicts that could arise through Mr. Hull's representation of Mr. Biggs in this

matter.[54]  *United States v. Carlyle*, *supra*, 964 F. Supp. at 12, 13 (D.D.C. 1997).  *See also United*

*States v. Lopesiera-Gutierrez*, 708 F.3d  at 199; *United States v. Lorenzana-Cordon*, 125

F.Supp.3d at 132, 140 (appointing a separate lawyer "'for the limited purpose of advising" the

accused about a potential conflict); *United States v. Bikundi*, 80 F.Supp.3d at.15-16 (regarding

appointment of "independent and conflict-free counsel" before making a decision regarding

---

[54] ████████████████████████████████████████████████████████████

███████████████████████████

waiver of the right to conflict-free counsel). This is all the more true given Rule 1.0(e)'s definition of "informed consent." *See* Note 47, *supra.*  Appointment of conflict counsel would allow a determination 1) that under Rules 1.6 and 1.9 that Mr. Tarrio had been provided sufficient information and explanation about the existence and nature of possible conflicts and the material risks of, and reasonably available alternatives to, having Mr. Hull represent Mr. Biggs in this matter and 2) that Mr. Biggs had had a sufficient opportunity to evaluate whether he wants Mr. Hull to continue as his counsel.[55]  Such an approach would enable the Court to make a finding about whether any waivers by either Mr. Biggs and/or Mr. Tarrio of actual or potential conflicts was valid.

Beyond ensuring that each Mr. Tarrio and Mr. Biggs have the advice of counsel independent of Mr. Hull to assist them with the conflict issue, and based on the requirements of the law and the unknowns in this case, it would be wise to inquire on the record of each Mr. Biggs and Mr. Tarro about what discussions and explanations of possible conflicts each has had and about the understanding each has of those potential conflicts and his willingness to waive them.  In making such inquiries of each Mr. Biggs and Mr. Tarrio, it would be advisable to make each inquiry independently and outside the presence of the other, and outside of Mr. Hull's presence.  *See Bikundi*, 80 F.Supp.3d at 15 (referring to colloquy between one codefendant and the court occurring "outside the presence of" the second co-defendant).  It also would make sense for the colloquies between the Court and each Mr. Biggs and Mr. Tarrio, and between the Court and Mr. Hull, to be under oath.  *See Bikundi*, 80 F.Supp.3d at 15 (referring to the "testimony" of each of the two co-defendants).  In addition, in "engaging in a comprehensive

---

[55] Seemingly Mr. Biggs also would need to consent that Mr. Hull need not use for Mr. Biggs' benefit any helpful and useful information he, *i.e.*, Mr. Hull, obtained from Mr. Tarrio or obtained through his representation of Mr. Tarrio before the January 6 Committee.

Rule 11-type colloquy" with each, the Court should "'personally and forthrightly advise [Mr. Biggs and Mr. Tarrio] of the potential dangers of representation by counsel with a conflict of interest.'" *United States v. Carlyle*, *supra*, 964 F. Supp. at 13, n.4 (quoting *United States v. Garcia*, 517 F.2d at 278). Importantly each "must be at liberty to question the [Court] as to the nature and consequences of his legal representation [, and m]ost significantly, the [C]ourt should seek to elicit a narrative response from [each] . . . that he has been advised of his right to effective representation, that he understands the details of [Mr. Hull's] possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with [his counsel] . . . or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.'" *Id.*

Rather than asking questions that require a "yes or no" answer, ideally each Mr. Biggs and Mr. Tarrio ought to explain in his own words how a conflict could arise at each of the stages outlined above, *i.e.*, plea negotiations, pre-trial litigation, trial, and sentencing, based on Mr. Hull's role and obligations as Mr. Biggs' counsel in the above-captioned matter, and his role representing Mr. Tarrio before the January 6 Committee as well as in various civil matters. *See United States v. Garcia*, *supra*, 517 F.2d at 278 ("Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego [the] significant constitutional protection" of conflict-free counsel). After Mr. Biggs and Mr. Tarrio each has conferred with counsel independent of Mr. Hull to advise him on the conflict issue and depending on how each answers the questions posed in the colloquy with the Court, the Court should be able to develop a record that can support a finding that any waiver of conflict-free counsel has been established by "'"'clear, unequivocal, and unambiguous language."'"'

*United States v. Carlyle*, *supra*, 964 F. Supp. at 13, n.4 (quoting *United States v. Garcia*, 517

F.2d at 278).

**Dated: September 2, 2022**                    Respectfully submitted,

                                                *s/Santha Sonenberg*
                                                _____
                                                Santha Sonenberg (D.C. Bar No. 376-188)
                                                (202) 494-7083
                                                santhasonenberg@yahoo.com

**EXHIBIT ONE**

| Case<br>(all based on 1/6/21 events at U.S. Capitol) | Attorney | Attorney |
|---|---|---|
| | **John Hull** | **Nayib Hassan and Sabino Jauregui** |
| **21-175 (TJK)**<br>• Seditious **Conspiracy**, in violation of 18 U.S. Code §2384 (Count One),<br>• **Conspiracy** to Obstruct and Official Proceeding, in violation of 18 U.S. Code §1512(k) (Count Two),<br>• Obstruction of an Official Proceeding and **Aiding and Abetting**, in violation of in violation of 18 U.S. Code §§1512 (c)(2), 2 (Count Three),<br>• Conspiracy to Prevent an Office from Discharging Any Duties, in violation of 18 U.S. Code §372 (Count Four),<br>• Civil Disorder and **Aiding and Abetting**, in violation of 18 U.S. Code §§231(a)(3), 2 (Count Five),<br>• Destruction of Government Property and **Aiding and Abetting**, in violation of 18 U.S. Code §§1361, 2 (Count Six),<br>• Destruction of Government Property and **Aiding and Abetting**, in violation of 18 U.S. Code §§1361, 2 (Count Seven),<br>• Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S. Code §§111(a)(1) (Count Eight)<br>• Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S. Code §§111(a)(1) (Count Nine). | Joseph Biggs<br>(member of Ministry of Self-Defense of the Proud Boys) | Enrique Tarrio<br>(leader of the Proud Boys) |
| January 6 Committee Deposition (2/4/22) | Enrique Tarrio (former client because testimony concluded) | |
| **21-CV-400 (APM)** (filed 2/16/21)<br>*Bennie Thompson et al v. Trump, et al.* (plaintiffs are members of Congress) | Enrique Tarrio<br>(Appearance 12/20/21) (Doc. No. 51)<br>Mtn to Withdraw (9/1/22) (Doc. No. 73) | |
| **21-CV-2265 (APM)** (filed 8/26/21)<br>*Smith et al v. Trump, et al.* (plaintiffs are U.S. Capitol Police officers) | Joseph Biggs<br>(Appearance 10/18/21) (Doc. No. 55)<br><br>Enrique Tarrio<br>(Appearance 11/1/21) (Doc. No. 68)<br>Mtn. to Withdraw (Doc. No. 164) | |
| **21-CV-3267 (APM)** (filed 12/14/21)<br>*D.C. v. Proud Boys International, et al.* | Joseph Biggs<br>(Appearance 12/17/21) (Doc. No. 13)<br><br>Enrique Tarrio<br>(Appearance 12/17/21) (Doc. No. 14)<br>Mtn. to Withdraw (9/1/22) (Doc. No. 151) | |