UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ETHAN NORDEAN, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Case No. 1:21-cr-175-TJK<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT NORDEAN'S OPPOSITION TO THE GOVERNMENT'S OMNIBUS MOTION *IN LIMINE***

Defendant Nordean, through his counsel, files this opposition to the government's Omnibus Motion *in Limine*. ECF No. 494.

**Argument**

**I.    The Court cannot rule on the relevance of undescribed conduct by unidentified individuals simply because the government calls them "co-conspirators" and "tools"**

The first section of the government's filing is styled a motion *in limine* to "establish relevance" of conduct by nondefendant "co-conspirators" and "'tools' of the conspiracy." Gov't Mot., p. 3. But it is not clear what the purpose of this motion is since the Court cannot sweepingly deem all conduct by nondefendants relevant to the case based on empty labels.

The first vague category of evidence involves nondefendant "co-conspirators." Gov't Mot., p. 4. The government says it will present evidence at trial that

> Evinces each co-conspirator's agreement to join in the unlawful objective. Such evidence includes, among other things, the co-conspirators' voluntary and willful (1) submission to the on-the-ground leadership of Nordean, Biggs, and Rehl by following them in formation to the Capitol, and (2) actions in concert with the defendants that furthered the defendants' shared purpose of forcibly overwhelming the Capitol's defenses and halting the certification process.

1

Gov't Mot., p. 4.

The government adds that "it does not matter whether all these members of the conspiracy understood and 'agreed on the details' of the scheme, so long as they agreed on the 'essential nature of the plan.'" Gov't Mot., p. 4.  The government gives an example:

> Hypothetically, if a particular member of the marching group lacked sufficient understanding of what was happening in Congress to make him part of *a* conspiracy to corruptly obstruct an official proceeding in violation of 18 U.S.C. § 1512, he could still be part of *a* conspiracy to use force to oppose the lawful transfer of Presidential power in violation of 18 U.S.C. § 2384 or *a* conspiracy to forcibly prevent law enforcement officers from discharging their duties in violation of 18 U.S.C. § 372. His conduct is relevant regardless.

Gov't Mot., p. 5 (emphasis added).

However, the government does not supply the Court with any evidence that, for each *charged* conspiracy, any particular nondefendant joined *the* conspiracy with the "specific intent to further the conspiracy's [unlawful] objective." *United States v. Childress*, 58 F.3d 693, 708 (D.C. Cir. 1995).  Notice the government's use of the indefinite article in the above example. The government does not show that any specific nondefendant joined *the* alleged agreement *among the Defendants* with the intent of furthering the alleged objectives to breach the Capitol Building to obstruct the joint session (§ 1512(c)(2) conspiracy), to use force to prevent the execution of federal law (§ 2384 conspiracy), or to use threats or force to prevent federal officers from performing their duties (§ 372 conspiracy).  Those are not "details" but the essential objects of the charged conspiracies.

The government provides a bulleted list of examples of nondefendant conduct that is "both evidence of the existence of the conspiracy and [] of the manner and means of the conspiracy." Gov't Mot., p. 6.  These do nothing but illustrate the risks involved in admitting any of the government's proposed nondefendant evidence, much less in admitting all of it sight

2

unseen. Rather than showing that each named nondefendant joined the alleged agreement with the Defendants with the specific intent of furthering the objectives of each charged conspiracy, the government simply cites the alleged criminal conduct of Proud Boys members on January 6. *Id.* Yet the government does not allege that the "conspiracy" in this case is synonymous with membership in the Proud Boys organization. The admission of such nondefendant conduct would only exacerbate the unfair prejudice and jury confusion stemming from the government's other proposed categories of general Proud Boys group evidence. ECF No. 489, pp. 6-12 (Nordean moving to exclude Proud Boys exhibits under Rules 401, 403, 404 and the First Amendment).

The cited actions of named nondefendants do not establish that they are co-conspirators of the Defendants for another reason—those actions are indistinguishable from the conduct of hundreds or thousands of other protesters on January 6. "Milkshake . . . led a crowd in shoving a line of officers to force their way up a set of steps leading to the Capitol"; Edward George "engaged in a shoving match with an officer"; Steven Miles "shoved and threw punches at officers"; Christopher Worrell sprayed chemical irritant at the Capitol. Gov't Mot., p. 6. Of course, as the Court knows, these actions were replicated hundreds of times over by hundreds of other nondefendants. The government does not assert that those other nondefendants are "co-conspirators" here. Slapping the group label "Proud Boy" on the nondefendant does not somehow change the conspiracy analysis. The "crime of conspiracy focuses on agreements, not groups." *United States v. Griffin*, 493 F.3d 856, 862 (7th Cir. 2007) (internal quotation marks omitted).

Even more inappropriate is the government's attempt to show the jury countless actions by nondefendants on January 6 who the government concedes are not "co-conspirators" even

3

under its relaxed standards. Gov't Mot., pp. 6-7. Although the government has no evidence that these protesters joined the charged conspiracies, it says their actions are somehow admissible because they are "tools" of the conspiracy. The government cites no rule or case law holding that the criminal actions of nondefendant "tools" of a conspiracy—conceded nonmembers—can be admitted against defendants in their criminal case. There is none. The government's novel "tools" concept has no discernable limiting principle. According to the government, it can show the jury as many scenes of violence by nondefendants as it wishes, as everyone in the crowd of thousands of protesters was merely a "tool" of the Defendants. It does not matter, according to the government, if the Defendants did not communicate with, direct, see, or encounter the "tools." Although they were not members of the charged conspiracies, the "tools'" actions demonstrate the criminal agreements' existence, somehow, says the government. Rules 401, 403, and 404 proscribe admission of nondefendant conduct on this basis. A mistrial would result.

II.     **The Constitution and sections of the United States Code cannot be "admitted into evidence"; the Congressional Record is inadmissible hearsay**

The government moves the Court to "admit into evidence" sections of the Constitution and U.S. Code. Gov't Mot., p. 14. That is nonsense.

Article II, Section 1 of the Constitution and the Twelfth Amendment are not "evidence." The Electoral Count Act of 1887 is not evidence. They are laws. Evidence is "something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." *Evidence*, Black's Law Dictionary (11th ed. 2019). Witnesses do not educate the jury on laws; judges do. *E.g.*, *United States v. Smith*, 573 F.3d 639, 655 (8th Cir. 2009) ("It is the judge and not a witness that is to instruct the fact finder on the applicable principles of law.") (internal quotation marks and citation omitted); *Marx & Co., Inc. v. Diners'*

4

*Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. . ."); *United States v. Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 50 (D.D.C. 2009) (same).

The government's motion to admit into evidence sections of the Congressional record is similarly nonsensical. Gov't Mot., p. 14. "Courts have consistently excluded congressional reports [from evidence]" under the hearsay rules. *Richmond Med. Ctr. For Women v. Hicks*, 301 F. Supp. 2d 499, 512 (E.D. Va. 2004); *Anderson v. City of New York,* 657 F. Supp. 1571, 1579 (S.D.N.Y. 1987) (same); *Baker v. Firestone Tire & Rubber Co.,* 793 F.2d 1196, 1199 (11th Cir. 1986) (same); *Bright v. Firestone Tire & Rubber Co.,* 756 F.2d 19 (6th Cir. 1984) (per curiam).

### III. The government's attempt to eliminate cross-examination of Secret Service witnesses must be rejected

The government moves the Court to curtail the Defendants' Sixth Amendment right to cross-examine its U.S. Secret Service (USSS) witnesses. Gov't Mot., pp. 15-19. The motion has already been rejected by this Court and should be again here.

The government represents that its USSS witnesses will testify that (1) USSS agents protected Vice President Mike Pence and his family members at the Capitol on January 6 and (2) will "further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members." Gov't Mot., p. 18. Although the government cites two specific examples of sensitive subjects on which cross-examination should be limited—the location where the vice president was taken during the riot and "details about the nature of Secret Service protective details"—it moves to prohibit examination of the USSS witnesses on any subject other than the two listed above. Gov't Mot., p. 19.

Granting the government's motion would be erroneous for one simple reason. The government will argue at trial that Nordean and others "corruptly" obstructed an official

5

proceeding on January 6 by obstructing the joint session through "unlawful means." At least one of those "unlawful means," the government will contend, was entry into an area restricted for the protection of a USSS protectee without authorization. 18 U.S.C. § 1752(a)(1). Accordingly, Nordean must be permitted to cross-examine the USSS witnesses as to whether the area he entered was restricted—as a matter of fact, not law—under § 1752. Such cross-examination does not concern "details about the nature of Secret Service protective details." Gov't Mot., p. 19. It simply concerns whether a § 1752 perimeter existed on January 6—as a matter of fact, not law—and thus whether Nordean's unforced entry into the Capitol Building constituted an "unlawful means."

This Court has already rejected the government's motion to eliminate cross-examination of USSS witnesses. *United States v. Griffin*, 21-cr-92, ECF No. 92 (D.D.C. 2021). As the Court explained,

> The Sixth Amendment guarantees "the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (cleaned up). The core of that right is cross-examination, "the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316. Here, the Third Amended Information alleges Griffin "enter[ed] and remain[ed] in a restricted building and grounds . . . where the Vice President was." TAC 1, ECF No. 85. Whether the Vice President was present on the Capitol grounds is thus an essential question in Griffin's prosecution. By extension, his Confrontation Clause interest in cross-examining the Government's witness on that point is at its zenith. *See United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993) ("The more important the witness to the government's case, the more important the defendant's right . . . to cross-examine the witness.").

> In *Foster*, a police officer testified at a narcotics trial on his observations from a secret lookout. See 986 F.2d at 542. The defendant sought to cross examine the officer on the location of the lookout, but the trial court prohibited that line of questioning as barred by an "observation post privilege." *Id.* The D.C. Circuit disagreed. In its view, the defendant had a Confrontation Clause right to examine the officer because his testimony was essential to the Government's case. *Id.* at 543 ("The defense understandably wanted to cross-examine [the officer] about his estimate of the distance between him and [the defendant] and the angle of his view and his testimony that nothing blocked his line of sight. Without knowing the location of the observation post, the defense could not effectively probe the officer's memory or veracity about these subjects."). So too here—to mount a meaningful defense Griffin must be allowed to test the veracity of the

6

> Government's contention that Vice President Pence was on the Capitol grounds during the relevant period. The Government's suggestion of an ex-parte submission is therefore a non-starter.

ECF No. 92, p. 5.

To be clear, Nordean may not need to elicit testimony on the "precise location" of USSS protectees at the Capitol on January 6. In any event, that information was made public in the aforementioned *Griffin* trial. Instead, Nordean must be allowed to question the USSS witnesses as to whether a § 1752 perimeter factually existed on January 6. While that does not involve "sensitive protocols," it does entail questioning as to the general, public procedures USSS follows in establishing § 1752 perimeters. Far from being sensitive, this was the subject of extensive cross-examination in the *Griffin* trial, where a USSS witness acknowledged that the agency had little if any communication with the U.S. Capitol Police about a § 1752 perimeter on January 6. Accordingly, the government's motion to restrict Nordean's Sixth Amendment right must be denied.

**IV.   The Court should not grant the government's motion to limit all cross-examination of Confidential Human Sources**

The government moves to limit "cross-examination" of Confidential Human Sources (CHS). Gov't Mot., pp. 20-21. The motion must be rejected for several reasons.

First, the government has not produced any information to the defense about a CHS that it intends to call as a witness at trial. The government's deadline for its witness list was September 30. Scheduling Order, ECF No. 426, p. 2. The defense's deadline for pretrial motions *in limine* concerning those witnesses was October 14. *Id.* If the government is suggesting that it intends to call as witnesses CHSes who have not been identified to the defense and whose discovery materials have not been produced, the issue for the Court is not whether to limit cross-examination. The issue is whether the government should be permitted to call such

7

witnesses in the first place. It should not be permitted. The government's gaming of the scheduling order in this way would severely prejudice the Defendants' rights to exclude certain categories of testimony under the Federal Rules of Evidence through motion *in limine* procedure, which is the favored course for determining the admissibility of evidence before trial. *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013).

Second, even if the potential CHS witnesses are not excluded, it would not be appropriate to litigate a motion to limit cross-examination of those witnesses *before* the Defendants are made aware of their existence and have the relevant discovery materials. If such CHS witnesses exist, Defendants would be shooting in the dark in responding to the government's limitation arguments. For example, the government asks the Court to prohibit the defense "from asking any questions about the witnesses' participation in past or pending investigations or undercover operations." Gov't Mot., p. 20. But if the potential CHS witness's discovery file included records showing, say, that he had systematically lied to his agent handlers in the past, the Court would not be able to conduct the appropriate admissibility balancing test *before* receiving that information from the defense.

Accordingly, at the least the Court should defer ruling on the government's motion until such time as the government produces any relevant CHS material to the Defendants.

**V.     The Court should not issue an advisory opinion on application of the rule of completeness without seeing the statements at issue**

The government moves the Court to preclude the Defendants from seeking application of the rule of completeness—in all instances at trial and without regard to the circumstances. Gov't Mot., p. 22. The motion should be rejected and, perhaps more to the point, the government's misguided arguments do not bode well for a smoothly functioning trial.

Where "a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The government has signaled that it intends to cherry pick snippets from Defendants' "chat groups, [and] social media accounts" that it believes further its case and then attempt to block the Defendants from introducing into evidence "other writing[s] or recorded statement[s]" on the very same subject matter that "in fairness ought to be considered at the same time." Fed. R. Evid. 106; Gov't Mot., p. 22. Here are some hypothetical examples of what the government proposes for trial:

- The government moves into evidence a chat, from December 20, 2020, where Telegram user X writes, "The Dems don't know what's coming! They better take care!" The government would then attempt to prohibit the defense from introducing the following chat from Telegram user X, sent on December 21, "Guys, we don't have a plan for January 6, are we even going to D.C.?"

- The government moves into evidence a chat, from January 2, 2021, where Telegram user X writes, "We need some tough bros.  All wearing TACTICAL GEAR." The government would then attempt to prohibit the defense from introducing the following chat from Telegram user X on January 4, "Tough bros will be there to help us avoid getting stabbed by Antifa."

The parties should be clear about this.  The procedure suggested by the government is not an application of the "rule of completeness."  It is an attempt to frame a person.  Should the Court follow the government's suggested course in the examples cited above, resulting convictions would be vacated.  *E.g.*, *United States v. Washington*, 952 F.2d 1402, 1404 (D.C.

9

Cir. 1991) (violation of the rule of completeness where excluded statement contains "information substantially exculpatory of the defendant") (internal quotation marks omitted); *United States v. Sutton*, 801 F.2d 1346, 1367 (D.C. Cir. 1986) (Rule 106 "generally permits the contemporaneous admission of portions of writings or recorded statements when the already introduced portions might be misleading unless properly placed in context"); *United States v. Range*, 94 F.3d 614, 620-21 (11th Cir. 1996) ("Under the Rule 106 fairness standard, the exculpatory portion of the defendant's statement should have been admitted if it was relevant to an issue in the case and necessary to clarify or explain the portion received.").

The government suggests that even if the hypothetical defense statements in the above examples were admissible under Rule 106, they would still constitute inadmissible hearsay. Gov't Mot., p. 22. That is wrong. "[R]egardless of whether [Rule 106] evidence is inadmissible hearsay or not, [a defendant] can introduce it under the rule of completeness." *United States v. Coughlin*, 821 F. Supp. 2d 8, 31 (D.D.C. 2011); *Sutton*, 801 F.2d at 1368 (permitting "admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously"). Moreover, even if this Court were to decline to follow *Sutton*—D.C. Circuit law—the hypothetical defense statements in the above examples would either constitute non-hearsay or fall under the hearsay exception for the declarant's then-existing state of mind. Fed. R. Evid. 803(3).

**VI. The Defendants cannot be preemptively precluded from raising all First Amendment defenses at trial regardless of the government's case-in-chief**

The government moves the Court to bar the Defendants from "arguing to the jury that their conduct was protected by the First Amendment." Gov't Mot., p. 26. That motion cannot be granted because the government does not explain to which "conduct" it refers.

10

The government states, "None of the offenses with which the defendants are charged punish speech, as crimes such as threats or solicitation do." Gov't Mot., p. 26. They merely punish "corrupt obstruction, influence or impediment of" Congress and "actions taken during [a] riot." *Id.* The government points to this passage in the Court's order denying Nordean's first motion to dismiss the indictment, omitting the italicized portion (Gov't Mot., p. 27):

> *[Defendants] are charged with conduct involving acts of trespass, depredation of property, and interference with law enforcement, all intended to obstruct Congress's performance of its constitutional duties*. No matter Defendants' political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment.

ECF No. 263, p. 29 (italics added).

The reason why the government omitted the italicized portion of the Court's order is not hard to discover. The charges in this case do not merely encompass the Defendants' alleged "trespass, depredation of property and interference with law enforcement. . ." The novel obstruction-of-an-official-proceeding offense the government has created for January 6 cases has no clearly defined *actus reus*. That is because when the offense is decoupled from investigations and evidence—the core of obstruction of justice crimes for over a century before January 6—it could criminalize nonviolent protest outside the Capitol Building. A defendant merely has to "influence" any formal proceeding occurring in Congress "corruptly." And "corruptly," says the government, merely means acting with a "wrongful" or "evil" purpose, deracinating those terms from the administration of justice context where they have specific meanings tied to investigations and evidence—which context the government's new crime has removed from the equation.

The Capitol Grounds and steps are a public forum and nonviolent protest in support of a political cause is conduct protected by the First Amendment. *Jeannette Rankin Brigade v. Chief*

11

*of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) (three-judge panel) *sum. aff'd,* 409 U.S. 972 (1972); *Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002) (East Front steps of Capitol a public forum). Accordingly, *to the extent* the government argues at trial that the *nonviolent* conduct of the Defendants *outside* the Capitol Building constitutes an obstruction-of-justice *actus reus*, the Defendants are entitled to raise a First Amendment defense. Blocking them would constitute reversible error. To be clear, no Defendant argues that "trespass, depredation of property and interference with law enforcement" are protected by the First Amendment. ECF No. 263, p. 29.

  The problem is even more acute with respect to the charge alleging conspiracy to obstruct an official proceeding. To the extent the government argues to the jury that the "criminal agreement" consisted of Defendants' alleged plan to protest *outside the Capitol Building*, Defendants are entitled to raise a First Amendment defense for the same reason. Because nonviolent protest outside the Capitol is protected activity, agreeing to engage in that activity is no less protected. *Jeannette Rankin Brigade*, 342 F. Supp. at 575; *Lederman*, 291 F.3d at 39.

  None of that analysis is changed in virtue of the fact that other protesters were engaged in violence in the vicinity of the Defendants' nonviolent protest outside the Capitol. Assemblies mixed with violence do not lose constitutional protection simply because some portion of the assembled engaged in violence. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889 (1982). During NAACP's Mississippi boycott on white merchants, some picketers engaged in violence. But only those who engaged in violence could be held liable for resulting economic damages. During an outbreak of violence, NAACP member Charles Evers made "threats of vilification" to assembled picketers and intimated that "necks would be broken." 458 U.S. at 927. Because Evers' speech did not constitute incitement under *Brandenburg v. Ohio*, 395 U.S. 444 (1969),

holding him liable for others' violence was inconsistent with his boycotting/picketing rights. 458 U.S. at 929. By the same logic, the Defendants' *nonviolent* protest *outside* the Capitol Building cannot be regarded as the *actus reus* of a § 1512(c)(2) offense simply because others (the government's "tools") in the vicinity were engaged in violence.

"A criminal defendant's constitutional rights to counsel and to a jury trial encompass a right to have his theory of the case argued vigorously to the jury." *United States v. De Loach*, 504 F.2d 185, 189 (D.C. Cir. 1974). Thus, the Court cannot categorically hold that Defendants "are not entitled to a First Amendment defense as a matter of law." Gov't Mot., p. 27. To the extent the government argues to the jury that nonviolent protest outside the Capitol constitutes the *actus reus* of a charged offense, the Defendants are, to the same extent, entitled to raise and will raise a First Amendment defense.

[redacted]

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████

    ██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

[page content fully redacted]

15

Dated: October 26, 2022                    Respectfully submitted,

*/s/ David B. Smith*
David B. Smith (D.C. Bar No. 403068)
108 N. Alfred St.
Alexandria, VA 22314
Phone:(703)548-8911
Fax:(703)548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com

*Attorneys for Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 26th day of October, 2022, I filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

>Connor Mulroe
>Assistant United States Attorney
>555 4th Street, N.W., Room 4408
>Washington, D.C. 20530

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

>/s/ David B. Smith
>David B. Smith, VA Bar No. 25930
>David B. Smith, PLLC
>108 North Alfred Street, 1st FL
>Alexandria, Virginia 22314
>(703) 548-8911 / Fax (703) 548-8935
>dbs@davidbsmithpllc.com