**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-175 (TJK)** |
| | : | |
| **ETHAN NORDEAN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S REPLY IN SUPPORT OF THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT STATEMENTS

The United States respectfully submits this reply in support of its motion *in limine* to admit statements (the "Statements Motion"), ECF 475. Defendants Nordean (at ECF 499) and Rehl (at ECF 503) have filed Responses in Opposition. For the reasons below, the Court should reject the defendants' arguments and grant the relief requested in the Statements Motion.

### PROCEDURAL HISTORY

On July 6, 2022, the Court issued a scheduling order that established dates for the filing of certain motions and for the production of exhibit lists and exhibits from the government to the defense. ECF 426.

On August 19, in accordance with the scheduling order, the government produced a preliminary exhibit list and certain "exemplar" exhibits to the defense. The preliminary exhibit list included a section captioned "Telegram Message and Other Communications" that identified the message threads that the government intended to draw from at trial. The government also provided, as an exemplar, a set of 59 "excerpts" drawn from one of the Telegram threads; these excerpts were provided as an example of how the government planned to introduce and publish certain relevant messages at trial. Similarly, the preliminary exhibit list contained a section captioned "Social Media and Other Communications" that included voluminous Parler records; the

government provided an exemplar of Parler "excerpts" showing how it would introduce relevant Parler posts at trial.

On September 30, again in accordance with the scheduling order, the government provided defense counsel with an updated preliminary exhibit list. This time, rather than providing just "exemplars," the government provided "copies of the listed preliminary exhibits." ECF 426 at 2. With respect to Telegram and similar messaging threads, the government provided sets of excerpts from eight separate Telegram threads, including many of the chat groups central to the case (such as the various "MOSD" groups). With respect to social media posts, the government provided sets of excerpted Parler activity for three out of the five defendants. The government's efforts to identify and process the remaining excerpts are still ongoing but will be completed by the deadline of November 11 set by the scheduling order. *Id*.

On October 7, one week after providing the preliminary exhibits to defense, the government filed the Statements Motion. This pleading, which took the form of a trial brief, presented the government's theories of admissibility for various categories of statements that the government seeks to introduce at trial. As explained, the statements the government will seek to introduce in its case-in-chief are often admissible under multiple, non-exclusive theories of admissibility, including that the statements are (1) not hearsay because they are statements by a party opponent (including co-conspirator statements), Fed. R. Evid. 801(d)(2)); (2) not hearsay because they are either not assertions or not offered for the truth of the matter asserted or both, Fed R. Evid. 801(c)(2); (3) exceptions to the rule against hearsay because they are present sense impressions, excited utterances, or statements of the declarant's then existing state of mind (such as motive, intent, or plan), Fed. R. Evid. 803, or statements against interest, Fed. R. Evid. 804(b)(3). The government proceeded to outline the relevant law that governs each theory of

admissibility and provided examples of statements for each category. All told, the government presented roughly eight examples of co-conspirator statements, ranging from December 29 to January 6; over thirty examples of statements that are not hearsay because they are not being offered for the truth of the matter asserted—or are not even assertions at all; one example of a and a general category (*i.e.*, officers' radio calls) that are admissible under Rule 803(1) (Present Sense Impressions); two examples of statements that are admissible under Rule 803(2) (Excited Utterances); four examples of statements that are admissible under Rule 803(3) (Then Existing Mental, Emotional, or Physical Condition); and three examples of statements that are admissible under Rule 804(b)(3) (Statements Against Interest). All of these statements are admissible, although — as discussed further below — the Court need not rule in advance of trial on the admissibility of any specific statement.

Defendants Nordean and Rehl have filed responses in opposition to the government's Statements Motion. ECF 499, ECF 503. As explained below, their arguments should be rejected.

## **ARGUMENT**

### A. **The Co-Conspirator Statements are Admissible**

Much of Nordean's brief reads like a closing argument meant to sow confusion by attacking a straw-man prosecution case. In arguing against the application of the co-conspirator statement rule, Nordean misstates the facts, the charges, the Rule, and the basics of conspiracy law.

The government has set forth its evidence of the conspiracy in the Third Superseding Indictment and in connection with numerous detention memoranda and hearings over the course of more than one-and-a-half years. *See, e.g.*, ECF 71 (oral ruling on Nordean and Biggs detention); ECF 147 (oral ruling on Rehl detention); ECF 370 (opinion on Tarrio detention). In addition to its own submissions to the Court, several co-conspirators have pleaded guilty to conspiring with the

defendants to use force to obstruct the electoral college certification. *See* ECF 335, 336 (Donohoe Plea Agreement and Statement of Offense); *United States v. Bertino*, 1:22-cr-329 (TJK), ECF 4, 5 (Bertino Plea Agreement and Statement of Offense). Despite all that, Nordean now seeks a preliminary "mini-trial" for the stated purpose of evaluating co-conspirator statements; he says that to proceed otherwise is to invite a mistrial. Nordean asserts that a preliminary mini-trial is necessary to avoid the risk of a mistrial. For the reasons outlined herein, the government's evidence of a conspiracy exceeds the preponderance of the evidence standard necessary for admissibility. *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009) (the government must demonstrate, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statements were made in furtherance of the conspiracy). Defendant's opposition is nothing more than a tactical attempt to preview the government's evidence.

> **1.  The facts show the defendants agreed to use force to overturn the election.**

At this stage in the proceedings, the Court has received evidence of the conspiracy in the course of multiple contested detention hearings. This evidence has been sufficiently compelling to justify the pre-trial detention under the "clear and convincing" standard of all defendants, which decisions have withstood the defendant's various appeals and motions for reconsideration. The Court has also received sworn admissions from multiple co-conspirators, in the form of guilty pleas and the accompanying Statements of Offense,[1] that they conspired with these defendants to

---

[1] In deciding "any preliminary question about whether . . . evidence is admissible," the court "is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(1). *See also Bourjaily v. United States*, 483 U.S. 171, 177 (1987) (applying Rule 104(1) to the evaluation of co-conspirator statements).

forcibly oppose the certification. *See* ECF 336 (Donohoe Statement of Offense); *United States v. Bertino*, 1:22-cr-329 (TJK), ECF 5 (Bertino Statement of Offense).

The government will not rehash all those facts here. It suffices to restate that, within hours of the former President's December 19 announcement of a "big protest" that "will be wild," Tarrio and Biggs discussed the need to "get radical and get real men." ECF 475 at 4. They and their co-conspirators subsequently formed MOSD, a group whose "leadership agreed that the election had been stolen, that the purpose of traveling to Washington, D.C., on January 6, 2021, was to stop the certification of the Electoral College Vote, and that the MOSD leaders were willing to do whatever it would take, including using force against police officers and others, to achieve that objective." *Bertino*, 1:22-cr-329, ECF 5 at 4.

Even setting aside the conspirators' discussions in furtherance of the objective, their actions on January 6 establish to a "preponderance" standard the existence of the conspiracy that pre-dated January 6. As the D.C. Circuit has explained, "[i]t is well established that an agreement sufficient to support a conspiracy conviction can be inferred from circumstantial evidence. *United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996) (citing *United States v. Dean*, 55 F.3d 640, 646–47 (D.C. Cir. 1995)). When using circumstantial evidence to establish a conspiracy, "the government need not negate all possible inferences of innocence that may flow therefrom." *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985) (explaining that despite an "almost entirely circumstantial" case with the "majority of [defendant's] actions" being "susceptible to logical and innocent explanations," the district court had properly denied defendant's motion for acquittal on the conspiracy count).

Nordean characterizes such reasoning as fallacious "*post hoc ergo propter hoc*." ECF 499 at 6. But factfinders routinely draw inferences about communications based on the conduct that

follows them. If two suspects agreed to "go to the gas station to pick up the dog food," and later went to the gas station and retrieved a package of heroin, there would be little question that their conduct shed light on what was meant by "dog food." The same is true of the "objective" for the Washington, D.C. trip that the defendants discussed in advance of their attack on the Capitol. (And this is to say nothing of the post-event statements celebrating the success of the mission, *see* ECF 475 at 25, to which Nordean offers no response.)

### 2. The indictment does not charge the defendants with a "plan to enter the Capitol Building."

The defendants are charged in three conspiracy counts. None of them has as an element "a plan to enter the Capitol Building and to commit crimes therein." Yet Nordean conceives the government's burden of proof to require a specific and detailed plan to do exactly that. ECF 499 at 3; *see also id.* at 2, 5, 7. Nordean might understandably prefer to defend a case that required such a specific showing, but that is not what he is charged with. Instead, as the government has summarized, the defendants are charged with joining an agreement with the "core objective . . . to forcibly oppose the lawful transfer of Presidential power." ECF 494 at 3.

### 3. Conspiracy law does not require agreement as to "details."

Repeatedly in his brief, Nordean asserts the existence of a "chronological inconsistency" based on the fact that certain specific details of the conspiracy remained fluid in the weeks leading up to the attack on the Capitol. He says this proves that no conspiracy could have existed prior to January 5, when the conspirators discussed a "plan" for the next day. ECF 499 at 8. Nordean here is inflating the requirements of conspiracy law just like he inflated the nature of the charges above.

A conspiracy is an agreement on a "common unlawful objective," not a commitment to a detailed plan. *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988). Accordingly, "[i]n order to prove that an agreement existed, the government need only show that the conspirators

agreed on 'the essential nature of the plan,' not that they 'agreed on the details of their criminal scheme.'" *United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996) (quoting *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Cir. 1985)). As the Supreme Court explained decades ago, "the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan." *Blumenthal v. United States*, 332 U.S. 539, 557 (1947) (emphasis added). Courts of Appeals have therefore affirmed, for example, a conspiracy whose "essential nature" was the "killing of Americans" without requiring any proof that a defendant "intended to kill a specific person or plan a specific plot." *United States v. Ghayth*, 709 F. App'x 718, 721 (2d Cir. 2017).

Nordean ignores this settled principle of conspiracy liability. His argument, if applied to a more familiar type of offense, would hold that no drug-trafficking conspiracy can exist until the participants have nailed down the precise quantities and prices, as well as the time and place for the exchange. This is not the law.

### 4. 801(d)(2)(E) does not require establishing *all* — or even *any* — of the charged conspiracies.

Nordean correctly observes that the defendants are charged with "[m]ultiple conspiracy counts that are charged under distinct criminal statutes." ECF 499 at 13. But it is a *non sequitur* for him to argue that this charging posture means that the government is required to prove "the existence of *each of* the three charged conspiracies and that the out-of-court statement was made during and intended to further *that specific* conspiracy." *Id.* (first emphasis added). As with Nordean's claim as to the requirement of a "plan" to establish a conspiracy, Nordean's contention further reveals his fundamental misunderstanding of conspiracy law.

A single conspiracy can violate multiple criminal laws. *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Cir. 1985). Here, the defendants conspired to use force to stop the peaceful

7

transfer of power in Washington, D.C. on January 6. In so doing, their criminal agreement violated three separate statutes—18 U.S.C. §§ 2384 (Count One), 1512(k) (Count Two), and 18 U.S.C. § 372 (Count Four). As pled in the Third Superseding Indictment, such violations arise from a single set of facts—and a single conspiracy entered into by the defendants.

Nothing in the law of this circuit, or any other, supports Nordean's assertion that co-conspirator statements must be shown to be in furtherance of every charged object offense before they can be admitted. As courts have found, Rule 801(d)(2)(E) does not even require that the conspiracy be charged in the case. *See United States v. Richardson*, 477 F.2d 1280, 1283 (8th Cir. 1973) (collecting cases for rule that co-conspirator statements are admissible "even in the absence of a conspiracy charge so long as there is independent evidence of concert of action"). The D.C. Circuit has gone even further, holding that Rule 801(d)(2)(E) does not even require an agreement to *any criminal objective*, but can also apply upon the showing of a "lawful joint enterprise." *United States v. Gewin*, 471 F.3d 197, 202 (D.C. Cir. 2006); *see also id.* (explaining that "Rule 801(d)(2)(E) is based on principles of agency and partnership law," and that "the use of the term 'conspiracy' does not limit the doctrine to unlawful combinations."). To be clear, the government is not relying on *Gewin*'s broad holding here, because the conspirators' agreement in this case was clearly criminal in nature. But *Gewin* highlights the absurdity of Nordean's argument that, by charging three conspiracy offenses, the government commits itself to satisfying 801(d)(2)(E) three times over before a co-conspirator statement can be admitted.

The District of Connecticut case cited by Nordean says nothing different. ECF 499 at 13 (citing *United States v. Best*, 2022 U.S. Dist. LEXIS 158847, *43 (D. Conn. Sept. 2, 2022). The *Best* court was discussing the unremarkable proposition that, when the government has charged two conspiracies that involve only some overlapping defendants, co-conspirator statements in

furtherance of one conspiracy cannot be used against those defendants who had only been charged in the other conspiracy charged. *Id.* ("Mr. Cox is only charged with the conspiracy alleged in Count One and therefore, any statements made by Mr. Jefferies, Mr. Frank Best, and Mr. Turowski in furtherance of the Count Two conspiracy necessarily cannot and should not be admitted against Mr. Cox."). Even against this more complicated set of facts, it is interesting to note that the *Best* court determined that co-conspirator statements would be conditionally admitted during trial and subject to the government's proving each defendant's "participation in the conspiracy . . . by a fair preponderance of the evidence." *Id.* The *Best* court went on to explain that courts in the Second Circuit "almost universally reject" a pre-trial hearing on co-conspirator statements in order to avoid a "mini-trial." *Id.* The court noted that a limiting instruction would be employed to limit the jury's use of any co-conspirator statements not applicable to all defendants. *Id.* Nordean's worries about a potential mistrial are overblown.[2]

## B.  No Pre-Trial Hearing on Co-Conspirator Statements is Warranted

Nordean twice claims that the Court of Appeals has endorsed "a pretrial hearing" on 801(d)(2)(E) as the "better practice." ECF 499 at 1, 15. That is incorrect. The case Nordean cites, *United States v. Jackson*, remarked that the "better practice" is for courts to decide the issue "before the hearsay evidence is admitted"; it went on to describe the "myriad of difficulties" that often made that order of proof "impractical." 627 F.2d 1198, 1218 (D.C. Cir. 1980). But nowhere did the court recommend a separate preliminary proceeding; it was instead concerned with the

---

[2]      The risk of mistrial is another point on which Nordean mischaracterizes *Jackson*, 677 F.2d at 1218. Nordean asserts, at ECF No. 499 p.9, that where "a court admits out-of-court statements against a non-declarant codefendant that do not satisfy the co-conspirator statement rule, it is grounds for a mistrial." *Jackson* in fact states that a mistrial is only appropriate where a Court has admitted hearsay evidence, the government has failed to establish the necessary connection, the Court has struck the testimony and directed the jury to disregard it, and the instruction has been found insufficient to cure the prejudice. *Jackson*, 677 F.2d at 1219-20.

procedural order within the trial itself. *See id.* at 232 (discussing "practical impediments that arise *during trial*" (emphasis added)). When the court addressed "mini-trials" of the type Nordean requests, it recognized that such proceedings would "go beyond" the recommended practice, stating that courts "have discretion to proceed" in this manner, "but they have no obligation to do so." *Id.* at 1218-19.

This correct reading of *Jackson* explains why Nordean can cite only a single case from this district where a court has granted a request like his. Even there, in *United States v. Bazezew*, the district court only ordered the government to "produce" the co-conspirator statements; it reserved the question of whether a "lengthy pretrial hearing" would be necessary. 783 F. Supp. 2d 160, 166 (D.D.C. 2011). But in even contemplating a pretrial 801(d)(2)(E) hearing, *Bazezew* is an outlier, because "in this district it is common practice" for courts to reject such "disfavored 'mini-trial[s].'" *United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011) (citing *United States v. Cooper*, 91 F.Supp.2d 60, 78 (D.D.C. 2000); *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009); *United States v. Hsin–Yung*, 97 F.Supp.2d 24, 37 (D.D.C. 2000)); *see also, generally*, ECF 475 (Statements Motion) at 11-12. This prevailing practice is consistent with the D.C. Circuit's explanation that it was *"without authority to order . . . discovery"* of co-conspirator statements.[3]

In any event, if Nordean wants the result from *Bazezew*, he already has it, because the government is already producing to the defense a full set of exhibits according to a court-imposed deadline. These exhibits will constitute the vast majority of co-conspirator statements to be offered at trial, because the conspirators did most of their communicating by means of Telegram and

---

[3] Nordean points out that *Bazezew* "postdates *Tarantino*." ECF 499 at 15. That chronology does not mean the district court in *Bazezew* had the authority to overrule *Treadwell*'s categorical statement that courts are "without authority" to order the government to turn over co-conspirator statements before trial.

similar digital channels. Testifying cooperators will likely describe some additional statements by co-conspirators, but the government expects that any such statements will be similar in kind to the memorialized statements in the exhibits, and admissible on the same bases. Nordean is therefore fully able to make arguments that any particular statement fails to satisfy the requirements of Rule 801(d)(2)(E), and the Court fully able to consider them. But in his brief he declines to do so, instead concentrating his efforts on the threshold question of whether a conspiracy existed. As argued above, the Court is already equipped to resolve that question in the government's favor.

## C. The Non-Hearsay Statements are Admissible.

Statements that are not offered for the truth of the matter asserted are non-hearsay. *Anderson v. United States*, 417 U.S. 211, 219 (1974). As the government argued in the Statements Motion, many of the statements to be offered at trial fall into this category. ECF 475 at 19-28. Unable to characterize these statements as hearsay, the defendants challenge their admissibility on other grounds. The Court should reject all these arguments.

### 1. The government has provided sufficient notice of the types of statements to be offered.

Nordean argues that "the government's descriptions of the statements at issue are so vague as to defy fulsome analysis in this pretrial motion stage." ECF 499 at 17. Rehl similarly complains that "no date or context is provided" for his expressed hope that "the firing squads are for the traitors that are trying to steal the election from the American people." ECF 503 at 1.

Both defendants are wrong — Rehl especially so because the Statements Motion does, in fact, provide the date of the "firing squads" statement and explains that it was made publicly on Parler. ECF 475 at 21.

As the government has explained, the purpose of the Statements Motion was to articulate the "theories of admissibility for certain *categories* of statements" and thereby "provide a

framework for resolving any challenges the defense may make" to particular statements. Contrary to Nordean's and Rehl's assertions, they have ample basis to make such challenges. The Statements Motion included dozens of statements offered as illustrative examples, and the government's disclosure of preliminary exhibits on September 30 included hundreds of other excerpted Telegram messages and Parler posts that the government will offer at trial. The remaining selections will be disclosed according to schedule on November 11. And to Rehl's point, the exhibits in his possession include the full "context" of each statement, including surrounding messages and metadata such as dates and times.

In any event, the "context" argument is one for the jury. Rehl here argues that his statement about "traitors" deserving "firing squads" is unrelated to the conspiracy because it was made in response to a news article about the "range of punishment available upon conviction after trial." ECF 503 at 2. It is not clear to the government how that "context" negates the probative value of Rehl's belief that his political adversaries deserve harsh punishment for their attempt to "steal the election." *Id.* at 1. What *is* clear is that Rehl does not claim the statement is being offered as hearsay.

Finally, Rehl argues that the statements are all "protected by the First Amendment" and therefore are inadmissible. ECF 503 at *2-4. For the reasons set forth in its response to Rehl's Motion in Limine to Preclude Government's Use Against Him of Statements Protected by the First Amendment, this argument is unsupported by law. *See* ECF 510. Defendant Rehl attacked the seat of democracy in an effort reverse the outcome of an election. Now held to account for this crime, he claims that all statements about motive for doing so are protected political speech. Such an argument finds no support in the law. *See id.*

## 2.  Circumstantial evidence of motive/intent is non-hearsay.

In the Statements Motion the government argued for the admissibility of non-hearsay statements offered to show a relevant state of mind of the declarant. ECF 475 at 20-22. It explained the difference between statements that *show* (non-hearsay) and statements that *tell* (hearsay excepted under Rule 803(3)). *Id.* at 8 n.2. Nordean fails to grasp the distinction, wrongly characterizing the separate treatment of these theories as a "conce[ssion]" on the government's part that one of them must be faulty. ECF 499 at 18; *see also id.* at 25. Courts including the D.C. Circuit, however, have appreciated and explained the difference. In *United States v. Brown*, the Court contrasted "X is not good" (offered to show circumstantially the declarant's attitude toward X, without regard to X's actual goodness) with "I hate X" (offered for the truth of the declarant's hatred toward X and therefore analyzed under Rule 803(3)). 490 F.2d 758, 762-63 (D.C. Cir. 1973). *See also United States v. Cain*, 671 F.3d 271, 300 (2d Cir. 2012) (explaining that Rule 803(3) was inapplicable because, "[t]o the extent that the statements were offered as relevant to [the declarant's] state of mind, they were not hearsay at all."). There is therefore no inconsistency in the government's separate treatment of these theories.

Rehl also misunderstands this theory when he argues that his "firing squads" statement occurred "before the charged conspiracy is even alleged to have started." ECF 503 at 2. The government was not arguing it was a co-conspirator statement but rather a non-hearsay statement circumstantially showing Rehl's motive, intent, and statement of mind concerning the purported "traitors . . . trying to steal th[e] election." ECF 475 at 21. It should not be surprising that one's motive for a crime would pre-date the crime's commission.

### 3.   The defendants' espousal of political violence is intrinsic to the conspiracy.

Citing Rules 404(b)(1) and 403, Nordean claims that his non-hearsay statements cannot be used against him because they are impermissible character evidence. ECF 499 at 19-20. Nordean is wrong again.

Prior statements by the accused are the heartland of criminal prosecution and such statements are admissible in the government's case-in-chief if they are relevant. Fed. R. Evid. 401, 402. Here, the defendants are charged with, among other things, conspiring to use force to oppose the peaceful transfer of power on January 6. Nordean and his co-conspirators' discussion of force and violence are probative of the issues to be decided before the jury. Moreover, given the defendants' anticipated defense that they were simply "caught up in the moment," such evidence serves to rebut defendants' claim that their use of force to achieve their criminal objective on January 6 was unplanned.

"Virtually all evidence is prejudicial or it isn't material." *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). The fact that defendants celebrated and encouraged street violence is directly corroborative of the defendants' motive, intent, and state of mind as they prepared to carry out their unlawful objective—through the use of force against law enforcement—on January 6. The close relationship to the crime makes the evidence highly probative, and such evidence is admissible even if it is disgraceful. For example, courts in this circuit frequently admit statements and other evidence of a defendant's sexual interest in children to prove motive, intent, knowledge, or absence of mistake when charging those defendants with sexual exploitation of minors. *See, e.g., United States v. Roberson*, 581 F. Supp. 3d 65, 74 (D.D.C. 2022); *see also United States v. Hite*, 916 F. Supp. 2d 110, 120–24 (D.D.C. 2013) (admitting evidence of online conversations in which defendant

14

discussed his sexual interest in children as probative of intent, knowledge, and absence of mistake in prosecution for attempted coercion and enticement of a minor). There is no "unfair" prejudice in demonstrating a defendant's sexual interest in children when the defendant is on trial for exploiting a child. *Id.* "Rule 403 does not countenance exclusion of evidence because it too effectively suggests that the defendant committed the charged crime." *Id.* (citing *United States v. Wilkins*, 538 F. Supp. 3d 49, 70 (D.D.C. 2021) ("Evidence is unfairly prejudicial if it prejudices a defendant's case for reasons *other than its probative value* ...." (emphasis added)). The Court of Appeals has explained Rule 403's prohibition of unfairly prejudicial evidence in this way:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.

*United States v. Gartman*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (affirming admission of evidence that the defendant, charged with fraud, had placed a gun in a coconspirator's vagina and threatened her); *see also United States v. Slatten*, 395 F.Supp.3d 45, 99 (D.D.C. 2019) (prosecutors' argument that defendant had previously engaged in unprovoked violence against Iraqis while expressing hope to start a firefight was permissible argument in that it demonstrated defendant's "motive, intent, plan, identity, absence of mistake, and lack of accident.").

Yes, the advocacy of political violence is inflammatory, but that was exactly the point. By publicly calling for the use of force against their perceived adversaries, the defendant leaders helped cultivate the base of followers from which they would draw their hand-picked MOSD recruits. And by inflaming the passion of those people, the defendants ensured that their followers would be ready to act when the time came on January 6.

### 4.  Non-Hearsay is admissible against all defendants

Nordean argues that non-hearsay statements and evidence admissible against his co-conspirators is not admissible against him. Once again, Nordean has it wrong. "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998). In *Salameh*, the Second Circuit addressed the recovery of terrorist materials possessed by one defendant, which materials included discussion of the desirability of terrorist attacks and how to use explosives. *Id.* Finding that the terrorist materials were not hearsay, the Second Circuit held that no analysis under Rule 801(d)(2)(E) (co-conspirator statements) was necessary and the evidence was admissible against all co-conspirators. *Id.*; *accord United States v. Aref*, 285 F. App'x 784, 791 (2d Cir. 2008) (holding that missile possessed by one defendant and "never seen" by the co-conspirator was admissible against all members of the conspiracy.).

Nordean cites *United States v. Accime* for the proposition that non-hearsay statements by Nordean's co-conspirators are not admissible against Nordean. ECF 499 at 19 (citing United States v. Accime, 278 Fed. App'x 897, 900 (11th Cir. 2008)). Nordean is wrong again. The *Accime* court was discussing the defendant's misguided attempt to introduce statements that government immigration authorities had made to a third party. *Id.* The *Accime* court held that the defendant could not end run the hearsay rules by attempting to bring a hearsay statement in under the "state of mind" exception when the state of mind of the two parties to the communication (*i.e.*, neither of whom was the defendant) was at issue. *Id.*

Even more misguided is Nordean's reliance on *United States v. Cain*. 671 F.3d 271 (2d Cir.). In *Cain*, the Second Circuit considered the admissibility of statements by the mother of the defendant, which revealed her state of mind (*i.e.*, her intent). *Id.* The court explained that the

statements made by the defendant's mother were "not hearsay at all" because there was no assertion and therefore there was no need for any analysis under the Rule 803(3) exception. *Id.* The court found the non-hearsay statement had been properly admitted against the defendant without any need to connect the mother's (declarant's) statement to the activities of her son (non-declarant). *Id.* As non-hearsay, such statements "should have been admitted in any case." *Id.*

For the same reasons, Nordean is wrong to argue that any declarations of others that are admissible under Rule 803 as hearsay "exceptions" are not admissible against Nordean because he is not the declarant. As explained above, evidence that is relevant to the formation and operation of the conspiracy is relevant to all members of the conspiracy. Rule 803 never states or implies that statements falling within its exceptions are admissible only against the declarant. If that were how the rule worked, it would be superfluous of Rule 801(d)(2)(A), which exempts *all of* a declarant's own statements when offered against him.[4]

### 5. Consciousness of guilt is a valid non-hearsay purpose, admissible against all defendants.

The government explained in its Statements Motion that statements circumstantially showing a co-conspirator's consciousness of guilt are admissible as non-hearsay when offered to show the criminal nature of his or her agreement. ECF 475 at 24. Nordean calls this reasoning "flawed," arguing that the case cited by the government, *United States v. Ogedengbe*, "belies that argument." ECF 499 (citing 188 F.App'x 572, 574 (9th Cir. 2006)). Nordean asserts, with no discernable basis, that "the only reason" the *Ogedengbe* court affirmed the admission of the

---

[4] Nordean's citation to a footnote in *Bruton* adds nothing to the analysis. ECF 499 at 24 n.6 (citing *Bruton v. United States*, 391 U.S. 123 at 128 n.3 (1968). That footnote merely explained that the statement in question was inadmissible hearsay against the non-declarant because no "recognized exception to the hearsay rule" applied. *Bruton*, 391 U.S. at 128 n.3.

disputed statement "was that the wife's statements were admissible against the defendant under the co-conspirator statement rule." *Id.*

Nordean's interpretation of *Ogedengbe* is entirely his own invention. Far from identifying the co-conspirator rule as "the only reason" for affirmance, the opinion makes no reference to that rule whatsoever. To the contrary, *Ogedengbe* justifies the admission of consciousness-of-guilt statements against the non-declarant defendant by citing two cases, both of which squarely support the government's position. In the first, *Anderson v. United States*, the Supreme Court found that a defendant's perjured statements were "not hearsay" and therefore "the jury did not have to make a preliminary finding that the conspiracy charged . . . was still in progress before it could consider them as evidence against the other defendants." 417 U.S. 211, 221 (1974). The second case, *United States v. Hackett*, involved false exculpatory statements given to the police by a co-conspirator named Turner. 638 F.2d 1179, 1186 (9th Cir. 1980). The Ninth Circuit found that such statements "were admitted not for their truth"; rather, "the mere fact that Turner made them implied his consciousness of guilt." *Id.* Because the statements were non-hearsay, "it was not necessary that they were in furtherance of the conspiracy in order to be admissible against the other defendants." *Id.* at 1187. Therefore "the district court was correct in refusing to limit the admission of Turner's statements to Turner alone." *Id.*

Apart from his misreading of *Ogedengbe*, Nordean offers no other argument against the consciousness-of-guilt theory. The Court should therefore accept this basis of admission.

### 6.  Effect on the listener is a valid non-hearsay purpose, especially in a conspiracy case.

Nordean's last argument against the government's non-hearsay statements concerns the statements of his MOSD subordinates offered for their effect on the listeners. ECF 499 at 21-24. Like Rehl's argument above about "context," this argument would be more properly addressed to

the jury. Nordean does not deny that he was a leader of MOSD, that he had a role in recruiting its members, and that he was active in the chat groups where the "business" of MOSD was primarily conducted. He nonetheless asserts that the members' discussions within those groups can shed no light on his understanding of the essential nature of the group and of the joint undertaking it was formed to pursue.

If Nordean believes the government has not shown him to be anything more than a figurehead of MOSD, obliviously along for the ride, he can argue that at trial. But on the record before this Court, there is proof "sufficient to support a finding" that he paid attention to the discussions he was part of, and thereby to establish the relevance of those discussions to his state of mind. Fed. R. Evid. 104(b). Plus, even if Nordean personally were ignorant of all his MOSD subordinates' violent rhetoric, the statements' effect on Nordean's fellow leaders (such as Tarrio, Biggs, Rehl, and Bertino) would still be relevant in defining the nature of the conspiracy, and the statements would therefore still be admissible against Nordean. *See supra* Section C.4.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the government's motion and admit the

statements described in the government's motion at trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:    */s/ Jason McCullough*
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006, NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
  On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7233 //
jason.mccullough2@usdoj.gov

By:    */s/ Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530
(202) 330-1788
Conor.Mulroe@usdoj.gov