UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-175 (TJK) |
| | : | |
| ZACHARY REHL, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
REHL'S MOTION TO SEVER DEFENDANTS AND COUNTS**

The United States respectfully submits this response in opposition to defendant Zachary Rehl's Motion to Sever Defendants and Counts, ECF 492. For the reasons set forth below, Rehl's motion should be denied.

**FACTS**

Rehl and four co-defendants — Ethan Nordean, Joseph Biggs, Enrique Tarrio, and Dominic Pezzola — are scheduled to stand trial beginning on December 12, 2022. The operative Third Superseding Indictment, ECF 380, charges Rehl and his co-defendants with various conspiracy offenses and substantive offenses, all arising from a plot to violently obstruct the certification of the 2020 electoral college vote and thereby prevent the transfer of Presidential power.

The indictment alleges various overt acts undertaken by the conspirators in furtherance of their criminal objectives. *Id.* at 10-23. They include numerous allegations about Rehl, including his membership in an "MOSD [Ministry of Self Defense] Leaders Group" chat for the purpose of planning the offense (¶ 30), his holding a leadership position on the "Operations Council" of MOSD (¶ 32), his directing subordinates not to wear Proud Boys "colors" on January 6 (¶ 37), his promoting a fundraising page for travel expenses (¶ 43), his encouraging others to delete incriminating messages after Tarrio was arrested (¶ 51), his leading, with Nordean and Biggs, a large group of Proud Boys to

a pedestrian entrance to the Capitol (¶ 75), his "charg[ing]" together with co-conspirators "toward the Capitol by crossing over the barriers meant to restrict access" (¶ 77), and his entering the Capitol building (¶ 104).

## ARGUMENT

Rehl now moves for the Court to sever him from his co-defendants. The title of his motion also mentions severing "Counts," but he does not specify which counts he believes should be severed. Regardless, the motion should be denied in full, because it rests on invalid factual and legal premises.

### A. Legal Background

"Joint trials play a vital role in the criminal justice system." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). Accordingly, the Federal Rules of Criminal Procedure permit joinder of defendants who are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. Pro 8(b).

In cases where joinder "appears to prejudice a defendant or the government," severance is one remedy a court can employ, along with "any other relief that justice requires." Fed. R. Crim. P. 14(a). "As is clear from the text of the rule, district courts have significant flexibility to determine how to remedy any potential risk of prejudice posed by the joinder of multiple defendants in a single trial." *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011). "Indeed, although a district court may grant a severance in a wider array of circumstances, the Supreme Court has held that 'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

Consistent with the Supreme Court's guidance in *Zafiro*, courts have generally favored joint trials over severance. *See, e.g.*, *United States v. Hines*, 455 F.2d 1317, 1334 (D.C. Cir. 1972) ("The balance has been struck in favor of joint trials"). As a result, severance should be granted "sparingly."

*United States v. Straker*, 800 F.3d 570, 626 (D.C. Cir. 2015). "Absent a *dramatic* disparity of evidence, any prejudice caused by joinder is best dealt with by instructions to the jury to give individual consideration to each defendant." *Moore*, 651 F.3d at 95 (quoting and adding emphasis to *United States v. Slade*, 627 F.2d 293, 309 (D.C. Cir. 1980)). As the Supreme Court has stressed, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538–39; *see also id.* at 539 ([L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.").

### B. No Basis for Severance Exists

Rehl claims that joinder in this case "is improper on nearly every ground that courts have merited." ECF 492 at 5. However, he has not demonstrated a single ground for severance, let alone "nearly every" ground.

#### 1. No disparity in charged offenses

Rehl argues that "joinder is . . . improper where there are significant disparities in the seriousness of the charged crimes." ECF 492 at 4. He appears to be referring to the principle from *United States v. Sampol* that defendants can be prejudiced by a "joint trial with defendants accused of . . . grossly disparate crimes." 636 F.2d 621, 645 (D.C. Cir. 1980). That rule is inapplicable here, however, because Rehl is charged in all the same counts as his co-defendants, with a single exception (Count Ten, charging Pezzola alone with robbery in violation of 18 U.S.C. § 2112). The joinder of Rehl to his co-defendants in these counts creates no gross disparity and raises no prejudice.

#### 2. No disparity in evidence

Similarly, Rehl argues that he would be prejudiced by a joint trial because his conduct was not as bad as some of his co-defendants. The government rejects the premise that the factual allegations against Rehl are materially less serious than those of his co-defendants. Rehl was a senior

founding member of MOSD who provided both before-the-fact and on-the-ground leadership for the conspiracy.  True, he did not steal a shield and smash a window like Pezzola, but he was far above Pezzola in the organizational hierarchy.  True, he was lower in rank than Tarrio, but unlike Tarrio he personally charged across the barriers and entered the Capitol building.

In any event, Rehl's relative culpability is not at issue at this stage of the case.  Even assuming *arguendo* that Rehl's role in the offense was any less serious than his co-conspirators, that would not create the type of prejudice that requires severance.  The D.C. Circuit has upheld denials of severance motions in trials that involved disparities greater than the one alleged by Rehl here.  *See United States v. Straker*, 800 F.3d 570, 626-28 (D.C. Cir. 2015) (affirming denial of severance where one defendant participated in a victim's kidnapping but not his later murder, and where two of three defendants did not participate in kidnappings that were introduced pursuant to Fed. R. Evid. 404(b)); *United States v. White*, 116 F.3d 903, 918 (D.C. Cir. 1997) (affirming denial of severance despite defendant's "comparatively modest role in the drug conspiracy and related acts of violence"); *Moore*, 651 F.3d 30, 96 (D.C. Cir. 2011) ("Although we do not ignore the possibility that some 'spillover' prejudice may have resulted to [two defendants] from being tried together with their codefendants, the district court's jury instructions, by explaining that each defendant's guilt should be considered individually based upon the evidence that pertained to him, were sufficient to cure any such prejudice").

   3.  *No differently admissible evidence*

Rehl also argues that "[t]he government will . . . seek to introduce highly prejudicial evidence against Mr. Tarrio and Mr. Pezzola that would not be admissible were Mr. Rehl tried separately." But the evidence of which Rehl complains is relevant to the conspiracy as a whole, not merely to Tarrio or Pezzola.  Consequently, the government would offer the same evidence regardless of whether Rehl were severed for a separate trial.

Rehl's argument about the prejudicial effect of statements offered as non-hearsay or under hearsay exceptions, ECF 492 at 7, is likewise unavailing. Rehl's Confrontation Clause rights are not implicated by any of the bases of admission argued in the government's Statements Motion because none of the statements were "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011); *see also Ohio v. Clark*, 576 U.S. 237, 245 (2015) ("[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial."). And, again, severing Rehl from his co-defendants would do nothing to cure any supposed prejudice, because the government would offer all the same statements under all the same theories even if Rehl were on trial by himself.

   4. *No mutually antagonistic defenses*

Rehl asserts that his defense "will be decidedly antagonistic and irreconcilable with Mr. Pezzola's defense," ECF 492 at 492, but he does not explain why that is so. Absent a more detailed proffer, the Court should disregard this argument. But even if Rehl's and Pezzola's defenses were incompatible, that fact would not require severance, because "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States*, 506 U.S. 534, 538 (1993). As the Supreme Court has recognized, prejudice resulting from conflicting defenses can often be cured by proper jury instructions, which juries are presumed to follow. *Id.* at 540.

   5. *No multiple conspiracies*

Finally, Rehl argues that he should be severed because "the Indictment explicitly alleges the existence of multiple separate plans," some of which do not involve him. This argument echoes the one made in Rehl's motion to dismiss, ECF 437, which the government addressed in its omnibus response brief, ECF 454 at 40-42. As explained there, Rehl's "multiple conspiracies" argument is premature because "the question of whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury." *Id.* at 40 (quoting *United States v. Rajaratnam*, 736 F. Supp. 2d 683,

5

688 (S.D.N.Y. 2010)). But even if the Court were to entertain it at this stage, Rehl's argument is wrong, both factually and legally.

In distinguishing between a single conspiracy and multiple conspiracies, courts consider "whether the defendants 'shared a common goal,' any 'interdependence between the alleged participants,' and 'any overlap among alleged participants,' such as the presence of core participants linked to all the defendants." *United States v. Gatling*, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (quoting *United States v. Graham*, 83 F.3d 1466, 1471 (D.C. Cir. 1996); *United States v. Tarantino*, 846 F.2d 1384, 1393 (D.C. Cir. 1988)). Each of these factors is satisfied by the allegations in the Third Superseding Indictment.

In arguing for severance on this basis, Rehl relies primarily on *Kotteakos v. United States*, 328 U.S. 750 (1946). In that case a single individual, Simon Brown, conducted a series of fraud schemes in partnership with "at least eight, and perhaps more, separate and independent groups" of accomplices, "none of which had any connection with any other, though all dealt independently with Brown as their agent." *Id.* at 754-55 (quoting opinion below, 151 F.2d 170, 172 (2d Cir. 1945)). In other words, the arrangement was a hub and spokes, but "without the rim of the wheel to enclose the spokes." *Id.* at 755. Although charged as a single conspiracy, then, *Kotteakos* actually involved multiple, and the Supreme Court held that the law did not "authorize the Government to string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all." *Id.* at 773. Through the lens of the *Gatling* factors above, the *Kotteakos* "conspiracy" involved numerous separate "goals" and virtually no "overlap" or "interdependence" between participants.

*Kotteakos* is a far cry from the facts here, where Rehl was part of a core leadership group together with co-defendants Tarrio, Nordean, Biggs, and Donohoe, all of whom knew one another, communicated regularly as a group, and endeavored together to forcibly prevent the transfer of

6

Presidential power. Beyond the core leadership, the conspiracy included other members like Pezzola, who was part of the MOSD chat groups that Rehl helped lead and who followed Rehl, Nordean, and Biggs as they led the Proud Boys marching group to the Capitol. Rehl attempts to distance himself from Pezzola for purposes of the severance motion, ECF 492 at 7, but the evidence paints a different picture, including the photograph below from a Proud Boys even prior to January 6 showing them marching almost shoulder-to-shoulder behind Tarrio:



Rehl also goes wrong by when he seeks to recharacterize the charged conspiracy by artificially disaggregating it into separate parts. *See, e.g.*, ECF 492 at 7 ("A third implicit plan appears to involve Pezzola and Donohoe where Pezzola snatched a riot shield . . . ."). By committing an act in furtherance of a conspiracy, a co-conspirator does not thereby create an independent spinoff conspiracy; Rehl's theory on this point would nullify fundamental principles of conspiracy law. *See, e.g.*, *Pinkerton v. United States*, 328 U.S. 640, 646 (1946) ("[S]o long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that an overt act of one

partner may be the act of all *without any new agreement specifically directed to that act.*" (emphasis added)).

For the same reason, it is not material whether Rehl "expressed surprise" when he learned what his co-conspirator did. *See* ECF 71 at 46 (Court's ruling on Nordean and Biggs detention, explaining that "even if someone who was a part of the conspiracy expressed surprise at the way events unfolded that day or what the ultimate outcome was . . . that does not necessarily mean there wasn't a conspiracy of the kind alleged."). Nor did a "separate conspiracy" suddenly emerge when Biggs and Nordean met on the evening of January 5 when Rehl happened not to be present. ECF 492 at 6-7. *See United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996) (explaining that conspirators must agree on "essential nature," but not "on the details of their criminal scheme" (quoting *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Cir. 1985)).

The indictment properly charges a single conspiracy (albeit one that violates multiple statutes and is charged in multiple counts), and the evidence at trial will prove a single conspiracy. Rehl's multiple-conspiracies argument for severance should therefore be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny Rehl's motion.

                    Respectfully submitted,

                    MATTHEW M. GRAVES
                    United States Attorney
                    DC Bar No. 481052

By:   */s/ Jason McCullough*
        JASON B.A. MCCULLOUGH
        D.C. Bar No. 998006, NY Bar No. 4544953
        ERIK M. KENERSON, OH Bar No. 82960
        NADIA E. MOORE, NY Bar No. 4826566
          On Detail to the District of Columbia
        Assistant United States Attorneys
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-7233 //
        jason.mccullough2@usdoj.gov

By:   */s/ Conor Mulroe*
        CONOR MULROE, NY Bar No. 5289640
        Trial Attorney
        U.S. Department of Justice, Criminal Division
        1301 New York Ave. NW, Suite 700
        Washington, D.C. 20530
        (202) 330-1788
        Conor.Mulroe@usdoj.gov