IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** * | |
| * | |
| v.  * | **Case No.  21-CR-0175-3 (TJK)** |
| * | |
| **ZACHARY REHL**, * | |
| Defendant. * | |
| * | |

**ooOoo**

### MOTION FOR RECONSIDERATION OF COURT'S
### DENIAL OF MOTION TO DISMISS SEDITIOUS CONSPIRACY

Zachary Rehl, by his undersigned counsel, respectfully moves for reconsideration of this Honorable Court's decision to deny his motion (ECF 443) to dismiss the Seditious Conspiracy charge rejecting his argument that as charged in the instant case, the *force* element is unconstitutionally vague.  *See* Memorandum Opinion at 20 (ECF 586, 12/11/22).  Reconsideration is appropriate for three reasons, which are interrelated, as more fully set forth below.

First, the government's recent assertion that it will prove defendants' guilt under a "tools theory of the conspiracy" (by which it explained that for the Proud Boys the January 6 protestors served the function that guns served for the Oath Keepers) reflects new evidence to support Mr. Rehl's argument that as charged in the seditious conspiracy count, *force* is unconstitutionally vague. This is exactly one of the reasons why vague statutes are unconstitutional.  "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also Smith v. Goguen*, 415 U.S. 566, 574 (1974) (noting that a "principal element" of vagueness doctrine is "the requirement that a legislature establish minimal guidelines to govern law enforcement").

Second, the Court's decision relies on the government's argument that "several criminal statutes contain force elements that courts routinely define without vagueness issues." *See* Memo Order (ECF 586 at 20). The government argument was based on a misreading of two cases – *Johnson* and *Abu Khatallah*. As more fully set out below, *Johnson* in fact vacated the sentence because it involved the application of a statute that contained an unconstitutionally vague "force" element. *Johnson,* 559 U.S. 133 (2010). The government's argument and the Court's decision also ignore a long line of Supreme Court cases that have found the term unconstitutionally vague.

Third, the Court's opinion issued just a short few weeks before his trial begins, still does not provide Mr. Rehl with a precise standard for the type and level of *force* required to commit a seditious conspiracy; he is still left to guess whether the "tools of the conspiracy" will replace the weapons that have defined force in every other seditious conspiracy case, including the recent *Oath Keepers* conspiracy trial. Under these circumstances, reconsideration would prevent manifest injustice.

**I.   Reconsideration is Appropriate**

Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, the Supreme Court has recognized the utility of such motions. *See United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976) (per curiam) (noting "the wisdom of giving district courts the opportunity promptly to correct their own alleged errors"); *see also United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir.2003) ("motions for reconsideration may be filed in criminal cases"). To prevail, the movant must demonstrate that (1) there has been an intervening change in controlling law; (2) there is new evidence; or (3) there is a need to correct clear error or prevent manifest injustice. *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)**.**

**II.     Tools Theory Provides New Evidence That § 2384 Is Unconstitutionally Vague**

The "tools theory" proves the point that the term "force" in the seditious conspiracy statute, 18 U.S.C. § 2384 is "so vague that it fails to give ordinary people fair notice of the conduct it puishes [and] so standardless that it invites arbitrary enforcement" in violation of the Due Process clause. *Johnson v. United States*, 576 U.S. 591, 595 (2015). Under the government's novel theory, "force" is an elastic concept that does not require the use of physical force, or violence. It is so undefined that it encompasses the act of persuading other persons – described as "tools" or "blind mules" – through political rhetoric to take action, even if that action does not involve weapons, violence to others, or physical force that results in serious injury. Indeed, it is unclear how many persons are required to reach the critical mass that would satisfy the "tools theory."

The "tools theory" advanced by the government is plausible only because the definition of *force* the government proposes is unconstitutionally vague. This unprecedented theory of prosecution simply does not pass constitutional muster. *See Connally v. Gen. Const. Co.,* 269 U.S. 385, 390 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law.").

**III.    The Court Erred in Adopting the Government's Argument That Courts the Term "Force" as Applied in this Case Is Not Unconstitutionally Vague**

The Court rejected Mr. Rehl's argument that *force* in unconstitutionally vague because it adopted the government's argument that "several criminal statutes contain force elements that courts routinely define without vagueness issues" relying on *Johnson v. United States*, 559 U.S. 133, 139–40 (2010) (defining violent force under the Armed Career Criminal Act, 18 U.S.C. § 924(e)) and

3

*United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 135–37 (D. D.C. 2015) (defining physical force against property under 18 U.S.C. § 924(c)). However, the government's reading of both cases is mistaken. In fact, both cases prove the converse. *Johnson* vacated the enhanced sentence because *force* under the Armed Career Criminal Act ("ACCA") was vague. *Khatallah* upheld the conviction because the district court applied the narrower definition of *force*, which avoided the vagueness problem. Moreover, during the past dozen years, the Supreme Court has found multiple statutes that use the term *force* unconstitutionally vague even as it engaged in complex statutory analysis of the term. Indeed, the error with the Court's decision is that even as it finds that *force* is not vague, it provides no definition by which Mr. Rehl can prepare a defense to these very serious charges. Mr. Rehl is left to guess as to the level of force required to commit an offense.

In *Johnson,* the Supreme Court reversed the judgment, set aside the sentence, and remanded the case for further proceedings precisely because it rejected the government's broad reading of the term *force. (Curtis) Johnson,* 559 U.S. at 145. The Court went through a thorough analysis of the term and ultimately explained that "context determines meaning." *Id.* at 139. In the context of seditious conspiracy, the most serious offense that the United States can charge against one of its citizens short of treason, it cannot be that Mr. Rehl can be convicted of using *force* even though he never used force himself, directed anyone else to use force, or entered into an agreement with anyone else to use force.

> Section 924(e)(2)(B)(i) does not define "physical force," and we therefore give the phrase its ordinary meaning. The adjective "physical" is clear in meaning but not of much help to our inquiry. It plainly refers to force exerted by and through concrete bodies – distinguishing physical force from, for example, intellectual force or emotional force. It is the noun that poses the difficulty; "force" has a number of meanings. For present purposes we can exclude its

specialized meaning in the field of physics: a cause of the acceleration of mass. In more general usage it means "[s]trength or energy; active power; vigor; often an unusual degree of strength or energy," "[p]ower to affect strongly in physical relations," or "[p]ower, violence, compulsion, or constraint exerted upon a person." Black's Law Dictionary defines "force" as "[p]ower, violence, or pressure directed against a person or thing." And it defines "physical force" as "[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim." Ibid. All of these definitions suggest a degree of power that would not be satisfied by the merest touching.

There is, however, a more specialized legal usage of the word "force": its use in describing one of the elements of the common-law crime of battery, which consisted of the intentional application of unlawful force against the person of another. The common law held this element of "force" to be satisfied by even the slightest offensive touching. The question is whether the term "force" in 18 U.S.C. § 924(e)(2)(B)(i) has the specialized meaning that it bore in the common-law definition of battery. The Government asserts that it does. We disagree.

Although a common-law term of art should be given its established common-law meaning, we do not assume that a statutory word is used as a term of art where that meaning does not fit. Ultimately, context determines meaning, and we "do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense." Here we are interpreting the phrase "physical force" as used in defining not the crime of battery, but rather the statutory category of "violent felon[ies]." In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), we interpreted the statutory definition of "crime of violence" in 18 U.S.C. § 16. That provision is very similar to § 924(e)(2)(B)(i), in that it includes any felony offense which "has as an element the use ... of physical force against the person or property of another," § 16(a). We stated:

"In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.' The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes....".

Just so here. We think it clear that in the context of a statutory definition of "violent felony," the phrase "physical force" means

5

> violent force – that is, force capable of causing physical pain or injury to another person. Even by itself, the word "violent" in § 924(e)(2)(B) connotes a substantial degree of force. . . . When the adjective "violent" is attached to the noun "felony," its connotation of strong physical force is even clearer.
> . . .
> The Government argues that we cannot construe 18 U.S.C. § 924(e)(2)(B)(i) to reach only offenses that have as an element the use of violent force, because there is no modifier in § 924(e)(2)(B)(i) that specifies the degree of "physical force" required. As we have discussed, however, the term "physical force" itself normally connotes force strong enough to constitute "power"—and all the more so when it is contained in a definition of "violent felony."

*(Curtis) Johnson*, 559 U.S. at 138 - 42 (internal citations omitted).

Similarly, the statute in *Khatallah* was not vague precisely because the prosecution was brought under the narrower of two elements that did not present a vagueness problem:

> Section 924(c) defines two categories of offenses as predicate crimes of violence. Its elements clause covers any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). And its residual clause covers any felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. § 924(c)(3)(B). The Supreme Court has held that the residual clause is void for vagueness. *United States v. Davis*, —— U.S. ——, 139 S. Ct. 2319, 204 L.Ed.2d 757 (2019). An offense must therefore fall within the elements clause to support a Section 924(c) conviction.

*United States v. Khatallah*, 41 F. 4th 608, 631 (D.C. Cir. 2022).

In recent years, the Supreme Court has grappled with and held unconstitutionally vague a number of statutes that use the term force or interpreted *force* narrowly to avoid vagueness:

- In 2015, the Supreme Court ruled that the "residual clause" of the ACCA was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591, 597 (to qualify as a violent felony or crime of violence, an offense must "have as an element the use, attempted use, or threatened use of physical *force*")

- In 2018, in *Sessions v. Dimaya*, ⸺ U.S. ⸺, 138 S. Ct. 1204, 1211, the Court ruled that a similarly-worded residual clause in 18 U.S.C. § 16 was unconstitutional. That statute defined a "crime of violence" to include a felony that "by its nature, involves a substantial risk that physical *force* against the person or property of another may be used in the course of committing the offense."

- In 2019, the Supreme Court ruled in *United States v. Davis*, ⸺ U.S. ⸺, 139 S. Ct. 2319, that the residual clause in 18 U.S.C. § 924(c) was also unconstitutionally vague ("involves a substantial risk that physical force . . .may be used").

- In 2021, the Supreme Court held in *Borden v. United States,* __U.S.__, 141 S. Ct. 1817, 1825, that the text of the ACCA elements clause excludes the reckless use of force.

After decades of Supreme Court decisions and circuit splits about the meaning of *force*, only one thing is clear: the term is hopelessly indeterminate. Persistent challenges in defining standards and consistently applying the law are telltale signs that a law may be unconstitutionally vague. *See Johnson*, 576 U.S. 591, 598 (2015). The seditious conspiracy statute involves the same issues.

Notions of what "force" means under various statutes have been all over the map. According to some courts, federal murder for hire does not have an element requiring *force*, *United States v. Bowman*, 873 F.3d 1035, 1042 (8th Cir. 2017); yet, minor property damage like pouring tar on steps or breaking a sprinkler head has been held to be the application of *force*, *see United States v. Khatallah*, 316 F. Supp. 3d 207, 214-15 (D. D.C. 2018). Ask any lay person, and you would likely get the opposite result. Judge N. Randy Smith of the Ninth Circuit aptly summarized the state of the law: "I feel like I am taking crazy pills." *Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (Smith, J. dissenting). "The failure of 'persistent efforts . . . to establish a standard' can provide evidence of vagueness." *Johnson*, 576 U.S. at 598. *See United States v. Rentz*, 777 F.3d 1105, 1106 (10th Cir. 2015) (en banc) (Gorsuch, J.) ("Few statutes have proven as enigmatic as 18 U.S.C. § 924(c). . . .What does and doesn't qualify as a 'crime of violence? The better part of five decades after the

statutes enactment and courts are still struggling to say."). A clear indicator that the provision provides inadequate guidance is that courts have split on whether *the same* offense has an element of physical force or threat of physical force. For example, the Ninth Circuit holds that Massachusetts armed robbery does not have an element of force or threat of force, *see United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016), but the First Circuit has held the opposite, *see United States v. Luna*, 649 F.3d 91, 108 (1st Cir. 2011). The Fourth Circuit holds that Georgia robbery does not have an element of force, *United States v. Fluker*, 891 F.3d 541, 549 (4th Cir. 2018), but the Eleventh Circuit has held the opposite, *United States v. Cooper*, 689 F. App'x 901, 906-07 (11th Cir. 2017).

Courts also are split on how much "physical force" is required when it is used against property. *See* § 924(c)(1)(A) (defining a "crime of violence" as a felony offense that requires the "use of physical force against the person *or property* of another"). The Second Circuit found that minor property damage like pouring chocolate syrup on a passport ***may be*** sufficient to qualify a force under § 924(c)(3)(A), *see United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) and Judge Cooper found that minor property damage like pouring tar on steps ***is*** sufficient, *Khatallah*, 316 F. Supp. 3d 207 (D.D.C. 2018), but the Fourth and Tenth Circuits say that minor property damage ***is not*** sufficient, *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019); *United States v. Melaku*, 41 F.4th 386 (4th Cir. 2022).

Determining whether an offense has an element the use, attempted use, or threatened use of force is not a mechanical exercise of merely reading the face of a statute and stopping there. It often requires one to go further to uncover and closely analyze old case law, common law, treatises, and legislative history to determine the contours of the particular offense and whether it can be (or ever has been) committed non-violently – which only adds to its potential vagueness.

Worse yet, the Supreme Court's repeated efforts to interpret the word "physical force" has transformed the ACCA/§ 924(c)/§ 16 into a "shapeless" criminal provision. *See Johnson*, 576 U.S. at 602 (striking down the residual clause for being "shapeless"). When interpreting the phrase "physical force" in *Johnson*, for example, the Court "rejected the common-law meaning of force with regard to battery;" yet, when interpreting the same phrase in *Stokeling*, the Supreme Court found that it "preserve[d] the common law meaning of force with regard to robbery." *See Stokeling v. United States*, 139 S. Ct. 544, 560 (2019) (Sotomayor, J. dissenting). In other words, the term "physical force" in § 924(c)(3)(A) now bears two different meanings at the same time – one that rejects the common law meaning of force and one that embraces it. *See id.* A single statutory word or phrase "cannot . . . be interpreted to do" two different things "at the same time." *Clark v. Martinez*, 543 U.S. 371, 378 (2005). Yet, this elements clause, at least as interpreted thus far, somehow does. Given this disparity, four Justices of the Supreme Court already recognized that the Court's interpretation of the elements clause closely resembles the now-defunct, unconstitutionally vague "residual clause" of the ACCA. *See Stokeling*, 139 S. Ct. at 560, 564 n.4 (Sotomayor, J. dissenting).

Two years after *Stokeling*, the Court's interpretation of the elements clause took a completely different analytical approach, only adding further confusion. Specifically, in *Borden,* the Supreme Court did not rely on common law; rather it held that the text of the ACCA elements clause excludes the reckless use of force. *Borden*, 141 S. Ct. at 1825. Any ordinary citizen reading the text of the elements clause would not see this *mens rea* requirement at all, however, as none of the terms say anything about a *mens rea* standard.

Even though the Supreme Court said it relied on the plain text, a candid assessment of the statute's text can hardly be said to have dictated that result. Leading up to the case, "most Courts

9

of Appeals to consider the issue"—including the D.C. Circuit—had found a "straightforward" textual analysis led to the opposite result. *Borden*, 141 S. Ct. at 1851 (Kavanagh, J., dissenting); *see also United States v. Haight*, 892 F.3d 1271, 1281 (D.C. Cir. 2018); *United States v. Burris*, 920 F.3d 942, 951 (5th Cir. 2019); *United States v. Pam*, 867 F.3d 1191, 1207 (10th Cir. 2017); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016). All of the above circuit cases had held that reckless force suffices under the elements clause but were reversed based on the Supreme Court's "textual" analysis. Four Justices in *Borden* disagreed with the Court's textual analysis. *See Borden*, 141 S. Ct. at 1837. And indeed, in the fifth vote of the plurality decision, Justice Thomas recognized in his concurrence that *Borden* "forces us to choose between aggravating a past error and committing a new one"—he chose aggravating a past error, while acknowledging "the consequences of today's judgment are at odds with the larger statutory scheme." *Id.* at 1837 (Thomas, J. concurring). The Supreme Court's disparate analytic approaches to interpreting *force* under the elements clause have only caused further difficulties in interpreting the provision, and lower courts continue to be divided on how to interpret the provision.

In addition, the logical results of the *Borden* Court's analysis only further detach the term *force* from what ordinary people would think that term means. For example, the Court's finding means that some "attempted and threatened assaults and homicides will be covered" (because an attempt to commit crime requires one to *intend* to commit the underlying crime) but "*actual* assaults and *actual* homicides that were committed recklessly will not be covered" (because *Borden* held that a reckless *mens rea* is insufficient). *See Borden*, 141 S. Ct. at 1857 (Kavanaugh, J. dissenting). Thus, § 924(c) arguably "covers attempt or threats to injure others that never get completed or carried out, but does not cover situations where an individual carries through with reckless conduct

and leaves a victim in a hospital or graveyard"—a result that is almost certainly divorced from what laypeople would normally think. *Id.*

Ordinary citizens simply cannot be expected to understand all of these nuances trying to make sense out of the term *force*. "Invoking so shapeless a provision to condemn someone to prison . . . does not comport with the Constitution's guarantee of due process." *See Johnson*, 576 U.S. at 602.

### III. The seditious conspiracy statute is unconstitutionally void for the same reasons that the ACCA/§ 924(c)/§ 16 have been held unconstitutionally void.

No reason exists why the word *force* in the seditious conspiracy statute is any more definitive than that in statutes the Supreme Court has invalidated. The word *force* not only has multiple dictionary definitions (Rehl Motion to Dismiss, ECF No. 443 at 4, citing MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/force), but courts, as discussed above, have given it widely varying meanings. Thus, it is anyone's guess whether force in 18 U.S.C. § 2384 means violent force versus *de minimis* force, intentional force versus reckless force, or acts of omission versus affirmative acts.

On top of these vagaries, it is unclear whether the statute requires force against a person versus force against property or even physical force versus psychological force. Therefore, the range of actions which can be considered "forceful" enough to "prevent, hinder, or delay the execution of any law of the United States" is too indeterminate for any person of ordinary intelligence to understand what actions are criminalized under 18 U.S.C. § 2384. Thus, the statute is unconstitutionally void.

Vagueness is particularly problematic here because it chills First Amendment rights. Flag burning during a political protest is First Amendment protected speech. *Texas v. Johnson*, 491 U.S.

397, 410 (1989). But chanting words of protest that the government claims encouraged tools to attack the Capitol amounts to *force* in the instant case, that carries no First Amendment protection. With grave uncertainty as to the meaning of *force*, Mr. Rehl and persons like him who seek to express constitutionally permitted opposition to government action are forced to speculate as to whether their actions or words reach the threshold of criminalized force against the government, thus chilling their First Amendment rights.

In the recent Oath Keepers seditious conspiracy case, the jury was instructed that:

> Force is defined in the conventional or ordinary sense. An act involves force if it threatens or results in violence or if it threatens or results in harming or destroying property or harming or killing people.

*United States v. Rhodes*, No 22-cr-00015 (APM), Jury Instructions at 25 (ECF 400). However, the long line of Supreme Court cases invalidating statutes and narrowing the definition of *force* shows that there is no "conventional ordinary sense" of the term force. Without any modifiers, harming people can range from a torn shirt, a broken nail, causing psychic injury, a concussion, or death. Such an instruction is unconstitutionally vague.

## CONCLUSION

Less than one month before his trial is to begin, Mr. Rehl still has no definitive notice of what amount of force is necessary to commit the offense of seditious conspiracy. Will reckless force do notwithstanding *Borden?* Will random acts of violence by others that do not result in serious physical injury to a person or results in *de minimis* property damage suffice? Will acts by conspirators such as the spontaneous toss of a water bottle that does not result in serious injury to anyone or minor damage to a bicycle rack amount to the *force* required for Mr. Rehl to be convicted of seditious

conspiracy? Is a push or a shove enough? Does any unwanted touching of another qualify as force. Did Congress intend that an American citizen can be convicted of seditious conspiracy during a political protest when he did not use or contemplate the use of a firearm, or other weapon to exert *force?* If, as the government seems to be arguing, Mr. Rehl's words or actions encouraged others to act is that sufficient to qualify as *force*? Is the strength and energy of ideas or the volume of protest chants enough? If a coconspirator uses a megaphone that amplifies the volume of his words, thus encouraging a "tool" to act sufficient to convict Mr. Rehl of the use of *force* under § 2384?

With such unresolved questions, it simply cannot be that the seditious conspiracy count is sufficiently explicit to provide adequate notice to Mr. Rehl and supply the necessary standards for those who apply the law. The Court should grant Mr. Rehl's motion for reconsideration and hold that 18 U.S.C. § 2384 is unconstitutionally vague as applied to Mr. Rehl.

Respectfully submitted,

*/s/ Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 12th day of December, 2022 on all counsel of record via ECF.

*/s/ Carmen D. Hernandez*
**Carmen D. Hernandez**