IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA,**

*v.*

**DOMINIC PEZZOLA,**

**Defendant**.

No. 1:21-cr-175 (TJK)

### DEFENDANT PEZZOLA'S MOTION FOR SIX ADDITIONAL PEREMPTORY STRIKES TO OBTAIN A FAIR JURY

Dominic Pezzola, by his undersigned counsel, hereby submits the following precedents in support of his assertion of his right to Due Process of law and a fair trial by an impartial, fair, unbiased panel. Respectfully, Pezzola invokes a violation of his Fifth, Sixth, and Eighth Amendment Rights if only 12 peremptory strikes are awarded among these five defendants; and consequently, respectfully requests that this Court grant six (6) additional peremptory strikes for the defense, on account of the extensive one-sided media coverage of this case against the defendants in conjunction with the clear bias and prejudice against the defendants exhibited since December 19, 2022, when *voir dire* commenced in this matter.

If such request is granted then the pool of 42-46 qualified jurors (which has yet to be determined) will only extend to 48-52 qualified jurors. In the grand scheme of this case, the prejudice to each Defendant is substantially outweighed any expediency argument to have this jury certified.

1

Respectfully, we ask this Court to consider the following:

(1) the number of defendants in this case is five,
(2) the inherent bias in the jury pool thus far, after three days of *voir dire*,
(3) the extensive one-sided media coverage highlighted this week in the January 6th select committee's continued hearings, reports, and referrals that former president Donald Trump be prosecuted; and
(4) the difference in the style among the five defendants in this case.

We respectfully request that this Court consider the fact that among the five defendants, different sides and contrasting defenses must be presented in this matter. It is undisputed that this Court granted the Defense two additional peremptory strikes, thereby raising the defenses peremptory strikes from 10 to 12, and the governments from 6 to 8.

However, in light of the unconventional, unprecedented circumstances surrounding this case[1], additional peremptory strikes are wholly warranted. After three days of *voir dire*, the Court has questioned approximately 60 potential jurors and qualified 18 (eighteen). Jurors who have already been disqualified *for cause* outnumber those who qualify by margins of roughly three to one. The Court's jury questioning has revealed that many more potential jurors hate, despise, and detest the Proud boys and what they allegedly "stand for" than the number of potential jurors who might try defendants fairly.

---

[1] *See* Attorney Norm Pattis application seeking a week extension of jury selection based on the January 6th Committee, (December 20, 2022, at p. 325-340).

Some twenty or more prospective jurors have come into the courtroom and admitted they regard Proud Boys and defendants as "violent," "racist," "extremists," "terrorists," "dictators," or worse. Even upon leading questions by the Court such as, "But you can put those feelings aside, can't you?" many of the jurors palpably recoil at the prospects of trying defendants fairly. Several jurors have openly indicated that the Proud Boys scare them, are part of the "white supremacist" movement, "white nationalists" or played a predominant role in the attack on the Capitol on January 6th.[2]

These jurors will almost certainly vote to convict and imprison the defendants over fear for their personal safety. This case is unusual in that the prosecution's case is relatively straightforward, while the defendants' case relies on convincing jurors to put away their fears and hatreds and give defendants a fair chance. In light of this, in the discretion of the Court, granting Defendants six more peremptory challenges distributed among five defendants is not unreasonable.

## I.   LEGAL STANDARD.

Rule 24 of the Federal Rules of Criminal Procedure provides that, in non-capital felony cases, "[t]he government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges . . . ." Fed. R. Crim. P. 24(b)(2). However, "[t]he court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges

---

[2] *Cf.* Juror 0888 (December 21, 2022).

separately or jointly." Fed. R. Crim. P. 24(b). Moreover, the Court may impanel up to 6 alternate jurors, and Rule 24 provides for additional peremptory strikes in this situation as follows: (4) Peremptory Challenges. Each side is entitled to the number of additional peremptory challenges to prospective alternate jurors specified below. These additional challenges may be used only to remove alternate jurors. (A) One or Two Alternates. One additional peremptory challenge is permitted when one or two alternates are impaneled.(B) Three or Four Alternates. Two additional peremptory challenges are permitted when three or four alternates are impaneled.(C) Five or Six Alternates. Three additional peremptory challenges are permitted when five or six alternates are impaneled. FED. R. CRIM. P. 24(c)(4)(A)-(C).

As the *Mitchell* Court highlights:

> As is apparent from the language of Rule 24(b), the Court has discretion in a multi-defendant case to permit the defendants to exercise more than 10 peremptory challenges. But the Rule does not appear to authorize a Court to grant the Government more than 6 peremptory challenges over the objection of defendants. *See* 2 C. *Wright*, FEDERAL PRACTICE AND PROCEDURE § 386 (Supp.1973); *Cf.*, *United States v. Projansky*, 465 F.2d 123 (2d Cir.), *cert. denied*, 409 U.S. 1006, 93 S.Ct. 443, 34 L.Ed.2d 299 (1972).
>
> The parties, however, can stipulate to allow a greater number of peremptory challenges. See, e. g., *United States v. Potts*, 420 F.2d 964 (4th Cir.), cert. denied 398 U.S. 941 (1970).
>
> . . . .

*United States v. Mitchell*, 384 F. Supp. 564, 565 (D.D.C. 1974); *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976).

### A. AT COMMON LAW, PROSECUTORS HAD NO PEREMPTORY STRIKES WHILE DEFENDANTS HAD UP TO 35 STRIKES.

At common law, peremptory strikes of potential jurors was a privilege <u>solely</u> of the criminal defendant. The prosecution was entitled to <u>no</u> peremptory strikes. *Blackstone's Commentaries*, in Chapter 27, state that "This privilege of peremptory challenges, though granted to the prisoner, is denied to the king by the statute 33 Edw. I. st. 4, which enacts that the king shall challenge no jurors without assigning a cause certain, to be tried and approved by the court."

Blackstone wrote that peremptory challenges were "grounded on two reasons," first (1), that "[a]s every one must be sensible what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike." Secondly (2), wrote Blackstone, "b]ecause, upon challenges for cause shown, if the reasons assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment, to prevent all ill consequences from which the prisoner is still at liberty, if he pleases, peremptorily to set him aside." *Blackstone's Commentaries*, Vol. 2, Chap. 27, p. 353 (1753).

In other words, a defendant at common law had a right to a jury composed entirely of persons whom the defendant was comfortable with. The law at the time of the Constitution's ratification in 1789 and 1791 provided for almost as many strikes as were needed to ensure the defendant was tried by twelve persons whom the defendant, and the defendant alone, had confidence in.

Of course, there were limits under the common law. "The peremptory challenges of the prisoner must, however, have some reasonable boundary; otherwise he might never be tried," wrote Blackstone. Commentaries, Ch. 27, at 353-54. "This reasonable boundary is settled by the common law to be the number of thirty-five; that is, one under the number of three full juries. For the law judges that five-and-thirty are fully sufficient to allow the most timorous man to challenge through mere caprice; and that he who peremptorily challenges a greater number, or three full juries, has no intention to be tried at all."

Approximately 20-35 peremptory challenges were allotted in English common law with the ideal that when a person is on trial, they should not "be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike". Think about how this concept has changed and is applied today.

American juries began to allow peremptory strikes for prosecutors in the late 19th century.

It was only after the Civil War that American courts first began to allow prosecutors in some jurisdictions to use peremptory strikes. John M. Van Dyke, "Peremptory Challenges Revisited," 12 *NB L.J.* 114, 116 (1992). The U.S. Supreme Court held in 1887 that a Missouri statute allotting the prosecution 15 peremptory challenges was not abhorrent to the Fourteenth Amendment. *Hayes v. Missouri*, 120 U.S. 68, 71 (1887). A number of legal scholars have argued that the change toward allowing prosecutors to use peremptory strikes was part of larger Jim Crow efforts to keep blacks off juries. *See, e.g.*, LACRISHA L. A. MCALLISTER, "Closing the Loophole: A Critical Analysis of the Peremptory Challenge and Why it Should be Abolished," 48 S.U.L. Rev. (2021); WHITNEY DECAMP AND ELISE DECAMP, "It's Still About Race: Peremptory Challenge Use on Black Prospective Jurors," *Journal of Research in Crime and Delinquency* 57, 3 (2020); JEANETTE E. WALSTON, Do Non-Discriminatory Peremptory Strikes Really Exist, or Is a Juror's Right to Sit on a Jury Denied When the Court Allows the Use of Peremptory Strikes?, 17 *Tex. Wesleyan L. Rev.* 371 (2011).

Federal and state courts have repeatedly found and written that prosecutors use peremptory strikes to rig prosecutions for conviction by discriminating against blacks and other jurors who are seen as more pro-defendant. *See, e.g., Batson v. Kentucky*, 476 U.S. 79 (1986).

With this history in mind, and these potential jurors being called, one-by-one, and each explaining their deep prejudicial beliefs about the Proud boys, and how such are deep rooted "beliefs" and not "allegations"; and the turn around and state that they

can be fair and impartial simply defies logic, common sense, and human nature. Yet, this Court continues to deny "for cause" challenges to this type of juror; thus the only reasonable request at this point, after three days of this type of *voir dire*, is to request additional peremptory challenges for the defense.

## II. CONCLUSION

𝔚𝔥𝔢𝔯𝔢𝔣𝔬𝔯𝔢, additional peremptory strikes for the defense will ensure a fair trial amid the intensely hostile atmosphere and jury pool of the District of Columbia. Given the overwhelming intensity of hatred and bias exhibited by potential jurors thus far, it is imperative that the Court grant these Defendants additional peremptory strikes.

Respectfully Submitted,

*/s/ Steven Alan Metcalf II*

STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Flr.
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012