UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | No. 1:21-cr-175-6 (TJK) |
| v. | : | |
| | : | |
| | : | |
| DOMINIC PEZZOLA, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT PEZZOLA'S
MOTION FOR SIX ADDITIONAL PEREMPTORY STRIKES**

Defendant Pezzola has moved the Court to allow six additional strikes for the defendants in this case. ECF 598. Pezzola has neither proffered nor established good cause for not having made this request prior to jury selection, nor are his factual assertions borne out by the *voir dire* process to date. Jury selection in this case is in fact serving to disqualify the types of potential jurors Pezzola complains of, and the process has demonstrated that extra peremptory strikes are not necessary.

**FACTUAL BACKGROUND**

Jury selection began in this case on December 19, 2022, and it continued through approximately midday on December 23, 2022, when the Court broke for the holidays. *Voir dire* is set to resume on January 3, 2023. By the government's count, the Court has spoken to approximately 74 prospective jurors so far. Of those 74, it has qualified 22 and struck 52 for cause. Of the 52 for-cause strikes to date, again by the government's count, approximately 22 were for hardship and 26 were for bias. Three were struck because they stated they could not follow the

Court's legal instructions, and one was struck because her husband worked for the Department of Justice on some aspect of an appeal related to this case.[1]

Of the 22 jurors qualified to date, only four answered "yes" to Question 51 on the questionnaire, regarding whether they had read, seen, or heard anything about the allegations regarding these defendants. Not a single qualified juror answered yes to Question 52, regarding whether anything they had seen or heard about these defendants would affect their ability to be a fair and impartial juror. Of the 22 qualified prospective jurors, 20 had read, seen, or heard something about the Proud Boys prior to filling out the questionnaire. Of those 20, only four answered "yes" to Question 51 on the questionnaire regarding whether they had such preconceived notions about the Proud Boys that it might affect their ability to be fair and impartial. All 22 of the qualified jurors answered "yes" to Question 47, regarding whether they can set aside what they have seen and heard about the events of January 6 and decide the case based only on the evidence.

Of the 22 jurors qualified to date, over half—at least 12—were qualified without objection from any defendant.[2]

## ARGUMENT

I.    Pezzola Has Not Demonstrated a Need for more Peremptory Challenges

"In multiple defendant cases the award of additional challenges is permissive rather than mandatory, and rests in the trial judge's sound discretion." *United States v. Haldeman*, 559 F.2d

---

[1]    These numbers do not include prospective jurors struck prior to *voir dire*. When the Court struck jurors for cause, it did not announce on what basis. These numbers come from the government's best estimation of the Court's reasoning behind the strikes, which often was obvious.

[2]    Counsel for defendant Biggs asked to excuse Juror 1222 based on planned travel in late January that was booked after she filled out the questionnaire. Dec. 19 Tr. at 151-52. To the extent that qualifies as an objection, it was based on hardship, not bias. Out of an abundance of caution, we do not include Juror 1222 in the "at least 12" qualified without objection.

2

31, 79 (D.C. Cir. 1976).  The Court exercised that discretion to provide each side in this case two challenges more than the default amount allowed by Fed. R. Crim. P. 24.  No party objected, although counsel for defendant Rehl asked that the Court consider making the number of defense strikes divisible by five.  Dec. 14, 2022, Hr'g Tr. at 147-48.[3]  Mr. Pezzola should not now be heard, having seen the jury panel, to ask for additional strikes.  The parties have been proceeding with the Court's ruling on the number of strikes and planning their approach to *voir dire* accordingly.  He has presented no good-cause argument for why he did not make his request prior to *voir dire*, and the Court should consequently deny it.

If the Court reaches the merits of Pezzola's arguments, his factual allegations do not support the need for more strikes.  As noted above, over half of the jurors qualified to date have been qualified without objection from any defendant.  None indicated in their questionnaire that what they have heard about these particular defendants would affect their ability to be fair and impartial.  Only four indicated that what they had previously read about the Proud Boys may affect

---

[3]   Pezzola asks that the Court consider four broad categories of facts in deciding whether to grant additional strikes: (1) there are five defendants in this case; (2) the alleged inherent bias in the jury pool; (3) recent media coverage of the Congressional committee investigating January 6; and (4) the difference in style among the defendants.  ECF 598 at 2.  The government addresses the alleged bias in the jury pool in the body of this response, but the other categories of reasons mentioned by Pezzola do not warrant additional strikes either. The number of defendants has already been considered by the Court in denying Rehl's request for a number of strikes divisible by five, and courts have routinely upheld fewer strikes relative to the number of defendants than what the Court has authorized here.  *See, e.g.*, *United States v. Meredith*, 824 F.2d 1418, 1423 (4th Cir. 1987) (upholding trial judge's decision to provide a total of ten strikes to seven defendants and citing cases with ratios of 17 strikes to 12 defendants and 24 strikes to 24 defendants).  As the Court noted in denying defendant Biggs' oral motion to continue *voir dire*, most of the recent media coverage has been about the former President, Dec. 20, 2022, Hr'g Tr. at 335, not the Proud Boys (and the prospective jurors' response to the Court's questioning on that topic bear that observation out).  Pezzola does not say how the difference in style among the defendants requires more strikes, but it bears noting that more often than not, all the defendants have agreed as to whether to challenge a given juror for cause.

their ability to be fair and impartial, and the Court's questioning of those four jurors—along with the other 18 qualified to date—established that they could in fact be fair and impartial.

Pezzola contends that "[t]he Court's jury questioning has revealed that many more potential jurors hate, despise, and detest the Proud boys and what they allegedly 'stand for' than the number of potential jurors who might try defendants fairly." ECF 598 at 2. Even assuming *arguendo* that this is true—and the government does not agree that it is—Pezzola makes no attempt to distinguish those the Court has struck for cause and those who have been qualified. The Court's careful questioning has made clear that those who have been qualified for jury service in this case can set aside whatever pre-existing views they have and decide the case on the evidence presented and the Court's instructions.[4] Indeed, as the Court has recognized, it has generally been erring on the side of striking jurors where the question of whether to strike for cause is a close one. *See* Dec. 23, 2022, Tr. at 1183 ("we've had close calls. I have probably come out more -- striking more jurors than I -- than not").

Pezzola's assertion that "[t]his case is unusual in that the prosecution's case is relatively straightforward, while the defendants' case relies on convincing jurors to put away their fears and hatreds and give defendants a fair chance," *id.* at 3, is unsupported, made without further elaboration, and in any event, even if true would not warrant the grant of additional peremptory strikes. Trials of members of notorious gangs, such as MS-13, go to trial routinely even though the vast majority of potential jurors likely hold an extremely unfavorable view of what that group stands for. Similarly, the vast majority of potential jurors would, if asked, likely express fear of an individual charged with murder and express the view that murder is bad and should be punished.

---

[4] Pezzola also complains about the Court's alleged leading questions ECF 598 at 3, without citation to the transcript. The example Pezzola gives in quotations, "But you can put those feelings aside, can't you?", does not appear even once in the transcripts of *voir dire* to date.

None of those preconceived notions would *per se* prohibit a prospective juror from being seated on a jury to decide whether the government meets its burden of proving whether a member of MS-13 committed a murder with which he is charged. *See, e.g.*, *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961) (A prospective juror is not disqualified simply because he has "formed some impression or opinion as to the merits of the case. . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court").

The question for the jurors in this trial will not be whether the Proud Boys are racist, white supremacists, dictators, or any of the alleged parade of horribles Pezzola raises in his motion.[5] The question will be whether the government has met its burden of proving the offenses with which the defendants are charged beyond a reasonable doubt. The Court's *voir dire* process is designed to weed out those jurors who cannot set aside their preconceived notions of the Proud Boys, January 6, and a host of other topics, and it is succeeding in doing so. Pezzola has not demonstrated a need for additional strikes, and the record in this case in fact establishes that no additional strikes are needed.[6]

---

[5]     As the Court has already noted in ruling on other defendants' oral requests, no prospective juror has called the Proud Boys dictators. *See* Dec. 19, 2022, Tr. at 202-03.

[6]     Pezzola dedicates nearly half of the real estate in his motion to the history of peremptory challenges. ECF 598 at 4-7. That history is of no moment to the Court's analysis here, where the number of strikes is governed by Fed. R. Crim. P. 24 and D.C. Circuit case law interpreting that rule. Pezzola's motion alleges in a conclusory fashion that this history and *Batson v. Kentucky*, 476 U.S. 79 (1986) are somehow related to the Court's denial of some requested strikes for cause. For the reasons stated above, the Court's *voir dire* is being conducted in a careful and appropriate fashion, and the results it has produced to date demonstrate that no additional strikes are warranted.

**CONCLUSION**

For the foregoing reasons, Pezzola's motion for additional peremptory challenges should be denied.

                Respectfully Submitted,
                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:   */s/ Erik M. Kenerson*
       ERIK M. KENERSON // Ohio Bar No. 82960
       JASON B.A. MCCULLOUGH
         NY Bar No. 4544953
      NADIA E. MOORE // N.Y. Bar No. 4826566
        On Detail to the District of Columbia
      Assistant United States Attorneys
      601 D Street NW
      Washington, D.C. 20530
      (202) 252-7201
      Erik.Kenerson@usdoj.gov

      */s/ Conor Mulroe*
     Conor Mulroe // N.Y. Bar No. 5289640
     Trial Attorney // U.S. Department of Justice,
      Criminal Division
     1301 New York Avenue, Suite 700
     (202) 330-1788
     conor.mulroe@usdoj.gov