**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| v. | * | **Case No.  21-CR-0175-3 (TJK)** |
| | * | |
| **ZACHARY REHL**, | * | |
| **Defendant.** | * | |
| | * | |

**ooOoo**

**ZACHARY REHL'S OBJECTIONS TO THE GOVERNMENT'S**
**MOTION TO ADMIT TELEGRAM CHATS**

Broadly speaking, the government's proposed exhibits, if admitted as formatted and on the bases submitted by the government would eviscerate the rules of evidence and result in a trial that lacks due process as more fully set forth below.

First, the exhibits contain rank hearsay.  And, as applied by the government, the exceptions to the hearsay rules it proposes – effect on the listener, context, organization dynamics – lack merit. For one, the government does not identify who the listener is or what relevant act was undertaken in reliance on the out-of-court statement.  As applied in the exhibits, the "tools" are not limited to those who marched or went inside the Capitol as the Court had believed,[1] the government has now expanded this category to persons who did not come to the Capitol, are not alleged co-conspirators and even to those who participated in chats months before any conspiracy is alleged to have been in existence.

Second, as formatted, the exhibits fail the basic test for the admission of demonstrative evidencSe – they are not a fair and accurate depiction or representation of what they purportedly depict.  In telegram, messages are sequential and show who read the message.  If  replied to,

---

[1]  Trial Tr.  at 4605 (1/19/23).

telegram would show the original message and the response.  Here the government has selectively strung together a bunch of messages, which may or may not have been read by Mr. Rehl or any other defendant and may not reflect a response to an earlier message.  Included also are chats to which Mr. Rehl was not a participant such as "Skull and Bones" Elders chats.

Third, the government fails to identify the relevance of much if not all of the exhibits to any fact at issue in the case.

The D.C. Circuit has rejected attempts to create such broad loopholes to the hearsay rules.

**Effect on the Listener Exception**

> The problem with hearsay is that it deprives the defendant of the opportunity to cross-examine the person who uttered the statement at issue. Here, the government presented allegations of prior drug dealing, and the defendant was unable to cross-examine the person who made them. At the time of the testimony, that person – the less-than-reputable convict, Thomas Rose – was sitting in a federal correctional institution. Meanwhile in court, telling Rose's story, was the clean-cut FBI agent, Neil Darnell.   Thus, Evans had no opportunity to "test[ ] the recollection and sift[ ] the conscience" of his accuser, nor could he compel him "to stand face to face with the jury in order that they [might] look at him, and judge by his demeanor upon the stand and the manner in which he [gave] his testimony whether he [was] worthy of belief." California v. Green, 399 U.S. 149, 158 (1970) (*quoting Mattox v. United States*, 156 U.S. 237, 242-43 (1895)). Cross-examination may be the "greatest legal engine ever invented for the discovery of truth," but it is not of much use if there is no one to whom it can be applied.
>
> The government contends that Darnell's statements did not constitute hearsay because they were not "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). That is, they were not offered to prove that Evans actually had been involved in drug trafficking. But if Darnell's testimony about the FBI's "information" did not go to the truth of that assertion, to what did it go? The trial prosecutor said he offered the testimony to establish "why they did what they did with George Rose." For testimony to be admissible for any purpose, however, it must be relevant. See Fed. R. Evid. 402.

2

And to be relevant, it must have a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. How was "why they did what they did with George Rose" related to such a fact of consequence?

. . .

Approving the admission of Agent Darnell's testimony under these circumstances would open a large loophole in the hearsay rule. If we were to accept the government's rationale here, then explaining why government agents "did what they did" through reference to statements of absent informants would be acceptable in almost any case involving an undercover operation, and in many others as well. That is a loophole this circuit has previously refused to open.

*United States v. Evans*, 216 F.3d 80, 85 (D.C. Cir. 2000) (internal citations omitted).

### Context

It appears, however, that the government may mean something more: that the testimony was necessary to ensure that the jury did not miss the *context of the events and the moral significance of the allegations*, and thus render an unjustified acquittal. It is true, of course, that as a general matter the prosecution is entitled to present the "whole story" of criminal misconduct in order to guard against just such an eventuality. *See Old Chief v. United States*, 519 U.S. 172, 186-89; *United States v. Crowder*, 141 F.3d 1202, 1207 (D.C.Cir.1998) (en banc). But in presenting that story, the government is as much bound by the rules of evidence as it is on any other issue. No matter how important it is for the government to present a complete, morally compelling narrative, it must present that narrative through admissible evidence, not through hearsay.

*Evans*, 216 F.3d at 86-87 (emphasis added).

### Background

Finally, the government contends that the evidence of "why they did what they did" was relevant as "background" – merely for the value of giving the jury a complete picture of the events in question. Sometimes courts excuse the use of hearsay evidence for background purposes where the evidence is on an uncontroverted matter, where hearsay is the most efficient means of transmitting it, and where there is little chance of prejudice to the defendant. But where those conditions are not met – as they are not here – the government must

prove "background" the same way it would any other set of relevant facts.

The government correctly notes that when the "background" being offered is the state of mind of the police, it is technically not hearsay at all. Nonetheless, to be admissible it must still be relevant, and if "background" was related to a fact "of consequence to the determination" of this case, it was only barely so. Even the government concedes that the probative value of Agent Darnell's statement as background was "not significant."

*Evans*, 216 F.3d at 87.

### Rule 403

At this point we must consider the role of Rule 403, compliance with which we again review under the abuse of discretion standard. Under that Rule, evidence is excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Regardless of the reason for which the court and the prosecutor thought the evidence was being offered, the prejudice inquiry asks whether "the jury [was] likely to consider the statement for the truth of what was stated with significant resultant prejudice." In this case, the answer is yes: *There was considerable danger that the jury would consider the information about Evans' prior drug crimes for its truth, and hence as evidence of his propensity to commit the crimes with which he was charged*. When that danger is weighed against the insignificant probative value of the testimony as background, the Rule 403 balance comes out clearly against admission.

Moreover, the use of that testimony to establish propensity was not the only danger in this case. As the trial judge properly instructed the jury, one element of the entrapment defense is a lack of predisposition on the part of the defendant to commit the crime. Agent Darnell's statement could not permissibly have been used to establish predisposition, since the issue of predisposition goes to Evans' state of mind (why he did what he did with George Rose), not to that of the agents (why they did what they did with him). There was considerable risk, however, that the jury would use the agent's testimony in that impermissible way. Indeed, the prosecutor explicitly sought to use Darnell's testimony to establish Evans' predisposition in his closing argument. Although the court correctly barred the government from making that argument, it did not caution the jury against drawing the

connection on its own. In failing to do so, the court may have committed error under Rules 801 and 802 *by permitting the jury to use the testimony for its truth*. See Fed. R. Evid. 801, 802. In any event, without a limiting instruction, the risk that evans would be unfairly prejudiced by the jury's use of the testimony for its truth substantially outweighed the testimony's minimal value as background.

*Evans*, 216 F.3d at 87- 88.  *See, also United States v. Robinson,* No. CR 16-98 (CKK), 2017 WL 11496711, at *2 (D.D.C. June 21, 2017):

> [i]f we were to accept the government's rationale here, then explaining why government agents 'did what they did' through reference to statements of absent informants would be acceptable in almost any case involving an undercover operation, and in many others as well." It expressly refused to create such a loophole and found that the testimony should have been excluded. Id.; *see also United States v. Sesay*, 313 F.3d 591, 599–600 (D.C. Cir. 2002) (rejecting argument that the statement of a witness about defendant's conduct was not hearsay because it was offered to show the state of mind of officers when they arrested defendant because "this 'state of mind,' if not based on the truth of the statement, is not relevant to a fact of consequence in the trial").

## CONCLUSION

Mr.  Rehl will address individual objections to each of the posts in a separate filing.  The process of reviewing each exhibits is time-consuming.  Due to the number of exhibits and inclusion of statements allegedly made by persons who have not heretofore been identified as co-conspirators or tools, the process is more difficult and complex than anticipated.

Mr.  Rehl also adopts and incorporates by reference the objections filed by codefendants.

Respectfully submitted,

/s/ Carmen D. Hernandez
**Carmen D. Hernandez**
BAR No.  MD03366
7166 Mink Hollow Rd
Highland, MD 20777

5

240-472-3391

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 3rd day of February, 2023 on all counsel of record via ECF.

/s/ Carmen D. Hernandez
**Carmen D. Hernandez**