**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**NORDEAN'S MOTION FOR RECROSS-EXAMINATION OF SHAE COONEY**

Nordean moves the Court to recross-examine Officer Shae Cooney.  At the close of her redirect examination last Thursday, the government elicited from Officer Cooney that she personally "observed" Nordean "pulling at the fence, back and forth, and ripping it out of the concrete." Tr. 7149.  On direct examination, the government had not inquired whether Cooney could recall seeing Nordean, specifically, dismantling the fence.  Nordean thus did not examine Cooney's memory of that event in cross-examination.  However, the government's video evidence shows—unequivocally—that Cooney did not have a sight line at Nordean when the fence in question came down.  In these circumstances, Nordean has a right to recross-examine the witness on this specific piece of testimony.  Allowing inaccurate testimony on this critical subject to stand uncorrected until the defense case commences weeks from now would constitute a due process violation.

**Cooney's testimony about the black fence**

Officer Cooney testified on February 2, 2023.  In direct examination, Cooney was not asked whether she recalled personally observing Nordean pulling down a black fence posted in front of the inaugural platform on January 6, 2021.  Tr. 6991-7080.  In cross-examination, Nordean displayed for the witness certain scenes from the government's video exhibits depicting

Nordean next to the fence in question on January 6.  Nordean inquired about Officer Cooney's present impressions of those exhibits.  At no point did Nordean examine the officer about whether she *recalled* seeing Nordean pulling down the fence.

On redirect examination, however, the government elicited the following from Cooney:

Q. And just [let me] ask you directly: At any point did you see the man in the black hat being taken for a ride against his will on the fence?

A. No.

Q. What did he do?

A. He was pulling at the fence, back and forth, and ripping it out of the concrete.

Q. He didn't just gently lay it on the concrete?

A. No.

Tr. 7149.

This testimony is demonstrably inaccurate.  That Officer Cooney did not personally observe Nordean "ripping [the fence] out of the concrete" can be seen in the government's video exhibits.  At the precise moment when the fence segment at issue was tipped over by the crowd, Officer Cooney stood at a distance from the scene with a group of officers then dealing with a different section of the protester line.

At the moment when a protester began to rock back and forth, pulling the fence into Nordean and other protesters at the front line (circled in green below), Officer Cooney was facing another direction, gazing at a different section of the crowd (circled in yellow below):



Gov't Exh. 492G.

    A few moments later, what appears to be Nordean's hand can be seen touching the fence. The government displayed this clip to the jury and to Officer Cooney—though without asking the officer to identify herself in the video clip at this particular moment.  Cooney is again circled in yellow:



Gov't Exh. 492G.  In the above image, it is beyond dispute that Officer Cooney is not observing

Nordean, the relevant segment of the fence, or the protester or protesters who ultimately pull

down this part of the barrier.  Indeed, Officer Cooney's sight line at Nordean is blocked by the

body of an officer standing to her right.   A screenshot of the same exhibit, taken one second

later, confirms this (Cooney circled in yellow):



Gov't Exh. 492G.

Indeed, at the exact moment the relevant fence segment falls, Cooney's sight line is

obscured by both another officer and undulating flags (Cooney circled in yellow):



Gov't Exh. 492G.

On February 5, Nordean notified the government that he would conduct brief recross-examination of Officer Cooney on Tuesday, February 7, regarding her testimony on redirect that she personally observed Nordean "ripping [the fence] out of the concrete." Tr. 7149.  The government responded that because the subject had been raised in direct examination and Nordean's cross-examination, recross was not appropriate.[1]  Nordean pointed out in response that he did not cover in cross-examination whether Officer Cooney *recalled* seeing Nordean pulling down the fence, nor did the government cover it in direct examination.  The government did not respond to that email.

**Argument**

A party has a right—and not merely a discretionary privilege—to recross-examination "'where new matter is brought out on re-direct examination.'" *United States v. O'Neal*, 844 F.3d 271, 275 (D.C. Cir. 2016) (quoting *Haley v. United States*, 435 F.2d 737, 749-50 (5th Cir. 1970)); *see also United States v. Stoehr*, 196 F.2d 276, 280 (3d Cir. 1952) ("Where new evidence is opened up on redirect examination, the opposing party must be given the right of cross-examination on the new matter. . .").

Relatedly, where the government sponsors, or allows to remain uncorrected, false testimony, a due process violation occurs.  *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); *United States v. Price*, 357 F. Supp. 2d 63, 69 (D.D.C. 2004).  If there is

---

[1] The government also stated that the subject of Cooney's memory of this event was raised in Defendant Biggs' cross-examination.  But Nordean does not control Defendant Biggs, nor does he have an opportunity to examine the witness during Biggs' cross-examination.  With respect to Nordean's trial rights, Biggs' cross-examination is beside the point.  If the government is correct about Biggs' cross-examination, that means recross on the subject is unavailable by right *to Biggs*.

a reasonable likelihood that such evidence "could have affected" the jury verdict, a new trial is warranted. *Napue*, 360 U.S. at 269; *Price*, 357 F. Supp. 2d at 69.

Here, a "new matter" was brought up in redirect examination—whether Officer Cooney *recalled* seeing Nordean "ripping [the fence] out of the concrete" on January 6. Tr. 7149. This matter was "new," as Nordean had examined the witness about her *current* impressions of scenes displayed in Government Exhibit 492G. Tr. 7096. Such questioning does not go to the witness's memory of the event. Nor was Officer Cooney questioned in direct examination about whether she could *recall* Nordean pulling down the fence over two years ago. Tr. 6991-7080. That statement was elicited at the very end of redirect examination. Tr. 7149.

The subject matter at issue is not merely "new." It goes to the heart of the government's seditious conspiracy charge. The government must prove that Nordean conspired to use force to prevent the execution of a federal law and oppose the authority of the United States Government. The fence episode is virtually the only potentially relevant piece of evidence possessed by the government in this regard. The witness testified she recalled observing Nordean ripping up a fence. That the video evidence directly contradicts this memory testimony is a fact that manifestly "could affect" the jury verdict. *Napue*, 360 U.S. at 269; *Price*, 357 F. Supp. 2d at 69. The government itself has a duty to correct the inaccurate testimony—but at the least Nordean should not be denied the opportunity to do so in recross-examination, particularly with respect to a witness who works in the district and is not commuting to the courthouse from outside it.

Dated: February 5, 2023                     Respectfully submitted,


                                            /s/ David B. Smith
                                            David B. Smith, D.C. Bar No. 403068
                                            David B. Smith, PLLC
                                            108 North Alfred Street, 1st FL
                                            Alexandria, Virginia 22314

6

(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 5th day of February, 2023, I filed the foregoing motion with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

the following CM/ECF user(s):

> Jim Nelson
> Assistant United States Attorney
> 555 4th Street, N.W., Room 4408
> Washington, D.C. 20530
> (202) 252-6986

And I hereby certify that I have mailed the document by United States mail, first class

postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com