IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 21-CR-175 (TJK) |
| | : | |
| **DOMINIC J. PEZZOLA,** | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT PEZZOLA'S MOTION FOR MISTRIAL OR TO STRIKE GOVERNMENT EXHIBIT 528-1**

Counsel for defendant Pezzola seeks a mistrial and dismissal of the entire case, with prejudice, or, in the alternative, the striking of Government Exhibit 528-1 and any related testimony. ECF 660 at 1, 6. Pezzola asserts that Government Exhibit 528-1 – a nine-page document titled "1776 Returns" – was authored by a member of the U.S. Intelligence Community, who then passed it to "Erika Flores," a romantic interest of defendant Tarrio, and requested that she share it with him. ECF 660 at 4. Pezzola further asserts that these purported facts were not known to counsel prior to the December 2022 release of the House Select Committee transcripts, and that this newly-revealed information should materially change the analysis of the admissibility of Exhibit 528-1 and related testimony in this trial.

The government strongly disagrees with Pezzola's characterization of both the facts and the record with respect to these assertions. The government robustly agrees with defendant Pezzola that it would have been egregiously improper for a member of the U.S. Intelligence Community to have conducted a domestic intelligence operation targeting Enrique Tarrio, a U.S. Person, and providing him with a plan to "storm" (or "occupy" or "sit in") House and Senate Office Buildings on January 6. It would have been even more improper for a member of the U.S. Intelligence Community to send this plan to the leader of the Proud Boys when, just months before,

then-President Trump had exhorted the Proud Boys to "stand back and stand by" during a nationally televised debate. And it would have been egregious indeed for a member of the U.S. Intelligence Community to send such a document to the leader of the Proud Boys in advance of January 6, in the wake of the violent attacks the Proud Boys were associated with in Washington, D.C., on November 14, and December 12, 2020. Surely, had the government planted such a document in the inbox of defendant Tarrio (ECF 660 at 5), one would hope that the U.S. Intelligence Community would have hewed to the truth of what happened on January 6 and included the Capitol as one of the targeted buildings.

Defendant Pezzola's allegation that "NEW INFORMATION REVEALS THAT THE '1776 RETURNS' DOCUMENT WERE AUTHORED BY THE GOVERNMENT ITSELF" is simply incorrect. ECF 660 at 3. Defendant Pezzola alleges that he first learned that Samuel Armes "recognized components of the document as ideas he had composed as part of a 'war gaming' exercise he did in August or September 2020," that he later shared with "Erika Flores," only after the House Select Committee made public in December 2022 the transcript of Armes' July 18, 2022 testimony. ECF 660 at 3-4. But this is not true. The information that Samuel Armes drafted a document that inspired portions of the Government Exhibit 528-1 was disclosed to defense counsel by the government on November 16, 2022, when it provided counsel with a copy of Armes' October 7, 2022, grand jury testimony. Importantly, Armes' grand jury testimony is entirely consistent with his testimony before the House Select Committee on July 18, 2022. Both transcripts are clear on three essential points:

First, Armes is not a member of the U.S. Intelligence Community. As an undergraduate at the University of South Florida, Armes studied for and received a certificate in Intelligence Studies, which program provided Armes training that would have assisted him in gaining

employment in the U.S. Intelligence Community. 7/18/2022 HSC Tr. at 7; 10/6/2022 Grand Jury Tr. at 5. Armes did not pursue such employment after graduation. Since 2017, Armes has instead run the Florida Blockchain Business Association. 7/18/2022 HSC Tr. at 5-6; 10/6/2022 Grand Jury Tr. at 12.

Second, Armes did not draft Government Exhibit 528-1, although he did draft a document that he believes may have provided inspiration for certain portions of it. Armes was first shown the "1776 Returns" document by the House Select Committee in connection with his July 2022 interview. 7/18/2022 HSC Tr. at 10; 10/6/2022 Grand Jury Tr. at 64. Armes denied drafting the "1776 Returns" document. *Id.* He testified in both instances that he recognized certain aspects of the document from a "wargaming" exercise he had done to consider what would happen if a president refused to leave the White House and there was just "mad chaos in the streets because no one knows whose in charge." 7/18/2022 HSC Tr. at 11; 10/6/2022 Grand Jury Tr. at 24. Armes recognized certain portions of the "1776 Returns" document from his "wargaming" exercise, including the map on page two, and references to entering government buildings. 7/18/2022 HSC Tr. at 12; 10/6/2022 Grand Jury Tr. at 66, 68-71. When confronted with a copy of "1776 Returns," Armes denied drafting critical parts of the document.

- Armes specifically denied using the title "1776 Returns." 7/18/2022 HSC Tr. at 10; 10/6/2022 Grand Jury Tr. at 65.

- Armes specifically denied using or even knowing the meaning of the term "Winter Palace." 7/18/2022 HSC Tr. at 27; 10/6/2022 Grand Jury Tr. at 66. He also denied using the phrase "storm the winter palace." *Id.*

- Armes specifically denied using the term "patriot plan" or "patriot." 7/18/2022 HSC Tr. at 25-27; 10/6/2022 Grand Jury Tr. at 66.

3

- Armes specifically denied drafting the January 1-5 "preparation" and January 6 "execution" portions of the document.  7/18/2022 HSC Tr. at 24-25; 10/6/2022 Grand Jury Tr. at 73-74.

- Armes specifically denied drafting a list of demands.  7/18/2022 HSC Tr. at 25; 10/6/2022 Grand Jury Tr. at 79.

- And Armes specifically denied drafting the portion of the document that referred to "Manpower Needs." 7/18/2022 HSC Tr. at 24; 10/6/2022 Grand Jury Tr. at 77-78.

Indeed, Armes specifically testified that he was "horrified" by the document because someone had taken his ideas and turned them into a tactical plan with form and structure that advocated storming the Capitol.  10/6/2022 Grand Jury Tr. at 67-68; *see also* 7/18/2022 HSC Tr. at 14 (referring to the "1776 Returns" document as a "terroristic document").

Armes testified that he shared his "wargaming" exercise in the form of a three- to five-page Google document with "Erika Flores" sometime between August 2020 and January 2021. 7/18/2022 HSC Tr. at 12; 10/6/2022 Grand Jury Tr. at 26.  When asked why Flores told the House Select Committee that Armes had drafted the document, he testified "I guess she is just blame shifting."  7/18/2022 HSC Tr. at 20.  Armes surmised that Flores had taken his "ideas as an inspiration, and her or some group of people then turned it into '1776 Returns.'" *Id.* Indeed, when subpoenaed to testify before the Grand Jury in this case on May 3, 2022, Flores answered only brief biographical questions and then invoked her fifth amendment right not to testify repeatedly in response to more than 50 transcript pages worth of questions by the government about the "1776 Returns" document.  That transcript was provided to defense counsel on November 16, 2022.[1]

---

[1]   On that same day, counsel were provided with the grand jury transcript of another witness

Defendant Pezzola's claim that this information was not known to counsel in time to supplement their pleadings with any relevant information is simply false. Counsel for defendants Tarrio and Nordean first moved to exclude the "1776 Returns" document in their motions *in limine* filed in October 2022, asserting that the document was inadmissible under Rules 401, 402, and 403. See ECF 489 at 20-21; ECF 491 at 4. The government countered that the document, which Tarrio received on December 30, 2020, from "Eryka," was properly admissible as evidence of Tarrio's intent, motive, and state of mind as he approached January 6, 2021, and that Tarrio's receipt of and reaction to the document was highly probative of Tarrio's state of mind as January 6 approached. ECF 515 at 26. The government additionally argued that the document provided necessary context to communications between Tarrio and Jeremy Bertino. Shortly after the riot, Bertino posted messages in celebration that read, "Brother. You know we made this happen" and then later, "1776 motherfuckers," and Tarrio responded, "The Winter Palace." *Id*. See also Government's Exhibit 538-18, where on January 3, 2021, Tarrio posted "The winter palace" in response to "mamafe's" comment "I'm gonna go take the Capitol."

On December 14, 2022, the Court agreed with the government that the "1776 Returns" document was relevant and admissible. *See* 12/14/2022 Tr. at 64-65. The Court referenced this ruling last Friday, holding that Gov. Ex. 538-18 was also admissible in conjunction with the "1776 Returns" document. *See* 2/10/2023 Tr. at 8611-12. To the extent that it is relevant at all that Samuel Armes drafted a "wargames" exercise that may have inspired the creation of the "1776 Returns" document, that information was known to defense counsel prior to the Court's ruling

---

who testified that a girlfriend of Enrique Tarrio known as "Erika" had messaged a document to the witness about two weeks before January 6 and asked the witness to fill in the names of people to participate in an "infiltration plan." The witness further recalled that the individuals were to dress like they belonged in the buildings and to have set up prior meetings to gain access. Compare Government Ex. 528-1 at pages 3, 6.

admitting the "1776 Returns" document. Between the date of the government's disclosure of these grand jury transcripts and the date of the Court's ruling, defendants filed no fewer than fifteen motions seeking various relief from the Court. Almost three months have passed since counsel first learned this information. Had counsel viewed the information contained within the transcripts to be relevant to the question of whether the "1776 Returns" document, or related exhibits, were admissible, there has been more than ample time for counsel to raise the issue to the Court prior to the admission of the document and related testimony.

The government respectfully asks this Court to deny defendant Pezzola's motion.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052
Jocelyn Ballantine
Chief, Complex Conspiracy Unit
Capitol Siege Section

/s/ *Jocelyn Ballantine*
JOCELYN BALLANTINE, CA Bar No, 208267

By:     /s/ *Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530
(202) 330-1788
Conor.Mulroe@usdoj.gov

/s/ *Jason B.A. McCullough*
JASON B.A. MCCULLOUGH
        NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
        On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street NW

Washington, D.C. 20530