# UNITED STATES DISTRICT FOR THE DISTRICT
# OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **Case No. 21-cr-00052-TJK-1** |
| | ) |
| **DOMINIC  PEZZOLA** | ) |
| | ) |
| **Defendant** | ) |

### DEFENDANT PEZZOLA'S REPLY TO THE UNITED STATES' RESPONSE TO PEZZELA'S MOTION TO STRIKE EXHIBIT 528-1, AND FOR MISTRIAL

Comes now the Accused DOMINIC PEZZOLA ("Pezzola"), through his undersigned counsel, who replies to the government's recent response to Pezzola's motion to strike Exhibit 528-1, and for mistrial (ECF 660).

In its response to Pezzola's motion, the United States downplays the government authorship of "*1776 Returns!"* The government states categorically that the document's author, "Armes[,] is not a member of the U.S. Intelligence Community."

But the known facts—as elucidated by the questioning of author Samuel Armes by the House January 6 Committee—indicate the government's claims are simply false.

In the July 18, 2022 interview of Samuel Armes by the Select Committee to Investigate the January 6th Attack on the U.S. Capitol, Mr. Armes gave testimony that places Armes squarely within the ranks of the U.S. intelligence community, and an intelligence operation (the "Transition Integrity Project"), during 2020.

Represented by counsel, Mr. Armes confessed that he "was being groomed to work for the CIA and the FBI." When an interviewer asked directly if Armes had ever worked for either agency,

Armes did not provide a clear yes-or-no answer.  "Not formally," answered Armes under oath, "but I've done work for the State Department and for United States Special Operations Command out of MacDill Air Force Base, which is in Tampa."  To say the least, this response was more cryptic than clear.

Plainly, Armes did not and apparently *could not* deny ever working for the FBI or CIA. Armes evaded the question with a "Not formally" answer—and then diverted the inquiry into "the State Department" and military assignments at MacDill Air Force base.  An interviewer sought clarification, but Armes continued answering evasively:

> 4 Q And when you say "not formally," how did you end up doing the work for
> 5 those agencies?
> 6 A I was a -- I was not a government employee. I was a citizen. And they
> 7 were both programs through USF, through the intel program that I was at.

When the interviewer asked Armes to "just walk [him] through [Armes] professional experience since then [college graduation], Armes stated:  "So my professional experience, I essentially -- beyond SOCOM [Special Operations Command of the U.S. military] and the State Department in D.C., I also worked in Tallahassee. I worked for a representative there.

Armes' shapeshifting and evasive half-answers continued.  Armes said "a lot of the work that I did for government was in counterthreat finance or regulatory environments around crypto" (page 5).

**The Contours of Armes' Jan. 6 Committee Testimony were dictated by Armes' Counsel.**

Armes' Jan. 6 Committee testimony was bizarre in many respects.  The transcript shows that before investigators could get deep into questioning Armes, Armes' lawyer, Anessa Santos, interrupted the testimony and directed investigators toward an approved narrative.

11. **Ms. Santos**. If Sam -- may I at some points assist Sam in expanding the

12 information that he is providing to you during the questioning period? Would that be

13 appropriate or inappropriate?

14 **Interviewer.** That'd be appropriate if you wanted to.

15 **Ms. Santos**. Talk to him a little bit about your strategies, the wargame strategies,

16 that you worked on underneath your professor at school.

17 **Mr. Armes**. So, when I was at USF and I was being groomed to be in the CIA, FBI,

18 or any intel agencies, a lot of what we did was wargaming exercises. Are you familiar

19 with wargames?

20 Yes.

21 **Mr. Armes**. Yeah. So I would often go through day courses where we would

22 wargame different scenarios as a part of my college education. And that actually is

23 partially what served me at SOCOM. So at SOCOM --

Committee Transcript, p. 6.

On page 7 of the J6 Com. Transcript, it becomes clear that attorney Santos hijacked the interview. The interviewer asks: "And just a quick clarification. When you say "getting groomed" to be part of the CIA, FBI, what do you mean by that?" And *attorney Santos answered* <u>for</u> Armes:

**Ms. Santos**. Trained.

Mr. Armes. Trained. Yeah, I guess trained.

**Ms. Santos**. Educated.

Mr. Armes. Yeah.

**Ms. Santos**. Trained and educated through the university program.

Mr. Armes. And my mentor. So the goal was to do everything that I was doing

17 and then, by the time I graduated, actually move to D.C. and work for one of the intel

18 agencies.

19 Okay.

At one point, the Committee interviewer had to stop Ms. Santos from answering for Armes. "Ms. Santos, sorry if I wasn't clear. It's definitely okay if you want to jump in with a question, but let him answer the questions, please. Thank you." *Id.*, p. 5.

Contrary to the assertions of the U.S. Attorneys office, Mr. Armes was (and likely is) very much a member of the U.S. intelligence community—by every measure of membership.  Few people in modern America have a "mentor."  Yet Mr. Armes admits to having a mentor; and that mentor is none other than Walter Andrusyszyn.  Andrusyszyn is a world-renowned fixture of the intelligence community.

Professor Andrusyszyn is the author of numerous reports, scholarly articles, and curricula on U.S. intelligence.  Andrusyszyn is a consultant and senior intelligence advisor with "23 years of experience in the State Department/White House" according to his own website (http://www.ewb.rs/advisor.aspx?id=356 ).  Andrusyszyn was a Deputy U.S. Permanent Representative to NATO in 2009 and managed a mission of 170 during the Obama transition and prepared the President's participation in the NATO summit in Strasbourg/Kehl.  Andrusyszyn is the current Director, Program in National and Competitive Intelligence.

And note further that even Armes' "college education" at the University of South Florida was an operation of the U.S. intelligence community. USF received a grant from the Office of the Director of National Intelligence in the amount of $720,000 to implement a training program to prepare students for a career in intelligence.[1]

---

[1] https://www.83degreesmedia.com/innovationnews/usf092011.aspx (accessed 2/18/2023).

**Armes <u>is</u> the author of 1776 Returns!**

It is readily apparent that Mr. Armes recognized that the D.O.J. was seeking to link "1776 Returns!" to the events of January 6.  So Mr. Armes has sought to minimize his authorship role. Neither Armes nor anyone in the Justice Department has provided any digital evidence of word processing edit history to substantiate Armes' claims of partial authorship.  <u>In fact, Armes' "original" version is conveniently missing</u> and appears to exist only in Armes' testimony.

**Why would Erika Flores tell the J6 Committee that Armes completely authored the document and asked her to forward the document to Tarrio?**

Note that Defendants still have not been provided with Erika Flores' testimony before the January 6 Committee.  The most we have been provided is Flores' <u>federal grand jury</u> transcript (where Flores pled the 5th on almost every question).  But we know from snippets of information in Armes' J6 Committee transcript that Flores told the Committee that Armes authored the document and asked her to forward it to Tarrio's inbox.

On pages 19-20 of Armes J6 Committee transcript, there appears the following exchange:

24  So my next question to you was going to be: Do you have any idea why

25 Ms. Flores would tell us that you wrote "1776 Returns" and that you asked her to send it

[page 20]

1 to Mr. Tarrio?

2 A I guess she's just blame-shifting. I mean, she's just throwing me under the

3 bus for a document that -- and I don't know if she even authored the document. All I

4 know is that I shared stuff that I had written, material that I had written with her. I don't

5 know who even created the "1776" document. All I know is that I shared it with her.

6 So she probably -- I mean, I don't know if this is -- I'm extrapolating. But on the

7 end point, right -- because I originated this idea in my mind of what I think might happen.

8 And, obviously, given that I've now seen this, she took my ideas as an inspiration, and her

9 or some group of people then turned it into "1776 Returns."

**Only when understood as an intelligence document does "1776 Returns" make sense.**

The government's cover story—that Armes authored a tiny amount of "1776 Returns!" for his own personal enjoyment or conceptual "wargaming," and then sent his (conveniently missing) version to Erika Flores "sometime between August 2020 and January 2021"—stretches the imagination.  Upon information and belief, the FBI (and the House J6 Committee, for that matter) could easily substantiate this claim by subpoenaing (or crafting a search warrant for) both Armes' computer and any and all email communications between Armes and Flores (both outbox and inbox).  Yet the government has failed to provide this evidence to the defense.

CONCLUSION

Exhibit 528-1 should be stricken as misleading under Rule 403 even if the document were what the government purports it to be: a "wargaming" outline having no relationship to an actual plan to take over or occupy the Capitol by anyone intent on doing so.

This Court has inherent supervisory powers to investigate and dismiss actions of gross injustice, outrageous government conduct, or Brady violations of the type apparently committed regarding this matter.  *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020).  Pezzola's motion for

mistrial, and for striking Exhibit 528-1, and for an evidentiary hearing to explore the many factual

issues raised in this motion, or for any other relief the Court orders, should be granted.

RESPECTFULLY SUBMITTED,

*/s/ Roger Roots, esq.*

Roger Roots, esq.

21550 Oxnard Street

3rd Floor, PMB #172

Woodland Hills, CA 91367

Tel: (213) 400-0725

Email: rroots@johnpiercelaw.com


Attorney for Defendant

CERTIFICATE OF SERVICE

I, Roger Roots, hereby certify that on this day, February 18, 2023, I caused a copy of the foregoing
document to be served on all counsel through the Court's CM/ECF case filing system.