IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DOMINIC PEZZOLA,<br><br>*Defendant.* | No. 1:21-cr-175 (TJK) |

**DEFENDANT PEZZOLA'S MOTION FOR DISMISSAL WITH PREJUDICE; OR, IN THE ALTERNATIVE, MISTRIAL REGARDING RECENT REVALATIONS ON <u>TUCKER CARLSON</u> AND ASSOCIATED TESTIMONY AND THE DISCOVERY OF MASSIVE BRADY AND JENCKS VIOLATIONS AND VIOLATIONS OF DUE PROCESS AND THE SIXTH AMENDMENT**

**WITH INCLUDED MEMORANDUM OF LAW**

Defendant Dominic Pezzola, by and through his undersigned counsel, Roger Roots, and Steven Metcalf, hereby move the Court for dismissal of the indictment in this case, with prejudice, due to recent revelations on the *Tucker Carlson* show, and associated testimony on Thursday, March 2, as well as due to Jencks and Brady violations revealed on March 8 which establish that the prosecution has been monitoring attorney/client communications of defendants, destroying evidence and doctoring and fabricating evidence involving confidential human sources (CHSs).

<u>Pezzola requests an evidentiary hearing.</u>

**Background.**

During trial on Thursday, March 2, 2023, the prosecution in this case presented Mr. Kevin McCumber, Deputy Clerk of the U.S. House of Representatives

1

as a prosecution witness.  McCumber is the highest ranking official of Congress to testify in this case.  Mr. McCumber was called to testify starting on March 2 at about 11:45 AM.

Mr. McCumber has been employed by the House of Representatives for over two decades.  He has vast knowledge of congressional politics, and has watched hundreds of representatives interact in the House Chamber.  McCumber's daily duties include being in the House Chamber where he helps run the proceedings of the House and records entries in the official House journal logs.

During direct examination, McCumber showed the jury the video recordings of both the Senate Chamber and the House Chamber gaveling into recess on January 6, 2023.  Prosecutors have claimed that defendant Pezzola and codefendants caused Congress to go into recess by entering the Capitol on January 6.  In fact, several counts of Pezzola's indictment—including Counts 2 and 3—require proof that Pezzola and codefendants *caused* the recess of Congress on Jan. 6.

During the cross-examination, Mr. McCumber was asked about the recess (or "obstruction") of the Joint Session of Congress.  During questioning by undersigned counsel Roots, Mr. McCumber admitted that there was no need for Congress to recess on January 6, 2021.  Mr. McCumber testified that protestors have frequently – at least six (6) times in his personal experience and observation – demonstrated in the actual chamber and on the floor of the U.S. House.  McCumber testified that

2

each time the protestors were removed and the Congressional session continued. Yet on January 6, 2021, <u>no demonstrators ever entered the House Chamber at all.</u>

For over two (2) years, the Government has claimed that some of the demonstrators who were in the halls and outside the U.S. Capitol building obstructed an official proceeding in violation of 18 U.S.C. 1512(c)(1).

Yet the Government has steadfastly refused to identify in what way any of these Defendants directly caused the recess of the Joint Session, despite repeated demands for disclosure of this information as potentially exculpatory evidence whose disclosure is required under *Brady v. Maryland*, 373 U.S. 83 (1963).

Mr. McCumber's testimony plainly refutes the government's claim that defendants *caused* an obstruction of an official proceeding on January 6, 2021.

**What about the Senate Chamber?**

Even if the House could have continued without recess on January 6, what about the <u>Senate</u>? Evidence in this trial has established that for a brief time around 2:30 to around 3 pm on January 6, protestors did in fact "breach" the Senate chamber. Inspector Loyd of the Capitol Police testified that a protestor managed to leap down onto the lower floor from the balcony; and that the protestor then opened a door to let other demonstrators into the Senate chamber.

Never during this trial has there been any evidence of any raucous or extremely disruptive or violent demonstration in the Senate chamber. (There have been a few images of demonstrators sitting on chairs or standing in the well of the Senate.)

**Then came the Tucker Carlson show on the evening of March 6, 2023.**

On March 6, Tucker Carlson released shocking footage from January 6th, 2021 that showed "QAnon Shaman" Jacob Chansley walking calmly through the halls of the Capitol with two Capitol Police officers.  At one point, one of the officers appears to try opening a door or elevator, and then turns and leads Chansley in another direction.  Later in the video clips, Chansley is seen walking past nine police officers gathered in a hallway intersection.  Chansley and his police escorts walk right past the nine officers without any resistance.

And then the Tucker Carlson show presented footage of officers calmly escorting Chansley (and apparently other protestors) into the Senate chamber.  The Washington Post wrote that Albert Watkins, Chansley's attorney through sentencing in November 2021, said he had been provided many hours of video by prosecutors, but not the footage which Carlson aired Monday night. He said he had not seen video of Chansley walking through Capitol hallways with multiple Capitol Police officers.

"What's deeply troubling," Watkins said Tuesday, "Is the fact that I have to watch Tucker Carlson to find video footage which **the government has, but chose not to disclose**, **despite the absolute duty to do so**. Despite being requested in writing to do so, multiple times."

Pezzola, likewise, has had a right to the same footage.  Yet the government has withheld it. The most disturbing footage of all, from the perspective Pezzola, is video shown on *Tucker Carlson* of protestor Chansley kneeling in a prayer amid a

4

group of around two dozen demonstrators and cops in the Senate Chamber. Chansley is shown giving a respectful prayer of thanks <u>to the Capitol Police officers</u> for "*letting us into the building.*"

This footage is plainly exculpatory; as it establishes that the Senate chamber was never violently breached, and—in fact—was treated respectfully by January 6 protestors. To the extent protestors entered the chamber, they did so under the supervision of Capitol Police. <u>The Senators on January 6 could have continued proceedings</u>.

It was **_not_** Pezzola or codefendants who caused the Congress to recess. Congress interrupted its own proceedings.

**This Brady evidence was requested many months ago, in this case.**

Codefendant Rehl demanded all information regarding reasons for Congress' recess as early as November 23, 2021, at Docket # 230 (Memorandum at #230-1).

While *Brady* obligations do not extend to the entirety of the government, they do include investigative agencies or agencies closely related who knew or should have known that information would be material to a prosecution arising from their direct involvement. Here the U.S. Capitol Police are directly related and fully aware of the events of January 6, 2021.

> The Supreme Court in *Brady* held that the Due Process Clause imposes on the prosecution an affirmative duty to disclose exculpatory information to the defense. Under Brady, suppression of evidence material to either guilt or punishment, whether or not there is bad faith on the part of the government, constitutes a due process violation. See 373 U.S. at 87, 83 S.Ct. 1194.

5

> However, the Brady doctrine requiring disclosure of exculpatory information has been extended to situations where a division of the police department not involved in a case has information that could easily be found by the prosecutors if they sought it out, see *Brooks*, 296 U.S.App. D.C. at 221, 966 F.2d at 1502, and there is a duty to search branches of government "closely aligned with the prosecution," id. at 222, 966 F.2d at 1503 (citation omitted). . . .

*Robinson v. United States of America*, 825 A.2d 318 (D.C. 2003).

*Furthermore,*

> "[T]he duty of disclosure affects not only the prosecutor, ***but `the government as a whole, including its investigative agencies,'*** because the Jencks Act refers to evidence gathered by `the government,' and not simply that held by the prosecution." *Wilson v. United States*, 568 A.2d 817, 820 (D.C.1990) (quoting *United States v. Bryant*, 142 U.S.App. D.C. 132, 140, 439 F.2d 642, 650 (1971) ("Bryant I"), on remand, 331 F.Supp. 927, aff'd, 145 U.S.App. D.C. 259, 448 F.2d 1182 (1971) ("Bryant II")).
>
> \* \* \*
>
> **Even when the prosecutor does not know about certain evidence, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."** *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555.

*Robinson v. United States*, 825 A.2d 318 326-329, (D.C. 2003).

**FINALLY, A CLEAR AND FLAGRANT SIXTH AMENDMENT VIOLATION WAS REVEALED IN COURT ON MARCH 8 WHICH SCREAMS FOR A DISMISSAL; OR ALTERNATIVELY, A MISTRIAL TO <u>BE DECLARED IMMEDIATELY</u>.**

6

Then, in the afternoon session of trial on March 8, it was revealed that the FBI has been monitoring privileged communications of codefendant Rehl and his attorney—and discussing Rehl's case strategy amongst each other. These revelations came out as codefendant Nordean's counsel Nick Smith cross-examined FBI Special Ageny Nicole Miller.

Smith revealed that a secret hidden tab in an FBI spreadsheet showed some of Agent Miller's emails in which the FBI agent admitted fabricating evidence and following orders to destroy hundreds of items of evidence.

If justice means anything, it requires this case to be dismissed. "A Sixth Amendment violation cannot be established without a showing that there is 'a realistic possibility of injury to the defendant' or 'benefit to the [government]' as a result of the government's intrusion into the attorney-client relationship." *United States v. Mastroianni*, 749 F.2d 900, 907 (1st Cir.1984)(*citing Weatherford*, 429 U.S. at 558, 97 S.Ct. at 845, 51 L.Ed.2d at 41).

Further, in *Weatherford* the Court looked for the following: (i) tainted evidence; (ii) communication of defense strategy to the prosecution; and (iii) purposeful intrusion by the government. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977).

In the *Nordean* case, confidential attorneys-client trial/defense strategy and position was wrongfully obtained by the government, about which was overheard,

shared, utilized, where potentially "338 items of evidence" were "ordered to be "destroyed". (*See* Miller Production at Entry 8137, dated February 1, 2022, email correspondence between kamcleod@ . . . and nmiller2@. . . .) (stating "also. . . my boss assigned me 338 items of evidence i (sic) have to destroy") (*See also* Miller Production at Entry 11159, dated July 13, 2022, email correspondence between dgsilk@ . . . and nmiller2@. . . .) (stating "You need to go into that CHS report you just put and edit out that I was present.").

Such information "benefitted the government" and consequently, each of the defendants – including Pezzola – suffered substantial prejudice. Any deprivation of the right to counsel and to a fair trial is, in itself, a basis for annulment of a determination resulting therefrom. U.S. CONST. 6TH AMEND; N.Y. CONST., ART. 1. §6; *Matter of Fusco v. Moses*, 304 N.Y. 424 (1952).

To require a defendant to show prejudice would of course implicate and most likely intrude into the attorney/client relationship, a consequence hardly commendable. It is apparent that the only way a defendant should have to show prejudice would be to disclose what evidence he and his counsel would have received. Therefore, to require the defendant to show harm would necessarily require the disclosure of attorney/client communications. As a result, it is implicit that an intrusion into communications protected by the attorney/client privilege would be prejudicial to the defendant. "[M]ere possession by the prosecutor of otherwise

8

confidential knowledge about the defendant's strategy or position is sufficient in itself to establish detriment to the criminal defendant." *Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir. 1983).

Moreover, it would be virtually impossible for the court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of its decisions. Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant. Such information is inherently detrimental... unfairly advantage[s] the prosecution, and threatens to subvert the adversary system of criminal justice. *Id.* at 494-95.

As highlighted in the recent defense findings of Special Agent Miller's communications, the government is responsible for deriving evidence from such communications. Prejudice may be presumed because "advice received as a result of a defendant's disclosure to counsel must be insulated from the government". *Id*. Further, "its highly unlikely a court can... arrive at a certain conclusion as to how the government's knowledge of any part of the defense strategy may benefit the government." *United States v. Levy*, 577 F.2d 200, 208 (3d Cir. 1978).

In *Coplon* the D.C. Court of Appeals held that the "right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Coplon v. U.S.*,

191 F.2d 749, 759, 89 U.S.App.D.C. 103 (U.S. Court of Appeals, D.C. 1951). Similarly, in *Caldwell,* the Government's intrusion upon the defendant's relationship with his lawyer "invalidates the trial at which it occurred. . .". *Caldwell v. U.S.*, 205 F.2d, 879, 881 (U.S. Court of Appeals D.C. 1953) , respectively.

In both *Caldwell* and *Coplon*, the District of Columbia Court of Appeals directed a new trial. In this matter, however, the intrusion has just been discovered and thankfully before any guilty verdict has been reached. For that reason alone, this matter must be treated as seriously as possible, right now – and the only remedy is to dismiss this case or grant a mistrial.

**CONCLUSION**

The Court should order dismissal of the indictment in this case, with prejudice.

Dated:  March 9, 2023                    RESPECTFULLY SUBMITTED

*/s/ Roger Roots*
Roger I. Roots, Esq
John Pierce Law
21550 Oxnard St,
3rd Floor, PMB #172
Woodland Hills, CA 91367
213.279.7648

*/s/ Steven Metcalf*
Steven A. Metcalf II, Esq.
Metcalf & Metcalf, P.C.
99 Park Avenue, 6th Floor
New York, NY 10016
646.253.0514 Phone
646.219.2012 Fax

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document is being filed on this March 9, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system.  All attorneys of record will receive an electronic copy, including:

      Erik Michael Kenerson
      U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
      555 Fourth Street, NW, Suite 11-449
      Washington, DC 20530
      Telephone:  (202) 252-7201
      Email: erik.kenerson@usdoj.gov

      /s/ Roger Roots