UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
| | ) |
| ETHAN NORDEAN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**NORDEAN'S NOTICE OF ARGUMENT IN SUPPORT OF HIS ABILITY TO CROSS-EXAMINE WITNESS ON CREDIBILITY AND OPPOSITION TO THE GOVERNMENT'S EMAIL MOTION TO PROVIDE WITNESS WITH IMPEACHMENT MATERIALS IN THE MIDDLE OF HER CROSS-EXAMINATION**

The Court ordered the parties to file any arguments by noon today concerning whether the defendants should be barred from using agent Miller's Lync messages in cross-examining her. At noon exactly, the government filed an 18-page brief that makes new factual assertions about these messages, including claims about why they do not mean what they appear to mean. ECF No. 687. Nordean will attempt to respond to those new arguments today but notes that he has less than 24 hours to do so before Miller's cross-examination resumes. In the meantime, Nordean offers this response:

Last week, Special Agent Nicole Miller was cross-examined as follows:

Q. Agent, one of your obligations as a case agent in this matter is to provide the prosecutors in this case with written statements that you've made about – that relate to the subject matter of your testimony. Is that right?

A. It is.

Q. Okay. And you understand that that's a legal obligation?

A. I do.

1

Q. There's a law that imposes that duty. Correct?

A. Yes.

. . . .

Q: You said you complied with the government's request to produce [your] Lync statements relating to the subject matter of your testimony. Correct?

A: I did.

Q: Did you withhold any statements that relate to the subject matter of your testimony that you made in the Lync messaging system?

A. No.

Q. So you provided every statement that you made in Lync that is related to the subject matter of your testimony?

A. Yes. I believe so.

Q. You didn't withhold Lync messages about whether a conspiracy exists in this case?

A. Now that I'm aware of.

Q. You didn't withhold Lync messages about whether Aaron of the Bloody East was not involved in the planning chats?

A. Not that I'm aware of.

. . . .

Q. Okay. And did you withhold Lync messages about whether inaccurate CHS-related information should be disclosed to the defense?

A. No.

Q. Okay. Did you withhold – have you ever gained access to the contents of attorney-client communications involving defense trial strategy in this case?

2

>A. Not that I can think of. No.
>
>Q. So another agent didn't tell you he had gained access to attorney-client communications about a Defendant in this case?
>
>A. Not that I can think of, no.

Tr. 12710-12711.

As the Court knows, the government produced to the defense an Excel spreadsheet containing Jencks statements agent Miller compiled for her testimony from FBI's Lync messaging system. The sheet contained approximately 25 rows of Lync messages. However, a close examination of the agent's sheet revealed thousands of hidden Excel rows of Lync messages—over 11,900 in total.

The hidden Lync messages were mostly sent from other agents to Miller rather than from Miller to other agents. However, even a passing glance at the hidden messages *to* Miller revealed missing messages *from* Miller. That is because the agents communicating with Miller in the exchanges can be seen responding to messages from Miller—which were absent even from the hidden Excel rows. These missing messages were plainly Jencks statements as they "relate[d]" to "the subject matter as to which the witness has testified," to say the least. 18 U.S.C. § 3500(b). Whether or not the missing messages formally constituted Jencks materials, however, they plainly contradict Miller's testimonial responses to these questions:

>-- "You didn't withhold Lync messages about whether a conspiracy exists in this case?"
>
>-- "You didn't withhold Lync messages about whether Aaron of the Bloody East was not involved in the planning chats?"

-- "And did you withhold Lync messages about whether inaccurate CHS-related information should be disclosed to the defense?"

-- "So another agent didn't tell you he had gained access to attorney-client communications about a Defendant in this case?"

At this point, cross-examination was stopped and the jury was sent home, prior to the end of the trial day. Tr. 12727. The following day, an attorney for the government appeared in Court and requested an opportunity to question agent Miller outside the presence of the jury and in the middle of her cross-examination. Questioning went as follows:

Q: Now, Special Agent Miller, Lync exists on the FBI's classified systems; is that correct?

THE WITNESS: Yes.

[Objections] . . . .

Q: Did the cover memo to that [Lync message] spreadsheet advise you that – did the cover memo advise you that the spreadsheet before it was reviewed, was classified at the Secret/NOFORN level?

[Objections, sidebar] . . . .

Q: Special Agent Miller, when you received the spreadsheet of messages back from headquarters, what was the class – what was the overall classification level of that spreadsheet?

THE WITNESS: Secret/NOFORN.

Tr. 12847-12852.

Finally, agent Miller explained how she received and compiled her Lync statements for production to the government:

Q: Now, do you recall the steps that you took to review the spreadsheet before you provided it to the U.S. Attorney's Office?

A: I believe I do, yes.

A: So there was over 15,000 messages. So I filtered by what I sent, because it was the information—my statements. So what I sent. And then I went through those messages, and anything that was relevant—**any statement I made is what I provided [to the U.S. Attorney's Office].**

Tr. 12851(emboldening added).

Agent Miller was then cross-examined on this subject:

Q: And you didn't remove any other – you didn't remove any messages of yours from the spreadsheet that was given to you by FBI headquarters?

A: What do you mean by – I didn't, like, remove anything, but I took some statements that, like—so if anything was related to this investigation and to what I was testifying to, those were provided. **Some of the internal conversations regarding, like, <u>administrative things</u> as far as case files and adding things to case files, that wasn't provided because it didn't relate to my testimony or to what we're doing.**

Tr. 12856-12857 (emboldening added).

After agent Miller concluded this testimony, Nordean apprised the Court that while the witness testified that "there was over 15,000 messages" in her Lync message spreadsheet originally, the version received by the defense contained "11,959 rows"—not all of which contained messages—implying 3,000 missing rows beyond the thousands of hidden rows. Tr. 12860.

5

The Court ordered the defense not to further review Miller's Lync message spreadsheet pending a classification review by the government.

On Friday, March 10, the government delivered a "cleared" version of Miller's spreadsheet to the defense, along with a cover letter. Among other things, the letter stated:

> It appears, based on SA Miller's testimony, that she "filtered" this spreadsheet so that it only showed the messages that she authored, and **then deleted those message (sic) that she had sent that appeared to be either classified or not subject to production under the Jencks Act.** At the time the government produced this document to you, it was not aware that it contained other messages, made by other individuals, that were by definition not subject to production under the Jencks Act (which requires only production of statements made by the witness).

3/10/23 Gov't Ltr, p. 1 (emboldening added).

As for classified material, the letter stated as follows:

> The government notes the following. **The classified document that was originally produced to you contained 11,955 rows**. A number of those rows, however, contained no message content. The government has deleted those rows (which represented system events such as "MediaStart" and "SessionEnd"), leaving only the rows that contain message content sent to or from SA Miller. The government has also deleted the "Index" tab because it is a classified document containing classified information. **Finally, the government removed approximately 80 rows from the spreadsheet that contained classified information <u>or other sensitive FBI information</u>.** None of those messages were authored by SA Miller. **The cleared version of the spreadsheet contains 5,231 rows.** The government will provide the Court a copy of the rows that it removed from the cleared version of the spreadsheet through the Court Information Security Officer.

3/10/23 Gov't Ltr, p. 2 (emboldening and underlining added).

The government's letter demanded that the defense destroy any original copies of the spreadsheet containing Miller's Lync production. Defense counsel received the letter at 1:44 pm on March 10. At 2:15 pm, Nordean asked the government to explain what evidentiary privilege would require the defense to destroy a discovery production containing "sensitive FBI information" and what that term meant. At 2:19 pm, Nordean inquired of the government how many of the 80 rows deleted by the government contained classified information and how many

6

contained "other sensitive FBI information." He also asked the government to identify which rows were classified and which were other sensitive FBI information. To date, the defense has received no response to these inquiries. The government has proffered no evidence that a single row of Miller's spreadsheet contains classified information.

As indicated, the government's latest production included (unclassified) messages that it says agent Miller deleted from the spreadsheet. For example, Nordean had flagged for the Court a Lync exchange where another agent in this investigation appears to direct Miller to remove his name from a CHS report. In the original spreadsheet, there were no visible messages from Miller in response to that demand. The government's updated Miller production shows Miller's messages:



After the agent states, "You need to go into that CHS report you just put and edit out that I was present," Miller replies, "For which one? The most recent one he cc you." Nordean requested that the government produce Miller's messages following "For which one?" The government has declined, on the ground that they are not relevant. Nordean moves the Court to order the government to produce the messages, at least for in camera review and so they may be entered into the record, at least under seal.

On the evening of March 10, the government emailed the Court, copying the defendants, asking for permission to share the updated Lync materials with agent Miller before she resumes the stand on March 13—including the government's letter signaling its position that it was Miller, and not the U.S. Attorney's Office, that deleted any of her Lync messages.

7

**Argument**

      Nordean expects the government to file a motion seeking to bar his use of all this material in cross-examining agent Miller. The government has indicated it will argue that it is all "outside the scope of direct." That argument does not make sense.

      The Federal Rules of Evidence define appropriate matters for cross-examination:

> Cross-examination should not go beyond the subject matter of the direct examination **and matters affecting the witness's credibility**. The court may allow inquiry into additional matters as if on direct examination.

Fed. R. Evid. 611(b) (emboldening added).

      As she herself testified, Miller has a legal duty to produce to the prosecutors (and then on to the defense) her statements related to the subject matter of her testimony. She testified she understood that duty. Relatedly but not identically, Miller testified she had withheld no statements from prosecutors about over three subject matters specifically identified in cross-examination (whether or not characterized as "Jencks"). She testified another agent didn't tell her he had gained access to attorney-client communications about a defendant in this case. Miller testified that she did not withhold Lync messages from prosecutors about whether inaccurate CHS-related information should be disclosed to the defense. Her Lync messages impeach her testimony on those subjects. *The government's March 10 letter states she deleted messages from her Lync spreadsheet about those subjects.*

      Whether the agent gave truthful testimony about her legal obligations related to her work on this case is patently a matter of credibility. The government's suggestion that it is "outside the scope of direct" is a non-sequitur. Rule 611 explicitly states that "matters affecting the witness's credibility" are not even analyzed under the "scope of direct" framework. For cross-examination "should not go beyond the subject matter of the direct examination *and* matters affecting the witness's credibility." Fed. R. Evid. 611(b) (emphasis added).

As the D.C. Circuit has explained, "matters affecting the credibility of the witness *are always open to cross-examination*." *United States v. Raper*, 219 U.S. App. D.C. 243, 676 F.2d 841, 846 (D.C. Cir. 1982) (emphasis added).

Nor is there any argument that these subjects of impeachment are "collateral." "[T]he basic test for determining whether a matter is collateral is whether facts described in the [extrinsic] statement could be relevant to any relevant purpose other than contradicting the witness's testimony." *United States v. Libby*, 475 F. Supp. 2d 73, 98 (D.D.C. 2007). Whether the witness has complied with her legal duty to produce Jencks statements in this case concerning, among other things, whether attorney-client communications have been improperly collected and reviewed, whether CHS reports that have been produced to the defense have been altered, and whether particular evidence supports a conspiracy charge, is plainly a subject "relevant to any relevant purpose other than contradicting the witness's testimony." *Id.*

Dated: March 12, 2023                                   Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

9

**Certificate of Service**

I hereby certify that on the 12th day of March, 2023, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

10