U.S. District Court

District of Columbia

UNITED STATES

v.                                          1:21-cr-00175-TJK

PEZZOLA, et al

DEFENDANT PEZZOLA'S OBJECTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS (PART 1)

Defendant Dominic Pezzola hereby objects to certain of the Court's proposed jury instructions, as rendered today, April 3, 2023. By undersigned counsel, Pezzola explains the following:

First, Pezzola objects to language in the Court's proposed **Burden of Proof** instruction. The proposed instruction contains the unconstitutional language indicating that "it is your duty to find him guilty of that offense." This is a "must convict" jury instruction which defies constitutional design, Article III, the 6th amendment, and the due process clause. Pezzola requests the instruction state that the jury **may** find the defendant guilty if the government proves its case beyond a reasonable doubt.

**Burden of Proof—Presumption of Innocence**

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until **you the jury determine** the government has proven he is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require the defendants to prove their innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which a defendant is charged, **you may find the defendant guilty**. ~~it is your duty to find him guilty of that offense~~. On the other hand, if you find the

government has failed to prove any element of a particular offense beyond a reasonable doubt, it is your duty to find a defendant not guilty of that offense.

### Pezzola's explanation for objecting:

A "jury has the power to bring in a verdict in the teeth of both law and facts." *Horning v. District of Columbia*, 254 U.S. 135, 138 (1920). See, generally, *People v. Jackson*, 390 Mich. 621, 625, n.2; 212 N.W.2d 918 (1973), quoting *Woodin v. Durfee*, 46 Mich. 424, 427; 9 N.W. 457 (1881) ("A jury may disbelieve the most positive evidence, even when it stands uncontradicted"); A jury "may indulge tender mercies even to the point of acquitting the plainly guilty." *People v. Allen*, 94 Mich. App. 539, 288 N.W.2d 451, 456 (Mich. App. 1980) (Danhof, C. J., concurring in part, dissenting in part); *In re Bagley Ave. in Detroit*, 248 Mich. 1, 6, 226 N.W. 688, 689 (1929) ("The jury . . . are not to be interfered with or dictated to by the judge. The jury are judges both of the law and facts" (citing *Toledo, etc., R. Co. v. Dunlap*, 47 Mich. 456; *Port Huron, etc., R. Co. v. Voorheis*, 50 Mich. 506; *Grand Rapids, etc., R. Co. v. Chesebro*, 74 Mich. 466). A judge "cannot give binding instructions, and the jury is the judge of both law and facts." *In re Owen and Memorial Parks*, 244 Mich. 377.

Juries may also render utterly nonsensical or illogical verdicts to grant mercy to defendants. They may, "on almost any excuse, convict of a lower degree of crime although conviction of a higher degree is clearly warranted." *People v. Clemente*, 285 App Div 258, 264; 136 NYS2d 202, 207 (1954); *People v. Lewis*, 415 Mich 443, 448-449; 330 NW2d 16 (1982); *People v. Phillips*, 385 Mich 30, 37; 187 NW2d 211 (1971) ("Even though the evidence for the people, if believed, shows the defendant to be guilty of the offense charged, this does not preclude a conviction of a lesser offense.") For this reason, a trial court commits reversible error in "affirmatively excluding

from the jury's consideration all possible verdicts except guilty or innocent of the principal charge." *People v. Jones*, 48 Mich. App. 470, 210 NW2d 497 (1973).

## THE ABSOLUTE POWER OF JURIES TO ACQUIT OFFENDERS IS AN ANCIENT ATTRIBUTE OF TRIAL BY JURY.

The power, right, and authority of criminal juries to issue "nullification" verdicts is recognized. See *United States v. Jones*, 580 F.2d 219, 223 (6th Cir. 1978) ("Congress intended to preserve the jury's traditional prerogative to ignore even uncontroverted facts in reaching a verdict" of not guilty.")

Juries are never required to find a defendant guilty when the Government meets its burden of proof, though they may do so. See *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73 (1977) (trial judges are prohibited from "directing the jury to come forward with [a guilty] verdict, regardless of how overwhelming the evidence may point in that direction"); *Gregg v. Georgia*, 428 U.S. 153, 199 n.50 (1976) (saying any legal system that would rob jurors of their discretion to acquit against the evidence would be "totally alien to our notions of criminal justice").

When jurors vote their consciences in trial deliberation, they are exercising the highest ideals behind the institution of trial by jury. See *Brotherhood of Carpenters v. United States*, 330 U.S. 395, 408 (1947) ("a judge may not direct a verdict of guilty, no matter how conclusive the evidence"); *United States v. Mentz*, 840 F.2d 315, 319 (6th Cir. 1988 ) ("Regardless of how overwhelming the evidence may be, the Constitution delegates to the jury, not to the trial judge, the important task of deciding guilt or innocence"); *Konda v. United States*, 166 F.91, 93 (7th Cir. 1908) (an accused has a right to a chance of a jury acquittal even where "the evidence against him is clear and uncontradicted, as he unquestionably would have if it were doubtful and conflicting");

*Buchnanan v. United States*, 244 F.2d 916 (6th Cir. 1957) (a trial judge cannot instruct a jury to convict even if the facts of guilt are undisputed); *Billeci v. United States*, 184 F.2d 394, 399 (D.C. Cir. 1950) (must-convict instruction "is not the law. The law is that if the jury believes beyond a reasonable doubt that the defendant has committed the alleged offense it *should* find a verdict of guilty" (emphasis added)).

Never has the Supreme Court, issued a decree that jurors must abandon their senses of justice, their assessment of the justness of laws, or their consciences if the government proves its case beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 317 n.10 (1979) (referring to the jury's "unassailable" power to issue an "unreasonable verdict of 'not guilty'"); *McCleskey v. Kemp*, 481 U.S. 279, 311 (1987) (criminal juries have an inherent discretionary power to "decline to convict" and such "discretionary exercises of leniency are final and unreviewable"); *Batson v. Kentucky*, 476 U.S. 79, 86-87 n.8 (1986) (the jury's role "as a check on official power" is, in fact, "its intended function"); *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969) (discussing jurors' well-established "power to follow or not to follow the instructions of the court"); *United States v. Wilson*, 629 F.2d 439, 443 (6th Cir. 1980) ("a jury is entitled to acquit the defendant because it has no sympathy for the government's position. It has a general veto power").

American law has always enshrined the principle that no juror can ever be punished for his verdict. See *People v. St Cyr*, 129 Mich App 471 (1983). This principle has been recognized for three centuries. See *Bushell's Case* in 1670 (Howell's State Trials, Vol. 6, Page 999 (6 How. 999)).

For the same reasons explained above, Pezzola objects to language on page 34, 38, and 40 indicating that jurors "should" convict. The language should be changed to "may."

**The Court's proposed "reasonable doubt" instruction does not impart upon the jury the seriousness of the jury's role.**

Next, Pezzola objects to the Court's proposed reasonable doubt instruction.  <u>The Court's proposal contains more sentences about what the government doesn't need to prove than sentences about what the government must prove.</u>  The Court proposes to give an instruction that "Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt." Thus, this proposed instruction stresses that the standard for conviction is nothing extraordinary, and is in fact a simple mundane calm analysis. Then the Court's proposed instruction continues along this line: "However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason.  The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty."

This proposed instruction repeats multiple sentences about what the government is <u>not</u> required to prove, but very few words about the gravity and seriousness of a juror's vote to convict. Moreover, the proposed instruction fails to instruct the jury that "beyond a reasonable doubt" is the highest burden of proof known in the law.

**Pezzola objects to proposed instructions regarding witness guilty pleas.**

Third, Pezzola objects to the Court's proposed instruction regarding witness's guilty pleas. The Court's proposal wrongly suggests that only two witnesses pled guilty to offenses, Matthew Greene and Jeremy Bertino.  In fact, Jeffrey Finley, a defense witness, also pled guilty to charges stemming from Jan. 6, but the Court suppressed such evidence from the jury. Pezzola objects to this entire instruction because it would wrongly and misleadingly inform the jury that Bertino's and Greene's (very serious, felony, conspiracy, and "sedition") please are representative of guilty

pleas relating to Jan. 6. (The jury will be unaware that the vast majority of guilty pleas relating to Jan. 6 have been misdemeanors.)

**Additionally, Pezzola objects to the Court's bolstering of government claims regarding Bertino and Greene.** The proposed instruction stresses that Bertino and Greene "agreed to testify truthfully in this case and the government agreed not to pursue certain charges against them and bring their cooperation to the attention of their sentencing judge and consider filing papers which would permit that judge to impose a more lenient sentence than that judge might otherwise be able to impose." Then the proposed instruction would state, unecessarilly and without apparent relevance, that "the government is permitted to enter into these kinds of plea agreements." To further bolster Bertino and Greene, the proposal would tell jurors that "You, in turn, may accept the testimony of such witnesses and convict a defendant on the basis of this testimony alone." (!) (No other witnesses in the case are similarly bolstered or emphasized.)

Then, **yet again**, the Court proposes to remind the jury about how honest Bertino and Greene were: "Witnesses who have entered into plea agreements are under the same obligation to tell the truth as are any other witnesses; the plea agreement does not protect them against a prosecution for perjury or false statement, should they lie under oath."

Pezzola contends that this proposed instruction wrongly bolsters the credibility of Bertino and Greene.

Pezzola submits that the jury should be instructed regarding the fallibility of guilty pleas as a reflection of true guilt. People have many reasons for pleading guilty to charges,[1] including

---

[1] See, e.g., *United States v. Thomas*, 541 F.Supp.2d 18 (D.D.C. 2008) (counsel's advice that defendant plead guilty was reasonable strategy, reflecting counsel's

convenience, risk aversion, family pressures, financial concerns, or influence by attorneys.[2] And courts sometimes accept guilty pleas for reasons unrelated to the guilt or innocence of parties.[3]

---

assessment that defendant's claim of innocence would not be believed); *Rhoades v. State*, 880 N.W.2d 431, 437 (Iowa 2016) ("Increasingly, there is empirical evidence to support the assertion that innocent people sometimes plead guilty."); *North Carolina v. Alford*, 400 U.S. 25 (1970) (an accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when, as here, he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt). *See also Rhoades v. State*, 880 N.W.2d 431, 449 (Iowa 2016);*Christian v. Ballard*, 792 F.3d 427, 444 (4th Cir.2015) and *Brady v. United States*, 397 U.S. 742, 752 (1970). As noted by the United States Supreme Court in *Brady*, factors favoring pleas include risk avoidance, conservation of prosecution and court resources, efficiency, and timeliness of disposition. 397 U.S. 742, 752 (1970).

[2] Frank H. Easterbrook, *Plea Bargaining as Compromise*, 101 Yale L.J. 1969, 1975 (1992) ("So plea bargaining helps defendants. Forcing them to use their rights at trial means compelling them to take the risk of conviction or acquittal; risk-averse persons prefer a certain but small punishment to a chancy but large one. Defendants also get the process over sooner, and solvent ones save the expense of trial. Compromise also benefits prosecutors and society at large."); Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 YALE L.J. 1909 (1992) ("risk averse defendants, meaning in part innocent ones, might well avoid the possibility of conviction at trial even at the cost of accepting a deal that treats them as if they were certain to be convicted at trial."). Kevin C. McMunigal, *Guilty Pleas, Brady Disclosure, and Wrongful Convictions*, 57 Case W. Res. L. Rev. 651, 656 (2007) (Many scholars now recognize that at least in some circumstances, an innocent person may rationally decide to plead guilty); see also John H. Blume & Rebecca K. Helm, *The Unexonerated: Factually Innocent Defendants Who Plead Guilty*, 100 Cornell L. Rev. 157, 180 (2014) [hereinafter Blume & Helm];; see also *Why Are People Pleading Guilty to Crimes They Didn't Commit?*, Innocence Project (Nov. 25, 2015), www.innocenceproject.org/news-events-exonerations/2015/why-are-people-pleading-guilty-to-crimes-they-didn2019t-commit/.

[3] Numerous courts have concluded that they should not 'force any defense on a defendant in a criminal case,' particularly when advancement of the defense might 'end in disaster.' *Tremblay v. Overholser*, 199 F.Supp. 569, 570 (DC 1961). Since 'guilt, or the degree of guilt, is at times uncertain and elusive,' '(a)n accused, though believing in or entertaining doubts respecting his

innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence by pleading guilty. . .' *McCoy v. United States*, 363 F.2d 306, 308 (DC Cir. 1966). As one state court observed nearly a century ago, '(r)easons other than the fact that he is guilty may induce a defendant to so plead, . . . (and) (h)e must be permitted to judge for himself in this respect.' *State v. Kaufman*, 580, 2 N.W. 275, 276 (Iowa 1879) (dictum). See also *Griffin v. United States*, 405 F.2d 1378 (DC Cir. 1968); *Bruce v. United States*, 379 F.2d 113, 119—120 (D.C. Cir. 1967); *City of Burbank v. General Electric Co.*, 329 F.2d 825, 835 (9th Cir. 1964) (dictum); *State v. Martinez*, 403 P.2d 597, 602—603 (Id. 1965); *People v. Hetherington*, 379 Ill. 71, 39 N.E.2d 361 (1942); *State ex rel. Crossley v. Tahash*, 116 N.W.2d 666, 672 (Minn. 1962); *Commonwealth v. Cottrell*, 249 A.2d 294 (Pa. 1969). Cf. United States ex rel. Brown v. LaVallee, 424 F.2d 457 (2nd Cir. 1970).

And it is well documented that judges regularly accept false guilty pleas. See Hon. Jed S. Rakoff, *Why Innocent People Plead Guilty*, N.Y. Rev. Books (Nov. 20, 2014), www.nybooks. com/articles/2014/11/20/why-innocent-people-plead-guilty/.  In 2015, for example, the National Registry of Exonerations reported that 65 out of 149 exonerations arose from guilty pleas. The National Registry of Exonerations, *Exonerations in 2015* 1 (2016), www.law.umich.edu/special/exoneration/Documents/Exonerations_in_2015. pdf. Thirteen percent of all wrongful convictions listed in the National Registry of Exonerations are the result of guilty pleas. The National Registry of Exonerations, *The First 1,600 Exonerations* 2 (2015), www.law.umich. edu/special/exoneration/Documents/1600_Exonerations.pdf (collecting data from 1600 exonerations occurring between January 1989 and May 2015). According to the Innocence Project, 31 of the 330 postconviction DNA exonorees pled guilty to serious crimes. Alexandra Natapoff, Negotiating Accuracy: DNA in the Age of Plea Bargaining 3 & n. 15 (forthcoming 2016) [hereinafter Natapoff, Negotiating Accuracy ], http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2693218.

Additional evidence that guilty pleas may be inaccurate can be found in the record of mass exonerations arising from the Rampart and Tulia investigations in California and Texas. See Russell Covey, *Police Misconduct as a Cause of Wrongful Convictions*, 90 Wash. U. L. Rev. 1133, 1137–41 (2013) [hereinafter Covey, Police Misconduct ].  In these mass exonerations, defendants pled guilty eighty-one percent of the time. Id. at 1163. These defendants no doubt pled guilty because they feared they would do much worse if they proceeded to trial. Id. at 1166. The Rampart and Tulia experiences suggest that the problem of wrongful conviction is not limited to those who contest their guilt at trial and that in the context of these episodes,

## Pezzola objects to the Court's proposed instruction regarding conspiracy.

The Court's proposed language significantly waters down the government's burden of proof for conspiracy. Pezzola objects to language on page 17 which states the government may prove its conspiracy if "two or more persons in some way or manner, either explicitly or implicitly, came to an understanding. . . " By this standard, entirely innocent people could be convicted for entirely innocent conduct.

"What the government must prove beyond a reasonable doubt," proposes the Court, "is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective." The phrase "some type" of agreement understates the requirements of the law.  Pezzola joins all other colleagues and co-counsel's objections relating to this proposed conspiracy instruction.

### Pezzola objects to the Court's proposed "seditious conspiracy" instruction.

Pezzola has previously filed proposed language and legal points regarding "seditious conspiracy, and Pezzola renews these points now in objection to the Court's proposed language. Sedition is akin and a lesser-included crime related to treason. By constitutional design, treason is very difficult to prove. The Constitution's Framers deliberately watered down the law of

---

at least, the method of conviction made little difference to the reliability of the underlying conviction. Id. at 1163. *Corley v. United States*, 556 U.S. 303, 321 (2009) ("[T]here is mounting empirical evidence that [interrogation tactics] can induce a frighteningly high percentage of people to confess to crimes they never committed….").

treason as previously known in Anglo-American law.  The Framers declined to enshrine the U.S. government as some type of divine, sacred or unchallengeable edifice.

Additionally, as Pezzola's previously filed First Set of Proposed Jury Instructions indicated, treason and/or sedition require a degree of <u>military force</u>, not just violence by an individual or group.   And the intent must be to overthrow the American constitutional order; not just a particular candidate, politician, or official.

**Pezzola objects to the Court's proposed 1512 "obstruction of an official proceeding" instruction.**

Next, Pezzola objects to the Court's proposed instructions regarding section 1512 along the lines Pezzola has already asserted.  Pezzola renews his filed objections and proposed instructions and joins all other codefendants' and colleagues' objections, remarks and arguments regarding this/these instructions.  As proposed, the Court's instruction would allow a protestor who holds up a protest banner at a school board meeting to be convicted and sentenced to twenty years in federal prison.

**Pezzola asks for "attempt" to be the default verdict unless specified or laid out in a special verdict form.**

Counsel have learned from lawyers in previous ("Oathkeeper") trials that sentencing guidelines calculate "attempt" lower than full execution of a substantive crime, and thus, convictions on counts involving "attempt" allegations invoke some sentencing-range confusion. For this reason, Pezzola asks that conviction on relative counts to mean "attempt" by default.

RESPECTFULLY SUBMITTED,

/s/ Roger Roots, esq.

Co-counsel for Defendant Pezzola

CERTIFICATE OF SERVICE

I hereby certify and attest that on April 3, 2023, I caused this document to be uploaded into this Court's electronic filing system, thereby serving it upon all parties of record.

/s/ Roger Roots