UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 1:21-cr-175 (TJK) |
| v. | : | |
| | : | |
| DOMINIC PEZZOLA, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT PEZZOLA'S
MOTION TO COMPEL

By motion dated April 5, 2023, defendant Pezzola asks this Court to compel the

government to disclose the "names, identities, and reports of all HSI confidential informants

operating at or near the Capitol or around the Proud Boys on January 6, 2021."  ECF No. 734 at

11.  In support of this motion, which relies on uncontrolling caselaw from the District of Columbia

Court of Appeals, defendant Pezzola claims that the existence of confidential human sources in an

otherwise unidentified "Homeland Security Unit" are "almost certainly exculpatory for Pezzola."

*Id.* at 1.

There are more than 18,000 federal, state, and local law enforcement agencies in the United

States.  *See, e.g.,* Bureau of Justice Statistics, 2018 Census of State and Local Law Enforcement

Agencies, *available at https://bjs.ojp.gov/library/publications/census-state-and-local-law-*

*enforcement-agencies-2018-statistical-tables*; Bureau of Justice Statistics, 2020 Census of Federal

Law Enforcement Officers, *available at https://bjs.ojp.gov/sites/g/files/xyckuh236/files*

*/media/document/fleo20st.pdf.*  And the term "Homeland Security Investigations" is not specific

to any one organization.  The Department of Homeland Security runs a Homeland Security

Investigations Bureau that is "responsible for investigating transnational crime and threats,

specifically those criminal organizations that exploit the global infrastructure through which

international trade, travel and finance move [in order to] investigate, disrupt and dismantle terrorist, transnational and other criminal organizations that threaten or seek to exploit the customs and immigration laws of the United States." *See* Department of Homeland Security, U.S. Immigration and Customs Enforcement, Department of Homeland Security, About ICE – Who We Are, *available at https://www.ice.gov/about-ice/homeland-security-investigations.*  But such nomenclature is not reserved for DHS.  A quick internet search demonstrates that many local law enforcement agencies also have units designated "Homeland Security Investigations."  Indeed, even the D.C. Metropolitan Police Department has a "Homeland Security Bureau," which exists to "ensure that the District is well protected and that the government works to prevent and is prepared to respond to threats and critical incidents."  *See* Metropolitan Police Department, Homeland Security Bureau, About MPDC, *available at https://mpdc.dc.gov/page/homeland-security-bureau.*

It should be entirely unsurprising to counsel for Dominic Pezzola that law enforcement has an interest in monitoring the activities of the Proud Boys.  From their presence at the 2017 Unite the Right Rally in Charlottesville, Virginia, to their 2018 brawl outside New York City's Metropolitan Republican Club, to their protests in the Pacific Northwest in 2019-20, to their actions in Washington, D.C. in 2020-21 that are the subject of this prosecution – the Proud Boys have been associated with violence since their inception.  Federal, state, and local law enforcement have an obligation to protect and serve their constituents, and it is reasonable that these law enforcement agencies would want to know about and prepare in advance for potential violence by the Proud Boys.

And there is nothing *per se* exculpatory about using confidential human sources to gather such information.  As defendant Joseph Biggs has stipulated, "Confidential Human Sources (CHS)

are used by the Federal Bureau of Investigation (FBI) to gather information that the FBI uses to investigate crimes and to monitor potential threats to domestic or national security." *See* Biggs Joint Ex. 2.  Indeed, the use of sources is commonplace by both federal and state law enforcement agencies.  Certainly this fact is unsurprising to defendant Enrique Tarrio, whose defense is premised, in part, on the claim he provided information about Proud Boys' movements to MPD Lieutenant Shane Lamond in the summer and fall of 2020.

So where is the government to look to respond to defendant Pezzola's query?  Should we seek to inquire of each of the 18,000 law enforcement agencies individually?  Should we perhaps seek permission of the Court to subpoena this information by publication?  Helpfully, there is a body of controlling caselaw that answers these questions.

Federal Rule of Criminal Procedure Rule 16 (a)(1)(E) requires the government to disclose items in the government's "possession, custody, or control" where the item is "material to preparing the defense."  And it is well established that the government must disclose exculpatory information to the defendant.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Impeachment evidence, . . . as well as exculpatory evidence, falls within the Brady rule." *United States v. Bagley,* 473 U.S. 667, 676 (1985) (citing *United States v. Giglio*, 405 U.S. 150, 154 (1972)).

But the government's obligation to search for such information extends only to the "prosecution team," and those agencies closely aligned with it.  *See United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)); *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)

(*Brady* covers "branches of government closely aligned with the prosecution").  Certainly in an investigation as large as the government's investigation into the events of January 6, there are several law enforcement agencies closely aligned with the prosecution.  *See United States v. Libby*, 429 F. Supp. 2d 1, 9 (D.D.C. 2006) ("The 'possession, custody, or control' inquiry is fact-intensive and must be resolved on a case-by-case basis."); *see also United States v. Alexander Sheppard,* No. 21-cr-203 (JDB), 2022 WL 17978837, at \*11 (D.D.C. Dec. 28, 2022) (finding that the United States Secret Service was sufficiently aligned with the prosecution team to require provision of "quite limited" discovery based on the materiality requirement).

Defendant Pezzola does not identify the agency that runs the "Homeland Security Investigations" unit, nor does he contend that this unit is closely aligned with the prosecution team. And, indeed, the government is aware of no involvement in Dominic Pezzola's case by any unit so identified.  Defendants in this case have asserted that the existence of FBI CHSs is material to their defense because if there was a "plan" to storm the Capitol, those CHSs would have reported the existence of this plan to their FBI handlers in advance of January 6.  The government has conducted a diligent search and has found no information that suggests that the specific individual identified by counsel for defendant Pezzola, whose name was appropriately redacted from his filing, is a confidential human source for the FBI or for any other agency that is closely aligned with the prosecution team.

**CONCLUSION**

For the foregoing reasons, defendant Pezzola's motion to compel should be denied.

Respectfully Submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Jocelyn Ballantine*
JOCELYN BALLANTINE, CA Bar No, 208267
Chief, Complex Conspiracy Unit
Capitol Siege Section


*/s/ Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530
(202) 330-1788
Conor.Mulroe@usdoj.gov

*/s/ Jason B.A. McCullough*
JASON B.A. MCCULLOUGH
        NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
        On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530