UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DOMINIC PEZZOLA,

*Defendant*.

Criminal Action No. 21-175-6 (TJK)

## MEMORANDUM ORDER

Before the Court are two motions from Defendant Pezzola to dismiss the indictment or declare a mistrial. The first is his Motion for Dismissal with Prejudice or, Alternatively, for a Mistrial, ECF No. 679. The second is his Motion for Dismissal, ECF No. 686. On top of the substantive relief he seeks, Pezzola requests an evidentiary hearing and the appointment of a special master or special counsel to investigate his claims. In these motions, he argues that: (1) the evidence has failed to show his guilt on two counts; (2) he has been deprived of exculpatory evidence in the form of certain video footage recently aired on television; (3) the Government has invaded a codefendant's attorney-client privilege; and (4) the Government has engaged in other misconduct. For the reasons below, the Court will deny both motions, which lack legal and factual support.

**I.  An Alleged Evidentiary Insufficiency Does Not Warrant Dismissal of the Indictment**

Pezzola's first argument is that the evidence has disproved his guilt as to two counts of the indictment. *See* ECF No. 679 at 1–3. But a dismissal of an indictment must be based on a "defect" in the charging document itself. *See* Fed. R. Crim. P. 12(b)(3)(B). The Court is limited to the "*face* of the indictment" in evaluating the propriety of dismissal and so must accept its allegations

as true. *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quotation omitted). If the evidence cannot sustain a conviction, the appropriate remedy is a judgment of acquittal, not dismissal. *See* Fed. R. Crim. P. 29(a). The appropriate time for considering such a motion is, at the earliest, the close of the government's case. *See United States v. Wahl*, 290 F.3d 370, 373–74 (D.C. Cir. 2002). When Pezzola filed these motions, the Government had yet to rest. Now that it has, he has so moved. *See* ECF No. 708. And the Court has reserved ruling on his and his codefendants' motions, as the rules allow. *See* Fed. R. Crim. P. 29(b). Thus, no relief is appropriate.

## II.     Pezzola Has Not Been Deprived of Exculpatory Video Footage

Pezzola's second argument is that he has been deprived of exculpatory evidence in the form of video footage that was recently aired on television. *See* ECF No. 679 at 4–6. That conclusion relies on the legal premise that the video footage is exculpatory and the factual premise that the footage was not produced to him in discovery. Pezzola has not shown that either premise is so.

A defendant can show that the government violated its constitutional obligation to disclose evidence if he shows (1) "that the evidence at issue is favorable to the accused," (2) "that the evidence was suppressed by the State, either willfully or inadvertently," and (3) that the evidence is "material." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). Evidence is favorable to the accused if it tends to "show freedom from fault, guilt, or blame." *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997). Evidence is suppressed if the government does not timely disclose it to the defense. *See Borda*, 848 F.3d at 1066–67. And evidence is material if there is a "reasonable probability" that its suppression could change the "result of the proceeding." *See United States v. Pasha*, 797 F.3d 1122, 1133 (D.C. Cir. 2015). Pezzola has not satisfied any of these elements.

Pezzola has not shown that the video footage tends to show his innocence. Whether evidence tends to absolve a defendant depends partly on the crimes with which he has been charged. *See United States v. Hsia*, 30 F. App'x 1, 3–4 (D.C. Cir. 2001) (per curiam). In other words, evidence is "of no consequence" if it does not relate to an element of a charged offense. *Id.* at 4. Pezzola identifies footage—of other people—treating the Capitol "respectfully" after entering it. *See* ECF No. 679 at 4–5. He concludes "that the Senate chamber was never violently breached" and that there is no "evidence of any raucous or extremely disruptive or violent demonstration in the Senate chamber." *Id.* at 3–4. But Pezzola has not shown how any of this relates to an element of an offense with which he is charged—or how it relates to him at all. Thus, it does not tend to show his "freedom from fault, guilt or blame." *Blackley*, 986 F. Supp. at 603.

Nor has the evidence been suppressed. As the Court has already explained to Pezzola, he cannot base a *Brady* claim on information he has long possessed. *See* ECF No. 675 at 5 (citing *Pasha*, 797 F.3d at 1133). The Government reports that it sent him most of the footage he identifies in September 2021 and the remainder in January 2023. ECF No. 689 at 3 & n.4. Pezzola replies that his counsel was nonetheless "unfamiliar" with the footage. ECF No. 704 at 1. That is no answer. Whether Pezzola's counsel viewed the footage is not within the Government's control and so cannot support a conclusion that it "suppressed" the evidence. *See Pasha*, 797 F.3d at 1133.

Even more to the point, Pezzola has—and is "familiar" with—the footage now. A *Brady* claim is "rarely" successful "where the defendant obtains the information in time to use it at the trial." *Borda*, 848 F.3d at 1067. In such cases, the defendant must explain why it is reasonably likely that the timing of the disclosure could affect the trial's result. *See id.* Pezzola has not attempted to do so. When he filed his motion, he had not yet begun presenting his defense, leaving him free to seek to introduce the footage. Again, there is no basis for the Court to order any relief.

3

**III.     The Government Has Not Violated Pezzola's Sixth Amendment Rights**

Pezzola's third argument is that the Government has violated the Sixth Amendment by intercepting communications between Defendant Rehl and his then-lawyer over an email system at Rehl's detention facility. *See* ECF No. 679 at 6–10. That conclusion relies on the premises that the communications he identifies were protected by attorney-client privilege and, implicitly, that the communications could have revealed information relating to Pezzola's trial strategy. Again, to put it mildly, Pezzola has not met his burden.

As the Court has already held in denying Rehl's own motion on this issue, he waived any claim to privilege over his communications with his former attorney on this platform. *See* ECF No. 731. But in any event, even if Rehl had not waived the privilege, Pezzola "lacks standing to assert the Sixth Amendment rights of his co-defendants." *United States v. Ramirez*, 50 F. App'x 257, 258 (6th Cir. 2002); *accord United States v. Johnson*, 267 F.3d 376, 380 (5th Cir. 2001); *United States v. Sims*, 845 F.2d 1564, 1568 (11th Cir. 1988). Construed generously, his claim is that the Government may have learned about the "defense's strategy," including his. ECF No. 679 at 9. But Rehl and his former lawyer sent the relevant messages in the fall of 2021. ECF No. 709 at 2. Pezzola was not joined to this case until March 2022. *See* ECF No. 305. So even though the Government correctly points out that defendants have no joint-defense agreement and do not necessarily share a strategy, ECF No. 689 at 8, all of that is unnecessary to find no "realistic possibility of injury" to Pezzola, *see Weatherford v. Bursey*, 429 U.S. 545, 558 (1977). Any strategy the Government might have gleaned from the messages long predated Pezzola's joinder in the case and so cannot have involved him. And the Court has reviewed the messages; unsurprisingly, none reference Pezzola.

4

## IV. There Is No Evidence of Government Misconduct, Let Alone Misconduct Warranting Dismissal, a Mistrial, or Other Sanctions

Pezzola's fourth and final argument is that Government misconduct warrants dismissal of the indictment. His conclusion is based on messages sent to Special Agent Nicole Miller that the Government inadvertently disclosed as part of the agent's *Jencks* production, including fragments of conversations about many topics unrelated to this case. *See generally* ECF No. 687 at 1–2. The messages were sent via an internal FBI "communication system." *Id.* at 1.

The Court must evaluate a request for dismissal on these grounds under a daunting legal standard. Although courts have acknowledged the power to dismiss indictments as "an exercise of supervisory power over the conduct of federal law enforcement agents," that power can be exercised only "in the rare instance of 'police overinvolvement in crime' that reaches 'a demonstrable level of outrageousness.'" *United States v. Kelly*, 707 F.2d 1460, 1476 (D.C. Cir. 1983) (Ginsburg, J., concurring) (quoting *Hampton v. United States*, 425 U.S. 484, 495 & n.7 (1976) (Powell, J., concurring)). The D.C. Circuit has explained that such outrageous conduct must take the form of "coercion, violence, or brutality to the person." *United States v. McKeever*, 824 F.3d 1113, 1128 (D.C. Cir. 2016) (quoting *United States v. Hinds*, 329 F.3d 184, 190 (D.C. Cir. 2003)). Thus, a court's power to dismiss an indictment on this basis is "frequently discussed but rarely invoked." *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979).

Pezzola tries to surmount that standard only with conjecture. For example, the closest he comes to claiming coercion, violence, or brutality by the FBI is his charge that it "track[ed] [defendants' and alleged coconspirators'] emotional states, family relationships and financial conditions in real time, in order to exploit such pressures into getting false guilty pleas from codefendants." ECF No. 686 at 2 n.5. He does not, however, point to any message that justifies that assertion. Instead, Pezzola's counsel says he "recalls" having perceived an FBI agent's "understanding"

5

that such tracking was happening.  *Id.*  The Court is unaware of any message or other evidence that supports Pezzola's bizarre conclusion.

Insofar as Pezzola identifies specific messages, they do not approach the legal standard for dismissing an indictment, at least on their face.  He claims that FBI agents "admitted fabricating evidence and following orders to destroy hundreds of items of evidence." ECF No. 679 at 7.  For the former claim, he relies on a message from an unnamed FBI agent to Special Agent Miller: "You need to go into that [Confidential Human Source] report you just put [together] and edit out that I was present." *See* ECF No. 678 at 2; ECF No. 679 at 8.  For the latter, he relies on another message from an unnamed agent to Special Agent Miller: "[M]y boss assigned me 338 items of evidence [I] have to destroy." ECF No. 679 at 8; ECF No. 710 at 4.  Those statements do not hint at "coercion, violence, or brutality to the person." *See McKeever*, 824 F.3d at 1128.

In any event, the statements themselves and the Government's explanations for them all but debunk Pezzola's theories and make clear no relief is warranted at all, let alone dismissal of the indictment or a mistrial.[1]  The first message might relate to "fabricati[on]" of evidence only if the agent was in fact "present" for a communication with a source and the report was changed to conceal his presence.  But Special Agent Miller's sworn testimony contradicted that thesis.  She explained that the agent was the supervisor responsible for approving the report, but the FBI's "system" for doing so does not allow a person who is listed as "present" for a communication from a source to approve the report.  Trial Tr. 12947–49.  So the agent asked for the edit because he was, by that time, in a supervisory role, no longer handling the source, and would be unable to

---

[1] Alternatively, Pezzola asserted "a right to cross-examine [Special] Agent Miller" about his accusations of misconduct.  ECF No. 686 at 4.  The Court resolved the appropriate scope of cross-examination on these matters separately, ultimately allowing inquiry into the message about the CHS report.

approve the report if listed as present. Trial Tr. 12949–51. But Special Agent Miller said she understood the author of the message to have been "present" for the communication because he was copied on an email from the source. Trial Tr. 12949. After discussing the issue with the other agent to explain her reason for listing him present on the report, she believes "he stayed on [the report] and somebody else . . . approved [it]." Trial Tr. 12955–56. In short, the uncontroverted record reveals the agent's request to alter the report stemmed from a simple miscommunication. And in the end, there is no evidence the report was altered—nefariously or otherwise.

The Government has proffered a similarly anodyne explanation for the second message. It represents that the message's author was referring to another case, a "nearly 20-year-old multi codefendant trial" in which the time for appeal had passed. ECF No. 710 at 5. Destroying evidence, it explains, "is a routine part of the lifecycle of every criminal case." *Id.* It represents that "[t]he case was not related to this prosecution, and the agent was not involved in this investigation." *Id.* Of course, it is no secret that the Department of Justice routinely disposes of evidence in criminal cases once a defendant has exhausted his appellate rights. *See* Justice Manual § 9-14.000 et seq. ("Procedure for Disposal of Seized Evidence in Closed Criminal Cases").

In sum, the Court is satisfied that neither an evidentiary hearing nor relief of any kind is warranted on this record.[2] Pezzola's cries of foul play rest on "unfounded speculation," which this

---

[2] Several forms of relief Pezzola seeks are well beyond this Court's authority, as he surely knows. He says, for example, that "[a]ll January 6 prosecutions should be paused." ECF No. 686 at 4 (emphasis deleted). But this Court, of course, has no "jurisdiction to review the decision[s] of other district courts." *Atchison v. U.S. Dist. Courts*, 190 F. Supp. 3d 78, 87 (D.D.C. 2016). And Pezzola has no more right to ask for relief for defendants in other cases than he does for his codefendants. Pezzola's request for a special master and special counsel relies on a rule of *civil* procedure, ECF No. 686 at 1 n.1, and a regulation permitting the "*Attorney General*" to appoint a "Special Counsel" to investigate potential criminality when doing so "would present a conflict of interest for the Department [of Justice]," *id.*; 28 C.F.R. § 600.1 (emphasis added). Even if the Court had inherent equitable power to appoint a special master or special counsel, *cf. Trump v. United*

Court has already cautioned "has no place in a courtroom." Trial Tr. 12919. Special Agent Miller provided a full and uncontradicted explanation of the first message under oath. As for the second, consistent with the Government's representations, nothing in the record suggests that the evidence the agent says she was tasked with destroying had anything to do with Pezzola, this case, or any January 6–related investigation; that the agent at issue had any involvement in this case; or that the conduct with which she was tasked was anything more than routine.[3]  Moreover, because Special Agent Miller testified that she never reviewed these inadvertently disclosed messages from other agents to screen them for relevance—*see* Trial Tr. 12851—it makes sense that many messages with no connection to this case from agents with no connection to this case would have been present in the overproduction. Yet Pezzola would have the Court assume from the face of the message alone that this agent was not referencing a tedious administrative assignment, but government misconduct of the gravest sort relating to this case. This the Court will not do.

For all these reasons, the Court will not conduct an evidentiary hearing. "[W]eak and

---

*States*, No. 22-13005, 2022 WL 4366684, at *7–9 (11th Cir. Sept. 21, 2022), it declines to invoke that power for the same reasons it will not conduct an evidentiary hearing.

[3] Even if Pezzola had made a threshold showing that the "destroyed" evidence related to this case, *Arizona v. Youngblood*, 488 U.S. 51 (1988), would provide the appropriate framework to evaluate his corresponding due process claim. But he has neither cited nor attempted to satisfy that standard. Under *Youngblood*, "[t]he government violates the Due Process Clause of the Fifth Amendment when it 'fails *in bad faith* to preserve *material* and *potentially exculpatory* evidence.'" *United States v. Taylor*, 312 F. Supp. 3d 170, 176 (D.D.C. 2018) (quoting *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991)). But "[w]hen the exculpatory value of the evidence the government fails to preserve is [not] apparent at the time of the evidence's loss or destruction, bad faith can[not] be inferred from the nonpreservation itself." *Id.* at 177 (citing *Youngblood*, 488 U.S. at 56 n.*). Rather, in such cases, "a defendant bears the burden of 'show[ing] bad faith on the part of the police.'" *Id.* at 176 (*Youngblood*, 488 U.S. at 57–58). Against this burden, Pezzola offers nothing but fantastical inferences stemming from FBI surveillance techniques from the 1970s. *See* ECF No. 686 at 5–6. Indeed, he makes no effort to even speculate as to the nature of the evidence. On this record, no further inquiry is warranted. *See Taylor*, 312 F. Supp. 3d at 179 ("[N]ot every allegation of government bad faith requires an evidentiary hearing.").

speculative" claims do not require an evidentiary hearing, particularly where they lack "both objective support and prejudicial effect." *See United States v. Slatten*, 395 F. Supp. 3d 45, 102, 116 (D.D.C. 2019). Even material claims require "detailed and specific factual allegations," something more than "[a]iry generalities, conclusory assertions and hearsay statements." *See United States v. Mahdi*, 999 F. Supp. 2d 236, 245–46 (D.D.C. 2013) (quotations omitted); *cf. United States v. Taylor*, 312 F. Supp. 3d 170, 179 (D.D.C. 2018) ("[N]ot every allegation of government bad faith requires an evidentiary hearing."). Pezzola's claims are neither material nor detailed and specific, so an evidentiary hearing is inappropriate. From there, it follows that dramatic relief in the form of dismissal or a mistrial—indeed any relief at all—is similarly unwarranted.[4]

\*   \*   \*

At bottom, not one of Pezzola's contentions withstands scrutiny. His factual premises lack

---

[4] Pezzola's last shot at relief takes aim at the Government's belated identification of purportedly classified and law-enforcement sensitive materials present in the inadvertently disclosed messages written by other agents within Special Agent Miller's *Jencks* production. After the Government learned about the overproduction, it reproduced the material to the defense with 80 messages removed that it determined were classified or law-enforcement sensitive. The Government provided a copy of these messages and a description of the same to the Court for review *in camera*. Pezzola protests the classification of these materials, arguing that even if it is not "a ruse and a fabrication" to conceal wrongdoing, the Government must "drop" the charges because he has been deprived of relevant evidence. ECF No. 686 at 3. But his freestanding objection does not so much as gesture at a legal claim. Construing his motion generously, he asks the Court to order these messages disclosed to him. *See id.* at 7 (arguing that "the public's interest in the [information he believes has been withheld] outweighs any interest in keeping such information concealed"). For messages that are properly classified, the Court is aware of no authority that would allow it to do so. *Cf. Elec. Frontier Found. v. DOJ*, No. 7-CV-403 (TFH), 2007 WL 9813149, at \*9 (D.D.C. Aug. 14, 2007) (noting that a district court had "properly referred . . . congressmen to the Justice Department for a determination whether [classified] documents may be released to them"); *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) ("[T]he protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it."). But more to the point, the Court has reviewed the 80 messages produced to it *in camera* and finds—regardless of whether they were properly classified or even properly categorized as law-enforcement sensitive—that the Government had no duty to produce them to the defendants in the first place.

support, and his legal premises cannot be squared with caselaw. For those reasons, it is hereby

**ORDERED** that Pezzola's Motion for Dismissal with Prejudice or, Alternatively, for a Mistrial, ECF No. 679, is **DENIED**. It is further **ORDERED** that Pezzola's Motion for Dismissal and Evidentiary Hearing, ECF No. 686, is **DENIED**.

    **SO ORDERED.**

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: April 16, 2023