UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CASE NO: 1:21-cr-0175-3 (TJK) |
| | * |
| ZACHARY REHL, | * |
|     Defendant | * |

\*\*\*\*\*\*\*\*

**ZACHARY REHL'S MOTION TO STRIKE
GOVERNMENT VIDEO EXHIBITS AND RELATED TESTIMONY**

Mr. Rehl, through undersigned counsel, respectfully moves this Honorable Court, pursuant to FRE 901, the Due Process Clause and Confrontation Clause, and FRE 403 to strike several Government Exhibits that were introduced during Mr. Rehl's cross-examination and the related testimony. The basis for this request is that the materials (Gov Exhibits 2004, 2007 and 2008), had not been previously produced in discovery, are derived from an unknown source and were not properly authenticated.

    **A.    Government Exhibit 2004 Had Not Previously Been Produced in Discovery and Was An Open Source Video Whose Provenance Has Not Been Disclosed to Counsel or the Court**

    1.    On April 17, 2023, after Mr. Rehl completed his direct examination, the Government produced four videos and other materials minutes before it began to cross-examine Mr. Rehl. Two of the videos were US Capitol CCTV videos, one was an open-source video, and the fourth video was a clip of a body-worn camera ("BWC") video. The Court denied counsel's objection that it had not had sufficient time to review the videos.[1]

    2.    The government had not previously produced the video (Gov Ex. 2004) it introduced

---

[1] TR 4/17 AM at 18361, 18364-65.

and used to cross-examine Mr. Rehl.

3. At the time, the government did not disclose to the Court or to counsel that the video had recently been sent to the government by a source, whom the government has yet to identify.[2]

4. Undersigned counsel was unaware of the provenance of the video.

5. The government moved the video into evidence through Mr. Rehl:

> Q. Off to the left, do you see the same TV tower we were talking about?
> A. Yes.
> Q. Also appear to be from January 6th, 2021?
> A. From January 6th, yeah.
> Q. Fairly and accurately depict generally how the crowd looked, how the inauguration stage looked, how the TV tower looked on January 6th, 2021?
> A. You could say that.

TR 4/17 AM at 18395.

6. In light of the unknown provenance or integrity of the videos, Mr. Rehl's response to the foundational questions – you could say that – is insufficient. The questions probed a single reference point in the scene. Mr. Rehl had no basis to determine whether the video fairly and accurately depicted the entire scene. He was not the videographer, he had no personal knowledge of the scene depicted in the nearly 8-minute video and he had no knowledge of the video's integrity. The video did not indicate the time it was taken. Mr. Rehl was not the custodian of the video and could not otherwise supply evidence as to the type of camera used, its general reliability, the quality of its product, the purpose of its employment, the process by which it was focused, or the general reliability of the entire system or the video itself. Moreover, Mr. Rehl's response lacked certainty. *See, e.g.,* FRE 901(b)(1)-(9).

---

[2] TR 4/17 AM at 18395.

7.      Notably, the following day the Court questioned the government whether BWC videos it sought to introduce "is not something you plucked off the web." [3]

### B.    Clips of Body-Worn Cameras – Government Exhibit 2007 and 2008 – Had Not Previously Been Produced in Discovery and Were Not Properly Authenticated

8.      The following day, the government produced an additional clip of a different BWC video.

9.      Neither of the two BWC clips were previously produced in the case discovery. Nor is it clear who did the clipping of the BWC videos and for what purpose. In addition, one of the clips is particularly unstable at the key moment when the government alleges that Mr. Rehl pointed a pepper-sprayer.

10.      Again, the government relied on questions it asked Mr. Rehl to seek to establish foundation for introducing both clips. However, Mr. Rehl does not have the ability to authenticate clips of BWC videos taken by others, without any indication of the integrity, chain of custody or other authenticating factors. Over objection, the Court admitted both Exhibits 2007 and 2008.[4]

11.      The videos were particularly grainy and unclear. At the allegedly critical point, one the videos was completely unstable.

12.      Springing such poor quality videos on Mr. Rehl at the last moment without providing him an opportunity to inspect and properly review the videos impaired his rights to confront the evidence.

---

[3] TR 4/18 AM at 18736.

[4] TR 4/18 AM at 18733-735 ("he has no way of authenticating these videos. He doesn't have the ability to authenticate these videos. The question was asked whether that appeared to be something he saw that day, but that doesn't authenticate an entire video"); 18738-79.

## CONCLUSION

Neither the open source video nor the clips of the BWC were properly authenticated. Their production for the first time during cross-examination violates Rule 16. The BWC were particularly grainy, unclear and unstable. Using them against Mr. Rehl as the government did without disclosing their provenance or integrity also violates the Due Process Clause. It was unfair and ambushed Mr. Rehl with materials that provided unsubstantiated innuendo rather than evidence. For that reason also, the videos should be excluded under FRE 403.

Accordingly, Mr. Rehl respectuflly requests that the Court strike the exhibits and the related testimony.

Respectfully submitted,

/s/
**Carmen D. Hernandez**
Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 20th day of April, 2023.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**