UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 1:21-cr-175-3 (TJK) |
| v. | : | |
| | : | |
| ZACHARY REHL, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT REHL'S MOTION TO STRIKE THREE EXHIBITS FROM CROSS EXAMINATION OF DEFENDANT REHL

Defendant Rehl moved this Court to strike three exhibits (Exhibits 2004, 2007, and 2008) that were introduced during the cross examination of Mr. Rehl of April 17 – 18, 2023. Among other things, Defendant Rehl contends that the materials had not been produced in discovery, were derived from an "unknown source," and were not properly authenticated. ECF 756 at 1. Defendant Rehl's objection is misplaced. Exhibits 2007 and 2008 are videos from U.S. Capitol Police body worn camera that were produced in discovery over one year ago. Exhibit 2004 depicts the same event—a video of the events at the Capitol on January 6—and it was publicly posted and available to both parties. The exhibits were properly authenticated and admitted into evidence. The Court should deny Defendant Rehl's motion.

### Background

Mr. Rehl chose to testify during this trial. Mr. Rehl repeatedly testified on direct examination that he did not attack any police officer on January 6th and did not assault any police officer on January 6th. Mr. Rehl testified that he did not attempt to impede any law enforcement officer from carrying out their official duties. After a day and a half of testimony on direct examination, Mr. Rehl remained on direct examination entering a four-day weekend.

Over the course of the four-day weekend, the government became aware of a video that was available on the internet that showed Mr. Rehl assaulting officers on the West Plaza of the Capitol. Specifically, a video titled "THE STAR SPANGLED BANNER / THE STORM ARRIVED PT. 3" (Ex. 2004) was available on a public repository of videos called The Internet Archive. The video showed events on the West Plaza of the Capitol. The government used Capitol Police CCTV footage of the West Plaza to identify videos that depicted the same event. On Monday, April 17, 2023, at the conclusion of Mr. Rehl's direct examination and in accordance with the Court's Trial Procedures Order, the government produced Exhibit 2004 and two CCTV videos[1] that depicted the same scene. Tr. 18361 – 62. The Court took a 15-minute recess. Tr. 18363:24.

Mr. Rehl was shown Exhibit 2004 during cross examination on April 17. Mr. Rehl effectively denied that the person depicted in the image was him. Tr. 18404, *et seq.* On further questioning, Mr. Rehl asked the government if it had "a better angle" of the incident. Tr. 18409:11-12. At the conclusion of the day on April 17, 2023, Mr. Rehl remained on cross examination.

The government reviewed body worn camera footage of officers who were present on the West Front of the Capitol. The government identified two body worn camera videos that were taken by MPD Officers S.B. and A.G. Both videos had been produced in the government's global discovery volume three on October 1, 2021. The videos produced in discovery were both over one hour and forty minutes in length. To create Exhibits 2007 and 2008, the government clipped both videos to the relevant portion that overlapped with the time and location depicted in Exhibit 2004. The government produced the clips of the body worn camera videos, which were identified as

---

[1] While not an issue in dispute in Defendant Rehl's motion, the government also notes that the CCTV footage depicting the same incident had been produced in discovery.

Exhibits 2007 and 2008, by email at 8:48 a.m. on April 18, 2023. The government included a still shot image of Mr. Rehl in the email that depicted the precise time of the still frame. Ms. Hernandez began the trial day on April 18, 2023, by arguing against the introduction of various exhibits, including the videos before the Court. Tr. 18631-73. The Court then recessed for approximately twenty minutes. Tr. 18673. During the break, government counsel circled Mr. Rehl in the still image that had been provided. *See* Attachment A. Ms. Hernandez was afforded the opportunity to consult with her client. Tr. 18670. Cross examination then continued, and the Court provisionally admitted the two body worn camera videos.

## Argument

The government briefed the admissibility of body worn camera videos pre-trial. ECF 494 at 7 – 14. In summary, to make the showing necessary for admissibility, "the proponent's burden of proof" is "slight," and the "ultimate resolution of the evidence's authenticity is reserved for the jury." *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) (quoting *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir.1985)); *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006). To make the requisite *prima facie* showing, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).

The videos have been authenticated by Mr. Rehl, who was present for the events at issue. *Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003) (Any person who was present for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted.); FRE 901(b)(1). Moreover, the body worn camera videos are admissible by comparison to other admitted videos. *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1371 (Fed. Cir. 2021) ("Authentication by comparison is routine.").

In summary, Exhibits 2004, 2007, and 2008 fairly and accurately depict the conditions on the ground on January 6. They depict the same event—*i.e.*, Mr. Rehl's assault on law enforcement—from different perspectives. There is no basis to exclude the exhibits on authenticity grounds. The "grainy" quality of certain frames in the body worn camera footage is authentic. The "unstable" nature of the body worn camera reflects the character of body worn camera and is authentic. The government did not "spring" this video on counsel—the exhibits were produced prior to their introduction by the government and their admissibility was challenged by Ms. Hernandez. Finally, there is no question as to the relevance of the videos. The videos plainly depict Mr. Rehl in the act of assaulting law enforcement through the deployment of an irritant spray. Mr. Rehl chose to take the witness stand and repeatedly deny any assault or obstruction of law enforcement on January 6. The government has properly rebutted that testimony with authentic and admissible evidence.

## Conclusion

The Court has properly ruled the exhibits authentic and admissible. There is no basis to exclude the videos. Were the Court inclined to revisit its ruling as to the admissibility of the exhibits, the government is prepared to introduce the exhibits through a law enforcement officer, including but not limited to Officers S.B. and A.G., in its rebuttal case.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  */s/ Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530

(202) 330-1788
Conor.Mulroe@usdoj.gov

*/s/ Jason B.A. McCullough*
JASON B.A. MCCULLOUGH
   NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
   On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530

**Attachment A**

