UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CASE NO: 1:21-cr-0175-3 (TJK) |
| | * |
| ZACHARY REHL, | * |
|     Defendant | * |

********

**ZACHARY REHL'S MEMORANDUM IN SUPPORT OF MOTION
TO STRIKE SEGMENT OF GOVERNMENT EXHIBIT 1001**

There is no Rule of Evidence nor precedent that supports the government's decision to imprint a "transcript" on a video recording. *United States v. Holton,* 116 F.3d 1536, 1543 (D.C. Cir. 1997), a case which undersigned counsel brought to the government's attention months ago provides no support for such a procedure. Indeed, as *Holton* makes clear in a case such as this where the recording is of poor quality because of the multitude of voices and there is a dispute as to the identity of the speaker as well as to the words spoken the indiscriminate use of a transcript raises a risk of significant prejudice.

> The principal risk of indiscriminately permitting the use of transcripts by jurors is that in the case of a poor quality or unintelligible recording, the jurors may substitute the contents of the more accessible, printed dialogue for the sounds they cannot readily hear or distinguish on the tape and, in so doing, transform the transcript into independent evidence of the recorded statements. *See United States v. Howard*, 80 F.3d 1194, 1198 (7th Cir.1996); *United States v. Strothers*, 77 F.3d 1389, 1392-93 (D.C.Cir.), *cert. denied*, 519 U.S. 956 (1996). A related risk arises when a transcript attributes incriminating statements to a defendant that the defendant does not admit making. Placing a transcript in the jury room during deliberations – after the completion of the supervised, adversarial portion of the trial – opens up the possibility that jurors will see the transcript as a neutral exhibit placed before them by the court and increases the chance that the document will be read without the tape recording playing alongside for the purpose of comparison. *See*

> *Strothers*, 77 F.3d at 1392–93 (error to admit transcript of tape into evidence because of the risk that the jury might rely on the government's version of the conversations during deliberations without simultaneously listening to the authenticated tapes to verify the transcript's accuracy).

*Holton*, 116 F.3d at 1540-41 (internal citations omitted).

These risks are present in this case.

### A.     Poor Quality of the Recording Precludes Its Use

The recording at issue is of poor quality because of the overlapping voices of the multitude of persons captured by the recording. Here, several of the witnesses testified that they were unable to distinguish any individual voices beyond the U.S.A. chants.[1] The imprint of the "transcript" on the video is sure to result in the "principal risk" noted by the D.C. Circuit.

> [I]n the case of a poor quality or unintelligible recording, the jurors may substitute the contents of the more accessible, printed dialogue for the sounds they cannot readily hear or distinguish on the tape and, in so doing, transform the transcript into independent evidence of the recorded statements.

*Holton*, 116 F.3d at 1540.

Indeed, courts generally recognize prejudice where a transcript of an unintelligible tape blurs the difference between the evidence, namely the recording and a transcript, which is to be used only as an aid to assist the jury. In such a case, a limiting instruction does not erase the prejudice.

> However, the distinction becomes nebulous where, as here, the evidence is unintelligible. The practical effect of using an aid to comprehend unintelligible matter is that the aid becomes the evidence.... While [the district court provided] an adequate [limiting] instruction, its directives are only viable when the tape is clear enough

---

[1] FBI S/A Dubrowski, Witness Aaron and David Jones testified that they were unable to distinguish any individual statements beyond the chants. Even S/A Miller originally stated that the recording was "consistent with" Mr. Rehl, a term that denotes similarity rather than identity.

> for a juror to detect that the tape is at variance with the transcript. But where, as here, the tapes are partially inaudible, the juror is precluded from making an intelligent comparison. Hence, the likely result is that the transcript becomes the evidence.

*United States v. Robinson*, 707 F.2d 872, 878 (6th Cir. 1983).  The D.C. Circuit has cautioned that a recording must be "authentic, accurate and trustworthy," *United States v. Dale*, 991 F.2d 819, 842 (D.C. Cir. 1993) (per curiam), and "audible and comprehensible enough for the jury to consider the contents," *United States v. Slade*, 627 F.2d 293, 301 (D.C. Cir. 1980).

Accordingly, in the first instance, the Court should exclude the recording as it is not "audible and comprehensible enough for the jury to consider the contents." *Slade, supra.*  As it has done with other exhibits, the video may be admitted without any volume. *See also United States v. Watson*, 594 F.2d 1330 (10th Cir.), *cert. denied*, 444 U.S. 840 (1979) (tape may be excluded if unintelligible portions are so significant that whole recording is rendered untrustworthy).

### B. Transcript Should Not Be Admitted Where Defendant Denies Making the Statement

Where a defendant denies making a statement, placing "a transcript in the jury room during deliberations – after the completion of the supervised, adversarial portion of the trial – opens up the possibility that jurors will see the transcript as a neutral exhibit placed before them by the court." *Holton*, 116 F.3d at 1541; *see also United States v. Berry*, 92 F.3d 597, 600-01 (7th Cir.1996) (possibility of prejudice when identification is central issue in case and transcript identifies defendant as speaker).  Under these circumstances, no transcript should be admitted particularly because at issue are only two short phrases for which a transcript is not necessary.  The only purpose the transcript plays when such a short phrase is at issue is to supplant and impact the fact-finding function of the jury to the prejudice of Mr. Rehl.

There are only five or six words at issue. With so few words, there is no reason to provide a "transcript" in the first place as might be necessary where the recording spans hours or longers. Here, the jury will be able to listen and re-listen to the segment as many times as it deems necessary. The entire video is only 1 minute and four seconds. There is no need for a transcript. And there certainly is no need to imprint words on the screen. The imprinted words will definitely influence the jury subliminally and directly. The imprinted words will not serve as an aid to the jury's fact-finding. Rather, the imprinted words will supplant the jury's fact-finding role. The only way to avoid the danger that the imprinted words will become the evidence rather than become an aid to the jury is to exclude the imprinted words altogether.

### C. The Government's Version is Not Accurate

The exhibit lists the time as 12:53 - 12:55. The metadata on the video lists the date created as 12:54:09. Hence the legend on the exhibit is 1-minute earlier than the date of creation, which is a critical time. As can be seen in the video segment immediately preceding this segment, the bike racks are set aside at 12:53, more than a full minute before this video is created.

Lastly, the defense does not agree with the government's view. The words that appear to have been shouted are "Fuck *that*, storm the Capitol" (emphasis added).

**CONCLUSION**

Mr. Rehl respectfully requests that the Court strike the imprinted words on Government Ex. 1001 starting at counter 10 minutes and five seconds.

Respectfully submitted,

/s/
**Carmen D. Hernandez**
Bar No.  MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served via ECF on all counsel of record this 21st day of April, 2023.

/s/ *Carmen D. Hernandez*
**Carmen D.  Hernandez**