UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | Case No. 21-CR-175 (TJK) |
| : | |
| ETHAN NORDEAN, et al.,   : | |
| : | |
| Defendants.   : | |

### GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT REHL'S MOTIONS TO SUBSTITUTE COUNSEL

On June 4, 2023, Carmen Hernandez, counsel of record for defendant Zachary Rehl, moved to withdraw as counsel and for a two-week extension of time for Rehl to file post-trial motions. ECF 811. The following day, on June 5, attorney Norm Pattis, who represents codefendant Joseph Biggs, filed a motion to appear as lead counsel on Rehl's behalf. ECF 812. Later the same day, attorney Roger Roots filed a motion on behalf of Dominic Pezzola to extend the deadline for the filing of post-trial motions. ECF 813. And on June 6, the government filed a response requesting additional time to file a supplemental response regarding the conflict posed by Attorney Norm Pattis's simultaneous representation of codefendants Biggs and Rehl for the purposes of post-trial motions and sentencing. On June 7, the Court issued a minute order staying the defendants' post-trial motions deadline and requiring the government to file its supplemental response by June 9, 2023.

For the reasons outlined herein, the government believes that the conflict posed by Mr. Pattis's joint representation of codefendants Biggs and Rehl may not be waivable because it may mandate that Mr. Pattis take adverse positions at sentencing in order to fully represent each defendants' interests. *See* D.C. Rule of Professional Conduct 1.7(a). Should the Court conclude

that this conflict can be waived pursuant to D.C. Professional Rule of Professional Conduct 1.7(b), the Court should appoint independent counsel to address the potential conflicts under D.C. Professional Rule 1.7, including potential issues with regard to client confidence and secrets pursuant to D.C. Professional Rule 1.6. Should the Court and counsel determine that any conflicts are waivable, the Court must conduct a fulsome waiver colloquy.

### Argument

The Sixth Amendment's guarantee of counsel in a criminal case includes the "right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). *See also Glasser v. United States*, 315 U.S. 60, 70 (1942) (the Sixth Amendment right to counsel "contemplates that such assistance be untrammeled and unimpaired.") Because "[t]he Sixth Amendment's 'essential aim' 'is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers,'" "a criminal defendant's right to counsel of his choice is not absolute." *United States v. Lorenzana-Cordon*, 125 F.Supp.3d 129, 134 (D.D.C. 2015), citing *Wheat v. United States*, 486 U.S. 153, 159 (1988). *See also Wheat*, 486 U.S. at 164 (while the court "must recognize a presumption in favor of [the accused's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.") The government asserts that Mr. Pattis's proposed joint representation of codefendants Biggs and Rehl presents a potentially non-waivable conflict. In any event, because the representation may require Mr. Pattis to divulge one client's confidences in order to zealously represent the other, the Court must conduct a waiver colloquy with the affected clients, Biggs and Rehl.

**A. Rule 1.7**

D.C. Rule of Professional Conduct 1.7 governs situations in which a single lawyer represents more than one co-defendant in a criminal case. In relevant part it states:

> (a) A lawyer shall not advance two or more adverse positions in the same matter.
> (b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:
> (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;
> (2) Such representation will be or is likely to be adversely affected by representation of another client;
> (3) Representation of another client will be or is likely to be adversely affected by such representation;
>
> * * *
>
> (c) A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if
> (1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and
> (2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

It is well recognized that "there are significant dangers inherent in the representation [by a single attorney] of multiple defendants in the course of the same criminal investigation." *United States v. Bikundi*, 80 F. Supp. 3d 9, 22 (D.D.C. 2015). Here Mr. Pattis proposes to represent codefendants Biggs and Rehl in post-trial motions and at sentencing – in other words to represent multiple defendants in the course of the same criminal case. Under the scenario of a single lawyer representing co-defendants in a criminal case, the six stages during which a conflict may arise include 1) during plea bargaining, 2) where the defendants have inconsistent defenses, 3) where one or more of the defendants wishes to exercise his right to testify at trial, 4) where the

3

government's evidence may be more damaging to one codefendant than to another, 5) during closing arguments and 6) at sentencing. *See, generally*, John Stewart Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, 62 MINN.L.REV. 119, 125-134 (1978).

As recognized by the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475 (1978), in the context of joint representation of codefendants by a single attorney:

> Joint representation of conflicting interests is suspect because of what it prevents the attorney from doing . . . [A conflict may] . . . preclude . . . defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable . . .[A] conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.

435 U.S. at 489-490. *See also Holloway*, 435 U.S. at 490 ("[I]n a case of joint representation of conflicting interests the evil --- it bears repeating --- is in what the advocate finds himself compelled to refrain from doing, not only at trial, but also as to possible pretrial plea negotiations and in the sentencing process.") *See also* D.C. Ethics Opinion 265 (describing application of D.C. Rule 1.7(a), "[w]here a lawyer attempts to represent two or more adverse interests in the same matter, the conflict is said to be unwaivable and therefore never ethically permissible regardless of whether the clients would consent if asked.").

The circumstances of the proposed joint/simultaneous representation pose several potential areas of concern. Most importantly, at sentencing, this Court must, under 18 U.S.C. Section 3553(a)(6), avoid unwarranted disparities among defendants "with similar records who have been found guilty of similar conduct." But while Section 3553(a)(6) "does not allow unwarranted

sentencing disparities between codefendants, warranted disparities are allowed." *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (internal citations omitted) (emphasis added); *see also United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007) (explaining some of the circumstances that warranted a disparity in sentencing defendants convicted of the same conduct, even among co-conspirators); *United States v. Mejia*, 597 F.3d 1329, 1343 (D.C. Cir. 2010) (same). Thus, the Court will necessarily need to analyze codefendant Biggs's and Rehl's relative culpability in imposing its sentences.[1]

Here, both defendant Biggs and defendant Rehl were convicted of multiple conspiracy counts, including seditious conspiracy, which required the jury to find beyond a reasonable doubt that the defendants agreed to use force to oppose the government. In arguing defendant Biggs's relative culpability, Mr. Pattis may wish to highlight for the Court that Biggs's conduct at the

---

[1] By way of comparison, it is permissible in a civil case for a lawyer to represent multiple parties in the liability phase, but impermissible for that same lawyer to represent multiple parties in the penalty phase because the penalty phase – similar to a criminal sentencing – requires assigning relative culpability (or imposing relative penalties) on the parties found liable. *See, e,g,* Rule 1.7, Comment [4] ("[t]he absolute prohibition of paragraph (a) applies only to situations in which a lawyer would be called upon to espouse adverse positions for different clients in the same matter. It is for this reason that paragraph (a) refers to adversity with respect to a "position taken or to be taken" in a matter rather than adversity with respect to the matter or the entire representation. . . . If, for example, a lawyer would not be required to take adverse positions in providing joint representation of two clients in the liability phase of a case, it would be permissible to undertake such a limited representation. Then, after completion of the liability phase, and upon satisfying the requirements of paragraph (c) of this rule, and of any other applicable Rules, the lawyer could represent either one of those parties as to the damages phase of the case, even though the other, represented by separate counsel as to damages, might have an adverse position as to that phase of the case." *See also* D.C. Ethics Opinion 217 ("similarly, notwithstanding Rule 1.7(a), a firm may represent multiple clients in one phase of a case, even if the firm will be precluded from representing the clients in subsequent phases of the case. For example, a firm could represent two or more parties in the liability phase of a case, although separate counsel will be required for each of the clients in the damages phase of the case because the parties will take adverse positions. Rule 1.7, Comment [4]").

Capitol can be distinguished from that of defendant Rehl, whom the evidence showed sprayed law enforcement officers, and who then lied about it during his testimony to the jury. Conversely, Mr. Pattis may wish to highlight for the Court that defendant Rehl was not in the upper tier of the MOSD leadership (unlike defendant Biggs). He may also wish to highlight that defendant Rehl did not personally destroy government property in violation of 18 U.S.C. Section 1361, unlike defendant Biggs, whom the evidence showed broke a fence at the second breach point, and that the adjustment under 3A1.4 (which increases a defendant's base offense level under the guidelines by 12 points or increases the offense level to 32, and maximizes his criminal history score) should not apply to Rehl.

In short, to secure the most favorable possible sentence for either codefendant in this case, Mr. Pattis might have to make arguments regarding the relative culpability of codefendants Biggs and Rehl, thereby requiring him to make arguments adverse to one or the other of his clients. Were he to knowingly refrain from doing so based on his representation of either defendant, he would violate his duty of zealous representation under Rule 1.3(a).[2] (Separately, and as addressed further below, this joint/simultaneous representation may also require Mr. Pattis to violate his Rule 1.6 duty of confidentiality to one or the other of his clients.)

Should the Court determine that the proposed joint/simultaneous representation does not present a non-waivable conflict, Rule 1.7 (c)(1) permits a single lawyer to represent codefendants in the same matter if "[e]ach potentially affected client provides informed consent to such

---

[2] Mr. Pattis may well respond that he intends to argue that neither defendant is culpable to the degree the government or the jury's verdict suggests. However, were the Court to impose a significant sentence on Biggs at 10 am on August 31, would Mr. Pattis be able to zealously represent defendant Rehl at 2 pm (that same day) without taking an adverse position to defendant Biggs, e.g., arguing that Biggs was more culpable or that the enhancement under 3A1.4 should not apply to Rehl?.

representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation." Rule of Professional Conduct 1.7(c)(1). To establish a valid waiver of any potential conflicts requires a knowing and intelligent waiver. *United States v. Lorenzana-Cordon*, 125 F.Supp.3d at 135, citing *Holloway v. Arkansas*, 435 U.S. at 483 n.5. *See also United States v. Bikundi*, 80 F.Supp.3d at 21-22. In the context of a potential conflict born of a single lawyer representing multiple co-defendants in the same case, the standard for a knowing and intelligent waiver is the same as the standard for waiver of the Sixth Amendment right to counsel. *Glasser v. United States*, 315 U.S. at 71. In *Glasser* the Supreme Court explained:

> The trial court should protect the right of the accused to have the assistance of counsel. 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While the accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting for that determination to appear upon the record.'

*Id.*, quoting *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938).

At least one commentator has observed that with respect to waivers of attorney conflicts, "one must seriously question the ability of most criminal defendants to appreciate fully the significance of conflicts of interest," adding that "[b]ecause of the relationship of trust between attorney and client and the defendant's relative ignorance of criminal trial dynamics, a defendant is likely to defer to the judgment of his counsel and rely on counsel's representation that he can adequately serve the interests of all defendants." John Stewart Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, supra, 62 MINN.L.REV. at 154 (citations omitted). In a similar vein, the Supreme Court also has recognized that potential conflicts arising from a single lawyer representing multiple codefendants "are difficult enough for a lawyer to assess, and even more difficult to convey by

7

way of explanation to a criminal defendant untutored in the niceties of legal ethics." *Wheat v. United States*, 486 U.S. at 163. Beyond the challenges of a layperson fully grasping the possibilities for potential conflicts that arise from multiple codefendants being represented by the same attorney, the Supreme Court also has acknowledged that "the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." *Id*.

The validity of a waiver of the right to conflict-free counsel depends on whether it is voluntary and intelligent, which in turn, "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *United States v. Carlyle*, 964 F. Supp. at 14, quoting *United States v. Garcia*, 517 F.2d 272, 277 n.5 (5th Cir. 1975) (citing *Johnson v. Zerbst*, 304 U.S. at 464).

### B.  Rule 1.6

D.C. Rule of Professional Conduct 1.6 states, in pertinent part:

> (a)   Except when permitted under paragraph (c), (d), or (e), a lawyer shall not knowingly:
> (1) reveal a confidence or secret of the lawyer's client;
> (2) use a confidence or secret of the lawyer's client to the disadvantage of the client;
> (3) use a confidence or secret of the lawyer's client for the advantage of the lawyer or of a third person.
> (b) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client.
> \*\*\*
> (e) A lawyer may use or reveal client confidences or secrets:
> (1) with the informed consent of the client;

D.C. Rules of Professional Conduct, Rule 1.6: Confidentiality of Information.

During his representation of defendant Biggs, and his proposed future representation of defendant Rehl, Mr. Pattis has learned and will learn client confidences and/or secrets protected from disclosure by Rule 1.6.  Mr. Pattis's proposed joint/simultaneous representation may result in a conflict of interest under Rule 1.7 with respect to the representation of a either client, *e.g.*, if the confidential information learned from one client would advance the other client's interests, but the lawyer is unable to use or disclose it.  *See* D.C. R. Prof'l Conduct 1.7(b)(4) (A lawyer shall not represent a client with respect to a matter if "[t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party").

This potential conflict is waiveable, if (1) both defendants Biggs and Rehl provide informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and (2) Mr. Pattis reasonably believes that he will be able to provide competent and diligent representation to both defendants Biggs and Rehl.  D.C. R. Prof'l Conduct 1.7(c).  The government submits that it would be prudent for the Court to conduct such an inquiry as part of its conflict analysis.

C.  **The Court's Oversight Role**

The Supreme Court has recognized that "[t]he Sixth Amendment right to choose one's counsel is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. at 159 (citations omitted). It also has acknowledged the broad oversight powers of federal courts in ensuring that the ethical rules are followed in criminal cases. *Wheat*, 486 U.S. at 159-160 ("While 'permitting a single attorney to represent codefendants . . . is not per se violative of constitutional guarantees of effective assistance of counsel,' a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate

9

counsel.") *citing Holloway v. Arkansas*, 435 U.S. at 482. In *Wheat*, a case involving a single lawyer's representation of multiple clients in the same case, the Court explained that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," acknowledging that "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." 486 U.S. at 160.

In *United States v. Garcia*, the Fifth Circuit explained that the standard for waiver of conflict-free counsel is the same as that for waiver of any constitutional right. *Garcia*, 517 F.2d at 275-277. Indisputably a trial court's task in ruling on whether to allow a waiver of a conflict of interest by a client is a difficult one. Indeed, in the context of a conflict based on a lawyer representing codefendants in the same case, the Supreme Court observed,

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when the relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat*, 486 U.S. at 162-163. In elaborating on a trial court's oversight powers, the Court in *Wheat* also indicated that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in the rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, supra, 486 U.S. at 163.

**D. Government's Recommendation**

Federal Rule of Criminal Procedure 44(c) directs that when "two or more defendants have been charged jointly . . . and [they] are represented by the same counsel," the Court "must promptly inquire about the propriety of joint representation and must advise each defendant of the right to effective assistance of counsel, including separate representation." Fed. R. Cr. P 44(c). Significantly, the rule further directs that "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." The conflicts that might arise from Mr. Pattis's joint/simultaneous representation of codefendants Biggs and Rehl are myriad, and well-established in the trial record.

As this Court has done previously, both in this case and the related case of *United States v. Arthur Jackman, et al.*, 21-cr-378 (TJK), ECF 88, this Court should appoint separate independent "experienced counsel having no stake in an on-going attorney-client relationship or the fees that may be generated therefrom" to advise defendants Biggs and Rehl about potential issues that could arise through Mr. Pattis's joint/simultaneous representation. *See, e.g., United States v. Lorenzana-Cordon*, 125 F.Supp.3d at 132, 140 (appointing a separate lawyer "'for the limited purpose of advising" the accused about a potential conflict); *United States v. Bikundi*, 80 F. Supp. 3d at.15-16 (regarding appointment of "independent and conflict-free counsel" before making a decision regarding waiver of the right to conflict-free counsel).

Most importantly, if the Court should determine that the conflict is waivable, it is critical that the Court "personally and forthrightly advise [each of the clients] of the potential dangers of representation by counsel with a conflict of interest." *See United States v. Carlyle*, 964 F. Supp. 8, 13 (D.D.C. 1997).

**CONCLUSION**

Mr. Pattis's proposed joint/simultaneous representation of codefendants Biggs and Rehl raises conflicts that may be non-waivable. Should the Court conclude otherwise, it should appoint independent counsel to advise both defendants about the potential issues this conflict raises, and the attendant potential need for each defendant to consent to Mr. Pattis sharing either defendant's confidences/secrets in support of his presentation of the other defendant.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  */s/ Jocelyn Ballantine*
JOCELYN BALLANTINE
CA Bar No. 208267
Chief, Complex Conspiracy Section

*/s/ Erik M. Kenerson*
JASON B.A. MCCULLOUGH
NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
   On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7201 //
Erik.Kenerson@usdoj.gov

By:  */s/ Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530
(202) 330-1788
Conor.Mulroe@usdoj.gov