UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | 1:21-cr-00175-TJK |
| | : | |
| ETHAN NORDEAN, ET AL. | : | |

**MEMORANDUM OF NORMAN PATTIS AS TO POTENTIAL CONFLICT ARISING FROM JOINT REPRESENTATION OF JOSEPH BIGGS AND ZACHAARY REHL**

After consultation with counsel for the Government, and in compliance with this Court's order, the undersigned tenders the following brief in support of his joint representation of Joseph Biggs and Zachary Rehl in the instant matter.

I.     **Background**

Mssrs. Biggs and Rehl were among five defendants convicted after a lengthy jury trial earlier this year involving a riot at the Capitol on January 6, 2021. The defendants were members of a group known as the Proud Boys. The Government contended at trial, and the jury apparently agreed, that the two defendants at issue in this case conspired to use force to oppose the authority of the United States Government and to otherwise interfere with the lawful transition of power from one president to another. The Government's case consisted largely of circumstantial evidence in the form of various electronic communications between and among members of the Proud Boys, the behavior of the defendants on January 6, 2021, and behavior of third parties designated as "tools." The trial was sharply contested. Mr. Rehl testified; Mr. Biggs did not.

After the jury returned its verdict, the Court issued orders pertaining to the preparation of pre-sentencing reports, the preparation of memoranda in aid of

1

sentencing and sentencing dates. The undersigned represented Mr. Biggs at trial. Mr. Rehl was represented at trial by separate counsel.

At the time the verdict was returned, Mr. Biggs asked the undersigned to handle his appeal once judgment was entered. The verdict was returned on May 4, 2023. Mssrs. Biggs and Rehls were convicted of identical counts.

**II.     The Prosect of Joint Representation of Mssrs. Rehl and Biggs on Appeal**

In mid-May, the undersigned was contacted by a third party and asked if he would consider handling Mr. Rehl's appeal. The undersigned explained that such a posture would present a potential conflict, and urged that Mr. Rehl continue to work with trial counsel, as, in the opinion of the undersigned, trial counsel had done a good job at trial. The undersigned was told that Mr. Rehl did not want trial counsel to represent him any longer. The undersigned then explained that before he could even consider such a prospect, he would have to consult with Mr. Biggs. The undersigned contacted Mr. Biggs, explained the potential for a conflict, and the prospect of waiver hearings. The undersigned also explained that Mr. Biggs had the right to have an independent lawyer review the matter.

After Mr. Biggs had had some time to consider it, he consented to joint representation.

I explained to third party contacting me on Mr. Rehl's behalf that Mr. Biggs had consented to my discussing the matter with Mr. Rehl. However, I made clear that in my view Mr. Rehl should consider retaining current counsel. I called counsel for Mr. Rehl to give her a heads up about Mr. Rehl's restiveness. She agreed to meet with him to

discuss things. The undersigned believes that meeting did not go well and that Mr. Rehl was determined to discharge counsel.

The undersigned then spoke to Mr. Rehl, explaining the potential for conflict and advising of the right to an evaluation of the potential conflict by another lawyer. The undersigned asked Mr. Rehl to consider it carefully before deciding what to do.

In conversations with both Mssrs. Rehl and Biggs the undersigned explained the conflict in terms making it clear that the undersigned could limit his ability to argue relative culpability, that is, that one client was more culpable than another.

After obtaining the informed consent of both to joint representation, the undersigned called the Government to alert it to the possibility that joint representation may be undertaken, making it clear that if the law were clear that it was a nonwaivable conflict, the undersigned would not file an appearance. In a second conversation, the Government did not assert that there was a nonwaivable conflict but expressed its concerns about the potential for a conflict.

Mr. Rehl's counsel was apparently discharged after a meeting at the Alexandria Detention Center. The undersigned was informed that a motion to withdraw would be filed, and it was then that he undersigned then filed an appearance on behalf of Mr. Rehl.

Neither Mr. Rehl nor Mr. Biggs wants a delay in the proceedings. Both are eager to begin the appellate process and both are eager to be transferred from their currently place of incarceration where they are held in isolation for prolonged periods.

### III. Any Conflict At This Stage Is Waivable And The Court Must Defer To The Defendants Right To Counsel Of Choice

It is unfortunate that Mr. Rehl has lost confidence in trial counsel. The undersigned has repeatedly asked him to rethink the disaffection and will be traveling to Washington this week to revisit the topic with him. However, as of this writing, Mr. Rehl is adamant: He wants the undersigned to represent him.

In *United States v. Gonzalez-Lopex*, 548 U.S. 140 (2006), the Supreme Court made clear, in a five to four decision authored by Justice Scalia, that denial of the right to counsel of choice at trial is so fundamental that a denial of that right is not subject to harmless error analysis. The denial of the right to counsel of choice reentered the trial unfair and unreliable, in violation of the Sixth Amendment.

Obviously, this is not the Gonzalez-Lopez case, where a single defendant was denied his counsel of choice prior to the commencement of evidence. This is a multiple defendant case with post-verdict but pending sentencing.

However, the Mr. Rehl contends that his right to counsel of choice would be abridged were the undersigned not permitted to represent him and Mr. Biggs. Mr. Biggs asserts a similar position.

The Government raises a fanciful series of conflicts that could arise at a sentencing hearing. Upon learning of the sentence of the first client to be sentenced, would the undersigned attempt to leverage that sentence into an argument for the second client, and doesn't that necessarily result in the sort of relative culpability posture that makes a conflict unavoidable?

The answer is no.

While both defendants were convicted of identical counts, their postures at sentencing could well be different. It is possible that the Court assesses different

leadership levels to each defendant, with one being punished more seriously than the other for a perceived differences in role. The effect, if any, of Mr. Rehl's decision to testify, and the nature of his testimony and the Government's cross examination of him, could place him in a more culpable sentencing posture than Mr. Biggs. The undersigned concedes as much.

But differing levels of culpability are not the same thing as a conflict sounding in relative culpability. Both men will be sentenced for their roles in the commission of the crimes of conviction. The two men may well appear different to the sentencing authority. But the Court will be sentencing based on relevant offense conduct and the character of the defendants. The undersigned attended the trial and was attentive throughout. He is aware of no circumstance in which either client could credibly claim that their own individual culpability was less than that of the other in a way that would motivate either man to, in effect, blame the other. In such a case, there well could be a conflict, but even that conflict could be waived, if the clients so chose.

Put another way, guilt in this instance is not a zero-sum game. It is not the case that there is a fixed number of units of culpability, let's say 100, and that how that number gets spread among the defendants involves a competitive enterprise of assigning as much blame to others as possible so that there will be less blame left for the last defendant to be sentenced. To the contrary, each man will be sentenced according to what the Court thinks is appropriate given the evidence at trial and at the sentencing hearings.

The case might be different if there were a request for joint representation at the commencement of trial. At that point, the evidentiary tableau is a blank slate, and there

is no telling would defenses could, or should, be raised. Here, the evidence is in. Bringing a new lawyer in to conduct the sentencing for Mr. Rehl would yield lengthy delay as the trial transcript alone is in excess of 20,000 pages. In the weeks that it took to consider the issue of joint representation, the undersigned could think of no credible argument that there is a non-waivable conflict; indeed, the undersigned is hard pressed to conceive of any conflict at all.

The undersigned suggests that a simple canvas of both clients by the Court will suffice. Independent counsel is unnecessary. The clients are intelligent, and, as the Court observed, were attentive throughout the lengthy proceedings. Both are eager to get the sentencing behind them so that they can attend to their appeals.

### IV. Proposed Schedule

The delay occasioned by this issue is unfortunate, and certainly should not rebound to the detriment of the co-defendants unaffected by this issue. The undersigned has discussed with the Government availability for conflicts hearings and can be in Washington, D.C. for hearings on the matter on June 21 and 22. The Government is also available those days.

In the meantime, the undersigned will meet with Mr. Rehl to ask him to reconsider his views as to trial counsel's handling of the sentencing. The undersigned has spoken to trial counsel, who indicates that she will handle the sentencing if the client will consent.

THE DEFENDANT

By: /s/ NORMAN A. PATTIS /s/
NORMAN A. PATTIS

PATTIS & SMITH, LLC
383 Orange Street
1st Floor
New Haven, CT 06511
T: 203.393.3017
F: 203.393.9745

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the above-captioned date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Norm Pattis /s/*