UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) Case No. 1:21-cr-175-TJK |
| v. | ) |
| ETHAN NORDEAN, et al., | ) |
| Defendants. | ) |

**NORDEAN'S RESPONSE TO THE COURT'S SENTENCE CORRECTION**

On September 15, the Court corrected Nordean's sentence on Count 6 of the Third Superseding Indictment, reducing his term of incarceration from 216 months to 120 months, the statutory maximum sentence for a conviction under 18 U.S.C. § 1361.  9/15/2023 Minute Order. In the hearing, the Court indicated that it was resentencing Nordean under its inherent authority. To the extent that authority and/or the Federal Rules of Criminal Procedure enable Nordean's resentencing, the Court's correction implies that the 216-month sentence imposed on Counts 1-3 should be similarly corrected.

The Court imposed Nordean's sentence on Counts 1-5 in the following way.  As to Count 6, involving Nordean's depredation of a black metal fence, the Court applied the adjustment in U.S.S.G. §3A1.4, the "terrorism enhancement," by finding (by a preponderance of the evidence and by clear and convincing evidence) that the conviction was a felony involving a federal crime of terrorism because (1) § 1361 is listed in 18 U.S.C. § 2332b(g)(5)(B) and (2) the Count 6 offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." § 2332b(g)(5)(A).  That elevated Nordean's base offense level on Count 6 to 32 and elevated his Criminal History Category from I

1

to VI. §3A1.4(a), (b). Next, the Court applied the 4-level aggravating role adjustment. §3B1.1(a). That left an adjusted offense level of 36 and a Criminal History Category of VI, yielding a Guidelines range of 324 to 405 months' incarceration. The Court separately calculated offense levels for Counts 1-5, but because it declined to apply the upward departure provision in Application Note 4 to §3A1.4 and thus declined to enhance the offense levels for Counts 1-5 under §3A1.4, Count 6 was the count with the highest offense level. The Court grouped Count 6 with Counts 1-5 and the offense level for the resulting group was controlled by Count 6, as enhanced by §3A1.4. §3D1.3(a). Finally, the Court determined that Nordean's "total punishment" was 216 months' incarceration, which the Court imposed on Counts 1-3 and Count 6 under §5G1.2(b). Because the 18-year sentence fit within the statutory maxima applicable to Counts 1-3, the Court ordered that the sentences on Counts 1-6 would run concurrently. §5G1.2(c).

The Court's reduction of Nordean's sentence on Count 6 from 216 months' incarceration to 120 months' incarceration implies that the sentence imposed on Counts 1-3 should also be corrected. Section 5G1.2 provides that "the court shall determine the total punishment and shall impose that total punishment on each such count [of conviction], *except to the extent otherwise provided by law*." §5G1.2(b) (emphasis added). Imposition of a sentence enhanced under the §3A1.4 adjustment on Counts 1-3 was not permitted "by law," for several reasons.

First, Counts 1-3 are not "federal crimes of terrorism," as they are not listed in § 2332b(g)(5)(B). Federal law does not permit a sentence enhanced under the §3A1.4 adjustment to be "applied" to offenses not listed in § 2332b(g)(5)(B). Congress directed the Sentencing Commission to promulgate the current version of §3A1.4 in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 730 provides,

2

> The United States Sentencing Commission shall forthwith, in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that section had not expired, amend the sentencing guidelines so that *the chapter 3 adjustment relating to international terrorism only applies to Federal crimes of terrorism, as defined in section 2332b(g) of title 18, United States Code.*

Pub. L. 104-132, 110 Stat. 1214, § 730 (emphasis added).

That Congress did not intend the outcome here—an 18-year sentence, half of which is driven by §3A1.4—is seen through a simple comparison. Congress legislated that the maximum sentence for a § 1361 conviction is 10 years. It legislated that the §3A1.4 adjustment should "only" apply to crimes listed in § 2332b(g)(5)(B). The § 1361 conviction is the sole crime here listed in that statute. It beggars belief to conclude that Congress somehow contemplated that the terrorism enhancement would generate a sentence nearly twice the length of the statutory maximum sentence for a "federal crime of terrorism" simply because that crime is paired with a crime that Congress chose *not* to classify as terrorism. In this connection, notice that the vast majority of offenses listed in the "federal crimes of terrorism" statute feature statutory sentencing maxima of life imprisonment or at least 20 years' incarceration. § 2332b(g)(5)(B). That also strongly implies that Congress did not intend that the government would subvert the purpose of a federal crimes of terrorism list and its component statutory sentencing maxima through the simple device of pairing a terrorism crime with any non-terrorism crime containing a higher statutory maximum sentence.

The Guidelines themselves recognize that federal law prohibits the §3A1.4 adjustment from being "applied" to offenses not listed in § 2332b(g)(5)(B). Application Note 4 to the adjustment provides, "By the terms of the directive to the Commission in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, the adjustment provided by this guideline *applies only to federal crimes of terrorism*." §3A1.4 cmt. n. 4 (emphasis added).

3

In imposing a 216-month sentence on Counts 1-3 the Court was necessarily "applying" the §3A1.4 adjustment to counts that were not "federal crimes of terrorism." Before the Court grouped Count 6 with Counts 1-5, the highest offense level applicable to those counts was governed by U.S.S.G. §2J1.2, which the Court found applicable to Counts 1-4. Nordean's offense level on those counts was calculated this way: 14 (base offense level) + 8 (specific offense characteristic §2J1.2(b)(1)(B)) + 3 (specific offense characteristic §2J1.2(b)(2)) + 2 (specific offense characteristic §2J1.2(b)(3)) + 4 (role adjustment at §3B1.1(a)). That led to an adjusted offense level of 31. In Criminal History Category I, Nordean's Guidelines range stood at 108-135 months' incarceration. U.S.S.G. Ch. 5. The Court stated that it was imposing a below-Guidelines sentence. Accordingly, the Court necessarily "applied" the §3A1.4 adjustment to Counts 1-3 in imposing a 216-month sentence on those convictions. It follows that the Court imposed a "total punishment" on Counts 1-3 that was not "provided by law." §5G1.2(b).

Second, this conclusion is reinforced by the Court's explicit rejection of the government's request that the Court apply the upward departure provision in Application Note 4 to §3A1.4 to Counts 1-3. The Court found that Note 4 was owed no deference as it conflicted with Congress's intent that the severely punitive terrorism enhancement "only appl[y] to Federal crimes of terrorism, as defined in section 2332b(g) of title 18, United States Code." Pub. L. 104-132, 110 Stat. 1214, § 730. Thus, it is beyond peradventure that the version of §3A1.4 the Court "applied" to Counts 1-3 was the adjustment—not the purported upward departure provision and not an upward variance predicated on an unannounced policy consideration tied to §3A1.4. The Court should not deviate post-sentencing from its Note 4 ruling, since it was not "clearly erroneous." Fed. R. Crim. P. 35(a). To the contrary, the Court did not err.

Finally, even if the Court could apply the §3A1.4 adjustment to Counts 1-3 in a manner consistent with AEDPA (and thus with §5G1.2(b)), the Court's sentence correction on Count 6 demonstrates that it did not intend that result. The Court necessarily believed that it could impose a 216-month sentence on Count 6 specifically, the sole "federal crime of terrorism" in this case. Otherwise, it would not have imposed that sentence. It therefore further assumed that the Court was not effectively "applying" the §3A1.4 adjustment to Counts 1-3 because the sentences on those convictions ran concurrently with the Count 6 sentence of 216 months' incarceration anyway. No other interpretation of the Court's sentencing rulings makes sense. As indicated, the Court had rejected the government's request to apply the upward departure provision in Application Note 4 to Counts 1-3. That decision would be rendered immediately meaningless if the Court then turned around and imposed a "total punishment" nearly half of which would be implemented solely through Counts 1-3 which are not "federal crimes of terrorism." Therefore, even if the sentences on Counts 1-3 are consistent with §5G1.2(b), the Court should not apply §5G1.2(b)—a guideline that, like every other, is merely advisory post-*Booker*, *e.g.*, *United States v. Aref*, 2007 U.S. Dist. LEXIS 17926, *17-18 (N.D.N.Y. 2007)—and impose the "total punishment" for Count 6 only on that conviction. All other things being equal, this would imply that the sentence imposed on Counts 1-3 would be corrected to 135 months' incarceration (the high end of the Guidelines range under §2J1.2) and that the balance of the sentence imposed on the other counts would remain the same.[1]

---

[1] Nordean preserves, and does not waive, all other sentencing arguments he may raise on appeal. He assumes that "all other things are equal" for purposes of this filing alone. Nordean further argues that to the extent the Court applies the §3A1.4 adjustment to Counts 1-3, it effectively raises the statutory maximum sentence on Count 6, the sole "federal crime of terrorism," in violation of his Sixth Amendment right to a jury trial. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).

Dated: September 15, 2023               Respectfully submitted,

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com

Nicholas D. Smith, D.C. Bar No. 1029802
1123 Broadway, Suite 909
New York, NY 10010
(917) 902-3869
nds@davidbsmithpllc.com
*Counsel to Ethan Nordean*

**Certificate of Service**

I hereby certify that on the 15th day of September, 2023, I filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s):

Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

/s/ David B. Smith
David B. Smith, D.C. Bar No. 403068
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 548-8911 / Fax (703) 548-8935
dbs@davidbsmithpllc.com