IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA            CR Nos. 1:21-cr-00175-TJK-1
                                            1:21-cr-00175-TJK-2
v.                                          1:21-cr-00175-TJK-3
                                            1:21-cr-00175-TJK-5
1-ETHAN NORDEAN                             1:21-cr-00175-TJK-6
2-JOSEPH R. BIGGS
3-ZACHARY REHL                      Washington, D.C.
5-ENRIQUE TARRIO                    Tuesday, May 2, 2023
6-DOMINIC J. PEZZOLA,               9:00 a.m.
                  Defendants.
- - - - - - - - - - - - - - - - - - x
_____

            TRANSCRIPT OF JURY TRIAL - DAY 76
      HELD BEFORE THE HONORABLE TIMOTHY J. KELLY
            UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the United States:   Jason B.A. McCullough, Esq.
                         Erik M. Kenerson, Esq.
                         Nadia Moore, Esq.
                         Conor Mulroe, Esq.
                         U.S. ATTORNEY'S OFFICE
                         555 4th Street, NW
                         Washington, DC 20530
                         (202) 252-7233

For the Defendants:      Nicholas D. Smith, Esq.
                         DAVID B. SMITH, PLLC
                         7 East 20th Street
                         Suite 4r
                         New York, NY 10003
                         (917) 902-3869

                         Norman A. Pattis, Esq.
                         PATTIS & SMITH, LLC
                         383 Orange Street
                         1st Floor
                         New Haven, CT 06511
                         (203) 393-3017

                         John D. Hull, IV, Esq.
                         HULL MCGUIRE PC
                         1420 N Street, NW
                         Washington, DC 20005
                         (202) 429-6520

```
APPEARANCES CONTINUED:

For the Defendants:        Carmen D. Hernandez, Esq.
                           7166 Mink Hollow Road
                           Highland, MD 20777
                           (240) 472-3391

                           Nayib Hassan, Esq.
                           LAW OFFICES OF NAYIB HASSAN, P.A.
                           6175 NW 153 Street
                           Suite 209
                           Miami Lakes, FL 33014
                           (305) 403-7323

                           Sabino Jauregui, Esq.
                           JAUREGUI LAW, P.A.
                           1014 West 49 Street
                           Hialeah, FL 33012
                           (305) 822-2901

                           Steven A. Metcalf, II, Esq.
                           METCALF & METCALF, P.C.
                           99 Park Avenue
                           6th Floor
                           New York, NY 10016
                           (646) 253-0514

                           Roger I. Roots, Esq.
                           ROGER ROOTS, ATTORNEY AT LAW
                           113 Lake Drive East
                           Livingston, MT 59047
                           (775) 764-9347

Court Reporter:            Timothy R. Miller, RPR, CRR, NJ-CCR
                           Official Court Reporter
                           U.S. Courthouse, Room 6722
                           333 Constitution Avenue, NW
                           Washington, DC 20001
                           (202) 354-3111


Proceedings recorded by machine shorthand; transcript
produced by computer-aided transcription.
```

**P R O C E E D I N G S**

THE DEPUTY CLERK:  This is Criminal Matter 21-175, United States of America v. Defendant 1, Ethan Nordean; Defendant 2, Joseph R. Biggs; Defendant 3, Zachary Rehl; Defendant 5, Enrique Tarrio; and Defendant 6, Dominic J. Pezzola.

Present for the Government are Jason McCullough, Erik Kenerson, Conor Mulroe, and Nadia Moore; present for Defendant 1 is Nicholas Smith; present for Defendant 2 are John Hull and Norman Pattis; present for Defendant 3 is Carmen Hernandez; present for Defendant 5 are Nayib Hassan and Sabino Jauregui; present for Defendant 6 is Steven Metcalf.  Also present are Defendant 1, Mr. Nordean; Defendant 2, Mr. Biggs; Defendant 3, Mr. Rehl; Defendant 5, Mr. Tarrio; and Defendant 6, Mr. Pezzola.

THE COURT:  All right.  Good morning, everyone.

You have all been given the note.  So let's talk about a response for the two different questions the jury has asked.

The first one, here is how I propose -- here's my proposal for you to consider.  The question is "For Counts 1 and 4, the conspiracy charges that" -- actually, it's funny -- "that" -- something -- "that have" -- "that" -- "charge" -- "that have more than one goal listed, can one agreed-upon objective of the conspiracy simultaneously

satisfy both goals?"

My proposed response is, "Evidence of the same objective can, if you so find, satisfy both goals of the conspiracies charged in Counts 1 and 4 simultaneously."

I'll hear from everyone.  Let me hear from the Government first on this.  I mean, I know the Government's going to want me to also say, "You don't have to prove both of them," but that's not the question -- and I know -- but that's not the question they asked.  And it's in the -- it's -- I mean, I -- make your pitch for me.

MR. KENERSON:  So yes, Your Honor.  The language that the Court laid out, we think, is an accurate statement of the law, and so we don't object to the Court reading the language that you read out.  In terms of the step further that, I think, the Court was anticipating us going to, I think it is -- that the Government is not -- it's also an accurate statement that the Government is not required to prove both goals of the conspiracy and they are requesting, you know, whether one objective can simultaneously satisfy both goals.  We think it's an accurate statement of the law, and also, responsive to the -- their question, given that they asked about satisfying both goals, to note that they do not have to find both, and we would propose to just re-read the portion of the instructions that cover that.

THE COURT:  Which instruction --

MR. KENERSON:  Which is on Page 23 at least with respect to seditious conspiracy.

THE COURT:  Right.

(Brief pause.)

Where is that language?  I just don't see it.

MR. KENERSON:  So it's Page 23 under "Unanimity as to the Goals or Objects of the Conspiracy."  "The Government is not required to prove both goals of the conspiracy; however, the Government must prove at least one of those two goals beyond a reasonable doubt.  If the Government has not proved at least one of those two goals was a goal of the conspiracy charged in Count 1, your verdict must be not guilty."  That language is, then, echoed again on Page 27 --

THE COURT:  Right.

MR. KENERSON:  -- in the instruction for Charge 4 -- Count 4, excuse me.

THE COURT:  Maybe a good compromise is I could just read that entire paragraph which reemphasizes unanimity as to one, and also, that if they haven't proved at least one, then the verdict must be not guilty.

MS. HERNANDEZ:  That entire paragraph plus the next sentence about unanimity.

THE COURT:  Right.  Right.  Well, that's -- I mean --

MS. HERNANDEZ:  Because otherwise, it does not

reflect the unanimity requirement.

THE COURT: Okay. I mean, that's, you know -- as to either -- I mean, I think that's also -- if you all want to put that in there, too, that seems fair.

Mr. Smith?

MR. SMITH: Thank you, Your Honor.

So just parsing this first question, it appears that the jury is making reference to the verdict sheet, because the first sentence says "The conspiracy charges that have more than one goal listed." The verdict form breaks down the goals of the conspiracy. And then the next -- and the question is whether an agreed-upon -- then the Court will notice that the jury is drawing some semantic distinction between "objectives" and "goals." They say, "Can one agreed-upon objective simultaneously satisfy both goals?" And, again, "both goals" appears here to be a reference to the verdict form which breaks them out. Your Honor, as Your Honor can see on the page of the jury instructions you were just reading, the words "object" and "goals" are used synonymously. The jury instructions don't purport to draw any substantive distinction between "objectives" and "goals."

So it looks like what the jury is doing here is it seems to be saying there's a category we can call A which is an objective, and they want to know whether A can satisfy B

and C which they're classifying as goals.  So if we think of three circles here, A is an objective; B and C are goals.  And they're saying, "Can A satisfy B and C?"  The problem here is that they haven't been instructed there's some sort of difference between objectives and goals.  They appear to be confused on that.  And the second problem here is that if "A is something different than B and C" is not exactly a plan -- a goal of interfering with the execution of a law by force or opposing the government -- authority of the United States by force; it's some other thing, then they need to be instructed that if it's not either of the goals, they can't find guilt on either prong of the offense here.

To the -- they -- it is -- so when I read this question, it's utterly unclear what they're even asking because there isn't a distinction between "objectives" and "goals," and if they're under that impression, they need to be disabused of it.

THE COURT:  Okay.  I think you're really overreading this, and they may well be using the terms simultaneously and it really doesn't -- I mean, if we tell them -- for example, if we treat them as simultaneous -- as meaning the same thing -- in other words, can one -- in fact, the -- just to be clear, the -- what I just read doesn't use the term "objective" at all.  So you know, they may well be asking, for example, "Can one agreed-upon goal

simultaneously, you know" -- they're not, you know -- again, this is a little bit of semantics, but you could imagine them saying, "Well, if we think they were intending to stop the certification" -- let's just say probably -- possibly the most obvious thing they might be considering -- "could that satisfy -- could that factual -- could that satisfy both the goals of the conspiracy?"  It seems to me that, again, it need not, but it could, and that's why I built in -- I think we should say, you know, "If you so find," you know?  They may find that; they may not find that, but I don't think there's any doubt that it could; is there?

MR. SMITH:  Well, Your Honor, I think we -- what we would ask is -- the Court to clarify is -- say -- point to them that the instructions themselves do not draw any substantive distinction between "objectives" and "goals." So if --

THE COURT:  They don't say anything about -- at least in this paragraph we've been talking about me reading, they say nothing about objectives at all.  So I guess --

MR. SMITH:  Well, it's the head- -- it's the title of the section, Your Honor.  It says "Unanimity as to the Objects or Goals of the Conspiracy."

THE COURT:  Okay.

MR. SMITH:  So right there, it's telling the jury there is no difference between these things.  So they mean

the same thing in this world.  So if the jury is under the impression that "objectives" and "goals" are something different, they're -- they are confused about what they have to find here.  So we would just request that the judge -- I don't think it's partial to either side in this case to instruct the jury "objectives" and "goals" are synonymous in this -- in the jury instruction.  So to the -- and, Your Honor, we think it would be appropriate at that point to say, "To the extent that you find an objective that is not the same thing as both goals on the jury sheet, you may not find guilt beyond a reasonable doubt."

THE COURT:  Why don't I -- I mean, to the extent we're concerned, again, about the relationship between these two things, the instructions actually say it.  "The object of a conspiracy is the illegal goal that the conspirators agree" --

MR. SMITH:  Right.

THE COURT:  -- "and hope to achieve.  A," you know -- end.  So I can re-read that instruction.  I -- it's an instruction we've already given them.  And that, I think, will clarify the -- that -- I could preface all of this by just reading that one instruction that clarifies that in some way.

MR. PATTIS:  (Indicating.)

THE COURT:  Mr. Pattis?

MR. PATTIS:  Biggs joins in part with Nordean and urges the Court to do less rather than more at this point. The question is not at all clear to me, and there is a logical possibility that they could conclude yes as to A but no as to B, and I don't want to foreclose that.  There could have been a conspiracy that's not covered by either goal, and thus this business of objectives and goals becomes pregnant and they probably are synonymous.  So my request would be to refer them to the substantive charges and ask them to review them and if they have additional questions to come back with them, because what I fear is both sides will jockey for advantage with substantive -- with supplemental charges and we're going to -- we're just going to get bogged down and it may not be as big a deal as we're making it.  So my request would be that the Court refer them to the pages describing those; ask them to review them; and if they have additional questions, return to us.  That's the Biggs position.

THE COURT:  All right.  I -- all right.  What's --

MS. HERNANDEZ:  I would agree with that.

THE COURT:  I definitely want to err on doing less than more, and I definitely want to err on simply directing them to things we've already told them rather than create new things.  So those are my biases here.

MR. PATTIS:  There's a good argument that

everything that we've discussed is covered in the charge already. And so I think by just referring them to that; asking them to review it; if they have additional questions, they can come up, because I -- the synonym problem that Attorney Smith points out, I agree with. I mean, if they're drawing a distinction that doesn't matter, charging them on a supplemental basis is going to muck up a charge that's already very complicated. They've made a lot of progress, you know? They've gone from last night to saying, "Well, we're here for two more weeks." They're suddenly appearing -- the rubber is meeting the road. So let's focus them on the law and await further questions from them.

THE COURT: I think it may well be that we just overread that note from yesterday that --

MR. PATTIS: Possibly.

THE COURT: -- you know, it was a housekeeping matter. They --

MR. PATTIS: Possibly.

THE COURT: -- decided to give it to us all at once. Who knows?

What's the Government's view of at least -- well, Mr. Smith's comment and Mr. Pattis's position?

MR. KENERSON: So I think to take them first with the points Mr. Smith made, I think if the Court is going to

instruct on the meaning of "objective" in the instructions, the Court needs to look as well to Pages 18 and 19 which is the general definitions of "conspiracy," and that includes discussion of unlawful objection -- objectives; that conspiracy is an understanding -- an agreement, including a mutual understanding or meeting of the minds to try to accomplish a common unlawful objective.  So I think that the paragraph referred to by Mr. Smith is -- if we refer them solely to that, it is a little misleading in terms of how "objective" is defined.  But I want to also come back to a point the Court made, is that, you know, if the note had been written such that it was, "Can one or more goals -- can one -- can an agreement to commit one goal simultaneously satisfy Goal 1 and Goal 2," I think the Court's answer is still an accurate statement of the law, no matter how they may be thinking of "goal" versus "objective."  If they -- if there is an agreement to do one thing and that agreement to do one thing violates multiple prongs of the statute, the answer is yes, and that's the answer the Court has given them and we'd ask the Court to give them that answer, and that's regardless of any synonym confusion issue.

With respect to Mr. Pattis's point -- I mean, I think the -- that this note, I think, shows that they have -- are reading the instructions, have read this portion of the instructions, and they have asked this question.  So

I'm not sure it actually answers their question to just refer them back to things that they've already written [sic].  I think the Court should actually answer the question that --

MR. PATTIS:  But --

MR. KENERSON:  -- was asked.

MR. PATTIS:  -- Judge, may I -- the -- here's the thing that occurs to me and it -- and Mr. Kenerson's remarks drive it home with a vengeance.  Answering it in the way the Government suggests would -- might dilute the burden of proof, because if the -- they could say, "Well, if one goal satisfies it and six of us think it was one and six of us think it's two, that's good enough," and so the unanimity requirement is there for a reason, and I would reassert my hope that the Court would behave in a sphinx-like manner at this point.  We're still early in the jury deliberations.  It's the first substantive request on the law.  Asking them to review it again I don't think is avoiding their question.  It's responding to an ambiguous question in a way that suggests we need further guidance from them, especially given the nature of the conspiracy pled here, an implicit understanding reached instantaneously.

MS. HERNANDEZ:  I agree with Mr. Pattis that the best procedure is to just say -- refer them to the instruction and if they have other questions they can come

back, because the question is drafted -- has these ambiguities and we've struggled over the instruction for weeks.  So I think rather than deviate from that standard that the Court approved, I would suggest that the normal thing to do -- or the thing to do is to just refer them to that.  I also --

THE COURT:  I don't --

MS. HERNANDEZ:  -- want to -- I also would like to talk about Count 4, but I'll -- just letting the Court know as -- when the Court wants me to raise that issue on Count 4 which is part of the question.

THE COURT:  Okay.  I don't know how you separate whatever --

MS. HERNANDEZ:  Well --

THE COURT:  -- you want to say from --

MS. HERNANDEZ:  -- here's my --

THE COURT:  -- about Count 4 from --

MS. HERNANDEZ:  Here's my concern with Count 4. Reviewing the verdict form, on Count 4 it has eliminated the requirement of force, intimidation, or threat.  So it makes it a -- and especially in a case like this involving members of Congress and the whole legislative purpose, if you read -- the way the Court drafted the verdict form -- and we should have objected earlier -- it only requires that they find that the Government has proved the existence of a

conspiracy, and then the second question is to prevent a member of Congress from discharging a duty or a member of -- or federal officer, and in the -- and if you look at the elements from the charge, it has three parts to it, and one of -- is -- one of the -- the "by force, intimidation, or threat" is not contained in the verdict form, and I'm concerned that the way it's drafted it has reduced the burden of proof and mis- -- and it's misleading.  I'm not sure that they're going to go back and forth to the instructions and the verdict form.

THE COURT:  They've, of course, been instructed that the verdict form is not substantive in any way.

MR. KENERSON:  (Indicating.)

THE COURT:  Mr. Kenerson?

MR. KENERSON:  Just to briefly respond, if the Court will allow me, to Mr. Pattis's point -- and this, kind of, dovetails with Ms. Hernandez's point -- is that with respect to the goals of the conspiracy, those were where we, in fact, have -- not only the Court -- did the Court not only give a special unanimity instruction, but there are special unanimity questions in the verdict form itself.  So they're going to have to find clearly unanimously and tell the Court that they are finding unanimously which goals, if any, they find are proven.  So I don't think Mr. Pattis's point stands up in light of the verdict form.

With respect to Ms. Hernandez, the Court is correct. They've obviously been instructed on the substantive elements of Count 4, and those do include the proper elements.

THE COURT: I, you know -- I think -- it seems to me -- I don't think the -- Mr. Pattis's suggestion that I just simply turn them back to the instructions, I don't agree with that only because the instructions don't answer the specific question they have asked. So I think turning them back to the instructions is not being fair to them. I think the question in my mind is, then, what else we include. In other words, I -- something to say, more or less, that, "Yes, evidence of a particular objective" -- I think the way they phrased it -- "can satisfy simultaneously both goals." I think we all agree that's correct. I -- the question, then, has become, what else do I say to them to clarify any of these other ancillary things? Mr. Smith makes a good point. Again, the instructions say -- the -- they say "The object of a conspiracy," you know -- they provide a statement that instructs the jury as to the relationship between "object" and "goals." I don't see the harm in reiterating that and just saying, "As you have been instructed, X; that is, as you have been instructed, the object is the -- is an illegal goal the conspirators agree and hope to achieve. A conspiracy" -- done. Then from the

Government's perspective, they want to -- the question is whether I make clear that the Government is not required to prove both goals.  It is strange that they would ask the question, "Can it simul- -- can it, you know -- can the -- can evidence of an object satisfy both goals simultaneously?"  And I wouldn't give that unless I gave all these other, you know -- the other points that are in that paragraph, and Ms. Hernandez makes the later point which is, you know, about unanimity and all the rest that we already, again, have an instruction.  I can make it clear to them by saying, "As you have been already instructed," on things that I am repeating and then simply say -- in other words, include that relationship point; include the Government's not required -- include all the text -- in other words, I either -- long story short, I don't think I can just refer them back.  I think I have to give them something on the "simultaneous" point.  The question in my mind is what I add to that to provide context, and I wouldn't add anything that they haven't already been instructed on.  So I -- my inclination is that it's rarely a problem to simply reiterate what I have already instructed them and given that, kind of, all of what you have told me are a, kind of, melange of things that some of which the defense would want and some of which the Government would want, my inclination is to just do all of that in addition to just answering

their specific question.

MR. SMITH:  (Indicating.)

THE COURT:  Mr. Smith?

MR. SMITH:  Your Honor just pointed out how it's -- No. 1 is, kind of, an unusual question in that they're asking about whether two -- both goals could be satisfied even though either would be sufficient to find guilt.  One way of reading this, Your Honor, is -- particularly paired with the second question here -- is that the jury could find itself agreeing on what it's -- unanimously on what it calls an objective, but then there's a breakdown among the jury among what they're calling goals. So what they might be trying to do is seeing whether they can thread the needle here and find unanimity even though they don't agree on the language breakdown in the goals --

THE COURT:  Right.

MR. SMITH:  -- and if that were the case that is not unanimous.

THE COURT:  Well --

MR. SMITH:  So --

THE COURT:  -- I don't think that's right at all. In other words, they can find different evidence meets -- in other words, they have to be unanimous on the goal -- and this is a reason, frankly, again, to give them, maybe, the extended mix of language that Ms. Hernandez wanted.  In

20409

other words, they have to be unanimous as to the goals. They can -- they could rely on different -- they don't have -- all have to rely on the goals based on the same evidence, I don't believe.

MR. SMITH:  So Your Honor, I think the bottom line is they've got to make -- they've got to check one of two boxes or both --

THE COURT:  Right.

MR. SMITH:  -- on goals, and if six are willing to say, "Box A okay -- is okay, but not Box B," and six are willing to say, "Box B is okay, but not Box A," they need to be told that's not unanimous.

THE COURT:  Right.

MR. SMITH:  And no matter -- even if they can create a concept that hangs over both, they -- that's not -- I think that -- what might be -- that's what they're trying to drive at here.  "If we can agree on a concept that hangs over both, have -- can we check B -- A or B unanimously?" And they need to be told they can't do that.

THE COURT:  Right, and that's a reason to give that entire -- in other words, "The Government is not required to prove both goals; however, the Government must prove at least one of the two goals beyond a reasonable doubt.  If the Government" --

MR. PATTIS:  But the charge says that.

20410

THE COURT: If -- I know that. I'm repeating --

MR. PATTIS: So why read -- yeah.

THE COURT: Because there may be confusion. "If the Government has not proved at least one, they must be not guilty. As to either or both goals of which you may find the co-conspirators agreed to promote, you must be unanimous." I mean, I -- it's the point you made, Ms. Hernandez. So I'm -- what I'm inclined to do is write it up with, sort of, an, "As you have been instructed, the object of a conspiracy is this," and that shows the different -- the relationship between the conspirators and the goal; and then, "As you have been instructed," and give them that -- essentially, this is tailored to Count 1, but I would just take that part out. So "The Government is not required to prove both goals" -- this is -- I'm reading from Page 22 on my version of this which might have changed a little bit, but -- and then end with the unanimous point and then say, "To answer your question, evidence of the same objective can, if you so find, satisfy both goals of the conspiracies charged in Counts 1 and 4 simultaneously."

MS. HERNANDEZ: That just seems to undo the whole instruction. I don't --

THE COURT: But that's --

MS. HERNANDEZ: -- understand -- I mean, I --

maybe, I -- it seems to change what we instructed them --

THE COURT:  It's not --

MS. HERNANDEZ:  -- by somehow making a difference between the goal and the objective.  And, again, I'm not sure the problem -- I think the problem is that the jury is confused and giving that last statement that the Court said, I think, just adds to the confusion and lightens the Government's burden.  I would -- so I would -- I guess I'm -- unless the Court is going to read the entire instruction or just direct them to the instruction, which makes sense, and then -- I guess I'm back to Mr. Pattis.  Direct them to the instruction.  If you still have questions after that, come back, because this question is a -- shows confusion and, I think, trying to answer bits of it just is going to lighten the burden and make it even more confusing.  I think the way to go is to just refer them to the instruction.  If they have -- if, after reading the instruction, they still have questions, they can come back.

THE COURT:  You just -- we're not -- we are affirmatively telling them, "You are asking a question and we are not going to answer your question," and their question is not answered by the instructions.  So I don't think that's a viable --

MR. PATTIS:  I don't think we're --

THE COURT:  -- way forward.

MR. PATTIS:  -- doing that at all.

THE COURT:  Mr. Smith, you had your hand up next.

MR. SMITH:  Okay.  Thank you, Your Honor.

May I propose an alternative solution which, I think, gets at the same -- would be answering the jury's question but it's reverse order?  It's dealing with No. 2 first.  So let's set --

MS. HERNANDEZ:  I have --

MR. SMITH:  -- No. --

Please.

MS. HERNANDEZ:  We shouldn't go off until we finish 1.

MR. SMITH:  So Your Honor, for No. 2, I believe, unless Ms. Hernandez chimes in, that the defendants' response on 2 would be to ask the jury -- Question No. 2 -- would be to ask the jury to return the verdicts on which they are not -- the charges on which they are not unanimous or charged; then, I think, when we have a response from the jury on which charge, or charges, they may not be unanimous on, I think that's going to inform the answer to Question 1. If these are indicating they're not unanimous on Question 1, we're going to have more insight into what it is they're driving at here, whereas let's say, Your Honor, they come back and they say, "The charge on which we're not unanimous on is Count 10."  Okay.  Then that -- we know from that that Question No. 1 has nothing to do with unanimity anymore.  So

I think -- does that make sense?

THE COURT:  I understand your instinct, but I think we have to answer both of them at the same time, and since we've -- but I agree with you.  There's a little bit of overlap in these two things.

What's the -- let me just -- just to get it on the record so I can consider it, what's the Government's view of -- I'll just say, my view of the second question was, it seems to me, some -- my thought was some combination of letting them know they -- again, "As you have been instructed" -- there's, in here, a -- language about "You may return a partial verdict," and also, just tell them, "And if you become deadlocked" -- or not that word -- "but if you" -- they said -- "do not reach unanimity on a charge or with regard to a defendant, you may inform me," and just let them know that if that is the case, they can inform me.

THE DEPUTY CLERK:  (Indicating.)

THE COURT:  All right.  I'm announcing to you all we have another note that you'll be given in a moment.

(Brief pause.)

All right.  Ms. Harris will -- why don't we do this.  This is even -- this is -- this one is, I think, even more -- the questions are very -- I'll just read the two questions as she passes it out.

"We would like clarification on jury instructions

under," quote, "'organizations and persons not present,' Page 13, which states 'You should not make any inferences or speculate about other individuals you have heard about in this trial or whether they have been charged with crimes.'"

I guess, actually, now reading it, it's one big question.

"However, Count 8 appears to require us to make inferences about a person who is not a defendant in this case. Can you provide clarification on how the theories of liability could potentially apply to the defendants in relation to such individual?"

We have a diligent jury.

Here -- let's put this second note aside, because we all haven't had a chance to look at it at this point.

What's the Government's view of the second question of the jury note that we have had for an hour?

MR. KENERSON:  So with respect to the second question, I think that the route suggested by Mr. Smith would be, kind of, an improper invasion into the jury's deliberations where we ask them specifically what the charge is.  I think the Court's instinct was right that the language from -- about partial verdicts from the jury instructions at least comes on Page 14 of our version and it says "At any time during your deliberations, you may return a verdict of guilty or not guilty with respect to any

defendant on any count."  And the Court could also -- if it's reinstructing them on that, could reinstruct them on unanimity of verdict, though that might be somewhat covered with respect to our answer to Question 1, depending on how the Court comes out, but we don't think that it's appropriate to go further and to tell them that they can inform the Court, you know?  I think that's -- I -- that's not in the original instructions and it's not -- I don't think it's necessary to respond to this.  I think that the -- I appreciate the laughter from defense table, but it does say "At any time during your deliberations, you may return your verdict of guilty or not guilty with respect to any defendant on any count," and that -- if they do that, we -- if they do that, obviously, it will be clear what --

(Brief pause.)

Right.  And it does say, you know, with respect to where they are on other counts that they should not tell the Court how the jury is divided on any matter.  Now, it specifies by number, but I -- there's, kind of, a risk in inviting them to start telling the Court --

THE COURT:  True.

MR. KENERSON:  -- that they are deadlocked.

THE COURT:  True.  Then for 2, I think the way to do it is as Mr. Smith said and as you said, just to let them -- to reiterate, "As you've been instructed," blah,

blah, blah, blah, blah, the partial verdict, and, you know, we'll see what happens in response to that.

MR. SMITH:  What was the language Your Honor was going to read to -- on the -- that --

THE COURT:  Yeah, it's --

MR. SMITH:  -- point?

THE COURT:  Right.  It's already part of the instructions.  It's -- this is under "Multiple Defendants, Multiple Counts."  "At any time, you -- during your deliberations, you may return your" -- I guess I would say "you may return a" -- "guilty" -- "a verdict of guilty or not guilty with respect to any defendant on any count."

MR. SMITH:  But, Your Honor, that doesn't, I guess, go into the point about "let's answer the jury's question."  They're saying, "How should we proceed if we can't reach unanimity?"  And that kind of instruction doesn't give them that option.

THE COURT:  It doesn't.  It's a strange -- I agree with the Government.  I've never heard of a court saying, "You may tell me," but, look, they haven't -- I think we just have to rely -- one thing the note does seem to suggest is they haven't arrived at that point yet.  We let them know they can deliver a partial verdict if they are -- if they get stuck to a place where they can't -- I mean, that's what juries do.  They let the judge know.  And we'll deal with it

then.

MR. SMITH:  So Your Honor, I think that's right on "partial verdict," but that -- the line that Your Honor was going to read to them I don't think says "partial verdict" or explains what that is.  So I think an instruction letting the jury know that they can return counts on which they are not -- they have been unable to reach agreement would be appropriate, because here it gives them a binary, guilty or not guilty, but that doesn't include the option of returning a charge on which they cannot reach agreement because they cannot.  So that -- this instruction seems to imply to them that there are only two options here which is not the case.

THE COURT:  No, no, it's literally the instruction we've already given them; right?  I mean, I --

MR. SMITH:  So --

THE COURT:  In fact, I would just say, "At any time during your deliberations, you may return a partial verdict.  In other words, a verdict of guilty or not guilty with respect to any defendant on any count."  And so they're instructed that they can do that.  We'll see what happens. And when they come back and give -- they haven't been shy about notes.  When they come back and give me a note that says, "We are unable to reach a verdict on these other things," then we will -- they know they have to be unanimous.  It's not --

MR. SMITH:  Well, so, Your Honor, they're saying, "If we can't reach" -- so if we just tell them, "You can return a verdict of guilty or not guilty," that's not answering the question of what happens when they're not unanimous.

THE COURT:  Well, we could say -- fine.  I could add, "As you have been instructed, your verdict must be unanimous," and then say this.  It doesn't answer their question.  I agree.  But they will inform -- they don't -- until they get to the point of -- where they're saying, "We can't be unanimous," they'll inform us and then we'll bring them in and instruct them --

MR. SMITH:  So after that second line, Your Honor, is there any problem saying, "So for example, if you are able to unanimously reach agreement on one charge but not -- you are unable to reach unanimity on another, you may return your verdict with the charge on which you are able to reach unanimity and indicate that you are not able to reach unanimity on the other"?  Because that is not -- it's not partial to either side and it's just explaining to them what they're -- it is they're supposed to do without putting a thumb on the scale.

THE COURT:  Again, I'm only --

What's the Government's view of that?

MR. KENERSON:  No, that -- I think that goes,

again, too far.  The -- they will -- I think the Court is right.  They will send a note if they believe that they are unable to reach a unanimous verdict on any particular count as to any particular defendant.  If they do return a partial verdict, it will be, with the Court's instructions, a unanimous verdict on whatever count they send, if they send a count, and the rest we will deal with if and when that happens.

MR. SMITH:  Your Honor, when Mr. Kenerson says "they will send a note if they're not able to reach unanimity," that's exactly what they're asking.  They're asking --

THE COURT:  No --

MR. SMITH:  -- "What we should do when that happens."  So if you're -- just to address Mr. Kenerson's point, if the Court would prefer an instruction that says, "You will send -- if you are unable to reach unanimity on a particular charge, you will send me a note," that would answer their question because it's -- they're -- basically, they're asking for a procedure to follow.

THE COURT:  Right.

MR. SMITH:  And if we don't tell them what the procedure is, how would they know to send Your Honor a note?

THE COURT:  Because they've been sending us notes the whole time.

MR. SMITH:  I mean on unanimity, Your Honor.

THE COURT:  I --

MR. SMITH:  Yeah.

THE COURT:  -- you know -- I can reiterate the unanimity -- I think it probably does -- I -- again, I've never -- I think it probably does -- my inclination is to say -- remind them -- to your point, to make sure we don't have anybody thinking the answer is "you don't have to be unanimous," is to just say, "Your -- as you've been instructed, your verdicts must be unanimous.  If, at any time during your deliberations -- at any time during your -- as you have been instructed, at any time during your deliberations, you may return a partial verdict.  In other words, a verdict of guilty or not guilty with respect to any defendant on any count," and we'll see how things progress. If they come back and say, "We've hit that point; we can't be unanimous on some other charge," we'll deal with it.

MR. SMITH:  What does Your Honor think about just adding that last line that Your Honor just said?  The line that Your Honor -- the sentence Your Honor just read? Because that tell- -- that answers their question.

THE COURT:  Because I don't know that there's any -- I don't know of any judge that has ever instructed the jury in that way, and I think it's obvious that's what they will do if they hit that point, as long as we're

reemphasizing for them that they have to be unanimous. And this is odd just because they haven't said, "We're not unanimous." They've just said, "Give us this instruction for the future." And I think as lawyers can appreciate and I certainly can appreciate as a judge, I tend not to have to try to answer questions I don't have to until they arise.

So here's what I think we should do. I'm going to -- because this is pretty sensitive, what I'm going to do is -- it's 12:15 -- I'm going to type up -- I'm going to have typed up what I intend to give them on both of these fronts with the exact -- I think, again, on the first question, I'm going to go bigger rather than smaller because I think -- again, but not deviating from what they've been told already other than answering their question which, I think, we need to do, and I'll get it to you all in advance. Let's just come back and I'll hear from you if you have any further things to add to it or comments on it, but I'll -- if we come back at -- it's now 12:15. If we come back at 1:15 after lunch --

MS. HERNANDEZ: Your Honor, on the Count 4 that I mentioned before, I'm really concerned about the verdict sheet --

THE COURT: Well --

MS. HERNANDEZ: -- eliminating the -- I don't know if the Court's going to address that. I think --

THE COURT:  I --

MS. HERNANDEZ:  I think --

THE COURT:  Here's what I'd ask you to do.  It's a good point.  It's why I asked the parties to look at the verdict sheet.

MS. HERNANDEZ:  We did.

THE COURT:  If you think there's something -- here's what I would encourage you to do.  Talk to your fellow defendants.  Engage the Government on this.  It's something you all haven't raised with me at all until now.  I want to get them an answer to their question, but if you think the verdict sheet needs to be tweaked and that would be appropriate at this stage, we can do it.  I just -- I haven't looked at the question you're asking.

MS. HERNANDEZ:  And, again, I apologize.  We looked at the verdict sheet, but, of course, when the jury just asked this question is when that popped out at me.  I hadn't noticed it before.

THE COURT:  Okay.  So why don't we --

Actually, Ms. Harris, you want to come back at 1:30?  Is that what you're asking me?

THE DEPUTY CLERK:  (Indicates affirmatively.)

THE COURT:  All right.  Why don't we -- how about this?  We're going to come back at 1:25 so that we can try to get this done and to them when they come back from --

MR. KENERSON:  And does the Court want to hear from the parties on the new note before we --

THE COURT:  Well, do you --

MR. KENERSON:  -- break or --

THE COURT:  Do you want to give me your -- you can give me your hot takes now and we'll take it up when we come back, if we need to.  Do you have a --

MR. KENERSON:  So I think our hot take without getting into, kind of, massaging the language is that this person has been -- the defendants have been charged with an act allegedly committed by Charles Donohoe and that they can apply the principles of liability as the Court laid out.

THE COURT:  I -- right.  I don't think -- I think this is going to be -- the answer to this question is, like -- to your -- to Mr. Pattis's point, I think the answer to this question is going to be more or less, "Look at the instructions."  I don't think there is much more we can really say other than, you know, "You've been provided instructions about the theory of liability -- the potential theories of liability," and I don't think there's -- on this one, I think it is, like, "Look at the instructions. They're the best" -- there's nothing more we can say.

MR. PATTIS:  (Indicating.)

THE COURT:  Mr. Pattis?

MR. PATTIS:  In the hot-take category -- and

limiting it exclusively in that way -- I wonder whether we would have saved ourself this question if we had eliminated the following four words from Page 13: "in this trial or." So -- and what we've -- because I think what that language was supposed to say is they shouldn't speculate about whether they've been charged, and the four words "in this trial or" preceding "whether" suggest a distinction that doesn't matter, and I think they got hung up on that, but I -- that's just a hot take.  Something for you to consider, sir.

THE COURT:  Yeah.  I mean, it may -- what we may say -- I mean, what actually -- the one thing we could actually do other than point them back to the instructions is just say -- it doesn't matter -- I mean, the question of whether Charles Donohoe was or was not charged with anything is not relevant to their consideration here.  Whether he was charged with literally anything under the sun is not -- it's a charging decision, not his liability.

MS. HERNANDEZ:  I would object to that.  That lessens the Government's burden, adds facts that it should have brought into evidence if the Government wanted to, you know -- it's a failure of the Government's evidence, I think, that the jury is looking at, and I don't think we -- the Court is -- can add anything about --

THE COURT:  But I mean, the -- I guess the point

is let's say Donohoe had been testifying.  You all would have been saying, "We don't want what he's been charged with to be" -- I don't even remember what --

MS. HERNANDEZ:  Well, no, he would have been charged as a co-conspirator and this -- and his plea would have come in.  His statement of offense would not have come in.  The Government chose not to put him on.  I don't think we get -- he -- they get to have help from the Government -- from the Court's now --

THE COURT:  But the --

MS. HERNANDEZ:  -- eliminating that issue.

THE COURT:  But the plea would not have been admitted for the purpose of showing these defendants' liability.

MS. HERNANDEZ:  Correct, but it would have been brought in to show Mr. Donohoe's charge that he had pled guilty on his own.  I think it's a failure of proof, and I don't -- and I would object to adding any facts to the record.

THE COURT:  Yeah.  I mean --

MR. JAUREGUI:  Tarrio agrees with Ms. Hernandez, Judge, and we're in the position that they should just be sent back to the instructions.  That should be the answer to all these questions.  That's our position.

THE COURT:  All right.

MR. JAUREGUI:  Just send back to the instructions, review the instructions.

MR. KENERSON:  (Indicating.)

THE COURT:  Mr. Kenerson wants to reply.

MR. KENERSON:  I -- we don't think that what the Court proposed is adding facts.  It's saying it doesn't matter one way or the other.  So number one, whatever the Court proposed is not adding facts as a factual matter.  So the points raised by Ms. Hernandez, now joined by Mr. Jauregui, I don't think that those are fairly raised.

I think at the end of the day, whether we give that sentence or not -- and we think it would be helpful and responsive to the jury's question to do so -- ultimately, it seems like everyone is largely on the same page that it's pointing them back to the instructions.  I think it may help to reference the theories of liability and that those can -- again, this is hot take, not massaged language -- but those -- essentially, the point being those theories of liability also apply if the alleged actor is Charles Donohoe.

THE COURT:  I mean, the -- it -- all the instructions, actually, are accurate; right?  They can apply the theories of liability -- I mean, they have been instructed that they can apply the theories of liability and they can do so without speculating as to whether a person --

Donohoe or anybody else -- has been charged.  So --

Why are you shaking your head, Ms. Hernandez?  Those are accurate statements of the law.

And so I'm not arguing anything in particular other than to say both of these things are obviously reconcilable.  And, maybe, the answer is to just point them back and say --

MR. PATTIS:  But that's the closing argument the Government never gave, and it's opening it -- it went all in on the conspiracy and they did very little --

THE COURT:  Let's address the notes rather than comment on --

MR. PATTIS:  No, no --

THE COURT:  -- the trial.

MR. PATTIS:  But I mean, the point is that by assisting -- by giving that curative instruction, it goes beyond the note and comments in ways that we think are beyond the evidence.

THE COURT:  Maybe no one listened to me.  That's why I --

MS. HERNANDEZ:  Your Honor, and I must say --

MR. PATTIS:  I certainly was, Judge.

MS. HERNANDEZ:  -- I have a pending motion for a judgment of acquittal on the Donohoe count which the Court reserved on.  I'm not saying that -- and it goes to this

very issue, I think.

THE COURT:  All right.  We're going to -- at this point, we're going to come back at 1:30 and I'll have for you a proposed response for all three things that we'll be able to get to the jury promptly.

THE DEPUTY CLERK:  All rise.  This Honorable Court stands in recess until the return of Court at 1:30.

(Recess taken at 12:22 p.m. and proceedings resumed at 1:37 p.m. as follows:)

THE DEPUTY CLERK:  We're back on the record in Criminal Matter 21-175, United States of America v. Ethan Nordean, et al.

THE COURT:  All right.

MR. PATTIS:  (Indicating.)

THE COURT:  Yes, Mr. Pattis?

MR. PATTIS:  Mr. Metcalf is not present, but Mr. Pezzola has consented to my taking Mr. Metcalf's place until he arrives.

THE COURT:  All right.  Very well.

Mr. Pezzola, if you could just confirm that for me.  Oh, do you have a --

Can Mr. Pezzola have a microphone, please.

DEFENDANT PEZZOLA:  That's correct, Judge.

THE COURT:  All right.  Thank you.

All right.  So let me just walk through -- maybe,

the easiest thing --

MR. HASSAN:  Judge, pardon my interruption. Mr. Jauregui went to go get Ms. Hernandez, Judge.

THE COURT:  Ah.

MR. HASSAN:  So just wanted to clarify.

THE COURT:  Thank you for, in that case, your interruption.  So we'll wait for them -- and here they are. Well --

MR. JAUREGUI:  Ms. Hernandez is walking over, Your Honor.

MR. PATTIS:  We'd ask you to recall the warrant for Mr. Metcalf.

(Laughter.)

THE COURT:  You know, we'll have to have an identity hearing to know whether that really is Mr. Metcalf first, but --

(Brief pause.)

All right.  We'll let the record reflect Ms. Hernandez is now here.

So with regard to the first note, the first paragraph is basically just everything -- it's the great -- it's the -- all the material that both parties wanted, essentially.  I think the last sentence answers the specific question, and I think the other -- I think it is -- it cracks -- the nature of the question, as we discussed,

cracked open the door to the issue of, for example, whether -- what -- the nature of the relationship between the object -- the term "object" and "goal," which is the first sentence, and then the rest of it is really just restating -- and I think that further cracked open the issue of whether the Government has to prove both of those things, and all of that is all the language that, sort of, clarifies all of that. They must be unanimous and all the rest. As to -- and that's -- so that's basically where we left things.

As to the second part, it's admittedly not where we left things. And let me just explain my thinking, you know? I do think we all agreed in some respect that this -- the last part of that, the partial verdict, was something that made sense, and given that I just thought the distinction between the jury telling us, "Well, this is a scenario that may happen" -- and it is a scenario that basically is right now or we suspect it is -- was such that -- and it, kind of, bleeds into what Mr. Smith had raised about what we tell them. I just thought we would treat it as if they had told us after four days, whatever it's been, you know, that at least on some count, "We're not unanimous."

The -- Mr. Smith, your point about -- this is not an Allen charge. This is not remotely any of those. This

is actually the approved -- D.C. Circuit-approved language for when the jury first says -- actually, I'll -- it's from the Red Book.  It's -- a few things have been removed from it to make it simpler, but basically it's Red Book Instruction 2.601, "Initial Instruction to Jury that Indicates It Cannot Agree."  And it's been approved by the Circuit numerous times as a, kind of -- before you even get to a deadlock or anything like that, it's just the basic -- first sign of -- in fact, I don't have the Circuit opinion, but there was one recently where they approved -- maybe, the Government has this case -- but a case in the last few years in which this is the language that -- I don't know if they specifically blessed it, but they certainly didn't say anything was wrong with giving it when you have a first occasion when the jury gives some indication that it might not be unanimous.

So I thought it just makes sense to treat this as if they've effectively told us that.  It's, sort of, a little strange to tell them about a partial verdict and not say, "Look, as to anything you might not be unanimous on, this has been a complex case.  You're nowhere near a deadlock.  You may continue to" -- I mean, it's specifically in the Red Book; specifically approved by the D.C. -- and the Circuit hasn't -- has never suggested it's not appropriate.  I think it's the -- I think it's akin to the

instruction that Judge -- I don't know this exactly -- but that Judge Mehta gave in the -- one of the Oath Keepers cases when this came -- when they came back with a question about partial verdict.

So I'll hear from any party that wants to be heard on that part of it.

MR. METCALF:  Your Honor, real quick, which instruction did you refer to?

THE COURT:  2.601, when jurors cannot agree.  That broader instruction includes the approved instructions -- the -- what's called a Thomas instruction in this Circuit that's approved if you're talking about a deadlock.  This is just, sort of, the initial kind of instruction that is often given.

MR. METCALF:  I understand.  I just didn't get that number.  So thank you.

THE COURT:  Okay.

MR. PATTIS:  (Indicating.)

THE COURT:  Mr. Pattis?

MR. PATTIS:  Without waiving prior objections, I'd ask the Court to consider --

THE COURT:  I'm sorry.  I just can't hear you, Mr. Pattis.  Go ahead, sir.

MR. PATTIS:  I'm sorry.  I'll speak up.

THE COURT:  It's not your fault.  It --

MR. PATTIS:  Okay.

THE COURT:  Other discussion at counsel table.

MR. PATTIS:  Without waiving prior objections, I'd ask the Court to reconsider the last sentence of Paragraph 1 that begins "To answer your specific question."  The reason for that is that to the degree the charge treats "goals" and "objectives" as near synonyms and, at one point in the charge, it reflects to an object or goal suggesting that there's not a bright line distinction between the two of them, this seems to eliminate the unanimity requirement by saying that, in fact -- that one objective or one goal can cover both, and I know that's not what the Court meant to say, but because those terms lack specificity in the charge and from time to time appear as synonyms, I believe that this might mislead the jury.  So without waiving prior objections, I'd ask the Court to reconsider that last sentence.

THE COURT:  Do you -- I mean, the last sentence, of course, is the meat of what we're answering.  So --

MR. PATTIS:  That's why I'm not waiving my prior objections.

THE COURT:  I understand.

MR. PATTIS:  Yeah.

THE COURT:  But do you have a wordsmithing -- do you have something that you think could wordsmith that last

sentence to make it better?

MR. PATTIS:  You know, can't -- and without -- and I'm not trying to game you.  I'm, obviously, here on behalf of Mr. Biggs.  I think the prior portion of the charge seemed to be so clearly right and so strongly right about the need for unanimity, I thought it could take care of this issue without that sentence.  So I don't, because I don't think the charge distinguishes between an objective and a goal, and I think that we talked a lot in the case about implicit understanding, agreement, goal, objective, and we don't really -- we never really drew distinctions between what they were except to say a plan needn't be formed at a table and that sort of thing, but, you know -- so that --

THE COURT:  Okay.  I mean, I think that is a slightly different distinction --

MS. HERNANDEZ:  (Indicating.)

THE COURT:  Ms. Hernandez, do you want to address this specific issue?

MS. HERNANDEZ:  Yes, sir.

THE COURT:  Okay.

MS. HERNANDEZ:  So I object to the last two sentences for different reasons.  I would propose wordsmithing on the next-to-last sentence.  And as to both sentences, I believe it muddies the water and, again, is going to leave a misimpression.

20435

So as to the next-to-last sentence, I would say, "You must be unanimous as to which of the goals the conspirators agreed to," because otherwise I think it leaves some ambiguity. "As to either or both goals which you may find the conspirators agreed to promote, you must be unanimous," I think that leaves an ambiguity -- the very ambiguity that they're asking about. So I would ask the Court to make it affirmative. "You must be unanimous -- whichever goal you decide, it must be -- you must be unanimous as to that one or the other."

And with respect to the last sentence, I -- again, I think it adds -- I agree with Mr. Pattis, and I agree with Mr. Pattis that the best result is just tell the jury, "Look at the instructions. We told you there. If you have -- after re-reading that, if you have any questions, come back to us" --

THE COURT: Right.

MS. HERNANDEZ: -- but beyond that, if I may finish as to the second answer -- as to the last sentence, which I think it just muddies the water, when you say "To answer your specific question, evidence of the same objective can, if you find" -- first of all, we're lawyers. They're not. "Evidence of the same objective," I think, is going to get confused or confusing whether they can -- whether one can overlap with the other. I think if you're

making an affirmative sentence -- statement that, "You must be unanimous as to the goals -- as to which of the two goals," then you've answered their question.  It's consistent with the law.  This last sentence, again, I believe, is ambiguous and under- -- or waters down the Government's burden, because I think, again, "satisfy both of the two goals of conspiracy simultaneously," I find that sentence to be ambiguous, confusing, and may -- and undermine the notion of unanimity.

THE COURT:  Mm-hmm.

MS. HERNANDEZ:  And that -- it -- I will --

THE COURT:  All right.

MS. HERNANDEZ:  -- wait to address --

THE COURT:  I'm not --

MS. HERNANDEZ:  -- the Court's second paragraph.

THE COURT:  Sure.  I'm not really open to changes to anything other than the last sentence, and the reason is because it is copied word for word from the instructions.  So I'm not going to get into tinkering around with what we've already instructed them.  So --

MS. HERNANDEZ:  But, again, obviously, they found it somehow confusing.  That's why they're asking the question.

THE COURT:  Well, they answered [sic] a question that is -- they think is not -- and in -- I don't think is

specifically answered in the instructions.  That's the whole point of this, but -- so I'm open to wordsmithing the last sentence, if -- in that paragraph, if you think it is confusing, but the other -- the rest of it is literally pulled, I believe, word for word -- if something was adjusted for syntax or something like that, maybe, but basically word for word -- I think I had to adjust it to say "in Counts 1 and 4."  Other than that, it's word for word from the instructions.  So I'm not going to tinker around with it.

MR. SMITH:  (Indicating.)

THE COURT:  Mr. Smith?

MR. SMITH:  With -- I'm just noting at the outset that some of my fellow co-counsel would not like this question at all.

So setting that aside, if the Court is not inclined to grant that request, then you can -- the Court can avoid this objective/goal confusion by simply rewriting the sentence to read, "To answer your specific question, the same body of evidence can, if you so find, satisfy both of the two goals of the conspiracy.  The same body of evidence."  Then you don't get into this issue of what it -- whether an objective is the same thing as a goal.  "The same body of evidence."

THE COURT:  Why can't you just say, "The same

evidence"?  I mean --

MR. SMITH:  Or --

THE COURT:  So --

MR. SMITH:  Right.

THE COURT:  -- you're just saying strike the words "of the same objective"?

MR. SMITH:  Correct, if the Court is inclined to include the sentence, with deference to all of my co-counsel who do not want to include the sentence.

THE COURT:  Well, we have to include a sentence that answers their question.  So --

MR. SMITH:  I just want to get the point out without being objected to on my own side.  So that's -- I'm clarifying that --

MR. PATTIS:  I think Mr. Smith's suggestion makes sense, Judge, if you're going to give that sentence.

THE COURT:  What's the Government's view?  It's --

MR. HASSAN:  Judge, and we would disagree.  The sentence doesn't belong there.

THE COURT:  All right.

MR. HASSAN:  That's Tarrio's position.  That sentence should not belong there.  To answer your specific question, the body of that paragraph as stated pretty much tells the jury exactly the information that they're requesting, and that's our position, Judge.  You don't have

to include that sentence there.  That just basically muddies up the water, Judge.  And, Judge, we would be opposed to Mr. Smith's change, Judge.  Even if the Court were to go there and include that sentence, we would not agree with the sentence.

THE COURT:  Okay.

MS. HERNANDEZ:  And I agree with Tarrio's position.  I --

THE COURT REPORTER:  (Indicating.)

MS. HERNANDEZ:  I agree with the Tarrio position. The last sentence muddies the water.  I would eliminate it altogether, again, with preserving my prior objections.

THE COURT:  All right.  What's the Government's view on the -- Mr. Smith's taking out "of the same objective"?

MR. KENERSON:  I think that the -- the Government's view of that is that the jury specifically asked about objective.  So to the extent that we're wanting to, kind of, avoid that issue, I think we, kind of, have to confront it head on because that is specifically -- the reason the Court is wording it this way is because that's the words the jury used in their note to the Court.  I think that the sentence that the Court constructed, I think, adequately does capture the concerns raised by all defense counsel prior to lunch about responding in this way and

including the phrase ahead of it, "evidence of the same objective can, if you so find, satisfy the goals of the conspiracy." I don't hear anyone saying that that is an incorrect statement of the law. I believe that is a correct statement of the law. I don't think anyone disagrees with that. And so it is an accurate response to the specific note that they sent.

While we're on the subject of, kind of, wordsmithing, our one request -- which I don't think changes the substance -- is to refer to Counts 1 and 4 earlier. So I think Court has -- the Court has it towards the end of the sentence. We would ask that it just be moved up, and our proposal is --

MS. HERNANDEZ: It's in the second sentence, too.

MR. KENERSON: Our proposal is, "To answer your specific question, with respect to the two conspiracies charged in Counts 1 and 4, evidence of the same objective can, if you so find, satisfy both of the goals simultaneously."

THE COURT: "With respect to the conspiracies charged in Counts 1 and 4, evidence" -- "To answer your specific question, with respect to the conspiracies charged in Count 1 and 4, evidence of the same objective can, if you so find, satisfy both of the two goals of the conspiracies simultaneously."

MR. SMITH:  So Your Honor, we think that the -- adding the word "objective" there doesn't add any meaning to the sentence.  It's just -- if one were to say one accomplishes the meaning -- answers the jury's question if one just says, "The same evidence or the same body of evidence may, if you find, satisfy the goals of both -- both goals of the conspiracy," including two different words meaning -- are not meaning the same thing, "objective" and "goals," just muddies the picture.

THE COURT:  Okay.  I -- look, I think --

MS. HERNANDEZ:  I'm sorry, Your Honor.

THE COURT:  I think -- I'm -- Ms. Hernandez, what -- yes?

MS. HERNANDEZ:  So the -- Question 1 does not mention the term "evidence" at all -- the word "evidence" at all.  I think by adding "evidence" to that last sentence, it answers a question not asked and creates an ambiguity that -- creates another ambiguity and another suggestion that undermines the unanimity instruction.  So I object to -- I don't -- if the -- as the Government argued that somehow you have to add that last sentence to answer the question asked by the jury, the jury said nothing about evidence.

THE COURT:  Right.  But they're either --

MS. HERNANDEZ:  Count 1 --

THE COURT:  Right.  But they're -- I mean, that's true, but they're only considering -- that's what they're considering in addition to the law.  So --

MR. KENERSON:  (Indicating.)

THE COURT:  Mr. Kenerson?

MR. KENERSON:  Just on the unanimity point -- and I meant to say this in response to all defense counsel earlier, so I apologize for having neglected it -- but I think it's a point we made before lunch, but the -- there is no watering down of the unanimity requirement here.  The jury has, on these particular counts, a special unanimity instruction and a specific question on the verdict form.  So I -- there is no danger of watering down the unanimity requirement by just clarifying and providing the jury with an accurate statement of the law.

MR. PATTIS:  But they wouldn't be asking the question if it weren't unclear to them.

THE COURT:  Well, look, and we're also including in this response a whole thing about unanimity.  So I -- okay.

Look, I'm going to -- I think, just looking back -- I mean, I do think -- they do reference "objective." So I'm going to keep "objective" in there.  I'm going to keep it the way it is, except I will flip around, because I just think grammatically what the Government suggests in

terms of putting the counts -- the adjustment they have, I think, is better just grammatically, but I think the rest of it, "objectives" is what they asked about; I think it answers their question; I think we need to answer their question; and I think the remainder of what we're giving them is culled literally, if not -- I believe exactly from the instructions we've already given them, it provides context, it reaffirms the unanimity, and it reaffirms -- and it lets them know what the relationship between "object" and "goal" is.

What -- with regard to the -- what's -- at least to take the first shot at it, what's the Government's view of the approach I took to the second -- just, sort of, conceding that -- the distinction between them saying, "Well, this is a scenario that may happen," versus, "It's, sort of, one that is upon us," and giving this, sort of, generalized initial, you know -- the "jury initially suggesting they might not agree" language?

MR. KENERSON:  Thank you, Your Honor.

I think we're fine with it.  I think we understand and appreciate the Court's distinction or lack of a distinction between the jury's note and expressing that they might not be able to reach a unanimous verdict and saying, "We can't."  So --

THE COURT:  Or at least at this point --

MR. KENERSON:  Right.

THE COURT:  -- you know?

MR. KENERSON:  Right.  So while, I think, our position would be that we don't think it's necessary, we have no objection to the Court giving something along these lines at this point.  Just one clarification question, because we had not had a chance to look at the Red Book before the Court gave this to us:  The language about the length of the trial and the number of witnesses and all of that and "my best judgment," is that language from the Red Book?

THE COURT:  So let me make this clear.  What is -- it's just a -- it's the -- it's a softer slight- -- version of what's in the Red Book.  So let me let me just make clear what's in there and what's not in there.  This is what the Red Book language is, and you can read along with what I have there:  "Your note indicates that you have been unable to reach a unanimous decision at this time," and then some language in brackets which, I think, is appropriate here.  "This has been a relatively long trial, longer than many trials we have in this courthouse.  There were a large number of witnesses who testified and a substantial amount of evidence received, and I would expect that it would take some time to reach a resolution in this matter," bracketed language closed.  "My best judgment is that you had been

deliberating for a total of" -- insert amount of time -- "which is not unusual in cases such as this.  As a result, I'm going to ask that you deliberate further in this case," and this -- and here's where I, sort of, softened it because I just think -- but -- I mean, I'm open if folks want to give it.  I think we don't -- because we really don't know that they're there, but the way it reads in the Red Book, "As a result, I'm going to ask you -- ask that you deliberate further in this case and that you keep an open mind about the case with a view to listening to others and expressing your own point of view to see whether you can reach a unanimous decision.  Please resume your deliberations at this time."

Now, some of that other language, you know, tends toward what -- and not even, you know, a Thomas instruction or -- the final, kind of, dead- -- anti-deadlock instruction approved in this Circuit.  I just think, you know -- we're just telling them, "Keep going.  It's been a long trial. Keep going."  I didn't think we needed to add that language, but I'm open if someone absolutely thinks we should.

MR. KENERSON:  Thank you, Your Honor.  And we appreciate the clarification.  And with that clarification, we don't object to the instruction as the Court wrote it and agree with the Court's position that that extra language mentioned towards the end is not necessary, given where we

are.

THE COURT:  I mean, I think if they came back to us in a little bit and we weren't -- and I -- and we would have a debate between giving some sort of, like, a final Thomas charge or something in between, I would add that.

MR. SMITH:  (Indicating.)

THE COURT:  Mr. Smith?

MR. SMITH:  Your Honor, thank you.

I'm looking at the Red Book right now at the first comment for Part 1 of Section 2.601 which Your Honor was reading from.  And if Your Honor looks at the comment, it looks that this instruction, a pre-Thomas or pre-Winters instruction is only -- has only been approved in D.C. Superior Court, and then if Your Honor looks at the second paragraph of that comment it notes that the D.C. Circuit has rejected a similar Superior Court -- a pre-Winters or pre-Thomas instruction in a case called Yarborough which is 400 F.3d 17, Pincite 21, a D.C. Circuit case from 2005.  And in Yarborough, when the D.C. Circuit rejected a similar pre-Thomas instruction, they said that this would be, quote, an -- this, quote, "openly invites an intrusion into the basic functions of the jury and does so in a manner that is rife with the potential for coercion."  Now, the specific pre-Thomas instruction they were --

THE COURT:  Can you just tell me what page you're

on right now.

MR. SMITH:  Yes, Your Honor.  That's -- this is Comment No. 1 after 2.601, and there aren't any page numbers on the bottom of the pages of the Red Book, but it's immediately under Section (III)(C).  And so this is the first comment that follows both the anti-deadlock instructions and the instruction Your Honor just read at 2.601.  And so I think if Your Honor looks at the cases that cite this instruction, they're not federal cases.

THE COURT:  Are you talking about the instruction in Part 2 or the instruction in Part 1?

MR. SMITH:  Well, so if Your Honor looks at the first paragraph of the instruction in Part 1 which was -- Your Honor was reading from, you can see the citations there are Superior Court citations, and then in the next paragraph where it says "the instruction in Part 2" --

THE COURT:  Right.

MR. SMITH:  -- that is a different instruction, but Part 2 is also a, quote, "pre-Thomas instruction" --

THE COURT:  Right.

MR. SMITH:  -- and it looks like the D.C. Circuit rejected the pre-Thomas instruction in Part 2.

THE COURT:  Right.  Part 2 is --

MR. SMITH:  -- on the ground that -- on the ground --

THE COURT:  Right.

MR. SMITH:  -- that reading it pre-Thomas -- reading it before a clear indication of deadlock would be an intrusion.

THE COURT:  Right.

MR. SMITH:  So I think that we would argue that since this instruction has not been approved in a published decision in the federal court and since the D.C. Circuit has rejected a pre-Thomas instruction that's similar in Part 2, we would say -- we would ask the Court to just respond to the jury's question this way:  "If you believe you are deadlocked, please notify me," period --

THE COURT:  Mr. --

MR. SMITH:  -- and --

THE COURT:  -- Smith --

MR. SMITH:  Yeah.

THE COURT:  -- the problem is the instruction that that is all -- refers to is a totally, totally different instruction; right?  I mean, you can look at it.  It's just very different.  Let's put it that way.  It's quite different.  I know of no -- first of all, and I wish I had it in front of me, and if I knew this was going to be controversial I would have pulled it, but you all, if you're there, can Google -- I mean, put into Westlaw 2.- -- Instruction 2.601 in the D.C. Circuit.  You will come up

with a case -- oh, it -- pretty recent from the Circuit in which, actually, the court was -- as I recall, the trial court was reversed for using -- for going off script, long story short.

MS. HERNANDEZ:  Is it Driscoll?

THE COURT:  Pardon me?

MS. HERNANDEZ:  Driscoll?

MS. BALLANTINE:  Yes.

THE COURT:  Okay.  And in that case, I -- whether they specifically blessed it, I guess I couldn't say.  They certainly didn't say it was inappropriate.  And what they -- the criticism of the District Court was that the District Court did not adhere to the initial instruction, and then when the court eventually did give a Thomas instruction it also, kind of, ad libbed some things.  So I mean, really, all we're saying is here, "It's been a long trial.  You all" -- I'm not intruding -- I think this is literally what every judge in this courthouse, more or less, would tell a jury the first time they've been informed that there might be an issue with coming to unanimous verdict.  So I didn't think this would be, honestly, controversial at all, but knowing this case, maybe, I should have.

MS. HERNANDEZ:  (Indicating.)

THE COURT:  Yes, Ms. Hernandez?

MS. HERNANDEZ:  Your Honor, I object.  First of

all -- and the Court's introductory sentence shows why it should not be given.  You state, "Your note indicates you have been unable to reach a unanimous verdict."  That's not what the note indicates.

THE COURT:  You didn't read what I wrote, apparently.

MS. HERNANDEZ:  I took the -- I took notes.  I wrote down --

THE COURT:  Right.

MS. HERNANDEZ:  -- what you read from the bench.

THE COURT:  No, no, that's right, because that was -- I was reading the Red Book instruction.  If you'll read what I actually provided you, it softens that to just say, "Your note suggests that you may be unable to reach a unanimous decision as to some defendant" --

MS. HERNANDEZ:  So --

THE COURT:  -- "or count at this time."

MS. HERNANDEZ:  -- I believe it's an intrusion on the jury deliberations.  The jury asked a question, what to do if the jury does not reach unanimity on a charge.  I think the -- earlier, before we left for lunch, the Court was inclined not to give something or other because it wasn't -- it's an "if" question.  So my proposal is to either answer nothing because it's just an "if" question -- "what if something happens" -- or, "If you're going to ask

something, if you, at that point, come back, you know, let us know, and we can answer," but this instruction about how long they've been deliberating and it's a long trial and a lot of evidence with this very conditional question, I think it's intruding into the jury's deliberations.  I think it -- in fact, the Government's first response is, "We don't think you need to give it," but then they came back and said, "We won't object."

THE COURT:  I think the problem is how it marries up with the issue of the partial verdict.

MS. HERNANDEZ:  I --

THE COURT:  I, you know -- if you tell them, "Hey, come back with a partial verdict," it -- and say nothing more about those things which they may not be prepared to give a partial verdict on, then you are -- then I think you do run a strange risk of having them all of a sudden decide, "Oh, wait, we'd better be unanimous.  Either that means we have to acquit or that means we have to -- someone has to change their vote to convict," when it doesn't mean either of those things.  It just means, "You may further deliberate on those matters that you would not give a partial verdict on."

MS. HERNANDEZ:  I --

THE COURT:  That's why I got where -- to where I was, because I think once you introduce the concept -- or

reintroduce, because they've already been instructed about it -- once you say something about a partial verdict, if you don't tell them anything else, you really risk them doing something inappropriate, in theory.

MS. HERNANDEZ:  I think you're intruding on -- they have not said they have -- cannot reach unanimity, and this implies or suggests that they've been -- that they have not reached unanimity or -- I just -- and now you're adding all this language about how long and it's normal to take this long to deliberate in a case of this nature and that type of thing.  You're just adding a -- again, my instinct in all of these things -- which, I think, the Court also agreed at some point -- is the less we -- we've all, I think, argued over -- the Court spent a lot of hours trying to figure out the exact language of all these instructions and to, on the fly, try to, you know, mold it -- I understand the Court -- I understand your -- but I don't -- I've never seen a court give this pre-Thomas instruction before a jury says, "We can't reach -- we're not unanimous." And I don't believe this note says, "We're not unanimous." At most, it says, "What if we're not unanimous?"  And then I think -- so my request is give nothing or, if you're going to give something, you can refer them to the instruction on, you know, partial verdicts or how -- whichever instruction you want to instruct -- refer them to.  I just think

you're -- there's so much information that you're -- provided in this second question that was not -- in this second paragraph, you know -- the second -- "Your note suggests" -- from the beginning, that -- "Your note suggests that you may be unable to reach" -- I -- to me, that says a -- that suggests something that's not in the jury's note. They're saying, "What if?"  And you're saying, "This suggests that you're not able to reach unanimity."  So I think you're putting -- you're adding a level that's not in the jury's note, and I think it's a dangerous concept to introduce.

THE COURT:  Of course, the issue is if they really aren't -- if there is no danger, there's -- this is totally harmless because they would continue to deliberate --

MS. HERNANDEZ:  Yeah --

THE COURT:  -- right?

MS. HERNANDEZ:  -- I don't think anything that the Court says to the jury -- I mean, I think whatever -- whatever the Court says to the to the jury, they will take it to heart.  "What did he mean?  Why is he answering that? We never said we weren't unanimous," whatever the Court says.

THE COURT:  But we're --

MS. HERNANDEZ:  "Good morning" --

THE COURT:  Right.

MS. HERNANDEZ:  -- they'll say, "Oh.  Why is he saying 'good morning' now?"

THE COURT:  I understand.  My point is we're always looking for the potential downsides of what I say to them, and my point is to the extent that they are dead- -- they have reached a soft lack of unanimity, this tells them what to do: keep deliberating.  To the extent they haven't, it will be utterly meaningless to them because they would continue to deliberate anyway.

MS. HERNANDEZ:  I --

THE COURT:  So there's not --

MS. HERNANDEZ:  I just --

THE COURT:  -- really a risk of doing something that really --

MS. HERNANDEZ:  It's not that neutral, Your Honor, because you are inserting the notion, "It's a long case; you've been deliberating -- by my judgment, you've been deliberating X number of hours."  I know the -- I understand that's standard language, but that's standard language only after the jury affirmatively states, "We can't reach a verdict."  They don't say, "We're deadlocked," but we're -- they're saying, "We can't reach a verdict."  I agree.  That's standard language that the judges use in this District, but I think you're jumping the horse -- whatever that term is -- I think you're jumping ahead of what we've

heard from them, and I am fearful that you're telling them -- which is what Driscoll found troublesome -- that there's a coercive nature to this instruction.  Because -- "This has been a relatively long trial, longer than many have in the courthouse," that's --

THE COURT:  None of that language was affected by Driscoll, to be clear.

MS. HERNANDEZ:  But Driscoll -- we can't -- the only thing we take away from Driscoll is that it reversed. It didn't -- whatever it's -- whatever it didn't do with the -- half instructions that were given, we can't really take anything from it because it found an error and, therefore, if there were other words that they didn't explicitly say we -- you can't use, it's -- but, again, so the first sentence, "relatively long trial, many longer" -- that's two new concepts; "large number of witnesses," a third new concept; "substantial amount of evidence," a fourth new concept.  I mean, you can go down -- "my best judgment," again, Your Honor is inserting your judgment into the thing about the number of days that they've been deliberating.  So I just think we should stay away.  You either say, you know, "If that happens, come back to us and we'll tell you what to do," or else read the instruction. "I refer you to Instruction X, Y, and Z," or say nothing.

THE COURT:  All right.

MR. SMITH:  (Indicating.)

THE COURT:  Mr. Smith?

MR. SMITH:  Your Honor, I think Ms. Hernandez's first solution there would satisfy everyone.  It doesn't harm any party to just say it -- to answer the question the most literal way:  "You've asked me how to deal with this scenario if it comes up.  Well, you would send me a note." That's it.

THE COURT:  Is that -- I mean, so that's the only other option, I think, there is.  And so it's either -- I think saying nothing is not an option because, again, we, kind of, risk them doing something -- and even the -- where we left it was me saying something like -- reaffirming unanimity which, again, we risk them, if they really are hitting an impasse, doing something strange.  So I think the question -- the -- it -- I think the two possibilities are this language and then the partial verdict or just the thing that says, "If you hit that point, send me a note and let me know."  I mean, so --

MR. METCALF:  Your Honor --

THE COURT:  -- I take, Mr. Smith, at least from your perspective, that is better.

Is that better -- what's the Government's view of this?  I mean, I'm --

MR. KENERSON:  I think the Government's view is

that what the Court has is fine and, I think, based on Driscoll, it's appropriate. If the Court wants to proceed in the way Mr. Smith suggests, I think that's also fine and appropriate.

THE COURT: It would have to say something like, "If you" -- well, so I take -- the first line is, "If you reach a" -- sorry -- "If you are unable to reach a unanimous decision as to some defendant or count, you may send me a note. If you are unable to reach a unanimous decision as to some defendant or count" -- let's just say -- oh, "If you are unable to reach a unanimous decision as to some defendant or count, you may send me a note. In addition, as I have already -- as you have already been instructed, at any time -- your deliberations, you may return a partial verdict. In other words" -- fine with the Government?

MR. METCALF: Your Honor, we -- I object to the "partial verdict," then --

THE COURT: Well, that --

MR. METCALF: -- because if you look at the note that Your Honor referenced, 2.61 [sic], the last sentence actually reads "As a result, I'm going to ask you to keep -- that you deliberate further in this case and that you keep an open mind about the case with a view of listening to others and expressing your own point of view to see whether you could reach a unanimous decision."

THE COURT:  Right.

MR. METCALF:  It doesn't say anything about a partial verdict.  I object to that idea being implanted in their mind at this point in time.  So I'd ask Your Honor to use the exact language that you spoke about -- you differentiated --

THE COURT:  No, no, we've all agreed that -- well, I shouldn't say we've all agreed -- but I'm going to give the partial -- I think given what they've said, the "partial verdict" language is appropriate to reiterate.  The only question is -- in my mind was what else we would say, because I think you have to say something else for --

MR. METCALF:  But, Your Honor, that --

THE COURT:  -- various reasons.

MR. METCALF:  That language is the language that you specifically changed from the instruction.

THE COURT:  Right.  I changed it to say, "In addition, in -- any time you -- if there is any defendant on which you are unable" -- in other words, I crafted language around that.  So look --

MR. METCALF:  But the instruction Your Honor referred to does not use --

THE COURT:  I know that.

MR. METCALF:  -- any of the language having to do --

THE COURT:  All right.  Mr. --

MR. METCALF:  -- with a partial verdict.

THE COURT:  Mr. Metcalf, I've got your point. I've heard from you.

MR. METCALF:  And that's --

THE COURT:  Mr. Metcalf, I've heard from you. That's it.  It's enough.  I understand your point.  It's not a point that I'm going to come around to your view on. Thank you.

MR. PATTIS:  Biggs joins Mr. Metcalf's remarks for the fear -- on the grounds that it might yield a jury to make a compromise as it might otherwise not make.

THE COURT:  All right.  So that's what I will do on the second part of this, given where the majority of the defendants or many defendants and the Government are.  "If you are unable to reach a unanimous decision as to some defendant or count, you may send me a note.  In addition, as you've already been instructed, at any time during your deliberations, you may return a partial verdict.  In other words, a verdict of guilty or not guilty with respect to any defendant on any count.  If you're -- you may send me a note."

Okay.  There it is.  That's on that one.  We've already talked about the first one which, again, from where we started here, I'm going to make this grammatical

adjustment the Government wanted me to make but otherwise leave it.

I can't wait to hear all the disagreement there will be about the second response I sent around. Is there any disagreement other than the Government's expressed interest in having me clarify something more that, I think, we should just --

MR. PATTIS: (Indicating.)

THE COURT: Yes, Mr. Biggs -- Mr. Pattis?

MR. PATTIS: To steal a playbook -- a line from the Government's playbook, we think the Court got it exactly right in the response that it crafted.

THE COURT: Oh, I've -- all right. Mr. -- so let me hear from the Government on the second one.

MS. HERNANDEZ: Second -- I didn't see a second one --

MR. KENERSON: So on the second note, the addition that we would request -- so we partly agree with Mr. Pattis the Court got it exactly right. We would -- we -- but that stops -- it's a partial agreement. We would ask that the Court clarify for the jurors that those theories of liability apply to actions taken by Charles Donohoe --

MS. HERNANDEZ: No --

MR. KENERSON: -- and that --

THE COURT: Yeah, please. Look, we've had so

many -- I -- it's been remarkable to me the inability of the lawyers in this case to shut their mouths while other lawyers are speaking.  It's truly -- I -- the lack -- the inability of the lawyers in this case to act as officers of the court and to permit the proceeding to proceed in an orderly way, I've never seen anything like it and I hope I never see anything again [sic].

Mr. Kenerson?

MR. KENERSON:  Thank you, Your Honor.

The language that we would suggest along those lines is, "The same four theories of liability apply to the actions of Charles Donohoe, notwithstanding the instruction on Page 13."

THE COURT:  Well, they don't, of course, identify or call out Donohoe, although --

MR. KENERSON:  I thought they did.

THE COURT:  -- the second part of the --

MR. KENERSON:  Oh, they said Count 8.  So --

THE COURT:  I mean --

MR. KENERSON:  -- point taken on there, but, like, that they apply to the conduct underlying Count 8.

THE COURT:  Here it is.  Okay.  Right.  Well, we are -- I mean, I don't know that there's any difference from saying, "The conduct about Count 8," or, "Count 8."  We're saying, "You've been instructed on the theories of liability

that account -- that apply to Count 8."  I mean, we're saying they apply, and that's what the instruction -- I mean, I took that language from the instruction itself. So --

MR. KENERSON:  I think that's -- right.  And if we could just even -- if we could even add, "Notwithstanding the instruction at Page 13."  That's really what their question gets to, is whether -- the Court's instruction at Page 13 about people not charged and whether they could consider it or not, and I understand why we can't come out and say it to them this directly as I'm about to, but the correct answer is, "Charles Donohoe, you can consider his actions just along the same line as anyone else under these theories of liability."  I understand why we can't say it to them in that way, but what their question gets to is whether the language in Count 13 essentially precludes them from being able to consider the actions of Charles Donohoe which it plainly doesn't.  So if we could add to the Court's proposed language just a clause after Count 8 that says, "Notwithstanding the instructions on Page 13," that might answer the mail, as well.

THE COURT:  It's just, you know -- it's funny.  I look at what they're asking for is -- about the issues about someone being charged or not charged as the focus of their question which, as we talked about, is not -- is totally

irrelevant to whether they can consider the evidence or the actions of Mr. Donohoe and all the rest. And that, I think, underscores, like, wading into what exactly they're talking about and trying to say, "Well, notwithstanding that" -- I just think reiterating that Count 8 -- the theories of liability do apply to Count 8. What they make of the fact that they have, you know, only some types of evidence about Donohoe, I think we can't, like, wade into that and try to figure out what they mean or the fact that they haven't been presented evidence that he was charged with something or not charged. So I think I'm just going to reiterate they've been given those instructions. And, look, implicitly, this does reiterate or reaffirm for them that Count 8 does -- that the theories of liability do apply to Count 8. I think when it gets into, like, how that interacts with this other instruction, I think it gets tricky. So I --

MR. KENERSON: So the suggestion, I suppose -- well, sorry. So if we change "that" to "which" on the Court's response -- "You've been instructed on the theories of liability which apply to Count 8" -- I think that might hammer home for them what the Court was just referring to which is --

THE COURT: You guys have been my English -- my grammar corrector so far today on the prior note. So that -- I don't -- if you think that is a meaningful

20464

difference, I'm happy to change it to "which."

MR. KENERSON:  Thank you.

THE COURT:  All right.  I assume there's no objection.  All right.

MS. HERNANDEZ:  An adverb or -- I'm joking.

THE COURT:  "You have been instructed on the theories of liability which apply to Count 8.  The Court can provide no further elaboration."

And then the other note, we have talked about.

All right.  I'm going to type these up, provide them to the --

MS. HERNANDEZ:  (Indicating.)

THE COURT:  Yes, Ms. Hernandez?

MS. HERNANDEZ:  Your Honor, I raised it before and we have -- I haven't had an opportunity to discuss with the Government.  I think the jury verdict on Count 4 does not address the element -- the jury instruction is correct.  It requires force, intimidation, or whatever other -- but the verdict form eliminates that and, as the verdict form is written, anybody who seeks to influence Congress committed that offense --

THE COURT:  I'm not sure -- what count?

MS. HERNANDEZ:  4.

THE COURT:  Yeah.  I mean --

MS. HERNANDEZ:  And it's on Page 3 --

THE COURT:  3 and 4.

MS. HERNANDEZ:  Right.

THE COURT:  I guess I don't see what the --

MS. HERNANDEZ:  Well, the -- as written, all they had -- so all -- the conspiracy charge in Count 1 include one or both of the following goals: to prevent a member of Congress or federal officer from discharging a duty or to induce a member or federal officer to leave a place or the member, but the instruction requires that to be by force, intimidation, or threat.  So that -- I think -- particularly because the, you know -- the Silberman -- Judge Silberman admonition in North about when you're talking about influencing Congress, if you do not include "force, intimidation, or threat," you've got a flawed charge.

THE COURT:  Right, but our -- luckily, our charge isn't flawed, because this isn't our charge.

MS. HERNANDEZ:  Well, but I don't think the jury's going to be going back and forth.  I think with every other count, you do not have that flaw.

THE COURT:  Well, it certainly would add additional detail, but it -- as they have been instructed, the jury form is not substantive.  It's only to help them record their goal -- their -- record their verdict, and they don't have -- and they have a -- very detailed instructions about that.  So --

MS. HERNANDEZ:  I think it waters down the Government's burden, and I think it violates the client's Fifth and Sixth Amendment rights to let the verdict form stand.

THE COURT:  If there had been -- let's put it this way --

Well, what's the Government's position, even though Ms. Hernandez did not chat with you about it before now?

MR. KENERSON:  She did not, and she's also not -- certainly not to us and certainly not in her presentation to the Court now -- has not cited a case holding for the proposition that a verdict form must track the elements, but just to read verbatim from something the Court was -- alluded -- alluding to, on Page 47 -- at least our Page 47 -- of the instructions under "Verdict Form Explanation," it says "Nothing in the form replaces the instructions of law I have already given you.  Nothing in it replaces or modifies the instructions about the elements which the Government must prove beyond a reasonable doubt.  The form is meant only to assist you in recording your verdict." That's clear and they've not asked any clarifying questions.

THE COURT:  Yeah.  I mean, so while -- let's put it this way.  While that might have been a tweak that I might have made beforehand because I think it's certainly --

there's no harm in adding those details, between the instruction -- well, between the details -- instructions that they have been given -- between the particular instruction they've been given that the verdict form is not substantive in any way and the fact that no one -- there was no objection to the verdict form before I submitted it to the jury, I'm not going to make any changes to it now. So --

MS. HERNANDEZ:  My objection stands, Your Honor.

THE COURT:  All right.

MS. HERNANDEZ:  Thank you.

THE COURT:  Your objection --

MR. HULL:  Biggs joins, Your Honor.

THE COURT:  All right.  Your objections, at this point, stand.

If there's nothing further, I'd like to go type up these notes to be able to get them to the jury so that they can have a response.  Is there anything further from either party?

MR. KENERSON:  No, Your Honor.

THE COURT:  All right.  We'll be in recess perhaps until 5:00 or sooner.

THE DEPUTY CLERK:  All rise.  This Honorable Court stands in recess.

(Recess taken at 2:26 p.m. and proceedings resumed

at 4:59 p.m. as follows:)

THE DEPUTY CLERK:  We're back on the record in Criminal Matter 21-175, United States of America v. Ethan Nordean, et al.

THE COURT:  All right.  Ms. Harris, will you please bring in the jury and I will give them their evening instructions.

(Brief pause.)

Just a reminder for counsel that tomorrow, they will -- deliberations will be suspended at noon, is what we had been told.

MR. KENERSON:  And will we come like this -- like -- treat it like 5:00 o'clock in terms of the Court instructing them?

THE COURT:  I think that's what makes sense.

MR. HULL:  9:00 to 3:00.  That's it.

MR. PATTIS:  No, 9:00 to noon.

MR. HULL:  Oh, excuse me.

THE COURT:  9:00 to noon.

(Brief pause.)

THE DEPUTY CLERK:  Jury panel.

(Jury returned to jury box at 5:02 p.m.)

THE COURT:  All right.  Everyone may be seated.

Ladies and gentlemen, I would like to remind you that in some cases, there may be reports in the newspaper or

on the radio, Internet, or television concerning this case. If there should be such media coverage in this case, you may be tempted to read, listen to it, or watch it, but you must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom.  If any publicity about this trial or about January 6th generally inadvertently comes to your attention, do not discuss it with other jurors or anyone else.  Just let me or the courtroom deputy know as soon as it happens -- as soon after it happens as you can and then I will briefly discuss it with you.

I also wish to remind you of the fact that during deliberations, you may not communicate with anyone not on the jury about this case.  That includes any electronic communication such as email or text or any blogging about the case.  And in addition, you may not conduct any independent investigation during your deliberations.  This means you may not conduct any research in person or electronically via the Internet or in any other way.

So I wish you all a good evening.  You'll be back tomorrow morning at 9:00 o'clock.  Your deliberations will go until noon tomorrow and, at which time, they'll be suspended.  We'll bring you in here just like now -- if you haven't reached a verdict, we'll bring you in here just like now and instruct you -- give you the same evening

instructions, but we'll just do it at noon.

Thank you, again, for your diligence and your service. We'll see you tomorrow.

(Jury returned to jury room at 5:04 p.m.)

THE COURT: All right. So we'll pick up at 9:00 o'clock tomorrow. As you all know, from noon on you're -- you won't need to be on 15-minute call. So you can make what other plans you might want to. We'll see you tomorrow.

THE DEPUTY CLERK: All rise. This Honorable Court is adjourned.

(Proceedings concluded at 5:04 p.m.)

* * * * * * * * * * * *

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, TIMOTHY R. MILLER, RPR, CRR, NJ-CCR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability, dated this 2nd day of May 2023.**

**/s/Timothy R. Miller, RPR, CRR, NJ-CCR**
**Official Court Reporter**
**United States Courthouse**
**Room 6722**
**333 Constitution Avenue, NW**
**Washington, DC 20001**

20471

**'**

**'good** [1] - 20454:2
**'organizations** [1] - 20414:1
**'You** [1] - 20414:2

**/**

**/s/Timothy** [1] - 20470:19

**0**

**06511** [1] - 20391:21

**1**

**1** [28] - 20393:3, 20393:9, 20393:13, 20393:21, 20394:4, 20395:12, 20402:14, 20408:5, 20410:13, 20410:20, 20412:11, 20412:19, 20412:20, 20412:25, 20415:4, 20433:4, 20437:8, 20440:10, 20440:17, 20440:21, 20440:23, 20441:14, 20441:25, 20446:10, 20447:3, 20447:11, 20447:13, 20465:5
**1-ETHAN** [1] - 20391:4
**10** [1] - 20412:24
**10003** [1] - 20391:18
**10016** [1] - 20392:13
**1014** [1] - 20392:9
**113** [1] - 20392:15
**12:15** [2] - 20421:9, 20421:18
**12:22** [1] - 20428:8
**13** [7] - 20414:2, 20424:3, 20461:13, 20462:7, 20462:9, 20462:16, 20462:20
**14** [1] - 20414:23
**1420** [1] - 20391:24
**15-minute** [1] - 20470:7
**153** [1] - 20392:5
**17** [1] - 20446:18
**18** [1] - 20402:2
**19** [1] - 20402:2
**1:15** [1] - 20421:19
**1:21-cr-00175-TJK-1** [1] - 20391:2
**1:21-cr-00175-TJK-2** [1] - 20391:3
**1:21-cr-00175-TJK-3**

[1] - 20391:3
**1:21-cr-00175-TJK-5** [1] - 20391:4
**1:21-cr-00175-TJK-6** [1] - 20391:4
**1:25** [1] - 20422:24
**1:30** [3] - 20422:21, 20428:3, 20428:7
**1:37** [1] - 20428:9
**1st** [1] - 20391:21

**2**

**2** [17] - 20391:6, 20393:4, 20393:9, 20393:14, 20402:14, 20412:5, 20412:12, 20412:14, 20415:23, 20447:11, 20447:16, 20447:19, 20447:22, 20447:23, 20448:9, 20448:24
**2-JOSEPH** [1] - 20391:5
**2.601** [6] - 20431:5, 20432:9, 20446:10, 20447:3, 20447:8, 20448:25
**2.61** [1] - 20457:20
**20001** [2] - 20392:19, 20470:21
**20005** [1] - 20391:24
**2005** [1] - 20446:18
**202** [3] - 20391:15, 20391:25, 20392:20
**2023** [2] - 20391:6, 20470:18
**203** [1] - 20391:22
**20530** [1] - 20391:14
**20777** [1] - 20392:3
**209** [1] - 20392:6
**20th** [1] - 20391:17
**21** [1] - 20446:18
**21-175** [3] - 20393:2, 20428:11, 20468:3
**22** [1] - 20410:16
**23** [2] - 20395:1, 20395:6
**240** [1] - 20392:3
**252-7233** [1] - 20391:15
**253-0514** [1] - 20392:13
**27** [1] - 20395:13
**2:26** [1] - 20467:25
**2nd** [1] - 20470:18

**3**

**3** [5] - 20393:4,

20393:10, 20393:14, 20464:25, 20465:1
**3-ZACHARY** [1] - 20391:5
**305** [2] - 20392:7, 20392:10
**33012** [1] - 20392:9
**33014** [1] - 20392:6
**333** [2] - 20392:19, 20470:21
**354-3111** [1] - 20392:20
**383** [1] - 20391:20
**393-3017** [1] - 20391:22
**3:00** [1] - 20468:16

**4**

**4** [20] - 20393:22, 20394:4, 20395:16, 20404:9, 20404:11, 20404:17, 20404:18, 20404:19, 20406:3, 20410:20, 20421:20, 20437:8, 20440:10, 20440:17, 20440:21, 20440:23, 20464:16, 20464:23, 20465:1
**400** [1] - 20446:18
**403-7323** [1] - 20392:7
**429-6520** [1] - 20391:25
**47** [2] - 20466:15, 20466:16
**472-3391** [1] - 20392:3
**49** [1] - 20392:9
**4:59** [1] - 20468:1
**4r** [1] - 20391:17
**4th** [1] - 20391:14

**5**

**5** [3] - 20393:5, 20393:11, 20393:14
**5-ENRIQUE** [1] - 20391:6
**555** [1] - 20391:14
**59047** [1] - 20392:16
**5:00** [2] - 20467:22, 20468:13
**5:02** [1] - 20468:22
**5:04** [2] - 20470:4, 20470:11

**6**

**6** [3] - 20393:5, 20393:12, 20393:15
**6-DOMINIC** [1] -

20391:6
**6175** [1] - 20392:5
**646** [1] - 20392:13
**6722** [2] - 20392:18, 20470:20
**6th** [2] - 20392:12, 20469:7

**7**

**7** [1] - 20391:17
**7166** [1] - 20392:2
**76** [1] - 20391:8
**764-9347** [1] - 20392:16
**775** [1] - 20392:16

**8**

**8** [13] - 20414:7, 20461:18, 20461:21, 20461:24, 20462:1, 20462:19, 20463:5, 20463:6, 20463:13, 20463:14, 20463:20, 20464:7
**822-2901** [1] - 20392:10

**9**

**902-3869** [1] - 20391:18
**917** [1] - 20391:18
**99** [1] - 20392:12
**9:00** [6] - 20391:6, 20468:16, 20468:17, 20468:19, 20469:21, 20470:5

**A**

**a.m** [1] - 20391:6
**ability** [1] - 20470:18
**able** [9] - 20418:15, 20418:17, 20418:18, 20419:10, 20428:5, 20443:23, 20453:8, 20462:17, 20467:17
**absolutely** [1] - 20445:20
**accomplish** [1] - 20402:7
**accomplishes** [1] - 20441:4
**account** [1] - 20462:1
**accurate** [9] - 20394:12, 20394:17, 20394:20, 20402:15, 20426:22, 20427:3,

20440:6, 20442:15, 20470:15
**achieve** [2] - 20399:18, 20406:25
**acquit** [1] - 20451:18
**acquittal** [1] - 20427:24
**act** [2] - 20423:11, 20461:4
**actions** [5] - 20460:22, 20461:12, 20462:13, 20462:17, 20463:2
**actor** [1] - 20426:19
**ad** [1] - 20449:15
**add** [12] - 20407:17, 20407:18, 20418:7, 20421:17, 20424:24, 20441:2, 20441:21, 20445:19, 20446:5, 20462:6, 20462:18, 20465:20
**adding** [10] - 20420:19, 20425:18, 20426:6, 20426:8, 20441:2, 20441:16, 20452:8, 20452:11, 20453:9, 20467:1
**addition** [7] - 20407:25, 20442:3, 20457:12, 20458:18, 20459:17, 20460:17, 20469:16
**additional** [4] - 20400:10, 20400:17, 20401:3, 20465:21
**address** [6] - 20419:15, 20421:25, 20427:11, 20434:17, 20436:13, 20464:17
**adds** [3] - 20411:6, 20424:20, 20435:12
**adequately** [1] - 20439:24
**adhere** [1] - 20449:13
**adjourned** [1] - 20470:10
**adjust** [1] - 20437:7
**adjusted** [1] - 20437:6
**adjustment** [2] - 20443:1, 20460:1
**admitted** [1] - 20425:13
**admittedly** [1] - 20430:11
**admonition** [1] - 20465:12
**advance** [1] - 20421:15
**advantage** [1] -

20400:12

**adverb** [1] - 20464:5
**affected** [1] - 20455:6
**affirmatively** [3] -
20411:19, 20422:22,
20454:20
**agree** [22] - 20399:16,
20400:20, 20401:5,
20403:23, 20406:8,
20406:15, 20406:24,
20408:15, 20409:17,
20413:4, 20416:18,
20418:9, 20432:9,
20435:12, 20439:4,
20439:7, 20439:10,
20443:18, 20445:24,
20454:22, 20460:18
**Agree** [1] - 20431:6
**agreed** [11] -
20393:25, 20396:12,
20396:15, 20397:25,
20410:6, 20430:13,
20435:3, 20435:5,
20452:13, 20458:7,
20458:8
**agreed-upon** [4] -
20393:25, 20396:12,
20396:15, 20397:25
**agreeing** [1] -
20408:10
**agreement** [9] -
20402:5, 20402:13,
20402:17, 20417:7,
20417:10, 20418:15,
20434:10, 20460:20
**agrees** [1] - 20425:21
**ahead** [3] - 20432:23,
20440:1, 20454:25
**aided** [1] - 20392:21
**akin** [1] - 20431:25
**al** [2] - 20428:12,
20468:4
**alleged** [1] - 20426:19
**allegedly** [1] -
20423:11
**Allen** [1] - 20430:25
**allow** [1] - 20405:16
**alluded** [1] - 20466:15
**alluding** [1] -
20466:15
**alternative** [1] -
20412:3
**altogether** [1] -
20439:12
**ambiguities** [1] -
20404:2
**ambiguity** [5] -
20435:4, 20435:6,
20435:7, 20441:17,
20441:18

**ambiguous** [3] -
20403:19, 20436:5,
20436:8
**Amendment** [1] -
20466:3
**AMERICA** [1] -
20391:2
**America** [3] - 20393:3,
20428:11, 20468:3
**amount** [3] -
20444:22, 20445:1,
20455:17
**ancillary** [1] -
20406:17
**announcing** [1] -
20413:18
**answer** [36] -
20402:14, 20402:19,
20402:20, 20403:3,
20406:8, 20410:18,
20411:13, 20411:20,
20412:19, 20413:3,
20415:4, 20416:14,
20418:8, 20419:19,
20420:8, 20421:6,
20422:11, 20423:14,
20423:15, 20425:23,
20427:6, 20433:5,
20435:19, 20435:21,
20437:19, 20438:22,
20440:15, 20440:21,
20441:21, 20443:4,
20450:24, 20451:2,
20456:5, 20462:12,
20462:21
**answered** [4] -
20411:21, 20436:3,
20436:24, 20437:1
**answering** [7] -
20403:9, 20407:25,
20412:4, 20418:4,
20421:14, 20433:19,
20453:20
**answers** [7] - 20403:1,
20420:21, 20429:23,
20438:11, 20441:4,
20441:17, 20443:4
**anti** [2] - 20445:16,
20447:6
**anti-deadlock** [2] -
20445:16, 20447:6
**anticipating** [1] -
20394:15
**anyway** [1] - 20454:9
**apologize** [2] -
20422:15, 20442:8
**appear** [2] - 20397:5,
20433:14
**APPEARANCES** [2] -
20391:10, 20392:1

**appearing** [1] -
20401:11
**apply** [14] - 20414:10,
20423:12, 20426:19,
20426:22, 20426:24,
20460:22, 20461:11,
20461:21, 20462:1,
20462:2, 20463:6,
20463:14, 20463:20,
20464:7
**appreciate** [5] -
20415:10, 20421:4,
20421:5, 20443:21,
20445:22
**approach** [1] -
20443:13
**appropriate** [9] -
20399:8, 20415:6,
20417:8, 20422:13,
20431:25, 20444:19,
20457:2, 20457:4,
20458:10
**approved** [11] -
20404:4, 20431:1,
20431:6, 20431:10,
20431:23, 20432:10,
20432:12, 20445:17,
20446:13, 20448:7
**argue** [1] - 20448:6
**argued** [2] - 20441:20,
20452:14
**arguing** [1] - 20427:4
**argument** [2] -
20400:25, 20427:8
**arise** [1] - 20421:6
**arrived** [1] - 20416:22
**arrives** [1] - 20428:18
**aside** [2] - 20414:13,
20437:16
**assist** [1] - 20466:21
**assisting** [1] -
20427:16
**assume** [1] - 20464:3
**AT** [1] - 20392:15
**attention** [1] - 20469:7
**Attorney** [1] - 20401:5
**ATTORNEY** [1] -
20392:15
**ATTORNEY'S** [1] -
20391:13
**authority** [1] - 20397:9
**Avenue** [3] -
20392:12, 20392:19,
20470:21
**avoid** [2] - 20437:18,
20439:19
**avoiding** [1] -
20403:18
**await** [1] - 20401:12

## B

**B.A** [1] - 20391:11
**BALLANTINE** [1] -
20449:8
**based** [2] - 20409:3,
20457:1
**basic** [2] - 20431:8,
20446:22
**basis** [1] - 20401:7
**become** [2] -
20406:16, 20413:13
**becomes** [1] - 20400:7
**BEFORE** [1] - 20391:9
**beforehand** [1] -
20466:25
**beginning** [1] -
20453:4
**begins** [1] - 20433:5
**behalf** [1] - 20434:3
**behave** [1] - 20403:15
**belong** [2] - 20438:19,
20438:22
**bench** [1] - 20450:10
**best** [7] - 20403:24,
20423:22, 20435:13,
20444:10, 20444:25,
20455:18, 20470:17
**better** [5] - 20434:1,
20443:2, 20451:17,
20456:22, 20456:23
**between** [23] -
20396:14, 20396:21,
20397:5, 20397:15,
20398:15, 20398:25,
20399:13, 20406:21,
20410:11, 20411:3,
20430:2, 20430:16,
20433:9, 20434:8,
20434:11, 20443:9,
20443:14, 20443:22,
20446:4, 20446:5,
20467:1, 20467:2,
20467:3
**beyond** [7] -
20395:10, 20399:11,
20409:23, 20427:17,
20427:18, 20435:18,
20466:20
**biases** [1] - 20400:24
**big** [2] - 20400:14,
20414:5
**bigger** [1] - 20421:12
**Biggs** [8] - 20393:4,
20393:14, 20400:1,
20400:17, 20434:4,
20459:10, 20460:9,
20467:13
**BIGGS** [1] - 20391:5
**binary** [1] - 20417:8

**bit** [4] - 20398:2,
20410:17, 20413:4,
20446:3
**bits** [1] - 20411:13
**blah** [5] - 20415:25,
20416:1
**bleeds** [1] - 20430:19
**blessed** [2] -
20431:13, 20449:10
**blogging** [1] -
20469:15
**body** [5] - 20437:20,
20437:21, 20437:24,
20438:23, 20441:5
**bogged** [1] - 20400:13
**Book** [11] - 20431:3,
20431:4, 20431:23,
20444:7, 20444:11,
20444:14, 20444:16,
20445:7, 20446:9,
20447:4, 20450:12
**bottom** [2] - 20409:5,
20447:4
**box** [1] - 20468:22
**Box** [4] - 20409:10,
20409:11
**boxes** [1] - 20409:7
**bracketed** [1] -
20444:24
**brackets** [1] -
20444:19
**break** [1] - 20423:4
**breakdown** [2] -
20408:12, 20408:15
**breaks** [2] - 20396:11,
20396:17
**Brief** [6] - 20395:4,
20413:20, 20415:15,
20429:17, 20468:8,
20468:20
**briefly** [2] - 20405:15,
20469:10
**bright** [1] - 20433:9
**bring** [4] - 20418:11,
20468:6, 20469:23,
20469:24
**broader** [1] - 20432:10
**brought** [2] -
20424:21, 20425:16
**built** [1] - 20398:8
**burden** [7] - 20403:10,
20405:8, 20411:7,
20411:14, 20424:20,
20436:6, 20466:2
**business** [1] -
20400:7

## C

**cannot** [4] - 20417:10,

20417:11, 20432:9, 20452:6

**Cannot** [1] - 20431:6

**capture** [1] - 20439:24

**care** [1] - 20434:6

**Carmen** [2] - 20392:2, 20393:11

**case** [31] - 20399:5, 20404:21, 20408:17, 20413:16, 20414:9, 20417:12, 20429:6, 20431:11, 20431:21, 20434:9, 20445:3, 20445:9, 20445:10, 20446:17, 20446:18, 20449:1, 20449:9, 20449:22, 20452:10, 20454:16, 20457:22, 20457:23, 20461:2, 20461:4, 20466:12, 20469:1, 20469:2, 20469:5, 20469:14, 20469:16

**cases** [5] - 20432:3, 20445:2, 20447:8, 20447:9, 20468:25

**category** [2] - 20396:24, 20423:25

**CCR** [3] - 20392:17, 20470:14, 20470:19

**certainly** [8] - 20421:5, 20427:22, 20431:13, 20449:11, 20465:20, 20466:11, 20466:25

**CERTIFICATE** [1] - 20470:13

**certification** [1] - 20398:4

**certify** [1] - 20470:14

**chance** [2] - 20414:14, 20444:7

**change** [5] - 20410:25, 20439:3, 20451:19, 20463:18, 20464:1

**changed** [3] - 20410:16, 20458:16, 20458:17

**changes** [3] - 20436:16, 20440:9, 20467:7

**charge** [27] - 20393:24, 20401:1, 20401:7, 20405:4, 20409:25, 20412:18, 20412:23, 20413:14, 20414:20, 20417:10, 20418:15, 20418:17, 20419:18, 20420:17,

20425:16, 20430:25, 20433:6, 20433:8, 20433:13, 20434:4, 20434:8, 20446:5, 20450:20, 20465:5, 20465:14, 20465:15, 20465:16

**Charge** [1] - 20395:15

**charged** [20] - 20394:4, 20395:12, 20410:20, 20412:17, 20414:4, 20423:10, 20424:6, 20424:15, 20424:17, 20425:2, 20425:5, 20427:1, 20440:17, 20440:21, 20440:22, 20462:9, 20462:24, 20463:10, 20463:11

**charges** [6] - 20393:22, 20396:9, 20400:9, 20400:13, 20412:16, 20412:18

**charging** [2] - 20401:6, 20424:18

**Charles** [7] - 20423:11, 20424:15, 20426:19, 20460:22, 20461:12, 20462:12, 20462:17

**chat** [1] - 20466:8

**check** [2] - 20409:6, 20409:18

**chimes** [1] - 20412:13

**chose** [1] - 20425:7

**circles** [1] - 20397:2

**Circuit** [9] - 20431:1, 20431:24, 20446:15, 20446:18, 20446:19, 20447:21, 20448:8, 20448:25, 20449:1

**circuit** [4] - 20431:7, 20431:9, 20432:11, 20445:17

**Circuit-approved** [1] - 20431:1

**citations** [2] - 20447:14, 20447:15

**cite** [1] - 20447:9

**cited** [1] - 20466:12

**clarification** [5] - 20413:25, 20414:9, 20444:6, 20445:22

**clarifies** [2] - 20399:22, 20430:7

**clarify** [6] - 20398:13, 20399:21, 20406:17, 20429:5, 20460:6, 20460:21

**clarifying** [3] -

20438:14, 20442:14, 20466:22

**classifying** [1] - 20397:1

**clause** [1] - 20462:19

**clear** [10] - 20397:23, 20400:3, 20407:2, 20407:10, 20415:14, 20444:12, 20444:14, 20448:3, 20455:7, 20466:22

**clearly** [2] - 20405:22, 20434:5

**CLERK** [9] - 20393:2, 20413:17, 20422:22, 20428:6, 20428:10, 20467:23, 20468:2, 20468:21, 20470:9

**client's** [1] - 20466:2

**closed** [1] - 20444:25

**closing** [1] - 20427:8

**co** [4] - 20410:6, 20425:5, 20437:14, 20438:8

**co-conspirator** [1] - 20425:5

**co-conspirators** [1] - 20410:6

**co-counsel** [2] - 20437:14, 20438:8

**coercion** [1] - 20446:23

**coercive** [1] - 20455:3

**COLUMBIA** [1] - 20391:1

**combination** [1] - 20413:9

**coming** [1] - 20449:20

**comment** [6] - 20401:23, 20427:12, 20446:10, 20446:11, 20446:15, 20447:6

**Comment** [1] - 20447:3

**comments** [2] - 20421:17, 20427:17

**commit** [1] - 20402:13

**committed** [2] - 20423:11, 20464:20

**common** [1] - 20402:7

**communicate** [1] - 20469:13

**communication** [1] - 20469:15

**complete** [1] - 20470:17

**complex** [1] - 20431:21

**complicated** [1] - 20401:8

**compromise** [2] - 20395:17, 20459:12

**computer** [1] - 20392:21

**computer-aided** [1] - 20392:21

**conceding** [1] - 20443:14

**concept** [6] - 20409:15, 20409:17, 20451:25, 20453:10, 20455:17, 20455:18

**concepts** [1] - 20455:16

**concern** [1] - 20404:18

**concerned** [3] - 20399:13, 20405:7, 20421:21

**concerning** [1] - 20469:1

**concerns** [1] - 20439:24

**conclude** [1] - 20400:4

**concluded** [1] - 20470:11

**conditional** [1] - 20451:4

**conduct** [4] - 20461:21, 20461:24, 20469:16, 20469:18

**confirm** [1] - 20428:20

**confront** [1] - 20439:20

**confused** [4] - 20397:6, 20399:3, 20411:5, 20435:24

**confusing** [5] - 20411:14, 20435:24, 20436:8, 20436:22, 20437:4

**confusion** [5] - 20402:21, 20410:3, 20411:6, 20411:13, 20437:18

**Congress** [5] - 20404:22, 20405:2, 20464:20, 20465:7, 20465:13

**Conor** [2] - 20391:13, 20393:8

**consented** [1] - 20428:17

**consider** [8] - 20393:21, 20413:7, 20424:9, 20432:21, 20462:10, 20462:12, 20462:17, 20463:1

**consideration** [1] -

20424:16

**considering** [3] - 20398:5, 20442:2, 20442:3

**consistent** [1] - 20436:4

**conspiracies** [6] - 20394:4, 20410:20, 20440:16, 20440:20, 20440:22, 20440:24

**Conspiracy** [2] - 20395:7, 20398:22

**conspiracy** [25] - 20393:22, 20393:25, 20394:18, 20395:2, 20395:8, 20395:12, 20396:9, 20396:11, 20398:7, 20399:15, 20400:6, 20402:3, 20402:5, 20403:21, 20405:1, 20405:18, 20406:19, 20406:25, 20410:10, 20427:10, 20436:7, 20437:21, 20440:3, 20441:7, 20465:5

**conspirator** [1] - 20425:5

**conspirators** [6] - 20399:15, 20406:24, 20410:6, 20410:11, 20435:3, 20435:5

**constitutes** [1] - 20470:15

**Constitution** [2] - 20392:19, 20470:21

**constructed** [1] - 20439:23

**contained** [1] - 20405:6

**context** [2] - 20407:18, 20443:8

**continue** [3] - 20431:22, 20453:14, 20454:9

**CONTINUED** [1] - 20392:1

**controversial** [2] - 20448:23, 20449:21

**convict** [1] - 20451:19

**copied** [1] - 20436:18

**correct** [8] - 20406:2, 20406:15, 20425:15, 20428:23, 20438:7, 20440:4, 20462:12, 20464:17

**corrector** [1] - 20463:24

**counsel** [6] - 20433:2, 20437:14, 20438:8,

20474

20439:25, 20442:7, 20468:9
**count** [18] - 20415:1, 20415:13, 20416:12, 20417:19, 20419:3, 20419:6, 20419:7, 20420:15, 20427:24, 20430:22, 20450:17, 20457:8, 20457:10, 20457:12, 20459:17, 20459:21, 20464:22, 20465:19
**Count** [29] - 20395:12, 20395:16, 20404:9, 20404:11, 20404:17, 20404:18, 20404:19, 20406:3, 20410:13, 20412:24, 20414:7, 20421:20, 20440:23, 20441:25, 20461:18, 20461:21, 20461:24, 20462:1, 20462:16, 20462:19, 20463:5, 20463:6, 20463:13, 20463:14, 20463:20, 20464:7, 20464:16, 20465:5
**Counts** [8] - 20393:21, 20394:4, 20410:20, 20416:9, 20437:8, 20440:10, 20440:17, 20440:21
**counts** [4] - 20415:17, 20417:6, 20442:11, 20443:1
**course** [5] - 20405:11, 20422:16, 20433:19, 20453:12, 20461:14
**Court** [18] - 20392:17, 20392:18, 20396:13, 20415:5, 20423:1, 20426:6, 20428:6, 20428:7, 20432:21, 20446:14, 20446:16, 20447:15, 20449:12, 20449:13, 20467:23, 20468:13, 20470:9, 20470:19
**court** [74] - 20394:12, 20394:13, 20394:15, 20398:13, 20400:2, 20400:15, 20401:25, 20402:2, 20402:11, 20402:19, 20402:20, 20403:3, 20403:15, 20404:4, 20404:9, 20404:10, 20404:23, 20405:16, 20405:19, 20405:23, 20406:1, 20411:5, 20411:8,

20415:1, 20415:7, 20415:18, 20415:20, 20416:19, 20419:1, 20419:16, 20423:12, 20424:24, 20426:8, 20427:24, 20433:4, 20433:12, 20433:16, 20435:8, 20437:16, 20437:17, 20438:7, 20439:3, 20439:21, 20439:22, 20439:23, 20440:11, 20444:5, 20444:8, 20445:23, 20448:8, 20448:10, 20449:2, 20449:3, 20449:14, 20450:21, 20452:12, 20452:14, 20452:17, 20452:18, 20453:18, 20453:19, 20453:21, 20457:1, 20457:2, 20460:11, 20460:19, 20460:21, 20461:5, 20463:21, 20464:7, 20466:12, 20466:14
**COURT** [199] - 20391:1, 20393:16, 20394:25, 20395:3, 20395:14, 20395:17, 20395:23, 20396:2, 20397:18, 20398:17, 20398:23, 20399:12, 20399:18, 20399:25, 20400:19, 20400:21, 20401:14, 20401:17, 20401:20, 20404:7, 20404:12, 20404:15, 20404:17, 20405:11, 20405:14, 20406:5, 20408:3, 20408:16, 20408:19, 20408:21, 20409:8, 20409:13, 20409:20, 20410:1, 20410:3, 20410:23, 20411:1, 20411:18, 20411:24, 20412:1, 20413:2, 20413:18, 20415:21, 20415:23, 20416:5, 20416:7, 20416:18, 20417:13, 20417:16, 20418:6, 20418:23, 20419:13, 20419:21, 20419:24, 20420:2, 20420:4, 20420:22, 20421:23, 20422:1, 20422:3, 20422:7, 20422:19, 20422:23, 20423:3, 20423:5, 20423:13, 20423:24, 20424:11, 20424:25, 20425:10,

20425:12, 20425:20, 20425:25, 20426:4, 20426:21, 20427:11, 20427:14, 20427:19, 20428:2, 20428:13, 20428:15, 20428:19, 20428:24, 20429:4, 20429:6, 20429:14, 20432:9, 20432:17, 20432:19, 20432:22, 20432:25, 20433:2, 20433:18, 20433:22, 20433:24, 20434:14, 20434:17, 20434:20, 20435:17, 20436:10, 20436:12, 20436:14, 20436:16, 20436:24, 20437:12, 20437:25, 20438:3, 20438:5, 20438:10, 20438:17, 20438:20, 20439:6, 20439:9, 20439:13, 20440:20, 20441:10, 20441:12, 20441:24, 20442:1, 20442:5, 20442:18, 20443:25, 20444:2, 20444:12, 20446:2, 20446:7, 20446:25, 20447:10, 20447:17, 20447:20, 20447:23, 20448:1, 20448:5, 20448:13, 20448:15, 20448:17, 20449:6, 20449:9, 20449:24, 20450:5, 20450:9, 20450:11, 20450:17, 20451:9, 20451:12, 20451:24, 20453:12, 20453:16, 20453:23, 20453:25, 20454:3, 20454:11, 20454:13, 20455:6, 20455:25, 20456:2, 20456:9, 20456:21, 20457:5, 20457:18, 20458:1, 20458:7, 20458:14, 20458:17, 20458:23, 20459:1, 20459:3, 20459:6, 20459:13, 20460:9, 20460:13, 20460:25, 20461:14, 20461:17, 20461:19, 20461:22, 20462:22, 20463:23, 20464:3, 20464:6, 20464:13, 20464:22, 20464:24, 20465:1, 20465:3, 20465:15, 20465:20, 20466:5, 20466:23, 20467:10, 20467:12, 20467:14,

20467:21, 20468:5, 20468:15, 20468:19, 20468:23, 20470:5, 20470:13
**Court's** [1] - 20421:25
**court's** [11] - 20402:14, 20414:21, 20419:5, 20425:9, 20436:15, 20443:21, 20445:24, 20450:1, 20462:8, 20462:18, 20463:19
**courthouse** [3] - 20444:21, 20449:18, 20455:5
**Courthouse** [2] - 20392:18, 20470:20
**courtroom** [2] - 20469:6, 20469:9
**cover** [2] - 20394:24, 20433:12
**coverage** [1] - 20469:2
**covered** [3] - 20400:6, 20401:1, 20415:3
**CR** [1] - 20391:2
**cracked** [2] - 20430:1, 20430:5
**cracks** [1] - 20429:25
**crafted** [2] - 20458:19, 20460:12
**create** [2] - 20400:23, 20409:15
**creates** [2] - 20441:17, 20441:18
**crimes** [1] - 20414:4
**Criminal** [3] - 20393:2, 20428:11, 20468:3
**criticism** [1] - 20449:12
**CRR** [3] - 20392:17, 20470:14, 20470:19
**CT** [1] - 20391:21
**culled** [1] - 20443:6
**curative** [1] - 20427:16

# D

**D.C** [10] - 20391:5, 20431:1, 20431:23, 20446:13, 20446:15, 20446:18, 20446:19, 20447:21, 20448:8, 20448:25
**danger** [2] - 20442:13, 20453:13
**dangerous** [1] - 20453:10
**dated** [1] - 20470:18

**DAVID** [1] - 20391:16
**DAY** [1] - 20391:8
**days** [2] - 20430:21, 20455:20
**DC** [4] - 20391:14, 20391:24, 20392:19, 20470:21
**dead** [2] - 20445:16, 20454:5
**deadlock** [6] - 20431:8, 20431:22, 20432:12, 20445:16, 20447:6, 20448:3
**deadlocked** [4] - 20413:13, 20415:22, 20448:12, 20454:21
**deal** [5] - 20400:14, 20416:25, 20419:7, 20420:17, 20456:6
**dealing** [1] - 20412:5
**debate** [1] - 20446:4
**decide** [3] - 20435:9, 20451:16, 20469:5
**decided** [1] - 20401:20
**decision** [10] - 20424:18, 20444:18, 20445:12, 20448:8, 20450:15, 20457:8, 20457:9, 20457:11, 20457:25, 20459:16
**DEFENDANT** [1] - 20428:23
**Defendant** [15] - 20393:3, 20393:4, 20393:5, 20393:9, 20393:10, 20393:11, 20393:12, 20393:13, 20393:14, 20393:15
**defendant** [15] - 20413:15, 20414:8, 20415:1, 20415:13, 20416:12, 20417:19, 20419:4, 20420:15, 20450:15, 20457:8, 20457:10, 20457:12, 20458:18, 20459:17, 20459:21
**Defendants** [4] - 20391:7, 20391:16, 20392:2, 20416:8
**defendants** [5] - 20414:10, 20422:9, 20423:10, 20459:15
**defendants'** [2] - 20412:13, 20425:13
**defense** [4] - 20407:23, 20415:10, 20439:24, 20442:7
**deference** [1] -

20438:8
**defined** [1] - 20402:10
**definitely** [2] - 20400:21, 20400:22
**definitions** [1] - 20402:3
**degree** [1] - 20433:6
**deliberate** [7] - 20445:3, 20445:9, 20451:20, 20452:10, 20453:14, 20454:9, 20457:22
**deliberating** [6] - 20445:1, 20451:3, 20454:7, 20454:17, 20454:18, 20455:21
**deliberations** [17] - 20403:16, 20414:20, 20414:24, 20415:11, 20416:10, 20417:17, 20420:11, 20420:13, 20445:13, 20450:19, 20451:5, 20457:14, 20459:19, 20468:10, 20469:13, 20469:17, 20469:21
**deliver** [1] - 20416:23
**deputy** [1] - 20469:9
**DEPUTY** [9] - 20393:2, 20413:17, 20422:22, 20428:6, 20428:10, 20467:23, 20468:2, 20468:21, 20470:9
**describing** [1] - 20400:16
**detail** [1] - 20465:21
**detailed** [1] - 20465:24
**details** [2] - 20467:1, 20467:2
**deviate** [1] - 20404:3
**deviating** [1] - 20421:13
**difference** [5] - 20397:5, 20398:25, 20411:2, 20461:23, 20464:1
**different** [13] - 20393:18, 20397:7, 20399:3, 20408:22, 20409:2, 20410:11, 20434:15, 20434:22, 20441:7, 20447:18, 20448:18, 20448:20, 20448:21
**differentiated** [1] - 20458:6
**diligence** [1] - 20470:2
**diligent** [1] - 20414:12

**dilute** [1] - 20403:10
**direct** [2] - 20411:9, 20411:11
**directing** [1] - 20400:22
**directly** [1] - 20462:11
**disabused** [1] - 20397:17
**disagree** [1] - 20438:18
**disagreement** [2] - 20460:3, 20460:5
**disagrees** [1] - 20440:5
**discharging** [2] - 20405:2, 20465:7
**discuss** [3] - 20464:15, 20469:8, 20469:11
**discussed** [2] - 20401:1, 20429:25
**discussion** [2] - 20402:4, 20433:2
**distinction** [12] - 20396:14, 20396:21, 20397:15, 20398:15, 20401:6, 20424:7, 20430:16, 20433:9, 20434:15, 20443:14, 20443:21, 20443:22
**distinctions** [1] - 20434:11
**distinguishes** [1] - 20434:8
**DISTRICT** [3] - 20391:1, 20391:1, 20391:9
**District** [2] - 20449:12
**district** [1] - 20454:24
**divided** [1] - 20415:18
**Dominic** [1] - 20393:5
**done** [2] - 20406:25, 20422:25
**Donohoe** [13] - 20423:11, 20424:15, 20425:1, 20426:20, 20427:1, 20427:24, 20460:22, 20461:12, 20461:15, 20462:12, 20462:17, 20463:2, 20463:8
**Donohoe's** [1] - 20425:16
**door** [1] - 20430:1
**doubt** [5] - 20395:10, 20398:11, 20399:11, 20409:24, 20466:20
**dovetails** [1] - 20405:17
**down** [8] - 20396:11,

20400:14, 20436:5, 20442:10, 20442:13, 20450:8, 20455:18, 20466:1
**downsides** [1] - 20454:4
**drafted** [3] - 20404:1, 20404:23, 20405:7
**draw** [2] - 20396:21, 20398:14
**drawing** [2] - 20396:13, 20401:6
**drew** [1] - 20434:11
**Driscoll** [7] - 20449:5, 20449:7, 20455:2, 20455:7, 20455:8, 20455:9, 20457:2
**Drive** [1] - 20392:15
**drive** [2] - 20403:9, 20409:17
**driving** [1] - 20412:22
**during** [10] - 20414:24, 20415:11, 20416:9, 20417:17, 20420:11, 20420:12, 20459:18, 20469:12, 20469:17
**duty** [2] - 20405:2, 20465:7

## E

**early** [1] - 20403:16
**easiest** [1] - 20429:1
**East** [2] - 20391:17, 20392:15
**echoed** [1] - 20395:13
**effectively** [1] - 20431:18
**either** [17] - 20396:3, 20397:11, 20397:12, 20399:5, 20400:6, 20407:15, 20408:7, 20410:5, 20418:20, 20435:4, 20441:24, 20450:24, 20451:17, 20451:19, 20455:22, 20456:10, 20467:18
**elaboration** [1] - 20464:8
**electronic** [1] - 20469:14
**electronically** [1] - 20469:19
**element** [1] - 20464:17
**elements** [5] - 20405:4, 20406:3, 20406:4, 20466:13, 20466:19
**eliminate** [2] -

20433:10, 20439:11
**eliminated** [2] - 20404:19, 20424:2
**eliminates** [1] - 20464:19
**eliminating** [2] - 20421:24, 20425:11
**email** [1] - 20469:15
**encourage** [1] - 20422:8
**end** [5] - 20399:19, 20410:17, 20426:11, 20440:11, 20445:25
**engage** [1] - 20422:9
**English** [1] - 20463:23
**Enrique** [1] - 20393:5
**entire** [4] - 20395:18, 20395:21, 20409:21, 20411:8
**Erik** [2] - 20391:12, 20393:8
**err** [2] - 20400:21, 20400:22
**error** [1] - 20455:12
**especially** [2] - 20403:20, 20404:21
**Esq** [12] - 20391:11, 20391:12, 20391:12, 20391:13, 20391:16, 20391:19, 20391:23, 20392:2, 20392:4, 20392:8, 20392:11, 20392:14
**essentially** [4] - 20410:13, 20426:18, 20429:23, 20462:16
**et** [2] - 20428:12, 20468:4
**Ethan** [3] - 20393:3, 20428:11, 20468:3
**evening** [3] - 20468:6, 20469:20, 20469:25
**eventually** [1] - 20449:14
**Evidence** [1] - 20394:2
**evidence** [31] - 20406:13, 20407:5, 20408:22, 20409:4, 20410:18, 20424:21, 20424:22, 20427:18, 20435:21, 20435:23, 20437:20, 20437:22, 20437:24, 20438:1, 20440:1, 20440:17, 20440:21, 20440:23, 20441:5, 20441:6, 20441:15, 20441:16, 20441:23, 20444:23, 20451:4, 20455:17,

20463:1, 20463:7, 20463:10, 20469:5
**exact** [3] - 20421:11, 20452:15, 20458:5
**exactly** [8] - 20397:7, 20419:11, 20432:1, 20438:24, 20443:6, 20460:11, 20460:19, 20463:3
**example** [4] - 20397:21, 20397:25, 20418:14, 20430:1
**except** [2] - 20434:12, 20442:24
**exclusively** [1] - 20424:1
**excuse** [2] - 20395:16, 20468:18
**execution** [1] - 20397:8
**existence** [1] - 20404:25
**expect** [1] - 20444:23
**explain** [1] - 20430:12
**explaining** [1] - 20418:20
**explains** [1] - 20417:5
**Explanation** [1] - 20466:16
**explicitly** [1] - 20455:14
**expressed** [1] - 20460:5
**expressing** [3] - 20443:22, 20445:11, 20457:24
**extended** [1] - 20408:25
**extent** [5] - 20399:9, 20399:12, 20439:18, 20454:5, 20454:7
**extra** [1] - 20445:24

## F

**F.3d** [1] - 20446:18
**fact** [10] - 20397:23, 20405:19, 20417:16, 20431:9, 20433:11, 20451:6, 20463:6, 20463:9, 20467:5, 20469:12
**facts** [4] - 20424:20, 20425:18, 20426:6, 20426:8
**factual** [2] - 20398:6, 20426:8
**failure** [2] - 20424:22, 20425:17
**fair** [2] - 20396:4,

20406:10
**fairly** [1] - 20426:10
**far** [2] - 20419:1, 20463:24
**fault** [1] - 20432:25
**fear** [2] - 20400:11, 20459:11
**fearful** [1] - 20455:1
**federal** [5] - 20405:3, 20447:9, 20448:8, 20465:7, 20465:8
**fellow** [2] - 20422:9, 20437:14
**few** [2] - 20431:3, 20431:11
**Fifth** [1] - 20466:3
**figure** [2] - 20452:15, 20463:9
**final** [2] - 20445:16, 20446:4
**fine** [5] - 20418:6, 20443:20, 20457:1, 20457:3, 20457:15
**finish** [2] - 20412:11, 20435:19
**first** [28] - 20393:20, 20394:6, 20396:7, 20396:9, 20401:24, 20403:17, 20412:6, 20421:11, 20429:16, 20429:20, 20430:4, 20431:2, 20431:9, 20431:14, 20435:22, 20443:12, 20446:9, 20447:6, 20447:13, 20448:21, 20449:19, 20449:25, 20451:6, 20455:15, 20456:4, 20457:6, 20459:24
**FL** [2] - 20392:6, 20392:9
**flaw** [1] - 20465:19
**flawed** [2] - 20465:14, 20465:16
**flip** [1] - 20442:24
**Floor** [2] - 20391:21, 20392:12
**fly** [1] - 20452:16
**focus** [2] - 20401:12, 20462:24
**folks** [1] - 20445:5
**follow** [1] - 20419:20
**following** [2] - 20424:3, 20465:6
**follows** [3] - 20428:9, 20447:6, 20468:1
**FOR** [1] - 20391:1
**force** [7] - 20397:9, 20397:10, 20404:20, 20405:5, 20464:18,

20465:9, 20465:13
**foreclose** [1] - 20400:5
**foregoing** [1] - 20470:15
**Form** [1] - 20466:16
**form** [19] - 20396:10, 20396:17, 20404:19, 20404:23, 20405:6, 20405:10, 20405:12, 20405:21, 20405:25, 20442:12, 20464:19, 20465:22, 20466:3, 20466:13, 20466:17, 20466:20, 20467:4, 20467:6
**formed** [1] - 20434:12
**forth** [2] - 20405:9, 20465:18
**forward** [1] - 20411:24
**four** [4] - 20424:3, 20424:6, 20430:21, 20461:11
**fourth** [1] - 20455:18
**frankly** [1] - 20408:24
**front** [1] - 20448:22
**fronts** [1] - 20421:11
**full** [1] - 20470:16
**functions** [1] - 20446:22
**funny** [2] - 20393:23, 20462:22
**future** [1] - 20421:4

## G

**game** [1] - 20434:3
**general** [1] - 20402:3
**generalized** [1] - 20443:17
**generally** [1] - 20469:7
**gentlemen** [1] - 20468:24
**given** [20] - 20393:17, 20394:21, 20399:20, 20402:19, 20403:21, 20407:21, 20413:19, 20417:14, 20430:15, 20432:14, 20443:7, 20445:25, 20450:2, 20455:11, 20458:9, 20459:14, 20463:12, 20466:18, 20467:3, 20467:4
**Goal** [2] - 20402:14
**goal** [23] - 20393:24, 20395:11, 20396:10, 20397:8, 20397:25, 20399:15, 20400:6,

20402:13, 20402:16, 20403:11, 20406:24, 20408:23, 20410:12, 20411:3, 20430:3, 20433:8, 20433:11, 20434:9, 20434:10, 20435:9, 20437:23, 20443:10, 20465:23
**Goals** [2] - 20395:7, 20398:22
**goals** [57] - 20394:1, 20394:3, 20394:18, 20394:20, 20394:22, 20395:8, 20395:10, 20395:11, 20396:11, 20396:14, 20396:16, 20396:20, 20396:22, 20397:1, 20397:2, 20397:5, 20397:11, 20397:16, 20398:7, 20398:15, 20399:2, 20399:6, 20399:10, 20400:7, 20402:12, 20405:18, 20405:23, 20406:15, 20406:21, 20407:3, 20407:5, 20408:6, 20408:12, 20408:15, 20409:1, 20409:3, 20409:9, 20409:22, 20409:23, 20410:5, 20410:15, 20410:19, 20433:6, 20435:2, 20435:4, 20436:2, 20436:3, 20436:7, 20437:21, 20440:2, 20440:18, 20440:24, 20441:6, 20441:7, 20441:9, 20465:6
**Google** [1] - 20448:24
**Government** [1] - 20409:24
**government** [32] - 20393:7, 20394:6, 20394:16, 20394:17, 20395:7, 20395:9, 20395:10, 20397:9, 20403:10, 20404:25, 20407:2, 20407:24, 20409:21, 20409:22, 20410:4, 20410:14, 20416:19, 20422:9, 20424:21, 20425:7, 20425:8, 20427:9, 20430:6, 20431:11, 20441:20, 20442:25, 20457:15, 20459:15, 20460:1, 20460:14, 20464:16, 20466:20
**Government's** [2] -

20436:6, 20438:17
**government's** [20] - 20394:6, 20401:22, 20407:1, 20407:13, 20411:7, 20413:7, 20414:15, 20418:24, 20424:20, 20424:22, 20439:13, 20439:17, 20443:12, 20451:6, 20456:23, 20456:25, 20460:5, 20460:11, 20466:2, 20466:7
**grammar** [1] - 20463:24
**grammatical** [1] - 20459:25
**grammatically** [2] - 20442:25, 20443:2
**grant** [1] - 20437:17
**great** [1] - 20429:21
**ground** [2] - 20447:24, 20447:25
**grounds** [1] - 20459:11
**guess** [9] - 20398:19, 20411:7, 20411:10, 20414:5, 20416:10, 20416:14, 20424:25, 20449:10, 20465:3
**guidance** [1] - 20403:20
**guilt** [3] - 20397:12, 20399:11, 20408:8
**guilty** [21] - 20395:13, 20395:20, 20410:5, 20414:25, 20415:12, 20416:11, 20416:12, 20417:8, 20417:9, 20417:18, 20418:3, 20420:14, 20425:17, 20459:20
**guys** [1] - 20463:23

## H

**half** [1] - 20455:11
**hammer** [1] - 20463:21
**hand** [1] - 20412:1
**hangs** [2] - 20409:15, 20409:17
**happy** [1] - 20464:1
**harm** [3] - 20406:22, 20456:5, 20467:1
**harmless** [1] - 20453:14
**Harris** [3] - 20413:21, 20422:20, 20468:5
**Hassan** [2] - 20392:4, 20393:11

**HASSAN** [5] - 20392:5, 20429:2, 20429:5, 20438:18, 20438:21
**Haven** [1] - 20391:21
**head** [3] - 20398:20, 20427:2, 20439:20
**hear** [9] - 20394:5, 20421:16, 20423:1, 20432:5, 20432:22, 20440:3, 20460:3, 20460:14
**heard** [6] - 20414:3, 20416:19, 20432:5, 20455:1, 20459:4, 20459:6
**hearing** [1] - 20429:15
**heart** [1] - 20453:20
**HELD** [1] - 20391:9
**help** [3] - 20425:8, 20426:15, 20465:22
**helpful** [1] - 20426:12
**hereby** [1] - 20470:14
**Hernandez** [18] - 20392:2, 20393:11, 20406:1, 20407:8, 20408:25, 20410:8, 20412:13, 20425:21, 20426:9, 20427:2, 20429:3, 20429:9, 20429:19, 20434:17, 20441:12, 20449:24, 20464:13, 20466:8
**HERNANDEZ** [70] - 20395:21, 20395:25, 20400:20, 20403:23, 20404:8, 20404:14, 20404:16, 20404:18, 20410:21, 20410:24, 20411:2, 20412:7, 20412:10, 20421:20, 20421:24, 20422:2, 20422:6, 20422:15, 20424:19, 20425:4, 20425:11, 20425:15, 20427:21, 20427:23, 20434:16, 20434:19, 20434:21, 20435:18, 20436:11, 20436:13, 20436:15, 20436:21, 20439:7, 20439:10, 20440:14, 20441:11, 20441:14, 20441:25, 20449:5, 20449:7, 20449:23, 20449:25, 20450:7, 20450:10, 20450:16, 20450:18, 20451:11, 20451:23, 20452:5, 20453:15, 20453:17, 20453:24,

20454:1, 20454:10, 20454:12, 20454:15, 20455:8, 20460:15, 20460:23, 20464:5, 20464:12, 20464:14, 20464:23, 20464:25, 20465:2, 20465:4, 20465:17, 20466:1, 20467:9, 20467:11
**Hernandez's** [2] - 20405:17, 20456:3
**Hialeah** [1] - 20392:9
**Highland** [1] - 20392:3
**hit** [3] - 20420:16, 20420:25, 20456:18
**hitting** [1] - 20456:15
**hmm** [1] - 20436:10
**holding** [1] - 20466:12
**Hollow** [1] - 20392:2
**home** [2] - 20403:9, 20463:21
**honestly** [1] - 20449:21
**Honor** [58] - 20394:11, 20396:6, 20396:18, 20398:12, 20398:21, 20399:8, 20408:4, 20408:8, 20409:5, 20412:2, 20412:12, 20412:22, 20416:3, 20416:13, 20417:2, 20417:3, 20418:1, 20418:13, 20419:9, 20419:23, 20420:1, 20420:18, 20420:19, 20420:20, 20421:20, 20427:21, 20429:10, 20432:7, 20441:1, 20441:11, 20443:19, 20445:21, 20446:8, 20446:10, 20446:11, 20446:14, 20447:2, 20447:7, 20447:8, 20447:12, 20447:14, 20449:25, 20454:15, 20455:19, 20456:3, 20456:20, 20457:16, 20457:20, 20458:4, 20458:13, 20458:21, 20461:9, 20464:14, 20467:9, 20467:13, 20467:20
**HONORABLE** [1] - 20391:9
**Honorable** [3] - 20428:6, 20467:23, 20470:9
**hope** [4] - 20399:18, 20403:15, 20406:25, 20461:6

**horse** [1] - 20454:24
**hot** [5] - 20423:6, 20423:8, 20423:25, 20424:9, 20426:17
**hot-take** [1] - 20423:25
**hour** [1] - 20414:16
**hours** [2] - 20452:14, 20454:18
**housekeeping** [1] - 20401:17
**Hull** [2] - 20391:23, 20393:10
**HULL** [4] - 20391:23, 20467:13, 20468:16, 20468:18
**hung** [1] - 20424:8

**I**

**idea** [1] - 20458:3
**identify** [1] - 20461:14
**identity** [1] - 20429:15
**II** [1] - 20392:11
**III)(C)** [1] - 20447:5
**illegal** [2] - 20399:15, 20406:24
**imagine** [1] - 20398:2
**immediately** [1] - 20447:5
**impasse** [1] - 20456:15
**implanted** [1] - 20458:3
**implicit** [2] - 20403:21, 20434:10
**implicitly** [1] - 20463:12
**implies** [1] - 20452:7
**imply** [1] - 20417:11
**impression** [2] - 20397:16, 20399:2
**improper** [1] - 20414:19
**IN** [1] - 20391:1
**inability** [2] - 20461:1, 20461:4
**inadvertently** [1] - 20469:7
**inappropriate** [2] - 20449:11, 20452:4
**inclination** [3] - 20407:20, 20407:24, 20420:6
**inclined** [4] - 20410:8, 20437:17, 20438:7, 20450:22
**include** [13] - 20406:3, 20406:12, 20407:13, 20407:14, 20417:9,

20438:8, 20438:9, 20438:10, 20439:1, 20439:4, 20465:5, 20465:13
**includes** [3] - 20402:3, 20432:10, 20469:14
**including** [4] - 20402:5, 20440:1, 20441:7, 20442:18
**incorrect** [1] - 20440:4
**independent** [1] - 20469:17
**indicate** [1] - 20418:18
**Indicates** [2] - 20422:22, 20431:6
**indicates** [3] - 20444:17, 20450:2, 20450:4
**indicating** [18] - 20399:24, 20405:13, 20408:2, 20412:20, 20413:17, 20423:23, 20426:3, 20428:14, 20432:18, 20434:16, 20437:11, 20439:9, 20442:4, 20446:6, 20449:23, 20456:1, 20460:8, 20464:12
**indication** [2] - 20431:15, 20448:3
**individual** [1] - 20414:11
**individuals** [1] - 20414:3
**induce** [1] - 20465:8
**inferences** [2] - 20414:2, 20414:8
**influence** [1] - 20464:20
**influencing** [1] - 20465:13
**inform** [6] - 20412:19, 20413:15, 20413:16, 20415:7, 20418:9, 20418:11
**information** [2] - 20438:24, 20453:1
**informed** [1] - 20449:19
**Initial** [1] - 20431:5
**initial** [3] - 20432:13, 20443:17, 20449:13
**insert** [1] - 20445:1
**inserting** [2] - 20454:16, 20455:19
**insight** [1] - 20412:21
**instantaneously** [1] - 20403:22

**instinct** [3] - 20413:2, 20414:21, 20452:11
**instruct** [5] - 20399:6, 20402:1, 20418:12, 20452:25, 20469:25
**instructed** [28] - 20397:4, 20397:11, 20405:11, 20406:2, 20406:23, 20407:11, 20407:19, 20407:21, 20410:9, 20410:12, 20410:25, 20413:11, 20415:25, 20417:20, 20418:7, 20420:10, 20420:12, 20420:23, 20426:24, 20436:20, 20452:1, 20457:13, 20459:18, 20461:25, 20463:19, 20464:6, 20465:21
**instructing** [1] - 20468:14
**instruction** [72] - 20394:25, 20395:15, 20399:7, 20399:19, 20399:20, 20399:22, 20403:25, 20404:2, 20405:20, 20407:10, 20410:22, 20411:9, 20411:11, 20411:16, 20411:17, 20416:16, 20417:5, 20417:11, 20417:13, 20419:16, 20421:3, 20427:16, 20432:1, 20432:8, 20432:10, 20432:11, 20432:13, 20441:19, 20442:12, 20445:15, 20445:16, 20445:23, 20446:12, 20446:13, 20446:17, 20446:20, 20446:24, 20447:7, 20447:9, 20447:10, 20447:11, 20447:13, 20447:16, 20447:18, 20447:19, 20447:22, 20448:7, 20448:9, 20448:17, 20448:19, 20449:13, 20449:14, 20450:12, 20451:2, 20452:18, 20452:23, 20452:24, 20455:3, 20455:23, 20458:16, 20458:21, 20461:12, 20462:2, 20462:3, 20462:7, 20462:8, 20463:16, 20464:17, 20465:9, 20467:2, 20467:4
**Instruction** [4] -

20431:5, 20448:25, 20455:24
**instructions** [46] - 20394:24, 20396:19, 20396:20, 20398:14, 20399:14, 20402:1, 20402:24, 20402:25, 20405:10, 20406:7, 20406:8, 20406:10, 20406:18, 20411:21, 20413:25, 20414:23, 20415:8, 20416:8, 20419:5, 20423:17, 20423:19, 20423:21, 20424:13, 20425:23, 20426:1, 20426:2, 20426:15, 20426:22, 20432:10, 20435:14, 20436:18, 20437:1, 20437:9, 20443:7, 20447:7, 20452:15, 20455:11, 20462:20, 20463:12, 20465:24, 20466:16, 20466:17, 20466:19, 20467:2, 20468:7, 20470:1
**instructs** [1] - 20406:20
**intend** [1] - 20421:10
**intending** [1] - 20398:3
**interacts** [1] - 20463:15
**interest** [1] - 20460:6
**interfering** [1] - 20397:8
**Internet** [2] - 20469:1, 20469:19
**interruption** [2] - 20429:2, 20429:7
**intimidation** [5] - 20404:20, 20405:5, 20464:18, 20465:10, 20465:14
**introduce** [2] - 20451:25, 20453:11
**introductory** [1] - 20450:1
**intruding** [3] - 20449:17, 20451:5, 20452:5
**intrusion** [3] - 20446:21, 20448:4, 20450:18
**invasion** [1] - 20414:19
**investigation** [1] - 20469:17
**invites** [1] - 20446:21
**inviting** [1] - 20415:20

**involving** [1] - 20404:21
**irrelevant** [1] - 20463:1
**issue** [13] - 20402:21, 20404:10, 20425:11, 20428:1, 20430:1, 20430:5, 20434:7, 20434:18, 20437:22, 20439:19, 20449:20, 20451:10, 20453:12
**issues** [1] - 20462:23
**itself** [3] - 20405:21, 20408:10, 20462:3
**IV** [1] - 20391:23

## J

**January** [1] - 20469:7
**Jason** [2] - 20391:11, 20393:7
**Jauregui** [4] - 20392:8, 20393:12, 20426:10, 20429:3
**JAUREGUI** [4] - 20392:8, 20425:21, 20426:1, 20429:9
**jockey** [1] - 20400:12
**John** [2] - 20391:23, 20393:10
**joined** [1] - 20426:9
**joins** [3] - 20400:1, 20459:10, 20467:13
**joking** [1] - 20464:5
**Joseph** [1] - 20393:4
**JUDGE** [1] - 20391:9
**judge** [7] - 20399:4, 20416:25, 20420:23, 20421:5, 20429:2, 20438:18, 20449:18
**Judge** [13] - 20403:7, 20425:22, 20427:22, 20428:23, 20429:3, 20432:1, 20432:2, 20438:16, 20438:25, 20439:2, 20439:3, 20465:11
**judges** [1] - 20454:23
**judgment** [6] - 20427:24, 20444:10, 20444:25, 20454:17, 20455:19
**jumping** [2] - 20454:24, 20454:25
**juries** [1] - 20416:25
**jurors** [3] - 20432:9, 20460:21, 20469:8
**jury** [62] - 20393:18, 20396:8, 20396:13, 20396:18, 20396:20,

20396:23, 20398:24, 20399:1, 20399:6, 20399:7, 20399:10, 20403:16, 20406:20, 20408:10, 20408:12, 20411:4, 20412:14, 20412:15, 20412:18, 20413:25, 20414:12, 20414:16, 20414:22, 20415:18, 20417:6, 20420:24, 20422:16, 20424:23, 20428:5, 20430:16, 20431:2, 20431:15, 20433:15, 20435:13, 20438:24, 20439:17, 20439:22, 20441:22, 20442:11, 20442:14, 20443:17, 20446:22, 20449:19, 20450:19, 20450:20, 20452:19, 20453:18, 20453:19, 20454:20, 20459:11, 20464:16, 20464:17, 20465:22, 20467:7, 20467:17, 20468:6, 20468:21, 20468:22, 20469:14, 20470:4
**JURY** [1] - 20391:8
**Jury** [3] - 20431:5, 20468:22, 20470:4
**jury's** [11] - 20412:4, 20414:19, 20416:14, 20426:13, 20441:4, 20443:22, 20448:11, 20451:5, 20453:6, 20453:10, 20465:17

## K

**Keep** [1] - 20445:18
**keep** [7] - 20442:23, 20442:24, 20445:9, 20445:19, 20454:7, 20457:21, 20457:22
**Keepers** [1] - 20432:2
**KELLY** [1] - 20391:9
**KENERSON** [37] - 20394:11, 20395:1, 20395:6, 20395:15, 20401:24, 20403:6, 20405:13, 20405:15, 20414:17, 20415:22, 20418:25, 20423:1, 20423:4, 20423:8, 20426:3, 20426:5, 20439:16, 20440:15, 20442:4, 20442:6, 20443:19, 20444:1, 20444:3, 20445:21, 20456:25, 20460:17,

20460:24, 20461:9, 20461:16, 20461:18, 20461:20, 20462:5, 20463:17, 20464:2, 20466:10, 20467:20, 20468:12
**Kenerson** [7] - 20391:12, 20393:8, 20405:14, 20419:9, 20426:4, 20442:5, 20461:8
**Kenerson's** [2] - 20403:8, 20419:15
**kind** [17] - 20405:16, 20407:22, 20408:5, 20414:19, 20415:19, 20416:16, 20423:9, 20430:19, 20431:7, 20432:13, 20439:19, 20440:8, 20445:16, 20449:15, 20456:12
**knowing** [1] - 20449:22
**knows** [1] - 20401:21

## L

**lack** [4] - 20433:13, 20443:21, 20454:6, 20461:3
**ladies** [1] - 20468:24
**laid** [2] - 20394:12, 20423:12
**Lake** [1] - 20392:15
**Lakes** [1] - 20392:6
**language** [41] - 20394:11, 20394:14, 20395:5, 20395:13, 20408:15, 20408:25, 20413:11, 20414:22, 20416:3, 20423:9, 20424:4, 20426:17, 20430:7, 20431:1, 20431:12, 20443:18, 20444:8, 20444:10, 20444:16, 20444:19, 20444:25, 20445:14, 20445:19, 20445:24, 20452:9, 20452:15, 20454:19, 20454:23, 20455:6, 20456:17, 20458:5, 20458:10, 20458:15, 20458:19, 20458:24, 20461:10, 20462:3, 20462:16, 20462:19
**large** [2] - 20444:21, 20455:16
**largely** [1] - 20426:14
**last** [22] - 20401:9,

20411:5, 20420:19, 20429:23, 20430:14, 20431:11, 20433:4, 20433:16, 20433:18, 20433:25, 20434:21, 20434:23, 20435:1, 20435:11, 20435:19, 20436:4, 20436:17, 20437:2, 20439:11, 20441:16, 20441:21, 20457:20
**laughter** [2] - 20415:10, 20429:13
**LAW** [3] - 20392:5, 20392:8, 20392:15
**law** [13] - 20394:13, 20394:20, 20397:8, 20401:12, 20402:15, 20403:17, 20427:3, 20436:4, 20440:4, 20440:5, 20442:3, 20442:15, 20466:18
**lawyers** [5] - 20421:4, 20435:22, 20461:2, 20461:3, 20461:4
**least** [14] - 20395:1, 20395:9, 20395:11, 20395:19, 20398:18, 20401:22, 20409:23, 20410:4, 20414:23, 20430:22, 20443:11, 20443:25, 20456:21, 20466:15
**leave** [3] - 20434:25, 20460:2, 20465:8
**leaves** [2] - 20435:3, 20435:6
**left** [4] - 20430:9, 20430:12, 20450:21, 20456:13
**legislative** [1] - 20404:22
**length** [1] - 20444:9
**less** [6] - 20400:2, 20400:21, 20406:13, 20423:16, 20449:18, 20452:13
**lessens** [1] - 20424:20
**letting** [3] - 20404:9, 20413:10, 20417:5
**level** [1] - 20453:9
**liability** [18] - 20414:10, 20423:12, 20423:19, 20423:20, 20424:18, 20425:14, 20426:16, 20426:19, 20426:23, 20426:24, 20460:22, 20461:11, 20461:25, 20462:14, 20463:6, 20463:14,

20463:20, 20464:7
**libbed** [1] - 20449:15
**light** [1] - 20405:25
**lighten** [1] - 20411:14
**lightens** [1] - 20411:6
**limiting** [1] - 20424:1
**line** [9] - 20409:5, 20417:3, 20418:13, 20420:19, 20433:9, 20457:6, 20460:10, 20462:13
**lines** [2] - 20444:6, 20461:11
**listed** [2] - 20393:24, 20396:10
**listen** [2] - 20469:3, 20469:4
**listened** [1] - 20427:19
**listening** [2] - 20445:10, 20457:23
**literal** [1] - 20456:6
**literally** [5] - 20417:13, 20424:17, 20437:4, 20443:6, 20449:17
**Livingston** [1] - 20392:16
**LLC** [1] - 20391:20
**logical** [1] - 20400:4
**Look** [2] - 20423:21, 20435:13
**look** [17] - 20402:2, 20405:3, 20414:14, 20416:20, 20422:4, 20423:16, 20431:20, 20441:10, 20442:18, 20442:21, 20444:7, 20448:19, 20457:19, 20458:20, 20460:25, 20462:23, 20463:12
**looked** [2] - 20422:14, 20422:16
**looking** [4] - 20424:23, 20442:21, 20446:9, 20454:4
**looks** [7] - 20396:23, 20446:11, 20446:12, 20446:14, 20447:8, 20447:12, 20447:21
**luckily** [1] - 20465:15
**lunch** [4] - 20421:19, 20439:25, 20442:9, 20450:21

## M

**machine** [1] - 20392:21
**mail** [1] - 20462:21
**majority** [1] -

20459:14
**manner** [2] - 20403:15, 20446:22
**marries** [1] - 20451:9
**massaged** [1] - 20426:17
**massaging** [1] - 20423:9
**material** [1] - 20429:22
**matter** [10] - 20401:6, 20401:18, 20402:15, 20409:14, 20415:18, 20424:8, 20424:14, 20426:7, 20426:8, 20444:24
**Matter** [3] - 20393:2, 20428:11, 20468:3
**matters** [1] - 20451:21
**McCullough** [2] - 20391:11, 20393:7
**MCGUIRE** [1] - 20391:23
**MD** [1] - 20392:3
**mean** [48] - 20394:6, 20394:10, 20395:24, 20396:2, 20396:3, 20397:20, 20398:25, 20399:12, 20401:5, 20402:22, 20410:7, 20410:24, 20416:24, 20417:14, 20420:1, 20424:11, 20424:12, 20424:14, 20424:25, 20425:20, 20426:21, 20426:23, 20427:15, 20431:22, 20433:18, 20434:14, 20438:1, 20442:1, 20442:22, 20445:5, 20446:2, 20448:19, 20448:24, 20449:15, 20451:19, 20453:18, 20453:20, 20455:18, 20456:9, 20456:19, 20456:24, 20461:19, 20461:23, 20462:1, 20462:3, 20463:9, 20464:24, 20466:23
**meaning** [6] - 20397:22, 20402:1, 20441:2, 20441:4, 20441:8
**meaningful** [1] - 20463:25
**meaningless** [1] - 20454:8
**means** [4] - 20451:17, 20451:18, 20451:20, 20469:18

**meant** [3] - 20433:12, 20442:7, 20466:21
**meat** [1] - 20433:19
**media** [1] - 20469:2
**meeting** [2] - 20401:11, 20402:6
**meets** [1] - 20408:22
**Mehta** [1] - 20432:2
**melange** [1] - 20407:23
**member** [5] - 20405:2, 20465:6, 20465:8, 20465:9
**members** [1] - 20404:21
**mention** [1] - 20441:15
**mentioned** [2] - 20421:21, 20445:25
**Metcalf** [7] - 20392:11, 20393:13, 20428:16, 20429:12, 20429:15, 20459:3, 20459:6
**METCALF** [14] - 20392:11, 20432:7, 20432:15, 20456:20, 20457:16, 20457:19, 20458:2, 20458:13, 20458:15, 20458:21, 20458:24, 20459:2, 20459:5
**Metcalf's** [2] - 20428:17, 20459:10
**Miami** [1] - 20392:6
**microphone** [1] - 20428:22
**might** [19] - 20398:5, 20403:10, 20408:13, 20409:16, 20410:16, 20415:3, 20431:15, 20431:20, 20433:15, 20443:18, 20443:23, 20449:19, 20459:11, 20459:12, 20462:20, 20463:20, 20466:24, 20466:25, 20470:8
**Miller** [2] - 20392:17, 20470:19
**MILLER** [1] - 20470:14
**mind** [6] - 20406:11, 20407:17, 20445:10, 20457:23, 20458:4, 20458:11
**minds** [1] - 20402:6
**Mink** [1] - 20392:2
**mis** [1] - 20405:8
**misimpression** [1] - 20434:25
**mislead** [1] - 20433:15
**misleading** [2] -

20402:9, 20405:8
**mix** [1] - 20408:25
**modifies** [1] - 20466:19
**mold** [1] - 20452:16
**moment** [1] - 20413:19
**Moore** [2] - 20391:12, 20393:8
**morning** [3] - 20393:16, 20453:24, 20469:21
**morning'** [1] - 20454:2
**most** [3] - 20398:5, 20452:21, 20456:6
**motion** [1] - 20427:23
**mouths** [1] - 20461:2
**moved** [1] - 20440:12
**MR** [141] - 20394:11, 20395:1, 20395:6, 20395:15, 20396:6, 20398:12, 20398:20, 20398:24, 20399:17, 20399:24, 20400:1, 20400:25, 20401:16, 20401:19, 20401:24, 20403:5, 20403:6, 20403:7, 20405:13, 20405:15, 20408:2, 20408:4, 20408:17, 20408:20, 20409:5, 20409:9, 20409:14, 20409:25, 20410:2, 20411:23, 20411:25, 20412:2, 20412:8, 20412:12, 20414:17, 20415:22, 20416:3, 20416:6, 20416:13, 20417:2, 20417:15, 20418:1, 20418:13, 20418:25, 20419:9, 20419:14, 20419:22, 20420:1, 20420:3, 20420:18, 20423:1, 20423:4, 20423:8, 20423:23, 20423:25, 20425:21, 20426:1, 20426:3, 20426:5, 20427:8, 20427:13, 20427:15, 20427:22, 20428:14, 20428:16, 20429:2, 20429:5, 20429:9, 20429:11, 20432:7, 20432:15, 20432:18, 20432:20, 20432:24, 20433:1, 20433:3, 20433:20, 20433:23, 20434:2, 20437:11, 20437:13, 20438:2, 20438:4,

20438:7, 20438:12, 20438:15, 20438:18, 20438:21, 20439:16, 20440:15, 20441:1, 20442:4, 20442:6, 20442:16, 20443:19, 20444:1, 20444:3, 20445:21, 20446:6, 20446:8, 20447:2, 20447:12, 20447:18, 20447:21, 20447:24, 20448:2, 20448:6, 20448:14, 20448:16, 20456:1, 20456:3, 20456:20, 20456:25, 20457:16, 20457:19, 20458:2, 20458:13, 20458:15, 20458:21, 20458:24, 20459:2, 20459:5, 20459:10, 20460:8, 20460:10, 20460:17, 20460:24, 20461:9, 20461:16, 20461:18, 20461:20, 20462:5, 20463:17, 20464:2, 20466:10, 20467:13, 20467:20, 20468:12, 20468:16, 20468:17, 20468:18
**MS** [71] - 20395:21, 20395:25, 20400:20, 20403:23, 20404:8, 20404:14, 20404:16, 20404:18, 20410:21, 20410:24, 20411:2, 20412:7, 20412:10, 20421:20, 20421:24, 20422:2, 20422:6, 20422:15, 20424:19, 20425:4, 20425:11, 20425:15, 20427:21, 20427:23, 20434:16, 20434:19, 20434:21, 20435:18, 20436:11, 20436:13, 20436:15, 20436:21, 20439:7, 20439:10, 20440:14, 20441:11, 20441:14, 20441:25, 20449:5, 20449:7, 20449:8, 20449:23, 20449:25, 20450:7, 20450:10, 20450:16, 20450:18, 20451:11, 20451:23, 20452:5, 20453:15, 20453:17, 20453:24, 20454:1, 20454:10, 20454:12, 20454:15, 20455:8, 20460:15, 20460:23, 20464:5, 20464:12, 20464:14,

20464:23, 20464:25, 20465:2, 20465:4, 20465:17, 20466:1, 20467:9, 20467:11
**MT** [1] - 20392:16
**muck** [1] - 20401:7
**muddies** [5] - 20434:24, 20435:20, 20439:1, 20439:11, 20441:9
**Mulroe** [2] - 20391:13, 20393:8
**Multiple** [2] - 20416:8, 20416:9
**multiple** [1] - 20402:18
**must** [20] - 20395:9, 20395:12, 20395:20, 20409:22, 20410:4, 20410:6, 20418:7, 20420:10, 20427:21, 20430:8, 20435:2, 20435:5, 20435:8, 20435:9, 20436:1, 20466:13, 20466:20, 20469:3, 20469:4
**mutual** [1] - 20402:6

### N

**Nadia** [2] - 20391:12, 20393:8
**nature** [5] - 20403:21, 20429:25, 20430:2, 20452:10, 20455:3
**Nayib** [2] - 20392:4, 20393:11
**NAYIB** [1] - 20392:5
**near** [2] - 20431:21, 20433:7
**necessary** [3] - 20415:9, 20444:4, 20445:25
**need** [12] - 20397:10, 20397:16, 20398:8, 20403:20, 20409:11, 20409:19, 20421:15, 20423:7, 20434:6, 20443:4, 20451:7, 20470:7
**needed** [1] - 20445:19
**needle** [1] - 20408:14
**needn't** [1] - 20434:12
**needs** [2] - 20402:2, 20422:12
**neglected** [1] - 20442:8
**neutral** [1] - 20454:15
**never** [9] - 20416:19, 20420:6, 20427:9,

20480

20431:24, 20434:11, 20452:18, 20453:21, 20461:6, 20461:7
**New** [3] - 20391:18, 20391:21, 20392:13
**new** [5] - 20400:24, 20423:2, 20455:16, 20455:17, 20455:18
**newspaper** [1] - 20468:25
**next** [6] - 20395:22, 20396:12, 20412:1, 20434:23, 20435:1, 20447:15
**next-to-last** [2] - 20434:23, 20435:1
**Nicholas** [2] - 20391:16, 20393:9
**night** [1] - 20401:9
**NJ** [3] - 20392:17, 20470:14, 20470:19
**NJ-CCR** [3] - 20392:17, 20470:14, 20470:19
**none** [1] - 20455:6
**noon** [6] - 20468:10, 20468:17, 20468:19, 20469:22, 20470:1, 20470:6
**Nordean** [5] - 20393:3, 20393:13, 20400:1, 20428:12, 20468:4
**NORDEAN** [1] - 20391:4
**normal** [2] - 20404:4, 20452:9
**Norman** [2] - 20391:19, 20393:10
**north** [1] - 20465:12
**Nos** [1] - 20391:2
**note** [39] - 20393:17, 20394:22, 20401:15, 20402:11, 20402:23, 20413:19, 20414:13, 20414:16, 20416:21, 20417:22, 20419:2, 20419:10, 20419:18, 20419:23, 20423:2, 20427:17, 20429:20, 20439:22, 20440:7, 20443:22, 20444:17, 20450:2, 20450:4, 20450:14, 20452:20, 20453:3, 20453:4, 20453:6, 20453:10, 20456:7, 20456:18, 20457:9, 20457:12, 20457:19, 20459:17, 20459:22, 20460:17,

20463:24, 20464:9
**notes** [7] - 20417:22, 20419:24, 20427:11, 20446:15, 20450:7, 20467:17, 20470:16
**nothing** [11] - 20398:19, 20412:25, 20423:22, 20441:22, 20450:24, 20451:13, 20452:22, 20455:24, 20456:11, 20466:18, 20467:16
**Nothing** [1] - 20466:17
**notice** [1] - 20396:13
**noticed** [1] - 20422:18
**notify** [1] - 20448:12
**noting** [1] - 20437:13
**notion** [2] - 20436:9, 20454:16
**notwithstanding** [3] - 20461:12, 20462:20, 20463:4
**Notwithstanding** [1] - 20462:6
**nowhere** [1] - 20431:21
**number** [8] - 20415:19, 20426:7, 20432:16, 20444:9, 20444:22, 20454:18, 20455:16, 20455:20
**numbers** [1] - 20447:3
**numerous** [1] - 20431:7
**NW** [5] - 20391:14, 20391:24, 20392:5, 20392:19, 20470:21
**NY** [2] - 20391:18, 20392:13

## O

**o'clock** [3] - 20468:13, 20469:21, 20470:6
**Oath** [1] - 20432:2
**object** [21] - 20394:13, 20396:19, 20399:14, 20406:19, 20406:21, 20406:24, 20407:5, 20410:10, 20424:19, 20425:18, 20430:3, 20433:8, 20434:21, 20441:19, 20443:9, 20445:23, 20449:25, 20451:8, 20457:16, 20458:3
**objected** [2] - 20404:24, 20438:13
**objection** [6] -

20402:4, 20444:5, 20464:4, 20467:6, 20467:9, 20467:12
**objections** [6] - 20432:20, 20433:3, 20433:16, 20433:21, 20439:12, 20467:14
**objective** [32] - 20393:25, 20394:3, 20394:19, 20396:15, 20396:25, 20397:2, 20397:24, 20399:9, 20402:1, 20402:7, 20402:10, 20402:16, 20406:13, 20408:11, 20410:19, 20411:3, 20433:11, 20434:8, 20434:10, 20435:22, 20435:23, 20437:23, 20438:6, 20439:15, 20439:18, 20440:2, 20440:17, 20440:23, 20441:2, 20441:8, 20442:22, 20442:23
**objective/goal** [1] - 20437:18
**objectives** [12] - 20396:14, 20396:22, 20397:5, 20397:15, 20398:15, 20398:19, 20399:2, 20399:6, 20400:7, 20402:4, 20433:7, 20443:3
**Objects** [2] - 20395:7, 20398:22
**obvious** [2] - 20398:5, 20420:24
**obviously** [5] - 20406:2, 20415:14, 20427:5, 20434:3, 20436:21
**occasion** [1] - 20431:15
**occurs** [1] - 20403:8
**odd** [1] - 20421:2
**OF** [5] - 20391:1, 20391:2, 20391:8, 20392:5, 20470:13
**offense** [3] - 20397:12, 20425:6, 20464:21
**OFFICE** [1] - 20391:13
**officer** [3] - 20405:3, 20465:7, 20465:8
**officers** [1] - 20461:4
**OFFICES** [1] - 20392:5
**Official** [2] - 20392:18, 20470:19
**OFFICIAL** [1] -

20470:13
**often** [1] - 20432:13
**once** [3] - 20401:21, 20451:25, 20452:2
**one** [54] - 20393:20, 20393:24, 20394:19, 20395:9, 20395:11, 20395:19, 20395:20, 20396:10, 20396:15, 20397:22, 20397:25, 20399:22, 20402:12, 20402:13, 20402:17, 20402:18, 20403:11, 20403:12, 20405:4, 20405:5, 20408:8, 20409:6, 20409:23, 20410:4, 20413:22, 20414:5, 20416:21, 20418:15, 20423:21, 20424:12, 20426:7, 20427:19, 20431:10, 20432:2, 20433:7, 20433:11, 20435:10, 20435:25, 20440:9, 20441:3, 20441:5, 20443:16, 20444:6, 20459:23, 20459:24, 20460:14, 20460:16, 20465:6, 20467:5
**open** [8] - 20430:1, 20430:5, 20436:16, 20437:2, 20445:5, 20445:9, 20445:20, 20457:23
**opening** [1] - 20427:9
**openly** [1] - 20446:21
**opinion** [1] - 20431:9
**opportunity** [1] - 20464:15
**opposed** [1] - 20439:2
**opposing** [1] - 20397:9
**option** [4] - 20416:17, 20417:9, 20456:10, 20456:11
**options** [1] - 20417:12
**Orange** [1] - 20391:20
**order** [1] - 20412:5
**orderly** [1] - 20461:6
**original** [1] - 20415:8
**otherwise** [4] - 20395:25, 20435:3, 20459:12, 20460:1
**ourself** [1] - 20424:2
**outset** [1] - 20437:13
**overlap** [2] - 20413:5, 20435:25
**overread** [1] - 20401:15
**overreading** [1] -

20397:19
**own** [4] - 20425:17, 20438:13, 20445:11, 20457:24

## P

**P.A** [2] - 20392:5, 20392:8
**P.C** [1] - 20392:11
**p.m** [7] - 20428:8, 20428:9, 20467:25, 20468:1, 20468:22, 20470:4, 20470:11
**Page** [14] - 20395:1, 20395:6, 20395:13, 20410:16, 20414:2, 20414:23, 20424:3, 20461:13, 20462:7, 20462:9, 20462:20, 20464:25, 20466:15
**page** [4] - 20396:18, 20426:14, 20446:25, 20447:3
**pages** [2] - 20400:15, 20447:4
**Pages** [1] - 20402:2
**paired** [1] - 20408:9
**panel** [1] - 20468:21
**Paragraph** [1] - 20433:4
**paragraph** [13] - 20395:18, 20395:21, 20398:18, 20402:8, 20407:8, 20429:21, 20436:15, 20437:3, 20438:23, 20446:15, 20447:13, 20447:15, 20453:3
**pardon** [2] - 20429:2, 20449:6
**Park** [1] - 20392:12
**parsing** [1] - 20396:7
**Part** [9] - 20446:10, 20447:11, 20447:13, 20447:16, 20447:19, 20447:22, 20447:23, 20448:9
**part** [9] - 20400:1, 20404:11, 20410:14, 20416:7, 20430:11, 20430:14, 20432:6, 20459:14, 20461:17
**partial** [29] - 20399:5, 20413:12, 20414:22, 20416:1, 20416:23, 20417:3, 20417:4, 20417:17, 20418:20, 20419:4, 20420:13, 20430:14, 20431:19,

20432:4, 20451:10, 20451:13, 20451:15, 20451:21, 20452:2, 20452:24, 20456:17, 20457:14, 20457:17, 20458:3, 20458:9, 20459:2, 20459:19, 20460:20
**particular** [7] - 20406:13, 20419:3, 20419:4, 20419:18, 20427:4, 20442:11, 20467:3
**particularly** [2] - 20408:9, 20465:10
**parties** [3] - 20422:4, 20423:2, 20429:22
**partly** [1] - 20460:18
**parts** [1] - 20405:4
**party** [3] - 20432:5, 20456:5, 20467:19
**passes** [1] - 20413:24
**Pattis** [13] - 20391:19, 20393:10, 20399:25, 20403:23, 20411:10, 20423:24, 20428:15, 20432:19, 20432:23, 20435:12, 20435:13, 20460:9, 20460:18
**PATTIS** [35] - 20391:20, 20399:24, 20400:1, 20400:25, 20401:16, 20401:19, 20403:5, 20403:7, 20409:25, 20410:2, 20411:23, 20411:25, 20423:23, 20423:25, 20427:8, 20427:13, 20427:15, 20427:22, 20428:14, 20428:16, 20429:11, 20432:18, 20432:20, 20432:24, 20433:1, 20433:3, 20433:20, 20433:23, 20434:2, 20438:15, 20442:16, 20459:10, 20460:8, 20460:10, 20468:17
**Pattis's** [6] - 20401:23, 20402:22, 20405:16, 20405:24, 20406:6, 20423:15
**pause** [6] - 20395:4, 20413:20, 20415:15, 20429:17, 20468:8, 20468:20
**PC** [1] - 20391:23
**pending** [1] - 20427:23
**people** [1] - 20462:9

**perhaps** [1] - 20467:21
**period** [1] - 20448:12
**permit** [1] - 20461:5
**person** [4] - 20414:8, 20423:10, 20426:25, 20469:18
**persons** [1] - 20414:1
**perspective** [2] - 20407:1, 20456:22
**PEZZOLA** [2] - 20391:6, 20428:23
**Pezzola** [5] - 20393:6, 20393:15, 20428:17, 20428:20, 20428:22
**phrase** [1] - 20440:1
**phrased** [1] - 20406:14
**pick** [1] - 20470:5
**picture** [1] - 20441:9
**Pincite** [1] - 20446:18
**pitch** [1] - 20394:10
**place** [3] - 20416:24, 20428:17, 20465:8
**plainly** [1] - 20462:18
**plan** [2] - 20397:8, 20434:12
**plans** [1] - 20470:8
**playbook** [2] - 20460:10, 20460:11
**plea** [2] - 20425:5, 20425:12
**pled** [2] - 20403:21, 20425:16
**PLLC** [1] - 20391:16
**plus** [1] - 20395:21
**point** [53] - 20398:13, 20399:8, 20400:2, 20402:11, 20402:22, 20403:16, 20405:16, 20405:17, 20405:25, 20406:18, 20407:8, 20407:13, 20407:17, 20410:7, 20410:17, 20414:14, 20416:6, 20416:14, 20416:22, 20418:10, 20419:16, 20420:7, 20420:16, 20420:25, 20422:4, 20423:15, 20424:13, 20424:25, 20426:18, 20427:6, 20427:15, 20428:3, 20430:24, 20433:7, 20437:2, 20438:12, 20442:6, 20442:9, 20443:25, 20444:6, 20445:11, 20451:1, 20452:13, 20454:3, 20454:5, 20456:18, 20457:24,

20458:4, 20459:3, 20459:7, 20459:8, 20461:20, 20467:15
**pointed** [1] - 20408:4
**pointing** [1] - 20426:15
**points** [4] - 20401:5, 20401:25, 20407:7, 20426:9
**popped** [1] - 20422:17
**portion** [3] - 20394:24, 20402:24, 20434:4
**position** [11] - 20400:18, 20401:23, 20425:22, 20425:24, 20438:21, 20438:25, 20439:8, 20439:10, 20444:4, 20445:24, 20466:7
**possibilities** [1] - 20456:16
**possibility** [1] - 20400:4
**possibly** [3] - 20398:4, 20401:16, 20401:19
**potential** [3] - 20423:19, 20446:23, 20454:4
**potentially** [1] - 20414:10
**pre** [11] - 20446:12, 20446:16, 20446:17, 20446:20, 20446:24, 20447:19, 20447:22, 20448:2, 20448:9, 20452:18
**pre-Thomas** [9] - 20446:12, 20446:17, 20446:20, 20446:24, 20447:19, 20447:22, 20448:2, 20448:9, 20452:18
**pre-Winters** [2] - 20446:12, 20446:16
**preceding** [1] - 20424:7
**precludes** [1] - 20462:16
**preface** [1] - 20399:21
**prefer** [1] - 20419:16
**pregnant** [1] - 20400:8
**prepared** [1] - 20451:14
**present** [9] - 20393:7, 20393:8, 20393:9, 20393:10, 20393:11, 20393:12, 20393:13, 20414:1, 20428:16
**presentation** [1] - 20466:11

**presented** [2] - 20463:10, 20469:5
**preserving** [1] - 20439:12
**pretty** [3] - 20421:8, 20438:23, 20449:1
**prevent** [2] - 20405:1, 20465:6
**principles** [1] - 20423:12
**problem** [9] - 20397:3, 20397:6, 20401:4, 20407:20, 20411:4, 20418:14, 20448:17, 20451:9
**procedure** [3] - 20403:24, 20419:20, 20419:23
**proceed** [3] - 20416:15, 20457:2, 20461:5
**proceeding** [1] - 20461:5
**proceedings** [4] - 20428:8, 20467:25, 20470:11, 20470:17
**Proceedings** [1] - 20392:21
**produced** [1] - 20392:21
**progress** [2] - 20401:8, 20420:15
**promote** [2] - 20410:6, 20435:5
**promptly** [1] - 20428:5
**prong** [1] - 20397:12
**prongs** [1] - 20402:18
**proof** [3] - 20403:11, 20405:8, 20425:17
**proper** [1] - 20406:4
**proposal** [4] - 20393:21, 20440:13, 20440:15, 20450:23
**propose** [4] - 20393:20, 20394:23, 20412:3, 20434:22
**proposed** [5] - 20394:2, 20426:6, 20426:8, 20428:4, 20462:19
**proposition** [1] - 20466:13
**prove** [10] - 20394:7, 20394:18, 20395:8, 20395:9, 20407:3, 20409:22, 20409:23, 20410:15, 20430:6, 20466:20
**proved** [4] - 20395:11, 20395:19, 20404:25,

20410:4
**proven** [1] - 20405:24
**provide** [5] - 20406:20, 20407:18, 20414:9, 20464:8, 20464:10
**provided** [3] - 20423:18, 20450:13, 20453:2
**provides** [1] - 20443:7
**providing** [1] - 20442:14
**publicity** [1] - 20469:6
**published** [1] - 20448:7
**pulled** [2] - 20437:5, 20448:23
**purport** [1] - 20396:21
**purpose** [2] - 20404:22, 20425:13
**put** [7] - 20396:4, 20414:13, 20425:7, 20448:20, 20448:24, 20466:5, 20466:23
**putting** [3] - 20418:21, 20443:1, 20453:9

## Q

**questions** [15] - 20393:18, 20400:10, 20400:17, 20401:3, 20401:12, 20403:25, 20405:21, 20411:11, 20411:17, 20413:23, 20413:24, 20421:6, 20425:24, 20435:15, 20466:22
**quick** [1] - 20432:7
**quite** [1] - 20448:20
**quote** [4] - 20414:1, 20446:20, 20446:21, 20447:19

## R

**radio** [1] - 20469:1
**raise** [1] - 20404:10
**raised** [6] - 20422:10, 20426:9, 20426:10, 20430:20, 20439:24, 20464:14
**rarely** [1] - 20407:20
**rather** [5] - 20400:2, 20400:23, 20404:3, 20421:12, 20427:11
**re** [3] - 20394:23, 20399:19, 20435:15
**re-read** [2] - 20394:23, 20399:19

**re-reading** [1] - 20435:15
**reach** [32] - 20413:14, 20416:16, 20417:7, 20417:10, 20417:23, 20418:2, 20418:15, 20418:16, 20418:17, 20418:18, 20419:3, 20419:10, 20419:17, 20443:23, 20444:18, 20444:24, 20445:12, 20450:3, 20450:14, 20450:20, 20452:6, 20452:19, 20453:5, 20453:8, 20454:20, 20454:22, 20457:7, 20457:9, 20457:11, 20457:25, 20459:16
**reached** [4] - 20403:22, 20452:8, 20454:6, 20469:24
**read** [24] - 20394:14, 20394:23, 20395:18, 20397:13, 20397:23, 20399:19, 20402:24, 20404:23, 20410:2, 20411:8, 20413:23, 20416:4, 20417:4, 20420:20, 20437:19, 20444:16, 20447:7, 20450:5, 20450:10, 20450:13, 20455:23, 20466:14, 20469:3, 20469:4
**reading** [15] - 20394:13, 20396:19, 20398:18, 20399:22, 20402:24, 20408:8, 20410:15, 20411:16, 20414:5, 20435:15, 20446:11, 20447:14, 20448:2, 20448:3, 20450:12
**reads** [2] - 20445:7, 20457:21
**reaffirm** [1] - 20463:13
**reaffirming** [1] - 20456:13
**reaffirms** [2] - 20443:8
**real** [1] - 20432:7
**really** [18] - 20397:18, 20397:20, 20421:21, 20423:18, 20429:15, 20430:4, 20434:11, 20436:16, 20445:6, 20449:15, 20452:3, 20453:12, 20454:13, 20454:14, 20455:11, 20456:14, 20462:7
**reason** [6] - 20403:14,

20408:24, 20409:20, 20433:5, 20436:17, 20439:21
**reasonable** [4] - 20395:10, 20399:11, 20409:23, 20466:20
**reasons** [2] - 20434:22, 20458:14
**reassert** [1] - 20403:14
**received** [1] - 20444:23
**recent** [1] - 20449:1
**recently** [1] - 20431:10
**recess** [5] - 20428:7, 20428:8, 20467:21, 20467:24, 20467:25
**reconcilable** [1] - 20427:6
**reconsider** [2] - 20433:4, 20433:16
**record** [7] - 20413:7, 20425:19, 20428:10, 20429:18, 20465:23, 20468:2
**recorded** [1] - 20392:21
**recording** [1] - 20466:21
**Red** [11] - 20431:3, 20431:4, 20431:23, 20444:7, 20444:10, 20444:14, 20444:16, 20445:7, 20446:9, 20447:4, 20450:12
**reduced** [1] - 20405:7
**reemphasizes** [1] - 20395:18
**reemphasizing** [1] - 20421:1
**refer** [13] - 20400:9, 20400:15, 20402:8, 20403:2, 20403:24, 20404:5, 20407:15, 20411:15, 20432:8, 20440:10, 20452:23, 20452:25, 20455:24
**reference** [4] - 20396:8, 20396:17, 20426:16, 20442:22
**referenced** [1] - 20457:20
**referred** [2] - 20402:8, 20458:22
**referring** [2] - 20401:2, 20463:21
**refers** [1] - 20448:18
**reflect** [2] - 20396:1, 20429:18

**reflects** [1] - 20433:8
**regard** [3] - 20413:15, 20429:20, 20443:11
**regardless** [1] - 20402:21
**REHL** [1] - 20391:5
**Rehl** [2] - 20393:4, 20393:14
**reinstruct** [1] - 20415:2
**reinstructing** [1] - 20415:2
**reintroduce** [1] - 20452:1
**reiterate** [6] - 20407:21, 20415:25, 20420:4, 20458:10, 20463:11, 20463:13
**reiterating** [2] - 20406:22, 20463:5
**rejected** [4] - 20446:16, 20446:19, 20447:22, 20448:9
**relation** [1] - 20414:11
**relationship** [6] - 20399:13, 20406:21, 20407:13, 20410:11, 20430:2, 20443:9
**relatively** [3] - 20444:20, 20455:4, 20455:15
**relevant** [1] - 20424:16
**rely** [3] - 20409:2, 20409:3, 20416:21
**remainder** [1] - 20443:5
**remarkable** [1] - 20461:1
**remarks** [2] - 20403:8, 20459:10
**remember** [1] - 20425:3
**remind** [3] - 20420:7, 20468:24, 20469:12
**reminder** [1] - 20468:9
**remotely** [1] - 20430:25
**removed** [1] - 20431:3
**repeating** [2] - 20407:12, 20410:1
**replaces** [2] - 20466:17, 20466:18
**reply** [1] - 20426:4
**Reporter** [3] - 20392:17, 20392:18, 20470:19
**REPORTER** [2] - 20439:9, 20470:13
**reports** [2] - 20468:25,

20469:4
**request** [8] - 20399:4, 20400:8, 20400:15, 20403:17, 20437:17, 20440:9, 20452:22, 20460:18
**requesting** [2] - 20394:18, 20438:25
**require** [1] - 20414:7
**required** [6] - 20394:17, 20395:8, 20407:2, 20407:14, 20409:22, 20410:15
**requirement** [6] - 20396:1, 20403:14, 20404:20, 20433:10, 20442:10, 20442:14
**requires** [3] - 20404:24, 20464:18, 20465:9
**research** [1] - 20469:18
**reserved** [1] - 20427:25
**resolution** [1] - 20444:24
**respect** [18] - 20395:2, 20402:22, 20405:18, 20406:1, 20414:17, 20414:25, 20415:4, 20415:12, 20415:16, 20416:12, 20417:19, 20420:14, 20430:13, 20435:11, 20440:16, 20440:20, 20440:22, 20459:20
**respond** [3] - 20405:15, 20415:9, 20448:10
**responding** [2] - 20403:19, 20439:25
**response** [14] - 20393:18, 20394:2, 20412:14, 20412:17, 20416:2, 20428:4, 20440:6, 20442:7, 20442:19, 20451:6, 20460:4, 20460:12, 20463:19, 20467:18
**responsive** [2] - 20394:21, 20426:13
**rest** [7] - 20407:9, 20419:7, 20430:4, 20430:8, 20437:4, 20443:2, 20463:2
**restating** [1] - 20430:5
**result** [4] - 20435:13, 20445:2, 20445:8, 20457:21
**resume** [1] - 20445:12

**resumed** [2] - 20428:9, 20467:25
**return** [16] - 20400:17, 20412:15, 20413:12, 20414:24, 20415:12, 20416:10, 20416:11, 20417:6, 20417:17, 20418:3, 20418:16, 20419:4, 20420:13, 20428:7, 20457:14, 20459:19
**returned** [2] - 20468:22, 20470:4
**returning** [1] - 20417:9
**reverse** [1] - 20412:5
**reversed** [2] - 20449:3, 20455:9
**review** [5] - 20400:10, 20400:16, 20401:3, 20403:18, 20426:2
**reviewing** [1] - 20404:19
**rewriting** [1] - 20437:18
**rife** [1] - 20446:23
**rights** [1] - 20466:3
**rise** [3] - 20428:6, 20467:23, 20470:9
**risk** [6] - 20415:19, 20451:16, 20452:3, 20454:13, 20456:12, 20456:14
**road** [1] - 20401:11
**Road** [1] - 20392:2
**Roger** [1] - 20392:14
**ROGER** [1] - 20392:15
**room** [1] - 20470:4
**Room** [2] - 20392:18, 20470:20
**Roots** [1] - 20392:14
**ROOTS** [1] - 20392:15
**route** [1] - 20414:18
**RPR** [3] - 20392:17, 20470:14, 20470:19
**rubber** [1] - 20401:11
**run** [1] - 20451:16

## S

**Sabino** [2] - 20392:8, 20393:12
**satisfied** [1] - 20408:7
**satisfies** [1] - 20403:12
**satisfy** [19] - 20394:1, 20394:3, 20394:19, 20396:15, 20396:25, 20397:3, 20398:6, 20402:14, 20406:14,

20407:5, 20410:19, 20436:6, 20437:20, 20440:2, 20440:18, 20440:24, 20441:6, 20456:4

**satisfying** [1] - 20394:22

**saved** [1] - 20424:2

**scale** [1] - 20418:22

**scenario** [4] - 20430:17, 20443:15, 20456:7

**script** [1] - 20449:3

**seated** [1] - 20468:23

**second** [24] - 20397:6, 20405:1, 20408:9, 20413:8, 20414:13, 20414:15, 20414:17, 20418:13, 20430:11, 20435:19, 20436:15, 20440:14, 20443:13, 20446:14, 20453:2, 20453:3, 20459:14, 20460:4, 20460:14, 20460:15, 20460:17, 20461:17

**Section** [2] - 20446:10, 20447:5

**section** [1] - 20398:21

**seditious** [1] - 20395:2

**see** [14] - 20395:5, 20396:18, 20406:21, 20416:2, 20417:20, 20420:15, 20445:11, 20447:14, 20457:24, 20460:15, 20461:7, 20465:3, 20470:3, 20470:8

**seeing** [1] - 20408:13

**seeks** [1] - 20464:20

**seem** [1] - 20416:21

**semantic** [1] - 20396:13

**semantics** [1] - 20398:2

**send** [14] - 20419:2, 20419:6, 20419:10, 20419:17, 20419:18, 20419:23, 20426:1, 20456:7, 20456:18, 20457:8, 20457:12, 20459:17, 20459:21

**sending** [1] - 20419:24

**sense** [6] - 20411:10, 20413:1, 20430:15, 20431:17, 20438:16, 20468:15

**sensitive** [1] - 20421:8

**sent** [3] - 20425:23, 20440:7, 20460:4

**sentence** [40] - 20395:22, 20396:9, 20420:20, 20426:12, 20429:23, 20430:4, 20433:4, 20433:17, 20433:18, 20434:1, 20434:7, 20434:23, 20435:1, 20435:11, 20435:19, 20436:1, 20436:4, 20436:8, 20436:17, 20437:3, 20437:19, 20438:8, 20438:9, 20438:10, 20438:16, 20438:19, 20438:22, 20439:1, 20439:4, 20439:5, 20439:11, 20439:23, 20440:12, 20440:14, 20441:3, 20441:16, 20441:21, 20450:1, 20455:15, 20457:20

**sentences** [2] - 20434:22, 20434:24

**separate** [1] - 20404:12

**service** [1] - 20470:3

**set** [1] - 20412:6

**setting** [1] - 20437:16

**shaking** [1] - 20427:2

**sheet** [6] - 20396:8, 20399:10, 20421:22, 20422:5, 20422:12, 20422:16

**short** [2] - 20407:15, 20449:4

**shorthand** [1] - 20392:21

**shot** [1] - 20443:12

**show** [1] - 20425:16

**showing** [1] - 20425:13

**shows** [4] - 20402:23, 20410:10, 20411:12, 20450:1

**shut** [1] - 20461:2

**shy** [1] - 20417:21

**sic** [2] - 20436:24, 20457:20

**sic]** [2] - 20403:3, 20461:7

**side** [3] - 20399:5, 20418:20, 20438:13

**sides** [1] - 20400:11

**sign** [1] - 20431:9

**Silberman** [2] - 20465:11

**similar** [3] - 20446:16, 20446:19, 20448:9

**simpler** [1] - 20431:4

**simply** [5] - 20400:22, 20406:7, 20407:12, 20407:20, 20437:18

**simul** [1] - 20407:4

**simultaneous** [2] - 20397:21, 20407:17

**simultaneously** [13] - 20393:25, 20394:4, 20394:19, 20396:15, 20397:20, 20398:1, 20402:13, 20406:14, 20407:6, 20410:20, 20436:7, 20440:19, 20440:25

**six** [4] - 20403:12, 20409:9, 20409:10

**Sixth** [1] - 20466:3

**slight** [1] - 20444:13

**slightly** [1] - 20434:15

**smaller** [1] - 20421:12

**Smith** [19] - 20391:16, 20393:9, 20396:5, 20401:5, 20401:25, 20402:8, 20406:17, 20408:3, 20412:1, 20414:18, 20415:24, 20430:19, 20430:24, 20437:12, 20446:7, 20448:15, 20456:2, 20456:21, 20457:3

**SMITH** [50] - 20391:16, 20391:20, 20396:6, 20398:12, 20398:20, 20398:24, 20399:17, 20408:2, 20408:4, 20408:17, 20408:20, 20409:5, 20409:9, 20409:14, 20412:2, 20412:8, 20412:12, 20416:3, 20416:6, 20416:13, 20417:2, 20417:15, 20418:1, 20418:13, 20419:9, 20419:14, 20419:22, 20420:1, 20420:3, 20420:18, 20437:11, 20437:13, 20438:2, 20438:4, 20438:7, 20438:12, 20441:1, 20446:6, 20446:8, 20447:2, 20447:12, 20447:18, 20447:21, 20447:24, 20448:2, 20448:6, 20448:14, 20448:16, 20456:1, 20456:3

**Smith's** [4] - 20401:23, 20438:15, 20439:3, 20439:14

**soft** [1] - 20454:6

**softened** [1] - 20445:4

**softens** [1] - 20450:13

**softer** [1] - 20444:13

**solely** [2] - 20402:9, 20469:5

**solution** [2] - 20412:3, 20456:4

**someone** [3] - 20445:20, 20451:18, 20462:24

**somewhat** [1] - 20415:3

**soon** [2] - 20469:9, 20469:10

**sooner** [1] - 20467:22

**sorry** [5] - 20432:22, 20432:24, 20441:11, 20457:7, 20463:18

**sort** [11] - 20397:4, 20410:9, 20430:7, 20431:18, 20432:13, 20434:13, 20443:13, 20443:16, 20445:4, 20446:4

**speaking** [1] - 20461:3

**special** [3] - 20405:20, 20405:21, 20442:11

**specific** [13] - 20406:9, 20408:1, 20429:23, 20433:5, 20434:18, 20435:21, 20437:19, 20438:22, 20440:6, 20440:16, 20440:22, 20442:12, 20446:23

**specifically** [9] - 20414:20, 20431:13, 20431:22, 20431:23, 20437:1, 20439:17, 20439:20, 20449:10, 20458:16

**specificity** [1] - 20433:13

**specifies** [1] - 20415:19

**speculate** [2] - 20414:3, 20424:5

**speculating** [1] - 20426:25

**spent** [1] - 20452:14

**sphinx** [1] - 20403:15

**sphinx-like** [1] - 20403:15

**stage** [1] - 20422:13

**stand** [2] - 20466:4, 20467:15

**standard** [4] - 20404:3, 20454:19,

20454:23

**stands** [4] - 20405:25, 20428:7, 20467:9, 20467:24

**start** [1] - 20415:20

**started** [1] - 20459:25

**state** [1] - 20450:2

**statement** [11] - 20394:12, 20394:17, 20394:20, 20402:15, 20406:20, 20411:5, 20425:6, 20436:1, 20440:4, 20440:5, 20442:15

**statements** [1] - 20427:3

**STATES** [3] - 20391:1, 20391:2, 20391:9

**states** [2] - 20414:2, 20454:20

**States** [6] - 20391:11, 20393:3, 20397:10, 20428:11, 20468:3, 20470:20

**statute** [1] - 20402:18

**stay** [1] - 20455:21

**steal** [1] - 20460:10

**stenographic** [1] - 20470:16

**step** [1] - 20394:14

**Steven** [2] - 20392:11, 20393:12

**still** [4] - 20402:15, 20403:16, 20411:11, 20411:17

**stop** [1] - 20398:3

**stops** [1] - 20460:20

**story** [2] - 20407:15, 20449:4

**strange** [5] - 20407:3, 20416:18, 20431:19, 20451:16, 20456:15

**Street** [6] - 20391:14, 20391:17, 20391:20, 20391:24, 20392:5, 20392:9

**strike** [1] - 20438:5

**strongly** [1] - 20434:5

**struggled** [1] - 20404:2

**stuck** [1] - 20416:24

**subject** [1] - 20440:8

**submitted** [1] - 20467:6

**substance** [1] - 20440:10

**substantial** [2] - 20444:22, 20455:17

**substantive** [9] - 20396:21, 20398:15,

20484

20400:9, 20400:12, 20403:17, 20405:12, 20406:3, 20465:22, 20467:5

**sudden** [1] - 20451:16

**suddenly** [1] - 20401:11

**sufficient** [1] - 20408:7

**suggest** [4] - 20404:4, 20416:21, 20424:7, 20461:10

**suggested** [2] - 20414:18, 20431:24

**suggesting** [2] - 20433:8, 20443:18

**suggestion** [4] - 20406:6, 20438:15, 20441:18, 20463:17

**suggests** [10] - 20403:10, 20403:20, 20442:25, 20450:14, 20452:7, 20453:4, 20453:6, 20453:8, 20457:3

**Suite** [2] - 20391:17, 20392:6

**sun** [1] - 20424:17

**Superior** [3] - 20446:14, 20446:16, 20447:15

**supplemental** [2] - 20400:12, 20401:7

**suppose** [1] - 20463:17

**supposed** [2] - 20418:21, 20424:5

**suspect** [1] - 20430:18

**suspended** [2] - 20468:10, 20469:23

**synonym** [2] - 20401:4, 20402:21

**synonymous** [2] - 20399:6, 20400:8

**synonymously** [1] - 20396:20

**synonyms** [2] - 20433:7, 20433:14

**syntax** [1] - 20437:6

## T

**table** [3] - 20415:10, 20433:2, 20434:13

**tailored** [1] - 20410:13

**TARRIO** [1] - 20391:6

**Tarrio** [4] - 20393:5, 20393:15, 20425:21, 20439:10

**Tarrio's** [2] -

20438:21, 20439:7

**television** [1] - 20469:1

**tempted** [1] - 20469:3

**tend** [1] - 20421:5

**tends** [1] - 20445:14

**term** [4] - 20397:24, 20430:3, 20441:15, 20454:25

**terms** [6] - 20394:14, 20397:19, 20402:9, 20433:13, 20443:1, 20468:13

**testified** [1] - 20444:22

**testifying** [1] - 20425:1

**text** [2] - 20407:14, 20469:15

**THE** [209] - 20391:1, 20391:1, 20391:9, 20393:2, 20393:16, 20394:25, 20395:3, 20395:14, 20395:17, 20395:23, 20396:2, 20397:18, 20398:17, 20398:23, 20399:12, 20399:18, 20399:25, 20400:19, 20400:21, 20401:14, 20401:17, 20401:20, 20404:7, 20404:12, 20404:15, 20404:17, 20405:11, 20405:14, 20406:5, 20408:3, 20408:16, 20408:19, 20408:21, 20409:8, 20409:13, 20409:20, 20410:1, 20410:3, 20410:23, 20411:1, 20411:18, 20411:24, 20412:1, 20413:2, 20413:17, 20413:18, 20415:21, 20415:23, 20416:5, 20416:7, 20416:18, 20417:13, 20417:16, 20418:6, 20418:23, 20419:13, 20419:21, 20419:24, 20420:2, 20420:4, 20420:22, 20421:23, 20422:1, 20422:3, 20422:7, 20422:19, 20422:22, 20422:23, 20423:3, 20423:5, 20423:13, 20423:24, 20424:11, 20424:25, 20425:10, 20425:12, 20425:20, 20425:25, 20426:4, 20426:21, 20427:11,

20427:14, 20427:19, 20428:2, 20428:6, 20428:10, 20428:13, 20428:15, 20428:19, 20428:24, 20429:4, 20429:6, 20429:14, 20432:9, 20432:17, 20432:19, 20432:22, 20432:25, 20433:2, 20433:18, 20433:22, 20433:24, 20434:14, 20434:17, 20434:20, 20435:17, 20436:10, 20436:12, 20436:14, 20436:16, 20436:24, 20437:12, 20437:25, 20438:3, 20438:5, 20438:10, 20438:17, 20438:20, 20439:6, 20439:9, 20439:13, 20440:20, 20441:10, 20441:12, 20441:24, 20442:1, 20442:5, 20442:18, 20443:25, 20444:2, 20444:12, 20446:2, 20446:7, 20446:25, 20447:10, 20447:17, 20447:20, 20447:23, 20448:1, 20448:5, 20448:13, 20448:15, 20448:17, 20449:6, 20449:9, 20449:24, 20450:5, 20450:9, 20450:11, 20450:17, 20451:9, 20451:12, 20451:24, 20453:12, 20453:16, 20453:23, 20453:25, 20454:3, 20454:11, 20454:13, 20455:6, 20455:25, 20456:2, 20456:9, 20456:21, 20457:5, 20457:18, 20458:1, 20458:7, 20458:14, 20458:17, 20458:23, 20459:1, 20459:3, 20459:6, 20459:13, 20460:9, 20460:13, 20460:25, 20461:14, 20461:17, 20461:19, 20461:22, 20462:22, 20463:23, 20464:3, 20464:6, 20464:13, 20464:22, 20464:24, 20465:1, 20465:3, 20465:15, 20465:20, 20466:5, 20466:23, 20467:10, 20467:12, 20467:14, 20467:21, 20467:23, 20468:2, 20468:5,

20468:15, 20468:19, 20468:21, 20468:23, 20470:5, 20470:9

**themselves** [1] - 20398:14

**theories** [14] - 20414:9, 20423:20, 20426:16, 20426:18, 20426:23, 20426:24, 20460:21, 20461:11, 20461:25, 20462:14, 20463:5, 20463:14, 20463:19, 20464:7

**theory** [2] - 20423:19, 20452:4

**therefore** [1] - 20455:13

**they've** [21] - 20401:8, 20401:9, 20403:2, 20405:11, 20406:2, 20409:6, 20419:24, 20421:3, 20421:13, 20424:6, 20431:18, 20449:19, 20451:3, 20452:1, 20452:7, 20455:20, 20458:9, 20463:11, 20466:22, 20467:4

**thinking** [3] - 20402:16, 20420:8, 20430:12

**thinks** [1] - 20445:20

**third** [1] - 20455:17

**Thomas** [13] - 20432:11, 20445:15, 20446:5, 20446:12, 20446:17, 20446:20, 20446:24, 20447:19, 20447:22, 20448:2, 20448:9, 20449:14, 20452:18

**thread** [1] - 20408:14

**threat** [4] - 20404:20, 20405:6, 20465:10, 20465:14

**three** [3] - 20397:2, 20405:4, 20428:4

**thumb** [1] - 20418:22

**TIMOTHY** [2] - 20391:9, 20470:14

**Timothy** [1] - 20392:17

**tinker** [1] - 20437:9

**tinkering** [1] - 20436:19

**title** [1] - 20398:20

**today** [1] - 20463:24

**tomorrow** [6] - 20468:9, 20469:21, 20469:22, 20470:3,

20470:6, 20470:8

**took** [4] - 20443:13, 20450:7, 20462:3

**total** [1] - 20445:1

**totally** [4] - 20448:18, 20453:13, 20462:25

**toward** [1] - 20445:15

**towards** [2] - 20440:11, 20445:25

**track** [1] - 20466:13

**transcript** [3] - 20392:21, 20470:16, 20470:17

**TRANSCRIPT** [1] - 20391:8

**transcription** [1] - 20392:21

**treat** [4] - 20397:21, 20430:21, 20431:17, 20468:13

**treats** [1] - 20433:6

**TRIAL** [1] - 20391:8

**trial** [13] - 20414:4, 20424:3, 20424:7, 20427:14, 20444:9, 20444:20, 20445:18, 20449:2, 20449:16, 20451:3, 20455:4, 20455:15, 20469:6

**trials** [1] - 20444:21

**tricky** [1] - 20463:16

**troublesome** [1] - 20455:2

**true** [5] - 20415:21, 20415:23, 20442:2, 20470:15, 20470:16

**truly** [1] - 20461:3

**try** [5] - 20402:6, 20421:6, 20422:24, 20452:16, 20463:8

**trying** [6] - 20408:13, 20409:16, 20411:13, 20434:3, 20452:14, 20463:4

**Tuesday** [1] - 20391:6

**turn** [1] - 20406:7

**turning** [1] - 20406:9

**tweak** [1] - 20466:24

**tweaked** [1] - 20422:12

**two** [22] - 20393:18, 20395:9, 20395:11, 20399:14, 20401:10, 20403:13, 20408:6, 20409:6, 20409:23, 20413:5, 20413:23, 20417:12, 20433:9, 20434:21, 20436:2, 20436:7, 20437:21, 20440:16, 20440:24,

20441:7, 20455:16, 20456:16

**type** [4] - 20421:9, 20452:11, 20464:10, 20467:16

**typed** [1] - 20421:10

**types** [1] - 20463:7

## U

**U.S** [2] - 20391:13, 20392:18

**ultimately** [1] - 20426:13

**unable** [14] - 20417:7, 20417:23, 20418:16, 20419:3, 20419:17, 20444:17, 20450:3, 20450:14, 20453:5, 20457:7, 20457:9, 20457:11, 20458:19, 20459:16

**Unanimity** [2] - 20395:6, 20398:21

**unanimity** [35] - 20395:18, 20395:22, 20396:1, 20403:13, 20405:20, 20405:21, 20407:9, 20408:14, 20412:25, 20413:14, 20415:3, 20416:16, 20418:16, 20418:18, 20418:19, 20419:11, 20419:17, 20420:1, 20420:5, 20433:10, 20434:6, 20436:9, 20441:19, 20442:6, 20442:10, 20442:11, 20442:13, 20442:19, 20443:8, 20450:20, 20452:6, 20452:8, 20453:8, 20454:6, 20456:14

**unanimous** [46] - 20408:18, 20408:23, 20409:1, 20409:12, 20410:7, 20410:17, 20412:16, 20412:18, 20412:20, 20412:23, 20417:25, 20418:5, 20418:8, 20418:11, 20419:3, 20419:6, 20420:9, 20420:10, 20420:17, 20421:1, 20421:3, 20430:8, 20430:23, 20431:16, 20431:20, 20435:2, 20435:6, 20435:8, 20435:10, 20436:2, 20443:23, 20444:18,

20445:12, 20449:20, 20450:3, 20450:15, 20451:17, 20452:19, 20452:20, 20452:21, 20453:21, 20457:7, 20457:9, 20457:11, 20457:25, 20459:16

**unanimously** [5] - 20405:22, 20405:23, 20408:11, 20409:18, 20418:15

**unclear** [2] - 20397:14, 20442:17

**under** [10] - 20395:6, 20397:16, 20399:1, 20414:1, 20416:8, 20424:17, 20436:5, 20447:5, 20462:13, 20466:16

**underlying** [1] - 20461:21

**undermine** [1] - 20436:9

**undermines** [1] - 20441:19

**underscores** [1] - 20463:3

**undo** [1] - 20410:21

**UNITED** [3] - 20391:1, 20391:2, 20391:9

**United** [6] - 20391:11, 20393:3, 20397:9, 20428:11, 20468:3, 20470:20

**unlawful** [2] - 20402:4, 20402:7

**unless** [3] - 20407:6, 20411:8, 20412:13

**unusual** [2] - 20408:5, 20445:2

**up** [18] - 20401:4, 20401:7, 20405:25, 20410:9, 20412:1, 20421:9, 20421:10, 20423:6, 20424:8, 20432:24, 20439:2, 20440:12, 20448:25, 20451:10, 20456:7, 20464:10, 20467:16, 20470:5

**urges** [1] - 20400:2

**utterly** [2] - 20397:14, 20454:8

## V

**various** [1] - 20458:14

**vengeance** [1] - 20403:9

**verbatim** [1] -

20466:14

**verdict** [68] - 20395:12, 20395:20, 20396:8, 20396:10, 20396:17, 20404:19, 20404:23, 20405:6, 20405:10, 20405:12, 20405:21, 20405:25, 20413:12, 20414:25, 20415:3, 20415:12, 20416:1, 20416:11, 20416:23, 20417:3, 20417:4, 20417:18, 20417:23, 20418:3, 20418:7, 20418:17, 20419:3, 20419:5, 20419:6, 20420:13, 20420:14, 20421:21, 20422:5, 20422:12, 20422:16, 20430:14, 20431:19, 20432:4, 20442:12, 20443:23, 20449:20, 20450:3, 20451:10, 20451:13, 20451:15, 20451:21, 20452:2, 20454:21, 20454:22, 20456:17, 20457:15, 20457:17, 20458:3, 20458:10, 20459:2, 20459:19, 20459:20, 20464:16, 20464:19, 20465:23, 20466:3, 20466:13, 20466:21, 20467:4, 20467:6, 20469:24

**Verdict** [1] - 20466:16

**verdicts** [4] - 20412:15, 20414:22, 20420:10, 20452:24

**version** [3] - 20410:16, 20414:23, 20444:13

**versus** [2] - 20402:16, 20443:15

**via** [1] - 20469:19

**viable** [1] - 20411:22

**view** [16] - 20401:22, 20413:7, 20413:8, 20414:15, 20418:24, 20438:17, 20439:14, 20439:17, 20443:12, 20445:10, 20445:11, 20456:23, 20456:25, 20457:23, 20457:24, 20459:8

**violates** [2] - 20402:18, 20466:2

**vote** [1] - 20451:19

## W

**wade** [1] - 20463:8

**wading** [1] - 20463:3

**wait** [4] - 20429:7, 20436:13, 20451:17, 20460:3

**waiving** [4] - 20432:20, 20433:3, 20433:15, 20433:20

**walk** [1] - 20428:25

**walking** [1] - 20429:9

**wants** [4] - 20404:10, 20426:4, 20432:5, 20457:2

**warrant** [1] - 20429:11

**Washington** [5] - 20391:5, 20391:14, 20391:24, 20392:19, 20470:21

**watch** [2] - 20469:3, 20469:4

**water** [4] - 20434:24, 20435:20, 20439:2, 20439:11

**watering** [2] - 20442:10, 20442:13

**waters** [2] - 20436:5, 20466:1

**ways** [1] - 20427:17

**weeks** [2] - 20401:10, 20404:3

**West** [1] - 20392:9

**Westlaw** [1] - 20448:24

**whereas** [1] - 20412:22

**whichever** [2] - 20435:9, 20452:24

**whole** [5] - 20404:22, 20410:21, 20419:25, 20437:1, 20442:19

**willing** [2] - 20409:9, 20409:11

**Winters** [2] - 20446:12, 20446:16

**wish** [3] - 20448:21, 20469:12, 20469:20

**witnesses** [3] - 20444:9, 20444:22, 20455:16

**wonder** [1] - 20424:1

**word** [11] - 20413:13, 20436:18, 20437:5, 20437:7, 20437:8, 20441:2, 20441:15

**wording** [1] - 20439:21

**words** [20] - 20396:19, 20397:22, 20406:12,

20407:12, 20407:14, 20408:22, 20408:23, 20409:1, 20409:21, 20417:18, 20420:14, 20424:3, 20424:6, 20438:5, 20439:22, 20441:7, 20455:13, 20457:15, 20458:19, 20459:20

**wordsmith** [1] - 20433:25

**wordsmithing** [4] - 20433:24, 20434:23, 20437:2, 20440:9

**world** [1] - 20399:1

**write** [1] - 20410:8

**written** [4] - 20402:12, 20403:2, 20464:20, 20465:4

**wrote** [3] - 20445:23, 20450:5, 20450:8

## Y

**Yarborough** [2] - 20446:17, 20446:19

**years** [1] - 20431:11

**yesterday** [1] - 20401:15

**yield** [1] - 20459:11

**York** [2] - 20391:18, 20392:13

## Z

**Zachary** [1] - 20393:4